D.C.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL NO.: 1334

MASTER FILE NO.: 00-1334-MD-MORENO

THIS DOCUMENT RELATES TO PROVIDER TRACK CASES

IN RE: MANAGED CARE LITIGATION
______________________________/

CALIFORNIA MEDICAL ASSOCIATION,

Plaintiff,

v.

WELLPOINT HEALTH NETWORKS, INC., PACIFICARE HEALTH SYSTEMS, INC., PACIFICARE OPERATIONS, INC., and FOUNDATION HEALTH SYSTEMS, INC.

Defendants.

**FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

## I. INTRODUCTION

1. Plaintiff California Medical Association ("CMA") is a non-profit, incorporated professional association of California physicians, with its principal place of business in San Francisco, California. CMA is comprised of more than 30,000 physicians, including California physicians in the private practice of medicine in all specialities. CMA's primary purposes as set forth in its bylaws are to promote the art and science of medicine, the care and well being of patients, the protection of the public health and the betterment of the medical profession. CMA brings this action on behalf of its own interests, and in its representative capacity, on behalf of its members





LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

whose claims are not subject to binding arbitration.

2. Plaintiff brings this action on behalf of itself and its membership, which is comprised of physicians who are victims of a scheme implemented by Defendants in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), and in violation of California law. Plaintiff brings this action because it believes its membership has been damaged in its business as a result of the pattern of racketeering activity alleged herein but moreover because it believes the defendants' scheme is detrimental to its members' patients.

3. Physicians must receive adequate and timely reimbursement in order to maintain their practices and provide the continuity of care that their patients require. A stable health care system depends on reimbursement adequate to cover the costs of delivering the health care services patients have been promised by defendants. Defendants' failure to provide funding of the health care system has resulted in tremendous hardships for all physicians. Physicians have been forced to suffer from patently unfair contract terms, delays, decreases and denials in payment of claims, and the refusal of defendants to provide the data necessary to enable physicians to evaluate the rates provided and the level of risk assumed under the contracts they have been provided.

4. Physicians contract with health plans through one of two models: (1) the direct contract model, and (2) the delegated model. With respect to the direct contract model, physicians contract with and receive reimbursement from defendants directly. Under this model, defendants engage in a host of improper utilization management and payment practices which result in the denial, delay or reduction in services to patients and/or payment to physicians.

5. In California particularly, Defendants routinely enter into contracts with medical groups, independent practice associations and other contracting intermediaries (hereinafter "Physicians

Groups") for arranging and managing the medical services provided to Defendants' enrollees and subscribers ("Members"). These Physicians Groups, in turn, contract with physicians to provide the covered services to defendants' members. This is known as the "delegated model." Under this model, health plans delegate to Physicians Groups the responsibilities, including the financial risk, of providing health care services to members. Defendants generally pay these Physicians Groups through "capitated" payments, which is a set payment per member per month, regardless of the number of times the member may visit the particular physician. Yet, defendants set reimbursement rates, including capitation rates to these Physicians Groups, at unconscionably low levels which defendants know or recklessly disregard are not adequate to cover the medical services defendants promise to provide their members and/or know or recklessly disregard are for services for which there can be no sound actuarial projection because expected usage cannot be controlled or predicted. Defendants engage in these and other coercive and unfair activities which threaten the Physicians Groups with economic ruin and which in turn threaten patients with a disruption of continuity of care in the provision of health care services. Defendants' practice of providing inadequate reimbursement to these Physicians Groups has caused individual physicians contracting with these groups to experience some of the same problems discussed above under the direct contracting model. As the problems these individual physicians experience are a direct result of Defendants' unlawful activities, this lawsuit seeks to redress the harms suffered by both the individual physicians and the Physicians Groups. The Physicians Groups are victims of Defendants' unlawful activities and are not defendants or other wrongdoers.

6. Plaintiff's membership is harmed by the damages caused its individual members by Defendants' actions. Plaintiff's membership is further harmed as physicians have been forced to

leave the practice of medicine, and/or terminate their membership with Plaintiff, due to Defendants' unlawful, coercive and extortionate conduct.

7. Therefore, Plaintiff, on behalf of its membership, seeks a declaration regarding Defendants' practices of inadequately funding the health care system. Plaintiff also seeks to recover injunctive and declaratory relief for Defendants' wrongful interference and coercive actions.

8. Plaintiff brings this individual action against Wellpoint Health Networks, Inc., which has undertaken a common scheme to further its own financial interests at the expense of Plaintiff's membership. Plaintiff's claims as to this defendant's group involves common factual patterns and common legal principles. More specifically, Plaintiff brings this action against Wellpoint Health Networks, Inc. ("Wellpoint"). The Wellpoint healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The Wellpoint healthcare plans are collectively referred to as the "Wellpoint health plan" or "Wellpoint health plans". Defendants Wellpoint, and their subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The Wellpoint healthcare plans are not charged as defendants in this Complaint. The defendants and the Wellpoint healthcare plans are collectively referred to as "Wellpoint" unless otherwise specified.

9. Plaintiff brings this individual action against PacifiCare, which has undertaken a common scheme to further its own financial interests at the expense of Plaintiff's membership. More specifically, Plaintiff brings this action against PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc. ("PacifiCare"). The PacifiCare healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The PacifiCare healthcare plans are collectively referred to as the "PacifiCare health plan" or "PacifiCare health plans". Defendants PacifiCare, and

their subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The PacifiCare healthcare plans are not charged as defendants in this Complaint. The defendants and the PacifiCare healthcare plans are collectively referred to as "PacifiCare" unless otherwise specified.

10. Plaintiff brings this individual action against Foundation, which has undertaken a common scheme to further its own financial interests at the expense of Plaintiff's membership. Plaintiff's claims as to this defendants group involves common factual patterns and common legal principles. More specifically, Plaintiff brings this action against Foundation Health Systems, Inc. ("Foundation"). Foundation Health System, Inc. merged with Health Net. Hereinafter, any reference to "Foundation" includes reference to "Health Net." The Foundation healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The Foundation healthcare plans are collectively referred to as the "Foundation health plan" or "Foundation health plans". Defendants Foundation, and their subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The Foundation healthcare plans are not charged as defendants in this Complaint. The defendants and the Foundation healthcare plans are collectively referred to as "Foundation" unless otherwise specified.

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § § 1961, 1962, 1964 and 28 U.S.C. § § 1331 and 1337. The Court has personal jurisdiction over the defendants pursuant to 18 U.S.C. § § 1965(b) and (d). Venue is proper in this district pursuant

to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b).

## III. PARTIES

12. Plaintiff, California Medical Association ("CMA") is a non-profit, incorporated professional association of California physicians, with its principal place of business in San Francisco, California. CMA is comprised of more than 30,000 physicians, including California physicians in private practice of medicine in all specialities. CMA's primary purposes as set forth in its bylaws are to promote the art and science of medicine, the care and well being of patients, the protection of the public health and the betterment of the medical profession. CMA is duly authorized to bring this action on behalf of its own interests, and in its representative capacity, on behalf of its members in this proceeding.

13. CMA brings this lawsuit to protect the interests of its members. Many members of CMA do not have the time or financial resources to follow or pursue the claims at issue in this litigation. Many members also are concerned about retribution by Defendants if they were to participate as a named plaintiff.

14. Plaintiff, through its membership, has and continues to provide medical services to patients who are members in the defendants' health plans.

15. The Plaintiff brings this action on behalf of its membership. The Plaintiff's members have been similarly subjected to and wronged by the similar extortionate, unlawful, and fradulent conduct discussed herein.

16. Defendant Wellpoint of California, Inc. is a California corporation.

17. Defendant Wellpoint of California, Inc. is a health plan which operates and administers Wellpoint healthcare and the numerous Wellpoint health plans in California and throughout the

United States.

18. Defendants PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc. are California corporations.

19. Defendants PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc. are health maintenance organizations which operate and administer PacifiCare healthcare and the numerous PacifiCare health plans in California and throughout the United States.

20. Defendant Foundation Health Systems, Inc. is a California corporation.

21. Defendant Foundation Health Systems, Inc. is a health maintenance organization which operates and administers Foundation healthcare and the numerous Foundation health plans in California and throughout the United States.

22. The defendants acted in concert or at least as a part of a common scheme in their efforts to induce Plaintiff's membership to provide services and to expend time on behalf of Defendants' members, in setting policy, and in the other actions set forth in this complaint through the coordinated inter-corporate relationship described above. Defendants were and are active participants in the unlawful, coercive, fraudulent, and extortionate acts and practices described herein. The acts of the defendants present common questions of fact and law to be resolved in this case.

23. Whenever this Complaint alleges that Wellpoint did any act or thing, it is meant that Wellpoint of California, Inc., and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of Wellpoint of California, Inc. performed or participated in such act or thing, they were authorized to and did in fact



LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372 1800

act on behalf of Wellpoint of California, Inc.

24. At all relevant times, each Wellpoint defendant and Wellpoint health plan was an agent and/or employer of the other Wellpoint defendants and Wellpoint health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein. All actions of the Wellpoint defendants and Wellpoint health plans alleged herein were ratified and approved by the other respective Wellpoint defendants and Wellpoint health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff's members.

25. At all relevant times, each Wellpoint plan co-conspirator was respectively an agent and/or employer of each and every other Wellpoint plan co-conspirator and the respective defendants. In committing the acts alleged herein, the Wellpoint plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other Wellpoint plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

26. All actions of the Wellpoint plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective Wellpoint plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or

co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff's members.

27. Whenever this Complaint alleges that PacifiCare did any act or thing, it is meant that PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc., and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc. performed or participated in such act or thing, they were authorized to and did in fact act on behalf of PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc.

28. At all relevant times, each PacifiCare defendant and PacifiCare health plan was an agent and/or employer of the other PacifiCare defendants and PacifiCare health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein. All actions of the PacifiCare defendants and PacifiCare health plans alleged herein were ratified and approved by the other respective PacifiCare defendants and PacifiCare health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff's members.

29. At all relevant times, each PacifiCare plan co-conspirator was respectively an agent

and/or employer of each and every other PacifiCare plan co-conspirator and the respective defendants. In committing the acts alleged herein, the PacifiCare plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other PacifiCare plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

30. All actions of the PacifiCare plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective PacifiCare plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff's members.

31. Whenever this Complaint alleges that Foundation did any act or thing, it is meant that Foundation Health Systems, Inc., and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of Foundation Health Systems, Inc. performed or participated in such act or thing, they were authorized to and did in fact act on behalf of Foundation Health Systems, Inc.

32. At all relevant times, each Foundation defendant and Foundation health plan was an agent and/or employer of the other Foundation defendants and Foundation health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their

other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein. All actions of the Foundation defendants and Foundation health plans alleged herein were ratified and approved by the other respective Foundation defendants and Foundation health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff's members.

33. At all relevant times, each Foundation plan co-conspirator was respectively an agent and/or employer of each and every other Foundation plan co-conspirator and the respective defendants. In committing the acts alleged herein, the Foundation plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other Foundation plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

34. All actions of the Foundation plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective Foundation plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff's members.

35. As defendants have engaged in the unlawful overt and predicate acts against the Physicians Groups, the Physicians Groups are not co-conspirators or otherwise involved in the aiding

or abetting of the violations set forth herein.

## IV. SUMMARY OF FACTUAL AND LEGAL ALLEGATIONS

36. The following factual and legal allegations are based upon knowledge, information and belief.

37. This is a claim for declaratory and injunctive relief pursuant to Title IX of the Organized Crime Control Act of 1970, Public Law 91-452, 84 Stat. 922, commonly known and referred to as RICO (Racketeer Influenced Corrupt Organization Act), codified at 18 U.S.C. § 1961, et seq., and in particular for violation of 18 U.S.C. § 1962 and Section 17200 of the California Business and Professions Code. The Plaintiff also seeks declaratory and injunctive relief for the Defendants' violation as alleged herein pursuant to 18 U.S.C. § 1964(c).

38. This complaint asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq and violations of Section 17200 of the California Business and Professions Code. The Plaintiff hereby reserves all rights to file further appropriate amendments to add additional parties and causes of action.

39. Plaintiff brings this action on behalf of itself and its membership.

40. Defendants contract to provide their members healthcare coverage in exchange for premiums. Defendants know that the premium levels and the physician reimbursement levels must be set at levels adequate to cover the cost of services provided under the plan policy.

41. Defendants necessarily rely on physicians, such as Plaintiff's members, to provide healthcare services to Defendants' members.

42. As set forth more fully herein, Defendants have engaged and are continuing to engage in a pattern of unlawful, fraudulent and extortionate conduct against the Plaintiff's membership.

43. Defendants have provided patently inadequate and unconscionably low reimbursement rates, have inappropriately shifted unreasonable financial risk to physicians and Physicians Groups have failed to provide physicians and Physicians Groups with information sufficient to assess the level of reimbursement Defendants are paying for services, and have refused to negotiate with Plaintiff and Plaintiff's membership regarding policies, practices and other matters even though such matters impact patient care.

44. Defendants have and are continuing to conspire with and aid and abet each other and certain unknown co-conspirators and aiders and abetters in attempting to and actually extorting property interests from Plaintiff's membership. Defendants' conduct has and is continuing to result in multiple unlawful acts of extortion under 18 U.S.C. § 1951(b)(2), thereby damaging Plaintiff's membership in its business or property.

45. In committing multiple acts of extortion under 18 U.S.C. § 1951(b)(2), Defendants have traveled in interstate commerce and have utilized the United States mail for the purpose of and committing such illegal acts through policy making and implementation, the distribution of materials to Plaintiff's membership, seminars, training, contract negotiations, audits, inspection visits, and have thereby committed multiple violations of the Travel Act, 18 U.S.C. § 1952(a), which have damaged and which continue to damage Plaintiff's membership in its business or property.

46. Defendants have also exhibited a pattern of conduct constituting mail and wire fraud in their attempts to influence and interfere with physicians' professional obligations to their patients and to deprive the Plaintiff's membership of its right to conduct its business free of extortionate influence in violation of 18 U.S.C. § § 1341 and 1343. Defendants have utilized the United States Postal Services mail and other interstate means of communications, including wire services and the

internet, to further their fraudulent scheme.

47. Furthermore, Defendants have acted to improperly influence and interfere with employee welfare benefit plans by accepting and soliciting monetary compensation in interference with those plans in violation of 18 U.S.C. § 1954.

48. By engaging in this unlawful scheme, conspiring to violate 18 U.S.C. § 1962(a) and (c) and by continuing to commit multiple overt acts and RICO predicate acts of extortion, and Travel Act violations, Defendants have proximately caused Plaintiff's membership injury to business or property and have violated 18 U.S.C. § 1962(d). By engaging in this unlawful scheme to violate 18 U.S.C. § 1962(a) and (c), Defendants have likewise violated 18 U.S.C. § 2 and have acted as principals in seeking to and in aiding and abetting unlawful schemes to violate 18 U.S.C. § 1962(a) and (c).

49. The Defendants' violations of federal and state laws and the effects thereof are continuing and will continue unless declaratory or injunctive relief prohibiting the Defendants' illegal acts which constitute a pattern of racketeering activity is ordered.

50. The relief the Plaintiff seeks for Defendants' activities that result in injury to its membership's business or property includes declaratory and injunctive relief, costs of suit, attorneys' fees, and such other relief as this Honorable Court deems just and proper.

## VI. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

51. Wellpoint, PacifiCare and Foundation are providers of healthcare services to millions of subscribers nationwide. There are millions of present and past Wellpoint, PacifiCare, and Foundation members who subscribed and enrolled in Wellpoint, PacifiCare, and Foundation healthcare plans.

52. Wellpoint, PacifiCare and Foundation have and continue to provide their members healthcare coverage in exchange for payment of premiums. These defendants promise their members and prospective members that, in return for their payment of premium, they will receive all healthcare services that they will need to maintain, improve or restore health.

53. To provide the Wellpoint, PacifiCare and Foundation plan coverage, defendants depend upon tens of thousands of physicians to provide medical services. Defendants promise physicians, either through direct agreements, or through agreements with Independent Physician Associations ("IPAs"), or other medical groups or other intermediaries ("Physicians Groups"), that they will receive adequate and reasonable compensation sufficient to cover the costs of medical services to be provided under the health plan policy. Such misrepresentations are made with the intent to induce customers to enroll in Wellpoint, PacifiCare and Foundation plans and to induce physicians and Physicians Groups, including Plaintiff's members, to agree to provide care to Wellpoint's, PacifiCare's, and Foundation's members without seeking additional compensation.

54. Plaintiff's members, justifiably relied on Wellpoint's, PacifiCare's, and Foundation's promises of adequate and reasonable compensation in agreeing to provide medical services for members of the Wellpoint, PacifiCare and Foundation plans, without seeking additional compensation.

55. Defendants represent coverage decisions will be based on "medical necessity". Yet, Defendants apply "medical necessity" in an administrative and profit driven manner.

56. Defendants base their funding and coverage decisions on their own fiscal determinations and are not bound by the medical necessity decisions of Plaintiff's membership, or the professional standard of care, or sound actuarial projections as to what it costs to provide the

medically appropriate care Defendants have promised their members.

57. Contrary to misrepresentations that physicians cannot be penalized for filing a complaint or appeal, Defendants fail to provide a reasonable mechanism for their physicians to appeal a Defendants' decision regarding medical necessity or the funding necessary to provide the care. Instead, the appeals process, (where it exists), is created and applied in an arbitrary, confusing, costly and overly-time consuming manner designed to discourage the physician from appealing the Defendants' determination of "medical necessity" or reimbursement.

58. Where Defendants have not improperly delegated the risk to Physicians Groups, as discussed below, Defendants' formularies or lists of covered prescription drugs are subject to change at Defendants' discretion. Defendants' decisions to remove a drug, even in the middle of treatment, is based upon financial considerations and incentives from pharmaceutical manufacturers rather than the members' healthcare need or the physicians' medical expertise. Such decisions are based solely on cost without consideration of the efficacy or the potency of the drug.

59. Where Defendants have delegated pharmacy risk to Physicians Groups, they do it pursuant to capitation rates they know or blatantly disregard are inadequate to provide the pharmacy services Defendants had promised to provide Defendants' members, (assuming such payments could ever be actuarially sound). In addition, Defendants' contracts create ostensibly "shared" risk pools for provision of pharmacy services. In the event a pool falls short, the parties are required to make up the shortage in accordance with a contractually pre-determined split.

60. Although the risk is presumably "shared", Defendants base their funding of the risk pools on projections, which they know are unsound, (assuming any projection could be sound), and which Defendants know are inadequate to cover the reasonably foreseeable costs of providing pharmacy

services to their patients. This information, however, is not shared with the physicians or Physicians Groups, who likewise have no input into the creation of the risk pool arrangement. As a result, Defendants' own "risk" in these pharmaceutical pools is no risk at all, and represents yet another method by which Defendants shift the costs of providing healthcare to the physicians and Physicians Groups to both their detriment and the detriment of their patients.

61. Defendants have also instituted incentives and disincentives in the form of so called "shared" risk pools for the cost of certain services such as inpatient hospital admissions. Shared risk pools are the mechanism through which physicians, other providers and health plans share the risk for the expenses of particular anticipated services. The "pool" consists of funds or a budget that Defendants represent will cover the services. If the cost of services does not exceed the budgeted amount, physicians receive a bonus calculated as a percentage of the surplus difference between the funded amount and the costs of the services. However, if the costs exceed the specified amount, physicians are penalized and must pay some or all of the deficit. Again, the "pool" is not sufficient to cover the cost of the services which Defendants have promised their members.

62. Physician incentives and disincentives include a variable utilization component in which additional compensation is available based upon the physicians' utilization of healthcare services, such as withholds which are ultimately paid or not depending upon the physicians' utilization of healthcare services, and a cost/utilization component in which additional compensation is available based upon the physicians' utilization of healthcare services.

63. Again, these withholds are not properly structured to ensure that physicians and Physicians Groups are not penalized for providing medically appropriate services. Withholds in the context of capitation payments are particularly unfair since, by definition, the capitation payment

would not be actuarially sound for the provision of professional services going forward once a withhold is extracted to cover prior years' losses.

64. Defendants have utilized their economic and market power to coerce Plaintiff's membership into accepting contracts and Defendants' policies and practices on a "take it or leave it" basis. Defendants' refusal to negotiate regarding policies, practices, payment rates, and contract provisions raise serious concerns regarding the delivery of healthcare services appropriate to patients' needs.

65. Defendants have maintained a policy and practice of retaining power to unilaterally amend the terms of their physician contracts, including fee structures and clinical protocols and procedures.

66. Plaintiff's membership must also bear the burden of ever-increasing expenditures of administrative time and expense, all without compensation.

## VII. GENERAL ALLEGATIONS RELATING RICO

67. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

68. These claims arise under 18 U.S.C. § 1964(a) of RICO and seek to obtain injunctive and declaratory relief against the defendants for violations of 18 U.S.C. § 1962(a) and (c), for a conspiracy to violate 18 U.S.C. § 1962(a) and (c) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and for aiding and abetting violations of 18 U.S.C. § 1962(a) and (c) within the meaning of 18 U.S.C. § 2.

69. The Plaintiff is a "person" within the meaning of 18 U.S.C. § 1964(c).

70. At all times relevant hereto, the Plaintiff's membership, and the defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).



LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

71. The Plaintiff alleges alternative theories of enterprise. An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

72. The first theory of enterprise is that the health care delivery system in the United States is an enterprise. The health care delivery system is made up of physicians and other health care providers who must be associated in fact for the system to function. The health care delivery system in the United States has an ascertainable structure separate and apart from the pattern of racketeering conduct. The health care providers must be associated and must function as at least an informal organization to provide health care services to the residents of the United States. The defendants and other for profit health plans have sought to participate in the affairs of the enterprise through the pattern of racketeering activity that the Plaintiff has alleged.

73. Alternatively, the Plaintiff alleges that the health care system within California or in other geographic regions constitute enterprises and that the defendants have participated in the affairs of those enterprises through a pattern of racketeering conduct.

74. Alternatively, the Plaintiff alleges that the third-party entities, including those entities which promulgate health care reimbursement guidelines and/or which are subcontracted by Defendants for the purpose of reviewing claims made of Defendants by Plaintiff's members, constitutes an enterprise, in whose affairs Defendants have participated and/or exerted control or influence.

75. Under each of the theories of enterprise alleged by the Plaintiff, the enterprises have an ascertainable structure separate and apart from the pattern of racketeering activity in which the defendants engage.

76. With respect to the activities alleged herein, the Defendants acted at all times with malice toward the Plaintiff's membership, intent to engage in the conduct complained of for the benefit of the corporate Defendants and with knowledge that such conduct constituted unlawfulness. Such conduct was done with actionable wantonness and reckless disregard for the rights of the plaintiff's membership, as well as the laws to which the Defendants are subject, the same amounting to actionable wantonness.

77. With respect to the activities alleged herein, each defendant and each health plan aided and abetted each other defendant and health plan, and others not named as defendants in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c). In furtherance of these agreements, each defendant and health plan also agreed to interfere with, obstruct, delay or affect commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled through the exploitation of fear of economic loss and/or loss of business.

78. With respect to the overt acts and activities alleged herein, each defendant and health plan conspired with each other defendant and health plan, and with others not named as defendants in this Complaint, to violate 18 U.S.C. § 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d). Each defendant and health plan also agreed and conspired with each other defendant and health plan to participate, directly or indirectly, in the fraudulent scheme or artifice alleged herein, to wrongfully retain money owed to Plaintiff's membership. Each defendant and health plan also agreed and conspired with each other defendant and health plan to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled through the exploitation of fear

of economic loss and/or loss of business.

79. The numerous predicate acts of mail and wire fraud, extortion, Travel Act and benefit plan interference violations described herein are part of separate fraudulent and extortionate schemes by Defendants designed to defraud Plaintiff's membership of money and property interests under false pretenses; to deprive the Plaintiff's membership of the its rights in the doctor patient relationship and in the delivery of appropriate healthcare services to their patients. The Plaintiff's membership, as a victim of these unlawful patterns of illegal activity has and continues to suffer losses as a result of these activities.

80. In carrying out the overt acts and fraudulent and extortionate scheme described above the defendants engaged in, *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. § 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 1961 *et seq.*

81. Section 1961(1) of RICO provides that "racketeering activity" means, any act which is indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud), §1343 (relating to wire fraud), § 1346 (relating to scheme or artifice to defraud), § 1951 (relating to extortion), § 1952 (relating to racketeering [Travel Act]), [and] § 1954 (interference with an employee welfare benefit plan)." Violations of 18 U.S.C. §§ 1341 and 1346, and 18 U.S.C. §§ 1343 and 1346.

**VIOLATIONS OF 18 U.S.C. § § 1341, 1343 and 1346**

82. For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false pretenses, representations or promises, as well as to execute and/or attempt to execute their scheme or artifice to deprive another of the intangible right of

appropriate services, the Defendants, in violation of 18 U.S.C. §§ 1341 and 1346, placed in post offices and/or in authorized repositories for mail matter, matters and things to be sent or delivered by the Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the direction thereon or at the place at which they were directed to be delivered by the person to whom they were addressed.

83. For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false or fraudulent pretenses, misrepresentations, or promises, as well as to execute and/or attempt to execute their scheme or artifice to deprive Plaintiff's membership of property interests, including Plaintiff's membership's right to compensation for services provided, in violation of 18 U.S.C. §§ 1343 and 1346, transmitted in interstate commerce wire, radio and television transmissions advertising their plans.

84. In those matters and things sent or delivered by the Postal Service and the other mediums referred to above, Defendants falsely and fraudulently represented to the Plaintiff's membership that Defendants' physicians are compensated under a system that provides adequate reimbursement to physicians for the provision of the healthcare services Defendants promise their members.

85. With respect to their unlawful activities described above, Defendants also transmitted funds, contracts and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violation of 18 U.S.C. §§ 1341, 1343, and 1346.

86. The Defendants intentionally and knowingly made the material misrepresentations to the Plaintiff's membership referred to above for the purpose of deceiving it and thereby obtaining

financial gain. The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. The Plaintiff's membership justifiably relied on the misrepresentations and omissions.

87. Plaintiff's membership has therefore been injured in its business or property by the Defendants' overt acts and racketeering activities.

**VIOLATIONS OF 18 U.S.C. § 1951(b)(2)**

88. During the relevant times, and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, the Defendants and others not named as defendants in this Complaint on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as the term is defined in 18 U.S.C. §1951 and by "extortion" as defined in 18 U.S.C. §1951(b)(2). The defendants unlawfully attempted to and/or did induce Plaintiff's membership to part with various property interests to which Defendants are not entitled in violation of 18 U.S.C. §1951(b)(2).

89. In furtherance of the scheme or artifice to defraud and obtain money by false pretenses and the scheme or artifice to deprive the Plaintiff's membership of proper compensation, the Wellpoint, PacifiCare and Foundation defendants agreed and conspired amongst themselves, with each other and with others not named as defendants to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which these Defendants are not entitled through the exploitation of physicians' fear of economic loss and/or loss of business.

90. The Defendants' overt acts and fraudulent and extortionate racketeering activity have

and continue to defraud the Plaintiff's membership of the opportunity to be properly compensated.

91. The Plaintiff's membership has, therefore, been injured in its business or property by the Defendants' overt acts and racketeering activities.

**VIOLATIONS OF 18 U.S.C. § 1952(a)**

92. During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud the Plaintiff's membership, the Defendants on numerous occasions did travel and caused others not named as defendants in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud, wire fraud, and extortion in violation of the Travel Act, 18 U.S.C. §1952(a).

93. The Defendants' overt acts and fraudulent and extortionate racketeering activity have and continue to defraud the Plaintiff's membership of money and an opportunity to be properly compensated for the services they have provided.

94. The Plaintiff's membership has, therefore, been injured in its business or property by the Defendants' overt acts and racketeering activities.

95. The Defendants have engaged in a "pattern of racketeering activity," as defined in §1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including the Plaintiff's membership.

96. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described above, were related to each other and amount to and pose a

threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. §1961(5).

**VIOLATIONS OF 18 U.S.C. § 1954**

97. During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud the plaintiff's membership, the Defendants were agents or administrators of health benefits provided by Defendants through various employee welfare benefit plans as defined under 18 U.S.C. § 1954.

98. As agents and/or administrators of said health benefits and in other capacities, Defendants, by their overt acts and fraudulent and extortionate racketeering activity, have and continue to unlawfully interfere with the health benefits portion of said employee welfare benefit plants in violation of 18 U.S.C. § 1954.

99. Defendants have and continue to act to offer, solicit and accept the monetary benefits of the above-described employee welfare benefit plans through their conduct of unlawful, extortionate and fraudulent acts committed against Plaintiff's membership, in violation of 18 U.S.C. § 1954.

100. The plaintiff's membership, therefore, has been injured in its business or property as a result of Defendants' overt acts and racketeering activities.

101. The Defendants have engaged in a "pattern of racketeering activity," as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including the

plaintiff's membership.

102. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

**COUNT I**

**(VIOLATIONS OF RICO 18 U.S.C. § 1962(a))**

103. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

104. Section 1962(a) of RICO provides that, "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of § 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

105. Plaintiff incorporates, as if fully set out herein, its allegations about enterprise.

106. With respect to the allegations contained herein, the Defendants have engaged in a "pattern of racketeering activity", as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, has similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including the Plaintiff's membership.



LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

107. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by the Defendants, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity", as defined in 18 U.S.C. § 1961(5).

108. With respect to the activities alleged herein, the Defendants have acted at all times with malice toward Plaintiff's membership in their efforts to acquire and maintain an interest in an enterprise(s) which affects interstate commerce.

109. The Defendants' acts amount to an overt and extortionate scheme to acquire or maintain an interest in or control of, an enterprise(s) which affect interstate commerce. The Defendants' acts amount to an overt and extortionate scheme to deprive Plaintiff's membership of business or property rights, including the right to be properly compensated for services provided.

110. In carrying out the overt acts and fraudulent extortionate scheme described above, the defendants have engaged in conduct in violation of federal laws, including *inter alia* 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § § 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954 and 18 U.S.C. § 1961, et seq. (RICO) as set forth more fully above.

111. Therefore, Defendants have each engaged in "racketeering activity which is defined in § 1961(1) of RICO to mean "any act which is indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud), § 1343 (relating to wire fraud) § 1951 (relating to extortion), § 1952 (relating to racketeering [Travel Act]), [and] § 1954 (interference with an employee welfare benefit plan).

112. As a proximate result of Defendants' unlawful pattern of illegal extortionate conduct

as described above. Plaintiff's membership has been injured in its business or property as described above.

**COUNT II**

**(VIOLATIONS OF RICO 18 U.S.C. § 1962(c))**

113. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

114. Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

115. Plaintiff incorporates, as though fully set out herein, its allegations about enterprise.

116. With respect to the allegations contained herein, the Defendants have engaged in a "pattern of racketeering activity", as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, has similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including the Plaintiff's membership.

117. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by the Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity", as defined in 18 U.S.C. § 1961(5).

118. With respect to the activities alleged herein, the Defendants have acted at all times with malice toward Plaintiff's membership in their efforts to acquire and maintain an interest in an

enterprise(s) that affects interstate commerce.

119. The Defendants' acts amount to an overt and extortionate scheme to exercise control over Plaintiff's membership by withholding payments, by threatening to withhold payments due for services provided and/or other coercive activities. The Defendants' respective acts amount to an overt and extortionate scheme to deprive Plaintiff's membership of business or property rights, including the right to be properly compensated for services provided, have and continue to constitute a pattern of illegal activity that has and continues to inflict harm upon the Plaintiff's membership.

120. In carrying out the overt acts and fraudulent extortionate scheme described above, the Defendants have engaged in conduct in violation of federal laws, including inter alia 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § § 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954 and 18 U.S.C. § 1961, et seq. (RICO) as set forth more fully above.

121. Therefore, defendants have each engaged in "racketeering activity which is defined in § 1961(1) of RICO to mean "any act which is indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud), § 1343 (relating to wire fraud) § 1951 (relating to extortion), § 1952 (relating to racketeering [Travel Act]), [and] § 1954 (interference with an employee welfare benefit plan)."

122. As a proximate result of Defendants' unlawful pattern of illegal extortionate conduct as described above, Plaintiff has been injured in its business or property as described above.

## COUNT III

**(VIOLATIONS OF RICO 18 U.S.C. § 1962(d) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(a) and (c))**

123. Plaintiff incorporates and realleges the previous paragraphs as if fully set out herein.

124. This claim for relief arises under 18 U.S.C. § 1964(a) of RICO and seeks to obtain injunctive and declaratory relief from the Defendants activities described herein for violations of 18 U.S.C. § 1962(d) for their conspiring to violate 18 U.S.C. § 1962(a) and (c).

125. Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

126. Plaintiff incorporates, as though fully set out herein, its allegations about enterprise.

127. Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a). The object of this conspiracy has been and is to acquire or maintain an interest in or control over the affairs of the § 1962(a) enterprises described previously through a pattern of racketeering activity

128. Defendants have also violated § 1962(d) by conspiring to violate 18 U.S.C. §1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprises described previously through a pattern of racketeering activity.

129. Defendants, their subsidiaries, employees, and multiple agents have been joined in the conspiracies to violate 18 U.S.C. §1962(a) and (c) in violation of § 1962(d) by various third parties not named as defendants herein, such as those persons or entities providing support for Defendants' acquisition of other PPOs, HMOs, and POSs.

130. As demonstrated in detail above, the Defendants' co-conspirators have engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently induce the Plaintiff's membership to agree to provide healthcare services to Defendants' members, without

seeking additional compensation, and failure to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud the Plaintiff's membership of money.

131. The defendants co-conspirators' pattern of fraudulent and extortionate racketeering acts include, but are not limited to providing inadequate payment, withholding payments, and threatening to withhold payments due for services provided.

132. The nature of the above described Defendants'co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(a) and (c), but they were aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

133. As a direct and proximate result of the Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. §§ 1962(a) and (c), the Plaintiff's membership has been and is continuing to be injured in its business or property as set forth more fully above. Pursuant to 18 U.S.C. § 1964(c) of RICO, the Plaintiff is entitled, therefore, to bring this action on behalf of itself, and its membership and to obtain injunctive and declaratory relief, as well as the costs of bringing this suit and attorneys' fees.

134. The defendants have sought to and have engaged in the commission of and continue to commit overt acts and the following described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by defendants from such pattern of racketeering activity, including:

a. Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

b. Multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

c. Multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

d. Multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

e. Multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a);

f. Multiple instances of offers, solicitations and acceptance of money in their activity to influence and interfere with employee welfare benefit plans in violation of 18 U.S.C. § 1954.

135. The defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting the defendants' illegal acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

**COUNT IV**

**(RICO VIOLATIONS OF 18 U.S.C. § 2 BY SEEKING TO AND AIDING AND ABETTING A SCHEME TO VIOLATE 18 U.S.C. § 1962(a) and (c))**

136. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

137. This claim for relief arises under 18 U.S.C. § 1964(c) of RICO providing for injunctive and declaratory relief for Defendants' violations of 18 U.S.C. § 2 by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c).

138. Plaintiff incorporates, as though fully set out herein, its allegations about enterprise.

139. With respect to the defendants' violation of 18 U.S.C. § 2, each defendant and their



LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

respective health plans have sought to, and have aided and abetted, each other respectively, and others not named as defendants in this Complaint, in the commission of those violations of 18 U.S.C. § 2 by seeking to and aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c).

140. Each defendant and health plan, has aided and abetted, and has a shared intent to aid and abet each other defendant and health plan, in attempting to derive, and in actually deriving substantial income and proceeds through the above described pattern of racketeering activity. Each defendant and health plan, has aided and abetted, and has a shared intent to aid and abet, each other defendant and health plan, in acquiring or maintaining an interest or control of the § 1962(a) Enterprise described above through a pattern of racketeering activity, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1962(a). Each defendant and health plan, has further aided and abetted, and has a shared intent to aid and abet, each other defendant and health plan respectively, in conducting or participating in the conduct of the affairs of the Section 1962(c) Enterprise described above through a pattern of racketeering activity, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1962(c).

141. As a direct and proximate result of Defendants' RICO violation of 18 U.S.C. § 2 by seeking to and aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c), the Plaintiff's membership has been and is continuing to be injured in its business or property. Pursuant to 18 U.S.C. § 1964(c) of RICO, the Plaintiff is entitled, therefore, to bring this action on behalf of itself and its membership, and to obtain injunctive and declaratory relief, as well as the costs of bringing this suit and attorneys' fees.

142. The Defendants have attempted to and have aided and abetted and have committed and continue to commit the following unlawful racketeering predicate acts. Through these unlawful racketeering predicate acts, Defendants have attempted to generate, and have continued to generate,

income or proceeds, including:

a. Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

b. Multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

c. Multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

d. Multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

e. Multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and

f. Multiple instances of offers, solicitations and acceptance of money in their activity to influence and interfere with employee welfare benefit plans in violation of 18 U.S.C. § 1954.

143. The defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting the defendants' illegal acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

144. By reason of each Defendants' violations of 18 U.S.C. § 1962(d) and 18 U.S.C. § 2 by conspiring to violate 18 U.S.C. §§ 1962(a) and (c), and seeking to and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c), the plaintiff is entitled to injunctive and declaratory relief pursuant to 18 U.S.C. § 1964(c).

**[COUNT V**

**(For Violation of California Business and Professions Code § 17200)**

145. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

146. In order to maximize profits, Defendants limit physicians' and physician groups' ability to obtain adequate and appropriate reimbursement for services provided to members, participants and enrollees.

147. Throughout the class period, defendants have committed the following acts of unfair competition, as defined by Business and Professions Code section 17200, by:

a. utilizing premiums which are not actuarially sound to provide healthcare services to Defendants' members, participants and enrollees;

b. setting rates, both fee-for-service and capitation, which are not sufficient to adequately reimburse physicians for the provision of health services to plan members, participants and enrollees;

c. requiring that physicians and physician groups accept capitation for services for which there can be no sound actuarial projection or for which usage cannot be predicted or controlled by the physician or physician group.

d. utilizing compensation arrangements and incentive plans which penalize physicians who treat sicker patients;

e. utilizing compensation arrangements and incentive plans which penalize physicians with small practices;

f. failing to utilize compensation and incentives which are risk adjusted for factors which include age, sex, benefit and illness burden;

g. utilizing compensation arrangements and incentive plans which penalize access and referrals to specialists;

h. utilizing capitation arrangements with respect to pools of patients which are not sufficiently large to permit sound actuarial projections;

i. exacting unreasonable high administrative costs and profits from the premiums collected;

j. failing to provide any or adequate reimbursement for emergency and on-call emergency services;

k. failing to pass on Medi-Cal increases to physicians and physician groups providing services to Medi-Cal patients;

l. placing withholds on capitation payments to physicians and physician groups;

m. requiring that physicians and physician groups accept downside risk for institutional providers;

n. failing to disclose the payment for the services to be provided plan members, participants and enrollees;

o. failing to make capitation payments commencing upon the patient's enrollment in the plan;

p. failing to disclose the payment for multiple procedures;

q. failing to provide complete enrollee information;

r. failing to maintain ultimate responsibility for reimbursing physicians for medically necessary care;

s. requiring that physician groups provide letters of credit or maintain unreasonable reserves as a condition of doing business with health plans;

t. improperly utilizing practice guidelines;

u. making improper medical necessity decisions;

v. utilizing fiscal and administrative criteria rather than medical judgment in determining medical care;

w. setting pharmacy risk pool budgets for so-called "shared" risk at unreasonably and unconscionably low levels such that health care providers bear all the risk for pharmacy

claims and lose money on the pharmacy risk pool;

x. failing to provide information about pharmacy risk pool arrangements;

y. not accurately and truthfully accounting for pharmacy risk pools, such as rebates and discounts received from pharmaceutical companies in calculating the costs for pharmacy risk pools

148. The acts or practices described above constitute an unfair, fraudulent, misleading, or unlawful business practice within the meaning of Business and Professions Code section 17200. Such practices are likely to mislead the general public. Many of the practices described above violate the Knox-Keene Act, Health & Safety Code, Section 1340 et seq. and the regulations promulgated in accordance with the Act. The practices set forth above are patently unfair in that physicians and physician groups are wrongfully denied information and monies to which they are entitled and defendants reap large profits at the expense of both physicians and the general public.

149. Defendants' unfair, fraudulent and unlawful business practices are likely to continue absent judicial intervention.

150. As a direct and proximate result of the defendants' conduct, defendants have received and continue to receive payments monies which rightfully belong to plaintiff's membership. Such acts harm the public and threaten the financial viability of physicians.

151. Plaintiff requests an order declaring that defendants' practices violate the Business and Professions Code.

152. Plaintiff requests a permanent injunction pursuant to Business and Professions Code Section 17203 restraining and enjoining defendants from continuing the acts and practices set forth above.

153. Plaintiff requests reasonable attorneys fees and costs of suit under Code of Civil Procedure section 1021.5, since this cause of action is brought to protect the public interest. Plaintiff requests any further relief that the court may deem just and equitable.

**PRAYER FOR RELIEF**

**WHEREFORE**, the plaintiff prays for judgment in its favor and against the defendants in each claim for relief, as well as general and special relief as follows:

A. A declaration regarding Defendants' failure to properly fund the healthcare system and reimburse physicians for services provided to their members.

B. An order declaring that Defendants' practices violate the California Business and Professions Code.

C. An injunction enjoining Defendants from pursuing the fraudulent and extortionate policies and practices complained of herein, including but not limited to:

(1) prohibiting the payment of reimbursement by Defendants which is not adequate to cover the costs of delivering the health care services Defendants have promised Defendants' members,

(2) prohibiting the delegation of undefined or unreasonable risk by Defendants including but not limited to the failure to disclose that information to the physicians and Physician Groups, which is reasonable and necessary to enable them to assess the level of risk to be assumed, and to monitor and/or audit any and all payments, withholds, deductions, surpluses, credits and other financial calculations made by Defendants with respect to the physicians and/or Physician Groups.

(3) prohibiting the failure or refusal of Defendants to provide additional reimbursement to Plaintiff's members (including physicians and Physician Groups) for unanticipated costs and expenses which arise after a

contract with the physicians or Physician Groups has been executed, which relate to medically necessary services the patient requires the Defendants' members require, including, but not limited to, new diagnostic or therapeutic procedures, treatments or devices, immunizations, injectables, or pharmaceutical therapeutics,

(4) prohibiting the failure or refusal of Defendants to disclose the scope of all services to be provided under the contract with the physicians or Physician Groups, the amount of the payment by Defendants to physicians or Physician Groups for such services, and the failure or refusal of Defendants to provide full disclosure of Defendants' methodology for determining the payment for a health care service,

(5) prohibiting the use or enforcement of any definition of medical necessity which is at variance with the professional standard of care,

(6) prohibiting Defendants from making medical necessity determinations without providing appropriate deference to the treating physician's judgment,

(7) prohibiting Defendants, and each of them, from unreasonably using, applying or enforcing medically inappropriate utilization management policies and procedures over which Plaintiffs' membership has no effective input or control and as to which Plaintiffs' membership cannot deviate when necessary to provide medically appropriate patient care without suffering adverse financial or other consequences,

(8) prohibiting Defendants, and each of them, from unreasonably using, applying or enforcing medically inappropriate clinical practice guidelines and/or medical management policies and procedures over which Plaintiffs' membership has no effective input or control and as to which Plaintiffs' membership cannot deviate when necessary to provide medically appropriate patient care without suffering adverse financial or other consequences,

(9) prohibiting Defendants from requiring physicians or Physician Groups to be capitated for services for which there can be no sound actuarial projection, or for which expected usage cannot be predicted or controlled by the physician or Physician Groups, i.e., pharmaceuticals, new diagnostic or therapeutic procedures or treatments, new drugs and devices, organ transplants, etc.,

(10) prohibiting Defendants from imposing a charge for medications to physicians and/or Physician Groups or the Pharmacy Risk Pool which is greater than that actually incurred by Defendants, including, but not limited to, any rebates which have been or will be obtained from the manufacturer or pharmacy by Defendants,

(11) prohibiting Defendants from offsetting pharmacy deficits against other risk pool surpluses or capitation payments,

(12) prohibiting Defendants, and each of them, from unreasonably using, applying or enforcing medically inappropriate patient referral policies and procedures over which Plaintiffs' membership has no effective input or control and as to which Plaintiffs' membership cannot deviate when necessary to provide medically appropriate patient care without suffering adverse financial or other consequences,

(13) prohibiting Defendants, and each of them, from unreasonably using, applying or enforcing medically inappropriate quality improvement programs and audits over which Plaintiffs' membership has no effective input or control and as to which Plaintiffs' membership cannot deviate when necessary to provide medically appropriate patient care without suffering adverse financial or other consequences,

(14) prohibiting Defendants from requiring physicians or Physician Groups to accept capitation with respect to pools of members which are not sufficiently large to permit sound actuarial projections of expected use of covered services,

(15) prohibiting Defendants from imposing withholds,

deductions and/or penalties which impede the provision of medically appropriate services, and/or will adversely impact the solvency of a physician or Physician Group,

(16) prohibiting Defendants from imposing withholds, deductions and/or penalties on capitation payments paid to physicians or Physician Groups under any and all circumstances,

(17) prohibiting Defendants from requiring physicians or Physician Groups to indemnify Defendants for liability arising under the contract between Defendants and the physician or Physician Group, and

(18) prohibiting Defendants from threatening to terminate a physician or Physician Group contract (or otherwise penalize a physician or Physician Group) based upon participation or support of this complaint or concepts in this complaint by such physician or Physician Group,

(19) prohibiting Defendants from charging excessive rates to physicians and/or physician groups for stop-loss insurance and/or requiring physicians and/or physician groups to purchase stop-loss insurance from Defendants,

(20) prohibiting Defendants from revoking and re-assuming claims payment, credentialing and/or utilization management duties delegated to a Physician Group without following policies and procedures previously provided to and mutually agreed to by the Defendants and the Physician Group which allow detailed prior notice of any deficiencies, development of a mutually agreed to corrective action plan, a reasonable cure period, and defined criteria and procedures allowing the Physician Group to become re-delegated for such delegated functions,

(21) if delegated functions are re-assumed by Defendants, prohibiting the failure or refusal to comply with and be held accountable to the Physician Group for compliance with Defendant policies and procedures regarding the re-assumed delegated functions and all applicable state and federal laws and regulations, including, but not limited to,

HCFA laws and regulations and NCQA standards, and

(22) prohibiting Defendants from requiring physicians and/or Physician Groups to accept additional patients from Defendants if the physician and/or Physician Group determines it does not have the clinical or financial capacity to do so;

D. An injunction enjoining Defendants from using or enforcing any current or proposed provider contracts with physicians and/or Physicians Groups, in whole or in part, or policies which compromise medically appropriate patient care or are otherwise unfair or unreasonable set forth above;

E. A permanent injunction pursuant to Business and Professions Code section 17203 restraining and enjoining defendants from continuing the acts and practices set forth above which are in violation of the Business and Professions Code.

F. Costs and reimbursements for this action, including the cost of the suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and reimbursement of expenses and expert fees in amounts to be determined by the Court;

G. Granting such other and further relief as this Honorable Court deems to be just and appropriate.

**JURY DEMAND**

The Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted this 22nd day of February 2001.

LAW OFFICES OF ARCHIE LAMB, LLC
2017 Second Avenue North
2nd Floor
Birmingham, Alabama 35203
(205) 324-4644
Co-Lead Counsel for Provider Plaintiffs

and

PODHURST, ORSECK, JOSEFSBERG, EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
(305) 358-2800 / Fax (305) 358-2382
Co-Liaison Counsel for Plaintiffs

Nicholas B. Roth
EYSTER, KEY, TUBB, WEAVER et al
402 E. Moulton Street
Post Office Box 1607
Decatur, Alabama 35602
Telephone: (256) 353-6761

Jeffery A. Mobley
LOWE, MOBLEY & LOWE
1210 - 21st Street
Post Office Box 576
Haleyville, Alabama 35565
Telephone: (205) 486-5296

Mark Gray
GRAY & WEISS
1400 Citizen Plaza
500 West Jefferson Street
Louisville, Kentucky 40202

Robert Foote
FOOTE & MEYERS
13 South 7th Street
Geneva, Illinois 60134

KOZYAK TROPIN & THROCKMORTON, P.A.
2800 First Union Financial Center
200 S. Biscayne Boulevard
Miami, Florida 33131
(305) 372-1800
Co-Lead Counsel for the Provider Plaintiffs

BY: [signature]
Harley S. Tropin
Fla. Bar No. 241253
Adam M. Moskowitz
Fla. Bar No. 984289
Chae duPont
Fla. Bar No. 979041

Dennis G. Pantazis
GORDON, SILBERMAN, WIGGINS & CHILDS, P.C. 1400 SouthTrust Tower
Birmingham, Alabama 35203
Telephone: (205) 328-0640

Joe Whatley, Jr.
WHATLEY DRAKE, LC
1100 Financial Center
505 North 20th Street
Birmingham, Alabama 35203-4601
Telephone: (205) 328-9576

J. Mark White
WHITE, DUNN & BOOKER
The Massey Building
290 21st Street North
Suite 600
Birmingham, Alabama 35203
Telephone: (205) 323-1888

Guido Saveri (22349)
R. Alexander Saveri (173102)
Cadio Zirpoli
One Embarcadero Center, Suite 1020
San Francisco, California 94111-3600

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail on this 22nd of February, 2001 to all those herein below.

**CHAE A. DUPONT**

Hilarie Bass, Esq.
GREENBERG, TRAURIG
1221 Brickell Avenue
Miami, FL 33131

Eduardo Palmer, Esq.
STEEL, HECTOR & DAVIS
200 South Biscayne Blvd.
Suite 4000
Miami, FL 33131

Edward Crane, Esq.
SKADDEN, ARPS, SLATE et al
333 West Wacker Dr., Suite 2100
Chicago, IL 60606

Michael Nachwalter, Esq.
KENNY NACHWALTER
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131

William Grauer, Esq.
COOLEY GODWARD
4365 Executive Dr., Suite 1100
San Diego, CA 92121

Stan Blumenfeld, Esq.
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Frank Burt, Esq.
JORDAN BURT BOROS, et al
777 Brickell Ave., Suite 500
Miami, Florida 33131

2957 1 184172 1