UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

*NIGHT BOX*
*FILED*

FEB 22 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

MDL NO.: 1334

MASTER FILE NO.: 00-1334-MD-MORENO

THIS DOCUMENT RELATES TO PROVIDER TRACK CASES

IN RE: MANAGED CARE LITIGATION

_____/

**AMENDED COMPLAINT**
**CLASS ACTION**

Rule 23, Fed.R.Civ.P.

LEONARD J. KLAY, M.D.,individually and
on behalf of a class of persons similarly situated,

        Plaintiff,

vs.

PRUDENTIAL INSURANCE COMPANY OF AMERICA;
UNITED HEALTHCARE; UNITED HEALTH GROUP;
AETNA, INC.; AETNA-U.S. HEALTHCARE,
INC.; CIGNA CORPORATION; CONNECTICUT
GENERAL CORPORATION; CIGNA HEALTH
CORPORATION; CIGNA HEALTHCARE;
FOUNDATION HEALTH SYSTEMS, INC.;
PACIFICARE HEALTH SYSTEMS, INC.;
PACIFICARE OPERATIONS, INC.;
WELLPOINT HEALTH NETWORKS, INC.;
        Defendants.

_____/

## LEONARD J. KLAY'S AMENDED COMPLAINT

### I. INTRODUCTION

Plaintiff, by and through his undersigned attorneys, submits the following Amended

I

Complaint as follows:

1.      The individual plaintiff, Leonard J. Klay, M.D., brings this action on behalf of himself and a class of persons similarly situated, which is comprised of individual physicians in California who provided services to members of Defendants' health plans. Plaintiff and the class bring this action because they believe they have been damaged in their business as a result of the pattern of racketeering activity alleged herein, but moreover because they believe the defendants' scheme is detrimental to their patients.

2.      Physicians must receive adequate and timely reimbursement in order to maintain their practices and provide continuity of care that their patients require as a matter of sound medical practice. A stable health care system that fosters a trusting relationship between the physician and patient depends on reimbursement adequate to cover the costs of delivering the health care services patients have been promised by defendants. However, Defendants' failure to provide adequate funding of the health care system has resulted in tremendous hardships for all physicians. Physicians have been forced to suffer from patently unfair contract terms, delays, decreases and denials in payment of claims, and the refusal of defendants to provide the data necessary to enable physicians to evaluate the rates provided and the level of risk they have assumed. Physicians have also been forced to accept, in toto, all of Defendants' insurance products, because of an illegal scheme to tie unrelated products together as a condition of referral of patients.

3.      Defendants, both individually and through collusive activities, set reimbursement rates, including capitation rates, at unconscionably low levels which defendants know or recklessly fail to recognize are not adequate to cover the medical services defendants promise to provide their members and/or know or recklessly disregard are for services for which there can be no sound

2

actuarial projections because expected usage cannot be controlled or predicted. Defendants' economic coercion forces physicians to accept inadequate reimbursement as an alternative to being denied patient referrals. The problems these individual physicians experience are a direct result of Defendants' unlawful activities. This lawsuit seeks to redress the harms suffered by Plaintiffs and the class.

4.      Therefore, Plaintiff and the class seek a declaration regarding Defendants' fraudulent practices as set forth herein. Plaintiff and the class also seek injunctive and declaratory relief from Defendants' wrongful interference and coercive actions. Plaintiff and the class further seek monetary and treble damages suffered by them to their business and property, and restitution, as well as attorneys fees and costs for bringing this suit.

5.      Plaintiffs bring this individual and class action against The Prudential Insurance Company of America, which has undertaken a common scheme to further its own financial interests at the expense of Plaintiffs and the class and their patients. Plaintiffs' claims as to this defendant group involve common factual patterns and common legal principles. The Prudential healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The Prudential healthcare plans are collectively referred to as the "Prudential health plan" or "Prudential health plans". Defendant Prudential, and its subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The Prudential healthcare plans are not charged as defendants in this Complaint. The defendants and the Prudential healthcare plans are collectively referred to as "Prudential" unless otherwise specified.

6.      Plaintiffs bring this individual and class action against United Healthcare and United

3

Health Group, which have undertaken a common scheme to further their own financial interests at the expense of Plaintiffs and the class and their patients. Plaintiffs' claims as to this defendant group involve common factual patterns and common legal principles. The United healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The United healthcare plans are collectively referred to as the "United health plan" or "United health plans". Defendants United, and their subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The United healthcare plans are not charged as defendants in this Complaint. The defendants and the United healthcare plans are collectively referred to as "United" unless otherwise specified.

7.      Plaintiff brings this individual and class action against Aetna, Inc. and Aetna-U.S. Healthcare, Inc. ("Aetna"), which have undertaken a common scheme to further their own financial interests at the expense of Plaintiff and the class and their patients. Plaintiff's claims as to this defendant group involve common factual patterns and common legal principles. The Aetna healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The Aetna healthcare plans are collectively referred to as the "Aetna health plan" or "Aetna health plans". Defendants Aetna, and their subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The Aetna healthcare plans are not charged as defendants in this Complaint. The defendants and the Aetna healthcare plans are collectively referred to as "Aetna" unless otherwise specified.

8.      Plaintiff brings this individual and class action against CIGNA Corporation,

4

Connecticut General Corporation, CIGNA Health Corporation and CIGNA Healthcare, which have undertaken a common scheme to further their own financial interests at the expense of Plaintiff and the class and their patients. Plaintiff's claims as to this defendant group involve common factual patterns and common legal principles. The CIGNA healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The CIGNA healthcare plans are collectively referred to as the "CIGNA health plan" or "CIGNA health plans". Defendants CIGNA, and their subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The CIGNA healthcare plans are not charged as defendants in this Complaint. The defendants and the CIGNA healthcare plans are collectively referred to as "CIGNA" unless otherwise specified.

9.      Plaintiff brings this individual and class action against Foundation Health Systems, Inc., which has undertaken a common scheme to further its own financial interests at the expense of Plaintiff and the class and their patients. Plaintiff's claims as to this defendant group involve common factual patterns and common legal principles. More specifically, Plaintiff bring this action against Foundation Health Systems, Inc. ("Foundation"). The Foundation healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The Foundation healthcare plans are collectively referred to as the "Foundation health plan" or "Foundation health plans". Defendants Foundation, and their subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The Foundation healthcare plans are not charged as defendants in this Complaint. The defendants and the Foundation healthcare plans are collectively referred to as "Foundation" unless otherwise specified.

5

10. Plaintiff brings this individual and class action against PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc., which have undertaken a common scheme to further their own financial interests at the expense of Plaintiff and the class and their patients. More specifically, Plaintiff bring this action against PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc. ("PacifiCare"). The PacifiCare healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The PacifiCare healthcare plans are collectively referred to as the "PacifiCare health plan" or "PacifiCare health plans". Defendants PacifiCare, and their subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The PacifiCare healthcare plans are not charged as defendants in this Complaint. The defendants and the PacifiCare healthcare plans are collectively referred to as "PacifiCare" unless otherwise specified.

11. Plaintiff brings this individual and class action against Wellpoint Health Networks, Inc., which has undertaken a common scheme to further its own financial interests at the expense of Plaintiff and the class and their patients. Plaintiff's claims as to this defendant group involve common factual patterns and common legal principles. The Wellpoint healthcare plans are alleged herein to be aiders, abettors and co-conspirators with each other. The Wellpoint healthcare plans are collectively referred to as the "Wellpoint health plan" or "Wellpoint health plans". Defendant Wellpoint, and its subsidiaries, operate health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and point of service ("POS") health plans in various states across the nation. The Wellpoint healthcare plans are not charged as defendants in this Complaint. The defendant and the Wellpoint healthcare plans are collectively referred to as "Wellpoint" unless otherwise specified.

6

## II. JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § § 1961, 1962, 1964, 29 U.S.C. 1001 *et seq.*, 15 U.S.C. § 1 *et seq.*, and 28 U.S.C. § § 1331, 1337 and 1367. The Court has personal jurisdiction over the defendants pursuant to 18 U.S.C. § § 1965(b) and (d).

13.     Venue is proper in this district pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b).

## III. PARTIES

14.     Plaintiff, Leonard J. Klay, is a physician who currently treats or has treated patients who are members of Pacificare health plans, Aetna health plans, Cigna health plans, Prudential health plans, United health plans, Wellpoint health plans, and Foundation health plans. Plaintiff is a resident of the State of California and a citizen of the United States of America.

15.     Defendant Prudential Insurance Company of America is a Delaware corporation and is the parent corporation of Prudential Health Care Plan, Inc. Prudential's corporate headquarters are located at Newark, New Jersey.

16.     The Prudential defendants are the parent corporation(s) of a number of subsidiaries that provide health care services.

17.     Through these entities (also collectively referred to as the "Prudential Health Plans," unless otherwise specified), Prudential operated HMOs, PPOs, and POS plans nationwide during the relevant period herein alleged and conducted.

18.     Defendant United Health Group ("United") is a Minnesota corporation and the parent corporation of the entities that operate the United health plans. United's headquarters are located

7

at 300 Opus Center, 9900 Bren Road East in Minnetonka, Minnesota.  In its 1998 Form 10K/A filed

with the Securities and Exchange Commission ("SEC"), United also refers to itself as United

HealthCare Corporation.

19.     Defendant United HealthCare ("UHC") is the subsidiary of United that operates

organized health systems.  According to the aforementioned SEC filing, it has majority ownership

of health plans operating in approximately 40 markets nationwide and in Puerto Rico.

20.     The United defendants are the parent corporation(s) of a number of subsidiaries that

provide health care services.

21.     UHC is responsible for the distribution of the advertising, marketing, and membership

materials described herein for all of its HMOs, PPOs, and POS plans.  Additionally, UHC and the

United Health Plans are responsible for the preparation and distribution of the provider agreements

entered into between the United Health Plans and United's healthcare providers for all the

defendants' HMOs, PPOs, and POS plans.

22.     Defendant Aetna, Inc. is a Connecticut corporation and the parent corporation of

Aetna-USHC Inc.  Aetna, Inc.'s corporate headquarters is located at 151 Farmington Avenue,

Hartford, Connecticut 06156.

23.     Defendant Aetna-USHC, Inc. ("Aetna-USHC") is a Pennsylvania corporation, located

at 980 Jolly Road, P. O. Box 1109, Blue Bell, Pennsylvania 19422-0770.  Aetna-USHC is the

wholly-owned subsidiary of Aetna, Inc.  Aetna-USHC provides health services to the public through

four individual health products: HMOs, PPOs, POS plans, and Indemnity Plans.

24.     The Aetna healthcare plans are collectively referred to as the "Aetna Health Plans."

Aetna-USHC operates HMOs, POS plans, and PPOs nationwide through such plans.  Aetna, through

8

Aetna-USHC, acquired the MCO operations of defendant Prudential on or about August 6, 1999.

25.       Aetna, Inc., Aetna-USHC, and the Aetna Health Plans are responsible for the distribution of the advertising, marketing, and membership materials described herein for all the defendants' HMOs, POS plans, and PPOs. Additionally, Aetna, Inc. Aetna-USHC, and the Aetna Health Plans are responsible for the preparation and distribution of the provider agreements entered into between Aetna Health Plans and Aetna's healthcare providers, for all the defendants' HMOs, POS plans, and PPOs.

26.       Defendant CIGNA Corporation is a Delaware corporation with corporate headquarters at One Liberty Place, Philadelphia, Pennsylvania, 19192.  CIGNA is publicly traded on the New York Stock Exchange under the stock symbol "CI."

27.       Defendant CIGNA Health Corporation is a Delaware corporation with corporate headquarters at One Liberty Place, Philadelphia, Pennsylvania.

28.       CIGNA's healthcare products are marketed in all 50 states.  It has managed care networks serving 45 states and the District of Columbia.

29.       The CIGNA defendants are the parent corporation(s) of a number of subsidiaries that provide health care services.

30.       Defendant Foundation Health Systems, Inc. ("FHS") is a Delaware corporation and the parent corporation of the entities that operate its health plans throughout the United States.  FHS' headquarters are located at 33120 Lake Center Drive in Santa Ana, California.  Foundation Health System, Inc. has merged with Health Net.  Hereinafter, any reference to "Foundation" includes reference to "Health Net."

31.       The Foundation defendants are the parent corporation(s) of a number of subsidiaries

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

that provide health care services.

32.     Through these entities (also collectively referred to as the "Foundation Health Plans," unless otherwise specified), FHS operates HMOs, PPOs, and POS plans nationwide.

33.     Defendant Pacificare Health Systems, Inc. ("PHS") is a Delaware corporation with its headquarters located at 33120 Lake Center Drive, in Santa Ana, California.

34.     The PacifiCare defendants are the parent corporation(s) of a number of subsidiaries that provide health care services.

35.     Through these entities (also collectively referred to as the "PacifiCare Health Plans" unless otherwise specified), PHS operates HMOs, PPOs, POS plans, and indemnity health plans nationwide.

36.     Defendant Wellpoint Health Networks, Inc. is a California corporation, with corporate headquarters at One WellPoint Way, Thousand Oaks, California 91362.

37.     Defendant Wellpoint Health Networks, Inc. is a health plan which operates and administers Wellpoint healthcare and the numerous Wellpoint health plans in California and throughout the United States.

38.     The Wellpoint defendants are the parent corporation(s) of a number of subsidiaries that provide health care services.

39.     Each defendant is responsible for the distribution of the advertising, marketing, and membership materials described herein for its respective Health Plans. Additionally, each defendant is responsible for the preparation and distribution of its provider agreements entered into between itself and its healthcare providers for all of its Health Plans.

40.     Whenever this Complaint alleges that any defendant did any act or thing, it is meant

10

that it or its directors and/or its subsidiaries, affiliates, directors, officers, agents, or employees performed or participated in such act or thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of each defendant performed or participated in such act or thing, they were authorized to and did in fact act on behalf of that defendant.

41.     Whenever this Complaint alleges that Prudential did any act or thing, it is meant that Prudential, and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of Prudential performed or participated in such act or thing, they were authorized to and did in fact act on behalf of Prudential.

42.     At all relevant times, each Prudential defendant and Prudential health plan was an agent and/or employer of the other Prudential defendants and Prudential health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.  All actions of the Prudential defendants and Prudential health plans alleged herein were ratified and approved by the other respective Prudential defendants and Prudential health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

43.     At all relevant times, each Prudential plan co-conspirator was respectively an agent and/or employer of each and every other Prudential plan co-conspirator and the respective

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

defendants. In committing the acts alleged herein, the Prudential plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other Prudential plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

44.    All actions of the Prudential plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective Prudential plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

45.    Whenever this Complaint alleges that United did any act or thing, it is meant that United Healthcare, and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of United Healthcare, performed or participated in such act or thing, they were authorized to and did in fact act on behalf of United Healthcare.

46.    At all relevant times, each United defendant and United health plan was an agent and/or employer of the other United defendants and United health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described

12

herein. All actions of the United defendants and United health plans alleged herein were ratified and approved by the other respective United defendants and United health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

47.    At all relevant times, each United plan co-conspirator was respectively an agent and/or employer of each and every other United plan co-conspirator and the respective defendants. In committing the acts alleged herein, the United plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other United plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

48.    All actions of the United plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective United plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

49.    Whenever this Complaint alleges that Aetna did any act or thing, it is meant that Aetna, and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of Aetna performed or participated

13

in such act or thing, they were authorized to and did in fact act on behalf of Aetna.

50.     At all relevant times, each Aetna defendant and Aetna health plan was an agent and/or employer of the other Aetna defendants and Aetna health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.  All actions of the Aetna defendants and Aetna health plans alleged herein were ratified and approved by the other respective Aetna defendants and Aetna health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

51.     At all relevant times, each Aetna plan co-conspirator was respectively an agent and/or employer of each and every other Aetna plan co-conspirator and the respective defendants.  In committing the acts alleged herein, the Aetna plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other Aetna plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

52.     All actions of the Aetna plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective Aetna plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

representations to the Plaintiff.

53.     Whenever this Complaint alleges that CIGNA did any act or thing, it is meant that CIGNA., and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of CIGNA performed or participated in such act or thing, they were authorized to and did in fact act on behalf of CIGNA.

54.     At all relevant times, each CIGNA defendant and CIGNA health plan was an agent and/or employer of the other CIGNA defendants and CIGNA health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein. All actions of the CIGNA defendants and CIGNA health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

55.     At all relevant times, each CIGNA plan co-conspirator was respectively an agent and/or employer of each and every other CIGNA plan co-conspirator and the respective defendants. In committing the acts alleged herein, the CIGNA plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other CIGNA plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

15

56.     All actions of the CIGNA plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective CIGNA plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

57.     Whenever this Complaint alleges that Foundation did any act or thing, it is meant that Foundation Health Systems, Inc., and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of Foundation Health Systems, Inc. performed or participated in such act or thing, they were authorized to and did in fact act on behalf of Foundation Health Systems, Inc.

58.     At all relevant times, each Foundation defendant and Foundation health plan was an agent and/or employer of the other Foundation defendants and Foundation health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein. All actions of the Foundation defendants and Foundation health plans alleged herein were ratified and approved by the other respective Foundation defendants and Foundation health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

representations to the Plaintiff.

59.    At all relevant times, each Foundation plan co-conspirator was respectively an agent and/or employer of each and every other Foundation plan co-conspirator and the respective defendants. In committing the acts alleged herein, the Foundation plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other Foundation plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

60.    All actions of the Foundation plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective Foundation plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

61.    Whenever this Complaint alleges that PacifiCare did any act or thing, it is meant that PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc., and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc. performed or participated in such act or thing, they were authorized to and did in fact act on behalf of PacifiCare Health Systems, Inc. and PacifiCare Operations, Inc.

62.    At all relevant times, each PacifiCare defendant and PacifiCare health plan was an

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131  •  TEL. (305) 372-1800

agent and/or employer of the other PacifiCare defendants and PacifiCare health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein. All actions of the PacifiCare defendants and PacifiCare health plans alleged herein were ratified and approved by the other respective PacifiCare defendants and PacifiCare health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

63.     At all relevant times, each PacifiCare plan co-conspirator was respectively an agent and/or employer of each and every other PacifiCare plan co-conspirator and the respective defendants. In committing the acts alleged herein, the PacifiCare plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other PacifiCare plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

64.     All actions of the PacifiCare plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective PacifiCare plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

and to representations to the Plaintiff.

65.     Whenever this Complaint alleges that Wellpoint did any act or thing, it is meant that Wellpoint of California, Inc., and the directors of said entities, or their subsidiaries, affiliates, directors, officers, agents, or employees who performed or participated in such thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents, or employees of Wellpoint of California, Inc. performed or participated in such act or thing, they were authorized to and did in fact act on behalf of Wellpoint of California, Inc.

66.     At all relevant times, each Wellpoint defendant and Wellpoint health plan was an agent and/or employer of the other Wellpoint defendants and Wellpoint health plans. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein. All actions of the Wellpoint defendants and Wellpoint health plans alleged herein were ratified and approved by the other respective Wellpoint defendants and Wellpoint health plans or their respective officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

67.     At all relevant times, each Wellpoint plan co-conspirator was respectively an agent and/or employer of each and every other Wellpoint plan co-conspirator and the respective defendants. In committing the acts alleged herein, the Wellpoint plan co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent,

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

permission, authorization and knowledge of each of the other Wellpoint plan co-conspirators and defendants respectively, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

68.    All actions of the Wellpoint plan co-conspirators and the respective defendants alleged herein were ratified and approved by the other respective Wellpoint plan co-conspirators and the respective defendants or their officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even though the overt and predicate acts in furtherance of the conspiracy and aiding and abetting violations set forth herein have been and are contrary to stated corporate policy and to representations to the Plaintiff.

69.    As defendants have engaged in the unlawful overt and predicate acts against the Physicians Groups, the Physicians Groups are not co-conspirators or otherwise involved in the aiding or abetting of the violations set forth herein.

### IV. CLASS ALLEGATIONS

70.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

71.    The plaintiff brings this action on his own behalf and, pursuant to Rule 23(b)(1)(A), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of himself and the statewide class of all persons defined as:

All individual physicians, in California, who provided services to members of Defendants' health plans during the class period from January 1990 to the present date (the "class period").

72.    The named plaintiff and the alleged class each and all have tangible and legally protectable interests at stake in this action. Specifically, each class member, as a physician providing

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

services under Defendants' healthcare plans, is entitled to reasonably expect he or she will be adequately compensated as bargained for, and further that he or she will be able to provide healthcare services free of economic coercion, extortion, and mononpolistic restraint of trade.

73.   The claims of the named class representative and the absent class members have a common origin and share a common basis. The claims of all class members originate from the same heavy-handed and extortionate and fraudulent practices of the defendants.

74.   The proposed class representative states a claim for which relief can be granted that is typical of the claims of absent class members. If brought and prosecuted individually, each class member would necessarily be required to prove the instant claim upon the same material and substantive facts, upon the same remedial theories and would be seeking the same relief.

75.   The claims and remedial theories pursued by the named class representative are sufficiently aligned with the interests of absent class members and ensure that the universal claim of the class will be prosecuted with diligence and care by the plaintiff as representative of the class.

76.   The members of the class ("class members") are so numerous that joinder of all members is impracticable. Defendants offer managed care services to millions of subscribers and accomplish this through the services of thousands of physicians. The class of physicians, however, is ascertainable as the names and addresses of all class members can be identified in business records maintained by the defendants.

77.   There are questions of law and fact common to the class. Such common questions include, *inter alia*:

> a.   Whether Defendants conspired and aided and abetted each other in furtherance of the unlawful acts alleged herein;

21

b.   Whether Defendants engaged in a pattern of racketeering activity and violated RICO;

c.   Whether Defendants' overt and/or predicate acts in furtherance of the conspiracy and/or aiding and abetting proximately caused and causes injury to the plaintiff and class members' business or property or irreparably harmed and harms the plaintiff and the class and if so, the appropriate relief to which they are entitled;

d.   Whether Defendants' acts and practices constitute violations of applicable law for which Plaintiff and members of the class are entitled to recover restitution or damages or for which disgorgement of ill-gotten monies is appropriate;

e.   Whether Defendants' requirement that Plaintiff and the class accept Defendants' "all products" requirements was extortionate;

f.   Whether Defendants set payment rates which are not sufficient to adequately reimburse physicians for the provision of health services to plan members, participants, and enrollees;

g.   Whether Defendants failed to utilize compensation and incentives which are risk adjusted for factors which include age, sex, benefit, and illness burden;

h.   Whether the Defendants utilize capitation arrangements with respect to pools of patients which are not sufficiently large to permit sound actuarial projections;

i.   Whether Defendants have failed to compensate Plaintiff and the class as assignees of benefit plans;

j.   Whether Defendants violated the OBRA "Clean-Claim Payment" Regulations, 42 C.F. R. § 417.500(a)(6);

k.   Whether Defendants violated California Business and Professions Code §17200;

l.   Whether Defendants are liable to plaintiff and the class under quantum meruit;

m.   Whether Defendants have been unjustly enriched through the activities described herein.

78.   The prosecution of separate actions by individual members of the plaintiff class

22

against the defendants would create a risk of inconsistent adjudications on the common issues of law or fact material to this action. The thousands of physicians who contract with these health plans would, except for this cause being permitted to proceed as a class, necessitate separate actions across the United States to obtain similar relief based upon the same legal theories. It is from such large numbers of separate actions that there is the risk of incompatible standards of health plan conduct of the type complained of herein.

79.    Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

80.    Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate final relief with respect to the class as a whole. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. Such incompatible standards, inconsistent or varying adjudications on what, of necessity, would be the same essential facts, proof and legal theories, would create and allow to exist inconsistent and incompatible rights within the plaintiff class. Further, the failure to permit this cause to proceed as a class action under Rule 23(b)(1)(A) would be contrary to the beneficial and salutary public policy of judicial economy in avoiding a multiplicity of similar actions. The plaintiff also alleges that declaratory and injunctive relief are appropriate for the class as a whole, making certification appropriate under Rule 23(b)(2). The plaintiff also alleges that questions of law and fact applicable to the class predominate over individual questions and that a class action is superior to other available methods for the fair and

23

efficient adjudication of the controversy. Therefore, certification is appropriate under Rule 23(b)(3). Failure to permit this action to proceed under Rule 23 would be contrary to the public policy encouraging the economies of attorney and litigant time and resources. In addition, public policy and the authorities under Rule 23 favor class actions for the purpose of, *inter alia*, deterring wrongdoing and providing judicial relief for individually small, commonly based claims.

81.    The named plaintiff alleges that he is willing and prepared to serve the court and proposed class in a representatives capacity with all of the obligations and duties material thereto.

82.    The self-interest of the named class representative is co-extensive with and not antagonistic to those of the absent class members. The proposed representative will undertake to well and truly protect the interests of the absent class members.

83.    The named plaintiff has engaged the services of counsel indicated below. The said counsel are experienced in complex class litigation and will adequately prosecute this action and will assert, protect and otherwise represent well the named class representatives and absent class members.

84.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the class is impracticable. There will be no difficulty in the management of this action as a class action.

85.    The plaintiff will fairly and adequately protect the interest of the class and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the class.

86.    Plaintiff avers that there exists no administrative remedies available to him prior to bringing this suit, and even where administrative remedies are allegedly available, the exercise of

24

same is futile.

## VII.   FACTUAL ALLEGATIONS COMMON TO ALL COUNTS
## AGAINST ALL DEFENDANTS

87.    This case arises from Defendants' systematic, intentional and wrongful refusal to properly pay and reimburse healthcare providers for medical services rendered to Defendants' insureds.  Defendants have adopted systematic internal procedures designed to wrongfully deny payment to providers and to avoid, obstruct, and delay payment and reimbursement to medical providers.

88.    The Defendants pay doctors through two types of agreements: capitation and fee for service.

89.    All of the substantive practices, policies, and procedures of the Defendants' health plans are established, implemented, monitored and ratified by the Defendants themselves.  The local subsidiaries of the named Defendants do not function as independent corporate entities but rather have an alter-ego relationship with the named Defendants which generally direct and control the operations of said subsidiaries.

90.    The provider agreements, and standard industry practice, require the physician providers to follow billing procedures based upon fee schedules and the codes for current procedural terminology recognized by medical providers and insurers (hereinafter referred to as "CPT codes").  CPT codes are applicable to various procedures and services rendered by medical providers including the Plaintiff and the class members.

91.    The provider agreements along with standard industry practices typically require the Defendants to pay the physicians according to fee schedules such as those promulgated by

25

Defendants, Medicare or other fee schedules. Such fee schedules are based upon the CPT code system. That is, a particular procedure or service is identified or designated by a particular CPT code and the applicable fee schedule (whether promulgated by Defendants, Medicare, or otherwise) in turn, establishes a fee or charge for each such CPT code.

92. The provider agreements also typically provide that the physician providers shall adhere to Defendants' policies and procedures set out in a physician administration manual (the "Physicians Manual"). The Manual obligates Defendants, among other things, to base coverage decisions on medical necessity.

93. Each of the Defendants' own provider agreements and manuals are standard and uniform in all respects relevant to Plaintiff's claims and the claims of Class Members. Each of the separate Defendants' manuals contain the same or similar definitions of medical necessity and each is uniform in providing for payment according to applicable fee schedules and the CPT Code system.

94. In their provider agreements and standard physician's manuals, as well as other standard brochures and materials provided to class members, Defendants have consistently represented that their coverage and treatment decisions and their payments and reimbursements to providers, would be on the basis of medical necessity and applicable CPT codes.

95. However, contrary to their agreements and representations to class members, Defendants have each adopted internal policies and procedures specifically designed to systematically obstruct, reduce, delay and deny payments and reimbursements to health care providers. The wrongful internal policies and procedures of Defendants are discussed in detail below "common factual allegations." The misrepresentations in Defendants' standard provider agreements, physician's manuals and other purported disclosures to class members by each

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

Defendant are uniform in all material respects and uniformly conceal each Defendants' wrongful internal policies and procedures.

96.     In addition, Defendants systematically target, coerce, threaten and intimidate providers who objected to Defendants wrongful practices. Specifically, Defendants have utilized computer programs to target physicians who provide medically necessary services. These computer programs are based upon inappropriate criteria unrelated to medical necessity. Defendants identify such physicians as "outliers" and Defendants then threaten and intimidate physicians with retaliation, audits, arbitrary claims denials and expulsion from Defendants' networks.

97.     Having made the omissions identified below, Defendants also misrepresent to plaintiff and the class that treatment and coverage decisions under Defendants health plans are based on their definition of "Medical Necessity". This representation is an affirmative misrepresentation because Defendants know that they (and entities to whom Defendants delegate responsibility for administering their Health Plans) make treatment and coverage decisions on the basis of cost-based criteria and financial incentives unrelated to, and more restrictive than, their own definitions of "Medical Necessity", with the effect of reducing the reimbursement levels below the value of the health services provided by Plaintiff and the Class.

98.     Defendants fail to disclose that Defendants provide direct cash bonuses and other financial incentives to claims reviewers who deny claims for service or limit hospital admissions and stays regardless of whether those claims or hospital admissions otherwise satisfied their own definitions of "Medical Necessity". The bonuses and financial incentives include direct bonus payments and other benefits to claim reviewers who deny a certain percentage or absolute number of submitted claims for hospital costs from Plaintiff and the Class, irrespective whether the

27

submitted claims satisfied their own definition of "Medical Necessity".

99.    Defendants fail to disclose that in addition to, or in place of, their own definitions of "Medical Necessity", Defendants utilize undisclosed cost-based criteria, to approve or deny benefit claims by Plaintiff and the Class. These undisclosed cost-based criteria include defendants' own guidelines and criteria, as well as guidelines and criteria of third parties, who remain undisclosed to Plaintiff and the Class. While these undisclosed cost-based criteria vary in detail, they share one critical dimension: in whole or in part, they all base coverage determinations on considerations other than realistic medical necessity and contrary to their own definitions of the term "Medical Necessity" as set forth by the Defendants. All undisclosed cost-based criteria therefore are designed to reduce the reimbursement and payment amounts to points below the actual cost of Plaintiff and the class' provision of truly medically necessary services. By failing to disclose the existence and use of these cost-based criteria to class members, and by affirmatively misrepresenting to class members that coverage decisions would be made based on Defendants' "Medical Necessity" definitions, Defendants are able to unjustly enrich themselves at the expense of Plaintiff and the class.

100.    Defendants fail to disclose that Defendants subcontract to third parties, the responsibility and authority to review claims and manage benefits, for certain medical conditions and medical procedures.

101.    Specifically, Defendants have delegated the making of claims determinations to third party corporations such as Milliman & Robertson, a firm of actuaries and consultants, to provide services relating to the review of claims and the payment of claims. In concert with Millimen & Robertson, Defendants have developed purported actuarial criteria, unrelated to medical necessity for the purpose of wrongfully denying payment of claims and reducing payments to providers.

28

102.    In determining payment eligibility for claims submitted by Plaintiff and the class, these third parties use different criteria from and more restrictive than, the Defendants definitions of "Medical Necessity".

103.    Defendants fail to disclose that in determining payment eligibility for claims submitted by Plaintiff and the class, Defendants, as well as third parties with which Defendants subcontract, use both physicians and non-physicians who lack the training and specialization necessary to determine whether particular benefits should be provided in accordance with Defendants definition of "Medical Necessity."

104.    Defendants also engage in undisclosed automatic "downcoding" of claims submitted by physicians, a process whereby (among other things) Defendants arbitrarily, and without prior notice, will change the benefits code assigned to rendered services so as to reduce the payments due physicians. Arbitrary or automatic downcoding results in a wrongful failure to properly pay Plaintiff and the class for services rendered.

105.    Defendants also engage in undisclosed automatic "bundling" of claims submitted by physicians, a process whereby (among other things) Defendants arbitrarily, and without prior notice, will combine the benefits codes of two or more procedures in order to reduce the payments due physicians for the health services they provide.  Arbitrary or automatic bundling results in a wrongful failure to properly pay Plaintiff and the class for services rendered.

106.    Defendants purposefully created centralized structures to carry out its fraudulent scheme of misleading statements and material omissions in disclosures to plaintiff and the class. Through the centralized structures, Defendant knowingly and intentionally:

1.    Maintain centralized control over the content of the provider agreements,

29

physician manuals and related documents.

2.      Maintain centralized control over, and deceive Plaintiff and the class with respect to, the existence and use of undisclosed cost-based criteria;

3.      Maintain control, implement, and deceive Plaintiff and the class with respect to claims reviewer bonuses, that provide for direct bonus payments and other benefits to claim reviewers who deny a certain percentage or absolute number of submitted claims from Plaintiff and the class

4.      Maintain centralized control over, arrange for, and deceive Plaintiff and the class with respect to subcontracts to third parties, for the review of claims and the management of providing benefits for certain medical conditions and medical procedures.

5.      Maintain central control over, and preclude disclosure to Plaintiff and the class of the undisclosed cost-based criteria used to determine whether to approve or deny reimbursement of claims by Plaintiff and the class, including without limitation, guidelines and criteria developed and/or used by undisclosed third parties.

6.      Maintain centralized control over, and preclude disclosure to Plaintiff and the class of, subcontracts to third parties, for the review of claims and the management of providing benefits for certain medical conditions and medical procedures.

107.    Contrary to misrepresentations that physicians cannot be penalized for filing a complaint or appeal, Defendants fail to provide a reasonable mechanism for their physicians to

30

appeal a Defendants' decision regarding medical necessity or the funding necessary to provide the care. Instead, the appeals process, (where it exists), is created and applied in an arbitrary, confusing, costly and overly-time consuming manner designed to discourage the physician from appealing the Defendants' determination of "medical necessity" or reimbursement.

108.    Defendants base their funding and coverage decisions on their own fiscal determinations and are not bound by the medical necessity decisions of Plaintiff and the class or sound actuarial projections as to what it actually costs to provide the medically appropriate care Plaintiff and the class provide to Defendants' members.

109.    Defendants' formularies or lists of covered prescription drugs are subject to change at Defendants' discretion. Defendants' decisions to remove a drug, even in the middle of treatment, is based upon financial considerations and incentives from pharmaceutical manufacturers rather than the members' healthcare need or the physicians' medical expertise. Such decisions are based solely on cost without consideration of the efficacy or the potency of the drug.

110.    Defendants' create ostensibly "shared" risk pools for provision of pharmacy services. In the event a pool falls short, the parties are required to make up the shortage in accordance with a contractually pre-determined split.

111.    Although the risk is presumably "shared", Defendants base their funding of the risk pools on projections, which they know are unsound, (assuming any projection could be sound), and which Defendants know are inadequate to cover the reasonably foreseeable costs of providing pharmacy services to their patients. This information, however, is concealed from plaintiff and the class, who likewise have no input into the creation of the risk pool arrangement. As a result, Defendants' own "risk" in these pharmaceutical pools is no risk at all, and represents yet another

31

method by which Defendants secretly shift the costs of providing healthcare to Plaintiffs and the class.

112.    For example, Defendants set reimbursement rates at unreasonably low levels which are not sufficient to cover the cost of providing the services promised under their policies.  By providing reimbursement that is too low to cover the cost of providing medically appropriate care, Defendants attempt to illegally exert control over the range of services a physician can realistically provide.

113.    Defendants have also utilized their overwhelming and dominant economic and market power to coerce Plaintiff and the class into accepting contracts and Defendants' policies and practices on a "take it or leave it" basis, whereby in order for physicians to see and treat members of Defendants' various health plans, physicians are required to provide health care services for patients covered by capitated insurance along with patients covered by fee for service insurance. Defendants' refusal to negotiate regarding policies, practices, payment rates, and contract provisions directly injures plaintiff and the class who are forced to accept "all products" of health insurance reimbursement put forth by Defendants in lieu of being denied patient referrals or even "black-listed" by Defendants altogether.

114.    Through their market dominance, Defendants have also maintained a policy and practice of retaining the power to unilaterally amend the terms of their physician contracts, including fee structures and clinical protocols and procedures.

115.    Through their overall dominance of the health insurance industry, Defendants have engaged in extortionate conduct through the use of their restrictive "all products" requirements.  Not only is this arrangement unconscionable as an illegal restraint of trade in interstate commerce, but

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131  •  TEL. (305) 372-1800

it is also a method by which Defendants' extort plaintiff and the class.

116. Furthermore, Plaintiff and the class must also bear the burden of ever-increasing expenditures of administrative time and expense, all without compensation, to the detriment of their business and property.

117. As explained herein, each of the defendants engages in fraudulent and deceptive healthcare and health management practices that are unlawful pursuant to the provisions of RICO and ERISA. Plaintiff allege that those similar or identical practices are not undertaken in isolation by each defendant, but are instead undertaken in adherence to an agreed-upon industry-wide approach to managed care, developed and perpetuated in conjunction with the Non-Managed Care Organization ("MCO") co-conspirators.

118. These third-party Non-MCO co-conspirators create and promulgate reimbursement guidelines that effect reimbursement levels below the actual cost of the healthcare services provided by Plaintiff and the Class. This conspiracy involves, *inter alia*: (1) the development and adoption of clinical practice guidelines and related healthcare review criteria; (2) the joint development of accreditation standards by the managed healthcare industry; (3) participation in trade associations that develop common industry standards and/or act as vehicles by which their members could exchange sensitive business information or otherwise collude; and (4) the use of industry informational sources to facilitate such collusion.

119. As a proximate result of Defendants' scheme and artifice to defraud plaintiff and the class, extortion and coercion through use of monopolistic and anti-competitive pressures created by Defendants' dominance of the market, Plaintiff and the class have suffered direct injury to their property rights.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

120.   Defendants have also concealed from Plaintiff and the class their own collusive activities in which all Defendants are engaged in their domination, and control over the health insurance business in the United States.   Through their collusive efforts, along with the aid and assistance (and through the use of) other third-party co-conspirators, Defendants have engaged in a scheme to artificially set healthcare reimbursement rates to physicians, without regard to actuarial soundness of those rates.   Furthermore, Defendants have also acted in restraint of interstate commerce and trade through their illegal use of "all products" or tying arrangements in negotiation with physicians.   These arrangements are illegally offered to physicians in a "take it or leave it" basis, leaving the plaintiff and the class with no meaningful choice but to accept Defendants' bargaining terms, no matter how oppressive, or risk losing all patients and/or patient referrals.

121.   The Defendants pay some doctors through Capitation as opposed to fee for services. Capitation involves payments made in advance in a set amount per month for each member who the doctors have agreed to service.   Nevertheless, Capitation is part of the same scheme that the Defendants have used to enrich themselves and to defraud doctors of substantial sums of money.

122.   The Plaintiffs have already presented significant explanation of how the Defendants systematically defraud and undercompensate doctors in the fee for services basis.   Examples are bundling and down-coding of the services.   Likewise, the Defendants' scheme in the Capitation area involves systematic fraud which occurs at several stages:

    A.   First, the Defendants retain excessive amounts of the premium dollar paid by the insured members, before making Capitation payments to health care providers. The Defendants deduct inappropriate amounts before calculating the amounts due to physicians and other health care providers in the Capitated

34

arrangements. Among other things, the Defendants invest these withheld amounts in the investment enterprise alleged in this Amended Complaint.

B.   Second, Defendants refuse to begin paying Capitation immediately upon enrollment of the members. They retain premiums from the members until the members need services from physicians. The failure to assign immediately not only defrauds doctors, it also undermines the actuarial assumptions on which Capitated arrangements are necessarily based. The rationale of Capitation is that the doctor services a group of patients, only some of which need services in a given month. The Capitated payments for the "well" members help to compensate for the services provided to the "sick" members. If there are not enough well members, then the doctors provide more services that the Capitated payments will support. The incentive that makes the system work is that the doctor has an incentive to keep as many patients as possible well and therefore engages in preventive healthcare. If the Defendants delay assignment of the members until they are sick, then the doctors are clearly defrauded.

C.   Third, the Defendants have defrauded doctors through misuse of "risk" pools in the pharmaceutical and hospital areas. Under these pools, doctors pay for part of the costs and theoretically should share in part of the savings from hospital and pharmaceutical services and products. If the doctors use preventive care to keep patients from having to be hospitalized and to keep them from having to take prescription drugs, then they can benefit under such arrangements. However, the Defendants have routinely charged physicians for

35

hospital services and prescription drugs that their members did not use, thereby cheating the doctors out of money that they are due. Among other things, the Defendants use and conceal age/sex adjustment factors to adjust expenditures above their actual levels.

D. Fourth, the Defendants have systematically defrauded doctors by passing along costs of health care that the doctors did not agree to assume. An example is in the area of injectible drugs administered in the doctors' offices. Doctors agree to provide existing injective drugs out of their capitation rates. However, in this day of developing medical and drug technology, injectible drugs are frequently developed during the term of the Capitation contracts with physicians. In such instances, the defendants often insist that the doctors provide the injectible drugs with no compensation. An example has recently occurred with respect to immunizations for infants. The defendants have insisted that costly injectible immunizations be provided by doctors when the cost vastly exceeds the Capitation rate for the member in question.

E. Fifth, the Defendants have exacerbated the problem with prescription drugs and injectibles because they receive rebates from pharmaceutical companies and refuse to credit doctors with their share of the rebates. Pharmaceutical companies routinely provide Defendants with rebates based upon the drugs used by members. The pharmaceutical companies do so to encourage Defendants to place their drugs on the formularies from which the doctors must choose drugs for their patients. In the risk pools, the Defendants charge the

36

doctors for the cost of the drugs before the rebates, even though the rebates

significantly reduce the actual costs.  In addition, the Defendants require

doctors to assume the cost of the injectible drugs before the rebates, even

though the actual cost is significantly less.

F.    Sixth, the Defendants utilize capitation arrangements with respect to pools of

patients which are not sufficiently large to permit sound actuarial projections.

123.    Defendants' conduct, as described herein constitutes a pattern of racketeering

activity as set forth in the Racketeer Influenced and Corrupt Organizations Act ("RICO") and

Defendants are liable to the class members under RICO.  Defendants are also liable to the class

members for the additional claims breach of ERISA obligations to pay benefits; quantum meruit;

violation of OBRA regulations; violation of California Business and Professions Code §17200;

and unjust enrichment.

124.    In furtherance of their profit goals, Defendants have and are continuing to

conspire with and aid and abet certain unknown co-conspirators and aiders and abetters (such as

those persons or entities providing support for Defendants' acquisition of other PPOs, HMOs and

POSs) in attempting to and actually extorting property interests from Plaintiff and the class.

Defendants' conduct has and is continuing to result in multiple unlawful acts of extortion under

18 U.S.C. § 1951(b)(2), thereby damaging Plaintiff and the class in its business or property.

125.    In committing multiple acts of extortion under 18 U.S.C. § 1951(b)(2),

Defendants have traveled in interstate commerce and have utilized the United States mail for the

purpose of and committing such illegal acts through policy making and implementation, the

distribution of materials to Plaintiff and the class, through seminars, training, contract

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

negotiations, audits, inspection visits, and have thereby committed multiple violations of the Travel Act, 18 U.S.C. § 1952(a), which have damaged and which continue to damage Plaintiff and the class in its business or property.

126. Defendants have also exhibited a pattern of conduct constituting mail and wire fraud in their intentional misrepresentations to Plaintiff and the class of material facts designed to induce their reliance upon same, through use of the United States mails and interstate wire transmissions, in violation of 18 U.S.C. § § 1341 and 1343, in order to further their fraudulent scheme.

127. Furthermore, Defendants have acted to improperly influence and interfere with employee welfare benefit plans by accepting and soliciting monetary compensation in interference with those plans in violation of 18 U.S.C. § 1954.

128. By engaging in this unlawful scheme, and conspiring to violate 18 U.S.C. § 1962(a) and (c) and by continuing to commit multiple overt acts and RICO predicate acts of mail fraud, wire fraud, extortion, and Travel Act violations, Defendants have proximately caused Plaintiff and the class, injury to its business or property and have violated 18 U.S.C. § 1962(d). By engaging in this unlawful scheme to violate 18 U.S.C. § 1962(a) and (c), Defendants have likewise violated 18 U.S.C. § 2 and have acted as principals in seeking to and in aiding and abetting unlawful schemes to violate 18 U.S.C. § 1962(a) and (c).

129. The Defendants' violations of federal laws and the effects thereof are continuing and will continue unless compensatory money damages, treble damages (where applicable), and declaratory or injunctive relief prohibiting the Defendants' illegal acts which constitute a pattern of racketeering activity.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

130.    The relief that the Plaintiff and the class seek is money damages (for the injury to their business and property) and treble damages.  Plaintiff also seek declaratory and injunctive relief, costs of suit, attorneys' fees, and such other relief as this Honorable Court deems just and proper.

131.    Furthermore, the Defendants violations of state law and the effects thereof are continuing and will continue unless the Defendants are subjected to disgorgement, restitution, compensatory and punitive damages, declaratory relief, and injunctive relief prohibiting the Defendants' illegal acts.

## VIII. GENERAL ALLEGATIONS RELATING TO ALL CLAIMS FOR RELIEF

132.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein, and the following allegations are made upon Plaintiff information and belief.

### A. RICO.

133.    These claims arise under 18 U.S.C. § 1964(a) and (c) of RICO and seek to obtain injunctive and declaratory relief against the defendants for violations of 18 U.S.C. § 1962(a) and (c), for a conspiracy to violate 18 U.S.C. § 1962(a) and (c) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and for aiding and abetting violations of 18 U.S.C. § 1962(a) and (c) within the meaning of 18 U.S.C. § 2.

134.    The Plaintiff and the class members are "persons" within the meaning of 18 U.S.C. § 1964(c).

135.    At all times relevant hereto, the Plaintiff and the class, and the defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

136.   Plaintiff and the class allege alternative theories of enterprise.   An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

137.   The first theory of enterprise is that the health care delivery system in the United States is an enterprise. The health care delivery system is made up of physicians and other health care providers who must be associated in fact for the system to function. The health care delivery system in the United States has an ascertainable structure separate and apart from the pattern of racketeering conduct. The health care providers must be associated and must function as at least an informal organization to provide health care services to the residents of the United States. The defendants and other for profit health plans have sought to participate in the affairs of the enterprise through the pattern of racketeering activity that Plaintiff and the class have alleged.

138.   Alternatively, the Plaintiff and the class allege that the health care system within California constitutes an enterprise and that the defendants have participated in the affairs of those enterprises through a pattern of racketeering conduct.

139.   Alternatively, Plaintiff and the class allege that the third-party entities which, as an example, promulgate health care reimbursement guidelines and/or which are subcontracted by Defendants for the purpose of reviewing claims made of Defendants by Plaintiff and the class, constitute an enterprise, in whose affairs Defendants have participated and/or exerted control or influence.

140.   Under all theories of enterprise alleged by the plaintiff and the class, the enterprises have an ascertainable structure separate and apart from the pattern of racketeering

40

activity in which the defendants engage.

141.     With respect to the activities alleged herein, the Defendants acted at all times with malice toward the class, intent to engage in the conduct complained of for the benefit of the corporate Defendants and with knowledge that such conduct constituted unlawfulness.  Such conduct was done with actionable wantonness and reckless disregard for the rights of the plaintiff and the class, as well as the laws to which the Defendants are subject, the same amounting to actionable wantonness.

142.     With respect to the activities alleged herein, each defendant and others not named as defendants in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c).  Each defendant also agreed to the operation of the scheme or artifice to deprive Plaintiffs and the class of the right to provide appropriate services free of the exploitation of fear of economic loss and/or loss of business.  In furtherance of these agreements, each defendant also agreed to interfere with, obstruct, delay or affect commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled through the exploitation of fear of economic loss and/or loss of business.

143.     With respect to the overt acts and activities alleged herein, each defendant conspired with each other and with others not named as defendants in this Complaint, to violate 18 U.S.C. § 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).  Each defendant and defendant health plan also agreed and conspired with each other to participate, directly or indirectly, in the fraudulent scheme or artifice alleged herein, to wrongfully retain money owed to Plaintiffs and the class.  Each defendant also agreed and conspired with each other defendant

41

to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled through the exploitation of fear of economic loss and/or loss of business.

144.    The numerous predicate acts of mail and wire fraud, extortion, Travel Act and benefit plan interference violations described herein are part of separate fraudulent and extortionate schemes by Defendants designed to defraud and the class of money and property interests under false pretenses. The Plaintiff and the class as victims of these unlawful patterns of illegal activity have and continue to suffer losses as a result of these activities.

145.    In carrying out the overt acts and fraudulent and extortionate scheme described above the defendants engaged in, *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. § 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 1961 *et seq.*

146.    Section 1961(1) of RICO provides that "racketeering activity" means, any act which is indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud), §1343 (relating to wire fraud), § 1346 (relating to scheme or artifice to defraud), § 1951 (relating to extortion), § 1952 (relating to racketeering [Travel Act]), [and] § 1954 (interference with an employee welfare benefit plan)."

### VIOLATIONS OF 18 U.S.C. § § 1341, 1343 and 1346

147.    For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. §§ 1341 and 1346, placed in post offices and/or in authorized repositories for

42

mail matter, matters and things to be sent or delivered by the Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the direction thereon or at the place at which they were directed to be delivered by the person to whom they were addressed.

148.    For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false or fraudulent pretenses, misrepresentations, or promises, as well as to execute and/or attempt to execute their scheme or artifice to deprive Plaintiff and the class of property interests, including its right to adequate reimbursement for services provided, and its right to conduct its business free of extortionate influence, the defendants, in violation of 18 U.S.C. §§ 1343 and 1346, transmitted in interstate commerce wire, radio and television transmissions marketing their plans to plaintiff and the class.

149.    In those matters and things sent or delivered by the Postal Service and the other interstate electronic media, Defendants falsely and fraudulently misrepresented and falsely and fraudulently suppressed material facts from Plaintiff and the class as described above, in violation of 18 U.S.C. §§ 1341, 1343, and 1346.

150.    The Defendants intentionally and knowingly made these material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiff and the class, for the purpose of deceiving it and thereby obtaining financial gain. The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. The Plaintiff and the class justifiably relied on the misrepresentations and omissions.

151.    Plaintiff and the class has therefore been injured in its business or property by the Defendants' overt acts and racketeering activities.

43

## VIOLATIONS OF 18 U.S.C. § 1951(b)(2)

152.    During the relevant times, and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, the Defendants and others not named as defendants in this Complaint on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as the term is defined in 18 U.S.C. §1951 and by "extortion" as defined in 18 U.S.C. §1951(b)(2). The defendants unlawfully attempted to and/or did induce Plaintiff and the class to part with various property interests to which Defendants are not entitled, in violation of 18 U.S.C. §1951(b)(2).

153.    In furtherance of the scheme or artifice to defraud and obtain money by false pretenses and the scheme or artifice to deprive the Plaintiff and the class of its intangible property right to conduct its business free of extortionate influence, the Prudential, United, Aetna, CIGNA, Foundation, PacifiCare, and WellPoint defendants agreed and conspired amongst themselves, with each other and with others not named as defendants, as well as those persons or entities providing support for Defendants' acquisition of other PPOs, HMOs and POSs, to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which these Defendants are not entitled through the exploitation of physicians' fear of economic loss and/or loss of business.

154.    The Defendants' overt acts and fraudulent and extortionate racketeering activity have and continue to defraud the Plaintiff and the class, and have and continue to attempt to and/or deprive the Plaintiff and the class of its intangible right to conduct its business free of extortionate influence and exploitation of fear of economic loss and/or loss of business.

44

155.    The Plaintiff and the class have therefore been injured in its business or property by the Defendants' overt acts and racketeering activities.

## VIOLATIONS OF 18 U.S.C. § 1952(a)

156.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud the Plaintiff and the class, the Defendants on numerous occasions did travel and caused others not named as defendants in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud, wire fraud, and extortion in violation of the Travel Act, 18 U.S.C. §1952(a).

157.    The Defendants' overt acts and fraudulent and extortionate racketeering activity have and continue to defraud the Plaintiff and the class of money, and have attempted to and/or deprived and continue to attempt to and/or deprive the Plaintiff and the class of their intangible right to conduct its business free of extortionate influence and exploitation of fear of economic loss and/or loss of business.

158.    The Plaintiff and the class have therefore been injured in its business or property by the Defendants' overt acts and racketeering activities.

159.    The Defendants have engaged in a "pattern of racketeering activity," as defined in §1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including the Plaintiff and the class.

160.    The multiple acts of racketeering activity committed and/or conspired to or aided and

45

abetted by Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. §1961(5).

## VIOLATIONS OF 18 U.S.C. § 1954

161.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud the plaintiff and the class, the Defendants were agents or administrators of health benefits provided by Defendants through various employee benefit plans as defined under 18 U.S.C. § 1954.

162.    As agents and/or administrators of said health benefits and in other capacities, Defendants, by their overt acts and fraudulent and extortionate racketeering activity, have and continue to unlawfully interfere with the health benefits portion of said employee welfare benefit plants in violation of 18 U.S.C. § 1954.

163.    Defendants have and continue to act to offer, solicit and accept the monetary benefits of the above-described employee welfare benefit plans through their conduct of unlawful, extortionate and fraudulent acts committed against Plaintiff and the class, in violation of 18 U.S.C. § 1954.

164.    The plaintiff and the class therefore have been injured in its business or property as a result of Defendants' overt acts and racketeering activities.

165.    The Defendants have engaged in a "pattern of racketeering activity," as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants

46

and methods of commission, and had similar results impacting upon similar victims, including the plaintiff's membership.

166.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

**B.    ERISA**

167.    Plaintiff incorporate and reallege the previous paragraphs as if fully set out herein.

168.    The Plaintiffs set forth an ERISA claim in the alternative for the possibility that the court may find that any of the Plaintiff's or class's claims are preempted by ERISA.  Many of the healthcare plans are subject to ERISA.  Others, including governmental, church, partnership, individual, and certain other plans, are not within the scope of ERISA.  Plaintiff and the class also claim under provider agreements, as well as under assignments of plan benefits, claims against Prudential, United, Aetna, CIGNA, Foundation  PacifiCare., Prudential, United, and WellPoint respecting ERISA healthcare plans under assignment of plan benefits are governed, in part, by ERISA, although the terms of the plans are governed by the prompt pay statutes.  In some cases, a healthcare provider will have two or more claims against the defendants, under both the provider agreements and under the assignment of benefits.  In such cases, if the plan is an ERISA plan, one claim (the assignment of benefits claim) may be governed by ERISA and the claim(s) under the provider agreement will be governed by state or federal law, or both claims will be governed by state or federal law if the plans are not an ERISA plan.  Where ERISA governs, the remedy is generally the same as under state or federal law.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

## COUNT I

### (VIOLATIONS OF RICO 18 U.S.C. § 1962(a))

169.     Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

170.     Section 1962(a) of RICO provides that, "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of § 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

171.     Plaintiff incorporate, as if fully set out herein, its allegations about enterprise.

172.     With respect to the allegations contained herein, the Defendants have engaged in a "pattern of racketeering activity", as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years.  Each such act of racketeering activity was related, has similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including the Plaintiff and the class.

173.     The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by the Defendants, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity", as defined in 18 U.S.C. § 1961(5).

174.     With respect to the activities alleged herein, the Defendants have acted at all times

48

with malice toward Plaintiff and the class in their efforts to acquire and maintain an interest in an enterprise(s) which affects interstate commerce.

175. The Defendants' acts amount to an overt and extortionate scheme to acquire or maintain an interest in or control of, an enterprise(s) which affect interstate commerce. The Defendants' acts amount to an overt and extortionate scheme to deprive Plaintiff and the class of business or property rights, including the right to receive bargained for reimbursement for health care delivered by Plaintiff and the class to Defendants' members, without fear of reprisals or economic and/or business loss, have and continue to constitute a pattern of illegal activity that has and continues to inflict harm upon the Plaintiff and the class.

176. In carrying out the overt acts and fraudulent extortionate scheme described above, the defendants have engaged in conduct in violation of federal laws, including *inter alia* 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § § 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954 and 18 U.S.C. § 1961, et seq. (RICO) as set forth more fully above.

177. Therefore, Defendants have each engaged in "racketeering activity which is defined in § 1961(1) of RICO to mean "any act which is indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud), § 1343 (relating to wire fraud) § 1951 (relating to extortion), § 1952 (relating to racketeering [Travel Act]), [and] § 1954 (interference with an employee welfare benefit plan).

178. As a proximate result of Defendants' unlawful pattern of illegal extortionate conduct as described above, Plaintiff and the class has been injured in their business or property as described above.

49

## COUNT II

### (VIOLATIONS OF RICO 18 U.S.C. § 1962(c))

179.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

180.    Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

181.    Plaintiff incorporates, as though fully set out herein, his allegations about enterprise.

182.    With respect to the allegations contained herein, the Defendants have engaged in a "pattern of racketeering activity", as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years.  Each such act of racketeering activity was related, has similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including the Plaintiff and the class.

183.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by the Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity", as defined in 18 U.S.C. § 1961(5).

184.    With respect to the activities alleged herein, the Defendants have acted at all times with malice toward Plaintiff and class members in their efforts to acquire and maintain an interest in an enterprise(s) that affects interstate commerce.

185.    The Defendants' acts amount to an overt and extortionate scheme to exercise control

50

over Plaintiff and the class by withholding payments, by threatening to withhold payments due for services provided and/or other coercive activities. The Defendants' respective acts amount to an overt and extortionate scheme to deprive Plaintiff and the class of business or property rights, including the right to receive bargained for reimbursement for health care delivered by Plaintiff and the class to Defendants' members without fear of reprisals or economic and/or business loss, have and continue to constitute a pattern of illegal activity that has and continues to inflict harm upon the Plaintiff and the class.

186.   In carrying out the overt acts and fraudulent extortionate scheme described above, the Defendants have engaged in conduct in violation of federal laws, including inter alia 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § § 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954 and 18 U.S.C. § 1961, et seq. (RICO) as set forth more fully above.

187.   Therefore, defendants have each engaged in "racketeering activity which is defined in § 1961(1) of RICO to mean "any act which is indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud), § 1343 (relating to wire fraud) § 1951 (relating to extortion), § 1952 (relating to racketeering [Travel Act]), [and] § 1954 (interference with an employee welfare benefit plan)."

188.   As a proximate result of Defendants' unlawful pattern of illegal extortionate conduct as described above, Plaintiff and the class and its membership have been injured in its business or property as described above.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

## COUNT III

### (VIOLATIONS OF RICO 18 U.S.C. § 1962(d) BY
### CONSPIRING TO VIOLATE 18 U.S.C. § 1962(a) and (c))

189.    Plaintiff incorporates and realleges the previous paragraphs as if fully set out herein.

190.    This claim for relief arises under 18 U.S.C. § 1964(a) of RICO and seeks to obtain injunctive and declaratory relief from the Defendants activities described herein for violations of 18 U.S.C. § 1962(d) for their conspiring to violate 18 U.S.C. § 1962(a) and (c).

191.    Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

192.    Plaintiff incorporates, as though fully set out herein, his allegations about enterprise.

193.    Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a). The object of this conspiracy has been and is to acquire or maintain an interest in or control over the affairs of the § 1962(a) enterprises described previously through a pattern of racketeering activity

194.    Defendants have also violated § 1962(d) by conspiring to violate 18 U.S.C. §1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprises described previously through a pattern of racketeering activity.

195.    Defendants, their subsidiaries, employees, and multiple agents have been joined in the conspiracies to violate 18 U.S.C. §1962(a) and (c) in violation of § 1962(d) by various third parties not named as defendants herein, such as those persons or entities providing support for Defendants' acquisition of other PPOs, HMOs, and POSs.

196.    As demonstrated in detail above, the Defendants' co-conspirators have engaged in

52

numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently induce the Plaintiff and the class to agree to provide healthcare services to Defendants' members and failure to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud the Plaintiff and the class of money, to unlawfully influence and interfere with the physician-patient relationship and to deprive Plaintiff and the class of its intangible property rights including the right to receive bargained for reimbursement for health care delivered by Plaintiff and the class to Defendants' members without the Defendants' exploitation of fear of economic loss and/or loss of business.

197.    The defendants co-conspirators' pattern of fraudulent and extortionate racketeering acts include, but are not limited to providing inadequate payment, withholding payments, threatening to withhold payments due for services provided, adoption of internal policies and practices by the co-conspirators that are: (1) specifically designed to interfere with Plaintiff and the class' right to receive bargained for reimbursement for health care delivered by Plaintiff and the class to Defendants' members; (2) specifically designed to exploit fear of economic loss and/or loss of business in attempting to extort Plaintiff and the class of compensation and its ability to conduct the practice of medicine free of extortionate conduct.

198.    The nature of the above described Defendants' co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(a) and (c), but they were aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL. (305) 372-1800

199.   As a direct and proximate result of the Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. §§ 1962(a) and (c), the Plaintiff and the class has been and is continuing to be injured in its business or property as set forth more fully above.   Pursuant to 18 U.S.C. § 1964(c) of RICO, the Plaintiff are entitled, therefore, to bring this action on behalf of themselves and the class it seeks to represent, and to obtain injunctive and declaratory relief, as well as the costs of bringing this suit and attorneys' fees.

200.   The defendants have sought to and have engaged in the commission of and continue to commit overt acts and the following described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by defendants from such pattern of racketeering activity, including:

    a.    Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

    b.    Multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

    c.    Multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

    d.    Multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

    e.    Multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a);

    f.    Multiple instances of offers, solicitations and acceptance of money in their activity to influence and interfere with employee welfare benefit plans in violation of 18 U.S.C. § 1954.

201.   The defendants' violations of the above federal laws and the effects thereof detailed

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

above are continuing and will continue unless injunctive relief prohibiting the defendants' illegal

acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

## COUNT IV
### (RICO VIOLATIONS OF 18 U.S.C. § 2
### BY SEEKING TO AND AIDING AND ABETTING
### A SCHEME TO VIOLATE 18 U.S.C. § 1962(a) and (c))

202.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

203.    This claim for relief arises under 18 U.S.C. § 1964(c) of RICO providing for

injunctive and declaratory relief for Defendants' violations of 18 U.S.C. § 2 by seeking to aid and

abet and aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c).

204.    Plaintiff incorporate, as though fully set out herein, its allegations about enterprise.

205.    With respect to the defendants' violation of 18 U.S.C. § 2, each defendant and their

respective health plans have sought to, and have aided and abetted, each other respectively, and

others not named as defendants in this Complaint, in the commission of those violations of 18 U.S.C.

§ 2 by seeking to and aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c).

206.    Each Prudential defendant and Prudential health plan; each United defendant and

United health plan; each Aetna defendant and Aetna health plan, each CIGNA defendant and

CIGNA health plan, each Foundation defendant and Foundation health plan, each PacifiCare

defendant and PacifiCare health plan, and each Wellpoint defendant and Wellpoint health plan, has

aided and abetted, and has a shared intent to aid and abet each other Prudential defendant and

Prudential health plan; each United defendant and United Health plan; each Aetna defendant and

Aetna health plan, each CIGNA defendant and CIGNA health plan, each Foundation defendant and

Foundation health plan, each PacifiCare defendant and PacifiCare health plan, and each Wellpoint

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

defendant and Wellpoint health plan respectively, in attempting to derive, and in actually deriving substantial income and proceeds through the above described pattern of racketeering activity. Each Prudential defendant and Prudential health plan; each United defendant and United health plan; each Aetna defendant and Aetna health plan, each CIGNA defendant and CIGNA health plan, each Foundation defendant and Foundation health plan, each PacifiCare defendant and PacifiCare health plan, and each Wellpoint defendant and Wellpoint health plan respectively has aided and abetted, and has a shared intent to aid and abet, each other Prudential defendant and Prudential health plan; each United defendant and United health plan; each Aetna defendant and Aetna health plan, each CIGNA defendant and CIGNA health plan, each Foundation defendant and Foundation health plan, each PacifiCare defendant and PacifiCare health plan, and each Wellpoint defendant and Wellpoint health plan respectively in acquiring or maintaining an interest in or control of the § 1962(a) Enterprise described above through a pattern of racketeering activity, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1962(a). Each Prudential defendant and Prudential health plan; each United defendant and United health plan; each Aetna defendant and Aetna health plan, each CIGNA defendant and CIGNA health plan, each Foundation defendant and Foundation health plan, each PacifiCare defendant and PacifiCare health plan, and each Wellpoint defendant and Wellpoint health plan respectively, has further aided and abetted, and has a shared intent to aid and abet, each other defendant and health plan respectively, in conducting or participating in the conduct of the affairs of the Section 1962(c) Enterprise described above through a pattern of racketeering activity, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1962(c).

207. As a direct and proximate result of Defendants' RICO violation of 18 U.S.C. § 2 by seeking to and aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c), the Plaintiff and

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

the class have been and are continuing to be injured in their business or property. Pursuant to 18 U.S.C. § 1964 (c) of RICO, the Plaintiff are entitled, therefore, to bring this nationwide class action on behalf of themselves and the class they seek to represent, and to obtain injunctive and declaratory relief, as well as the costs of bringing this suit and attorneys' fees.

208.    The Defendants have attempted to and have aided and abetted and have committed and continue to commit the following unlawful racketeering predicate acts. Through these unlawful racketeering predicate acts, Defendants have attempted to generate, and have continued to generate, income or proceeds, including:

    a.    Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

    b.    Multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

    c.    Multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

    d.    Multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

    e.    Multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and

    f.    Multiple instances of offers, solicitations and acceptance of money in their activity to influence and interfere with employee welfare benefit plans in violation of 18 U.S.C. § 1954.

209.    The defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting the defendants' illegal

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

210.   By reason of each Defendants' violations of 18 U.S.C. § 1962(d) and 18 U.S.C. § 2 by conspiring to violate 18 U.S.C. §§ 1962(a) and (c), and seeking to and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c), the plaintiff are entitled to injunctive and declaratory relief pursuant to 18 U.S.C. § 1964(c).

## COUNT V
## (CLAIM FOR BENEFITS UNDER ERISA)

211.   Plaintiff incorporates and realleges the previous paragraphs as if fully set out herein.

212.   Plaintiff plead this Count, alleging failure to provide benefits due under ERISA, in the alternative to any claims which the court finds to be preempted.

213.   Plaintiff assert and base their claims for payment and reimbursement for medical services provided on Defendants' breach of the applicable contract documents. That is, Plaintiff contend that Defendants are liable to Plaintiff and the provider class members based upon Defendants' breach of the contract documents entered into directly between Defendants and the Plaintiff and Plaintiff class members.

214.   However, in the event the Court determines that ERISA is applicable to the claims asserted herein Plaintiff and the Plaintiff Class Members assert and allege the claims set forth in this Count.

215.   Specifically, Plaintiff and the Plaintiff Class Members are entitled to recover the payment and reimbursement for services rendered by them pursuant to Section 502(a)(1)(b) of ERISA, 29 U.S.C. § 1132(a)(1)(b). The Plaintiff and Plaintiff Class are entitled to recover all payment and reimbursement for medical services rendered which defendants have wrongfully failed

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

to pay, in an amount to be determined at trial. Plaintiff and the Plaintiff Class are also entitled to an injunction and such other declaratory and injunctive relief as the Court determines proper, requiring the Defendants to adhere to and comply with the contract documents and to make payments to Plaintiff and the Plaintiff Class Members are provided therein for medical services rendered.

216.     Further, pursuant to Section 502(a)(3) of ERISA, Plaintiff are entitled to appropriate equitable relief to enforce the terms and provisions of the applicable Contract Documents and to recover restitution and the amount of monies owed to them but not paid by Defendants, and further to obtain unjust enrichment received by Defendants as a result of its breach of the Contract Documents and other wrongful conduct as alleged herein.

## COUNT VI
### (CLAIM FOR QUANTUM MERUIT)

217.     Plaintiff incorporates and realleges the previous paragraphs as if fully set out herein.

218.     The individual plaintiff and members of the class have performed work and labor, for which they are entitled to receive compensation, but which has been wrongfully withheld by the defendants as described above.

219.     Plaintiff and class members therefore seek reimbursement for their work and labor due in an amount to be determined by this court.

## COUNT VII
### (CALIFORNIA BUSINESS AND PROFESSIONS CODE)
### (For Violation of California Business and
### Professions Code § 17200)

220.     Plaintiff incorporates and realleges the previous paragraphs as if fully set out herein.

221.     In order to maximize profits, Defendants limit providers' ability to obtain

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

adequate and appropriate reimbursement for services provided to members, participants and enrollees.

222. Throughout the class period, defendants have committed the following acts of unfair competition, as defined by Business and Professions Code section 17200, by:

a. utilizing premiums which are not actuarially sound to provide healthcare services to Defendants' members, participants and enrollees;

b. setting rates, both fee-for-service and capitation, which are not sufficient to adequately reimburse physicians for the provision of health services to plan members, participants and enrollees;

c. requiring that physicians and physician groups accept capitation for services for which there can be no sound actuarial projection or for which usage cannot be predicted or controlled by the physician or physician group.

d. utilizing compensation arrangements and incentive plans which penalize physicians who treat sicker patients;

e. utilizing compensation arrangements and incentive plans which penalize physicians with small practices;

f. failing to utilize compensation and incentives which are risk adjusted for factors which include age, sex, benefit and illness burden;

g. utilizing compensation arrangements and incentive plans which penalize access and referrals to specialists;

h. utilizing capitation arrangements with respect to pools of patients which are not sufficiently large to permit sound actuarial projections;

i. exacting unreasonable high administrative costs and profits from the premiums collected;

60

j. failing to provide any or adequate reimbursement for emergency and on-call emergency services;

k. failing to pass on Medi-Cal increases to physicians and physician groups providing services to Medi-Cal patients;

l. placing withholds on capitation payments to physicians and physician groups;

m. requiring that physicians and physician groups accept downside risk for institutional providers;

n. failing to disclose the payment for the services to be provided plan members, participants and enrollees;

o. failing to make capitation payments commencing upon the patient's enrollment in the plan;

p. failing to disclose the payment for multiple procedures;

q. failing to provide complete enrollee information;

r. failing to maintain ultimate responsibility for reimbursing physicians for medically necessary care;

s. requiring that physician groups provide letters of credit or maintain unreasonable reserves as a condition of doing business with health plans;

t. improperly utilizing practice guidelines;

u. making improper medical necessity decisions;

v. utilizing fiscal and administrative criteria rather than medical judgment in determining medical care;

w. setting pharmacy risk pool budgets for so-called "shared" risk at unreasonably and unconscionably low levels such that health care providers bear all the risk for pharmacy claims and lose money on the pharmacy risk pool;

x. failing to provide information about pharmacy risk

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

pool arrangements;

y.  not accurately and truthfully accounting for pharmacy risk pools, such as rebates and discounts received from pharmaceutical companies in calculating the costs for pharmacy risk pools.

223.  The acts or practices described above constitute an unfair, fraudulent, misleading, or unlawful business practice within the meaning of Business and Professions Code section 17200. Such practices are likely to mislead the general public. Many of the practices described above are a violation of the Knox-Keene Act and the regulations promulgated in accordance with the Act. The practices set forth above are patently unfair in that providers are wrongfully denied information and monies to which they are entitled and defendants reap large profits at the expense of both physicians and the general public.

224.  Defendants' unfair, fraudulent and unlawful business practices are likely to continue absent judicial intervention.

225.  As a direct and proximate result of the defendants' conduct, defendants have received and continue to receive payments which rightfully belong to medical service providers. Such acts harm the public and threaten the financial viability of physicians.

226.  Plaintiffs request a permanent injunction pursuant to Business and Professions Code section 17203 restraining and enjoining defendants from continuing the acts and practices sets forth above.

227.  Plaintiffs request an order declaring that Defendants' practices violate the Business and Professions Code.

228.  Plaintiffs also request that defendants be ordered to pay restitution for the amounts wrongfully retained as a result of these illegal and unfair business acts and practices.

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

Plaintiffs request reasonable attorneys fees and costs of suit under Code of Civil Procedure section 1021.5, since this cause of action is brought to protect the public interest. Plaintiffs request any further relief that the court may deem just and equitable.

## COUNT VIII
### (CLAIM FOR INJUNCTIVE RELIEF AND DECLARATORY) RELIEF FOR DEFENDANTS' VIOLATION OF FEDERAL "CLEAN-CLAIM PAYMENT" REGULATIONS. 42 CFR § 417.500(a)(6))

229. Plaintiff incorporates and realleges the previous paragraphs as if fully set out herein.

230. Pursuant to the Omnibus Budget Reconciliation Act of 1986, § 9312(d), as codified at 42 CFR § 417.500(a)(6), health insurers are required to reimburse health providers at a minimum of 95% of all "clean claims" within thirty (30) days of the claims' submission for payment.

231. Through the schemes outlined in detail above, Defendants have each violated this requirement and regulatory authority by improperly and intentionally deeming claims made to them as "unclean" in order to avoid or at least delay reimbursement of healthcare providers, which is their obligation under OBRA.

232. Plaintiff request this Court to exercise its equitable jurisdiction to declare Defendants' practices as violative of the requirements of OBRA and further to enjoin Defendants from continuance of this practice.

## COUNT IX
### (CLAIM FOR UNJUST ENRICHMENT)

233. Plaintiff incorporates and realleges the previous paragraphs as if fully set out herein.

234. Defendants, through the acts and omissions described herein, are in possession of money that is the rightful property of Plaintiff and the class. As a result, Defendants have been

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

unjustly enriched by their activities.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff and the class pray for judgment in their favor and against the defendants in each claim for relief, as well as general and special relief as follows:

A. An award of compensatory or actual damages in the amount in which Plaintiff and the class has been injured in their business or property.

B.      An award of treble damages;

C.      Restitution and disgorgement;

D.      A declaration regarding Defendants' failure to properly fund the healthcare system and reimburse physicians for services provided to their members.

E.      An order declaring that the Defendants' practices violate the California Business and Professions Code.

F.      A permanent injunction pursuant to the California Business and Professions Code Section 17203 restraining and enjoining the Defendants from continuing the acts and practices set forth above which are in violation of the Business and Professions Code.

G.      An injunction enjoining Defendants from pursuing the fraudulent and extortionate policies and practices complained of herein, including but not limited to:

(1)     prohibiting the payment of reimbursement by Defendants which is not adequate to cover the costs of delivering the health care services Defendants have promised Defendants' members;

(2)     prohibiting the delegation of undefined or unreasonable risk by Defendants including but not limited to the failure to disclose that information to the physicians and Physician Groups, which is reasonable and necessary to enable them to assess the level of risk to be assumed, and to monitor and/or audit any and all payments, withholds, deductions, surpluses, credits and other financial

64

calculations made by Defendants with respect to the physicians and/or Physician Groups;

(3)   prohibiting the failure or refusal of Defendants to provide additional reimbursement to Plaintiff's members (including physicians and Physician Groups) for unanticipated costs and expenses which arise after a contract with the physicians or Physician Groups has been executed, which relate to medically necessary services the patient requires the Defendants' members require, including, but not limited to, new diagnostic or therapeutic procedures, treatments or devices, immunizations, injectables, or pharmaceutical therapeutics;

(4)   prohibiting the failure or refusal of Defendants to disclose the scope of all services to be provided under the contract with the physicians or Physician Groups, the amount of the payment by Defendants to physicians or Physician Groups for such services, and the failure or refusal of Defendants to provide full disclosure of Defendants' methodology for determining the payment for a health care service;

(5)   prohibiting the use or enforcement of any definition of medical necessity which is at variance with the professional standard of care;

(6)   prohibiting Defendants from making medical necessity determinations without providing appropriate deference to the treating physician's judgment;

(7)   prohibiting Defendants, and each of them, from unreasonably using, applying or enforcing medically inappropriate utilization management policies and procedures over which Plaintiff' membership has no effective input or control and as to which Plaintiff' membership cannot deviate when necessary to provide medically appropriate patient care without suffering adverse financial or other consequences;

(8)   prohibiting Defendants, and each of them, from unreasonably using, applying or enforcing medically inappropriate clinical practice guidelines and/or medical management policies and procedures over which Plaintiff' membership has no effective input or control and as to which Plaintiff' membership cannot deviate when necessary to provide medically appropriate patient care without suffering adverse financial or other consequences;

(9)   prohibiting Defendants from requiring physicians or Physician Groups to be capitated for services for which there can be no sound actuarial projection, or for which expected usage cannot be predicted or controlled by the physician or Physician Groups, i.e., pharmaceuticals, new diagnostic or therapeutic

65

procedures or treatments, new drugs and devices, organ transplants, etc.;

(10)  prohibiting Defendants from imposing a charge for medications to physicians and/or Physician Groups or the Pharmacy Risk Pool which is greater than that actually incurred by Defendants, including, but not limited to, any rebates which have been or will be obtained from the manufacturer or pharmacy by Defendants;

(11)  prohibiting Defendants from offsetting pharmacy deficits against other risk pool surpluses or capitation payments;

(12)  prohibiting Defendants, and each of them, from unreasonably using, applying or enforcing medically inappropriate patient referral policies and procedures over which Plaintiff membership has no effective input or control and as to which Plaintiff membership cannot deviate when necessary to provide medically appropriate patient care without suffering adverse financial or other consequences;

(13)  prohibiting Defendants, and each of them, from unreasonably using, applying or enforcing medically inappropriate quality improvement programs and audits over which Plaintiff membership has no effective input or control and as to which Plaintiff membership cannot deviate when necessary to provide medically appropriate patient care without suffering adverse financial or other consequences;

(14)  prohibiting Defendants from requiring physicians or Physician Groups to accept capitation with respect to pools of members which are not sufficiently large to permit sound actuarial projections of expected use of covered services;

(15)  prohibiting Defendants from imposing withholds, deductions and/or penalties which impede the provision of medically appropriate services, and/or will adversely impact the solvency of a physician or Physician Group;

(16)  prohibiting Defendants from imposing withholds, deductions and/or penalties on capitation payments paid to physicians or Physician Groups under any and all circumstances;

(17)  prohibiting Defendants from requiring physicians or Physician Groups to indemnify Defendants for liability arising under the contract between Defendants and the physician or Physician Group;

(18)  prohibiting Defendants from threatening to terminate a physician or Physician Group contract (or otherwise penalize a physician or Physician Group) based

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.

2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TEL. (305) 372-1800

upon participation or support of this complaint or concepts in this complaint by such physician or Physician Group;

(19) prohibiting Defendants from charging excessive rates to physicians and/or physician groups for stop-loss insurance and/or requiring physicians and/or physician groups to purchase stop-loss insurance from Defendants;

(20) prohibiting Defendants from revoking and re-assuming claims payment, credentialing and/or utilization management duties delegated to a Physician Group without following policies and procedures previously provided to and mutually agreed to by the Defendants and the Physician Group which allow detailed prior notice of any deficiencies, development of a mutually agreed to corrective action plan, a reasonable cure period, and defined criteria and procedures allowing the Physician Group to become re-delegated for such delegated functions;

(21) if delegated functions are re-assumed by Defendants, prohibiting the failure or refusal to comply with and be held accountable to the Physician Group for compliance with Defendant policies and procedures regarding the re-assumed delegated functions and all applicable state and federal laws and regulations, including, but not limited to, HCFA laws and regulations and NCQA standards; and

(22) prohibiting Defendants from requiring physicians and/or Physician Groups to accept additional patients from Defendants if the physician and/or Physician Group determines it does not have the clinical or financial capacity to do so;

H. Costs and reimbursements for this action, including the cost of the suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) and 15 U.S.C. § 15, and reimbursement of expenses and expert fees in amounts to be determined by the Court; and

I. Granting such other and further relief as this Honorable Court deems just and appropriate.

## JURY DEMAND

The Plaintiff demand a trial by jury of all issues so triable.

2957 101 184187

67

Respectfully submitted this 22nd day of February 2001,

LAW OFFICES OF ARCHIE LAMB, LLC
2017 Second Avenue North
2nd Floor
Birmingham, Alabama 35203
(205) 324-4644
Co-Lead Counsel for Provider Plaintiffs

and

PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN &
PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
(305) 358-2800 / Fax (305) 358-2382
Co-Liaison Counsel for Plaintiffs

Nicholas B. Roth
EYSTER, KEY, TUBB, WEAVER et al
402 E. Moulton Street
Post Office Box 1607
Decatur, Alabama 35602
Telephone: (256) 353-6761

Jeffery A. Mobley
LOWE, MOBLEY & LOWE
1210 - 21st Street
Post Office Box 576
Haleyville, Alabama 35565
Telephone: (205) 486-5296

Mark Gray
GRAY & WEISS
1400 Citizen Plaza
500 West Jefferson Street
Louisville, Kentucky 40202

Robert Foote
FOOTE & MEYERS
13 South 7th Street
Geneva, Illinois 60134

KOZYAK TROPIN & THROCKMORTON, P.A.
2800 First Union Financial Center
200 S. Biscayne Boulevard
Miami, Florida 33131
(305) 372-1800
Co-Lead Counsel for the Provider Plaintiffs

BY: _____
Harley S. Tropin
Fla. Bar No. 241253
Adam M. Moskowitz
Fla. Bar No. 984289
Chae duPont
Fla. Bar No. 979041

Dennis G. Pantazis
GORDON, SILBERMAN, WIGGINS &
    CHILDS, P.C.    1400 SouthTrust Tower
Birmingham, Alabama 35203
Telephone: (205) 328-0640

Joe Whatley, Jr.
WHATLEY DRAKE, LC
1100 Financial Center
505 North 20th Street
Birmingham, Alabama 35203-4601
Telephone: (205) 328-9576

J. Mark White
WHITE, DUNN & BOOKER
The Massey Building
290 21st Street North
Suite 600
Birmingham, Alabama 35203
Telephone: (205) 323-1888

Guido Saveri (22349)
R. Alexander Saveri (173102)
Cadio Zirpoli
One Embarcadero Center, Suite 1020
San Francisco, California 94111-3600

68

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail on this 22nd of February, 2001 to all those herein below.

_____

**CHAE A. DUPONT**

Hilarie Bass, Esq.
GREENBERG, TRAURIG
1221 Brickell Avenue
Miami, FL 33131

Eduardo Palmer, Esq.
STEEL, HECTOR & DAVIS
200 S. Biscayne Blvd., Suite 4000
Miami, FL 33131

Edward Crane, Esq.
SKADDEN, ARPS, SLATE et al
333 West Wacker Dr., Suite 2100
Chicago, IL 60606

Michael Nachwalter, Esq.
KENNY NACHWALTER
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131

William Grauer, Esq.
COOLEY GODWARD
4365 Executive Dr., Suite 1100
San Diego, CA 92121

Frank Burt, Esq.
JORDAN BURT BOROS, et al
777 Brickell Ave., Suite 500
Miami, Florida 33131

John J. Swenson, Esq.
GIBSON, DUNN et al
333 S. Grand Avenue
Los Angeles, CA 90071-3197

Miguel A. Estrada, Esq.
GIBSON, DUNN et al
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5305

Marty Steinberg, Esq.
HUNTON & WILLIAMS
2500 One Biscayne Tower
2 South Biscayne Boulevard
Miami, FL 33131

W. Ray Persons, Esq.
HUNTON & WILLIAMS
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, GA 30308

John H. Beisner, Esq.
O'MELVENY & MYERS, LLP
555 13th St., N.W.
Suite 500 West
Washington, D.C. 20004-1109

Stan Blumenfeld, Esq.
O'MELVENY & MYERS, LLP
400 South Hope Street
Los Angeles, CA 90071

Henry N. Adorno, Esq
ADORNO & ZEDER, P.A.
2601 S. Bayshore Dr., Suite 1600
Miami, FL 33133

Ronald B. Ravikoff, Esq.
ZUCKERMAN SPAIDER et al
900 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131-4326

John D. Adlock, Esq.
SHEA & GARDNER
1800 Massachusetts Avenue,
N.W.
Washington, D.C. 20036-1872

Edward Soto, Esq.
701 Brickell Ave., Suite 2100
Miami, FL 33131

Joel A. Mintzer, Esq.
Robins, Kaplan, Miller et al
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

2957 101 184187 1

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2800 FIRST UNION FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 · TEL. (305) 372-1800