IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 1334
Master File No. 00-1334-MD-MORENO
Magistrate Judge Dubé

**NIGHT BOX FILED**
APR ~ 6 2001
CLARENCE MADDOX
CLERK, USDC / SDFL/MIA

| |
|---|
| **IN RE HUMANA INC. MANAGED CARE LITIGATION** |
| THIS DOCUMENT RELATES TO SUBSCRIBER TRACK ACTION |
| JEANNE E. CURTRIGHT, individually and on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AETNA INC.; AETNA US HEALTHCARE, INC.; AETNA US HEALTHCARE OF CALIFORNIA, INC., and DOES 1 through 50, inclusive, <br><br> Defendants. |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF AETNA INC., AETNA U.S. HEALTHCARE INC. AND AETNA U.S. HEALTHCARE OF CALIFORNIA INC. TO COMPEL ARBITRATION



## I.

## INTRODUCTION

Aetna demonstrated in its Opening Memorandum that there exists a valid arbitration agreement which covers the claims that Plaintiff Curtright purports to assert in the First Amended Complaint ("Complaint"). Aetna thus established the preconditions sufficient under the express terms of the Federal Arbitration Act ("FAA") to compel arbitration. *See* 9 U.S.C. § 9 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") (emphasis added).

Plaintiff admits that she is bound by the arbitration clause in the contracts through which she obtained health care coverage, and does not deny that the claims raised in the Complaint fall within the scope of that agreement. *See* Plaintiffs' Opposition at 1. Instead, Plaintiff seeks to avoid arbitration by asserting that this Court should first decide Plaintiff motion for remand, that Aetna has somehow waived its right to enforce the mandatory arbitration clause, and that her claims for public injunctive relief are not arbitrable under California law. *Id.* at 1-2.

None of these arguments save Plaintiff's claims from compulsory arbitration. Aetna agrees that the jurisdictional issues raised by Plaintiffs' motion for remand and Aetna's motion to dismiss logically should be resolved before arbitration can be compelled. Rather than support Plaintiff's position, however, that contention amply demonstrates that Aetna did not waive any rights by not moving to compel before now. To establish waiver, Plaintiff must show that Aetna "substantially participated" in litigation to a point inconsistent with its intention to arbitrate, and that Plaintiff suffered prejudice as a result. *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217,

1223 (11th Cir. 2000) (internal quotation and citation omitted). Plaintiff has not shown, and cannot show, any such "substantial participation" or resulting prejudice.

First, Aetna's "participation" in the state court proceedings was limited to a single act: removing this case to federal court on the grounds that ERISA completely preempts the claims asserted in the Complaint. Because complete preemption destroys Plaintiff's ability to assert those state-law-based claims in *any* forum, the act of removal is not inconsistent with an intention to arbitrate, and thus cannot support a finding of waiver.

Second, Aetna's participation in the federal court proceedings likewise has been limited, and is not inconsistent with its intention to arbitrate. Immediately after Aetna removed this action, Plaintiff moved for remand, asserting that the claims stated in the Complaint were not preempted by ERISA. The motion to dismiss which Aetna filed together with its opposition to the motion for remand raised the same issue presented by the remand motion: whether Plaintiff's claims were preempted by ERISA. As Plaintiff acknowledges, Aetna expressly reserved its right to compel arbitration in the event the Court found grounds to permit the action or any part of it to proceed. *See* Plaintiff's Opposition at 3.

The limited discovery relating to issues raised in the motion for remand and motion to dismiss also does not give rise to waiver. That discovery became necessary only after Plaintiff filed a declaration in support of her motion for remand asserting that she and her husband were the only two employees of Freshwater Flora and Fauna ("FFF") – a statement which contradicted the enrollment application submitted to the Health Insurance Plan of California ("HIPC").[1] The

---

[1] Pacific Business Group on Health was selected to assume administrative and fiscal responsibility of the HIPC program effective July 1, 1999. *See* Opening Memorandum at n.3. HIPC is now also known as Pacific Health Advantage ("PacAdvantage").

discovery focused on the very narrow question of whether Benjamin and Genevieve Keller were employees of FFF, and related representations made to the HIPC in the enrollment materials. This issue does not relate to the merits of Plaintiff's claim, but rather addresses the question of ERISA preemption and the propriety of removal to federal court. Similarly, the deposition discovery Aetna later requested (but never obtained) also pertained only to the narrow question of whether the Kellers were employees or independent contractors of FFF, an issue on which the Court had directed the parties to submit supplemental briefing. As Plaintiff contends, this Court cannot compel arbitration without first resolving the question of its own jurisdiction. Consequently Aetna's requests for limited discovery relating directly to such jurisdictional issues cannot constitute "substantial participation" in proceedings inconsistent with an intention to arbitrate.

Nor has Plaintiff suffered any prejudice as a result of Aetna's conduct. Plaintiff certainly cannot claim prejudice from Aetna's requests for discovery relating to jurisdictional questions when it was Plaintiff's own contradictory statement that gave rise to the need for discovery in the first place. In addition, the length of time this case has been pending is a result of the procedural history of this case, from removal to federal court, through the jurisdictional motions filed in federal court, to the ultimate transfer to this Court as a tag-along action.

Finally, Plaintiff's reliance on cases such as *Broughton v. Cigna Healthplans of California*, 988 P.2d 67, 21 Cal.4th 1066 (1994), is misplaced. Even if such cases could override the FAA – which they cannot – they do not provide any basis for denying arbitration of claims seeking remedies other than public injunctive relief. Although *Broughton* denied arbitration of claims for public injunctive relief, the Court ruled that the claims for monetary damages were subject to arbitration. 988 P.2d at 82, 21 Cal.4th at 1088. By citing *Broughton* as the sole reason

3
GREENBERG TRAURIG, P.A.

for denying arbitration of her state law claims, Plaintiff implicitly concedes that her claims for monetary relief – in the form of restitution and disgorgement – are subject to arbitration. Moreover, as Aetna noted in its Opening Memorandum, *Broughton* and its progeny should not be given any weight by this Court, since they run contrary to longstanding United States Supreme Court precedent establishing that the Supremacy Clause and the FAA preclude states from attempting to remove certain types of claims from the reach of arbitration agreements. *See, e.g., Perry v. Thomas*, 482 U.S. 483 (1987); *Southland Corp. v. Keating*, 465 U.S. 1 (1984). As this Court has already acknowledged, the FAA preempts such state law authority purporting to bar arbitration of certain types of claims. *See* December 11, 2000 Order, at 29. Thus, in the event that this Court determines it has jurisdiction and that any of Plaintiff's claims survive, the Court should enforce the agreement and compel arbitration of those claims.

## II.

## ARGUMENT

### A.   Aetna Did Not Waive Its Right To Compel Arbitration.

As the party resisting arbitration, Plaintiff bears the burden of showing waiver. *See, e.g., Chappel v. Laboratory Corp. of Am.*, 232 F.3d 719, 724 (9th Cir. 2000); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999); *Drexel Burnham Lambert v. Warner*, 665 F. Supp. 1549, 1553 (S.D.Fla. 1987). "Waiver results from a party's substantial participation in litigation to a point inconsistent with an intent to arbitrate which results in prejudice to the other party." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000) (internal quotation and citation omitted). *See also Chappel*, 232 F.3d at 724 (waiver requires showing that party knew of its right to arbitrate, acted inconsistently with that right, and, in doing so,

prejudiced the party asserting waiver).[2] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983).

Plaintiff has not established, and indeed cannot establish, that Aetna waived its right to compel arbitration. Although Plaintiff attempts to paint a picture of unreasonable delay and complains that Aetna should have moved to compel arbitration sooner, the facts reveal that in reality, Aetna's participation in litigation has been limited, entirely consistent with an intention to arbitrate, and has not resulted in any prejudice to Plaintiff.

First, Aetna did not "participate" in the state court action. Instead, Aetna removed the entire case to federal court because Plaintiff's Complaint purports to assert claims based on state law which Aetna contends are completely preempted by ERISA. It is not reasonable to expect Aetna to have asked the state court to compel arbitration of these state-law-based claims when complete preemption strips Plaintiff of the ability to maintain those state-law-based claims at all. Indeed, moving to compel arbitration in state court has been held to waive the right to remove the case to federal court. *See, e.g., McKinnon v. Doctor's Assocs., Inc.*, 769 F. Supp. 216, 220 (E.D. Mich. 1991). Thus removal of claims to federal court does not constitute a waiver of the right to arbitrate. *Baum v. Avado Brands, Inc.*, 1999 WL 1034757 (N.D.Tex. Nov. 12, 1999) (no waiver from removing case to federal court, opposing motion to remand, and participating in court-ordered joint status report and mandatory disclosures); *see generally Benoay v. Prudential-*

---

[2] *See also Groom v. Health Net*, 82 Cal.App.4th 1189, 1194 (2000) ("[P]articipation, standing alone, does not constitute a waiver, for there is an overriding federal policy favoring arbitration....[M]ere delay in seeking a stay of the proceedings without some resultant prejudice to a party...cannot carry the day.") (citation omitted).

*Bache Secs., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986)("[T]his circuit does not require a litigant to engage in futile gestures merely to avoid a claim of waiver'.")

Second, Aetna's participation in the federal court proceedings to date does not warrant a finding of waiver. Aetna's filings and discovery efforts have been limited to issues related to the question of whether ERISA preempts Plaintiff's state law claims.[3] Resolution of such issues will determine whether this Court has jurisdiction. Such filing and discovery related issues are not inconsistent with an intention to arbitrate.[4]

Shortly after Aetna removed this action, Plaintiff moved to remand, asserting that removal was improper because the Complaint stated valid state law claims that were not preempted by ERISA. *See* Plaintiffs' Memorandum in Support of Motion to Remand, dated January 18, 2000. Although Plaintiff criticizes Aetna for moving to dismiss the Complaint rather than moving to compel, Aetna's actions do not reflect "substantial participation" in the federal court proceedings, nor are they in any way inconsistent with an intention to arbitrate. *See generally Rush v. Oppenheimer*, 779 F.2d 885, 88 (2d Cir. 1985) (filing motion to dismiss did

---

[3] Aetna also filed a motion based on the "first-filed" rule, asking the Court to stay this action based on the pendency of two related actions filed in the United States District Court for the District of Pennsylvania. A request to stay pending resolution of the first filed actions raising identical issues cannot operate as a waiver. Rather, such a stay would further the interest of judicial economy because resolution of the "first filed actions" could provide a basis for the arbitrator's rulings.

[4] If the Court determines it has jurisdiction, and any claims survive the Motion to Dismiss, the remaining claims should be submitted to arbitration. It would have been premature for Aetna to move to compel arbitration before the basic issues of jurisdiction and preemption were decided: if the Court ruled that removal was proper and the claims were preempted by ERISA, it would have had to dismiss the Complaint for failure to state a cognizable claim, and if the Court ruled that removal was improper and the claims were not preempted, it would have had to remand the case and would have been without jurisdiction to take any further action.

not constitute waiver); *Baum, supra* (same). The motion to dismiss, like the motion for remand, addressed a basic question: whether the claims were preempted by ERISA. In addition, Aetna expressly stated in its motion to dismiss that it reserved its right to compel arbitration in the event the Court determined that the action could proceed. Aetna's filing a motion to dismiss and opposing Plaintiff's motion for remand thus does not support a finding of waiver.

Nor does pursuing the limited discovery on the same jurisdictional issues, none of which addressed the substantive merits of Plaintiff's claims, lead to a waiver.[5] In connection with the motion for remand, Plaintiff argued that she and her husband were owners and the sole employees of Freshwater Flora & Fauna ("FFF"), and that the health plan offered by FFF (and through which Plaintiff obtained health care coverage) therefore was not an "employee benefit plan" within the meaning of ERISA. *See* Plaintiff's Memorandum in Support of Motion to Remand, at 5. In support of that assertion, Plaintiff filed a declaration asserting that she and her husband were the only two employees of FFF. *See* Declaration of Jeanne E. Curtright in Support of Motion to Remand, at ¶ 4. That statement, and the supporting declaration, directly contradicted an application submitted to HIPC in which Genevieve and Benjamin Keller were also listed as employees of FFF. By disputing federal jurisdiction on the grounds that FFF did not have any "employees" and therefore could not have offered an "employee benefits plan" within the meaning of ERISA, Plaintiff thus created the need for discovery into how many employees FFF had and whether those employees received benefits through the FFF health care plan.

---

[5] *Berman v. Health Net*, 80 Cal.App.4th 1359, 1367 (2000) (test for prejudice arising from participation in discovery is whether "defendants used the discovery processes of the court to gain information about plaintiff's case which defendants could not have gained in arbitration") (citing *Davis v. Continental Airlines, Inc.*, 59 Cal.App.4th 205 (1997)).

Accordingly, Aetna requested, and obtained, document discovery from HIPC and PacAdvantage that related to those issues. In order to permit Aetna to conduct the necessary discovery, Plaintiff agreed to continue the hearing date on the pending motions. *See* Stipulation and Order dated May 8, 2000. At the instruction of the Court, the parties took the pending motions off calendar, to be refiled after the discovery was completed. *Id.* After hearing the refiled Motions, the Court directed the parties to submit supplemental briefing on the issue of whether the Kellers were employees or independent contractors. *See* Order dated July 25, 2000. Aetna then requested limited discovery which would focus on that issue. On August 17, 2000, before the parties conducted that discovery or filed the requested supplemental briefs, the Court stayed all proceedings pending ruling by the MDL. *See* Order dated August 17, 2000. Having created the contradiction that required Aetna to take discovery relating to jurisdictional issues, Plaintiff cannot now be heard to complain that Aetna waived its right to arbitrate by engaging in that very limited discovery.[6] *See generally Lake Commun., Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984) (no waiver from limited discovery and motion to dismiss), *overruling on other grounds recognized by Nghiem v. NEC Elec. Inc.*, 25 F.3d 1437, 1442 (9th Cir. 1994).

Finally, Plaintiff has not shown any prejudice resulting from the proceedings thus far. Although Plaintiff blames Aetna's limited discovery efforts and motion to dismiss for the delay that has supposedly "thwarted" Plaintiff's right to have its remand motion resolved quickly, any delay initially was caused by the need to obtain discovery to respond to Plaintiff's contradictory statements. Further delay stems not from any conduct by Aetna inconsistent with its intention to

---

[6] The cases Plaintiff cites as examples of waiver are inapposite. *See* Plaintiff's Opposition at 9-10 & n.5. As Plaintiff's own parenthetical descriptions indicate, each of those cases involved protracted litigation, including substantial discovery on the merits, without any hint of any intention to arbitrate.

arbitrate, but rather from the transfer of this case to this Court. Simply put, Plaintiff has suffered no prejudice that would justify a finding of waiver.[7]

**B.     Plaintiff's Claims for Injunctive Relief Are Arbitrable.**

Hoping to avoid arbitration, Plaintiff relies on *Broughton v. Cigna Healthplans of California*, 988 P.2d 67, 21 Cal.4th 1066 (1994). That attempt fails. Although *Broughton* found claims for public injunctive relief under the California Legal Remedies Act ("CLRA"), were not arbitrable, it held that claims seeking monetary relief were subject to arbitration. 988 P.2d at 82, 21 Cal.4th at 1088. By citing *Broughton* as the sole support for the assertion that her claims are not arbitrable, Plaintiff thus implicitly concedes that her claims for monetary relief in the form of restitution or disgorgement would be arbitrable. Moreover, as noted in Aetna's Opening Memorandum, *Broughton* and similar cases cannot override the FAA or United States Supreme Court authority establishing that states cannot exempt certain types of disputes from the reach of valid agreements to arbitrate in order to serve state policy interests.

The opinion of the United States Supreme Court in *Southland Corporation v. Keating*, 465 U.S. 1 (1984) perfectly illustrates this point. Southland's standard franchise agreement broadly required arbitration of any "controversy or claim arising out of or relating to this Agreement or the breach thereof." 465 U.S. at 4. The California Supreme Court upheld the trial

---

[7] As indicated in several of the cases Plaintiff cites, delay in asserting the right to arbitrate will not give rise to waiver without a showing of prejudice to the adverse party. *See, e.g., St. Mary's Med. Ctr. of Evansville v. Disco Alum. Prods. Co.*, 969 F.2d 585, 588 (7th Cir. 1992) ("perhaps ten months is not, standing alone, a substantial delay. A party needs time to assess its options. Weighing options is not normally inconsistent with the exercise of any of those options, and we can envision situations where a party may properly take months before deciding whether to litigate or demand arbitration."); *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1576 (2d Cir. 1991) (delay without prejudice does not constitute waiver); *National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 776 (D.C. Cir. 1987) (same).

court's refusal to enforce that clause, interpreting a provision of the California Franchise Investment Law to require judicial consideration of claims brought under that statute, and concluding that such an interpretation did not contravene the FAA. *Id.* at 10.

The United States Supreme Court reversed, finding "nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under State law" beyond the provision for revocation enunciated in Section 2. *Id.* at 11.[8] In reaching its decision, the Court noted that "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* at 16. The Court then definitively rejected the notion that states could advance their own policy interests by requiring judicial resolution of certain types of claims: "If we accepted this analysis, states could wholly eviscerate Congressional intent to place arbitration agreements upon the same footing as other contracts . . . simply by passing statutes such as the Franchise Investment Law." *Id.* at n.11.

These principles were reaffirmed in *Perry v. Thomas*, 482 U.S. 483 (1987), in which plaintiff sued his former employer over a dispute regarding commissions on the sale of securities. 482 U.S. at 484-85. Even though a valid agreement to arbitrate existed, the trial court refused to compel arbitration, based on a provision of the California Labor Code allowing judicial pursuit of actions to collect wages despite the existence of a private arbitration agreement. *Id.* at 486-87. The California Court of Appeal affirmed and the California Supreme Court denied review. *Id.*

---

[8] Section 2 provides in relevant part that "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Once again, the U.S. Supreme Court reversed, reiterating that in the FAA "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 489 (quoting *Southland*, 465 U.S. at 10). The Court concluded that the California statutory requirement of judicial resolution of certain types of wage disputes was in "unmistakable conflict" with the "clear federal policy" favoring arbitration, as expressed in the FAA. *Id.* at 490.

The decision in *Broughton* ignores the broad principles set forth in *Southland* and reiterated in *Perry*. While it recognized that *Southland* precludes state courts and legislatures from withdrawing statutory rights from the scope of arbitration agreements, the *Broughton* court interpreted *Southland* as leaving open the issue of whether a state legislature "may restrict a private arbitration agreement when it inherently conflicts with a public statutory purpose that transcends private interests." 21 Cal.4th at 1083. After having thus created a loophole where none exists, the *Broughton* court mistakenly concluded that:

> it would be perverse to extend the policy [in favor of arbitration] so far as to preclude states from passing legislation the purposes of which make it incompatible with arbitration, or to compel states to permit the vitiation through arbitration of the substantive rights afforded by such legislation. [*Id.*]

But that is *exactly what the FAA was designed to do*. Time and again the United States Supreme Court has stated that the FAA was enacted to reverse longstanding judicial hostility to arbitration. *See, e.g., Gilmer v. Interstate/Johnson Lane Co.*, 500 U.S. 20, 23 (1991) (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219-20 & n.6 (1985)); *Southland*, 465 U.S. at 13-14 (FAA prompted by Congressional "awareness of the widespread unwillingness of state courts to enforce arbitration agreements"). Whether that hostility is manifested directly in a statute or through a judicial interpretation of a statute does not matter. Either way, the FAA preempts any

and all state efforts to refuse to enforce a valid contractual agreement simply because it would require arbitration rather than judicial resolution of claims. *See generally Stout v. J.D. Byrider*, 228 F.3d 709, 715-16 (6th Cir. 2000) ("Because we previously found that the parties fairly agreed to arbitrate these types of claims, we find that neither this Court nor the Ohio courts have the ability to mandate judicial resolution of these disputes in violation of the parties' agreement."), *cert. denied*, 121 S. Ct. 1088 (2001).[9]

This Court has already acknowledged that the Supremacy Clause makes the FAA the law of the land. *See* December 11, 2000 Order, at 29. Whatever impact cases such as *Broughton* may have on motions to compel arbitration brought under California state law, such cases cannot trump the policies embodied by the FAA. Any other result would leave the door open to state courts to neutralize the FAA simply by declaring in legislation or judicial decisions that state social policies require arbitration of certain types of claims, despite the fact that the parties resisting arbitration had not contractually agreed to exclude any claims from the scope of their arbitration agreement. As *Southland*, *Perry*, and a wealth of other United States Supreme Court case law makes clear, such a result is unacceptable.[10]

---

[9] The fact that Congress may elevate federal statutory interests above the policy favoring arbitration does not mean that each of the 50 states and their legislatures and courts may do the same. *See Gilmer*, 500 U.S. at 26 ("Having made the bargain to arbitrate, the party should be held to it unless *Congress itself* has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.") (emphasis added, quotation omitted).

[10] Furthermore, to the extent claims under the state law claims for violation of the CLRA or Bus. & Prof. Code § 17200 are preempted by ERISA, Plaintiff has no valid claim to which *Broughton* would even apply.

## III.

## CONCLUSION

Plaintiff concedes that she is bound by an arbitration agreement which covers the claims she asserts in her Complaint. Plaintiff has not met her burden of showing any basis for waiver or refusal to enforce the arbitration agreement. Therefore, if this Court determines that any of Plaintiff's claims survive, such claims must be directed to arbitration.

Dated: April 6, 2001

Respectfully submitted,

Hilarie Bass
Florida Bar No. 334243
e-mail: BassH@gtlaw.com
Mark P. Schnapp
Florida Bar No. 501689
e-mail: SchnappM@gtlaw.com
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131

John J. Swenson
Richard J. Doren
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Miguel A. Estrada
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC 20036

*Attorneys for Aetna Inc., Aetna U.S. Healthcare Inc. and Aetna U.S. Healthcare of California Inc.*

10479201_1.DOC

\PEDROSAE\601984v01\CWHS01!.DOC\4/6/01

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that three (3) true and correct copies of the foregoing Reply Memorandum In Support of Motion To Compel Arbitration were served by hand delivery upon Michael Eidson, Esq., Barry Meadow, Esq., Stephen N. Zack, Esq., and James Fox Miller, Esq.; (1) copy by facsimile and (3) copies via overnight mail to David Boies, Esq., and Richard Scruggs, Esq.; one copy by United States Mail to all other counsel this 6th day of April, 2001:

David Boies, Esq.
Stephen Neuwirth, Esq.
**Boies, Schiller & Flexner LLP**
80 Business Park Drive
Armonk, NY 10504

Michael Eidson, Esq.
Dean Colson, Esq.
Enid Duany Mendoza, Esq.
**Colson, Hicks, Eidson, Colson,
Matthews, Martinez, Mendoza,
Kalbac & Kane, P.A.**
255 Aragon Ave., 2nd Floor
Coral Gables, FL 33134

Barry L. Meadow, Esq.
Aaron S. Podhurst, Esq.
**Podhurst, Orseck, Josefsberg,
Eaton, Meadow, Olin & Perwin, P.A.**
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780

Richard F. Scruggs, Esq.
Sidney A. Backstrom, Esq.
**Scruggs, Millette, Bozman
& Dent, P.A.**
734 Delmas Avenue
P.O. Drawer 1425
Pascagoula, MS 39568

James Fox Miller, Esq.
Charles Fox Miller, Esq.
Greg A. Lewen, Esq.
**Miller, Schwartz & Miller, P.A.**
P.O. Box 7259
2435 Hollywood Boulevard
Hollywood, FL 33020

Stephen N. Zack, Esq.
H. Stephen Rash, Esq.
Orion G. Caldyson, III, Esq.
**Zack, Kosnitsky, P.A.**
2800 Bank of America Tower
100 Southeast 2nd Street
Miami, Florida 33131-2144

| | |
|---|---|
| John D. Aldock, Esq.<br>M. David Dobbins, Esq.<br>**Shea & Gardner**<br>1800 Massachusetts Avenue, N.W.<br>Suite 800<br>Washington, DC 20036 | Ronald B. Ravikoff, Esq.<br>Walter J. Tache, Esq.<br>**Zuckerman Spaeder Taylor &<br> Evans LLP**<br>201 S. Biscayne Blvd., Suite 900<br>Miami, FL 33131 |
| John G. Harkins, Jr., Esq.<br>Eleanor Morris Illoway, Esq.<br>**Harkins Cunningham**<br>2005 Market Street<br>2800 One Commerce Square<br>Philadelphia, PA 19103 | Marty Steinberg, Esq<br>Bruce D. Hoffman, Esq.<br>Samuel A. Danon, Esq.<br>**Hunton & Williams**<br>One Biscayne Tower, Suite 2500<br>2 South Biscayne Blvd.<br>Miami, FL 33131 |
| Edward M. Crane, Esq.<br>R. Ryan Stoll, Esq.<br>Mark R. Filip, Esq.<br>**Skadden Arps Slate Meagher<br> & Flom LLP**<br>333 West Wacker, Suite 2100<br>Chicago, IL 60606 | Eduardo Palmer, Esq.<br>**Steel Hector & Davis LLP**<br>200 South Biscayne Boulevard,<br>41st Floor<br>Miami, FL 33131-2398 |
| John H. Beisner, Esq.<br>Brian D. Boyle, Esq.<br>Brian P. Brooks, Esq.<br>John Rogovin, Esq.<br>**O'Melveny & Meyers LLP**<br>555 13TH Street, N.W.<br>Washington, DC 20004-1109 | Raoul G. Cantero, III, Esq.<br>**Adorno & Zeder**<br>2601 S. Bayshore Drive, Suite 1600<br>Miami, FL 33133-5413 |

| | |
|---|---|
| William E. Grauer, Esq.<br>Christopher R.J. Pace, Esq.<br>**Cooley Godward LLP**<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121-2128 | Michael Nachwalter, Esq.<br>Brian F. Spector, Esq.<br>Robert Landon, Esq.<br>**Kenny Nachwalter Seymour<br> Arnold Critchlow & Spector, PA**<br>1100 Miami Center<br>201 S. Biscayne Blvd.<br>Miami, FL 33131-4332 |
| Jeffrey S. Klein, Esq.<br>**Weil Gotshal & Manges**<br>767 Fifth Avenue<br>New York, NY 10153-0119 | Ed Soto, Esq.<br>Kenneth Gavsie, Esq.<br>**Weil Gotshal & Manges**<br>701 Brickell Avenue<br>Suite 2100<br>Miami, FL 33131 |
| Steve Haydon, Esq.<br>Stan Bluemenfeld, Esq.<br>George Demos, Esq.<br>**O'Melveny & Meyers LLP**<br>400 South Hope Street<br>Los Angeles, CA 90071 | Frank Burt, Esq.<br>**Jorden, Burt, Boros, Cicchetti<br> Berenson & Johnson LLP**<br>777 Brickell Avenue<br>Suite 500<br>Miami, Florida 33131 |
| Craig A. Hoover, Esq.<br>**Hogan & Hartson L.L.P**<br>555 Thirteenth Street, N.W.<br>Washington, D.C. 20004 | Linda Smith, Esq.<br>**O'Melveny & Myers, LLP**<br>1999 Avenue of the Stars, 7th Floor<br>Los Angeles, CA 900067-6035 |
| Keith P. Vanden Dooren<br>Office of the Attorney General<br>Economic Crimes Division<br>The Capitol, PL-01<br>Tallahassee, Florida 32399-1050 | |

_____
MARK SCHNAPP