NIGHT BOX
FILED

2003

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### MDL NO.: 1334

IN RE: MANAGED CARE LITIGATION

---

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

---

CHARLES B. SHANE, M.D., et al.

**Plaintiffs,**

v.

HUMANA, INC.; AETNA, INC.; AETNA –USHC, INC.;
CIGNA; COVENTRY HEALTH CARE, INC.;
HEALTH NET, INC.; HUMANA HEALTH PLAN, INC.;
PACIFICARE HEALTH SYSTEMS, INC.; PRUDENTIAL
INSURANCE COMPANY OF AMERICA; UNITED HEALTH
GROUP; UNITED HEALTH CARE; WELLPOINT HEALTH
NETWORKS, INC.; AND ANTHEM, INC.

**Defendants.**

---

TIMOTHY N. KAISER, M.D., and SUZANNE LeBEL
CORRIGAN, M.D., on behalf of a class of others
similarly situated,

**Plaintiffs,**

v.

CIGNA CORPORATION; CIGNA HEALTHCARE OF
ST. LOUIS, INC.; and CIGNA HEALTHCARE OF
TEXAS, INC.,

**Defendants.**

---

## JOINT MOTION FOR PRELIMINARY APPROVAL OF
## SETTLEMENT AMONG CIGNA HEALTHCARE AND PHYSICIANS

Class Representative Plaintiffs and Defendants CIGNA Corporation, CIGNA HealthCare

of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc. ("CIGNA HealthCare") respectfully

move this Court to enter the proposed Order Preliminarily Approving Proposed Settlement Among CIGNA HealthCare and Physicians, a copy of which is attached hereto as Exhibit A.

In support of this motion, Class Representative Plaintiffs and CIGNA HealthCare state as follows:

1.     Class Representative Plaintiffs and CIGNA HealthCare have entered into a settlement agreement, a copy of which is attached hereto as Exhibit B.

2.     Class Representative Plaintiffs and CIGNA HealthCare respectfully request that this Court grant preliminary approval to the settlement agreement as fair, adequate and reasonable.

3.     Class Representative Plaintiffs and CIGNA HealthCare respectfully request that this Court approve the notice plan set forth in Section 5 of the settlement agreement and the Plan of Notice attached thereto as Exhibit 5.

4.     Class Representative Plaintiffs and CIGNA HealthCare respectfully request that this Court proceed with the hearing scheduled for September 4, 2003 to consider the settlement agreement and to enter the proposed order.

Dated:  September 4, 2003

Respectfully submitted,

Marty L. Steinberg
HUNTON & WILLIAMS
Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, FL  33131-3136

Harley S. Tropin
KOZYAK TROPIN &
   THROCKMORTON, PA
200 S. Biscayne Boulevard, Suite 2800
Miami, FL  33131-2335

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL NO.: 1334

IN RE: MANAGED CARE LITIGATION

---

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

---

CHARLES B. SHANE, M.D., et al.

Plaintiffs,

v.

HUMANA, INC.; AETNA, INC.; AETNA –USHC, INC.;
CIGNA; COVENTRY HEALTH CARE, INC.;
HEALTH NET, INC.; HUMANA HEALTH PLAN, INC.;
PACIFICARE HEALTH SYSTEMS, INC.; PRUDENTIAL
INSURANCE COMPANY OF AMERICA; UNITED HEALTH
GROUP; UNITED HEALTH CARE; WELLPOINT HEALTH
NETWORKS, INC.; AND ANTHEM, INC.

Defendants.

---

TIMOTHY N. KAISER, M.D., and SUZANNE LeBEL
CORRIGAN, M.D., on behalf of a class of others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATION; CIGNA HEALTHCARE OF
ST. LOUIS, INC.; and CIGNA HEALTHCARE OF
TEXAS, INC.,

Defendants.

---

## ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT AMONG CIGNA HEALTHCARE AND PHYSICIANS

The Court having reviewed and considered the Joint Motion for

Preliminary Approval of Settlement Among *CIGNA HealthCare* and Physicians ("Joint

Motion") filed on September 4, 2003, and having reviewed and considered the terms and

**EXHIBIT 2**

conditions of the proposed Settlement as set forth in the Settlement Agreement Among

CIGNA HealthCare and Physicians dated September 4, 2003 (the "Agreement"), a copy

of which has been submitted with the Joint Motion, and on the basis of such submissions,

together with any other submissions by the parties in support of the Joint Motion, and all

prior proceedings had in this consolidated multi-district litigation, good cause for this

Order having been shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.      The terms of the Agreement are hereby *preliminarily* approved,

subject to further consideration at the Fairness Hearing provided for below.  The Court

concludes that the proposed Settlement is sufficiently within the range of reasonableness

to warrant the conditional certification of the settlement Class, the scheduling of the

Fairness Hearing and the circulation of Initial Notice to the Class, each as provided for in

this Order.  Capitalized terms in this Order should have the meaning assigned to them in

the Agreement unless otherwise defined herein.

Conditional Certification of the Class

2.      For purposes of settlement only, pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2) and (b)(3), solely with respect to CIGNA HealthCare and the

other Released Persons, a settlement class is hereby conditionally certified as follows (the

"Class"):

> any and all Physicians, Physician Groups and Physician Organizations
> (and all Persons claiming by or through them, such as Physicians'
> Assistants and Advanced Practice Registered Nurses), who or which
> provided Covered Services to any CIGNA HealthCare member or any
> individual enrolled in or covered by a plan offered or administered by any
> Person named as a defendant in the *Shane* complaint or by any of their
> respective current or former Subsidiaries from August 4, 1990 through the
> date of the entry of the Preliminary Approval Order; provided, however,

2

that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services.

Class Representative Plaintiffs are hereby conditionally certified as representatives of the Class defined above.  This conditional certification of the Class and Class representatives is solely for purposes of effectuating the proposed Settlement.  If the Agreement is terminated or is not consummated for any reason, the foregoing conditional certification of the Class and appointment of Class representatives shall be void and of no further effect and the parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order without prejudice to any legal argument that any of the parties to the Agreement might have asserted but for the Agreement, and provided that in such circumstances any further ruling by this Court or an appellate court on the propriety of this Court's order dated September 26, 2002, certifying classes in *In re Managed Care Litigation*, MDL 1334, shall apply to the Released Persons as if the Released Persons had participated in further proceedings with respect to that Order.

Based on the Court's review of the Joint Motion and supporting materials, the Court conditionally finds that the proposed Class satisfies Rule 23(a) of the Federal Rules of Civil Procedure in that:

A.    The Class, which consists of hundreds of thousands of Physicians, Physician Groups and Physician Organizations, is so numerous that joinder of all Persons who fall within the class definition is impracticable;

B.    The commonality requirement is satisfied where members of the Class share at least one common legal or factual issue.  Here, there are questions of law common to the Class, including allegations under RICO and other causes of action as set forth in the Plaintiffs' Third Amended Complaint in *Kaiser* and in the Second Amended Consolidated Class Action Complaint in *Shane*.  There are also questions of fact common to the Class, including certain factual

issues related to whether computer systems were inadequate and whether computer programs were systematically used to improperly deny or delay payment for health care services furnished by members of the Class;

C.    The claims of the Class representatives are typical of the claims of the Class; and

D.    The Class representatives will fairly and adequately protect the interests of the Class and are represented by qualified counsel who are competent to represent the Class and prosecute this Litigation.

The Court further conditionally finds that the proposed Class satisfies Rule 23(b)(2) of the Federal Rules of Civil Procedure in that CIGNA HealthCare is alleged to have acted on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive relief with respect to the Class as a whole. The Court notes that the terms of the Agreement include substantial injunctive relief.

The Court further conditionally finds that the proposed Class satisfies Rule 23(b)(3) of the Federal Rules of Civil Procedure which requires that common issues predominate and that a class action is superior to other available methods for the fair and efficient resolution of this controversy. The Court notes that the terms of the Agreement include procedures for resolving claim disputes, including mechanisms for independent external review and other independent decision-makers, that absolve individual Class Members, for example, from having to prove, pursuant to RICO, that they relied to their detriment on alleged misrepresentations and nondisclosures, with the result that the Court need not resolve many individual factual and legal issues that might otherwise arise. The Court further notes that because the Litigation is being settled, rather than litigated, it need not consider the manageability issues that would be presented by a nationwide class litigation with respect to such individualized issues. *Amchem Prods., Inc. v. Windsor,*

4

117 S. Ct. 2231, 2240 (1997).  Against this background, and in light of the Complaints'

allegations of systemic computer and claims processing issues, the Court conditionally

finds that common issues predominate and that a class action is superior to other

available methods for the fair and efficient resolution of this controversy.

<u>Fairness Hearing; Right to Appear and Object</u>

    3. A Fairness Hearing shall take place before the undersigned, United

States District Judge Federico A. Moreno, at the United States Courthouse, Courtroom

IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132,

on     , at  , to determine:

    (a) whether the Court should certify the Class and whether

Class representatives and Class Counsel have adequately represented the Class;

    (b) whether the proposed Settlement, on the terms and

conditions provided for in the Agreement, should be finally approved by the Court as fair,

reasonable and adequate;

    (c) whether the Released Claims of the Class Members in this

Litigation should be dismissed on the merits and with prejudice as to CIGNA

HealthCare;

    (d) whether the application for attorneys' fees, costs and

expenses to be submitted by Class Counsel and Kaiser Counsel in connection with the

Fairness Hearing should be approved;

    (e) whether the application for incentive awards to Class

representatives to be submitted in connection with the Fairness Hearing should be

approved;

(f)     whether each Tag-Along Action should be dismissed with prejudice as to Released Claims against CIGNA HealthCare with the exception of any Tag-Along Action with respect to any named plaintiff that has timely submitted an Opt Out request; and

(g)     such other matters as the Court may deem necessary or appropriate.

4.     The Court may finally approve the proposed Settlement at or after the Fairness Hearing with any modifications agreed to by the Settling Parties and without further notice to the members of the Class.

5.     Any putative Class Member who or which has not timely and properly provided notice of an election to Opt Out of the Class and the proposed settlement in the manner set forth below, and any other interested Person, may appear at the Fairness Hearing in person or by counsel and be heard, to the extent allowed by the Court, either in support of or in opposition to the matters to be considered at the hearing, provided, however, that no putative Class Member who or which has elected to Opt Out from the Class shall be entitled to object; and provided further that no Person shall be heard, and no papers, briefs or other submissions shall be considered by the Court in connection with its consideration of those matters, unless on or before _____, 2003 **[Objection Date – 60 days after original notice]**, such Person:

(a)     files with the Court a notice of such Person's intention to appear, together with a written statement of objection setting forth such Person's objections, if any, to the matters to be considered and the basis therefore, together with all

other support, papers or briefs that he, she or it wishes the Court to consider and intends to rely upon at the Fairness Hearing, and

> (b)    serves copies of all such materials either by hand or overnight delivery, on Notice Counsel and Defendants' Counsel at the addresses specified in the Initial Notice.  All responses by the Settling Parties to objections shall also be served by hand or overnight delivery on the objecting Person or his, her or its attorney.  Objectors' papers may be supplemented ten (10) days prior to the Fairness Hearing following the filing of any responsive papers by the Settling Parties and served in the manner and on counsel described above.

> 6.    The Court may adjourn the Fairness Hearing, or any adjournment thereof, including the consideration of the application for attorneys' fees, costs and expenses, without further notice of any kind other than an announcement of such adjournment in open court at the Fairness Hearing or any adjournment thereof.

## Form and Timing of Notice

> 7.    The Initial Notice substantially in the form attached as Exhibits 6 and 7 to the Agreement is hereby approved.

> 8.    The Plan of Notice attached as Exhibit 5 to the Agreement is approved.

> 9.    Costs of providing Notice shall be paid as set forth in the Agreement.

> 10.    Pursuant to the Plan of Notice, the Settling Parties, in cooperation with the Settlement Administrator, shall cause the Initial Notice, substantially in the form attached as Exhibit 6 to the Agreement, to be sent by first class mail to the addresses of

7

all Persons set forth on the Class List within thirty (30) days of entry of this Order or by

_____, 2003.  Notice to any individual Physician at his or her business address is

sufficient notice to that Physician's Physician Group or Physician Organization.  Notice

shall also be sent to any Person who requests it from the Settlement Administrator or

Class Counsel.

          11.     In addition to the mailing of the Initial Notice as called for in

paragraph 10 of this Order, the Settling Parties shall perform the other steps of

publication notice to the Class as detailed in the Plan of Notice, including but not limited

to the following:

        A.     By _____, 2003 **[no later than thirty (30) days prior to the Opt Out Deadline],** the summary form of the Initial Notice, substantially in the form attached as Exhibit 7 to the Agreement, will have been published in the legal notices sections of the national editions of *The Wall Street Journal* and *USA Today* one day a week for two consecutive weeks.  In addition, to the extent reasonably practicable within the schedule fixed by the Court, the Settling Parties will seek to have the summary form of Initial Notice published at least once, no later than _____, 2003 **[30 days prior to the Opt Out Deadline],** in a nationwide periodical addressing issues of concern to Physicians, such as *The Journal of the American Medical Association* or *The American Medical News.*

        B.     An internet website will be created and maintained by the Settlement Administrator that will be available for public access by _____ **[within thirty (30) days after the date of the entry of the Preliminary Approval Order].** The website will allow putative Class Members to download, view and print copies of the forms of Initial Notice and will contain an automated number and e-mail address maintained by the Settlement Administrator.  It will also contain a link to the website maintained by Class Counsel.

12.     Having considered the manner of giving Initial Notice to putative Class Members as described in the Plan of Notice, the Court finds that the notice given in the form and manner provided as set forth in paragraphs 7 through 11 of this Order and in the Plan of Notice is the best means of notice to members of the Class that is practicable under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement and the Fairness Hearing to all Persons affected by and/or entitled to participate in the proposed Settlement or the Fairness Hearing, in full compliance with the requirements of due process and the Federal Rules of Civil Procedure.

### Ability of Putative Class Members to Opt Out of Settlement Class

13.     All putative Class Members who wish to Opt Out of the Class must do so by sending a written request for exclusion to the Settlement Administrator by first-class mail to the address in the Initial Notice, signed by the putative Class Members and providing all information called for in the Initial Notice.  To be considered timely, and thereby effectively exclude a Person from the Class, the envelope delivering a completed Opt Out request for such Person must be postmarked no later than _____, 2003 (the "Opt Out Deadline" **[60 days after Notice Date]**).  At the Fairness Hearing, the Settlement Administrator shall file an Affidavit or Declaration with the Clerk of the Court (with a copy to Class Counsel and Defendants' Counsel) attaching a final list in machine-readable form of those Opt Out requests filed by the Opt Out Deadline and not then revoked.

14.     Any putative Class Member that does not properly and timely request exclusion from the Class (or who requests exclusion but revokes that request as

permitted by the Agreement) shall be included in such Class and, if the proposed Settlement is approved and becomes effective, shall be bound by all the terms and provisions of the Agreement, including but not limited to the releases, waivers and covenants not to sue described therein, whether or not such Person shall have objected to the Settlement and whether or not such Person makes a claim upon, or participates in, the Settlement Consideration to be provided under the Agreement.

<u>Other Provisions</u>

15.     The Court hereby vacates so much of the Order of Preliminary Approval and Conditional Class Certification entered by Chief Judge G. Patrick Murphy of the United States District Court for the Southern District of Illinois on November 26, 2002 in *Kaiser, et al. v. CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc.* (Case No. 02-1179-GPM), as applies to Class Members under the proposed Settlement.

16.     The Court hereby lifts its Order Granting Plaintiffs' Motion for Preliminary Injunction, entered on December 12, 2002, that enjoined Defendants and its attorneys "from proceeding in any manner with the proposed settlement that [w]as 'preliminarily' approved in the *Kaiser, et al. v. CIGNA Corp., et al.*, Civil Action No. 02-1179-GPM, United States District Court for the Southern District of Illinois, without the express approval of this Court, and from contacting in any way the members of the class certified by this Court."

17.     The Court further appoints and designates as Class Counsel the MDL Class Counsel in this Litigation.

18.     Archie C. Lamb, Jr., Harley S. Tropin and Edith M. Kallas are hereby appointed as Notice Counsel for purposes of this proposed Settlement.

19.     Notice Counsel and Defendants' Counsel are hereby authorized and ordered to retain Poorman-Douglas Corporation as the Settlement Administrator in accordance with the terms of Section 9.1 of the Agreement.

20.     Notice Counsel and Defendants' Counsel are hereby authorized and ordered to retain an Independent Review Entity in accordance with the terms of Section 9.2 of the Agreement.

21.     CIGNA HealthCare is hereby authorized and ordered to appoint an Internal Compliance Officer in accordance with the terms of Section 15.1 of the Agreement.

22.     Notice Counsel are authorized and ordered to designate a Compliance Dispute Facilitator in accordance with the terms of Section 15.2 of the Agreement.

23.     CIGNA HealthCare is authorized to communicate with putative Class Members regarding the provisions of the Agreement, so long as such communications are not inconsistent with the Initial Notice, the Notice of Commencement of the Class Period, or other agreed upon communications concerning the Agreement. CIGNA HealthCare shall not discourage the filing of any claims allowed under the Agreement or advise Class Members with respect to the category or categories of claims that the Class Members should or should not file under the Agreement. CIGNA HealthCare shall refer to the Settlement Administrator or Class Counsel any inquiries from Class Members about claims to be filed under the Agreement.

24.     Any Class Member may enter an appearance in this Litigation, at his, her or its own expense, individually or through counsel of his, her or its own choice, in connection with paragraph 5 above or otherwise.  Any Class Member who does not enter an appearance will be represented by Class Counsel.

25.     All proceedings against or concerning CIGNA HealthCare in this Litigation, other than proceedings as may be necessary to carry out the terms and conditions of the proposed Settlement, are hereby stayed and suspended until further order of the Court.  Pending final determination of whether the proposed Settlement and the Agreement should be approved and the Class permanently certified, all putative Class Members and all Signatory Medical Societies are hereby barred and enjoined from commencing or prosecuting any action asserting any Released Claims.

26.     All proceedings against or concerning CIGNA HealthCare in Tag-Along Actions (as defined in Section 17.1 of the Agreement) to the extent of Released Claims, other than proceedings as may be necessary to carry out the terms and conditions of the proposed Settlement, are hereby stayed and suspended until further order of the Court.

27.     No discovery with regard to the proposed Settlement or the Agreement shall be permitted as to any of the Settling Parties other than as may be directed by the Court upon a proper showing by the party seeking such discovery by motion properly noticed and served in accordance with this Court's Local Rule 7.1.

28.     As to any action brought by or on behalf of putative Class Members that asserts any claim that as of Final Approval would constitute a Released Claim against CIGNA HealthCare (other than the *Kaiser* or *Shane* actions) that has been,

or will in the future, be consolidated with the Provider Track Actions under MDL Docket No. 1334, all proceedings as to CIGNA HealthCare in each such action are hereby stayed with respect to the claims that are Released Claims under the Agreement pending entry of the Final Order and Judgment.

29.     Neither the Agreement, in whole or in part, whether effective, terminated, or otherwise, or any of its provisions or any negotiations, statements or proceedings relating to it shall be construed as, offered as, received as, used as or deemed to be evidence of any kind in *Kaiser* or *Shane* or in any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement. Without limiting the foregoing, neither the Agreement nor any related negotiations, statements or proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of CIGNA HealthCare, the Defendants or the Plaintiffs, or as a waiver by CIGNA HealthCare, the Defendants or the Plaintiffs of any applicable defense, including without limitation any applicable statute of limitations.

30.     In the event that the Agreement is terminated or is not consummated for any reason, the proposed Settlement and all proceedings had in connection therewith shall be null and void, except to the extent expressly provided to the contrary in the Agreement, and without prejudice to the rights of the parties to the Agreement before it was executed.

13

DONE AND ORDERED after a hearing in open court at the United States

District Courthouse in Miami, Florida, on _____, and signed this ___ day of _____,

2003.


_____
**FEDERICO A. MORENO**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL NO.: 1334

IN RE: MANAGED CARE LITIGATION

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

CHARLES B. SHANE, M.D., et al.

Plaintiffs,

v.

HUMANA, INC.; AETNA, INC.; AETNA-USHC, INC.;
CIGNA; COVENTRY HEALTH CARE, INC.;
HEALTH NET, INC.; HUMANA HEALTH PLAN, INC.;
PACIFICARE HEALTH SYSTEMS, INC.; PRUDENTIAL
INSURANCE COMPANY OF AMERICA; UNITED HEALTH
GROUP; UNITED HEALTH CARE; WELLPOINT HEALTH
NETWORKS, INC.; AND ANTHEM, INC.

Defendants.

TIMOTHY N. KAISER, M.D., and SUZANNE LeBEL
CORRIGAN, M.D., on behalf of a class of others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATION; CIGNA HEALTHCARE OF
ST. LOUIS, INC.; and CIGNA HEALTHCARE OF
TEXAS, INC.,

Defendants.

# SETTLEMENT AGREEMENT AMONG
CIGNA HEALTHCARE AND PHYSICIANS

## TABLE OF CONTENTS

PREAMBLE ........................................................................................................1

WHEREAS ........................................................................................................1

1. DEFINITIONS.............................................................................................7

2. EFFECT OF SETTLEMENT .....................................................................26

3. COMMITMENT TO SUPPORT AND COMMUNICATIONS WITH CLASS MEMBERS.................................................................................................26

4. PRELIMINARY APPROVAL ORDER AND SCHEDULING OF FAIRNESS HEARING. ................................................................................................27

5. NOTICE.....................................................................................................27

    5.1 *Initial Notice* ................................................................................27

    5.2 *Notice of Commencement of the Claims Period* ............................28

    5.3 *Responsibility for Costs of Notice* ................................................28

6. PROCEDURE FOR FINAL APPROVAL; LIMITED WAIVER.............................28

    6.1 *Opt Out Timing and Rights* ..........................................................28

    6.2 *Setting the Fairness Hearing Date and Fairness Hearing Proceedings* .......29

7. PROSPECTIVE RELIEF: ADDITIONAL DISCLOSURES; CHANGES IN BUSINESS PRACTICES .................................................................................30

    7.1 *Increased Automated Adjudication of Claims* ..............................30

    7.2 *Internet Disclosures and Functionality* ........................................31

        a. *Addition of Disclosures to CIGNA HealthCare's Website* ...............31

            (1) *In General* ................................................................31

            (2) *Specifications for Additional Disclosures*..............................31

                (a) *Forms to be Used for Submitting Claims*...................32

(b)    *Software or Programs Used to Review Relationships Among Billing Codes* ................................32

(c)    *Requirements with Respect to Fee for Service Claims* ................................................32

(d)    *Timing of Claim Submission* ....................32

(e)    *Procedures for Appealing Partial or Total Claim Denials or Reductions* ............................33

(f)    *Certain Claim Bundling Logic* ..................33

(g)    *Policies Respecting the Reimbursement of Supplies* ................................................33

(h)    *Policies Respecting Multiple Procedures Performed on the Same Date of Service* ....................33

(i)    *Postings with Regard to Definitions of "Medical Necessity" and "Medically Necessary"* ................34

(j)    *Postings with Regard to Medical Necessity Clinical Guidelines* ..........................................34

(k)    *Procedures for Obtaining Fee Schedule Information and Claim Bundling Logic Information Via Electronic Mail* ................................................34

(l)    *Databases Used to Determine "Reasonable and Customary" Charges* ................................34

(m)    *Drug Formularies* ..................................35

(n)    *External Review Entities* ........................35

(o)    *ERA/EFT Capabilities* ............................35

(p)    *Services or Supplies for Which Precertification is Required* ............................................35

(q)    *Online Eligibility and Other Information* ......35

(r)    *Electronic Mail Address for Fee Schedule, Billing Edits, and Other Information* ......................36

ii

   (s) *Savings Clause* ........................................................36

  (3) *Form of Initial Disclosure Content* .......................................36

 b. *Periodic Updates of Disclosures* .......................................36

  (1) *Changes to Policies and Procedures* .....................................36

  (2) *Introduction of New or Revised Claim Review Software or Programs* .......................................................36

  (3) *Introduction of New Claim Coding and Bundling Edits* .......37

  (4) *Changes to CIGNA HealthCare's Maximum Default Fee Schedules* ................................................37

 c. *Prohibition on Certain Representations* ...........................................38

7.3 *Availability of Fee Schedule, Claims Coding Edits and Other Information Through Establishment of Electronic Mail Provider Inquiry Facility* ..........38

7.4 *Investments in Initiatives to Improve Provider Relations* .............................39

7.5 *Reduced Number of Services or Supplies Requiring Precertification* ...........39

7.6 *Greater Notice of Policy and Procedure Changes* .......................................39

7.7 *Initiatives to Reduce Claims Resubmissions* ..................................................40

7.8 *Disclosure of and Commitments Concerning Claim Payment Practices* ......40

 a. *Consistency Across Ongoing Claims Systems and Products* ............40

 b. *Availability of Web-Based Pre-Adjudication Tool* ...........................40

 c. *Requirement for Submission of Clinical Information* ......................41

7.9 *Physician Advisory Committee* .......................................................41

7.10 *Dispute Resolution Process for Physician Billing Disputes* .........................43

7.11    *Appeals of Determinations Related to Medical Necessity or the Experimental or Investigational Nature of Any Proposed Health Care Service or Supplies* ........................................................................................49

    a.    *Initial Determinations* ........................................................49

    b.    *Two Level Internal Appeals of Medical Necessity Denials* ..............49

        (1)    *Level One* ........................................................49

        (2)    *Level Two* ........................................................50

        (3)    *Time Limits for Completing Internal Appeals* ......................50

    c.    *Establishment of External Review Program and Scope* ..................50

7.12    *Disputes Regarding Compliance with Section 7.8.c* ...................................53

    a.    *Disputes Involving Section 7.8.c(i)* ....................................54

    b.    *Disputes Involving Section 7.8.c(ii)* ...................................54

    c.    *Miscellaneous* ........................................................55

7.13    *Participating in CIGNA HealthCare's Network* ...........................................55

    a.    *Advance Credentialing* ........................................................55

    b.    *"All Products" or "All Affiliates" Clauses* ......................................56

    c.    *Termination Without Cause* ...............................................56

    d.    *Rights of Class Members to Refuse to Accept Additional Patients* ........................................................57

7.14    *Fee Schedule Changes* ...............................................................58

    a.    *Notices Regarding Fee Schedules* ........................................58

    b.    *Payment Rules for Injectibles, Durable Medical Equipment, Administration of Vaccines, and Review of New Technologies* .........58

    c.    *Appeals of Reasonable and Customary Determinations* ..................59

7.15    *Recognition of Assignments of Benefits of Plan Member* .............................60

7.16    *Application of Clinical Judgment to Patient-Specific and Policy Issues* ......60

    a.    *Medically Necessary/Medical Necessity Definition*...........................60

        (1)    *Medically Necessary/Medical Necessity Definition*..............60

        (2)    *External Review Statistics* ....................................60

    b.    *Policy Issues Involving Clinical Judgment* ......................................61

    c.    *Future Consideration by CIGNA HealthCare of an Administrative Exemption Program* .......................................................................61

7.17    *Billing and Payment.* .................................................................................62

    a.    *Timing of Claim Submission* ................................................................62

    b.    *Claim Submission* .................................................................................62

7.18    *Payment of Simple Interest on Certain Claims* .............................................62

7.19    *No Automatic Downcoding of Evaluation and Management Claims* ............64

7.20    *Modifications to Payment Policies* ...............................................................65

    a.    *Moratorium on Requirement that Providers Submit Clinical Information in Order to Obtain Payment for Surgical Procedures and for Evaluation and Management Services on the Same Date of Service* .................................................................65

    b.    *Termination of Use of "Well Woman" Billing Code for Obstetrical and Gynecological Examinations* ...................................66

    c.    *Processing of Add-On and Modifier 51 Exempt Billing Codes* .........66

    d.    *Recognition of CPT® Codes and HCPCS Level II Codes* ................66

    e.    *CPT® Code That Includes Supervision and Interpretation* ............67

    f.    *Indented Codes*....................................................................................67

    g.    *Modifier 59*...........................................................................................68

    h.    *Global Periods.* ....................................................................................68

i.      *Code Changes* ...............................................................................68

j.      *Other Modifiers* ..........................................................................68

7.21   *Modifications of Language Included in Remittance Forms Provided to Class Members*......................................................................................................69

a.      *Remittance Forms* ....................................................................69

b.      *Balance Billing by Non-Participating Physicians* ...........................69

7.22   *Overpayment Recovery Procedures* ....................................................70

7.23   *Efforts to Improve Accuracy of Information About Eligibility of CIGNA HealthCare Members* ..........................................................................70

7.24   *Provider Service Centers* ...................................................................71

7.25   *Effect of CIGNA HealthCare Confirmation of Medical Necessity* ...............71

7.26   *Electronic Connectivity* ....................................................................72

7.27   *Information About Physicians Posted on CIGNA HealthCare's Website* ....72

7.28   *Capitation and Physician Organization Specific Issues* .............................73

a.      *Capitation Reporting* ..........................................................73

b.      *Assignment to Primary Care Physician Where CIGNA HealthCare Member Does Not Make Selection Initially* ......................................73

7.29   *Miscellaneous* ..................................................................................74

a.      *No Introduction of "Gag Clauses"* .....................................74

b.      *Ownership of Medical Records* .........................................74

c.      *Limitations on Costs of Non-Judicial Dispute Resolution for Individual Physicians and Small Physician Groups*........................75

d.      *Impact of this Agreement on Standard Agreements and Individually Negotiated Contracts* .........................................................76

e.      *Impact of Agreement on Covered Services* .......................................76

f.    *Privacy of Records and Right of Class Member to Elect Exemption from Use of Electronic Transactions* ...............................................77

g.    *Pharmacy Risk Pools* .......................................................77

h.    *No Requirement to Purchase Stop-Loss Insurance* ...........................77

i.    *Pharmacy Provisions* ......................................................77

j.    *Restrictive Endorsements* ..................................................78

k.    *Physician Specialty Society Guidelines* ...............................78

l.    *Scope of CIGNA HealthCare's Responsibilities* ...............................78

m.    *Provision of Contract Copies* ...........................................79

n.    *State and Federal Laws and Regulations* .........................................79

o.    *Ability of CIGNA HealthCare to Modify Means of Disclosure* .........79

p.    *Participating Physician Status Dependent Upon Existence of Contracts; Limitations on Obligations of Non-Participating Physician* .......................................80

q.    *Effect of Assignment of Benefits* ..........................................80

r.    *Nondisparagement* ......................................................81

7.30  *Compliance with Applicable Law and Requirements of Government Contracts* .....................................................................82

7.31  *Estimated Value of Section 7 Initiatives* .......................................82

7.32  *Force Majeure* ...........................................................82

7.33  *Mental Health Provisions* ...................................................83

8.    OTHER SETTLEMENT CONSIDERATION .......................................84

8.1   *Foundation* ..............................................................85

8.2   *Category A Settlement Fund* ...............................................85

a.    *Establishment of the Category A Settlement Fund* ...........................85

b.    *Method of Distribution of the Category A Settlement Fund; Contributions to the Foundation* ......................................86

c.    *Distribution* .......................................................................86

d.    *Encouragement to Contribute to Foundation* ..................86

e.    *Submission of Category A Settlement Fund Claim Forms and Payment* ..........................................................................87

f.    *Payment to Foundation of Unclaimed Amounts* ..............87

8.3    *Claim Distribution Fund* ..............................................................88

a.    *Establishment of Fund* ......................................................88

b.    *Minimum Amount and Reversion* .....................................88

c.    *Relief Respecting Claim Coding and Bundling Edits* ........89

(1)    *Category One Compensation* ................................89

(a)    *In General* ..................................................89

(b)    *Timing of Category One Distributions* .......90

(c)    *Form of Application; Time Period for Submission; Documentation Required* ............................90

(d)    *Claims Supported by Inadequate Documentation; Resubmission to Settlement Administrator* ..............92

(e)    *Special Review Procedure for Certain Category One Compensation Requests* ..............................92

(f)    *Establishment of Controls by Settlement Administrator; Motion to Impose Additional Controls* ....................................................94

(g)    *Certification Required by Class Members Making Category One Compensation Claims* .........................95

(h)    *Timing of Settlement Administrator's Decisions; No Further Review of Decisions By Settlement Administrator; Requests for Reconsideration* ............95

viii

(2)     *Category Two Compensation* ................................................96

(a)     *In General* .................................................................96

(b)     *Computation of Payment Amounts* ...........................97

(c)     *Facilitation List for Category Two Compensation* ....98

(d)     *Form of Application; Time Period for Submission; Documentation Required* ..........................................99

(e)     *Adequacy of Documentation* .....................................102

(f)     *Certification Required by Class Members Making Category Two Compensation Claims* .......................103

(g)     *Submission to CIGNA HealthCare for Processing; Payment* .................................................................103

(i)     *Approval of Category Two Claim by CIGNA HealthCare* ....................................................104

(ii)    *Denial of Category Two Claim by CIGNA HealthCare* ....................................................104

(iii)   *Category Two Claims Deemed Approved by CIGNA HealthCare* .......................................105

(h)     *Procedure for External Review* ................................105

(i)     *Assembly of Review File* ................................105

(ii)    *Effect of CIGNA HealthCare's Failure to Assemble Review File* ....................................106

(iii)   *Timing of Determinations* ...........................106

(iv)    *Adjudication Standards for the Independent Review Entity* ...........................106

(A)     *Proof of Claim Forms Respecting Alleged Non-Recognition of Certain Modifiers* .............................107

(B)     *Proofs of Claim Alleging Inappropriate Application of Multiple Procedure Logic* .................................................107

ix

(C)   *Proofs of Claim Alleging Misinterpretation of HCPCS Level II J-Codes* ...............108

(D)   *Claims Alleging Non-Payment of Separately Identifiable Services or Supplies* ...............................................108

(E)   *External Review by Settlement Administrator* .....................................109

(F)   *Computation of Payment Amounts; Payment Procedure* ..........................110

(G)   *Finality of Decisions by Settlement Administrator and Independent Review Entity* ......................................111

d.   *Compensation for Erroneous Denials of Claims on Medical Necessity Grounds* ........................................................................111

(1)   *In General* ...........................................................111

(2)   *Computation of Payment Amounts* ........................................113

(3)   *Form of Application; Time Period for Submission; Documentation Required* .......................................114

(4)   *Adequacy of Documentation* ................................................115

(5)   *Certification Required by Class Members Filing Proof of Claim Forms for Medical Necessity Denial Compensation* ..........................................116

(6)   *Submission to CIGNA HealthCare for Processing* ..........................................................117

(a)   *Approval of Claim by CIGNA HealthCare* ...............117

(b)   *Denial of Claim by CIGNA HealthCare* ...................118

(c)   *Deemed Approval of Claim by CIGNA HealthCare* ..118

(7)   *Procedure for External Review* .............................................119

(a)   *Assembly of Review File* ..........................................119

x

         (b)     *Effect of CIGNA HealthCare's Failure to Assemble Review File*..................................................................119

    (8)    *Roles of Settlement Administrator and Independent Review Entity in External Review Process* ..................................................120

         (a)     *Timing of Determinations* ...........................................120

         (b)     *Adjudication Standards*.............................................120

             (i)     *External Review by Independent Review Entity* ...............................................................120

             (ii)    *External Review by Settlement Administrator* ..................................................121

    (9)    *Computation of Payment Amounts* ........................................122

    (10)   *Finality of Decisions by Settlement Administrator and Independent Review Entity; Payment Procedure* .......................................122

  8.4    *Procedure for Inquiry About Status of Proofs of Claim; Procedure for Requesting Facilitation List; Procedure for Requesting Medical Necessity Information* ..................................................................................122

  8.5    *Submission to Jurisdiction of Court*.............................................123

9.    SETTLEMENT ADMINISTRATION ....................................................123

10.   THE JUDGMENT ...............................................................................125

11.   CLASS MEMBERS WITH ARBITRATION AGREEMENTS ...............................126

12.   CONDITION OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION ...........................................................126

13.   RELEASE AND COVENANT NOT TO SUE .........................................128

14.   ATTORNEYS' FEES, COSTS AND EXPENSES ....................................130

15.   COMPLIANCE PROVISIONS .............................................................132

  15.1   *Internal Compliance Officer* ......................................................132

     a.     *Quarterly Report* ........................................................133

     b.     *Annual Report* ..........................................................134

c.  *Internal Monitoring Mechanisms* ...................................................134

d.  *Term of Internal Compliance Mechanism* .........................................135

15.2  *Compliance Disputes Arising Under This Agreement* ..................135

a.  *Jurisdiction* ...........................................................................135

(1)  *Compliance Dispute Facilitator* ..........................................135

(2)  *Compliance Dispute Review Officer* ....................................135

(3)  *Fees and Costs* .......................................................................135

b.  *Who May Petition the Compliance Dispute Facilitator* ...................136

c.  *Procedure for Submission and Requirements of Compliance Disputes* ....................................................................................136

(1)  *Compliance Dispute Claim Form* ..........................................136

(2)  *Qualifying Submissions* ........................................................136

d.  *Rejection of Frivolous Claims* ........................................................137

e.  *Dispute Resolution Without Referral to Compliance Dispute Review Officer* ...................................................................................138

f.  *Procedure for Compliance Dispute Review Officer Determination of Compliance Disputes* ....................................................................138

(1)  *Initial Negotiation* ..................................................................138

(2)  *Memoranda to Compliance Dispute Review Officer* .............139

(3)  *Oral Argument Concerning Compliance Dispute* ..................139

(4)  *Decisions by the Compliance Dispute Review Officer* ..........139

(5)  *Rehearing by the Compliance Dispute Review Officer* ..........140

(6)  *Systemic Violations* ................................................................140

(7)  *Finality of the Compliance Dispute Review Officer's Decision* ..................................................................................140

(8)   *Enforcement by the Court* ......................................................141

16.   STAY OF DISCOVERY AND TERMINATION ....................................................141

17.   RELATED PROVIDER TRACK ACTIONS ...........................................................144

17.1   *Ordered Stays and Dismissals in Tag-Along Actions* ....................................144

17.2   *Certain Related State Court Actions* ................................................144

17.3   *Other Related Actions* ........................................................................145

18.   NOT EVIDENCE; NO ADMISSION OF LIABILITY ...........................................145

19.   MISCELLANEOUS PROVISIONS ........................................................................146

19.1   *Obligations Under Federal or State Law* ........................................146

19.2   *Application to Insured Plans and Self-Funded Plans* ....................................146

19.3   *No Obligation to Facilitate Submission of Proofs of Claim* ........................146

19.4   *Amendment or Modification of Agreement* ..................................................146

19.5   *Additional Signatory Medical Societies* ........................................147

19.6   *Counterparts* ....................................................................147

19.7   *Retention by Court of Jurisdiction* ..............................................147

19.8   *Notices, Notice Counsel, and Implementation of Agreement* ........................148

19.9   *Headings* ........................................................................148

19.10  *Governing Law* ................................................................148

19.11  *Entire Agreement* ............................................................149

19.12  *No Presumption Against Drafter* ........................................149

19.13  *Cooperation* ....................................................................149

19.14  *Successors and Assigns* ....................................................149

## LIST OF EXHIBITS

| | |
|---|---|
| **Exhibit 1** | Category One List of CPT® Codes |
| **Exhibit 2** | Form of Preliminary Approval Order |
| **Exhibit 3** | Form of Final Order |
| **Exhibit 4** | Form of Judgment |
| **Exhibit 5** | Plan of Notice |
| **Exhibit 6** | Form of Mailed Notice |
| **Exhibit 7** | Form of Published Notice |
| **Exhibit 8** | Section 7 Time Periods |
| **Exhibit 9** | Foundation Term Sheet |
| **Exhibit 10** | Form of Claim Form for Category A Compensation |
| **Exhibit 11** | Form of Claim Form for Category One Compensation |
| **Exhibit 12** | Form of Claim Form for Category Two Compensation |
| **Exhibit 13** | Form of Claim Form for Medical Necessity Denial Compensation |
| **Exhibit 14** | Form of Compliance Dispute Form |
| **Exhibit 15** | Form of Additional Medical Society Agreement |

**PREAMBLE:**

This Settlement Agreement, dated as of September 4, 2003 (the "Agreement") is made and entered into by the Class Representative Plaintiffs (as defined below) (on behalf of themselves and each of the Class Members as hereafter defined), by and through their counsel of record in these actions, those medical societies identified on the signature pages hereto (such medical societies are herein collectively referred to as the "Signatory Medical Societies") and CIGNA Corporation (on behalf of those persons that are included in the definition of CIGNA HealthCare, including those Subsidiaries that are named as defendants in these actions) (CIGNA Corporation and CIGNA HealthCare being collectively referred to herein as "CIGNA HealthCare") (all of the above being collectively referred to as the "Settling Parties"). This Agreement is intended by the Settling Parties to resolve, discharge and settle the Released Claims, according to the terms and conditions set forth hereafter.

**WHEREAS:**

A.     On December 7, 1999, certain of MDL Class Counsel filed *Eugene Mangieri, M.D., on behalf of himself and all others similarly situated, v. CIGNA Corporation, et al.*, CV 99-C-3254-W (N.D. Ala.). *In re Managed Care Litigation*, MDL 1334 was created by order of the Judicial Panel on Multidistrict Litigation ("MDL Panel") on April 17, 2000. On October 23, 2000, *Mangieri* was transferred by the MDL Panel to the United States District for the Southern District of Florida (the "Court"). The above captioned *Shane, et al. v. Humana, Inc., et al.* ("*Shane*") became the lead case in the Provider Track of MDL 1334 ("Provider Track"). The operative complaint in *Shane*, the Second Amended Consolidated Class Action Complaint, was filed on July 11, 2002, and includes Mangieri and the claims made in his original complaint. On September 26, 2002, the Court conditionally certified a class and two subclasses defined as:

> **The Global Class:** All medical doctors who provided services to any person insured by any Defendant from August 4, 1990 to September 30, 2002.

1

**National Subclass:**  Medical doctors who provided services to any person insured by a Defendant, when the doctor has a claim against such Defendant and is not bound to arbitrate the claim.

**California Subclass:**  Medical doctors who provided services to any person insured in California by any Defendant when the doctor was bound to arbitrate the claim being asserted.

The named plaintiffs in *Shane* were named as class representatives, and the following attorneys

have been designated as Class Counsel:

Archie C. Lamb, Jr.
Law Offices of Archie C. Lamb, LLC
2017 Second Avenue North
Birmingham, AL  35203

Aaron S. Podhurst
Barry L. Meadow
Podhurst Orseck, PA
25 W. Flagler Street, Suite 800
Miami, FL  33130-1780

Nicholas B. Roth
Eyster Key Tubb Weaver & Roth, LLC
402 East Moulton Street, SE
Eyster Building
Decatur, AL  35601

Dennis G. Pantazis
Wiggins Childs Quinn & Pantazis
1400 South Trust Tower
420 North 20th Street
Birmingham, AL  35203

Jeffery A. Mobley
Lowe Mobley & Lowe
1210 - 21st Street
Haleyville, AL  35565

Mark Gray
Gray & Weiss
1200 PNC Plaza
500 West Jefferson
Louisville, KY  40202

Harley S. Tropin
Janet L. Humphreys
Adam M. Moskowitz
Kozyak Tropin & Throckmorton, PA
200 S. Biscayne Boulevard, Suite 2800
Miami, FL  33131-2335

Joe R. Whatley, Jr.
Charlene P. Ford
Pamela F. Colbert
Othni J. Lathram
Whatley Drake, LLC
2323 Second Avenue North
Birmingham, AL  35203-3807

Edith M. Kallas
Joseph P. Guglielmo
Milberg Weiss Bershad Hynes & Lerach
One Pennsylvania Plaza
New York, NY  10119

J. Mark White
White Arnold Andrews & Dowd P.C.
2025 3rd Avenue North, Suite 600
Birmingham, AL  35203

Guido Saveri
R. Alexander Saveri
Cadio Zirpoli
Saveri & Saveri
111 Pine Street, Suite 1700
San Francisco, CA  94111-5619

2

Robert Foote
Foote & Meyers
416 South Second Street
Geneve, IL  60134

James B. Tilghman
Stewart Tilghman Fox & Bianchi
1 SE 3rd Avenue, Suite 3000
Miami, FL  33131-1764

Kenneth S. Canfield
Doffermyre Shields Canfield
Knowles & Devine
1355 Peachtree Street, Suite 1600
Atlanta, GA  30309

James E. Hartley, Jr.
Drubner Hartley & O'Connor
500 Chase Parkway, 4th Floor
Waterbury, CT  06708

("MDL Class Counsel").  An appeal of the class certification order in *Shane* was allowed by the

United States Court of Appeals for the Eleventh Circuit and this appeal remains pending.  MDL

Class Counsel have conducted discovery and an investigation related to the claims and defenses

in *Shane*.

      B.     On May 26, 2000, Timothy N. Kaiser, M.D. and Suzanne LeBel Corrigan, M.D.

filed a class action lawsuit styled *Kaiser, et al. v. CIGNA Corporation, CIGNA HealthCare of St.*

*Louis, Inc., and CIGNA HealthCare of Texas, Inc.* (Case No. 00-L-480), in the Circuit Court of

Madison County, Illinois ("*Kaiser*").  Kaiser Counsel are:

Judy L. Cates
Troy A. Doles
Jodi L. Wilson
The Cates Law Firm, LLC
10 Executive Woods Court
Belleville, Illinois 62226
Telephone: (618) 277-1180
Facsimile: (618) 222-6939

Debra Brewer Hayes
Dennis Reich
Reich & Binstock
4265 San Felipe, Suite 1000
Houston, Texas 77027
Telephone: (713) 622-7272
Facsimile: (713) 623-8724

Michael C. Dodge
David W. Dodge
Dodge, Anderson & Jones, P.C.
One Lincoln Centre
5400 LBJ Freeway, Suite 800
Dallas, TX  75240
Telephone: (972) 960-3200
Facsimile: (972) 341-5201

("Kaiser Counsel").  The named plaintiffs were subsequently designated as class representatives.

      C.     On November 22, 2002, a third amended complaint was filed in *Kaiser* and on

November 25, 2002, defendants removed the action to the United States District Court for the

3

Southern District of Illinois.  On November 25, 2002, Kaiser Counsel and counsel for the

defendants in *Kaiser* reached agreement on a settlement and on November 26, 2002, Chief Judge

G. Patrick Murphy of the United States District Court for the Southern District of Illinois entered

an order preliminarily approving the settlement, conditionally certifying a settlement class and

directing notice and a hearing on the settlement.  The settlement class conditionally certified was

defined as:

> All physicians, physician groups, hospitals, facilities,
> ancillary providers, and other health care practitioners,
> entities, or providers, who at any time from January 1, 1996
> through the present:
>
> A.  Provided health care services or supplies to participants
>     in or beneficiaries of health plans (including Medicare
>     HMO plans) whose benefits were insured or
>     administered by CIGNA HealthCare; and
>
> B.  Submitted claims to CIGNA HealthCare for such
>     services or supplies on a fee-for-service basis either:
>
>> 1.  as a participating provider pursuant to a
>>     "Managed Care Agreement" or another
>>     contract; or,
>>
>> 2.  on the basis of an assignment of health plan
>>     benefits, *i.e.*, as a non-participating provider.

This class is hereafter referred to as the "Kaiser Class."

D.    On December 23, 2002, Chief Judge Murphy issued a minute order suspending

proceedings with respect to the settlement pending a decision by the MDL Panel as to whether

the *Kaiser* case should be transferred to the United States District Court for the Southern District

of Florida.  That Court, on December 12, 2002, had issued an injunction against further

proceedings with respect to the settlement.

E.    On February 21, 2003, the MDL Panel issued an order transferring the *Kaiser*

case to the United States District Court for the Southern District of Florida, to become part of *In

re Managed Care Litigation*, MDL 1334.  As a result, and since said transfer, settlement

discussions and proceedings as to Physicians, Physician Groups and Physician Organizations that

4

were part of the Kaiser Class and the state court class certified in *Kaiser* have been subsumed by discussions and proceedings in the *Shane* case.

F.      Beginning on April 10, 2003, under the supervision of the Mediator appointed by the Court, further settlement discussions were held by and among MDL Class Counsel, Kaiser Counsel and counsel for CIGNA HealthCare. The results of those discussions are reflected in this Agreement.

G.      The Class Representative Plaintiffs, on behalf of themselves and as representatives of and on behalf of the Class Members as defined below, after considering the benefits of the Settlement and the risks of litigation, have concluded that it is in the best interests of the Class Members to enter into this Agreement. The Signatory Medical Societies agree with this conclusion. CIGNA HealthCare is willing to settle this Litigation by agreeing to the terms and conditions of this Agreement. This Agreement takes into consideration the risks of litigation, including trials and possible appeals, the strengths and weaknesses of the case against CIGNA HealthCare, and such other factors as are appropriate in evaluating the matter.

H.      CIGNA HealthCare denies each and all of the material factual allegations and legal claims asserted in this Litigation, including any and all charges of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions alleged in this Litigation. CIGNA HealthCare denies any liability to members of a class certified by the Madison County Circuit Court in *Kaiser*, the members of the Kaiser Class and the members of the classes certified in *Shane*, and is prepared to defend these lawsuits vigorously at trial. Additionally, CIGNA HealthCare maintains its contentions that the claims of thousands of Class Members may not be advanced in this Litigation through trial by reason of valid and enforceable arbitration provisions. Neither this Agreement nor any act taken in furtherance of it shall constitute an admission of any fact, fault, liability or wrongdoing by any party or their respective counsel as more fully set forth hereafter.

5

I.     The Class Representative Plaintiffs and Class Counsel believe that the claims asserted against CIGNA HealthCare in this Litigation have merit.  However, Class Representative Plaintiffs and Class Counsel recognize and acknowledge the length of continued proceedings that would be necessary to prosecute the Litigation against CIGNA HealthCare through trial and through appeals.  Class Representative Plaintiffs and Class Counsel have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation.  Class Representative Plaintiffs and Class Counsel are mindful of the inherent problems of proof under the various theories asserted in the Litigation and are further aware of, but disagree with, CIGNA HealthCare's claims in this Litigation regarding the need for individualized proof of injury and damages.  Further, Class Representative Plaintiffs and Class Counsel are aware that CIGNA HealthCare has sought to enforce arbitration clauses that could prohibit large numbers of Class Members from participating in the Litigation.  Therefore, Class Representative Plaintiffs and Class Counsel believe that the Settlement set forth in this Agreement confers substantial benefits upon the Class Members.  Based upon their evaluation of all of these factors, Class Representative Plaintiffs and Class Counsel have determined that this Settlement is in the best interests of the Class Representative Plaintiffs and the Class Members, despite any disagreements Class Representative Plaintiffs and Class Counsel may have with the averments made by CIGNA HealthCare.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by the Settling Parties that, in consideration of the covenants, agreements and releases set forth herein, and subject to the approval of the Court and entry of the Final Order and Judgment after a Fairness Hearing, the Litigation as to CIGNA HealthCare shall be finally and fully compromised and settled as to Class Representative Plaintiffs and Class Members, and the Litigation as to CIGNA HealthCare shall be dismissed with prejudice as to Class Representative Plaintiffs and all Class Members, upon and subject to the following terms and conditions:

6

## 1.   **DEFINITIONS**

As used in this Agreement and all exhibits to the Agreement, the following terms have the meanings specified.

1.01   "Administration Costs" means all reasonable fees and charges of the Settlement Administrator, the Independent Review Entity and other retained Persons incurred in connection with the administration of the Settlement, including the costs of processing and administering Proofs of Claim submitted by Class Members.

1.02   "Agreement" means this Settlement Agreement, inclusive of all exhibits hereto.

1.03   "Assignment of Benefits" or "Assignment" means an authorization by a CIGNA HealthCare Member provided to a Non-Participating Physician who has rendered Covered Services to said CIGNA HealthCare Member allowing at the discretion of, but not requiring, said Non-Participating Physician to seek payment for such services directly from CIGNA HealthCare allowed under the terms of the CIGNA HealthCare Member's Plan Documents.

1.04   "Billing Dispute" shall have the meaning assigned to that term in Section 7.10.a of this Agreement.

1.05   "Billing Dispute Administrator" shall have the meaning assigned to that term in Section 7.10.c of this Agreement.

1.06   "Billing Dispute External Review Process" shall have the meaning assigned to that term in Section 7.10.a of this Agreement.

1.07   "Billing Dispute Form" shall have the meaning assigned to that term in Section 7.10.b of this Agreement.

1.08   "Business Day" means any day on which commercial banks are open for business in New York City. Any other reference to "day" shall mean a calendar day.

1.09   "Category A Claims" shall have the meaning assigned to that term in Section 8.2.b of this Agreement.

1.10    "Category A Claim Form" shall have the meaning assigned to that term in Section 8.2.e of this Agreement.

1.11    "Category A Settlement Fund" shall mean the Qualified Settlement Fund established under Section 8.2.a of this Agreement.

1.12    "Category One Code" means any CPT® Code or HCPCS Level II Code that qualifies for Category One Compensation pursuant to Section 8.3.c(1) and the table attached hereto as Exhibit 1.

1.13    "Category One Compensation" means compensation paid to Class Members who submit Valid Proofs of Claim pursuant to Section 8.3.c(1) of this Agreement for denials of Fee for Service Claims resulting from the application of Claim Coding and Bundling Edits.

1.14    "Category One Compensation Proof of Claim" means a Proof of Claim submitted by a Class Member seeking Category One Compensation.

1.15    "Category Two Compensation" means compensation paid to Class Members who submit Valid Proofs of Claim pursuant to Section 8.3.c(2) of this Agreement for denials of Fee for Service Claims resulting from the application of Claim Coding and Bundling Edits.

1.16    "Category Two Compensation Proof of Claim" means a Proof of Claim submitted by a Class Member seeking Category Two Compensation.

1.17    "Certification" shall have the meaning assigned to that term in Section 16.4 of this Agreement.

1.18    "CIGNA HealthCare" means Defendants CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc., and any and all of their divisions, Subsidiaries (whether direct or indirect), directors, officers, employees, administrators, representatives, or parents, together with each such individual's or entity's predecessors and successors, that are involved in the health insurance or health benefits administration business, including, but not limited to, CIGNA Holdings, Inc., Connecticut General Corporation, Connecticut General Life Insurance Company, CIGNA Health Corporation, Healthsource, Inc.,

8

Healthsource Corporate Services, Inc., Healthsource Innovative Medical Management, Inc., Healthsource Health Plans, Inc., CIGNA HealthCare of North Carolina, Inc., Healthsource North Carolina, Inc., Healthsource Indiana, Inc., Healthsource Indiana Insurance Company, Healthsource Indiana Managed Care Plan, Inc., Healthsource Insurance Group, Inc., Healthsource Kentucky, Inc., Healthsource Maine, Inc., Healthsource Maine Preferred, Inc., Healthsource Management, Inc., Healthsource Syracuse, Inc., Healthsource HMO of New York, Inc., Healthsource Preferred of New York, Inc., CIGNA HealthCare of Tennessee, Inc., Healthsource Tennessee Preferred, Inc., CIGNA HealthCare of Massachusetts, Inc., Healthsource Metropolitan New York Holding Company, Inc., Healthsource New York/New Jersey, Inc., Healthsource New Hampshire, Inc., Healthsource Ohio Preferred, Inc., Healthsource Preferred, Inc., Healthsource Rhode Island, Inc., Healthsource South Inc., CIGNA HealthCare of Georgia, Inc., Healthsource Arkansas Ventures, Inc., Healthsource Arkansas, Inc., Healthsource Arkansas Preferred, Inc., Healthsource Insurance Company, Physicians' Health Systems, Healthsource Insurance Services, Inc., Healthsource South Carolina, Inc., Arizona Health Plan, Inc., CIGNA HealthCare Mid-Atlantic, Inc., CIGNA HealthCare of Arizona, Inc., CIGNA Community Choice, Inc., CIGNA HealthCare of California, Inc., CIGNA HealthCare of Colorado, Inc., CIGNA HealthCare of Connecticut, Inc., CIGNA HealthCare of Delaware, Inc., CIGNA HealthCare of Florida, Inc., CIGNA HealthCare of Illinois, Inc., CIGNA Healthplan of Louisiana, Inc., CIGNA HealthCare of New Jersey, Inc., CIGNA HealthCare of New York, Inc., CIGNA HealthCare of Ohio, Inc., CIGNA HealthCare of Oklahoma, Inc., CIGNA HealthCare of Pennsylvania, Inc., CIGNA HealthCare of Puerto Rico, Inc., CIGNA HealthCare of Utah, Inc., CIGNA HealthCare of Virginia, Inc., Lovelace Health Systems, Inc., Ross Loos Hospital, Inc., International Rehabilitation Associates, Inc., and CIGNA Behavioral Health, Inc.

1.19   "CIGNA HealthCare Member" means any individual who receives health care benefits that are insured and/or administered by CIGNA HealthCare.

1.20    "Claim Coding and Bundling Edits" means adjustments to CPT® Codes or HCPCS Level II Codes included in claims in which (a) CIGNA HealthCare's payment is or was based on some, but not all, of the CPT® Codes or HCPCS Level II Codes included in the claim; (b) CIGNA HealthCare's payment was based on different billing codes than those billed to CIGNA HealthCare; (c) CIGNA HealthCare's payment for one or more CPT® Codes is or was reduced by application of Multiple Procedure Logic; or (d) any combination of the above.

1.21    "Claim Distribution Fund" means the account into which monies sufficient to pay all Category One Compensation and certain Category Two Compensation and Medical Necessity Denial Compensation shall be deposited periodically by CIGNA HealthCare pursuant to Section 8.3.a of this Agreement, together with any interest or earnings thereon following the deposit of such monies by CIGNA HealthCare.

1.22    "Claims Period" means the one hundred eighty (180) day period after Final Approval during which Class Members can make requests for compensation under the terms of this Settlement.  The one hundred eighty (180) day Claims Period commences forty-five (45) days after Final Approval.

1.23    "Class" means any and all Physicians, Physician Groups and Physician Organizations (and all Persons claiming by or through them, such as Physicians' Assistants and Advanced Practice Registered Nurses), who or which provided Covered Services to any CIGNA HealthCare member or any individual enrolled in or covered by a plan offered or administered by any Person named as a defendant in the *Shane* complaint or by any of their respective current or former Subsidiaries from August 4, 1990 through the date of the entry of the Preliminary Approval Order; provided, however, that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services.

1.24    "Class Counsel" means MDL Class Counsel.

10

1.25    "Class List" means the list of putative Class Members used for purposes of distributing notice of this Litigation and Settlement pursuant to the Plan of Notice.

1.26    "Class Members" means all Physicians, Physician Groups and Physician Organizations who or which fall within the definition of the Class, who or which have not timely and validly exercised their right to Opt Out of this Litigation and Settlement pursuant to the Initial Notice, and who or which are therefore bound by the terms of this Agreement, including all of those claiming by or through them.

1.27    "Class Period" means the period from August 4, 1990 through the date of Final Approval.

1.28    "Class Representative Plaintiffs" or "Class Representatives" means collectively, to the extent each executes this Agreement, Susan McIntosh, M.D., J. Kevin Lynch, M.D., F. Scott Gray, M.D., Stephen Levinson, M.D., Karen Laugel, M.D., Edgar Borrero, M.D., Malcolm Gottesman, M.D., Michael Hellstrom, M.D., Lawrence Weiner, M.D., Zachary Rosenberg, M.D., Kevin Molk, M.D., Manuel Porth, M.D, Michael C. Burgess, M.D., Eugene Mangieri, M.D., Glenn Kelly, M.D., Leonard Klay, M.D., Charles B. Shane, M.D., Jeffrey Book, M.D., Andres Taleisnik, M.D., Julio Taleisnik, M.D., David Boxstein, M.D., Roger Wilson, M.D., Susan R. Hansen, M.D., Edward Davis, M.D., Thomas Backer, M.D., Martin Moran, M.D., H. Robert Harrison, Ph.D., M.D., Lance R. Goodman, M.D., Timothy M. Kaiser, M.D., and Suzanne LeBel Corrigan, M.D.

1.29    "Clinical Information" means clinical, operative or other medical records and reports kept in the ordinary course of a Physician's business, and, where applicable, requested statements of medical necessity.

1.30    "Clinical Information Officer" shall have the meaning assigned to that term in Section 7.12 of this Agreement.

1.31    "CMS" means the Centers for Medicare and Medicaid Services (formerly known as Health Care Financing Administration).

11

1.32    "CMS 1500" means the health care provider claim form number 1500 created by CMS (and taking the place of HCFA 1500 forms), and as it may be amended, modified or superseded thereafter during the term of this Agreement.

1.33    "Complaints" means the Third Amended Class Action Complaint filed in *Kaiser* on November 22, 2002 in the Madison County Circuit Court and subsequently removed to the United States District Court for the Southern District of Illinois, and the Second Amended Consolidated Class Action Complaint filed on July 11, 2002 in *Shane*, which subsumed the *Mangieri* complaint that had been filed on December 7, 1999.

1.34    "Compliance Dispute" means (i) any claim that CIGNA HealthCare has failed to carry out any of its obligations under Section 7 of this Agreement (with the exception of Section 7.29.f); provided, however, that none of the following shall be deemed a Compliance Dispute: (A) a Released Claim; (B) a Retained Claim; (C) a claim eligible to be a Billing Dispute under Section 7.10 (except for a claim that a CIGNA HealthCare Claim Coding and Bundling Edit is inconsistent with Section 7.20 of this Agreement); (D) a claim subject to Section 7.12 of this Agreement; (E) a claim for which the Medical Necessity External Review Process is available; or (F) a claim challenging a Medical Necessity determination arising out of administration of benefits for a Self-Funded Plan as to which the plan sponsor has not elected to participate in CIGNA HealthCare's Medical Necessity External Review Process.

1.35    "Compliance Dispute Claim Form" means a document in substantially the same form as Exhibit 14, attached hereto.

1.36    "Compliance Dispute Facilitator" means the person chosen, pursuant to Section 15.2.a(1) of this Agreement, who shall first hear Compliance Disputes.

1.37    "Compliance Dispute Review Officer" means the person chosen pursuant to Section 15.2.a(2) of this Agreement and charged with the administration of Certifications and Compliance Disputes under this Agreement.

1.38    "Conclusion Date" shall have the meaning assigned to that term in the Preamble to Section 7 of this Agreement.

1.39    "Correct Coding Initiative" or "CCI" means the Centers for Medicare and Medicaid Services' (formerly known as Health Care Financing Administration) published list of edits and adjustments that are made to health care providers' claims submitted for services or supplies provided to patients insured under the federal Medicare program and under other federal insurance programs.

1.40    "Counsels' Award" shall have the meaning assigned to that term in Section 14.1 of this Agreement.

1.41    "Court" shall have the meaning assigned to that term in WHEREAS Clause A of this Agreement.

1.42    "Covered Service" means a health care benefit that is within the coverage described in the Plan Documents applicable to an eligible CIGNA HealthCare Member.

1.43    "Current Procedural Terminology" ("CPT®" or "CPT® Codes") means medical nomenclature published by the American Medical Association containing a systematic listing and coding of procedures and services provided to patients by Physicians and non-physician health professionals.  When used herein, "CPT®" and "CPT® Codes" refer to such medical nomenclature as it exists as of the date of this Agreement and as it may be amended, modified or superseded thereafter during the term of this Agreement.

1.44    "Deductible" means the amount a CIGNA HealthCare Member must pay for Covered Services during a specified coverage period in accordance with the CIGNA HealthCare Member's Plan Documents before benefits are payable by the CIGNA HealthCare Member's Plan.

1.45    "Defendants" means CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc.

13

1.46   "Defendants' Counsel" means:  John G. Harkins, Jr. and Eleanor Morris Illoway (Harkins Cunningham); and Marty L. Steinberg (Hunton & Williams).

1.47   "Delegated Entity" means an entity that is not a Subsidiary of CIGNA HealthCare to the extent that such entity (i) maintains its own contracts with Physicians separate from any contracts between CIGNA HealthCare and Physicians, and, by agreement with CIGNA HealthCare, (ii) (A) agrees to provide CIGNA HealthCare Members with access to such Physicians pursuant to the terms of such agreements; and (B) performs some or all of the functions with respect to Plans which otherwise would be performed by CIGNA HealthCare, including without limitation claims adjudication, utilization review, utilization management and credentialing.

1.48   "Downcoding" shall have the meaning assigned to that term in Section 7.19 of this Agreement.

1.49   "Effective Period" shall have the meaning assigned to that term in the Preamble to Section 7 of this Agreement.

1.50   "ERA/EFT" means the capability to facilitate electronic remittance advice and electronic funds transfer.

1.51   "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

1.52   "Execution Date" means the date on which this Agreement is signed by counsel and CIGNA HealthCare.

1.53   "Explanation of Benefits Form" or "EOB" means an explanation of benefits sent to a CIGNA HealthCare Member.

1.54   "External Review" means review of any Proof of Claim by the Settlement Administrator or the Independent Review Entity, as required under Section 8 of this Agreement.

1.55   "Facilitation List" means, on a best efforts basis, an electronic file, organized by tax identification number (and, within tax identification number, by Class Member name),

14

containing a list of (i) Evaluation and Management Codes submitted by each Class Member during the Class Period that were denied payment by CIGNA HealthCare; (ii) claims paid on the basis of code 90769 (CIGNA HealthCare's so-called "well woman" benefit code); (iii) Fee for Service Claims in which Evaluation and Management Codes were billed with a procedure code and either code was denied payment; and (iv) Fee for Service Claims in which Evaluation and Management Codes were billed with add-on codes and either code was denied payment. The Facilitation List shall include the corresponding patient name and date of service.

1.56    "Fairness Hearing" means a hearing to be held by the Court to determine whether to certify the Class, to approve the notice given under the Plan of Notice, to approve the Agreement and the Settlement it embodies as fair, reasonable and adequate, and to determine whether the Final Order and Judgment should be entered, including Counsels' Award.

1.57    "Fairness Hearing Date" shall have the meaning assigned to that term in Section 6.2 of this Agreement.

1.58    "Fee for Service Claim" means any submission by a Class Member to CIGNA HealthCare using CPT® Codes or HCPCS Level II Codes or codes specially created by CIGNA HealthCare (such as its "well woman" code, code 90769) and seeking payment on a fee for service basis for the provision of one or more services and/or supplies to a CIGNA HealthCare Member on a single date of service (inpatient or outpatient) or for a single period of inpatient care on or after August 4, 1990, through the date of Final Approval.

1.59    "Final Approval" means the first Business Day after all of the following events shall have occurred:

a.    The Court has entered the Order of Preliminary Approval and Conditional Class Certification substantially in the form set forth in Exhibit 2;

b.    The Court has entered the Final Order and Judgment substantially in the form of Exhibits 3 and 4; and,

c.    One of the following has occurred:

15

(1)      if no appeal is filed or if an appeal is filed only as to the amount of any Counsels' Award ordered by the Court, the expiration of the time for the filing or noticing of any appeal from the Court's Judgment, *i.e.*, thirty days after the date of the entry of the Judgment; or

(2)      the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding or denial of *certiorari* to review the Judgment; or

(3)      the date of final affirmance on appeal, the expiration of the time for a petition for a writ of *certiorari* and, if *certiorari* is granted, the date of final affirmance following review pursuant to that grant.

1.60    "Final Order and Judgment" means the order and form of judgment approving this Agreement and dismissing claims by Class Members against CIGNA HealthCare with prejudice, but with the Court maintaining jurisdiction to enforce the Agreement, in each case in the form attached hereto as Exhibits 3 and 4.

1.61    "Foundation" shall have the meaning assigned to that term in Section 8.1 of this Agreement.

1.62    "Healthcare Common Procedure Coding System Level II Codes" or "HCPCS Level II Codes" means alphanumeric codes used to identify those codes not included in the American Medical Association's Current Procedural Terminology (*e.g.*, supplies, durable medical equipment, etc.).

1.63    "Independent Review Entity" means an organization or other entity that will be selected by mutual agreement between Notice Counsel and Defendants' Counsel to conduct External Review of certain requests for Category Two Compensation and Medical Necessity Denial Compensation under this Agreement.

1.64    "Individually Negotiated Contract" means a contract pursuant to which the parties to the contract, as a result of negotiation, agreed to substantial modifications to the terms of CIGNA HealthCare's standard form agreement to individually suit the needs of a Participating Physician, Physician Group or Physician Organization.

1.65    "Initial Notice" means the first notices to putative Class Members, attached as Exhibits 6 and 7 to this Agreement, advising such putative Class Members of the Preliminary

16

Approval Order and of the right to seek exclusion from the settlement class or object to the terms of the Settlement, in accordance with the Plan of Notice.

1.66    "Insured Plan" means a Plan as to which CIGNA HealthCare assumes all or a majority of health care costs and/or utilization risk, depending on the product.

1.67    "Judgment" means the final judgment of dismissal of CIGNA HealthCare with prejudice, but with the Court maintaining jurisdiction to enforce this Agreement, to be rendered by the Court substantially in the form attached hereto as Exhibit 4.

1.68    "*Kaiser*" shall have the meaning assigned to that term in WHEREAS Clause B of this Agreement.

1.69    "Kaiser Class" shall have the meaning assigned to that term in WHEREAS Clause C of this Agreement.

1.70    "Kaiser Counsel" shall have the meaning assigned to that term in WHEREAS Clause B of this Agreement.

1.71    "Lead Counsel" means Archie C. Lamb, Jr. and Harley S. Tropin.

1.72    "Litigation" means the above-captioned actions.

1.73    "MDL Class Counsel" shall have the meaning assigned to that term in WHEREAS Clause A.

1.74    "Medically Necessary" or "Medical Necessity" shall have the meaning assigned to those terms in Section 7.16.a(1) of this Agreement for purposes of the Prospective Relief provided under Section 7; and shall have the following meaning for purposes of the Retrospective Relief procedures relating to Medical Necessity Denial Compensation under Section 8.3.d hereof: services or supplies that, at the time they were delivered to a CIGNA HealthCare Member, were (a) appropriate and necessary for the diagnosis or treatment of the CIGNA HealthCare Member's illness, injury, disease or its symptoms; (b) provided for diagnosis or direct care and treatment of the illness, injury, disease or its symptoms; (c) within generally

accepted standards of medical practice; and (d) not primarily for the convenience of the CIGNA HealthCare Member, the Class Member or another provider.

1.75   "Medical Necessity Denial Compensation" means compensation paid to Class Members who submit Valid Proofs of Claim for same pursuant to Section 8.3.d of this Agreement for allegedly improper denials of payment on Medical Necessity grounds.

1.76   "Medical Necessity Denial Compensation Proof of Claim Form" means a Proof of Claim Form submitted by a Class Member seeking Medical Necessity Denial Compensation, using the form attached to this Agreement as Exhibit 13.

1.77   "Medical Necessity External Review Process" shall have the meaning assigned to that term in Section 7.11.c of this Agreement.

1.78   "Medical Necessity External Review Organization" means an organization, as described more fully in Section 7.11.c of this Agreement, that provides independent medical reviews of CIGNA HealthCare's denials of coverage which are based on the lack of Medical Necessity or experimental or investigational nature of the proposed or rendered service or supply.

1.79   "Multiple Procedure Logic" means the payment methodology used by CIGNA HealthCare, when processing claims, that makes adjustment(s) to payment(s) for one or more procedures or other services, in each case constituting Covered Services (excluding CPT® Evaluation and Management Codes), when multiple such procedures or services are performed on the same patient on the same date of service.

1.80   "National Medicare Fee Schedule" means the National Medicare Fee Schedule in effect on June 1, 2001 for CPT® Codes and HCPCS Level II Codes, without geographic conversion factors. For those CPT® Codes or HCPCS Level II Codes not included or without an assigned relative value in the National Medicare Fee Schedule in effect on June 1, 2001, National Medicare Fee Schedule shall mean the National Medicare Fee Schedule in effect during the Class Period that is closest in time to the National Medicare Fee Schedule in effect on June 1, 2001 that contains fee schedule amounts for those codes. For those CPT® Codes or

18

HCPCS Level II Codes for which there is no National Medicare Fee Schedule during the Class Period with an assigned relative value for the code, the Settlement Administrator shall use the default preferred provider organization ("PPO") fee schedule in effect on June 1, 2001 for CIGNA HealthCare of Illinois, Inc.

1.81    "Non-Participating Physician" means any Physician other than a Participating Physician and includes, when appropriate, Physician Groups and Physician Organizations.

1.82    "Notice Costs" means the costs of complying with the Plan of Notice approved by the Court

1.83    "Notice Counsel" means those Counsel listed in Section 19.8.

1.84    "Notice Date" shall have the meaning assigned to that term in Section 5.1 of this Agreement and "Notice of Commencement of the Claims Period" means those notices to be submitted by the Settling Parties and approved by the Court which will be mailed within fourteen (14) days of Final Approval according to the Plan of Notice, informing Class Members of the date they may begin submitting Proofs of Claim.

1.85    "Objection Date" shall have the meaning assigned to that term in the Preamble to Section 6 of this Agreement.

1.86    "Opt Out" shall have the meaning assigned to that term in Section 6.1 of this Agreement.

1.87    "Opt Out Deadline" shall have the meaning assigned to that term in Section 6.1 of this Agreement.

1.88    "Overpayment" means, with respect to a claim submitted by or on behalf of a Physician, Physician Group or Physician Organization, any erroneous or excess payment that CIGNA HealthCare makes because of payment of an incorrect rate, duplicate payment for the same service or supplies, payment with respect to an individual who was not a CIGNA HealthCare Member as of the date the Physician provided the service(s) or supplies that are the

19

subject of such payment, or payment for any non-Covered Service; provided that "Overpayment" shall not mean any erroneous or excess payment arising out of inappropriate coding or other error in the claim submission to which such payment relates and shall not mean any adjustment to a prior payment when CIGNA HealthCare makes such adjustment in whole or part on the basis of information contained in a separate claim submitted by a Physician for services rendered on the same date to which the original payment relates (other than duplicate bills).

1.89    "Participating Physician" means any Physician who has entered into a valid written contract with CIGNA HealthCare (directly or indirectly through a Physician Organization, Physician Group or other entity authorized by the Physician) to provide Covered Services to CIGNA HealthCare Members, during the period the contract is in force.

1.90    "Person" or "Persons" means all persons and entities (including without limitation natural persons, firms, corporations, limited liability companies, joint ventures, joint stock companies, unincorporated organizations, agencies, bodies, governments, political subdivisions, governmental agencies and authorities, associations, partnerships, limited liability partnerships, trusts, and labor unions, and their predecessors, successors, administrators, executors, heirs and assigns).

1.91    "Petitioner" shall have the meaning assigned to that term in Section 15.2.b of this Agreement.

1.92    "Physician" means an individual duly licensed by a state licensing board as a Medical Doctor or as a Doctor of Osteopathy and shall include without limitation both Participating Physicians and Non-Participating Physicians.

1.93    "Physician Advisory Committee" shall have the meaning assigned to that term in Section 7.9.a of this Agreement.

1.94    "Physician Group" means two or more Physicians, and those claiming by or through them, who practice under a single taxpayer identification number.

1.95    "Physician Organization" means any association, partnership, corporation or

20

other form of organization (including without limitation independent practice associations and physician hospital organizations), and those claiming by or through them, that arranges for care to be provided by Physicians to CIGNA HealthCare Members and that may be organized under multiple taxpayer identification numbers.

1.96    "Physician Specialty Society" means a United States medical specialty society that represents diplomats certified by a board recognized by the American Board of Medical Specialties.

1.97    "Plaintiffs" means the named Plaintiffs in the above-captioned actions.

1.98    "Plan" means a benefit plan through which a CIGNA HealthCare Member obtains health care benefits set forth in pertinent Plan Documents.

1.99    "Plan Documents" means the documents defining the health care benefits available to a CIGNA HealthCare Member, and the terms and conditions under which such benefits are available, under the Plan sponsored by the CIGNA HealthCare Member's employer or other third party.

1.100   "Plan of Notice" means the Plan of Notice attached as Exhibit 5.

1.101   "Preliminary Approval Hearing" shall have the meaning assigned to that term in Section 4 of this Agreement.

1.102   "Preliminary Approval Order" shall have the meaning assigned to that term in Section 4 of this Agreement.

1.103   "Proof of Claim" means an application by a Class Member for compensation under the terms of this Agreement with respect to a single Category A Claim or Fee for Service Claim, whether submitted in paper form or electronic form in the manner to be described in the Notice of Commencement of the Claims Period, which application satisfies all applicable requirements set forth in Sections 8.2 and 8.3 of this Agreement.

1.104   "Proof of Claim Form" means the forms, substantially in the form of Exhibits 10-13 to this Agreement, to be used by Class Members in seeking compensation under this Agreement.

1.105   "Prospective Relief" means the prospective undertakings by CIGNA HealthCare described in Section 7 of this Agreement.

1.106   "Provider Track" shall have the meaning assigned to that term in WHEREAS Clause A of this Agreement.

1.107   "Qualified Settlement Fund" means the Category A Settlement Fund, together with all interest and earnings thereon.  The parties intend the fund to be a qualified settlement fund under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1.

1.108   "Released Claims" means and includes any and all claims that have been or could have been asserted by or on behalf of any or all Class Members against the Released Persons, or any of them, and which arise prior to Final Approval by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation, except as otherwise provided for by this Agreement.  This includes, without limitation and as to Released Persons only, any aspect of any Fee for Service Claim submitted by any Class Member to CIGNA HealthCare, and claims based upon a capitation agreement with CIGNA HealthCare, and any allegation that Defendants and/or CIGNA HealthCare have conspired with, aided and abetted, or otherwise acted in concert with other managed care organizations, other health insurance companies, and/or other third parties with regard to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation or with regard to CIGNA HealthCare's liability for any other demands for payment submitted by any Class Member to such other managed care organizations, health insurance companies, and/or other third parties.  Notwithstanding this definition, Released

22

Claims do not include any and all claims of any kind whatever arising out of the alleged nonpayment or payment at inappropriate rates or amounts of fee for service claims submitted to CIGNA HealthCare for services or supplies not represented by CPT® Codes or HCPCS Level II Codes or codes specially created by CIGNA HealthCare (such as its "well woman" code, code 90769).

1.109   "Releasing Parties" (each a "Releasing Party") means Class Members and, to the extent they have claims against CIGNA HealthCare derived by contract or operation of law from the claims of Class Members, any and all Subsidiaries, affiliates, shareholders, parents, directors, officers, employees, professional corporations, agents, administrators, executors, legal representatives, partners and partnerships, heirs, predecessors, successors and assigns of Class Members.

1.110   "Released Persons" means:

a.      CIGNA HealthCare and CIGNA HealthCare's insurers and counsel, including Defendants' Counsel as defined herein.

b.      Persons who provided claim processing services, software, proprietary guidelines or technology to CIGNA HealthCare, those contracted agents processing claims on CIGNA HealthCare's behalf, together with each such Person's predecessors or successors, but only to the extent of such Person's services and work done pursuant to contract with CIGNA HealthCare. Such Persons are expressly not "Released Persons" as to services provided to any Person other than CIGNA HealthCare. Nothing herein is intended to release Delegated Entities.

c.      "Released Persons" shall not include any defendant in MDL No. 1334 other than CIGNA HealthCare or any Subsidiary of CIGNA Corporation.

1.111   "Remittance Form" means the form sent by CIGNA HealthCare to health care providers explaining CIGNA HealthCare's computation of benefits and payment amounts on a claim. The Remittance Form is sometimes referred to as an "Explanation of Payment" form or "EOP".

1.112  "Resolved Claims" means any submissions to CIGNA HealthCare for payment made by Class Members for or on account of services provided to CIGNA HealthCare Members within the Class Period that, prior to the date of Final Approval, were finally adjudicated and determined in a court of law or in an arbitrable forum, or resolved by a final and binding settlement.

1.113  "Retained Claim" shall have the meaning assigned to that term in Section 13.4 of this Agreement.

1.114  "Retrospective Relief" means the monetary relief to be provided by CIGNA HealthCare under Section 8 of this Agreement.

1.115  "Review File" means the documentation assembled by CIGNA HealthCare to facilitate External Review as required under the terms of Sections 8.3.c(2)(h)(i) and 8.3.d(7)(a) of this Agreement.

1.116  "Reviewer" shall have the meaning assigned to that term in Section 7.10.c of this Agreement.

1.117  "Self-Insured Plan" and "Self-Funded Plan" mean any Plan other than an Insured Plan.

1.118  "Settlement" means the agreed-upon compromise of the Litigation as approved by the Court.

1.119  "Settlement Administrator" means Poorman-Douglas Corporation.

1.120  "Settlement Consideration" means the benefits which Class Counsel believe have been conferred, and will be conferred, on Class Members through this Litigation and through performance of this Agreement. These benefits include: (i) CIGNA HealthCare's agreement to implement the Prospective Relief described in Section 7 hereof; (ii) CIGNA HealthCare's agreement to fund Retrospective Relief as described in Section 8 hereof, including its uncapped obligations to pay all Valid Category One Proofs of Claim, all Valid Category Two Proofs of Claim and all Valid Medical Necessity Denial Proofs of Claim, all in the manner set forth in

24

Section 8; (iii) CIGNA HealthCare's agreement, as part of this Agreement, to waive any right it may have to enforce arbitration agreements with Class Members in connection with the Retrospective Relief available under this Settlement; (iv) CIGNA HealthCare's agreement to waive any available defense it may have of "no private right of action" under state prompt pay statutes and CIGNA HealthCare's agreement to pay simple interest on certain claims under Section 7.18 in those states and in states without a specific prompt pay statute; (v) CIGNA HealthCare's agreement to relieve Class Members of the burden of having to pay attorneys' fees, costs and expenses out of the monetary relief made available under this Agreement by making separate payment of attorneys' fees, costs and expenses to Class Counsel and Kaiser Counsel, requested in an amount up to Fifty-Five Million Dollars ($55,000,000); (vi) the funding of the Foundation provided in Section 8 of this Agreement; (vii) the Compliance Dispute Resolution Procedure provided in Section 15 of this Agreement; and (viii) CIGNA HealthCare's agreement to pay Administration Costs and the costs of two separate notices.

      1.121   "Settling Parties" shall have the meaning assigned to that term in the Preamble to this Agreement.

      1.122   "*Shane*" shall have the meaning assigned to that term in WHEREAS Clause A of this Agreement.

      1.123   "Signatory Medical Societies" shall have the meaning assigned to that term in the Preamble to this Agreement.

      1.124   "Subsidiary" means any entity of which securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other persons performing similar functions are, as of Final Approval, or were prior thereto, directly or indirectly owned by CIGNA Corporation.

      1.125   "Tag-Along Action" shall have the meaning assigned to that term in Section 17.1 of this Agreement.

1.126  "Termination Date" shall have the meaning assigned to that term in Section 16.4 of this Agreement.

1.127  "Valid Proof of Claim" means a Proof of Claim that entitles a Class Member to receive payment pursuant to the terms of the Settlement.

1.128  "Website" means the online resource for the public and health care providers to obtain information about CIGNA HealthCare, its products and policies and other information and which is currently located at www.cigna.com.  Some portion of this Website may be password protected at CIGNA HealthCare's discretion.

## 2.    **EFFECT OF SETTLEMENT**

The claims made against CIGNA HealthCare by Class Representatives and Class Members in the Litigation and all Released Claims shall be fully compromised and settled by performance of this Agreement according to its terms.

## 3.    **COMMITMENT TO SUPPORT AND COMMUNICATIONS WITH CLASS MEMBERS**

The Settling Parties agree that it is in their best interests to consummate this Agreement and all the terms and conditions contained herein and to cooperate with each other and to take all actions reasonably necessary to obtain Court approval of this Agreement and entry of the orders of the Court that are required to implement its provisions.  They also agree to support this Agreement in accordance with and subject to the provisions of this Agreement.

CIGNA HealthCare hereby agrees, upon execution of this Agreement, to withdraw its pending appeal of the Court's September 26, 2002 Order Granting Provider Track Class Certification before the United States Court of Appeals for the Eleventh Circuit. Notwithstanding the foregoing, if this Agreement is terminated or does not become effective for any reason, Settling Parties agree that, in addition to otherwise restoring the Settling Parties to their status prior to entering into this Agreement, any further ruling on the propriety of the Court's September 26, 2002 Order Granting Provider Track Class Certification certifying

26

classes in *Shane* shall apply to the Released Persons as if the Released Persons had participated in further proceedings with respect to that Order.

Class Counsel and Plaintiffs shall make every reasonable effort to encourage putative Class Members to participate and not to Opt Out.  In addition, Class Counsel shall make all reasonable efforts to enforce the Compliance Dispute resolution provisions of this Agreement set forth in Section 15.

Plaintiffs, Class Counsel and CIGNA HealthCare agree that CIGNA HealthCare may communicate with putative Class Members regarding the provisions of this Agreement, so long as such communications are not inconsistent with the Initial Notice, the Notice of Commencement of the Claims Period or other agreed upon communications concerning the Agreement.  CIGNA HealthCare will not discourage the filing of any claims allowed under this Agreement or advise Class Members with respect to the category or categories of claims that the Class Members should or should not file under this Agreement.  CIGNA HealthCare will refer to the Settlement Administrator or to Class Counsel any inquiries from Class Members about claims to be filed under this Agreement.

**4.     PRELIMINARY APPROVAL ORDER AND SCHEDULING OF FAIRNESS HEARING**

Pursuant to Rule 23(e), the Settling Parties shall submit this Agreement, together with the exhibits attached hereto, to the Court at a hearing (the "Preliminary Approval Hearing") for, among other things, its conditional certification of a settlement class, preliminary approval of the Agreement and Plan of Notice and scheduling of a Fairness Hearing, and shall apply to the Court for an Order of Preliminary Approval and Conditional Class Certification, substantially in the form of Exhibit 2 ("Preliminary Approval Order").

**5.     NOTICE**

5.1     *Initial Notice.*

On a date to be fixed by the Court that is within thirty (30) days of the date of the entry by the Court of the Preliminary Approval Order (the "Notice Date"), and subject to approval by

the Court, Initial Notice according to the Plan of Notice, substantially in the form of Exhibits 6 and 7, shall be given by the Settling Parties in cooperation with the Settlement Administrator in accordance with the Plan of Notice attached hereto as Exhibit 5.

5.2     *Notice of Commencement of the Claims Period.*

Upon Final Approval, and subject to approval by the Court, Notice of Commencement of the Claims Period shall be given by the Settling Parties in cooperation with the Settlement Administrator in accordance with the Plan of Notice.

5.3     *Responsibility for Costs of Notice.*

Notice Costs shall be paid by CIGNA HealthCare.

**6.     PROCEDURE FOR FINAL APPROVAL; LIMITED WAIVER**

Following the dissemination of the Initial Notice as described in Section 5, the Settling Parties shall seek the Court's final approval of this Agreement.  Class Members shall have until the Objection Date to file, in the manner specified in the Initial Notice, any objection or other response to this Agreement.  The Settling Parties agree to urge the Court to set the Objection Date on the date that is sixty (60) days after the Notice Date (the "Objection Date").

6.1     *Opt Out Timing and Rights.*

The Initial Notice shall provide that putative Class Members may request exclusion from the Class by providing notice, in the manner specified in such Initial Notice, on or before a date set by the Court as the Opt Out Deadline.  The Settling Parties agree to urge the Court to set the Opt Out Deadline on the date that is sixty (60) days after the Notice Date (the "Opt Out Deadline").

Putative Class Members have the right to exclude themselves ("Opt Out") from this Agreement and from the Class by timely submitting to the Settlement Administrator a request to Opt Out and otherwise complying with the agreed-upon Opt Out procedure approved by the Court.  Putative Class Members who or which so timely request to Opt Out shall be excluded from this Agreement and from the Class.  Any putative Class Member who or which does not

28

submit a request to Opt Out by the Opt Out Deadline or who or which does not otherwise comply with the agreed upon Opt Out procedure approved by the Court shall become a Class Member and shall be bound by the terms of this Agreement and the Final Order and Judgment. Any putative Class Member who or which does not Opt Out of this Agreement shall be deemed to have taken all actions necessary to withdraw and revoke the assignment to any Person of any claim against CIGNA HealthCare.

Any putative Class Member who or which timely submits a request to Opt Out shall have until the Fairness Hearing to deliver to Class Counsel and the Settlement Administrator a written revocation of such putative Class Member's request to Opt Out and shall thereby become a Class Member. Class Counsel shall apprise the Court of such revocations.

Within ten (10) days after the Opt Out Deadline, the Settlement Administrator shall furnish CIGNA HealthCare and Class Counsel with a complete list in machine-readable form of all Opt Out requests filed by the Opt Out Deadline and not then revoked. CIGNA HealthCare shall pay the costs of obtaining a copy of the Opt Out requests. A final list of those filing Opt Out requests and not revoking them shall be prepared by the Settlement Administrator and filed with the Court at the Fairness Hearing.

6.2     *Setting the Fairness Hearing Date and Fairness Hearing Proceedings.*

The Settling Parties agree to urge the Court to hold the Fairness Hearing on a date that is approximately one hundred five (105) days after the Notice Date (the "Fairness Hearing Date") and to work together to identify and submit any evidence that may be required by the Court to satisfy the burden of proof for obtaining approval of this Agreement and the orders of the Court that are necessary to effectuate the provisions of this Agreement, including without limitation the Final Order and Judgment and the orders contained therein. At the Fairness Hearing, the Settling Parties shall present evidence necessary and appropriate to obtain the Court's approval of this Agreement, the Final Order and Judgment and the orders contained therein and shall meet and

confer prior to the Fairness Hearing to coordinate their presentation to the Court in support of Court approval thereof.

7. **PROSPECTIVE RELIEF: ADDITIONAL DISCLOSURES; CHANGES IN BUSINESS PRACTICES**

The settlement consideration to the Class Members includes, among other things, initiatives and other commitments with respect to CIGNA HealthCare's disclosures and business practices. The Settling Parties agree that the initiatives and other commitments set forth below, which absent this agreement CIGNA HealthCare would generally be under no obligation to undertake, constitute substantial value and will enhance and facilitate the delivery of health care services by Class Members. CIGNA HealthCare investigated and began to implement certain of the initiatives described in this Section 7 while engaged in discussions to resolve the Litigation. Such initial and partial implementation, which shows CIGNA HealthCare's good faith desire to resolve the Litigation, was undertaken to, and does, form part of the consideration of the Settlement. CIGNA HealthCare shall have the unilateral and unrestricted right to block access to and/or not apply any or all of the business practice initiatives set forth below to Physicians who Opt Out of the Class, except as otherwise required by contract or law.

CIGNA HealthCare shall be obligated to commence implementing each commitment set forth in this Section 7 from and after the date set forth on Exhibit 8 attached hereto across from the relevant section number on such Exhibit and shall continue implementing each such commitment until the Termination Date, except as otherwise expressly provided in this Agreement (any earlier date provided for herein being a "Conclusion Date"). With respect to each commitment set forth in this Section 7, the "Effective Period" for such commitment shall be the period of time beginning on the start date set forth for such commitment on Exhibit 8 attached hereto and continuing through the Termination Date.

7.1    *Increased Automated Adjudication of Claims.*

CIGNA HealthCare, recognizing the desirability of making investments to improve its business relationships with Physicians providing health care services and supplies to CIGNA

30

HealthCare Members through, *inter alia*, efficiency in the processing of claims, has made substantial investments and will continue to make investments in two new claims platforms that are already receiving newly written business and to which CIGNA HealthCare will migrate substantially all the claims handling now being performed on its existing claims platforms; and by the use of its new claims platforms, has increased and will continue to increase the percentage of claims that are autoadjudicated, in an effort to shorten the period for payment of claims, and to improve the overall efficiency of the claim adjudication process.

    7.2    *Internet Disclosures and Functionality.*

CIGNA HealthCare is making substantial investments, and will continue to make investments, to enhance the ability of Physicians to register referrals, pre-certify procedures, submit claims for Covered Services, check CIGNA HealthCare Member eligibility for Covered Services (based upon current information supplied by or relating to Plan sponsors), and check the status of claims for Covered Services, in each case via the Internet and clearinghouses.

        a.    *Addition of Disclosures to CIGNA HealthCare's Website.*

            (1)    *In General.*

CIGNA HealthCare will place additional information about CIGNA HealthCare's claim administration policies and procedures on CIGNA HealthCare's Website at www.cigna.com, and shall periodically update this additional information pursuant to Section 7.2.b of this Agreement. An index or table of contents shall be included with the additional information posted, and the additional information shall be word-searchable. If prior to the Termination Date, any portion is made password protected and passwords are provided to Class Members, a password will also be provided to Notice Counsel for the benefit of Class Members and for use in monitoring performance under the terms of this Agreement.

            (2)    *Specifications for Additional Disclosures.*

The additional information that CIGNA HealthCare shall post and periodically update on its Website shall include disclosures on the topics identified below.

31

(a)     *Forms to be Used for Submitting Claims.*

The forms to be used for submitting claims, both in paper and electronic format, shall be identified.

(b)     *Software or Programs Used to Review Relationships Among Billing Codes.*

The computer claims processing software or programs used by CIGNA HealthCare to review the relationships among billing codes (*e.g.*, ClaimCheck®) shall be identified by name and version, including any software used to audit the relationship between CPT® or HCPCS Level II Codes, or other billing codes, and diagnosis codes.

(c)     *Requirements with Respect to Fee for Service Claims.*

The items of information that CIGNA HealthCare requires on a claim form, whether paper or electronic, and the information (if any) that CIGNA HealthCare requires to accompany that claim form in order to permit CIGNA HealthCare to process the claim for payment shall be described. The disclosure shall include a description of those limited categories of claims for which the submission of Clinical Information by Class Members may be required (*e.g.*, claims for multiple procedures in the same anatomical region where one of the submitted procedures is coded with modifier 59, claims for unlisted procedures, etc.) in order to obtain payment of the claim as submitted. This disclosure shall be consistent with Section 7.17.b.

(d)     *Timing of Claim Submission.*

Class Members shall have one hundred eighty (180) days from the date of service to submit claims to CIGNA HealthCare. With respect to claims submitted more than one hundred eighty (180) days after the date of service, CIGNA HealthCare shall specify on its Website those circumstances under which such claims shall be accepted for processing and, if appropriate, for payment. CIGNA HealthCare shall waive the one hundred eighty (180) day limit for a reasonable period in the event that a Class Member gives notice to CIGNA HealthCare along with appropriate evidence of extraordinary circumstances that resulted in the delayed submission.

CIGNA HealthCare shall determine "extraordinary circumstances" and the reasonableness of the submission date.

(e)   *Procedures for Appealing Partial or Total Claim Denials or Reductions.*

The procedures for appealing a partial or total claim denial or reduction, including the documentation that must accompany the appeal and the address to which appeals must be directed, shall be described.

(f)   *Certain Claim Bundling Logic.*

CIGNA HealthCare shall use its best efforts to describe with particularity any single Claim Coding and Bundling Edit that it reasonably judges, based on its experience with submitted claims, will cause, on the initial review of submitted claims, the denial of or reduction in payment for a CPT® Code or HCPCS Level II Code more than five hundred (500) times per year. To the extent CIGNA HealthCare intends, following Final Approval of this Agreement, to apply any Claim Coding and Bundling Edits that are identified for Category One Compensation in this Agreement, those Claim Coding and Bundling Edits shall be identified.

(g)   *Policies Respecting the Reimbursement of Supplies.*

CIGNA HealthCare's policies regarding the reimbursement of supplies and materials utilized in the provision of Covered Services by Class Members, including those instances where the submission of Clinical Information may be required in order for Class Members to obtain payment of the claim as submitted, shall be described.

(h)   *Policies Respecting Multiple Procedures Performed on the Same Date of Service.*

Consistent with this Agreement, CIGNA HealthCare's policies and procedures for reducing the indicated payments for the second and subsequent procedures performed on the same patient on the same date of service shall be described.

33

      (i)      *Postings with Regard to Definitions of "Medical Necessity" and "Medically Necessary."*

CIGNA HealthCare shall post the definitions of "Medical Necessity" and "Medically Necessary," as set forth in Section 7.16.a(1) hereof.

      (j)      *Postings with Regard to Medical Necessity Clinical Guidelines.*

CIGNA HealthCare shall post those internally developed clinical guidelines, consistent with Section 7.16.b, used by CIGNA HealthCare to assist in making Medical Necessity determinations, along with a list of the resources used to develop such guidelines. To the extent CIGNA HealthCare uses any guidelines licensed from third parties or derived from peer-review journals or similar sources to assist in making Medical Necessity determinations, CIGNA HealthCare shall post, as applicable, the title, author/source, volume, and publication date of such guidelines. CIGNA HealthCare shall provide, upon request by the Class Member, a complete copy of the relevant guideline applicable to a specific service and clinical indication through the electronic mail provider inquiry facility identified in Section 7.3 of this Agreement or through existing CIGNA HealthCare provider relations communication channels.

      (k)      *Procedures for Obtaining Fee Schedule Information and Claim Bundling Logic Information Via Electronic Mail.*

CIGNA HealthCare shall describe the procedures available to Class Members to obtain fee schedule information and information regarding CIGNA HealthCare's Claim Coding and Bundling Edits via electronic mail, pursuant to Section 7.3 of this Agreement.

      (l)      *Databases Used to Determine "Reasonable and Customary" Charges.*

If CIGNA HealthCare uses databases licensed from one or more third parties in order to determine "reasonable and customary" billed charges in the medical community, those databases shall be identified.

(m)     *Drug Formularies.*

CIGNA HealthCare shall identify its drug formularies applicable to Plans, inclusive of tiers (if any) applicable to said formularies.

(n)     *External Review Entities.*

CIGNA HealthCare shall post the names, addresses, phone numbers and web addresses of all external review entities CIGNA HealthCare uses to conduct its Medical Necessity External Review Process.

(o)     *ERA/EFT Capabilities.*

CIGNA HealthCare shall post ERA/EFT capabilities.

(p)     *Services or Supplies for Which Precertification is Required.*

In a manner consistent with Section 7.5 hereof, CIGNA HealthCare shall identify those services or supplies for which precertification is routinely required for its products.  If a Self-Insured Plan specifies services or supplies that are different from or in addition to the services or supplies for which CIGNA HealthCare routinely requires precertification, that information will be identified on the Website if the Self-Insured Plan sponsor consents.  CIGNA HealthCare will recommend to its Self-Insured Plan customers that they allow such Website identification. CIGNA HealthCare will recommend to its Self-Insured Plan customers that they utilize CIGNA HealthCare's standard list of services or supplies for which precertification is required.

(q)     *Online Eligibility and Other Information.*

CIGNA HealthCare Members' eligibility and benefits shall be disclosed through a secure, online provider self-service tool that allows Physicians or their staffs to access the most current information available to CIGNA HealthCare about CIGNA HealthCare Members' general benefits, coverage dates, copay and deductible information.  Physicians may access CIGNA HealthCare's standard referral requirements and lists of services or supplies for which precertification is routinely required through CIGNA HealthCare's Website.

35

(r)     *Electronic Mail Address for Fee Schedule, Billing Edits, and Other Information.*

CIGNA HealthCare shall place on its Website a "hot link" with the address where Physicians can submit inquiries to obtain information available under Section 7.3.

(s)     *Savings Clause.*

Nothing in this Section 7.2.a(2) shall be applied in a manner inconsistent with another provision of this Agreement. Such other provision shall govern.

(3)     *Form of Initial Disclosure Content.*

The form of initial disclosures required to be posted pursuant to this Agreement shall be presented to Notice Counsel and a limited number of the Plaintiffs for their review and approval at least forty-five (45) days prior to the Fairness Hearing. Notice Counsel shall respond promptly to this presentation.

b.     *Periodic Updates of Disclosures.*

During the term of this Agreement, CIGNA HealthCare shall make appropriate revisions to the disclosures posted on CIGNA HealthCare's Website pursuant to this Agreement if any of the following circumstances occur.

(1)     *Changes to Policies and Procedures.*

If the policies, procedures, or limitations that are included in the initial disclosures are materially changed by CIGNA HealthCare, such that continued posting of the initial disclosures as to those policies, procedures, and/or limitations would be materially misleading, CIGNA HealthCare shall revise the posted disclosures so that they remain accurate.

(2)     *Introduction of New or Revised Claim Review Software or Programs.*

If CIGNA HealthCare intends to begin use of a new or revised computer claims processing software or program to review the relationships among billing codes (including updates to ClaimCheck®), CIGNA HealthCare shall post a disclosure of CIGNA HealthCare's intention to do so on its Website at least sixty (60) days in advance of applying the new or revised computer software or program to any Class Member's claims, to enable Class Members

36

to make electronic mail requests for information about how the new or revised computer software or program will affect their specific combinations of billing codes, as generally described in Section 7.3.

   (3) *Introduction of New Claim Coding and Bundling Edits.*

CIGNA HealthCare shall use its best efforts to post on its Website a disclosure of CIGNA HealthCare's intention to begin applying any new Claim Coding and Bundling Edit not previously applied where CIGNA HealthCare reasonably judges, based on its experience with submitted claims, that the new Claim Coding and Bundling Edit will cause, on the initial review of submitted claims, the denial of or reduction in payment for a CPT® Code or HCPCS Level II Code more than five hundred (500) times per year. CIGNA HealthCare shall use its best efforts to post such disclosures on the Website at least thirty (30) days in advance of applying the new Claim Coding and Bundling Edit to submitted claims.

   (4) *Changes to CIGNA HealthCare's Maximum Default Fee Schedules.*

CIGNA HealthCare shall dedicate a page on CIGNA HealthCare's Website for use in alerting Class Members to anticipated changes in the maximum default fee schedules used in CIGNA HealthCare's various geographic markets. If CIGNA HealthCare intends, in any such geographic market, to make a change to any applicable maximum default fee schedule, CIGNA HealthCare shall disclose its intention to make such a change, the effective date of such change, and the general nature of the change (*e.g.*, that the change involves moving from 2002 Medicare RVUs to 2003 RVUs, if the underlying fee schedule is based on a Medicare fee schedule) on the dedicated fee schedule Website page no less than ninety (90) days prior to such effective date. The fee schedule change disclosures shall be organized geographically to facilitate consultation and inquiry by Class Members. This page shall be linked to the electronic mail address created in accordance with Section 7.3 of this Agreement. While CIGNA HealthCare shall be required to respond to Class Members' electronic mail inquiries seeking applicable fee schedule amounts, pursuant to Section 7.3, and consistent with 7.8.b of this Agreement, CIGNA HealthCare shall

have no obligation under this Agreement to post an entire fee schedule, with amounts, on the dedicated fee schedule page.

     c.    *Prohibition on Certain Representations.*

CIGNA HealthCare shall not, under any circumstances, represent in its Website disclosures, in any other disclosure materials, or orally that CIGNA HealthCare's Claim Coding and Bundling Edits are endorsed by the American Medical Association or that the American Medical Association has participated in the development of CIGNA HealthCare's Claim Coding and Bundling Edits.

7.3    *Availability of Fee Schedule, Claims Coding Edits and Other Information Through Establishment of Electronic Mail Provider Inquiry Facility.*

CIGNA HealthCare shall establish and designate an electronic mail address on its Website to receive and respond to Class Members' inquiries concerning CIGNA HealthCare's claim administration policies, procedures and limitations, and issues related to coverage. A Class Member shall be entitled to use this electronic mail address to: (a) inquire of CIGNA HealthCare concerning the Claim Coding and Bundling Edits applicable to specific combinations of billing codes; (b) make reasonable requests for applicable fee schedule amounts for all CPT® or other billing codes related to a Class Member's practice; (c) inquire of CIGNA HealthCare concerning whether certain medical services, procedures or supplies are Covered Services within the meaning of a CIGNA HealthCare Member's benefit plan; and (d) request a copy of a specific clinical guideline as applied to a specific procedure or specific episode of care used by CIGNA HealthCare to assist in making Medical Necessity determinations. CIGNA HealthCare shall use its best efforts to prepare and provide responsive information to Class Members' electronic mail inquiries under this Section within ten (10) days of receiving such inquiries. There will be no charge for such inquiries, regardless of the number of such inquiries made. CIGNA HealthCare shall make this procedure available to Participating Physicians and other Physicians who are considering becoming Participating Physicians.

7.4      *Investments in Initiatives to Improve Provider Relations.*

Since the inception of this Litigation, and through the Termination Date, CIGNA HealthCare has and will expend significant amounts of money and other resources to improve its relations with those providing health care services and supplies to CIGNA HealthCare Members, and in particular to carry out the initiatives described in Sections 7.1, 7.2, 7.3, 7.7, 7.23 and 7.24 of this Agreement.

7.5      *Reduced Number of Services or Supplies Requiring Precertification.*

CIGNA HealthCare has reduced the number of services or supplies requiring precertification and will undertake efforts to standardize the services and supplies for which precertification is required across all CIGNA HealthCare Insured Plans and Self-Insured Plans. CIGNA HealthCare's Self-Insured Plan customers may, however, specify services or supplies for which precertification is required that differ from or are in addition to the services or supplies for which CIGNA HealthCare routinely requires precertification. A list of services or supplies for which precertification is required shall be posted by CIGNA HealthCare as set forth in Section 7.2.a(2)(p) hereof. CIGNA HealthCare shall permit Class Members to seek precertification through electronic means.

7.6      *Greater Notice of Policy and Procedure Changes.*

CIGNA HealthCare shall, if it intends to make a material adverse change in the terms of contracts with Participating Physicians, give ninety (90) days written notice to each Participating Physician affected thereby (except to the extent that a shorter notice period is required to comply with changes in applicable law) and the change shall become effective at the conclusion of the ninety (90) day notice period. If a Participating Physician objects to the change that is subject to the notice, the Participating Physician must, within thirty (30) days of the date of the notice, give written notice to terminate his, her or its contract with CIGNA HealthCare, which termination shall be effective at the end of the ninety (90) day notice period of the material adverse change.

The continuation of care provisions in Section 7.13.c hereof shall apply to any such contract termination.

### 7.7   *Initiatives to Reduce Claims Resubmissions.*

CIGNA HealthCare has developed, will implement and will maintain at least until the Termination Date processes to send next-Business Day written communications to Physicians when it is determined that additional information is necessary to process a claim, explaining the information needed, and to send two written reminders at thirty (30) days and sixty (60) days if the necessary information has not been received in response to the initial communication. If the necessary information has not been received at ninety (90) days, then the claim will be denied at that time, and the Physician may appeal pursuant to 7.10 or 7.11. If CIGNA HealthCare obtains information prior to that time showing that the claim should be denied, CIGNA HealthCare will promptly deny the claim, so that the Physician may pursue any other remedies the Physician may have. If the denial is based on eligibility of the patient, the Physician may directly bill the patient.

### 7.8   *Disclosure of and Commitments Concerning Claim Payment Practices.*

#### a.   *Consistency Across Ongoing Claims Systems and Products.*

CIGNA HealthCare shall cause its automated "bundling" and other claims payment rules to conform to this Agreement and to be consistent in all material respects across its ongoing claims systems and products; and it will continue to maintain such consistency at least until the Termination Date.

#### b.   *Availability of Web-Based Pre-Adjudication Tool.*

If a software vendor makes commercially available a web-based pre-adjudication tool that would allow Participating Physicians to obtain information regarding the manner in which CIGNA HealthCare's claims systems adjudicate claims for specific CPT® Codes or combinations of such Codes, consistent with the provisions of this Agreement, CIGNA HealthCare shall make such tool available on its Website as soon as practical after it becomes available on commercially reasonable terms. CIGNA HealthCare shall make good faith efforts to

40

obtain any such tool on commercially reasonable terms. If CIGNA HealthCare makes available such tool, it may cease to provide the information that is made available through the tool pursuant to any other provisions of this Agreement.

      c.    *Requirement for Submission of Clinical Information.*

CIGNA HealthCare shall not routinely require submission of Clinical Information before or after payment of claims. Notwithstanding the foregoing, (i) CIGNA HealthCare may require submission of Clinical Information before or after payment of certain categories of claims and shall promptly disclose on the Website any such claim category or categories pursuant to Section 7.2.a(2)(c); and (ii) CIGNA HealthCare may require submission of Clinical Information before or after payment of claims for the purpose of investigating fraudulent, abusive or other inappropriate billing practices but only so long as, and only during such times as, CIGNA HealthCare has a reasonable basis for believing that such investigation is warranted and Physicians may contest such requirement pursuant to Section 7.12. Nothing contained in this Section 7.8.c is intended, or shall be construed, to limit CIGNA HealthCare's right to require submission of Clinical Information for precertification purposes consistent with Section 7.5 herein.

    7.9    *Physician Advisory Committee.*

      a.    CIGNA HealthCare shall take all actions necessary on its part to establish an advisory committee ("Physician Advisory Committee") to discuss agenda items of nationwide scope. CIGNA HealthCare shall thereafter continue to maintain the Physician Advisory Committee at least through the Termination Date. The Physician Advisory Committee shall meet at least once every six (6) months. The meetings shall be conducted in Bloomfield, Connecticut, but attendance may be in person or by teleconference or by video-conference.

      b.    The Physician Advisory Committee shall include nine (9) members, one of whom shall be CIGNA HealthCare's Chief Medical Officer or his or her designee, who shall serve as chairperson of the Physician Advisory Committee. Except as provided in this Section

41

7.9.b, the remaining members shall be Physicians who are not employees of CIGNA HealthCare. CIGNA HealthCare shall select two (2) members in addition to its Chief Medical Officer not later than thirty (30) days after the date of the entry of the Preliminary Approval Order; Notice Counsel, on behalf of and after consultation with the Plaintiffs, shall select three (3) members not later than thirty (30) days after the date of the entry of the Preliminary Approval Order, and those six shall select the remaining three (3) members not later than ninety (90) days after the date of the entry of the Preliminary Approval Order. The Settling Parties shall use reasonable efforts to cause one of such three (3) remaining members to be a Non-Participating Physician. The members selected by Notice Counsel shall include at least one board-certified primary care Participating Physician and at least one board-certified specialist Participating Physician. The names of the members of the Physician Advisory Committee and the dates of the Physician Advisory Committee meetings shall be posted on CIGNA HealthCare's Website. If any member discontinues serving on the Physician Advisory Committee, that member's position shall be filled in the same manner as the member was originally selected.

c.      Subject to such procedures as the Physician Advisory Committee may adopt, it may consider any issue at a meeting at which a quorum is present, including proposals for discussion submitted by Class Members through an address to be maintained on CIGNA HealthCare's Website. A quorum shall consist of at least two (2) of the appointees of Notice Counsel, two (2) of the representatives of CIGNA HealthCare and two (2) of the representatives selected by the representatives appointed by CIGNA HealthCare and Notice Counsel. The Physician Advisory Committee, by a majority vote of a quorum, shall have authority to recommend changes to CIGNA HealthCare's business practices. CIGNA HealthCare shall consider whether the implementation of any recommendation of the Physician Advisory Committee is commercially feasible and consistent with the best interests of Class Members, CIGNA HealthCare Members, customers, shareholders and other constituencies. If CIGNA HealthCare decides not to accept a recommendation of the Physician Advisory Committee,

CIGNA HealthCare shall communicate that decision in writing to the Physician Advisory Committee with an explanation of CIGNA HealthCare's reasons.  The Committee's recommendations and CIGNA HealthCare's responses will be published on CIGNA HealthCare's Website.  CIGNA HealthCare agrees to include in the Certification filed annually and at the end of the Effective Period a listing of all Physician Advisory Committee recommendations made to CIGNA HealthCare and CIGNA HealthCare's responses to such recommendations.

d.      Each member of the Physician Advisory Committee will agree to maintain and treat as confidential any proprietary information reasonably designated as such by CIGNA HealthCare.  No member of the Physician Advisory Committee shall serve as a member of an advisory or similar committee established by any other managed care company or health insurer, but this provision is not meant to exclude Physicians who serve on credentialing or similar committees for other companies.

e.      CIGNA HealthCare shall pay the reasonable expenses of each Physician Advisory Committee member in attending meetings of the Physician Advisory Committee and shall pay a reasonable honorarium to each member other than the chairperson for attendance at a meeting.

7.10    *Dispute Resolution Process for Physician Billing Disputes.*

a.      CIGNA HealthCare shall implement an independent, external billing dispute review process (the "Billing Dispute External Review Process") for resolving disputes with Class Members concerning the application of CIGNA HealthCare's coding and payment rules and methodologies to (i) patient specific factual situations, including without limitation the appropriate payment amount when two or more CPT® Codes are billed together, or whether the Class Member's use of modifiers is appropriate, or (ii) any Retained Claims, so long as such Retained Claims are submitted by the Physician to the Billing Dispute External Review Process prior to the later to occur of either ninety (90) days after Final Approval or thirty (30) days after

43

exhaustion of CIGNA HealthCare's internal appeals process. Each such matter shall be a "Billing Dispute." The Reviewer (as defined below) shall not have jurisdiction over any disputes that are not patient specific application of Claim Coding and Bundling Edits, including without limitation those disputes that fall within the scope of the Medical Necessity External Review Process set forth in Section 7.11 of this Agreement, disputes about the submission of Clinical Information that fall within the scope of Section 7.12, Compliance Disputes and disputes concerning the scope of Covered Services. Nothing contained in this Section 7.10 is intended, or shall be construed, to supersede, alter or limit the rights or remedies otherwise available to any Person under § 502(a) of ERISA or to supersede in any respect the claims procedures of § 503 of ERISA.

b.      Any Class Member may submit Billing Disputes through the Billing Dispute External Review Process upon payment of a filing fee calculated as set forth in Section 7.10.j and in accordance with the provisions of this Section 7.10, after the Class Member exhausts CIGNA HealthCare's internal appeals process, when the amount in dispute (either a single claim for Covered Services or multiple claims involving the same or similar issues) exceeds Five Hundred Dollars ($500). Whether a claim is "similar" to another claim shall be determined by the Reviewer (defined below). CIGNA HealthCare shall post a description of its health care provider internal appeals process on its Website. Each Billing Dispute shall be submitted on a form (the "Billing Dispute Form") and shall include any Clinical Information the Class Member believes is relevant to the Billing Dispute. The Billing Dispute Form and a description of the procedure to be followed in submitting a Billing Dispute shall be set forth on the Website.

c.      The Billing Dispute External Review Process shall be conducted by an organization acceptable to CIGNA HealthCare and Notice Counsel (the "Billing Dispute Administrator"), which Billing Dispute Administrator shall designate independent certified procedure coding specialists to resolve Billing Disputes ("Reviewers"). A Billing Dispute shall

44

be resolved on a written record, consisting of documents submitted by the Class Member and CIGNA HealthCare, without oral argument. The procedures for submission of Billing Disputes and the identity of the Reviewers will be posted on CIGNA HealthCare's Website. CIGNA HealthCare and the appealing Class Member shall supply appropriate documentation to the designated Reviewer not later than thirty (30) days after request by such Reviewer.

d.    Notwithstanding the foregoing, a Class Member may submit a Billing Dispute if less than Five Hundred Dollars ($500) is at issue and if such Class Member intends to submit additional Billing Disputes during the one (1) year period following the submission of the original Billing Dispute which involve issues that are the same as or similar to those of the original Billing Dispute, in which event the Billing Dispute External Review Process will, at the request of such Class Member, be deferred while the Class Member accumulates such additional Billing Disputes. In the event that a Billing Dispute is deferred pursuant to the preceding sentence and, as of the Termination Date, the Class Member has not accumulated the requisite amount of Billing Disputes and CIGNA HealthCare has chosen not to continue the Billing Dispute External Review Process following the Termination Date, then any rights the Class Member had as to such Billing Disputes, including rights to arbitration, shall be tolled from the date the Billing Dispute was submitted to the Billing Dispute External Review Process through and including the Termination Date.

e.    In any event, a Class Member will have one (1) year from the date he, she or it submits the original Billing Dispute and requests that consideration of such Billing Dispute should be deferred to allow submission of additional Billing Disputes involving issues that are the same as or similar to those of the original Billing Dispute and amounts in dispute that in aggregate exceed Five Hundred Dollars ($500). In the event such additional Billing Disputes are not so submitted pursuant to the preceding sentence, the Billing Dispute Administrator shall dismiss the original Billing Dispute and any such additional Billing Disputes and, in that event, the filing fee will be refunded by CIGNA HealthCare to the Class Member.

45

        f.      The filing fee shall be payable upon the submission of the original Billing Dispute and shall apply to all subsequent Billing Disputes submitted pursuant to the first sentence of Section 7.10.d until the aggregate amount at issue exceeds One Thousand Dollars ($1,000) at which time additional filing fees will be payable in accordance with Section 7.10.j. The Class Member may withdraw the Billing Disputes at any time before the aggregate amount in dispute reaches Five Hundred Dollars ($500) and, in that event, the filing fee will be refunded by CIGNA HealthCare to the Class Member.

        g.      The Class Member must exhaust CIGNA HealthCare's internal appeals process before submitting a Billing Dispute to the Billing Dispute External Review Process; provided that a Class Member shall be deemed to have satisfied this requirement if CIGNA HealthCare does not communicate notice of a final decision resulting from such internal appeals process within forty-five (45) days of receipt of all documentation required to decide the internal appeal. In the event CIGNA HealthCare and a Class Member disagree as to whether the requirements of the preceding sentence have been satisfied, such disagreement shall be resolved through the Billing Dispute External Review Process. Except as otherwise provided in this Section 7.10, all Billing Disputes must be submitted to the Billing Dispute External Review Process no more than ninety (90) days after a Class Member exhausts CIGNA HealthCare's internal appeals process and the Billing Dispute External Review Process shall not be used to hear or decide any Billing Dispute submitted more than ninety (90) days after CIGNA HealthCare's internal appeals process has been exhausted. The Billing Dispute Administrator shall resolve any question as to whether a Billing Dispute has been timely submitted and such decision shall be final and not reviewable. The Billing Dispute Administrator shall also resolve any question as to whether a submitted dispute is properly cognizable as a Billing Dispute and such decision shall be final and non-reviewable. CIGNA HealthCare shall supply appropriate documentation to the Billing Dispute External Review Process not later than thirty (30) days after request by the Reviewer, which request shall not be made if Billing Disputes are submitted

pursuant to Section 7.10.d until Billing Disputes have been submitted involving amounts in dispute that in aggregate exceed Five Hundred Dollars ($500).

      h.    Except to the extent otherwise specified in this Section 7.10, procedures for review through the Billing Dispute External Review Process, including without limitation the documentation to be supplied to the Reviewer and a prohibition on *ex parte* communications between any party and the Reviewer, shall be set by agreement between CIGNA HealthCare and Notice Counsel, and shall be set forth in the Certification filed annually and at the end of the Effective Period.  Such procedures shall provide that (i) a Class Member submitting a Billing Dispute to the Billing Dispute External Review Process shall state in the documents submitted to the Billing Dispute External Review Process the amount in dispute, and (ii) the Reviewer shall not be permitted to issue an award based on an amount that exceeds the amount stated by such Class Member in the documents submitted to the Billing Dispute External Review Process to be in dispute.

      i.    If CIGNA HealthCare and Notice Counsel cannot agree on the Billing Dispute Administrator within sixty (60) days of the date of the entry of the Preliminary Approval Order, the matter shall be deemed a Compliance Dispute and referred to the Compliance Dispute Review Officer.  Billing Disputes shall be stayed and any time limitations shall be tolled pending resolution of such Compliance Dispute.

      j.    For any Billing Dispute that a Class Member submits to the Billing Dispute External Review Process, the Class Member submitting such Billing Dispute shall pay to CIGNA HealthCare a filing fee calculated as follows: (i) if the amount in dispute is One Thousand Dollars ($1,000) or less, the filing fee shall be Fifty Dollars ($50) or (ii) if the amount in dispute exceeds One Thousand Dollars ($1,000), the filing fee shall be equal to Fifty Dollars ($50), *plus* five percent (5%) of the amount by which the amount in dispute exceeds One Thousand Dollars ($1,000), but in no event shall the fee be greater than fifty percent (50%) of the cost of the review.

k.     CIGNA HealthCare's contract(s) with the Billing Dispute Administrator shall require decisions to be rendered not later than thirty (30) days after receipt of the documents necessary for the review and to provide notice of such decision to the parties promptly thereafter.

l.     In the event that a decision is rendered as a result of the Billing Dispute External Review Process requiring payment by CIGNA HealthCare, CIGNA HealthCare shall make such payment after CIGNA HealthCare receives notice of such decision, less any portion of such amount that is payable by the CIGNA HealthCare Member under his or her Plan Documents; provided that the interest described in Section 7.18 of this Agreement will be payable unless the Class Member introduces material new information to the Billing Dispute External Review Process that was not provided to CIGNA HealthCare during the internal appeals process.

m.     CIGNA HealthCare agrees to record in writing a summary of the results of the review proceedings conducted through the Billing Dispute External Review Process, including without limitation the issues presented.  CIGNA HealthCare agrees to include a summary of the dispositions of such proceedings in the Certification to be filed annually and at the end of the Effective Period.  If the same issue is the subject of not fewer than twenty (20) Billing Dispute External Review Process proceedings during the effective period of this Agreement, and CIGNA HealthCare's position is overturned in at least fifty percent (50%) of such matters, CIGNA HealthCare shall bring the matter to the attention of the Physician Advisory Committee.

n.     The Billing Dispute External Review Process shall be available at the option of the Class Member.  If such Class Member elects to utilize this process, then any decision rendered through the Billing Dispute External Review Process shall be binding on CIGNA HealthCare and the Class Member.  For Retained Claims, all Billing Disputes shall be directed not to the Court nor to any other federal court or state court, arbitration panel (except as

48

hereinafter provided) or any other binding or non-binding dispute resolution mechanism, but instead shall be submitted for final and binding resolution to the Billing Dispute External Review Process so long as such Billing Dispute arises after the establishment of the Billing Dispute External Review Process.

7.11 *Appeals of Determinations Related to Medical Necessity or the Experimental or Investigational Nature of Any Proposed Health Care Service or Supplies.*

CIGNA HealthCare shall maintain the following appeal process with respect to determinations that a health care service or supply is not Medically Necessary or is of an experimental or investigational nature.

a. *Initial Determinations.*

A Physician designated by CIGNA HealthCare shall be responsible for making the initial determination for CIGNA HealthCare whether proposed health care services or supplies are Medically Necessary or experimental or investigational (hereinafter in this Section 7.11 only, Medically Necessary and experimental or investigational shall collectively be referred to as Medically Necessary except where otherwise noted). A nurse or other health care professional, acting for a medical director, may approve any health care service or supply as being Medically Necessary, but only a Physician designated by CIGNA HealthCare may deny any such service or supply as being not Medically Necessary.

b. *Two Level Internal Appeals of Medical Necessity Denials.*

(1) *Level One.*

With respect to an appeal of a determination that a health care service or supply is not Medically Necessary, CIGNA HealthCare shall adopt a two step internal appeal process which allows CIGNA HealthCare Members, or a Class Member when authorized in writing by a CIGNA HealthCare Member, or without written authorization if the service has already been provided, to pursue appeals of Medical Necessity denials, including appeal by External Review. That process shall insure that only a Physician may deny the appeal of any CIGNA HealthCare Member or Class Member. A nurse or other health care professional employed by CIGNA

49

HealthCare shall review the internal appeal and may grant but not deny the appeal. If the nurse or other health care professional does not grant the appeal, then a Physician designated by CIGNA HealthCare, other than the one that made the initial determination of Medical Necessity, shall review and decide the Level One internal appeal in accordance with applicable CIGNA HealthCare clinical guidelines, which shall be consistent with Section 7.16.b.

(2)     *Level Two.*

If the Physician conducting the Level One review determines that the requested health care service or supply is not Medically Necessary, and if that Physician is not a specialist in the same specialty as the appealing Physician, a second Physician employed or contracted by CIGNA HealthCare who is a specialist in the same specialty (but not necessarily the same sub-specialty) as the appealing CIGNA HealthCare Member's Physician or the Class Member shall review the appeal and shall decide the appeal in accordance with applicable CIGNA HealthCare clinical guidelines, which shall be consistent with Section 7.16.b. If the CIGNA HealthCare Member does not pursue an appeal and the Physician employed or contracted to perform the Level One review is of the same specialty as the appealing Class Member, such that no Level Two review is required, then the appealing Class Member shall be notified that the appealing Class Member may proceed to external review.

(3)     *Time Limits for Completing Internal Appeals.*

All internal appeals shall be completed within the time limits required by regulations issued by the Department of Labor, even those internal appeals for which ERISA is not applicable.

c.     *Establishment of External Review Program and Scope.*

Following exhaustion of its internal appeal process, CIGNA HealthCare shall make available to CIGNA HealthCare Members whose health care benefits are provided through an Insured Plan, and to CIGNA HealthCare Members whose health care benefits are provided through a Self-Insured Plan and whose Plan sponsors have elected to participate in the program

established by this Section (or in each case, by a Class Member when authorized in writing by the CIGNA HealthCare Member) the option to appeal directly an adverse determination based upon lack of Medical Necessity or the characterization of the relevant service or procedure as experimental or investigational, to an independent external review organization identified by CIGNA HealthCare (the "Medical Necessity External Review Organization"); provided that, where there has been a denial based upon Medical Necessity of services already provided, no authorization from the CIGNA HealthCare Member shall be required.  The cost of the external appeal (the "Medical Necessity External Review Process") will be borne by CIGNA HealthCare and the decision of the Medical Necessity External Review Organization shall be binding upon CIGNA HealthCare and the Class Member.  Election to pursue review under this Section is at the option of the Class Member, who may instead choose any other remedy available as a matter of law or contract.  CIGNA HealthCare shall require that the Medical Necessity External Review Organization issue its decision within thirty (30) days of the request for External Review.  The external reviewer designated by the Medical Necessity External Review Organization to conduct the review shall be of the same specialty (but not necessarily the same sub-specialty) as the appealing Class Member.  The Medical Necessity External Review Process offered by CIGNA HealthCare shall not supersede any state-required program for external review inconsistent with CIGNA HealthCare's external review process.  In the case of state-required external review process that is different than the process herein set forth, only the state-required program shall be utilized where applicable.

(1)     The Medical Necessity External Review Organization must meet the standards for external review entities under applicable federal and state law.  The External Review entity will be contracted to conduct a *de novo* review of the case consistent with Section 7.16.a(1) of this Agreement, subject to the CIGNA HealthCare Member's Plan Documents.  The External Review entity shall have the authority to review any adverse determination related to the Medical Necessity of a particular health care service or supply after the CIGNA HealthCare

Member or his or her Class Member Physician, where appropriate, has exhausted the internal appeal process or after CIGNA HealthCare and the CIGNA HealthCare Member or his or her Class Member Physician, where appropriate, agree to forego any level of internal appeal and proceed directly to external review.  The CIGNA HealthCare Member or his or her Class Member Physician, where appropriate, shall have the option to elect this review within one hundred eighty (180) days from the date of the final denial decision by CIGNA HealthCare.  The Medical Necessity External Review Organization's compensation shall not be tied to the outcome of the reviews performed.  Likewise, the selection process among qualified external appeal entities will not create any incentives for external appeal entities to make decisions in a biased manner.

(2)      Notwithstanding the provisions of this Section 7.11, Class Members may not seek review of any claim for which the CIGNA HealthCare Member (or his or her representative) seeks review through the external review program.  In the event that both a CIGNA HealthCare Member (or his or her representative) and a Physician seek review before a service is rendered, the CIGNA HealthCare Member's claim shall go forward and the Physician's claim shall be dismissed and may not be brought by or on behalf of the Physician in any forum.

(3)      Notwithstanding the provisions of this Section 7.11, Class Members may not seek review of any claim for which the CIGNA HealthCare Member (or his or her representative) has filed suit under § 502(a) of ERISA or other suit for the denial of health care services or supplies on Medical Necessity grounds.  In that event, or if such a suit is subsequently initiated, the CIGNA HealthCare Member's lawsuit shall go forward and the Class Member's claims shall be dismissed and may not be brought by or on behalf of the Class Member in any forum; provided that such dismissal shall be without prejudice to any Class Member seeking to establish that the rights sought to be vindicated in such lawsuit belong to such Class Member and not to such CIGNA HealthCare Member.

(4)     Nothing contained in this Section 7.11 is intended, or shall be construed, to supersede, alter or limit the rights or remedies otherwise available to any Person under § 502(a) of ERISA or to supersede in any respect the claims procedures under § 503 of ERISA.

(5)     In the event the Medical Necessity External Review Process is initiated, the Medical Necessity External Review Organization shall request documentation from CIGNA HealthCare promptly but in any event no later than five (5) Business Days after the CIGNA HealthCare Member or Class Member initiates the Medical Necessity External Review Process, and CIGNA HealthCare shall provide such requested documentation within ten (10) Business Days.  The Medical Necessity External Review Organization shall provide a decision within thirty (30) days of CIGNA HealthCare's submission of all necessary information. In the event that a decision in favor of the Class Member is rendered as a result of appeal of a Medical Necessity External Review for denial of services already provided, CIGNA HealthCare shall make payment to the Class Member, consistent with Section 7.18 of this Agreement, less any portion of allowed charges that is payable by the CIGNA HealthCare Member under his or her Plan Documents; provided that the interest described in Section 7.18 of this Agreement will be payable unless the Class Member introduces material new information to the Medical Necessity External Review Process that was not provided to CIGNA HealthCare during the internal appeal process.

(6)     CIGNA HealthCare shall cause its contract with the Medical Necessity External Review Organization to be consistent with the terms of this Section 7.11.c.

7.12    *Disputes Regarding Compliance With Section 7.8.c.*

Notice Counsel and Defendants' Counsel will jointly select two persons, one of whom is experienced in issues of fraud in the health care field, such as a former state or federal government employee who has been involved in health care fraud investigations, and the other of whom is experienced in clinical practice (each a "Clinical Information Officer").  The Clinical

Information Officers shall resolve any disputes that arise under Section 7.8.c of this Agreement with respect to any requirement of CIGNA HealthCare for the submission of Clinical Information.  Such disputes shall not be the subject of review either as a Billing Dispute under Section 7.10 or as a Compliance Dispute under Section 15 (except in the case of alleged systemic violation of Section 7.8.c(i)).  A Class Member may initiate the process by filing a request for review (which may involve multiple claims of non-conformity with Section 7.8.c) in the manner and with the information to be identified on CIGNA HealthCare's Website, which request shall be accompanied by a filing fee of Fifty Dollars ($50.00) payable to CIGNA HealthCare.

a. *Disputes Involving Section 7.8.c(i).*

If CIGNA HealthCare is not invoking its right to obtain Clinical Information for the purpose of investigating possible fraudulent, abusive or other inappropriate billing practices under Section 7.8.c(ii), then CIGNA HealthCare shall promptly (but in any event within ten (10) Business Days) so notify the appropriate Clinical Information Officer, and both CIGNA HealthCare and the Class Member shall, upon request by the Clinical Information Officer, supply within twenty (20) Business Days such information to the Clinical Information Officer and to the other party as they deem relevant to the issue of compliance with Section 7.8.c(i).  The Clinical Information Officer shall then make a determination, binding on both parties, of the issue of compliance with Section 7.8.c(i).

b. *Disputes Involving Section 7.8.c(ii).*

If CIGNA HealthCare is invoking its right to obtain Clinical Information under Section 7.8.c(ii), then it shall promptly (but in any event within ten (10) Business Days) so notify the appropriate Clinical Information Officer and shall submit *ex parte* and *in camera* within twenty (20) Business Days to him or her its reasons for believing that it has reasonable grounds for proceeding under Section 7.8.c(ii).  The Clinical Information Officer, without revealing the information or material received from CIGNA HealthCare, shall allow the Class Member to submit, within twenty (20) Business Days of notice from the Clinical Information Officer, any

54

information supporting his, her or its request beyond that submitted with the initial request. The sole responsibility of the Clinical Information Officer in these circumstances shall be to make a binding determination as to whether CIGNA HealthCare has reasonable grounds for its action. If the Clinical Information Officer determines that reasonable grounds exist, the Clinical Information Officer shall notify the parties that the matter has been closed pursuant to Section 7.8.c(ii). If the Clinical Information Officer determines that reasonable grounds under Section 7.8.c(ii) do not exist, he or she shall notify the parties that the requirement for submission of Clinical Information is to cease. Under no circumstances shall the Clinical Information Officer reveal to the Physician or any other Person the evidence submitted to him or her by CIGNA HealthCare, and all material submitted to the Clinical Information Officer by CIGNA HealthCare shall be immediately returned to CIGNA HealthCare, without the retention by the Clinical Information Officer of any copies or extracts therefrom.

           c.      *Miscellaneous*

The authority of a Clinical Information Officer is limited to issues of compliance with Section 7.8.c and does not extend to issues of payment or otherwise. A Clinical Information Officer shall attempt to reach a conclusion within twenty (20) days after receipt of requested documentation from the parties.

      7.13    *Participating in CIGNA HealthCare's Network.*

           a.      *Advance Credentialing.*

CIGNA HealthCare will allow Physicians to submit credentialing applications (including, as relevant, licensure and hospital privileges or other required information) and will begin to process such applications prior to the time that the Physician formally changes or commences employment or changes location, provided that the Physician must represent that he or she has new employment or intends to move to a new location. CIGNA HealthCare shall process completed applications and notify the Physician within ninety (90) days. If a Physician is already credentialed by CIGNA HealthCare but changes employment or changes location,

CIGNA HealthCare will only require the submission of such additional information, if any, as is necessary to continue the Physician's credentials based upon the changed employment or location.

b.      *"All Products" or "All Affiliates" Clauses.*

CIGNA HealthCare does not include provisions in its contracts with Class Members that require, or purport to require, Class Members to participate in one or more of CIGNA HealthCare's products (e.g., HMO, PPO, POS, indemnity) as a condition of participating in any other product, and shall not include such provisions in its contracts with Class Members at least through the Termination Date. With respect to CIGNA Behavioral Health, unless a psychiatrist, psychiatric group practice or psychiatric facility and CIGNA Behavioral Health, Inc. agree otherwise concerning Covered Services to be provided by that psychiatrist or psychiatric facility, psychiatrists who provide Covered Services to patients for whom CIGNA Behavioral Health, Inc. provides managed behavioral benefit and/or employee assistance program services and network services (both CIGNA HealthCare patients and patients covered under other health benefit arrangements) are expected to provide such Covered Services to all such patients, subject to Section 7.13.d.

c.      *Termination Without Cause.*

Unless an Individually Negotiated Contract between CIGNA HealthCare and a Participating Physician specifies a longer period of notice, or specifies that the contract may not be terminated except for cause during a defined period of time, either party shall have the right to terminate the contract without cause upon at least sixty (60) days written notice to the other party. In the event of a contract termination by either party, the following obligations shall apply with respect to the continuation of care for those patients of the Participating Physician who are CIGNA HealthCare Members who suffer from a chronic condition requiring continuity of care and who are unable, prior to the date of termination, to arrange for an alternative means of receiving the necessary care. In the case of a continuity of care situation as defined in the

preceding sentence, the Participating Physician shall continue to render necessary care to the CIGNA HealthCare Member until CIGNA HealthCare, in conjunction with the CIGNA HealthCare Member, has arranged an alternative means for the provision of such care, provided that, if after the date of termination the Class Member determines that CIGNA HealthCare has not used due diligence to arrange alternative care the Class Member may take such action as is necessary to terminate the Physician-patient relationship. CIGNA HealthCare shall pay claims by such terminating Participating Physician for such services or supplies at rates provided by the contract to be terminated through the date of termination and thereafter at the reasonable and customary rates then prevailing for that geographical area, until such time as an alternative means for the provision of such care is arranged.

        d.     *Rights of Class Members to Refuse to Accept Additional Patients.*

CIGNA HealthCare will not prohibit Class Members from declining to accept CIGNA HealthCare Members as new patients while remaining open to members of plans insured or administered by other managed care companies once the number of CIGNA HealthCare Members who are patients of the Class Member reaches a certain numerical or percentage threshold established by the Class Member provided that (a) the number of CIGNA HealthCare Members who are patients of the Class Member exceeds the number of patients who are members of plans insured or administered by any other single managed care organization at the time the Class Member closes his practice to CIGNA HealthCare Members; (b) if the acceptance of new patients causes the number of patients who are members of plans insured or administered by any other managed care organization to exceed the number of CIGNA HealthCare members, the Class Member must begin accepting new patients who are CIGNA HealthCare members; and (c) if a patient of the Class Member becomes a CIGNA HealthCare Member by switching from a plan insured or administered by another managed care organization to one insured or administered by CIGNA HealthCare, the Class Member must continue as the patient's Physician.

Furthermore, CIGNA HealthCare will not prevent Class Members from closing their practices to all new patients.

7.14    Fee Schedule Changes.

a.    *Notices Regarding Fee Schedules.*

CIGNA HealthCare agrees not to reduce its fee schedule for a Participating Physician more than once a calendar year (except as provided below in this Section 7.14.a) and shall give notice of any such change as a material adverse change subject to the provisions of Section 7.6 hereof.  Notwithstanding the foregoing, in between such annual changes, CIGNA HealthCare may increase or decrease the fee schedule payment rates for vaccines, pharmaceuticals, durable medical supplies or other goods or non-Physician services to reflect changes in market prices, and CIGNA HealthCare may update fee schedules to add payment rates for newly-adopted CPT® Codes and for new technologies, and new uses of established technologies, that CIGNA HealthCare concludes are eligible for payment, and to update such fee schedules to reflect any applicable interim revisions made by CMS.  In the first year of a Physician's contract, a change in fee schedule may be made before December 31st of the year in which the contract became effective. Nothing contained herein shall prevent CIGNA HealthCare from maintaining, altering or expanding the use of capitation or other compensation methodologies.  The requirements in this Section may be altered pursuant to the terms in Individually Negotiated Contracts.

b.    *Payment Rules for Injectibles, Durable Medical Equipment, Administration of Vaccines, and Review of New Technologies.*

CIGNA HealthCare agrees to pay a fee (per the applicable fee schedule for a Participating Physician and a reasonable fee for Non-Participating Physicians) for the administration of vaccines and injectibles in addition to paying for such vaccines and injectibles. CIGNA HealthCare agrees to pay Participating Physicians for the cost of injectibles and vaccines at the rate set forth in the applicable fee schedule in each market, as in effect from time to time. With respect to capitated primary care Participating Physicians, CIGNA HealthCare agrees to continue to pay fees (in addition to contractually agreed-upon capitation payments) for vaccines

58

administered pursuant to the schedules recommended by any of the following: the U.S. Preventive Services Task Force, the American Academy of Pediatrics and the Advisory Committee on Immunization Practices, as applicable; provided that if the primary care Participating Physician so requests, CIGNA HealthCare may include such fees within the scope of capitated services. As of the effective date of such recommendation, CIGNA HealthCare shall pay for vaccines newly recommended by the institutions identified above. Other than as specified in the preceding sentence with respect to vaccines, if a Physician Specialty Society recommends a new technology or treatment or a new use for an established technology or treatment as an appropriate standard of care, CIGNA HealthCare shall evaluate such recommendation and issue a coverage statement not later than one hundred twenty (120) days after CIGNA HealthCare learns of such Physician Specialty Society recommendation. CIGNA HealthCare agrees to list in the Certification to be filed annually and at the end of the Effective Period the dates on which such updates are completed and to include in such Certification any written policies and procedures it has developed regarding payments for the administration of vaccines **and injectibles.**

      c.    *Appeals of Reasonable and Customary Determinations.*

If a Non-Participating Class Member initiates a dispute using CIGNA HealthCare's internal dispute resolution procedures over how CIGNA HealthCare has determined the "reasonable and customary" charge for a given health care service or supply and, consequently, over how CIGNA HealthCare has computed the benefits payable for that health care service or supply, CIGNA HealthCare shall disclose to the Class Member initiating the dispute the data used by CIGNA HealthCare to determine the "reasonable and customary" charge for that given health care service or supply.

7.15   *Recognition of Assignments of Benefits of Plan Member.*

When billed by a Non-Participating Physician Class Member for health care services or supplies provided to a CIGNA HealthCare Member, CIGNA HealthCare will require that the Non-Participating Physician Class Member shall have received a valid Assignment of Benefits from the CIGNA HealthCare Member and shall have so evidenced the Assignment to CIGNA HealthCare. CIGNA HealthCare shall recognize all valid Assignments by CIGNA HealthCare Members of Plan benefits to Physicians.

7.16   *Application of Clinical Judgment to Patient-Specific and Policy Issues.*

    a.    *Medically Necessary/Medical Necessity Definition.*

        (1)    *Medically Necessary/Medical Necessity Definition.*

Except where state law or regulation requires a different definition, CIGNA HealthCare shall apply the following definition of "Medically Necessary" or comparable term in each agreement with Physicians, Physician Groups, and Physician Organizations: "Medically Necessary" or "Medical Necessity" shall mean health care services that a Physician, exercising prudent clinical judgment, would provide to a patient for the purpose of evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are (a) in accordance with generally accepted standards of medical practice; (b) clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease; and (c) not primarily for the convenience of the patient or Physician, or other Physician, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease. For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations, the views of Physicians practicing in relevant clinical areas

60

and any other relevant factors.  Preventive care may be Medically Necessary, but coverage for Medically Necessary preventive care is governed by the terms of the applicable Plan Documents.

     (2)  *External Review Statistics*.

    Within not more than ninety (90) days after the end of each calendar year and at least through the Termination Date, CIGNA HealthCare shall post on its Website the number of Medical Necessity appeals sent to the Medical Necessity External Review Organization for final determination for the preceding calendar year and the percentage of such appeals that are upheld or reversed.

     b.  *Policy Issues Involving Clinical Judgment*.

    In adopting clinical policies with respect to Covered Services, CIGNA HealthCare shall rely on credible scientific evidence published in peer-reviewed medical literature generally recognized by the medical community, and shall take into account Physician Specialty Society recommendations and the views of Physicians practicing in relevant clinical areas and any other relevant factors.  CIGNA HealthCare shall continue to make such policies readily available to CIGNA HealthCare Members and Physicians via the Website or by other electronic means. Promptly after adoption, CIGNA HealthCare shall file a copy of each new policy or guideline with the Physician Advisory Committee.

     c.  *Future Consideration by CIGNA HealthCare of an Administrative Exemption Program*.

    CIGNA HealthCare shall consider the feasibility and desirability of exempting certain Participating Physicians from certain administrative requirements based on criteria such as a Participating Physician's delivery of quality and cost effective medical care and accuracy and appropriateness of claims submissions.  CIGNA HealthCare shall not be obliged to implement any such exemption process during the term hereof, and this Section 7.16.c is not intended and shall not be construed to limit CIGNA HealthCare's ability to implement any such program on a pilot or experimental basis, to base exemptions on any grounds determined by CIGNA HealthCare, or otherwise to implement one or more programs in only some markets.

7.17   *Billing and Payment.*

a.      *Timing of Claim Submission.*

Except where CIGNA HealthCare and a Class Member have entered into an Individually Negotiated Contract that provides for a different submission period, CIGNA HealthCare shall treat all claims submitted within one hundred eighty (180) days of the date of service as timely. With respect to claims submitted more than one hundred eighty (180) days after the date of service, CIGNA HealthCare shall specify on its Website those circumstances under which such claims shall be accepted for processing and, if appropriate, for payment, pursuant to Section 7.2.a(2)(d) hereof.

b.      *Claim Submission.*

CIGNA HealthCare agrees to accept both properly and timely completed paper claims submitted on Form CMS 1500, UB-92 or the equivalent, and also electronic claims populated with similar information in HIPAA-compliant format or fields.  CIGNA HealthCare may continue to require submission of Clinical Information in connection with review of specific claims and as contemplated elsewhere in this Agreement, including without limitation Sections 7.8, 7.19 and 7.20; provided that nothing in this sentence is intended or shall be construed to alter or limit any restrictions set forth elsewhere in this Agreement concerning CIGNA HealthCare's ability to make requests for Clinical Information in connection with adjudication of claims. CIGNA HealthCare shall disclose on its Website its policies and procedures regarding the appropriate format for claims submissions and requests for Clinical Information.  Nothing herein is intended to or shall alter CIGNA HealthCare's right to obtain eligibility information that it needs to process a claim from the CIGNA HealthCare Member or the CIGNA HealthCare customer for which CIGNA HealthCare insures or administers the CIGNA HealthCare Member's Plan.

7.18   *Payment of Simple Interest on Certain Claims.*

a.      Through the use of two new claims platforms described in Section 7.1 of

62

this Agreement, CIGNA HealthCare has increased its ability to autoadjudicate claims and to receive claims electronically. The level of claims submitted electronically has also increased. At present, approximately 60% of the claims handled on one new system are submitted electronically and approximately 70% are submitted electronically on the other. The new systems are presently processing for payment approximately 90% of the number of fee for service claims that include the information set forth in Section 7.17.b within fourteen (14) calendar days of receipt. Every claim received by CIGNA HealthCare is and at least until the Termination Date will be logged with a receipt date whether the claim is received on paper or electronically. CIGNA HealthCare will continue to pursue initiatives designed to improve the timeliness of claim processing and shall attempt to include in its contracts with each clearinghouse a requirement that each such clearinghouse transmit claims to CIGNA HealthCare within twenty four (24) hours after such clearinghouse's receipt thereof.

       b.     CIGNA HealthCare shall pay simple interest of six percent (6%) per annum on the balance due on all claims submitted by Class Members that are processed and finalized for payment more than thirty (30) calendar days following the submission of all information necessary to make the claim consistent with Section 7.17.b of this Agreement. Beginning one year following Final Approval, for claims processed on either of the new systems referenced above, CIGNA HealthCare shall pay simple interest of six percent (6%) per annum on the balance due on all claims submitted electronically by Class Members that are processed and finalized for payment more than fifteen (15) Business Days following the submission of all information necessary to make the claim consistent with Section 7.17.b of this Agreement. Notwithstanding the foregoing, if CIGNA HealthCare determines that an applicable state law or regulation requires interest to be computed and paid at a different interest rate, CIGNA HealthCare shall observe the requirements of that state law or regulation. Under this provision, simple interest shall be computed from the sixteenth (16th) or the thirty-first (31st) day (as appropriate based on the circumstances described above) after CIGNA HealthCare receives the

information necessary to make the claim consistent with Section 7.17.b to the date on which the claim is processed by CIGNA HealthCare and placed in line for payment.  Interest so computed shall, at CIGNA HealthCare's election, either be included in the claim payment check or wire transfer or be remitted in a separate check or wire transfer.  Notwithstanding the terms of this subparagraph, CIGNA HealthCare shall have no obligation to make any interest payment on any such claim as to which (i) the Class Member , within thirty (30) days of the submission of an original claim, submits a duplicate claim while the original claim is still being processed; or (ii) the Class Member  violates the terms of his, her or its contract with CIGNA HealthCare by inappropriately billing a CIGNA HealthCare Member for the balance due from CIGNA HealthCare.  In addition, with respect to interest payments that total less than One Dollar ($1.00) on any single claim ("de minimis interest"), CIGNA HealthCare may, at its sole option, either (i) pay such amounts in the same manner as any other interest payment under this paragraph, or (ii) if it determines that it cannot practically pay using option (i), calculate the total dollar amount of de minimis interest for each year during the period for which this section 7.18 applies, and pay such amount to the Foundation.  If CIGNA HealthCare elects the approach described in subsection (ii) in the preceding sentence, the calculation of de minimis interest will be determined by a claim audit based on statistically valid claim audit procedures and will include interest on the de minimis interest for the preceding year, which interest of six percent (6%) per annum will be calculated on a reasonable basis.  CIGNA HealthCare will provide the audits to Notice Counsel.

7.19    *No Automatic Downcoding of Evaluation and Management Claims.*

CIGNA HealthCare shall not automatically reduce the code level of CPT® Evaluation and Management Codes billed for Covered Services.  Notwithstanding the foregoing sentence, CIGNA HealthCare shall continue to have the right to deny or adjust such claims for Covered Services on other bases and shall have the right to reduce the code level for selected claims for Covered Services (or claims for Covered Services submitted by a selected Class Member) based

on a review of Clinical Information at the time the service was rendered for particular claims, a review of information derived from CIGNA HealthCare's fraud and abuse detection programs that creates a reasonable belief of fraudulent, abusive or other inappropriate billing practices, or other tools that reasonably identify inappropriate coding of Evaluation and Management services; provided that the decision to reduce is based at least in part on a review of the Clinical Information.

   7.20    *Modifications to Payment Policies.*

   CIGNA HealthCare shall modify its claim processing and claim payment policies as follows and will insure that its automated claims handling will be consistent with the requirements of this Agreement.  If there are legislative or regulatory efforts to bring about uniform coding and editing standards, CIGNA HealthCare will not oppose such efforts.  Nothing in this Section is intended or shall be construed to require CIGNA HealthCare to pay for anything other than Covered Services for CIGNA HealthCare Members, to make payment at any particular rates, to limit CIGNA HealthCare's right to deny or adjust claims based on reasonable belief of fraudulent, abusive or other inappropriate billing practices (so long as the Class Member has had the opportunity to invoke the provisions of Section 7.12) or to supersede Individually Negotiated Contracts that specifically provide for alternative payment logic.

   a.    *Moratorium on Requirement that Providers Submit Clinical Information in Order to Obtain Payment for Surgical Procedures and for Evaluation and Management Services on the Same Date of Service.*

   CIGNA HealthCare shall not require Class Members to submit Clinical Information of their patient encounters in order to receive payment for both surgical procedures and CPT® Evaluation and Management services for the same patient on the same date of service.  CIGNA HealthCare shall pay for both CPT® Evaluation and Management Codes and surgical codes or other procedure codes when submitted for the same patient on the same date of service with appropriate modifiers (*e.g.*, modifiers 25 and 57), unless a Claim Coding and Bundling Edit (which edit will be disclosed on the Website and shall be consistent with this section 7.20)

precludes payment of the specific combination of billing codes involved. Additionally, CIGNA HealthCare will remove from its claim review and payment systems those Claim Coding and Bundling Edits that generally deny payment for CPT® Evaluation and Management Codes when submitted with surgical or other procedure codes for the same patient on the same date of service except for a discrete number of exceptions which will be disclosed on CIGNA HealthCare's Website. Nothing in this Agreement shall prohibit CIGNA HealthCare from requiring use of the appropriate CPT® Code modifiers for Evaluation and Management billing codes (*e.g.*, modifiers 25 and 57) on their original claim forms. Moreover, nothing in this Agreement shall preclude CIGNA HealthCare from requiring Participating Physicians and Non-Participating Physicians (to the extent the audit is limited to claims submitted under an Assignment of Benefits) to submit to an audit of their submitted claims (including claims for surgical procedures and Evaluation and Management services on the same date of service), and to produce copies of their Clinical Information in connection with such an audit.

      b.     *Termination of Use of "Well Woman" Billing Code for Obstetrical and Gynecological Examinations.*

After October 14, 2003, CIGNA HealthCare shall process claims for obstetrical and gynecological examinations using standard CPT® Codes denoting Evaluation and Management services, eliminating use of the CIGNA HealthCare "well woman" code (*i.e.*, code 90769).

      c.     *Processing of Add-On and Modifier 51 Exempt Billing Codes.*

CIGNA HealthCare will process and separately reimburse add-on billing codes and modifier 51 exempt billing codes without reducing payment under CIGNA HealthCare's Multiple Procedure Logic; provided that the add-on codes are billed with a proper primary procedure code according to the guidelines and protocols set forth in CPT®.

      d.     *Recognition of CPT® Codes and HCPCS Level II Codes.*

CIGNA HealthCare shall update its claims editing software at least once each year to (A) cause its claim processing systems to recognize any new CPT® Codes or any reclassifications of existing CPT® Codes as modifier 51 exempt since the previous annual update, and (B) cause its

66

claim processing personnel to recognize any additions to HCPCS Level II Codes promulgated by CMS since the prior annual update.  As to both clauses (A) and (B) above, CIGNA HealthCare shall not be obligated to take any action prior to the effective date of the additions or reclassifications.  Nothing in this subparagraph shall be interpreted to require CIGNA HealthCare to recognize any such new or reclassified CPT® Codes or HCPCS Level II Codes as Covered Services under any Plan Member's Plan, and nothing in this subparagraph shall be interpreted to require that the updates contemplated in (A) and (B) be completed at the same time; provided that (A) and (B) are each completed once each year.

> e.    *CPT® Code That Includes Supervision and Interpretation.*

A CPT® Code that includes supervision and interpretation shall be separately recognized and eligible for payment to the extent that the associated procedure code is recognized and eligible for payment; provided, that for each such procedure (*e.g.*, review of x-ray or biopsy analysis), CIGNA HealthCare shall not be required to pay for supervision or interpretation by more than one physician; and provided further that, consistent with Section 7.8.c of this Agreement, nothing in this Section 7.20.e shall preclude CIGNA HealthCare from requiring the submission of Clinical Information substantiating that the requirements of the billed CPT® Code have been satisfied.

> f.    *Indented Codes.*

Other than codes specifically identified as modifier 51-exempt or "add-on," a CPT® Code that is considered an indented code within CPT® shall not be reassigned into the primary (*i.e.*, non-indented) code, from the same CPT® Code series, unless more than one indented code under the same indentation is submitted with respect to the same service, in which event only one such code shall be eligible for payment; provided that for indented code series contemplating that multiple codes in such series properly may be reported and billed concurrently, all such codes properly billed shall be recognized and eligible for payment.

g.     *Modifier 59.*

CPT® Codes submitted with a modifier 59 attached will be recognized and eligible for payment to the extent they designate a distinct or independent procedure performed on the same day by the same Physician, but only to the extent that (1) although such procedures or services are not normally reported together they are appropriately reported together under the particular presenting circumstances; (2) it would not be more appropriate to append any other CPT® recognized modifier to such codes; and (3) to the extent that the CPT® Code submitted for payment with a modifier 59 attached is otherwise subject to a Claim Coding and Bundling edit, substantiating Clinical Information indicates that the use of modifier 59 was appropriate (which requirement shall be posted on the Website consistent with Section 7.8.c of this Agreement).

h.     *Global Periods.*

No global periods for surgical procedures shall be longer than the period then designated by CMS; provided that this limitation shall not restrict CIGNA HealthCare from establishing a global period for surgical procedures (except where CMS has determined a global period is not appropriate or has identified a global period not associated with a specific number of days).

i.     *Code Changes.*

CIGNA HealthCare shall not automatically change a code to one reflecting a reduced intensity of the service when such CPT® Code is one among a series that differentiates among simple, intermediate and complex; provided that, consistent with Section 7.8.c of this Agreement, nothing in this Section 7.20.i shall preclude CIGNA HealthCare from requiring the submission of Clinical Information substantiating that the requirements for intermediate and complex versions of the service have been satisfied.

j.     *Other Modifiers.*

Nothing contained in this Section 7.20 shall be construed to limit CIGNA HealthCare's recognition of modifiers to those modifiers specifically addressed in this section 7.20.

68

7.21   *Modifications of Language Included in Remittance Forms Provided to Class Members.*

a.   *Remittance Forms.*

CIGNA HealthCare shall use its best efforts to identify on those Remittance Forms issued to Class Members the following information: the name of and a number identifying the CIGNA HealthCare Member, the date of service, the amount of payment per line item, any adjustment to the invoice submitted and generic explanation therefor in compliance with Health Insurance Portability and Accountability Act of 1996 ("HIPAA") requirements, all billing codes submitted by the Class Members and the distinct charges therefor, and, whether such codes were paid or denied, and, if denied, the reasons therefor, and an address and telephone number for questions regarding the claim described in the Remittance Form. Such Remittance Forms shall also contain a printed disclosure advising Class Members that reconsideration of the application of any denied billing codes, regardless of the reason for the denial, is available through CIGNA HealthCare's appeal procedures, which procedures may require the submission of relevant Clinical Information. The Settling Parties recognize that certain claim processing systems currently in use at CIGNA HealthCare cannot immediately meet this requirement and that implementation of this specification will require the migration of claim processing activity to other claim processing systems that already meet this specification. The Settling Parties recognize that this migration effort, which is already underway, is a complex effort that will occur over time. Accordingly, CIGNA HealthCare shall provide quarterly status reports to Notice Counsel regarding its efforts to meet this specification, and shall report to Notice Counsel when the efforts are complete. Once this process of migration has been completed and Notice Counsel have been so advised, Remittance Forms shall continue to identify all distinct billing codes submitted by Class Members at least through the Termination Date.

b.   *Balance Billing by Non-Participating Physicians.*

Nothing in this Agreement is intended to, and shall not, alter or change the rights of Non-Participating Physicians to balance bill or to bill a CIGNA HealthCare Member at rates and on

terms that are agreed between the Non-Participating Physician and the CIGNA HealthCare Member.

7.22    *Overpayment Recovery Procedures.*

CIGNA HealthCare shall initiate or continue to take actions reasonably designed to reduce Overpayments, and it shall publish on its Website an address and procedures for Class Members to return Overpayments. In addition, other than for recovery of duplicate payments, CIGNA HealthCare shall provide Class Members with thirty (30) days written notice before seeking Overpayment recovery, whether or not the Overpayment occurred during the Class Period or afterward. The notice shall state the patient name, service date, payment amount, proposed adjustment, and explanation or other information (including without limitation procedure code, where appropriate) giving Class Members reasonably specific notice of the proposed adjustment. CIGNA HealthCare shall not initiate Overpayment recovery efforts more than twelve (12) months after the original payment; provided that no time limit shall apply to initiation of Overpayment recovery efforts based on reasonable suspicion of fraud or other intentional misconduct or initiated at the request of a Self-Insured Plan; and in the event that a Class Member asserts a claim of underpayment, CIGNA HealthCare may defend or set off such claim or it may counterclaim based on Overpayments going back in time as far as the claimed underpayment.

7.23    *Efforts to Improve Accuracy of Information About Eligibility of CIGNA HealthCare Members.*

CIGNA HealthCare has sought to increase the accuracy of eligibility data in its systems, and will continue to do so, by devoting resources to improving each step in the timeliness and accuracy of transmission of information from CIGNA HealthCare Members to their employers and from employers to CIGNA HealthCare, through, *inter alia,* 1) an internal end-to-end review of the eligibility process from the perspective of both the employer and CIGNA HealthCare; 2) the application of "Six Sigma" process improvement techniques, a rigorous statistical approach designed to reduce variation from targeted accuracy standards; 3) the formation of so-called Six

70

Sigma teams to examine each important step in the chain of eligibility information registration and to develop procedures or other means to reduce inaccuracy or delays through process improvement projects; 4) measurement of the results of process improvement projects; 5) encouragement of employers to submit eligibility data in electronic form, to reduce errors and mishandling that can impact paper-based processes, and by developing a web-based process for employers who cannot use other forms of electronic submission; and 6) regular comparison of CIGNA HealthCare's eligibility data with employers' data to improve the accuracy of the data in CIGNA HealthCare's systems.

   7.24   *Provider Service Centers.*

   Since the commencement of this Litigation, CIGNA HealthCare has consolidated its provider services centers so as to have a center located at each of its five principal claims handling centers, plus four satellite provider relations centers; and it has established a provider resolution unit responsible for consolidating and coordinating the identification of problems being encountered in claims submissions and processing, researching the causes of such problems and the means for their solutions, and performing certain appeal-related functions. CIGNA HealthCare shall continue these or other efforts to improve provider services.

   7.25   *Effect of CIGNA HealthCare Confirmation of Medical Necessity.*

   CIGNA HealthCare agrees that if CIGNA HealthCare certifies that a proposed treatment is Medically Necessary for a particular CIGNA HealthCare Member, CIGNA HealthCare shall not subsequently revoke that Medical Necessity determination absent evidence of fraud, evidence that the information submitted was materially erroneous or incomplete, or evidence of material change in the CIGNA HealthCare Member's health condition between the date that the certification was provided and the date of the treatment that makes the proposed treatment not Medically Necessary for such CIGNA HealthCare Member.  In the event that CIGNA HealthCare certifies the Medical Necessity of a course of treatment limited by number, time period or otherwise, then a request for treatment beyond the certified course of treatment shall be

71

deemed to be a new request and CIGNA HealthCare's denial of such request shall not be deemed to be inconsistent with the preceding sentence. Any policies and procedures promulgated to effectuate this commitment and in effect at the end of the Effective Period shall be included in the Certification to be filed annually and at the end of the Effective Period.

7.26    *Electronic Connectivity.*

The Website shall operate with a reasonable degree of reliability. If for any thirty (30) day period during the Effective Period, the Website is inoperable or lacks reliability, CIGNA HealthCare shall take commercially reasonable measures to enhance the operability and reliability of the Website. The Certification to be filed annually and at the end of the Effective Period shall include the dates during the Effective Period on which the Website has been substantially inoperable.

7.27    *Information About Physicians Posted on CIGNA HealthCare's Website.*

Information currently posted on CIGNA HealthCare's Website about individual Physicians is derived from data supplied by those Physicians and from applicable agreements between CIGNA HealthCare and a Participating Physician. Upon notice of an inaccuracy sent to CIGNA HealthCare (pursuant to the direction as to how to give such notice that will be posted on the Website), CIGNA HealthCare shall take steps reasonably necessary to ensure that the Website is updated within twenty (20) Business Days after receipt of such notice to reflect any corrections in the Physician information necessary to make it accurate. Similarly, when CIGNA HealthCare is notified by a Physician in the manner set forth in the preceding sentence that such Physician is incorrectly listed on CIGNA HealthCare's Website as a Participating Physician, CIGNA HealthCare shall delete any such erroneous reference within twenty (20) Business Days after receipt of such notice and shall make corresponding changes in systems affecting the level of payments and generation of EOBs.

7.28    *Capitation and Physician Organization Specific Issues.*

a.      *Capitation Reporting.*

CIGNA HealthCare shall provide Class Members who are capitated with monthly reports within ten (10) Business Days after the beginning of each month.  These monthly reports will include membership information to allow reconciliation by Class Members of capitation payments, such information to include CIGNA HealthCare Member identification number or the equivalent, name, age, address, gender, health plan, Physician Group/Physician Organization number, copayment, deductible, monthly capitation amount, primary care Physician, provider effective date, type of coverage, enrollment date, and, in the monthly report following an applicable change (*e.g.,* selection of new primary care Physician), a report of such change.

b.      *Assignment to Primary Care Physician Where CIGNA HealthCare Member Does Not Make Selection Initially.*

If a CIGNA HealthCare Member does not choose a primary care Physician upon enrollment, CIGNA HealthCare shall, unless prohibited from doing so by the employer sponsor of a Self-Insured Plan, assign the CIGNA HealthCare Member to a primary care Physician that is a Participating Physician randomly selected based upon the CIGNA HealthCare Member's home address zip code or on the basis of another reasonable method developed by CIGNA HealthCare. CIGNA HealthCare will recommend to all Plan sponsors that if a CIGNA HealthCare Member in the Plan of that sponsor does not select a primary care Physician upon enrollment, then CIGNA HealthCare will assign the CIGNA HealthCare Member to a primary care Physician that is a Participating Physician randomly selected based upon the CIGNA HealthCare Member's home address zip code or on the basis of another reasonable method developed by CIGNA HealthCare, pending the CIGNA HealthCare Member's selection of a primary care Physician.  CIGNA HealthCare shall pay the initially assigned primary care Physician, from the date of the CIGNA HealthCare Member's enrollment, any capitation rates under such primary care Physician's contract with CIGNA HealthCare, and the assigned primary care Physician shall become responsible for the care of the CIGNA HealthCare Member in accordance with the applicable

73

terms of such Participating Physician's agreement with CIGNA HealthCare, from the date of notice of the enrollment.  The CIGNA HealthCare Member has the right to select a new primary care Physician at any time in accordance with the Plan in which the CIGNA HealthCare Member is enrolled, which newly selected primary care Physician (if a capitated Physician) shall from the date of selection begin receiving capitation at such capitation rate specified in such primary care Physician's contract with CIGNA HealthCare.  At such point in time, the initially assigned primary care Physician, if a capitated Physician, shall cease receiving any capitation payments.

    7.29   *Miscellaneous.*

        a.   *No Introduction of "Gag Clauses."*

CIGNA HealthCare does not include in its contracts with Class Members, and, at least through the Termination Date, will not include in its contracts, any provision restricting the free, open and unrestricted exchange of information between Class Members and CIGNA HealthCare Members regarding 1) the nature of the CIGNA HealthCare Member's medical conditions or treatment; 2) treatment options and the relative risks and benefits of such options; 3) whether or not such treatment is covered under the CIGNA HealthCare Member's Plan; and 4) any right to appeal any adverse decision by CIGNA HealthCare regarding coverage of treatment that has been recommended or rendered.  CIGNA HealthCare agrees not to penalize or sanction Class Members in any way for engaging in any free, open and unrestricted communication with a CIGNA HealthCare Member with respect to the foregoing subjects or for advocating for any service on behalf of a CIGNA HealthCare Member.

        b.   *Ownership of Medical Records.*

CIGNA HealthCare agrees that it does not own medical records kept by Class Members; provided, however, that CIGNA HealthCare, as reasonably needed or as required by law, has the right with respect to a Participating Physician, and a Non-Participating Physician submitting a claim for payment based on an Assignment by the CIGNA HealthCare Member to such Non-Participating Physician of his or her benefits, to ask for and receive copies of such records or, at

74

CIGNA HealthCare's election, to review them for treatment, payment, or health care operations purposes, for purposes required by law, and for other customary purposes such as disease management, patient management, utilization management, quality assurance, quality review, quality management, and audit (including without limitation any audit activities undertaken by CIGNA HealthCare to comply with NCQA accreditation rules); and provided further, that nothing herein is intended to or should be construed to convey to a Physician any property interest in (i) CIGNA HealthCare's data or intellectual property, (ii) products or services offered or provided now or in the future, or (iii) any business, systems or information management process that incorporates any medical records or related data obtained by CIGNA HealthCare from such Physician or any reports or data resulting from any such data or processes. Notwithstanding the foregoing or any other provisions of this Agreement, any right of CIGNA HealthCare to demand information or cooperation from a Non-Participating Physician shall be limited to whatever rights to such information or cooperation CIGNA HealthCare would be able to assert for purposes required by law or through the terms of the agreement between CIGNA HealthCare and the CIGNA HealthCare Member upon whose Assignment of Benefits the Non-Participating Physician has submitted a claim for payment.

      c.     *Limitations on Costs of Non-Judicial Dispute Resolution for Individual Physicians and Small Physician Groups.*

In any non-judicial dispute resolution proceeding (other than under Sections 7.10, 7.11, 7.12, and 15 of this Agreement) commenced by a Class Member who has an individual contract with a CIGNA HealthCare entity or who has contracted with a CIGNA HealthCare entity through a Physician Group contract in which the Physician Group includes no more than six (6) individual Class Members, the Class Member's maximum share of the costs of the dispute resolution entity shall be limited to one half of those costs or One Thousand Dollars ($1,000.00), whichever is less. CIGNA HealthCare shall be responsible for one hundred percent (100%) of those costs that exceed Two Thousand Dollars ($2,000.00). This provision applies notwithstanding the requirements of any contract between CIGNA HealthCare and any Class

Member requiring the Class Member to share evenly the fees of a dispute resolution procedure, including arbitration. This Section 7.29.c shall not apply to dispute resolution proceedings in which the Class Member involved purports to represent other Physicians outside of his or her Physician Group of no more than six (6) individual Class Members. Subject to the above and except as otherwise addressed in a Physician contract or by law, each party will bear its own costs.

      d.    *Impact of this Agreement on Standard Agreements and Individually Negotiated Contracts.*

CIGNA HealthCare's standard Physician agreements and/or ancillary documents (*e.g.*, criteria schedule) shall incorporate or be consistent with the commitments and undertakings CIGNA HealthCare makes in this Agreement. To the extent that CIGNA HealthCare's existing agreements with Participating Physician Class Members contain provisions inconsistent with the terms hereof, CIGNA HealthCare shall administer such agreements consistent with the terms set forth in this Agreement; provided that where CIGNA HealthCare and a Class Member have an Individually Negotiated Contract, this Agreement shall not modify or nullify the individually negotiated terms of such Individually Negotiated Contracts unless the Class Member notifies CIGNA HealthCare in writing, specifically setting forth the negotiated terms it seeks to have modified or nullified by this Agreement. Upon such notification, either party to the Individually Negotiated Contract may then elect to renegotiate the Individually Negotiated Contract or terminate it. Furthermore, CIGNA HealthCare, upon request, may separately agree with individual Participating Physicians, Physician Groups or Physician Organizations on customized rates and/or payment methodologies that deviate from the terms of its standard agreements.

      e.    *Impact of Agreement on Covered Services.*

Notwithstanding anything to the contrary contained in this Agreement, nothing contained herein shall supersede or otherwise alter the scope of Covered Services under a CIGNA HealthCare Member's Plan Documents or require payment by CIGNA HealthCare or a Plan for services that are not Covered Services.

f.      *Privacy of Records and Right of Class Member to Elect Exemption From Use of Electronic Transactions.*

CIGNA HealthCare shall safeguard the confidentiality of CIGNA HealthCare Member medical records in accordance with HIPAA, state and other federal law and any other applicable legal requirements; provided, however, that this undertaking shall not be the subject of a Compliance Dispute, and that Physicians may resort to any other remedial measures that they may have outside this Agreement to protect their interests.  If a Physician elects not to be compliant with the portions of HIPAA relating to the electronic submission of claims, CIGNA HealthCare shall not require such Physician to use electronic transactions or otherwise require such Physician to become compliant with HIPAA.  Instead, it will maintain reasonable non-electronic systems to serve the information needs of such Physicians.

g.      *Pharmacy Risk Pools.*

CIGNA HealthCare agrees that it will not utilize pharmacy risk pools except when expressly requested in writing to do so by a Class Member.

h.      *No Requirement to Purchase Stop-Loss Insurance.*

CIGNA HealthCare agrees that it shall not require Physicians to purchase stop-loss insurance from it.

i.      *Pharmacy Provisions.*

CIGNA HealthCare shall disclose to CIGNA HealthCare Members whether that Member's Plan uses a formulary and, if so, explain what a formulary is, how CIGNA HealthCare determines which prescription medications are included in the formulary, and how often CIGNA HealthCare reviews the formulary list; and CIGNA HealthCare shall provide CIGNA HealthCare Members with formulary lists upon request.  CIGNA HealthCare shall maintain the exception process that is in place on the date of Final Approval (as such process may be reasonably amended by CIGNA HealthCare) by which coverage for medications not included on the formulary may be requested.  CIGNA HealthCare will continue to provide coverage for off-label uses of pharmaceuticals that have been approved by the FDA (but not approved for the

77

prescribed use) provided that the drug is not contraindicated by the FDA for the off-label use prescribed, and the drug has been proven safe, effective and accepted for the treatment of the specific medical condition for which the drug has been prescribed, as evidenced by supporting documentation in any one of the following: (1) the American Hospital Formulary Service Drug Information or the United States Pharmacopeia Drug Information; or (2) results of controlled clinical studies published in at least two peer-reviewed national professional medical journals.

      j.    *Restrictive Endorsements.*

Where reimbursement for services is a partial payment of allowable charges, a Class Member may negotiate a check with a "Payment in Full" or other restrictive endorsement without waiving the right to pursue a remedy available under this Agreement.

      k.    *Physician Specialty Society Guidelines.*

Notwithstanding anything to the contrary in this Section 7, no claims adjudication policy or practice adhered to by CIGNA HealthCare shall be deemed to violate the terms of this Agreement to the extent such policy or practice is consistent with the then current billing or claims adjudication guidelines issued by a Physician Specialty Society.

      l.    *Scope of CIGNA HealthCare's Responsibilities.*

The obligations undertaken by CIGNA HealthCare under Section 7 of this Agreement shall be applicable only to those functions or activities performed directly by CIGNA HealthCare and its employees, or third parties (other than Delegated Entities) performing functions on CIGNA HealthCare's behalf.  To the extent it deems practical, CIGNA HealthCare shall endeavor to include in contracts entered into with Delegated Entities subsequent to Final Approval terms that are substantially equivalent to the terms of this Agreement; provided that CIGNA HealthCare shall not be liable hereunder in the event any Delegated Entity acts in a manner inconsistent with this Agreement.

    m.    *Provision of Contract Copies.*

CIGNA HealthCare will continue its practice of providing copies to Class Members of their contracts, along with all attachments, within thirty (30) days or as soon as practical, upon request of the Class Member.  In addition, subject to the permission of a Participating Physician Group or Physician Organization with which CIGNA HealthCare has a contract, CIGNA HealthCare will provide a copy of that contract to a Class Member participant in such Physician Group or Physician Organization upon request of the Class Member.  In its agreements with Physician Groups or Physician Organizations, CIGNA HealthCare will not require that a restriction on distribution of the Physician Group or Physician Organization agreement to a Physician in such Group or Organization be included.

    n.    *State and Federal Laws and Regulations.*

Nothing contained in Section 7 of this Agreement is intended to, or shall in any way waive, reduce, eliminate or supersede any Settling Party's obligation to comply with applicable provisions of relevant state and federal law and regulations and to the extent federal or state law or regulation imposes obligations greater than those set forth in this Agreement, CIGNA HealthCare shall comply with said law or regulation; and provided that nothing in this Section 7.29.n is intended to give rise to or should be construed as giving rise to any private right of action (other than through the Compliance Dispute procedure in Section 15) for any violation of any federal or state law (whether under a breach of contract theory or any other theory) where federal or state law does not allow a private right of action for such violation.

    o.    *Ability of CIGNA HealthCare to Modify Means of Disclosure.*

CIGNA HealthCare may alter the method or means by which it makes any disclosure or otherwise transmits information as described in, and required by, this Agreement, so long as CIGNA HealthCare reasonably believes, expects and intends that the newly-adopted means or method of disclosure or transmission is as effective or more effective than the means or method set forth in this Agreement.

     p.    *Participating Physician Status Dependent Upon Existence of Contracts; Limitations on Obligations of Non-Participating Physician.*

CIGNA HealthCare agrees that it will treat a Class Member as a Participating Physician only in those circumstances in which the Class Member is a party to a written contract with CIGNA HealthCare or with an intermediary with which CIGNA HealthCare has a written contract. CIGNA HealthCare further agrees that at least through the Termination Date, it will not rent its networks to any other managed care company or health insurer for the purpose of providing health care services or supplies to any person who is not a CIGNA HealthCare Member; provided that nothing in this sentence shall prevent CIGNA HealthCare from making its networks available among the various current and future Subsidiaries of CIGNA Corporation; and provided, further, that nothing in this sentence shall be held to apply to a situation in which a CIGNA HealthCare customer elects to make payments on claims in respect to provisions of health care services or supplies to a CIGNA HealthCare Member through a third party administrator or where CIGNA Behavioral Health provides mental health services for another health insurance company or other entity. No affirmative obligation that this Section 7 imposes on a Participating Physician shall apply to Non-Participating Physicians unless and until, and then only to the extent that, with regard to each individual claim, such Non-Participating Physician submits or transmits to CIGNA HealthCare a claim for payment which designates therein that the Non-Participating Physician has accepted an Assignment of the CIGNA HealthCare Member's benefits as payment for that individual claim.

     q.    *Effect of Assignment of Benefits.*

The existence of an Assignment of Benefits authorization, whether or not submitted by the Non-Participating Physician to CIGNA HealthCare, does not constitute in and of itself full or partial payment of the Non-Participating Physician's fee (unless so agreed between the Non-Participating Physician and the CIGNA HealthCare Member), does not create an implied contract between the Non-Participating Physician and CIGNA HealthCare, and does not limit the Non-Participating Physician's fee to any fee schedule. The Non-Participating Physician retains

the right to elect either to collect the Non-Participating Physician's full fee from the CIGNA HealthCare Member or collect partial payment from CIGNA HealthCare and the balance from the CIGNA HealthCare Member ("balance bill").

      r.    *Nondisparagement.*

When CIGNA HealthCare sends an Explanation of Benefits to a CIGNA HealthCare Member for whom health care services or supplies were provided by a Non-Participating Physician Class Member, it shall not indicate that the amount unpaid by CIGNA HealthCare cannot be balance billed. Consistent with the desire that CIGNA HealthCare Members receive accurate communications that do not disparage Physicians, and subject to the last section of this Section 7.29.r, each such EOB shall state "Physician may balance bill you," or contain language to substantially similar effect. CIGNA HealthCare shall not use any language in its correspondence with CIGNA HealthCare Members that disparages the services or charges of Non-Participating Physicians; provided, however, that (i) language that CIGNA HealthCare reasonably determines to be required by applicable law to be included in such correspondence shall not be deemed disparagement, and (ii) the citation by CIGNA HealthCare of language from applicable Plan provisions, reasonably determined by CIGNA HealthCare to be required by ERISA, state law, or federal or state regulation (including, without limitation, language stating that billings exceed reasonable and customary charges) shall not be deemed disparagement; and provided further that CIGNA HealthCare shall take such steps as are necessary as promptly as possible to eliminate the reference to "reasonable and customary charges" in Insured Plan Documents and to substitute therefor the words "claim exceeds maximum allowable amount" (or words to that effect), and shall encourage the sponsors of Self-Funded Plans to eliminate the reference to "reasonable and customary charges" in their Plan Documents and to substitute therefor the words "claim exceeds maximum allowable amount" (or words to that effect). It is understood that changes in Plan Documents will require state regulatory approval as well as changes in CIGNA HealthCare's customers' Plan Documents.

7.30    *Compliance With Applicable Law and Requirements of Government Contracts.*

The obligations undertaken in Section 7 herein shall be fulfilled by CIGNA HealthCare to the extent permissible under applicable laws and current or future government contracts.  If, and during such time as, CIGNA HealthCare is unable to fulfill its obligations under this Agreement to the extent contemplated by this Agreement because to do so would require state or federal regulatory approval or action, CIGNA HealthCare shall perform the obligation to the extent permissible by applicable law or by the terms of a government contract and shall continue to fulfill its other obligations under this Agreement, to the extent permitted by applicable law or by government contract.  To the extent that any state or federal regulatory approval is required for any Settling Party to implement any part of this Agreement, such Settling Party shall make all reasonable efforts to obtain any necessary approvals of state or federal regulators as needed for the implementation of this Agreement.  For any act required by Section 7 of this Agreement that cannot be undertaken without regulatory approval, the Effective Date as to that act shall be delayed until such approval is granted.

7.31    *Estimated Value of Section 7 Initiatives.*

Since the inception of this Litigation and through the Termination Date, CIGNA HealthCare will have spent over Four Hundred Million Dollars ($400,000,000) in order to carry out the initiatives described in Sections 7.1, 7.2, 7.3, 7.7, 7.23 and 7.24 of this Agreement. The Settling Parties estimate that, taking into account these expenditures by CIGNA HealthCare and other commitments with respect to CIGNA HealthCare's business practices set forth in Section 7, the approximate value of the initiatives in Section 7 is in excess of the amount stated above.

7.32    *Force Majeure.*

CIGNA HealthCare shall not be liable for any delay or non-performance of its obligations under this Agreement arising from any act of God, governmental act, act of terrorism, war, fire, flood, explosion or civil commotion.  The performance of CIGNA HealthCare's

obligations under this Agreement, to the extent affected by the delay, shall be suspended for the period during which the cause persists.

7.33   *Mental Health Provisions.*

The following provisions shall apply where CIGNA HealthCare is responsible for insuring or administering mental health services under a Plan.

a.   CIGNA HealthCare agrees that it will reimburse Physicians for appropriately coded Medically Necessary Covered Services for mental health care, including treatment for psychiatric illness and substance abuse, in the same manner in which it applies the definition of Medical Necessity to all clinical conditions, and in accordance with the definition of Medical Necessity set forth in Section 7.16 of this Agreement and subject to the terms of Plan Documents; provided that considering the appropriateness of any level of care, the following standards relevant to mental health care must be met:

(i)   A diagnosis as defined by standard diagnostic nomenclatures (DSM IV or its equivalent in ICD-9-CM) and an individualized treatment plan appropriate for the patient's illness or condition; and

(ii)   A reasonable expectation that the patient's illness, condition, or level of functioning will be stabilized, improved, or maintained through ambulatory care, through treatment known to be effective for the patient's illness; custodial care is not typically a Covered Service; and

(iii)   Is not primarily for the avoidance of incarceration of the patient;

(iv)   Is not primarily for convenience of the patient or his/her family or his/her treating Physician or other Physician.

b.   CIGNA HealthCare agrees that participating psychiatrists will be listed in CIGNA HealthCare's provider directory via a "hot link" or otherwise.  CIGNA HealthCare will allow its primary care Physicians to make direct referrals to CIGNA HealthCare's in-network psychiatrists, provided that any such referral is subject to the same precertification provisions as

83

for other Participating Physicians.  CIGNA Behavioral Health will permit Class Members to seek precertification electronically for routine outpatient care.

        c.     CIGNA HealthCare agrees that, where a Physician has not entered into a different agreement with CIGNA HealthCare, CIGNA Behavioral Health, or the hospital or other mental health care facility where the services are rendered, CIGNA HealthCare will reimburse the psychiatrist in accordance with his or her patient's Plan terms based on his or her appropriately billed charges.

        d.     CIGNA Behavioral Health adheres to state "prudent layperson" laws which require payment of benefits for medical or psychiatric services in the event of an emergency under prudent layperson standards.  An emergency department Physician can make a decision regarding admission or physical or chemical restraints.  In the event of an emergency, the Physician shall be reimbursed for Medically Necessary Covered Services resulting from the admission in accordance with prudent layperson standards and the definition of Medical Necessity in Section 7.16.

        e.     CIGNA Behavioral Health will post on its website (www.cignabehavioral.com) a record release form that Physicians may print or download to obtain patient consent for release of Clinical Information to CIGNA HealthCare or CIGNA Behavioral Health, if needed for processing of claims for payment.

## 8.    OTHER SETTLEMENT CONSIDERATION

In addition to the initiatives and other commitments set forth in Section 7 of this Agreement, the consideration supporting this Settlement shall include the establishment by CIGNA HealthCare of a Foundation, as described in more detail in Section 8.1, and two funds for payment of claims to Class Members, that will be established and operated in accordance with the provisions of Sections 8.2 and 8.3.

84

8.1    *Foundation.*

The Foundation shall mean the Foundation described in Exhibit 9.  No more than five (5) Business Days after Final Approval, CIGNA HealthCare shall create the fund for the Foundation by making a deposit in the amount of Fifteen Million Dollars ($15,000,000) by wire transfer into a separate interest bearing account with an escrow agent acceptable to both Notice Counsel and CIGNA HealthCare and held pursuant to an order of the Court.  In addition, any amounts directed to the Foundation or reverting to the Foundation from the Category A Settlement Fund or reverting from the Claim Distribution Fund shall be transferred through the Settlement Administrator to the Foundation.  Notice of this transfer to the Foundation shall be given to Notice Counsel and Defendants' Counsel.  The Settlement Administrator shall, on the one hundred fiftieth (150th) day following the date on which the last check was issued to a Class Member for payment of a Category A amount or an amount under the Claim Distribution Fund, transfer to the Foundation any portion remaining in the Category A Settlement Fund and such amount of the Claim Distribution Fund as, pursuant to Section 8.3.b, shall revert to the Foundation and shall notify Notice Counsel and Defendants' Counsel of the amounts thus transferred.  The Foundation's purposes and activities shall be subject to the supervision of the Court.

8.2    *Category A Settlement Fund.*

a.    *Establishment of the Category A Settlement Fund.*

No more than ninety (90) days after Final Approval, CIGNA HealthCare shall create the Category A Settlement Fund by making a deposit in the amount of Thirty Million Dollars ($30,000,000) by wire transfer into a separate interest bearing account with an escrow agent acceptable to both Notice Counsel and CIGNA HealthCare and held pursuant to an order of the Court.

b.       *Method of Distribution of the Category A Settlement Fund; Contributions to the Foundation.*

The Settlement Administrator shall determine the total number of Class Members filing Valid Proofs of Claim against the Category A Settlement Fund ("Category A Claims") for (i) retired and deceased Physicians and (ii) actively practicing Physicians. The number of retired and deceased Physicians will be doubled to reflect that each of them will receive double the amount to be received by actively practicing Physicians and added to the number of actively practicing Physicians, and the Settlement Administrator shall divide that number into Thirty Million Dollars ($30,000,000). The result shall be the amount to be distributed to each Class Member submitting a Category A Claim. Physician Groups and Physician Organizations shall be allowed to file claims on behalf of Physicians employed by or otherwise working with them at the time that the claims are made, without the necessity of individual signatures from the individual Physicians.

c.       *Distribution.*

Each Class Member desiring to file a Category A Claim may elect either to receive the payment from the Category A Settlement Fund or to direct that such amount be contributed to the Foundation or to a foundation established by any Signatory Medical Society on his, her or its behalf. Any Class Member filing a Category A Claim Form shall not be eligible to seek Category One Compensation, Category Two Compensation, or Medical Necessity Denial Compensation.

d.       *Encouragement to Contribute to Foundation.*

The Settling Parties and any Signatory Medical Societies shall make every reasonable effort to encourage Class Members to elect to contribute their portions of the Category A Settlement Fund to the Foundation or to a foundation established by a Signatory Medical Society.

86

e.     *Submission of Category A Settlement Fund Claim Forms and Payment.*

Each Class Member must submit a claim form (the "Category A Claim Form") to the Settlement Administrator using the Proof of Claim Form attached as Exhibit 10 hereto and in accordance with the instructions included in the Notice of Commencement of the Claim Period in order for such Class Member to have a valid right to receive payment from the Category A Settlement Fund.  Promptly after receipt of all timely Category A Claim Forms, the Settlement Administrator shall calculate the amount that is payable to, or on behalf of, each Class Member (or to the Foundation or to a foundation established by a Signatory Medical Society) pursuant to the provisions of Sections 8.2.b and 8.2.c of this Agreement.  Promptly upon completion by the Settlement Administrator of the calculations of the amounts that are payable, the Settlement Administrator shall cause the Category A Settlement Fund to issue payment to Class Members who or which submitted Valid Category A Claims in accordance with this Section 8.2 or to the Foundation or a foundation, as directed by such Class Members.

f.     *Payment to Foundation of Unclaimed Amounts.*

After all amounts have been paid to Class Members or to the Foundation or a foundation, at the direction of Class Members, in each case pursuant to Section 8.2.e of this Agreement, the Settlement Administrator shall determine the amount of funds remaining in the Category A Settlement Fund, including interest earned on such funds but excluding taxes owed.  The Settlement Administrator shall provide written notice of this amount to CIGNA HealthCare and Class Counsel and, no later than twenty (20) Business Days after providing such written notice, the Settlement Administrator shall cause the Settlement Fund to remit the amount to the Foundation by wire transfer.

87

8.3    *Claim Distribution Fund.*

    a.    *Establishment of Fund.*

CIGNA HealthCare shall create the Claim Distribution Fund to be held pursuant to an order of the Court by an escrow agent acceptable to both Notice Counsel and Defendants' Counsel for the purpose of paying Class Members' claims submitted pursuant to Sections 8.3.c and 8.3.d of this Agreement. Within forty-five (45) days of Final Approval, CIGNA HealthCare shall make an initial deposit of Two Million Five Hundred Thousand Dollars ($2,500,000) and shall replenish the Claim Distribution Fund as necessary to pay Valid Proofs of Claim. There shall be no limit on CIGNA HealthCare's responsibility to make replenishment deposits to the Claim Distribution Fund pursuant to this provision. The Claim Distribution Fund shall be deemed to be in *custodia legis* of the Court and shall remain subject to orders of the Court until such time as all funds are distributed to Class Members, or are paid to the Foundation, or revert to CIGNA HealthCare pursuant to the terms of this Agreement. No Class Member who or which files a Category A Settlement Fund Claim Form may make any claim against the Claim Distribution Fund.

    b.    *Minimum Amount and Reversion.*

If less than a total of Forty Million Dollars ($40,000,000) is paid under this Section 8.3, then CIGNA HealthCare will pay to the Foundation the difference between $40,000,000 and the amount paid under this Section 8.3; provided, however, that CIGNA HealthCare shall be entitled to deduct from this amount due to the Foundation the Administration Costs expended in administering the Claim Distribution Fund up to a limit of Seven Million Five Hundred Thousand Dollars ($7,500,000). Any amounts paid into the Claim Distribution Fund by CIGNA HealthCare not paid to Class Members or to the Foundation shall revert to CIGNA HealthCare without further order of the Court one hundred fifty (150) days after the date on which the last check was issued to a Class Member from the Claim Distribution Fund.

c.      *Relief Respecting Claim Coding and Bundling Edits.*

CIGNA HealthCare agrees to pay two categories of compensation to Class Members affected by Claim Coding and Bundling Edits: Category One Compensation and Category Two Compensation. Category One Compensation shall be available to Class Members based on the Claim Coding and Bundling Edits that qualify for Category One Compensation pursuant to Section 8.3.c(1) and the table attached hereto as Exhibit 1. To obtain Category One Compensation, a Class Member shall submit a Category One Compensation Proof of Claim to the Settlement Administrator. Category Two Compensation shall be available to Class Members affected by Claim Coding and Bundling Edits, other than in circumstances for which Category One Compensation is available, upon submission of a Category Two Compensation Proof of Claim in accordance with Section 8.3.c(2) of this Agreement. No compensation of any kind shall be available under this Section with respect to Resolved Claims.

(1)      *Category One Compensation.*

(a)      *In General.*

The Settlement Administrator shall make distributions from the Claim Distribution Fund to Class Members who submit Valid Proofs of Claim for Category One Compensation during the Claims Period. Category One Compensation shall be available under this Agreement only for those denials of payment for Category One Codes in the specific circumstances and within the date of service limitations (if any) set forth in Exhibit 1 hereto. Denials of Category One Codes resulting from the application of other payment and benefit limitations (*e.g.*, coordination of benefit rules, violations of preauthorization requirements, violations of referral requirements, limitations stemming from capitation or other risk-bearing agreements with the Class Member submitting the Proof of Claim or with other health care providers) shall not be eligible for Category One Compensation. The Category One Codes for which compensation will be paid under this Agreement, and the specific compensation that shall be paid by the Settlement Administrator on a Valid Proof of Claim for such Category One Codes, are set forth in the table

89

attached hereto as Exhibit 1.  Class Members seeking Category One Compensation must make a timely and proper application for payment by submitting a Proof of Claim Form according to the procedures described in Section 8.3.c(1)(c) of this Agreement.  There shall be no limit on CIGNA HealthCare's responsibility to make or fund payments under this provision to all Class Members who submit Valid Proofs of Claim for Category One Compensation.

(b)     *Timing of Category One Distributions.*

Subject to other provisions of this Agreement, the Settlement Administrator shall make payments from the Claim Distribution Fund on Category One Proofs of Claim within fourteen (14) days of the date that the Settlement Administrator judges such Proofs of Claim to be Valid Proofs of Claim.

(c)     *Form of Application; Time Period for Submission; Documentation Required.*

(i)     Class Members may submit Proofs of Claim for Category One Compensation to the Settlement Administrator using the Proof of Claim Form attached hereto as Exhibit 11.  A single Proof of Claim Form may be used to submit multiple requests for Category One Compensation under this Agreement, provided adequate documentation concerning each of the affected Fee for Service Claims is included.  Physician Groups and Physician Organizations may submit Proofs of Claim on behalf of Physicians employed by or otherwise working with them at the time that the claims are made, without the necessity of individual signatures from the individual Physicians; provided, however, the Class Member who or which submits the Proof of Claim Form must be the Physician, Physician Group or Physician Organization who or which originally submitted the claim and must use the same tax identification number as was used on the original claim when submitting the Proof of Claim. Any Proof of Claim Form originally postmarked more than one hundred eighty (180) days after commencement of the Claims Period shall not be a Valid Proof of Claim, and shall be denied by the Settlement Administrator.  The Settlement Administrator shall mail notification to all Class Members whose Proofs of Claim are denied as untimely under this Section 8.3.c(1)(c)(i).

          (ii)     Class Members submitting Proof of Claim Forms for Category One Compensation shall include documentation with each Proof of Claim evidencing that they were denied payment for one or more Category One Codes pursuant to the table attached as Exhibit 1 hereto under the circumstances and within the date of service limitations (if any) set forth in Exhibit 1 hereto. A copy of the relevant CIGNA HealthCare's Remittance Form showing that payment was denied by CIGNA HealthCare for one or more Category One Codes under the circumstances and within the date of service limitations (if any) set forth in Exhibit 1 hereto shall constitute adequate documentation unless the Settlement Administrator determines that the records are false or fraudulent. Alternatively, for those items not asterisked on Exhibit 1, a copy of the Class Member's HCFA 1500 form (now known as the CMS 1500) or other claim form showing that Category One Codes were originally submitted to CIGNA HealthCare for payment under the circumstances and within the date of service limitations (if any) set forth in Exhibit 1 hereto shall also be accepted by the Settlement Administrator as constituting adequate documentation, unless the Settlement Administrator determines that the records are false or fraudulent. If a Class Member making application for payment certifies, in accordance with Section 8.3.c(1)(g), that the CIGNA HealthCare Remittance Form and the HCFA 1500 or other claim form cannot be located and are not available for submission, the Class Member may submit copies of internal accounting records (such as a printout of accounts receivable records or paid account records) with the Proof of Claim Form. Those records shall be accepted by the Settlement Administrator as constituting adequate documentation if those records show, as to the underlying Fee for Service Claim and specific date of service concerned, that Category One Codes were originally submitted to CIGNA HealthCare for payment under the circumstances (*e.g.*, in the specific combination(s) set forth in Exhibit 1 hereto) and within the date of service limitations (if any) set forth in Exhibit 1 hereto), and payment was denied as submitted, unless the Settlement Administrator determines that the records are false or fraudulent.

(d)    *Claims Supported by Inadequate Documentation;*
       *Resubmission to Settlement Administrator.*

If, in the judgment of the Settlement Administrator, a Class Member's Proof of Claim

Form for Category One Compensation does not include adequate documentation under Section

8.3.c(1)(c), the Settlement Administrator shall notify the Class Member by mail that the Proof of

Claim has been rejected (with identification of the reasons therefor).  Said notice shall also state

that the Class Member has the right to resubmit the Proof of Claim Form within thirty (30) days

from the date the notice was mailed.  The Class Member may thereafter resubmit the Proof of

Claim Form in an effort to correct the deficiencies noted by the Settlement Administrator,

provided that the Class Member's resubmission must be postmarked no later than thirty (30)

days from the date on which the Settlement Administrator's notice of the deficiencies was mailed

to the Class Member.  If the Settlement Administrator still concludes that the Proof of Claim

Form does not contain adequate documentation, then the Class Member's Proof of Claim shall

not be deemed a Valid Proof of Claim, and no Category One Compensation shall be paid with

respect to that Fee for Service Claim.  The Settlement Administrator shall mail notification of

this final determination to the Class Member submitting the Proof of Claim.  If the Settlement

Administrator determines that a Class Member's Proof of Claim Form for Category One

Compensation is not a Valid Proof of Claim because the Class Member is seeking compensation

for CPT® Codes or HCPCS Level II Codes which were provided outside the circumstances

and/or date of service limitations specified in Exhibit 1 hereto, the notification of denial shall so

state and shall indicate that the Class Member has the right to submit a Category Two Proof of

Claim Form with regard to that Fee for Service Claim within thirty (30) days from the date the

notification of denial was mailed.

(e)    *Special Review Procedure for Certain Category One*
       *Compensation Requests.*

The Settlement Administrator shall provide copies to CIGNA HealthCare of all Proof of

Claim Forms for Category One Compensation which, as to any single Category One Code, seek

in excess of One Hundred Dollars ($100.00), within fourteen (14) days after receiving said Proof

92

of Claim Forms. Such a Proof of Claim shall not be accepted by the Settlement Administrator as a Valid Proof of Claim until thirty (30) days have elapsed from the date on which the Settlement Administrator provided a copy of that Proof of Claim Form to CIGNA HealthCare. Within the thirty (30) day notice period, CIGNA HealthCare shall have the right to provide the Settlement Administrator with a written objection to payment based on the Proof of Claim if CIGNA HealthCare's payment records indicate that the Fee for Service Claim to which the Proof of Claim relates has already been adjusted and fully paid on appeal or is a Resolved Claim, or that the Category One Codes in the Fee for Service Claim were denied for reasons other than the application of Claim Coding and Bundling Edits. CIGNA HealthCare shall include, with its written objection, copies of all payment records and/or litigation or settlement records or other records relied on for this purpose. Upon receipt of the written objection, the Settlement Administrator shall notify the Class Member by mail that the Category One Proof of Claim has been challenged by CIGNA HealthCare and the reasons therefor. The Settlement Administrator shall include, with the notification, copies of all documentation relied on by CIGNA HealthCare. Said notice shall also state that the Class Member has the right to submit additional documentation within thirty (30) days from the date the notice from the Settlement Administrator was mailed. The Class Member who submitted the Proof of Claim Form may, thereafter, submit additional information in order to rebut CIGNA HealthCare's objections concerning the Proof of Claim, provided that the Class Member's submission must be postmarked no later than thirty (30) days from the date of the Settlement Administrator's mailed notice regarding such Proof of Claim. The Settlement Administrator shall not accept any Proof of Claim that is the subject of an objection by CIGNA HealthCare pursuant to this Section as a Valid Proof of Claim if the Settlement Administrator determines that the Claim has already been adjusted and fully paid on appeal or is a Resolved Claim, or that the Claim to which the Proof of Claim relates was denied for reasons other than the application of Claim Coding and Bundling Edits. The Settlement Administrator shall determine whether the Class Member has submitted a Valid Proof of Claim

93

based upon the Class Member's Proof of Claim Form, the payment records provided by CIGNA HealthCare, and any supplemental materials submitted by the Class Member after receiving a copy of CIGNA HealthCare's notice of objection under this provision.  A Class Member whose Proof of Claim is denied after an objection by CIGNA HealthCare under this Section is entitled to notice of the denial and an opportunity for reconsideration in accordance with Section 8.3.c(1)(h).  A Class Member whose Proof of Claim is determined to be a Valid Proof of Claim after an objection by CIGNA HealthCare under this Section shall receive payment on the Proof of Claim in accordance with Section 8.3.c(1)(h).  If CIGNA HealthCare does not serve an objection within the time period permitted in this Agreement, the Settlement Administrator shall assume that the Fee for Service Claim has not been adjusted or fully paid on appeal and is not a Resolved Claim or a Fee for Service Claim denied for reasons other than the application of Claims Coding and Bundling Edits in determining whether the Proof of Claim shall be accepted as a Valid Proof of Claim.

        (f)     *Establishment of Controls by Settlement Administrator; Motion to Impose Additional Controls.*

The Settlement Administrator shall establish controls to ensure that payment of Category One Compensation is denied for Proof of Claim Forms that are duplicative of Proofs of Claim already submitted by Class Members and paid pursuant to this Agreement.  A Proof of Claim Form that is duplicative of a Proof of Claim submitted by the same Class Member earlier shall not be deemed a Valid Proof of Claim and shall be denied by the Settlement Administrator.  If, at any time, CIGNA HealthCare believes that the controls established by the Settlement Administrator to ensure against duplicative payments of Category One Compensation are inadequate, it shall have the right to move the Compliance Dispute Review Officer on an expedited basis for an order imposing additional controls.  Any such motion shall be served on Notice Counsel as well as on the Settlement Administrator.

(g)    *Certification Required by Class Members Making Category One Compensation Claims.*

No Proof of Claim for Category One Compensation may be accepted by the Settlement Administrator as a Valid Proof of Claim unless the Class Member signs the certification on the Proof of Claim Form indicating that: (i) the Category One Code(s) for which the Class Member is requesting payment describe services that were actually provided to a CIGNA HealthCare Member; (ii) the additional payment requested has not already been made by CIGNA HealthCare on resubmission of the Fee for Service Claim or on an appeal; and (iii) the Fee for Service Claim to which the Proof of Claim relates is not a Resolved Claim. If the Class Member billed the CIGNA HealthCare Member to whom services or supplies were provided for the amount not originally paid by CIGNA HealthCare, and if the CIGNA HealthCare Member reimbursed the Class Member for such amount, it is expected that the Class Member shall reimburse the CIGNA HealthCare Member with any amount paid pursuant to this Agreement. If a Class Member submits internal accounting records in support of a Category One Proof of Claim, the Class Member must also certify that the CIGNA HealthCare Remittance Form and the claim form originally submitted to CIGNA HealthCare cannot be located and are not available for submission.

(h)    *Timing of Settlement Administrator's Decisions; No Further Review of Decisions By Settlement Administrator; Requests for Reconsideration.*

The Settlement Administrator shall use its best efforts to determine the validity of Proofs of Claim for Category One Compensation within thirty (30) days of their submission by Class Members, and shall make payments to a Class Member within fourteen (14) days of determining that his, her or its Proof of Claim is a Valid Proof of Claim. If the Settlement Administrator denies a Proof of Claim for Category One Compensation, the Settlement Administrator shall notify the Class Member by mail that the Proof of Claim has been rejected (with identification of the reasons therefore). Said notice shall also state that the Class Member has the right to have the Proof of Claim reconsidered within thirty (30) days from the date the notice was mailed. Decisions by the Settlement Administrator regarding Fee for Service Claims for Category One

Compensation shall not be subject to External Review under this Agreement, and shall not be subject to review by the Court or by any other court or tribunal.  Notwithstanding this provision, a Class Member shall have the right to have an adverse decision by the Settlement Administrator reconsidered, provided the request for reconsideration is postmarked within thirty (30) days of the date on which the Settlement Administrator mailed notification of its original denial decision to the Class Member.  The Settlement Administrator's notices of rejection under this Section shall advise Class Members of this right of reconsideration.  Upon reconsideration, if the Settlement Administrator maintains its denial of the Proof of Claim, the Settlement Administrator shall notify the Class Member of the denial and of the reasons for rejection of the Proof of Claim.  An adverse decision by the Settlement Administrator upon reconsideration shall not be subject to further reconsideration by the Settlement Administrator or other form of review.

      (2)    *Category Two Compensation.*

      (a)    *In General.*

Except as provided below, upon the submission of timely and proper Proof of Claim Forms by affected Class Members, CIGNA HealthCare shall reconsider and, where appropriate or where they are directed to do so under this Agreement, make or fund additional payments to Class Members for denials of or reductions in payment resulting from the application of Claim Coding and Bundling Edits.  Category Two Compensation shall not be available on any Proof of Claim for which Category One Compensation is available, and Category One Compensation shall be the exclusive remedy in such circumstances.  However, Category Two Compensation shall be permissible, subject to the standards set forth in this Agreement, for any denials of Category One Codes that occurred outside the circumstances and/or date of service limitations (if any) identified on Exhibit 1.  Denials of or reductions in payment for such CPT® Codes or HCPCS Level II Codes resulting from the application of payment and benefit limitations other than Claim Coding and Bundling Edits (*e.g.*, coordination of benefit rules, violations of preauthorization requirements, violations of referral requirements, limitations stemming from

capitation or other risk-bearing agreements with the Class Member submitting the Proof of Claim or with other health care providers) shall not be eligible for Category Two Compensation. Class Members seeking Category Two Compensation must make a timely and proper application for payment by submitting a Proof of Claim Form according to the procedures described in Section 8.3.c(2)(d) of this Agreement. There shall be no limit on CIGNA HealthCare's responsibility to make or fund payments under this provision to all Class Members who submit Valid Proofs of Claim for Category Two Compensation.

(b)   <em>Computation of Payment Amounts.</em>

For Category Two Proofs of Claim deemed Valid Proofs of Claim relating to services or supplies delivered to CIGNA HealthCare Members less than one year before the commencement of the Claims Period, payment shall be made directly by CIGNA HealthCare at the CIGNA HealthCare Member's benefit amount (<em>i.e.,</em> the applicable fee schedule amount or reasonable and customary charge less the CIGNA HealthCare Member's required coinsurance payments, copayments, and deductible contributions, if applicable), and the Class Member shall be free to collect any applicable coinsurance payments, copayments, and deductible contributions directly from the CIGNA HealthCare Member to whom the services were provided. For Category Two Proofs of Claim deemed Valid Proofs of Claim relating to services or supplies delivered to CIGNA HealthCare Members more than one year before the commencement of the Claims Period, payment shall be made from the Claim Distribution Fund by the Settlement Administrator on the basis of the National Medicare Fee Schedule, without any deductions for the CIGNA HealthCare Member's coinsurance payments, copayments, and deductible contributions, and Class Members shall be prohibited from seeking further compensation from the CIGNA HealthCare Member or the CIGNA HealthCare Member's employer or employer plan on that Fee for Service Claim. With respect to the latter Proofs of Claim, where CIGNA HealthCare based its payment on a CPT® Code or HCPCS Level II Code other than the code(s) submitted by the Class Member, the Class Member's payment under this Agreement shall be the

difference between the fee assigned to the paid code(s) according to the National Medicare Fee Schedule and the fee assigned to the submitted code(s) according to the National Medicare Fee Schedule.

(c)     *Facilitation List for Category Two Compensation.*

In order to assist Class Members (i) in identifying Fee for Service Claims as to which CIGNA HealthCare denied payment for CPT® Codes 99201-99499 (CPT® Evaluation and Management Codes) due to the application of Claim Coding and Bundling Edits; (ii) in identifying Fee for Service Claims in which CIGNA HealthCare made payment on the basis of code 90769 (CIGNA HealthCare's so-called "well woman" benefit code); (iii) in identifying Fee for Service Claims in which Evaluation and Management Codes were billed with a procedure code and either code was denied payment; and (iv) in identifying Fee for Service Claims in which Evaluation and Management Codes were billed with add-on codes and either code was denied payment, CIGNA HealthCare shall use its best efforts to create an electronic Facilitation List. Depending on the nature of the Fee for Service Claim involved, the Facilitation List may be limited as to the time period covered, claims platform or platforms from which payment was made or level of detail that can be provided. Subject to the foregoing, CIGNA HealthCare shall make the Facilitation List available to the Settlement Administrator within fourteen (14) days following Final Approval. The Settlement Administrator shall, within fourteen (14) days of the request of any Class Member, provide that Class Member with a printout or download of that portion of the Facilitation List, if any, pertaining to such Class Member's Fee for Service Claims for use in identifying candidate Fee for Service Claims for Category Two Compensation. The Settling Parties understand and agree that CIGNA HealthCare's obligation under this provision is limited to the use of its best efforts. CIGNA HealthCare shall not be required to warrant, and does not warrant, the completeness of the Facilitation List provided to the Settlement Administrator under this provision. The absence of any code from the Facilitation List shall not excuse any Class Member's noncompliance with the claims procedures in this Agreement or

98

afford any Class Member any right of action. Moreover, Class Members are not limited to the Facilitation List compiled by CIGNA HealthCare and are permitted to submit Proof of Claim Forms with respect to Fee for Service Claims that are not reflected in the Facilitation List generated by CIGNA HealthCare under this provision. The Settling Parties understand and agree that the Facilitation List created by CIGNA HealthCare under this provision will contain patient-identifiable medical privacy data; therefore, the Settlement Administrator is authorized to take, and shall take, whatever steps it deems necessary (including, but not limited to, requiring tax identification numbers, social security numbers or requiring other detailed identification from Class Members seeking a printout or download from the Facilitation List) in order to protect patient-identifiable medical privacy data from being made available to unauthorized recipients, including whatever steps are necessary to comply with all applicable laws and regulations.

        (d)    *Form of Application; Time Period for Submission; Documentation Required.*

        (i)    Class Members may submit Proofs of Claim for Category Two Compensation to the Settlement Administrator using the Proof of Claim Form attached hereto as Exhibit 12. A single Proof of Claim Form may be used to submit multiple requests for Category Two Compensation under this Agreement, provided adequate documentation concerning each of the affected Fee for Service Claims is included. Physician Groups and Physician Organizations may submit Proofs of Claim on behalf of Physicians employed by or otherwise working with them at the time that the claims are made, without the necessity of individual signatures from the individual Physicians; provided, however, the Class Member who or which submits the Proof of Claim Form must be the Physician, Physician Group or Physician Organization who or which originally submitted the claim and must use the same tax identification number as was used on the original claim when submitting the Proof of Claim. Any Proof of Claim Form originally postmarked more than one hundred eighty (180) days after the commencement of the Claims Period shall not be a Valid Proof of Claim and shall be denied

by the Settlement Administrator.  The Settlement Administrator shall send notification by mail to all Class Members whose Proofs of Claim are denied as untimely under this paragraph.

                  (ii)     Except for those Proof of Claim Forms subject to Sections 8.3.c(2)(d)(iii) and 8.3.c(2)(d)(iv), Class Members submitting Proof of Claim Forms for Category Two Compensation shall include with each Proof of Claim Form: (a) documentation evidencing that, with respect to the underlying Fee for Service Claim concerned, (i) they were denied payment, in whole or in part; (ii) they received reduced payment, including payment for a different billing code than the one(s) billed, for one or more CPT® Code(s) or HCPCS Level II Code(s); or (iii) they received a reduced payment based upon the application of Multiple Procedure Logic; and (b) a complete copy of the Clinical Information generated in connection with the Class Members' services on the specific date of service concerned.  A copy of the relevant CIGNA HealthCare Remittance Form showing that payment was denied on the CPT® Codes or HCPCS Level II Codes in question, in whole or in part, shall constitute adequate documentation for purposes of requirement (a) above unless the Settlement Administrator determines that the records are false or fraudulent.  In the event that the Class Member cannot locate the CIGNA HealthCare Remittance Form applicable to a given Fee for Service Claim, the Class Member may submit copies of internal accounting records (such as printouts of accounts receivable records or paid account records) provided those records show, as to the underlying Fee for Service Claim and specific date of service concerned, all CPT® Codes or HCPCS Level II Codes which were submitted to CIGNA HealthCare for payment and those that remain unpaid, in whole or in part.  If the Class Member's internal accounting records do not show all CPT® Codes or HCPCS Level II Codes which were submitted to CIGNA HealthCare for payment on the Fee for Service Claim in question, then the Class Member may supplement the internal accounting records with additional documentation for that Fee for Service Claim, such as the HCFA 1500 form (now known as CMS 1500).

                  (iii)    A Class Member shall not be required to include

Clinical Information with the documentation accompanying his, her or its Proof of Claim Forms if the Class Member is seeking reimbursement based on the contention that CIGNA HealthCare (a) failed to recognize modifiers 50, RT, LT, FA-F9, or TA-T9, and thus denied payment for one or more CPT® Codes as duplicative of other CPT® Codes reported; and/or (b) a HCPCS Level II "J" Code was translated into an incorrect or overbroad CPT® Code and, based on that incorrect translation, denied. However, for these Fee for Service Claims, the Class Member shall be required to submit a copy of the HCFA 1500 or other claim form used to submit the original Fee for Service Claim to CIGNA HealthCare showing the precise manner in which all services or supplies included in the Fee for Service Claim were originally billed to CIGNA HealthCare. Additionally, the Class Member must submit documentation showing that payment was denied, in whole or in part, for the CPT® Codes or HCPCS Level II Codes concerned.  Such documentation may include a copy of the relevant CIGNA HealthCare Remittance Form or the Class Member's internal accounting records.  If the Class Member is unable to show, through the above documentation, how the services or supplies were originally billed to CIGNA HealthCare (inclusive of the modifiers submitted with each CPT® Code or HCPCS Level II Code billed), then the Class Member may not submit the Proof of Claim under these special documentation exceptions, but instead shall be required to submit the Proof of Claim with the documentation required by Section 8.3.c(2)(d)(ii).

(iv)     A Class Member shall not be required to include Clinical Information with the documentation accompanying his, her or its Proof of Claim Form when the Class Member is seeking reimbursement based on the contention that CIGNA HealthCare incorrectly processed one or more modifier 51 exempt CPT® Codes and/or add-on CPT® Codes using Multiple Procedure Logic when those codes were exempt from multiple procedure reduction.  However, for these Fee for Service Claims, the Class Member shall be required to submit a copy of the documentation showing that payment was denied, in whole or in part, for the CPT® Codes concerned.  Such documentation may include a copy of the relevant

CIGNA HealthCare Remittance Form or the Class Member's internal accounting records. CIGNA HealthCare agrees to use reasonable efforts to determine whether it can compile a list of those modifier 51 exempt codes and add-on codes for which CIGNA HealthCare may have systematically applied Multiple Procedure Logic during the Class Period. To the extent such a list can be compiled, CIGNA HealthCare shall compile this list and make it available to the Settlement Administrator, with a copy to Notice Counsel. The Settlement Administrator shall make the list available to a Class Member within fourteen (14) days of a request for same.

(e)   <em>Adequacy of Documentation.</em>

The Settlement Administrator shall use its best efforts to determine the adequacy of the documentation accompanying Proof of Claim Forms for Category Two Compensation within fourteen (14) days of the date of submission by the Class Member. If the Settlement Administrator determines that a Class Member's Proof of Claim Form for Category Two Compensation does not include adequate documentation, the Settlement Administrator shall notify the Class Member by mail that the Proof of Claim has been rejected (with identification of the reasons therefor). Said notice shall also state that the Class Member has the right to resubmit the Proof of Claim Form within thirty (30) days from the date the notice was mailed. The Class Member may thereafter resubmit the Proof of Claim Form in an effort to correct the deficiencies noted by the Settlement Administrator, provided that the Class Member's resubmission must be postmarked no later than thirty (30) days from the date on which the Settlement Administrator's notice of the deficiencies was mailed to the Class Member. If the Settlement Administrator still concludes that the Proof of Claim Form does not contain adequate documentation, then the Class Member's Proof of Claim shall not be a Valid Proof of Claim, and no Category Two Compensation shall be paid with respect to that Fee for Service Claim. The Settlement Administrator shall provide mailed notification of this determination, including the reasons therefor, to the Class Member submitting the Proof of Claim.

102

    (f)    *Certification Required by Class Members Making Category Two Compensation Claims.*

No Proof of Claim Form for Category Two Compensation shall be accepted by the Settlement Administrator for processing unless the Proof of Claim Form includes a certification by the submitting Class Member that: (i) the CPT® Code(s) or HCPCS Level II Code(s) for which the Class Member is requesting payment (or additional payment) describe services or supplies that were actually provided to a CIGNA HealthCare Member; (ii) the additional payment requested has not already been made by CIGNA HealthCare on resubmission of the Fee for Service Claim or on an appeal; and (iii) the Fee for Service Claim to which the Proof of Claim relates is not a Resolved Claim. If the Class Member billed the CIGNA HealthCare Member to whom services or supplies were provided for the amount not originally paid by CIGNA HealthCare, and if the CIGNA HealthCare Member reimbursed the Class Member for such amount, it is expected that the Class Member shall reimburse the CIGNA HealthCare Member with any amount paid pursuant to this Agreement. If a Class Member submits internal accounting records in support of a Category Two Proof of Claim, the Class Member must also certify that the CIGNA HealthCare Remittance Form and the claim form originally submitted to CIGNA HealthCare cannot be located and are not available for submission.

    (g)    *Submission to CIGNA HealthCare for Processing; Payment.*

Upon determining that a Class Member has made a timely Proof of Claim for Category Two Compensation, that the Proof of Claim Form contains all required information and documentation, and has been properly certified by the Class Member, the Settlement Administrator shall forward the Proof of Claim Form, within fourteen (14) days, to CIGNA HealthCare for processing. CIGNA HealthCare shall have thirty (30) days from the date that the Settlement Administrator transmits a Proof of Claim Form to CIGNA HealthCare to make a determination whether to approve or deny, in whole or in part, the Proof of Claim and to notify the Settlement Administrator of that determination.

103

        (i)     *Approval of Category Two Claim by CIGNA HealthCare.*

In the event CIGNA HealthCare decides to approve a Category Two Proof of Claim relating to services or supplies delivered to CIGNA HealthCare Members less than one year before the commencement of the Claims Period, the Proof of Claim shall be deemed a Valid Proof of Claim and CIGNA HealthCare shall mail the additional payment required by Section 8.3.c(2)(b) to the Class Member within thirty (30) days of notifying the Settlement Administrator of its determination.  In the event that CIGNA HealthCare decides to approve a Category Two Proof of Claim relating to services or supplies delivered to CIGNA HealthCare Members more than a year before the commencement of the Claims Period, the Proof of Claim shall be deemed a Valid Proof of Claim and the Settlement Administrator shall mail the additional payment required by Section 8.3.c(2)(b) within fourteen (14) days of receiving notice of CIGNA HealthCare's determination.

        (ii)     *Denial of Category Two Claim by CIGNA HealthCare.*

In the event CIGNA HealthCare decides to deny a Category Two Proof of Claim, it shall mail notification of that decision (with identification of the reasons therefor) to the Class Member at the same time it notifies the Settlement Administrator of the denial.  Said notice shall state that the Class Member's Proof of Claim will automatically be forwarded for External Review.  Where CIGNA HealthCare's denial is based on its judgment that the services or supplies denoted by the denied CPT® Codes or HCPCS Level II Codes were included in the CPT® Codes or HCPCS Level II Codes for which CIGNA HealthCare already made payment, or otherwise should not have been reported and paid separately according to reasonable and customary practice in the medical community, the Settlement Administrator shall automatically forward the denied Proof of Claim to the Independent Review Entity for External Review. Where CIGNA HealthCare's denial is based on any other determination (*e.g.*, that the Fee for Service Claim to which the Proof of Claim relates is a Resolved Claim, that the individual to

whom the services or supplies were provided was not a CIGNA HealthCare Member at the time, etc.), the denied Proof of Claim shall be subject to automatic External Review by the Settlement Administrator.

(iii) *Category Two Claims Deemed Approved by CIGNA HealthCare.*

In the event CIGNA HealthCare does not provide notice to the Settlement Administrator of its determination with respect to a Class Member's Category Two Proof of Claim within thirty (30) days of transmission of such Proof of Claim to CIGNA HealthCare by the Settlement Administrator, the Settlement Administrator shall deem the Proof of Claim approved by CIGNA HealthCare such that it is a Valid Proof of Claim. The Settlement Administrator shall notify CIGNA HealthCare of its failure to act by mailing notice of the deemed approval to CIGNA HealthCare. Within fourteen (14) days of the deemed approval, payment shall be made to the Class Member pursuant to the terms set forth in Section 8.3.c(2)(b).

(h) *Procedure for External Review.*

(i) *Assembly of Review File.*

Upon denial of a Proof of Claim Form for Category Two Compensation, CIGNA HealthCare shall assemble documentation related to the Class Member's denied Proof of Claim (the "Review File"). CIGNA HealthCare shall forward the Review File to the Settlement Administrator within thirty (30) days of CIGNA HealthCare's denial. The Review File assembled shall consist, at minimum, of (i) copies of all records documenting prior CIGNA HealthCare payments on the Fee for Service Claim(s) for which the Class Member submitted a Proof of Claim; (ii) copies of all other documents prepared or obtained by CIGNA HealthCare in its initial review of the Proof of Claim Form; and (iii) if the Fee for Service Claim relates to services or supplies provided to a CIGNA HealthCare Member within the twelve (12) months preceding the date of commencement of the Claims Period, a computation of the CIGNA HealthCare Member's co-insurance and deductible responsibility, and how that CIGNA HealthCare Member responsibility would affect the Class Member's payment were the Proof of

105

Claim approved as a Valid Proof of Claim. Upon receiving the Review File, the Settlement Administrator shall mail a copy of the same to the Class Member submitting the Proof of Claim and, where appropriate, the Settlement Administrator shall immediately transmit the Review File to the Independent Review Entity.

(ii)     *Effect of CIGNA HealthCare's Failure to Assemble Review File.*

If CIGNA HealthCare fails to assemble and forward to the Settlement Administrator the Review File for a denied Proof of Claim within the time limits specified in this Agreement, the denied Proof of Claim shall be deemed approved and shall constitute a Valid Proof of Claim. The Settlement Administrator shall notify CIGNA HealthCare of its failure to act by mailing notice of the deemed approval to CIGNA HealthCare. Within fourteen (14) days of the deemed approval, payment shall be made to the Class Member pursuant to the terms set forth in Section 8.3.c(2)(b) .

(iii)     *Timing of Determinations.*

The Settlement Administrator or the Independent Review Entity, as appropriate, shall use its best efforts to complete External Review as to a Proof of Claim within thirty (30) days of receiving the Review File as to such Proof of Claim.

(iv)     *Adjudication Standards for the Independent Review Entity.*

The Settlement Administrator shall automatically forward the Proof of Claim and Review File to the Independent Review Entity for all denials based upon Claim Coding and Bundling Edits.

    (A)    *Proof of Claim Forms Respecting Alleged*
                  *Non-Recognition of Certain Modifiers.*

A Class Member requesting review of CIGNA HealthCare's denial of a Proof of Claim regarding a Fee for Service Claim in which the Class Member asserts that CIGNA HealthCare failed to recognize modifier(s) 50, RT, LT, FA-F9, and TA-T9 and thus denied payment for one or more CPT® Codes shall be entitled to payment for such denied codes when, in the judgment of the Independent Review Entity, the Fee for Service Claim and/or Review File establish that (a) the CPT® Code(s) for which payment was denied were, at the time the services were delivered by the Class Member, appropriately performed and reported; (b) the Class Member originally submitted the Fee for Service Claim to CIGNA HealthCare with modifier 50, RT, LT, FA-F9, or TA-T9 appropriately appended to the denied CPT® Code(s); and (c) CIGNA HealthCare did not make payment on the denied CPT® Code(s) when the Class Member originally submitted the Fee for Service Claim, and has not, on resubmission of the Fee for Service Claim or on appeal, made appropriate payment on the CPT® Code(s) at issue.

    (B)    *Proofs of Claim Alleging Inappropriate*
                  *Application of Multiple Procedure Logic.*

A Class Member requesting review of CIGNA HealthCare's denial of a Proof of Claim in which the Class Member asserts that CIGNA HealthCare inappropriately applied Multiple Procedure Logic to so-called modifier 51 exempt CPT® Codes and add-on CPT® Codes shall be entitled to an additional payment when, in the judgment of the Independent Review Entity, the Proof of Claim and/or Review File establish that (a) the CPT® Code(s) for which payment was reduced were, at the time the services were delivered by the Class Member, listed as exempt from modifier 51 or as add-on codes in CPT®; (b) CIGNA HealthCare made a reduced payment on such CPT® Code(s) through the application of Multiple Procedure Logic when it processed the Class Member's Fee for Service Claim originally; and (c) CIGNA HealthCare has not made additional payments on resubmission of the Fee for Service Claim or on appeal bringing the total amount paid on such CPT® Code(s) to the full fee schedule or benefit amount since the Fee for Service Claim was originally processed.

107

       (C)    *Proofs of Claim Alleging Misinterpretation of HCPCS Level II J-Codes.*

A Class Member requesting review of CIGNA HealthCare's denial of a Proof of Claim in which the Class Member asserts that CIGNA HealthCare misclassified HCPCS Level II J-codes and therefore denied payment on such codes shall be entitled to payment for such denied codes when, in the judgment of the Independent Review Entity, the Proof of Claim and/or Review File establish that (a) the Fee for Service Claim originally submitted by the Class Member identified the specific HCPCS Level II J-code(s) for which the Class Member seeks Category Two Compensation; (b) CIGNA HealthCare made no payment on such HCPCS Level II J-code(s) when it processed the Class Member's Fee for Service Claim originally; and (c) CIGNA HealthCare has not, on resubmission of the Fee for Service Claim or on appeal, made appropriate payment on the HCPCS Level II J-codes at issue.

       (D)    *Claims Alleging Non-Payment of Separately Identifiable Services or Supplies.*

A Class Member shall be entitled to payment on a Proof of Claim regarding a Fee for Service Claim in which the Class Member asserts that CPT® Codes or HCPCS Level II Codes were billed to CIGNA HealthCare for services or supplies provided to a CIGNA HealthCare Member, that CIGNA HealthCare denied or reduced payment for such codes (including payment for a different billing code than the one(s) billed), and that such codes described services or supplies that were separately identifiable from services or supplies represented by CPT® Codes or HCPCS Level II Codes for which CIGNA HealthCare already provided reimbursement when, in the judgment of the Independent Review Entity, the Proof of Claim and/or Review File establish that (a) the Fee for Service Claim when originally submitted by the Class Member identified the specific CPT® Code(s) or HCPCS Level II Code(s) for which the Class Member seeks Category Two Compensation; (b) the CPT® Code(s) or HCPCS Level II Code(s) for which payment was denied and/or reduced described services or supplies that, at the time the services or supplies were delivered by the Class Member, were not, according to reasonable and

customary practice in the medical community, included in the services or supplies denoted by CPT® Code(s) or HCPCS Level II Code(s) for which payment was already made by CIGNA HealthCare; (c) CIGNA HealthCare made no payment or reduced payment on such CPT® Code(s) or HCPCS Level II Code(s) when it processed the Class Member's Fee for Service Claim originally; and (d) CIGNA HealthCare has not, on resubmission of the Fee for Service Claim or on appeal, made appropriate payment on the CPT® Code(s) or HCPCS Level II Code(s) at issue.  For purposes of this section, any CPT® Code(s) or HCPCS Level II Code(s) that were, under the Correct Coding Initiative published and in effect at the time the services or supplies were provided by the Class Member, deemed not payable when billed in conjunction with the CPT® Code(s) for which CIGNA HealthCare already made payment to the Class Member, shall be deemed by the Independent Review Entity to fail to qualify for additional payment under this section, and the Class Member's Proof of Claim for Category Two Compensation shall be denied; provided, however, that if the specific edit included in the Correct Coding Initiative at the time the services or supplies were provided was removed from the Correct Coding Initiative within one year of the date of service, then the Independent Review Entity shall not consider that Correct Coding Initiative edit in adjudicating the Proof of Claim. Proofs of Claim for Category Two Compensation in which the Class Member seeks payment for a denied CPT® Evaluation and Management Code shall not be denied on the basis that the Class Member failed to submit the denied CPT® Evaluation and Management Code with a modifier.

(E)     *External Review by Settlement Administrator.*

All Category Two Compensation Proofs of Claim denied for reasons other than Claim Coding and Bundling Edits shall be subject to External Review by the Settlement Administrator. When a Proof of Claim for Category Two Compensation that has been denied by CIGNA HealthCare on the ground that the Fee for Service Claim to which the Proof of Claim Form relates is a Resolved Claim is presented to the Settlement Administrator for External Review, the Settlement Administrator shall determine whether the Proof of Claim and Review File establish

this ground for denial. A Class Member shall be entitled to payment on the Proof of Claim if the Settlement Administrator determines that the Fee for Service Claim to which the Proof of Claim relates is not a Resolved Claim. When a Proof of Claim for Category Two Compensation that has been denied by CIGNA HealthCare on any other ground is presented to the Settlement Administrator for External Review, the Settlement Administrator's sole undertaking shall be to determine, based on the Proof of Claim and Review File, whether CIGNA HealthCare's denial of the Fee for Service Claim to which the Proof of Claim relates was based on Medical Necessity grounds or experimental or investigational grounds or the result of the application of a Claim Coding and Bundling Edit. If the Settlement Administrator determines that CIGNA HealthCare's denial of the Claim to which the Proof of Claim relates was based on Medical Necessity grounds or experimental or investigational grounds or the result of the application of a Claim Coding and Bundling Edit, the Settlement Administrator shall forward the Proof of Claim and Review File to the Independent Review Entity, which shall thereupon conduct External Review as if the Proof of Claim had been presented to the Independent Review Entity originally. If the Settlement Administrator determines that CIGNA HealthCare's denial of the Fee for Service Claim to which the Proof of Claim relates was based on grounds other than Medical Necessity grounds or experimental or investigational grounds or a Claim Coding and Bundling Edit, the Proof of Claim shall be denied. The Settlement Administrator's denial of the Proof of Claim in these circumstances shall be without prejudice to the Class Member's rights, if any, to seek further payment on the Fee for Service Claim under the CIGNA HealthCare Member's Plan Documents.

(F)     *Computation of Payment Amounts; Payment Procedure.*

If the Settlement Administrator decides on External Review that a Proof of Claim denied by CIGNA HealthCare is a Valid Proof of Claim, it shall so notify CIGNA HealthCare by mail and payment shall be made to the Class Member at the amount and in the manner required by Section 8.3.c(2)(b) within fourteen (14) days thereafter. If the Independent Review Entity

110

decides on External Review that a Proof of Claim denied by CIGNA HealthCare is a Valid Proof of Claim, it shall so notify the Settlement Administrator and CIGNA HealthCare by mail, and payment shall be made to the Class Member at the amount and in the manner required by Section 8.3.c(2)(b) within fourteen (14) days thereafter.

      (G)    *Finality of Decisions by Settlement Administrator and Independent Review Entity.*

When Proofs of Claim are denied on External Review, the Settlement Administrator shall notify the Class Members submitting such Proof of Claim by mail of the denials and of the reasons therefor.  Decisions of the Settlement Administrator or Independent Review Entity, as appropriate, shall be final and not subject to review by the Court or any other court or tribunal. Neither the Settlement Administrator nor the Independent Review Entity shall entertain any requests for reconsideration of their decisions regarding Proofs of Claim for Category Two Compensation.

      d.    *Compensation for Erroneous Denials of Claims on Medical Necessity Grounds.*

      (1)    *In General.*

Upon the submission of timely and proper Proof of Claim Forms by affected Class Members, CIGNA HealthCare shall reconsider and, where appropriate or where it is directed to do so under this Agreement, make or fund additional payments to Class Members for Claims that were submitted to CIGNA HealthCare and denied, in whole or in part, on the grounds that the services or supplies delivered to the CIGNA HealthCare Members concerned were determined by CIGNA HealthCare to be either experimental or investigational or not Medically Necessary. (For purposes of this Section 8.3.d, "experimental or investigational" means services or supplies that, at the time they were delivered to a CIGNA HealthCare member were (a) neither approved by the U.S. Food and Drug Administration ("FDA") to be lawfully marketed for the use to which they were put nor recognized for the treatment of the particular indication involved in one of the

standard reference compendia (the United States Pharmacopoeia Drug Information or the American Hospital Formulary Service Drug Information) or in scientific studies published in peer-reviewed national professional medical journals; or (b) under review for the use to which they were put by an Institutional Review Board or similar entity at the licensed and accredited inpatient facility at which such services or supplies were or were intended to be delivered; or (c) the subject of an ongoing clinical trial that meets the definition of a Phase I, Phase II or Phase III Clinical Trial as set forth in FDA regulations, regardless of whether the trial is subject to FDA oversight; or (d) not demonstrated, through then-existing peer-reviewed literature, to be safe and effective for treating or diagnosing the condition or illness for which they were used). In particular, except as provided below, CIGNA HealthCare shall make or fund additional payments to Class Members for Claims denied, in whole or in part, on Medical Necessity grounds or experimental or investigational grounds where (a) the Class Member's Clinical Information and/or the Class Member's notes of the patient's history and physical examination demonstrate to CIGNA HealthCare or the Independent Review Entity that services or supplies provided to a CIGNA HealthCare Member were, at the time the services or supplies were provided, Medically Necessary. Medical Necessity Denial Compensation shall be available under this Agreement only for those denials of payment for services or supplies represented by CPT® Codes or HCPCS Level II Codes based on CIGNA HealthCare's judgment that the services or supplies were not Medically Necessary or were experimental or investigational. Denials of such CPT® Codes or HCPCS Level II Codes resulting from the application of other payment and benefit limitations (e.g., coordination of benefit rules, violations of preauthorization requirements, violations of referral requirements, limitations stemming from capitation or other risk-bearing agreements with the Class Member submitting the Proof of Claim or with other health care providers) shall not be eligible for Medical Necessity Denial Compensation. In addition, no Medical Necessity Denial Compensation shall be available where the services or supplies were excluded from coverage (other than under a general exclusion for cosmetic

112

services or supplies) under the CIGNA HealthCare Member's Plan Documents.  Class Members seeking Medical Necessity Denial Compensation must make a timely and proper application for payment by submitting a Proof of Claim Form according to the procedures described in Section 8.3.d(3) of this Agreement.  To assist Class Members in determining what types of Clinical Information to include with their Medical Necessity Denial Proofs of Claim, no later than fourteen (14) days after Final Approval, CIGNA HealthCare shall provide the Settlement Administrator and Class Counsel with information about the types of Clinical Information, by billing code, CIGNA HealthCare has traditionally required to be submitted for review in order to make Medical Necessity determinations.  This information shall be made available to a Class Member by the Settlement Administrator within fourteen (14) days of the Class Member's request for same.  There shall be no limit on CIGNA HealthCare's responsibility to make or fund payments to Class Members who submit a Valid Proof of Claim for Medical Necessity Denial Compensation.  No compensation of any kind shall be available under this Section with respect to Resolved Claims.

(2)     *Computation of Payment Amounts.*

For Medical Necessity Denial Proofs of Claim deemed Valid Proofs of Claim and relating to services or supplies delivered to CIGNA HealthCare Members less than one year before the commencement of the Claims Period, payment shall be made directly by CIGNA HealthCare at the CIGNA HealthCare Member's benefit amount (*i.e.,* the applicable fee schedule amount or reasonable and customary charge less the CIGNA HealthCare Member's required coinsurance payments, copayments, and deductible contributions, if applicable), and the Class Member shall be free to collect any applicable coinsurance payments, copayments, and deductible contributions directly from the CIGNA HealthCare Member to whom the services were provided.  For all other Medical Necessity Denial Proofs of Claim deemed Valid Proofs of Claim, payment shall be made from the Claim Distribution Fund by the Settlement Administrator on the basis of the National Medicare Fee Schedule, without any deductions for the CIGNA

113

HealthCare Member's coinsurance payments, copayments, and deductible contributions, and Class Members shall be prohibited from seeking further compensation from the CIGNA HealthCare Member on that Fee for Service Claim.

> (3)     *Form of Application; Time Period for Submission; Documentation Required.*

> (a)     Class Members may submit Proofs of Claim for

Medical Necessity Denial Compensation to the Settlement Administrator using the Proof of Claim Form attached hereto as Exhibit 13. A single Proof of Claim Form may be used to seek multiple requests for Medical Necessity Denial Compensation under this Agreement provided adequate documentation concerning each of the affected Fee for Service Claims is included. Physician Groups and Physician Organizations may submit Proof of Claims on behalf of Physicians employed by or otherwise working with them at the time that the claims are made, without the necessity of individual signatures from the individual Physicians; provided, however, the Class Member who or which submits the Proof of Claim Form must be the Physician, Physician Group or Physician Organization who or which originally submitted the claim and must use the same tax identification number as was used on the original claim when submitting the Proof of Claim. Any Proof of Claim originally postmarked more than one hundred eighty (180) days after commencement of the Claims Period shall not qualify as a Valid Proof of Claim and shall be denied by the Settlement Administrator. The Settlement Administrator shall send mailed notification to all Class Members whose Proofs of Claim are denied as untimely under this Section.

> (b)     Class Members filing Proofs of Claim for Medical

Necessity Denial Compensation shall include with their Proof of Claim Forms: (a) documentation evidencing that they submitted Fee for Service Claims for payment to CIGNA HealthCare for services or supplies provided to a CIGNA HealthCare Member, and were thereafter denied payment for one or more CPT® Codes or HCPCS Level II Codes due to CIGNA HealthCare's determination that the medical services, procedures or supplies

114

corresponding to such codes were either not Medically Necessary or were experimental or investigational; and (b) a complete copy of the Clinical Information generated in connection with the Class Member's services. A copy of the relevant CIGNA HealthCare Remittance Form showing that payment was denied for one or more CPT® Codes or HCPCS Level II Codes shall constitute adequate documentation for purposes of requirement (a) above unless the Settlement Administrator determines that the records are false or fraudulent. For purposes of the requirement set forth in (a) above, in the event that the Class Member cannot locate the CIGNA HealthCare Remittance Form applicable to a given Fee for Service Claim, the Class Member may submit copies of internal accounting records (such as printouts of accounts receivable records or paid account records) if those records show that the CPT® Codes or HCPCS Level II Codes in question were submitted to CIGNA HealthCare for payment and remain unpaid. For purposes of the requirement set forth in (b) above, the Class Member shall not be required to submit Clinical Information that relates to dates of service occurring more than ninety (90) days before the date of service at issue in the Proof of Claim. A Proof of Claim Form for Medical Necessity Denial Compensation that does not include the documentation required by (a) and (b) above does not contain adequate documentation and is subject to resubmission pursuant to Section 8.3.d(4).

(4)    <em>Adequacy of Documentation.</em>

The Settlement Administrator shall use its best efforts to determine the adequacy of the documentation accompanying Proof of Claim Forms for Medical Necessity Denial Compensation within fourteen (14) days of the date of submission by the Class Member. If, in the judgment of the Settlement Administrator, a Class Member's Proof of Claim Form for Medical Necessity Denial Compensation does not include adequate documentation under this provision, the Settlement Administrator shall notify the Class Member by mail that the Proof of Claim has been rejected (with identification of the reasons therefor). Said notice shall also state that the Class Member has the right to resubmit the Proof of Claim Form within thirty (30) days

115

from the date the notice was mailed.  The Class Member may, thereafter, resubmit the Proof of Claim Form in an effort to correct the deficiencies noted by the Settlement Administrator, provided that the Class Member's resubmission must be postmarked no later than thirty (30) days from the date on which the Settlement Administrator's notice of the deficiencies was mailed to the Class Member.  If the Settlement Administrator still concludes that the Proof of Claim Form does not contain adequate documentation, then the Class Member's Proof of Claim shall not be deemed a Valid Proof of Claim, and no Medical Necessity Denial Compensation shall be paid with respect to that Claim.  The Settlement Administrator shall provide mailed notification of this determination to the Class Member submitting the Proof of Claim.

   (5) *Certification Required by Class Members Filing Proof of Claim Forms for Medical Necessity Denial Compensation.*

  No Proof of Claim for Medical Necessity Denial Compensation shall be accepted by the Settlement Administrator for processing unless the Proof of Claim Form includes a certification by the submitting Class Member that: (i) the CPT® or HCPCS Level II Code(s) for which the Class Member is requesting payment (or additional payment) describes services or supplies that were actually provided to a CIGNA HealthCare Member; (ii) the additional payment requested has not already been made by CIGNA HealthCare on resubmission of the Claim or on an appeal; and (iii) the Claim to which the Proof of Claim relates is not a Resolved Claim.  If the Class Member billed the CIGNA HealthCare Member to whom services or supplies were provided for the amount not originally paid by CIGNA HealthCare, and if the CIGNA HealthCare Member reimbursed the Class Member for such amount, it is expected that the Class Member shall reimburse the CIGNA HealthCare Member with any amount paid pursuant to this Agreement.  If a Class Member submits internal accounting records in support of a Medical Necessity Denial Proof of Claim, the Class Member must also certify that the CIGNA HealthCare Remittance Form and the claim form originally submitted to CIGNA HealthCare cannot be located and are not available for submission.

116

(6)      *Submission to CIGNA HealthCare for Processing.*

Within fourteen (14) days after determining that a Proof of Claim for Medical Necessity

Denial Compensation is timely, contains all required information and documentation, and

includes the proper certification by the Class Member, the Settlement Administrator shall

forward the Proof of Claim Form to CIGNA HealthCare for processing.  CIGNA HealthCare

shall have thirty (30) days from the date that the Settlement Administrator transmits a Proof of

Claim Form to CIGNA HealthCare to make a determination whether to (a) approve the Proof of

Claim; or (b) deny the Proof of Claim, in whole or in part, based on its judgment that the services

or supplies addressed in the Proof of Claim were not Medically Necessary or were experimental

or investigational; or (c) deny the Proof of Claim, in whole or in part, because the Fee for Service

Claim to which the Proof of Claim relates was paid by CIGNA HealthCare on resubmission or

on appeal; or (d) deny the Proof of Claim, in whole or in part, for any other reason (*e.g.*, because

the services or supplies addressed in the Proof of Claim were excluded from coverage under the

CIGNA HealthCare Member's Plan Documents, because the Fee for Service Claim to which the

Proof of Claim relates is a Resolved Claim, because the services or supplies addressed in the

Proof of Claim were not supplied to a CIGNA HealthCare Member, because the services or

supplies were delivered in violation of the CIGNA HealthCare Member's Plan Documents due to

the CIGNA HealthCare Member's failure to obtain a referral or due to the Class Member's

failure to obtain required preauthorization for a procedure, etc.).  A judgment by CIGNA

HealthCare that the services or supplies addressed in the Proof of Claim were excluded from

coverage under the CIGNA HealthCare Member's Plan Documents because they were of a

cosmetic nature shall, for purposes of this provision, be deemed a judgment that the services or

supplies were not Medically Necessary.

(a)      *Approval of Claim by CIGNA HealthCare.*

In the event that CIGNA HealthCare decides to approve a Proof of Claim for Medical

Necessity Denial Compensation relating to services or supplies delivered to a CIGNA

HealthCare Member less than one year before the commencement of the Claims Period, the Proof of Claim shall be deemed a Valid Proof of Claim and CIGNA HealthCare shall mail the additional payment required by Section 8.3.d(2) to the Class Member within thirty (30) days of notifying the Settlement Administrator of its determination.  In the event that CIGNA HealthCare decides to approve a Proof of Claim for Medical Necessity Denial Compensation relating to services or supplies delivered to a CIGNA HealthCare Member more than one year before the commencement of the Claims Period, the Proof of Claim shall be deemed a Valid Proof of Claim and the Settlement Administrator shall mail the additional payment required by Section 8.3.d(1) within fourteen (14) days of receiving notice of CIGNA HealthCare's determination.

(b)      *Denial of Claim by CIGNA HealthCare.*

In the event that CIGNA HealthCare decides to deny a Proof of Claim, it shall mail notification of that denial to the Settlement Administrator and to the Class Member submitting the Proof of Claim, with identification of the reasons for the denial.  Said notice shall state that the Class Member's Proof of Claim will automatically be forwarded for External Review.

(c)      *Deemed Approval of Claim by CIGNA HealthCare.*

In the event that CIGNA HealthCare does not provide notice to the Settlement Administrator of its determination with respect to a Class Member's Proof of Claim within thirty (30) days of the Settlement Administrator's transmission of such Proof of Claim to CIGNA HealthCare, the Settlement Administrator shall deem the Proof of Claim approved as a Valid Proof of Claim by CIGNA HealthCare.  The Settlement Administrator shall notify CIGNA HealthCare of its failure to act by mailing notice of the deemed approval to CIGNA HealthCare.  Within fourteen (14) days of the deemed approval, payment shall be made to the Class Member pursuant to the terms set forth in Section 8.3.d(1).

(7)     *Procedure for External Review.*

(a)     *Assembly of Review File.*

If CIGNA HealthCare denies a Proof of Claim for Medical Necessity Compensation, CIGNA HealthCare shall assemble a Review File consisting, at minimum, of (i) a complete copy of the Class Member's Proof of Claim Form as submitted; (ii) copies of all records documenting prior CIGNA HealthCare payments on the Fee for Service Claim(s) with respect to which the Class Member submitted a Proof of Claim; (iii) copies of all other documents prepared or obtained by CIGNA HealthCare in its initial review of the Proof of Claim, including Plan Documents, if relevant; and (iv) if the Fee for Service Claim relates to services or supplies provided to a CIGNA HealthCare Member within the twelve (12) months preceding the date of commencement of the Claims Period, a computation of the CIGNA HealthCare Member's co-insurance and deductible responsibility and how that CIGNA HealthCare Member's responsibility would affect the Class Member's payment were the Proof of Claim approved. CIGNA HealthCare shall provide the Review File to the Settlement Administrator within thirty (30) days of CIGNA HealthCare's denial.  Upon receiving the Review File, the Settlement Administrator shall mail a copy of the same to the Class Member submitting the Proof of Claim and, where appropriate, the Settlement Administrator shall immediately transmit the Review File to the Independent Review Entity.

(b)     *Effect of CIGNA HealthCare's Failure to Assemble Review File.*

If CIGNA HealthCare fails to assemble and forward to the Settlement Administrator the Review File for a denied Proof of Claim within the time limits specified in this Agreement, the denied Proof of Claim shall be deemed approved as a Valid Proof of Claim.  The Settlement Administrator shall notify CIGNA HealthCare of its failure to act by mailing notice of the deemed approval to CIGNA HealthCare.  Within fourteen (14) days of the deemed approval, payment shall be made to the Class Member pursuant to the terms set forth in Section 8.3.d(1).

119

(8)     *Roles of Settlement Administrator and Independent Review Entity in External Review Process.*

Where CIGNA HealthCare's denial of a Proof of Claim for Medical Necessity Denial Compensation is based on its judgment that the services or supplies addressed in the Proof of Claim were not Medically Necessary or were experimental or investigational or that the Claim to which the Proof of Claim relates was fully paid by CIGNA HealthCare on resubmission or on appeal, External Review shall be performed by the Independent Review Entity. All other denials shall be subject to External Review by the Settlement Administrator, as hereinafter provided.

(a)     *Timing of Determinations.*

The Settlement Administrator or the Independent Review Entity, as appropriate, shall use its best efforts to complete External Review as to a Proof of Claim within thirty (30) days of receiving the Review File as to such Proof of Claim.

(b)     *Adjudication Standards.*

(i)     *External Review by Independent Review Entity.*

A Class Member shall be entitled to payment on a Proof of Claim for Medical Necessity Denial Compensation when, in the judgment of the Independent Review Entity, the services or supplies were not experimental or investigational and the Proof of Claim and/or Review File establishes that (a) the CPT® Code(s) or HCPCS Level II Code(s) for which payment was denied described services or supplies that were Medically Necessary at the time the services or supplies were delivered by the Class Member; (b) the CPT® Code(s) or HCPCS Level II Code(s) for which payment was denied described services or supplies that, at the time the services or supplies were delivered by the Class Member, were not, according to reasonable and customary practice in the medical community, included in the services or supplies denoted by CPT® Code(s) or HCPCS Level II Code(s) for which payment was already made by CIGNA HealthCare; and (c) CIGNA HealthCare has not, on resubmission of the Fee for Service Claim or on appeal, already made appropriate payment on the denied CPT® Code(s) or HCPCS Level II Code(s).

120

(ii)     *External Review by Settlement Administrator.*

When a Proof of Claim for Medical Necessity Denial Compensation that has been denied, in whole or in part, by CIGNA HealthCare on the ground that the Claim to which the Proof of Claim relates is a Resolved Claim is presented to the Settlement Administrator for External Review, the Settlement Administrator shall determine whether the Proof of Claim and Review File establish this ground for denial.  A Class Member shall be entitled to payment on the Proof of Claim if the Settlement Administrator determines that the Fee for Service Claim to which the Proof of Claim relates is not a Resolved Claim.  When a Proof of Claim for Medical Necessity Denial Compensation that has been denied by CIGNA HealthCare on any other ground is presented to the Settlement Administrator for External Review, the Settlement Administrator's sole undertaking shall be to determine, based on the Proof of Claim and Review File, whether CIGNA HealthCare's denial of the Fee for Service Claim to which the Proof of Claim relates was based on Medical Necessity grounds or experimental or investigational grounds or the result of the application of a Claim Coding and Bundling Edit.  If the Settlement Administrator determines that CIGNA HealthCare's denial of the Fee for Service Claim to which the Proof of Claim relates was based on Medical Necessity grounds or experimental or investigational grounds or was the result of the application of a Claim Coding and Bundling Edit, the Settlement Administrator shall forward the Proof of Claim and Review File to the Independent Review Entity, which shall thereupon conduct External Review as if the Proof of Claim had been presented to the Independent Review Entity originally.  If the Settlement Administrator determines that CIGNA HealthCare's denial of the Fee for Service Claim to which the Proof of Claim relates was based on grounds other than Medical Necessity grounds or experimental or investigational grounds or Claim Coding and Bundling Edit, the Proof of Claim shall be denied. The Settlement Administrator's denial of the Proof of Claim in these circumstances shall be without prejudice to the Class Member's rights, if any, to seek further payment on the Claim under the CIGNA HealthCare Member's Plan Documents.

121

(9)    *Computation of Payment Amounts.*

If the Settlement Administrator decides on External Review that a Proof of Claim denied by CIGNA HealthCare is a Valid Proof of Claim, it shall so notify CIGNA HealthCare by mail and payment shall be made to the Class Member at the amount and in the manner required by Section 8.3.d(2) within fourteen (14) days thereafter.  If the Independent Review Entity decides on External Review that a Proof of Claim denied by CIGNA HealthCare is a Valid Proof of Claim, it shall so notify the Settlement Administrator and CIGNA HealthCare by mail, and payment shall be made to the Class Member at the amount and in the manner required by Section 8.3.d(2) within fourteen (14) days thereafter.

(10)    *Finality of Decisions by Settlement Administrator and Independent Review Entity; Payment Procedure.*

When Proofs of Claim are denied on External Review, the Settlement Administrator shall notify the Class Members submitting such Proofs of Claim by mail of the denials and of the reasons therefor.  Decisions of the Settlement Administrator or Independent Review Entity, as appropriate, shall be final and not subject to review by the Court or any other court or tribunal. Neither the Settlement Administrator nor the Independent Review Entity shall entertain any further requests for reconsideration of its decisions under this section.

8.4    *Procedure for Inquiry About Status of Proofs of Claim; Procedure for Requesting Facilitation List; Procedure for Requesting Medical Necessity Information.*

The Settlement Administrator shall establish procedures, to be described in the Notice of Commencement of the Claims Period, that (a) allow Class Members to inquire about the status of their Proofs of Claim; (b) allow Class Members to make requests, via telephone and/or e-mail, for copies of the Facilitation List available under Section 8.3.c(2)(c); and (c) allow Class Members to make requests, via telephone and/or e-mail, for copies of the information about the types of medical records, by billing code, CIGNA HealthCare has traditionally required to be submitted for review in order to make Medical Necessity determinations, available under Section 8.3.d(1).

8.5    *Submission to Jurisdiction of Court.*

Any Class Member submitting a Category A Claim or Proof of Claim Form for Category One Compensation, Category Two Compensation or Medical Necessity Denial Compensation shall, through the act of submitting that Proof of Claim Form, agrees to be subject to the jurisdiction of the Court for any related proceedings.

## 9.    **SETTLEMENT ADMINISTRATION**

9.1    Notice Counsel and Defendants' Counsel have jointly selected Poorman-Douglas Corporation as the Settlement Administrator to carry out the terms of the Agreement and orders of the Court.  The Settlement Administrator shall have the duties and responsibilities set forth elsewhere in this Agreement including without limitation Sections 5, 6.1 and 8 hereof and this Section 9.

9.2    Within sixty (60) days following the date of the entry of the Preliminary Approval Order, Notice Counsel and Defendants' Counsel shall jointly select the Independent Review Entity to carry out the terms of the Agreement and orders of the Court.  The Independent Review Entity shall have the duties and responsibilities set forth in Section 8 hereof.

9.3    The Settling Parties, Class Counsel, Kaiser Counsel, and Defendants' Counsel shall not have any responsibility for, interest in, or liability whatsoever with respect to the investment of or distribution of the Category A Settlement Fund and the Claim Distribution Fund. Settling Parties, Class Counsel, Kaiser Counsel, and Defendants' Counsel shall not have any responsibility for, interest in, or liability whatsoever with respect to the determination, administration, calculation, or payment of Proofs of Claim from the Category A Settlement Fund or the Claim Distribution Fund (except as specifically described in this Agreement) or any losses incurred in connection therewith.  Nothing in this section, however, shall prevent CIGNA HealthCare from receiving the reversion provided for in Section 8.3.b or enforcing the terms of the Agreement in order to protect its right to such reversion.  The Billing Dispute Administrator (and its members and agents, if any), the Compliance Dispute Facilitator (and his agents, if any),

123

the Internal Compliance Officer (and his agents, if any), the Clinical Information Officers, and the Compliance Dispute Review Officer (and his agents, if any) do not owe a fiduciary duty to the Class Members, the Plaintiffs, or CIGNA HealthCare.  The Settling Parties shall ask the Court to grant the Billing Dispute Administrator, the Compliance Dispute Facilitator (and his agents, if any), the Internal Compliance Officer (and his agents, if any), the Clinical Information Officers, and the Compliance Dispute Review Officer (and his agents, if any) limited immunity from liability to the effect that the above-mentioned (and their members and agents, if any) shall be liable only for willful misconduct and gross negligence.

      9.4     Administration Costs shall be paid by CIGNA HealthCare.

      9.5     The escrow agent(s) with whom the Category A Settlement Fund and the Claim Distribution Fund are deposited shall invest the monies in those funds solely in interest bearing investments which the escrow agent(s) consider(s) to involve no substantial risk of payment of principal at maturity.

      9.6     No Person shall have any cause of action against the Plaintiffs, Class Counsel, Kaiser Counsel, the Settlement Administrator, the Independent Review Entity, CIGNA HealthCare, the Released Persons, or Defendants' Counsel, including any counsel representing CIGNA HealthCare in connection with this Litigation, Compliance Dispute Review Officer, Compliance Dispute Facilitator, Clinical Information Officers, Medical Necessity External Review Organization, or Billing Dispute Administrator based on the administration or implementation of the Agreement or orders of the Court or based on the distribution of monies under the Agreement.  In such circumstances, the sole remedy (other than those provided pursuant to the terms of the Agreement) is application to this Court for enforcement of the Agreement or order.

      9.7     The Settlement Administrator shall make appropriate reports under Internal Revenue Code § 1099 with respect to all payments it makes to Class Members under this Agreement.  CIGNA HealthCare shall make appropriate reports under Internal Revenue Code

§ 1099 as to all payments of Category Two Compensation and Medical Necessity Denial Compensation it makes directly to Class Members. The Settlement Administrator shall file any tax returns necessary with respect to any income earned by the Foundation, the Category A Settlement Fund and the Claim Distribution Fund and shall pay, as and when legally required to do so, any tax payments (including interest and penalties) due on income earned by such Funds, and shall request refunds, when and if appropriate, and shall apply any such refunds that are issued to the appropriate Fund to become a part thereof.

9.8    When this Agreement requires mailed notification, other than notification undertaken pursuant to the Plan of Notice, the notification may be accomplished by transmitting the communication either by first-class mail or by electronic mail if an electronic mail address is available (for instance, if the Class Member has included an electronic mail address on a Proof of Claim Form), unless otherwise specifically set forth in this Agreement. Unless otherwise specified in this Agreement, the Settlement Administrator shall use its best efforts to send notification within fourteen (14) days of the event that requires notification.

9.9    At the conclusion of the settlement process, the Settlement Administrator shall provide a final accounting to Defendants' Counsel and Notice Counsel.

9.10    If a Class Member submits a Proof of Claim requesting compensation under the wrong compensation category (e.g., a request for Category Two Compensation which should have been submitted as a request for Category One Compensation), the Settlement Administrator shall automatically review the Proof of Claim under the provisions set forth herein for the correct compensation category unless the documentation submitted with said Proof of Claim is insufficient under those provisions.

## 10.    THE JUDGMENT

If at or after the Fairness Hearing, the Agreement is approved by the Court, the Settling Parties shall jointly request that the Court enter the Final Order and Judgment attached as Exhibits 3 and 4.

## 11. CLASS MEMBERS WITH ARBITRATION AGREEMENTS

For purposes of this Settlement only, CIGNA HealthCare waives its right as to Fee for Service Claims subject to Section 8 of this Agreement to require those Class Members with valid, enforceable arbitration provisions to arbitrate their claims against CIGNA HealthCare. Nothing in this Agreement shall preclude Class Members from challenging the enforceability of arbitration provisions in connection with disputes or claims not resolved by this Agreement, provided, however, that no Class Member may assert that by entering into this Agreement, CIGNA HealthCare has waived its right to compel arbitration of such disputes or claims.

## 12. CONDITION OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

12.1    If Final Approval does not occur, the terms and provisions of this Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used for any other purpose. In that event, any Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated *nunc pro tunc*. Both Notice Counsel and Defendants' Counsel agree that no further notice to the Class Members would be necessary under these circumstances. If, however, the Court finds it is in the best interests of Class Members to receive additional notice, then the Settling Parties agree that CIGNA HealthCare will pay for said notice. In the event of any termination pursuant to the terms hereof, the Settling Parties shall be restored to their original positions, except as expressly provided herein.

12.2    Either CIGNA HealthCare or Notice Counsel on behalf of Class Members may withdraw from this Agreement if the Court does not within a reasonable period of time after the Preliminary Approval Hearing enter a Preliminary Approval Order as to the Settlement that includes substantially all of the terms and conditions of this Agreement. Should either CIGNA HealthCare or Notice Counsel elect to withdraw from the Settlement pursuant to this Section 12.2, the terms of Section 12.1 shall take effect.

12.3    CIGNA HealthCare may, in its sole discretion, withdraw from the

Settlement if more than seven and one-half percent (7.5%) of the putative members of the Class, as identified on the Class List, elect to exclude themselves (Opt Out) of the Settlement. The percentage of the putative members of the Class requesting exclusion shall be determined by dividing the number of names on the Class List who have submitted a valid Opt Out request by the total number of names included on the Class List. Should CIGNA HealthCare elect to withdraw from the Settlement pursuant to this section, the terms of Section 12.1 shall take effect.

12.4    If the Court has not entered the Final Order and Judgment substantially in the form attached hereto as Exhibits 3 and 4 by the date that is one hundred eighty (180) calendar days after the date of the entry of the Preliminary Approval Order, Notice Counsel and CIGNA HealthCare may, in the sole and absolute discretion of each, terminate this Agreement by delivering a notice of termination to the other. Should either CIGNA HealthCare or Notice Counsel elect to withdraw from the Settlement pursuant to this Section 12.4, the terms of Section 12.1 shall take effect.

12.5    If Notice Counsel and Defendants' Counsel are unable to agree on the selection of the Independent Review Entity within the time constraints imposed by this Agreement, then Notice Counsel and Defendants' Counsel shall resolve the disagreement as a Compliance Dispute, or if the Compliance Dispute mechanism is not in place, they shall submit the disagreement to the Court for resolution.

12.6    If Notice Counsel object to the form of the initial disclosures prepared by CIGNA HealthCare pursuant to Section 7.2.a(3) and Notice Counsel and CIGNA HealthCare cannot resolve Notice Counsel's objections by negotiation, then Notice Counsel (on behalf of Class Members) or CIGNA HealthCare may elect to withdraw from the Settlement. If Notice Counsel or CIGNA HealthCare elects to withdraw from the Settlement pursuant to this section, then this Settlement shall become null and void and the terms of Section 12.1 shall take effect.

127

## 13.    RELEASE AND COVENANT NOT TO SUE

13.1    Upon Final Approval, the Releasing Parties and each of them shall hereby be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever, remised, released, relinquished, compromised and discharged all Released Claims against each Released Person, whether or not any such Releasing Party submits any Proofs of Claim or otherwise seeks any payment under the terms of this Agreement.

13.2    The Releasing Parties and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit on the basis of any Released Claim against any Released Person.

13.3    With respect to all Released Claims, the Releasing Parties and each of them agree that they are expressly waiving and relinquishing to the fullest extent permitted by law (a) the provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor.

and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.

13.4    Notwithstanding the foregoing, the Releasing Parties are not releasing claims for payment (each a "Retained Claim" and, collectively, the "Retained Claims") for Covered Services provided to CIGNA HealthCare Members prior to or on the date of Final Approval as to which, as of Final Approval, (i) no claim with respect to such Covered Services has been filed with CIGNA HealthCare; provided that the contractual period for filing such claim has not elapsed; or (ii) a claim with respect to such Covered Services has been filed with CIGNA HealthCare but such claim has not been finally adjudicated by CIGNA HealthCare. For purposes of clause (ii), above, final adjudication shall include completion of CIGNA

128

HealthCare's internal appeals process.  In the event that a claim referred to in clause (ii) is finally adjudicated less than thirty (30) days prior to Final Approval, such claim shall constitute a Retained Claim if a Physician seeks relief under Section 7.10 not later than ninety (90) days after notice of such final adjudication, but otherwise such claim shall constitute a Released Claim. Retained Claims shall be resolved pursuant to the provisions of Section 7.10 of this Agreement.

13.5    Upon Final Approval and until the Termination Date, each Releasing Party shall be deemed to have covenanted and agreed not to sue with respect to, or assert, against any Released Person, in any other forum (i) any Retained Claim, (ii) any dispute subject to Section 7.12, or (iii) any Compliance Dispute, which respectively shall be asserted and pursued only pursuant to the provisions of Section 7.10, Section 7.12 and Section 15.2 of this Agreement (it being understood that this Section 13.5 shall not apply to any claims that arise within twenty (20) days before the Termination Date that could not reasonably be presented or resolved pursuant to the procedures set forth in Section 15; provided that any such claim shall be prosecuted on an individual basis only and not otherwise).

13.6    Nothing in this Agreement is intended to relieve any Person that is not a Released Person from responsibility for its own conduct or conduct of other Persons who are not Released Persons, or to preclude any Plaintiff from introducing any competent and admissible evidence to the extent consistent with this Agreement.  Moreover, nothing in this Agreement prevents the Plaintiffs and the Class from pursuing claims to hold any person or party that is not a Released Person liable for damages caused by any Released Person.

13.7    Notwithstanding the foregoing, Releasing Parties shall retain the rights:  (i) to enforce CIGNA HealthCare's obligations under Section 7.29.n pursuant to the procedures set forth in Section 15 of this Agreement; and (ii) to bring an action asserting claims against CIGNA HealthCare by or on behalf of Physicians to recover amounts alleged to be owed to such Physicians by any Physician Organization that has become insolvent, provided that no such action may be commenced or maintained against CIGNA HealthCare unless substantially all

health plans or insurers who contracted with such Physician Organization and have not paid all amounts allegedly owed to health care providers with respect to such insolvent Physician Organization are named as defendants in addition to CIGNA HealthCare and further provided that in any such action CIGNA HealthCare may assert all available legal claims and defenses, including without limitation defenses based on the fraudulent conduct of such Physician Organization.

13.8    The Settling Parties agree that CIGNA HealthCare shall suffer irreparable harm if a Releasing Party takes action inconsistent with either Section 13.1, Section 13.2, or Section 13.5, and that in that event CIGNA HealthCare may seek an injunction from the Court as to such action without further showing of irreparable harm.

13.9    Nothing contained in this Agreement is intended, or shall be construed, to preclude any Settling Party from seeking legislative or regulatory changes as to matters addressed herein or from seeking to enforce any such changes using any available legal remedy.

## 14.    ATTORNEYS' FEES, COSTS AND EXPENSES

14.1    Class Counsel shall petition the Court for attorneys' fees, costs and expenses not to exceed Fifty-Five Million Dollars ($55,000,000), including any attorneys' fees, costs and expenses of Kaiser Counsel for their representation of Physicians (collectively referred to hereafter as "Counsels' Award"). CIGNA HealthCare shall not oppose such petition. CIGNA HealthCare shall pay Counsels' Award as ordered by the Court, which shall be in addition to the other benefits conferred upon Class Members under the Settlement. If the Court were to order a Counsels' Award in excess of Fifty-Five Million Dollars ($55,000,000), Class Counsel and Kaiser Counsel, on behalf of themselves and the Class, hereby covenant and agree to waive, release and forever discharge the amount of any such excess award and to make no effort of any kind or description ever to collect same. The Counsels' Award agreed to be paid pursuant to this provision are in addition to and separate from all other consideration and remedies paid to and available to the Class Members. CIGNA HealthCare shall not be obligated to pay any attorneys'

fees or expenses incurred by or on behalf of any Releasing Party in connection with the Litigation, other than the payment of Counsels' Award in accordance with this Section.

14.2    At the Fairness Hearing, Class Counsel shall petition the Court for incentive awards in the amount of Seven Thousand Five Hundred Dollars ($7,500) for each Plaintiff for their services as Class Representatives Plaintiffs.  CIGNA HealthCare shall not oppose this petition.  If approved by the Court, CIGNA HealthCare shall pay these amounts over and above any other compensation contained in this Agreement.

14.3    If there is no appeal of the award of Counsels' Award, then within five (5) Business Days after Final Approval, CIGNA HealthCare shall pay Counsels' Award, plus any interest accrued thereon.  The amount of fees, costs and expenses awarded by the Court shall be increased at the rate of six percent (6%) per annum (without compounding) during the period between (i) the thirtieth (30th) day following entry of the Judgment and (ii) the date of Final Approval.  If there is an appeal of the Judgment and Settlement, CIGNA HealthCare agrees that, subject to the Court's approval, the amount of Counsels' Award ultimately awarded by the Court shall be increased at the rate of six percent (6%) per annum (without compounding) during the period of delay caused by the appeal, with that period being defined as the period between (i) the thirtieth (30th) day following entry of the Judgment, and (ii) the date of Final Approval.  Payment shall be made by wire transfer to the Trust Account of the Law Office of Archie C. Lamb, L.L.C., for the benefit of Class Counsel and Kaiser Counsel.  Reporting pursuant to Internal Revenue Code § 1099 shall identify Class Counsel and Kaiser Counsel as payees; each Class Counsel and Kaiser Counsel shall advise CIGNA HealthCare of the correct § 1099 reporting amounts applicable to her or his law firm.

14.4    If there is an appeal of the Judgment and Settlement, and this appeal delays Final Approval, CIGNA HealthCare agrees that (i) payments on all Valid Proofs of Claim for Category One Compensation, (ii) payments on all Valid Proofs of Claim for Category Two Compensation and (iii) payments on all Valid Proofs of Claim for Medical Necessity

Compensation shall be increased by CIGNA HealthCare at the rate of six percent (6%) per annum (without compounding) during the period between (i) the thirtieth (30th) day following entry of the Judgment and (ii) the date of Final Approval.

 14.5 If there is an appeal related solely to the Counsels' Award, CIGNA HealthCare agrees that, subject to the Court's approval, the amount of Class Counsel fees, costs and expenses ultimately awarded by the Court to Class Counsel, if any, shall be increased at the rate of six percent per annum (without compounding) during the period of delay caused by the appeal, with that period being defined as the period between (i) the thirtieth (30th) day following entry of the Judgment, and (ii) five (5) Business Days before payment of such fees, costs and expenses. Payment of such fees, costs and expenses shall occur within five (5) Business Days after the date of final dismissal of any appeal taken under Section 1.59.c(1), or the final dismissal of any proceeding or denial of *certiorari* to review such appeal.

 14.6 As set forth in Section 1.59, an appeal related solely to the Counsels' Award shall not delay Final Approval, and in such event the Settling Parties shall proceed with implementation of this Agreement.

 14.7 Any and all disputes related to the issue of the Counsels' Award, including but not limited to the allocation of that Award, or the incentive awards shall be resolved by the Court, and all parties agree that no other forum shall have jurisdiction over any such dispute.

## 15. COMPLIANCE PROVISIONS

 15.1 *Internal Compliance Officer.*

 CIGNA HealthCare will appoint a compliance officer (the "Compliance Officer"), responsible directly to its President, and any successor thereto, to monitor and report quarterly to the President on CIGNA HealthCare's compliance with this Agreement. CIGNA HealthCare may, at its sole discretion, select the Compliance Officer from among individuals currently or previously employed by CIGNA Corporation or any of its Subsidiaries, and the Compliance

Officer may bear other responsibilities to CIGNA Corporation or any of its Subsidiaries while discharging his or her responsibilities under this Agreement.

      a.    *Quarterly Report.*

The Compliance Officer shall establish effective mechanisms for monitoring compliance with this Agreement and correcting violations thereof, and shall issue a quarterly report to CIGNA HealthCare's President and to Notice Counsel covering the following areas:

      (1)    The Compliance Officer will examine a random sample of Physician contracts issued or modified in the prior quarter, which sample shall be drawn in such a way as to provide confidence that it is representative of the universe of such Physician contracts, and certify that they are compliant with the terms of this Agreement.

      (2)    The Compliance Officer will report the percentage of claims received in the quarter that have been processed within the time frames specified in this Agreement, and the quarter-to-quarter trend in such percentage.

      (3)    The Compliance Officer will examine a random sample of claims that were processed outside the time frames specified in this Agreement to ensure that the interest payable under the terms of this Agreement has been paid to the Class Members submitting such claims, and shall report on the results of this random sample.

      (4)    The Compliance Officer will report, in summary form, on all complaints by Class Members that CIGNA HealthCare has failed to comply with the terms of this Agreement, and on the resolution of such complaints.

      (5)    The Compliance Officer report will address the status of CIGNA HealthCare's best efforts to modify its claim processing systems and practices in accordance with this Agreement.

      (6)    The Compliance Officer report will address any other issues referred to the Compliance Officer by CIGNA HealthCare or Notice Counsel.

b.   *Annual Report.*

The Compliance Officer will render to CIGNA HealthCare's President and to Notice Counsel an annual report on the status of CIGNA HealthCare's compliance with the terms of this Agreement, including, with respect to instances of non-compliance, a statement of any corrective action being taken.  The report shall address, at least, the following subjects with respect to the preceding year:

(1)   Compliance with the processing timeliness requirements of this Agreement, including whether CIGNA HealthCare has failed to process at least ninety percent (90%) of claims within the timeframes specified by this Agreement during any continuous six (6) month period, and whether CIGNA HealthCare has failed to pay the interest required by this Agreement on the claims processed outside those timeliness requirements;

(2)   Compliance with the terms of this Agreement regarding information to be included on Remittance Forms with respect to denials of claims, including any systematic noncompliance with such terms by any single CIGNA HealthCare claim processing facility.

(3)   Compliance with the terms of this Agreement regarding disclosure of CIGNA HealthCare's Claim Coding and Bundling Edits and changes thereto, changes in fee schedules, CIGNA HealthCare's procedures for determining reasonable and customary provider charges, and other claim processing practices and procedures on CIGNA HealthCare's Website.

c.   *Internal Monitoring Mechanisms.*

CIGNA HealthCare shall create such internal mechanisms for monitoring compliance and appoint such persons to assist the Compliance Officer as may be necessary to enable the Compliance Officer to carry out the tasks heretofore described.  CIGNA HealthCare's President shall approve the compliance processes outlined in this Section and a description thereof shall be furnished to Notice Counsel.

134

      d.    *Term of Internal Compliance Mechanism.*

The Compliance Officer requirements set forth herein shall continue in place until the Termination Date.

    15.2   *Compliance Disputes Arising Under This Agreement.*

      a.    *Jurisdiction.*

        (1)    *Compliance Dispute Facilitator.*

All Compliance Disputes shall be directed not to the Court nor to any other state court, federal court, arbitration panel or any other binding or non-binding dispute resolution mechanism but to the Compliance Dispute Facilitator to be designated by Notice Counsel.  CIGNA HealthCare shall publish on the Website the name and address of the Compliance Dispute Facilitator.  The proposed Final Order and Judgment shall provide that no state or federal court or dispute resolution body of any kind shall have jurisdiction over any enforcement of Section 7 of this Agreement at any time, including without limitation through any form of review or appeal, except to the extent otherwise provided in this Agreement.

        (2)    *Compliance Dispute Review Officer.*

Pursuant to Sections 15.2.c(2) and 15.2.f and subject to Sections 15.2.d and 15.2.e, the Compliance Dispute Facilitator shall refer Compliance Disputes that satisfy the requirements of Section 15.2.c to the Compliance Dispute Review Officer for resolution.  The Compliance Dispute Review Officer shall be agreed upon by Notice Counsel and Defendants' Counsel within thirty (30) days of the date of the entry of the Preliminary Approval Order.  If the Compliance Dispute Review Officer is no longer able to serve in such role for any reason, then a replacement shall be chosen by mutual agreement of Notice Counsel and Defendants' Counsel.

        (3)    *Fees and Costs*

CIGNA HealthCare shall pay the reasonable hourly fees and costs of the Compliance Dispute Facilitator and the Compliance Dispute Review Officer.

b.   *Who May Petition the Compliance Dispute Facilitator.*

The following may petition the Compliance Dispute Facilitator (each a "Petitioner"):

(1)   any Class Member who or which, based on particularized facts, contends that CIGNA HealthCare has materially failed to perform specific obligations under Section 7 of this Agreement, and that such Class Member is adversely affected by CIGNA HealthCare's failure to comply with such specific obligations under Section 7; and

(2)   any Signatory Medical Society, so long as such Signatory Medical Society identifies in its petition to the Compliance Dispute Facilitator a Class Member who or which satisfies the requirements of Section 15.2.b(1) and brings the Compliance Dispute solely on behalf of such Class Member.

(3)   Nothing in subsections (1) and (2) of this Section 15.2.b is intended or shall be construed to limit the remedies that the Compliance Dispute Review Officer may order pursuant to Section 15.2.f(4) hereof.

c.   *Procedure for Submission, and Requirements, of Compliance Disputes.*

(1)   *Compliance Dispute Claim Form.*

Before the Compliance Dispute Facilitator may consider a Compliance Dispute, a Petitioner must submit a properly completed Compliance Dispute Claim Form, attached hereto as Exhibit 14 and approved by the Court, to the Compliance Dispute Facilitator.  The Compliance Dispute Claim Form may include supporting documentation or affidavit testimony. The Compliance Dispute Claim Form shall be made available by the Compliance Dispute Facilitator to Class Members upon request.

(2)   *Qualifying Submissions.*

When the Compliance Dispute Facilitator is petitioned pursuant to Section 15.2.c(1) of this Agreement, in order for the Compliance Dispute Facilitator to refer the Compliance Dispute to the Compliance Dispute Review Officer, the Compliance Dispute Facilitator must determine that:

136

(a)     the Petitioner has satisfied the requirements of Section 15.2.b;

(b)     the Petitioner has submitted a properly completed Petition not later than thirty (30) days after such Compliance Dispute arose;

(c)     in the Compliance Dispute Facilitator's judgment, the Petitioner's Compliance Dispute is not frivolous;

(d)     the Petitioner sufficiently alleges adverse impact to the Petitioner or, in the case of a Petitioner that is a Signatory Medical Society, the Class Member identified in the Submission and on whose behalf the Compliance Dispute is brought, in each case resulting from the alleged material failure by CIGNA HealthCare to comply with an obligation under Section 7 of this Agreement to the Petitioner;

(e)     the Compliance Dispute cannot be easily resolved by the Compliance Dispute Facilitator without the intervention of the Compliance Dispute Review Officer; and

(f)     the Compliance Dispute is not properly the subject of a proceeding pursuant to Section 7.10 or Section 7.11 or Section 7.12 of this Agreement.

If the Compliance Dispute Facilitator determines that the Petitioner's Compliance Dispute is properly the subject of an External Review proceeding pursuant to Section 7.10 or Section 7.11 or subject to a proceeding under Section 7.12 of this Agreement, the Compliance Dispute Facilitator shall expressly inform the Petitioner of the external review procedures available to such Petitioner.

        d.     *Rejection of Frivolous Claims.*

The Compliance Dispute Facilitator may reject as frivolous, and the Compliance Dispute Review Officer shall not hear, any Compliance Dispute that the Compliance Dispute Facilitator determines in his or her sole and absolute discretion to be frivolous, filed for nuisance purposes, or otherwise without merit on its face. The Compliance Dispute Facilitator may issue a written

explanation or a written order of the grounds for denial of Petitioner's Compliance Dispute. Petitioner shall have no right to appeal the Compliance Dispute Facilitator's decision.

   e. *Dispute Resolution Without Referral to Compliance Dispute Review Officer.*

  If in the Compliance Dispute Facilitator's judgment a Petitioner's Compliance Dispute can be resolved using available resources without the invocation of the Compliance Dispute Review Officer's authority, the Compliance Dispute Facilitator shall refer the Petitioner to the appropriate resources or otherwise assist in the resolution of the Petitioner's Dispute. All Settling Parties agree that dispute resolution without invocation of the Compliance Dispute Review Officer's authority is preferable, and all Settling Parties further agree to assist the Compliance Dispute Facilitator in these efforts.

   f. *Procedure for Compliance Dispute Review Officer Determination of Compliance Disputes.*

    (1) *Initial Negotiation.*

  In the event the Compliance Dispute Facilitator has determined that the Compliance Dispute Review Officer should resolve a particular Compliance Dispute, the Compliance Dispute Facilitator shall notify the Compliance Dispute Review Officer, Petitioner and CIGNA HealthCare of such determination and the basis therefor. Unless the Petitioner specifies otherwise, the Compliance Dispute Facilitator shall serve as the Petitioner's representative in the Compliance Dispute process thereafter with respect to such Compliance Dispute. The Compliance Dispute Review Officer shall then direct the Petitioner and CIGNA HealthCare to convene negotiations at a time and place agreeable to both so that they may reach agreement on whether a breach of CIGNA HealthCare's obligations under Section 7 of this Agreement has occurred and, if so, what remedy, if any, should be implemented. At these negotiations, the Compliance Dispute Review Officer shall, if requested by both the Petitioner and CIGNA HealthCare, serve as a non-binding mediator. If the Petitioner and CIGNA HealthCare cannot resolve the Compliance Dispute within ninety (90) days of the date of the determination and

notification by the Compliance Dispute Facilitator that the Compliance Dispute Review Officer should resolve the Compliance Dispute, then they shall so inform the Compliance Dispute Review Officer.

(2)     *Memoranda to Compliance Dispute Review Officer.*

If the Compliance Dispute Review Officer has been notified pursuant to Section 15.2.f(1) that no agreement has been reached through negotiation, the Compliance Dispute Review Officer shall request written memoranda from the Petitioner and CIGNA HealthCare as to the merits of the Compliance Dispute and appropriate remedies for such Compliance Dispute. The Petitioner shall have fifteen (15) days from the date of the Compliance Dispute Review Officer's request to submit its memorandum and appropriate supporting exhibits, and CIGNA HealthCare shall respond within fifteen (15) days after CIGNA HealthCare's receipt of the Petitioner's memorandum and accompanying exhibits. Requests for extensions of time for the submission of such materials must be submitted to the Compliance Dispute Review Officer no less than five (5) days before the date the memoranda and supporting exhibits in question are due.

(3)     *Oral Argument Concerning Compliance Dispute.*

The Petitioner or CIGNA HealthCare may, at the time of submission of the memoranda described in Section 15.2.f(2), request oral argument before the Compliance Dispute Review Officer on the subject of the Compliance Dispute and appropriate remedies, if any. If either so requests, the Compliance Dispute Review Officer shall hear such argument at a time and place convenient to the Compliance Dispute Review Officer, the Petitioner, and CIGNA HealthCare.

(4)     *Decisions by the Compliance Dispute Review Officer.*

In resolving a Compliance Dispute, the Compliance Dispute Review Officer shall decide, based on the written submissions, oral argument and any other information that the Compliance Dispute Review Officer in his or her sole discretion deems necessary, whether CIGNA HealthCare has failed to comply with its obligations under Section 7 of this Agreement, and if so, direct what actions are to be taken by CIGNA HealthCare. In no event shall the Compliance

139

Dispute Review Officer direct that CIGNA HealthCare take actions above or beyond CIGNA HealthCare's obligations under Section 7 of this Agreement.  The Compliance Dispute Review Officer must, at the time he or she announces his or her decision, issue a written opinion setting forth the basis of the decision.

(5)      *Rehearing by the Compliance Dispute Review Officer.*

After the Compliance Dispute Review Officer has issued a written opinion in accordance with Section 15.2.f(4), the Petitioner or CIGNA HealthCare, or both, may petition the Compliance Dispute Review Officer within ten (10) days from receipt of the decision, in writing, for rehearing on the question of whether a Section 7 violation has occurred and whether the remedies (if any) required by the Compliance Dispute Review Officer are appropriate.  The Compliance Dispute Review Officer may deny the petition for rehearing or issue a new written opinion after considering such a petition.

(6)      *Systemic Violations.*

If the Compliance Dispute Review Officer determines that CIGNA HealthCare is engaged in a systemic violation of its obligations under Section 7 of this Agreement, then the Compliance Dispute Review Officer may order appropriate remedies to address such systemic violation.

(7)      *Finality of the Compliance Dispute Review Officer's Decision.*

Upon the issuance of the Compliance Dispute Review Officer's decision after a rehearing, if any, the decision of the Compliance Dispute Review Officer shall be final unless appealed to the Court, and such decision shall not be appealed by the Petitioner or CIGNA HealthCare to any other federal court, any state court, any State Medical Society, any arbitration panel or any other binding or non-binding dispute resolution mechanism.  In the event that the Petitioner or CIGNA HealthCare seeks review by the Court of a final decision of the Compliance Dispute Review Officer, the Court shall consider only whether the Compliance Dispute Review Officer's final decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

140

law," as defined by 5 U.S.C. § 706(2)(A), and whether the decision was contrary to or inconsistent with the second sentence of Section 15.2.f(4) of this Agreement. If and only if the Court finds the final decision was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law," or that the decision was contrary to or inconsistent with the second sentence of Section 15.2.f(4) of this Agreement, the Court may remand the Compliance Dispute to the Compliance Dispute Review Officer for further proceedings.

(8)     *Enforcement by the Court.*

If the Compliance Dispute Review Officer certifies that either CIGNA HealthCare or the Petitioner is not in compliance with any decision issued or remedy ordered by the Compliance Dispute Review Officer, such Person shall have thirty (30) days from the date of such certification to cure the non-compliance. If after such thirty (30) day period, the Person is not in compliance and the Compliance Dispute Review Officer certifies that the Person has failed to cure the non-compliance during such thirty (30) day period, the other Person (CIGNA HealthCare or Petitioner, as the case may be) may petition the Court for enforcement.

## 16.   STAY OF DISCOVERY AND TERMINATION

16.1    Until the Preliminary Approval Order has been entered, including the stay of discovery as to the Released Persons in the form contained therein, the Releasing Parties and Class Counsel covenant and agree that Class Counsel shall not pursue discovery against the Released Persons and shall not in any way subsequently argue that the Released Persons have failed to comply with their discovery obligations in any respect by reason of the Released Persons' suspension of discovery efforts following the Execution Date, except for authentication of CIGNA HealthCare's claims data bases and documents, with the understanding that Class Counsel will first seek to resolve any authentication issue through stipulation. There shall not be any stay of discovery from third parties because it may relate to CIGNA HealthCare or from Released Persons who are former employees of CIGNA HealthCare. However, CIGNA

HealthCare shall have the right to object to any discovery of third parties that relates solely to CIGNA HealthCare.

16.2    From and after Final Approval, the Releasing Parties and Class Counsel covenant and agree that the Releasing Parties and Class Counsel shall not pursue discovery against the Released Persons, except as stated above. Nothing contained herein shall preclude the Releasing Parties or Class Counsel from introducing and relying on otherwise admissible evidence as to other defendants.

16.3    Notwithstanding the definition of Final Approval set forth in Section 1.59 of this Agreement, if one or more notices of appeal are filed from the Final Order and Judgment, CIGNA HealthCare shall have the right, in its sole and absolute discretion, to provide notice that it shall thereafter be bound by this Agreement and the Settling Parties shall perform their respective obligations as if Final Approval had occurred. If the Final Order and Judgment are not affirmed in their entirety on any such appeal or discretionary review, CIGNA HealthCare may terminate this Agreement by delivering a notice of termination to Notice Counsel. If CIGNA HealthCare does not elect to so terminate this Agreement, CIGNA HealthCare shall be entitled, in its sole and absolute discretion, to provide notice to Notice Counsel that it shall be bound by the terms of this Agreement (if CIGNA HealthCare has not already done so pursuant to the first sentence of this Section) and the Settling Parties shall continue to be bound by this Agreement and shall perform their respective obligations hereunder as if the Final Order and Judgment had been affirmed in its entirety on such appeal or discretionary review.

16.4    This Agreement shall terminate (the "Termination Date") upon the earlier to occur of (i) termination of this Agreement by any Party pursuant to the terms hereof, and (ii) the four year anniversary of the date of the entry of the Preliminary Approval Order. Effective on the Termination Date, the provisions of this Agreement shall immediately become void and of no further force and effect and there shall be no liability on the part of any of the Settling Parties, except for willful or knowing breaches of this Agreement prior to the time of such termination;

142

provided that in the event of a termination of this Agreement as contemplated by clause (ii) of this Section 16.4, (A) the provisions of Sections 9.6, 13.1, 13.2, 13.4, 13.6, 13.7, 17.2, 17.3, 18 and 19.14 shall survive such termination indefinitely, (B) the provisions of Section 7.10 shall survive such termination only with respect to, and only for so long as is necessary to resolve, any Billing Disputes that are in the process of being resolved in the Billing Dispute External Review Process as of the date of such termination and any disputes described in Section 7.11 that are being resolved pursuant to the Medical Necessity External Review Process as of the date of such termination, (C) the provisions of Section 7.12 shall survive such termination only with respect to, and only for so long as is necessary to resolve, any Disputes that are in the process of being resolved in that process as of the date of such termination and (D) the provisions of Section 15.2.f shall survive such termination only with respect to, and only for so long as is necessary to resolve, any Compliance Disputes that are in the process of being resolved by the Compliance Dispute Review Officer as of the date of such termination.  In the event of termination of this Agreement as contemplated by clause (ii) of this Section 16.4, CIGNA HealthCare agrees to file as of the Termination Date a document (the "Certification") with the Compliance Dispute Review Officer enumerating the items described elsewhere in this Agreement as required elements of such Certification.  CIGNA HealthCare shall provide a copy of such Certification to the members of the Physicians Advisory Committee.  Upon the filing of the duly completed Certification by CIGNA HealthCare on the Termination Date, all of CIGNA HealthCare's obligations under this Agreement shall be satisfied.  No decision or ruling of the Compliance Dispute Review Officer shall (except with respect to Clause "(D)" above) have any force on the Settling Parties after the Termination Date and CIGNA HealthCare shall be under no obligation to continue performance of any kind under this Agreement.  CIGNA HealthCare may, in its sole and absolute discretion, elect to continue after the Termination Date the implementation of various business practices described in this Agreement.

143

17.    **RELATED PROVIDER TRACK ACTIONS**

17.1    *Ordered Stays and Dismissals in Tag-Along Actions.*

As to any action brought by or on behalf of putative Class Members that asserts any claim that as of Final Approval would constitute a Released Claim against CIGNA HealthCare, other than the *Kaiser* or *Shane* actions, that has been, or will in the future, be consolidated with the Provider Track Actions under MDL Docket No. 1334 (the "Tag-Along Actions"), Plaintiffs, Class Counsel and CIGNA HealthCare shall cooperate to obtain an order of the Court, to be included in the Preliminary Approval Order, providing for the interim stay of all proceedings as to CIGNA HealthCare in each such action pending entry of the Final Order and Judgment, with respect to the claims that are Released Claims under this Agreement.  In addition, no later than ten (10) Business Days after Final Approval, Plaintiffs, Class Counsel and CIGNA HealthCare shall jointly apply for orders from the Court dismissing each of the Tag-Along Actions with prejudice as to Released Claims against CIGNA HealthCare; provided that no such dismissal order shall be sought with respect to any Tag-Along Action with respect to any named plaintiff that has timely submitted an Opt Out request.

17.2    *Certain Related State Court Actions.*

As to any action in which at least one Class Counsel is counsel of record that is now pending, hereafter may be filed in or remanded to any state court that asserts any of the Released Claims against CIGNA HealthCare on behalf of any Class Member, Plaintiffs and Class Counsel agree that they will cooperate with CIGNA HealthCare, and file all documents necessary (a) to obtain an interim stay of all proceedings against CIGNA HealthCare in any such state court action and (b) on or promptly after Final Approval, to obtain the dismissal with prejudice of any such action to the extent that it asserts Released Claims as to CIGNA HealthCare, other than with respect to any named plaintiff that has timely submitted an Opt Out request.

17.3    *Other Related Actions.*

As to any action not referred to in Sections 17.1 and 17.2 that is now pending or hereafter may be filed in any court that asserts any of the Released Claims against CIGNA HealthCare on behalf of any Class Member, Plaintiffs and Class Counsel agree that they will cooperate with CIGNA HealthCare, to the extent reasonably practicable, in CIGNA HealthCare's effort to seek relief from the Court or the forum court to obtain the interim stay and dismissal with prejudice of such action as to CIGNA HealthCare to the extent necessary to effectuate the other provisions of this Agreement.

## 18.    NOT EVIDENCE; NO ADMISSION OF LIABILITY

The Settling Parties agree that in no event shall this Agreement, in whole or in part, whether effective, terminated, or otherwise, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in *Kaiser* or *Shane* or in any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements or proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of CIGNA HealthCare, the Defendants or the Plaintiffs, or as a waiver by CIGNA HealthCare, the Defendants or the Plaintiffs of any applicable defense, including without limitation any applicable statute of limitations. None of the Settling Parties waives or intends to waive any applicable attorney-client privilege or work product protection or mediation privilege for any negotiations, statements or proceedings relating to this Agreement. The Settling Parties agree that this provision shall survive the termination of this Agreement pursuant to the terms hereof.

145

19.    **MISCELLANEOUS PROVISIONS**

19.1    *Obligations Under Federal or State Law.*

Except as provided in this Agreement, nothing in this Agreement is intended to waive or supersede any rights that Physicians or Signatory Medical Societies may have under state or federal law or regulations.

19.2    *Application to Insured Plans and Self-Funded Plans.*

This Agreement applies to CIGNA HealthCare's conduct with respect to both Insured Plans and Self-Funded Plans, except where otherwise specified or as provided by applicable law.

19.3    *No Obligation to Facilitate Submission of Proofs of Claim.*

CIGNA HealthCare has no obligation under this Agreement to provide information to facilitate the submission of any Proof of Claim except as specifically set forth in this Agreement.

19.4    *Amendment or Modification of Agreement.*

This Agreement may be amended or modified only by a written instrument signed by or on behalf of all signatories to this Agreement (or their successors in interest) and approved by the Court. Beginning eighteen (18) months after Final Approval, in the event CIGNA HealthCare encounters a change in circumstances that will cause performance or maintenance of one or more provisions of this Agreement to become impractical, it will provide notice thereof to Lead Counsel with an explanation of the changed circumstances and the proposed change in the Agreement. For this purpose, "impractical" shall mean a change in circumstances that would place CIGNA HealthCare at a meaningful competitive disadvantage, or would make performance or maintenance unduly burdensome, or would, on account of new technology, make continued performance or maintenance inefficient or less cost-effective relative to use of the new technology. Within thirty (30) days of the date of such notice, counsel for CIGNA HealthCare and Notice Counsel will meet and confer regarding the proposed change and will attempt in good faith to reach an agreement thereon. In this process, CIGNA HealthCare and Notice Counsel

146

will consider whether there is a more efficient way in which to fulfill the intent of the applicable aspect of the Agreement. If agreement is reached, CIGNA HealthCare and Notice Counsel will jointly apply to the Court for a modification of this Settlement Agreement. If within thirty (30) days after the date of the initial meeting of CIGNA HealthCare and Lead Counsel, agreement has not been reached, then CIGNA HealthCare may apply to the Court for a modification of this Settlement Agreement.

19.5    *Additional Signatory Medical Societies.*

Those additional medical societies desiring to become Signatory Medical Societies may do so by signing an agreement in the form attached hereto as Exhibit 15.

19.6    *Counterparts.*

This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Class Counsel and Defendants' Counsel shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court. If one or more Class Counsel or Kaiser Counsel, and/or one or more Class Representative Plaintiffs do not execute this Agreement, the Agreement shall be binding upon all signatories and shall nevertheless be presented to the Court for preliminary and final approval.

19.7    *Retention by Court of Jurisdiction.*

Without affecting the finality of the Final Order and Judgment entered in accordance with this Agreement, the Court shall retain exclusive jurisdiction with respect to the implementation and enforcement of the terms of this Agreement and all orders issued with respect to this Agreement. All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

19.8    *Notices, Notice Counsel, and Implementation of Agreement.*

Any notice to the parties required to be given under the terms of this Agreement shall be given in writing to Notice Counsel (the persons listed below) and Defendants' Counsel.  Notice Counsel are:

Archie C. Lamb, Jr.

Harley S. Tropin

Edith M. Kallas

These Class Counsel agree that they will promptly respond to any notice from CIGNA HealthCare, and they shall be responsible for informing CIGNA HealthCare of any decision by Class Counsel.

CIGNA HealthCare also agrees to provide all notices due under this Agreement to Debra Brewer Hayes.

Notices to Defendants' Counsel shall be submitted to:

| | |
|---|---|
| John G. Harkins, Jr. | Marty L. Steinberg |
| Eleanor Morris Illoway | Hunton & Williams |
| Harkins Cunningham LLP | Mellon Financial Center |
| 2800 One Commerce Square | 1111 Brickell Avenue, Suite 2500 |
| 2005 Market Street | Miami, FL  33131-3136 |
| Philadelphia, PA 19103-7042 | |

On behalf of CIGNA HealthCare, said counsel agree to respond promptly to any notice from Notice Counsel and shall be responsible for informing Notice Counsel of any decision by CIGNA HealthCare.

19.9    *Headings.*

The descriptive headings contained in this Agreement are for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

19.10   *Governing Law.*

This Agreement and all agreements, exhibits, and documents relating to this Agreement shall be construed under the laws of the State of Florida, excluding its choice of law rules.

148

19.11  *Entire Agreement.*

This Agreement, including its Exhibits, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the Settling Parties; it is not subject to any condition not provided for herein. This Agreement supersedes any prior agreements or understandings, whether written or oral, between and among Plaintiffs, Class Members, Class Counsel, Kaiser Counsel, and CIGNA HealthCare regarding the subject matter of the Litigation or this Agreement. This Agreement shall not be modified in any respect except by a writing executed by all the Settling Parties or as provided in Section 19.4.

19.12  *No Presumption Against Drafter.*

None of the Settling Parties shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof. This Agreement was drafted with substantial input by all Settling Parties and their counsel, and no reliance was placed on any representations other than those contained herein.

19.13  *Cooperation.*

Plaintiffs, Class Counsel and CIGNA HealthCare agree to move that the Court enter an order to the effect that should any Person desire any discovery incident to (or which the Person contends is necessary to) the approval of this Agreement, the Person must first obtain an order from the Court that permits such discovery.

19.14  *Successors and Assigns.*

The provisions of this Agreement shall be binding upon and inure to the benefit of the successors of the Settling Parties and shall be binding upon the assigns of the Class Members; provided that CIGNA HealthCare may not assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the consent of Notice Counsel.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed by their duly authorized attorneys or representative as of the date below.

Dated this 4 day of September , 2003.

By: *Michael W Bell*
　　Michael W. Bell
　　On Behalf of CIGNA HealthCare

By: _____
　　Archie C. Lamb, Jr.
　　Law Offices of Archie C. Lamb, LLC
　　2017 Second Avenue North
　　Birmingham, AL 35203

By: _____
　　Harley S. Tropin
　　Janet L. Humphreys
　　Adam M. Moskowitz
　　Kozyak Tropin & Throckmorton, PA
　　200 S. Biscayne Boulevard, Suite 2800
　　Miami, FL 33131

By: _____
　　Aaron S. Podhurst
　　Barry L. Meadow
　　Podhurst Orseck, PA
　　25 W. Flagler Street, Suite 800
　　Miami, FL 33130

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed by their duly authorized attorneys or representative as of the date below.

Dated this ___ day of _____, 2003.

By: _____

Michael W. Bell
On Behalf of CIGNA HealthCare

By: _____

Archie C. Lamb, Jr.
Law Offices of Archie C. Lamb, LLC
2017 Second Avenue North
Birmingham, AL 35203

By: _____

Harley S. Tropin
Janet L. Humphreys
Adam M. Moskowitz
Kozyak Tropin & Throckmorton, PA
200 S. Biscayne Boulevard, Suite 2800
Miami, FL 33131

By: _____

Aaron S. Podhurst
Barry L. Meadow
Podhurst Orseck, PA
25 W. Flagler Street, Suite 800
Miami, FL 33130

By: _____

Nicholas B. Roth
Eyster Key Tubb Weaver & Roth, LLP
402 East Moulton Street, SE
Eyster Building
Decatur, AL 35601

By: _____

Joe R. Whatley, Jr.
Charlene P. Ford
Pamela F. Colbert
Othni J. Lathram
Whatley Drake, LLC
2323 Second Avenue North
Birmingham, AL 35203

By: _____

Edith M. Kallas
Joseph P. Guglielmo
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza
New York, NY 10119

By: _____

Dennis G. Pantazis
Wiggins, Childs, Quinn & Pantazis
1400 South Trust Tower
420 North 20th Street
Birmingham, AL 35203

By: _____

J. Mark White
White Dunn & Booker
2025 3rd Avenue North, Suite 600
Birmingham, AL 35203


By: _____

Ralph Knowles
Kenneth S. Canfield
Doffermyre Shields Canfield
Knowles & Devine
1355 Peachtree Street, Suite 1600
Atlanta, GA 30309


By: _____

Jeffery A. Mobley
Lowe Mobley & Lowe
1210 – 21st Street
Haleyville, AL 35565


By: _____

Mark Gray
Gray & Weiss
1200 PNC Plaza
500 West Jefferson
Louisville, KY 40202


By: _____

Robert Foote
Foote & Meyers
416 South Second Street
Geneva, IL 60134

By: _____

James B. Tilghman
Stewart Tilghman Fox & Bianchi
1 SE 3rd Avenue, Suite 3000
Miami, FL 33131-1764


By: _____

James E. Hartley, Jr.
Drubner Hartley & O'Connor
500 Chase Parkway, 4th Floor
Waterbury, CT 06708


By: _____

Guido Saveri
R. Alexander Saveri
Cadio Zirpoli
Saveri & Saveri
111 Pine Street, Suite 1700
San Francisco, CA 94111-5619


KAISER COUNSEL


By: _____

Judy L. Cates
Troy A. Doles
Jodi L. Wilson
The Cates Law Firm, LLC
10 Executive Woods Court
Belleville, Illinois 62226
Telephone: (618) 277-1180
Fax: (618) 222-6939

By: _Michael C. Dodge_

Michael C. Dodge
David W. Dodge
Dodge, Anderson & Jones, P.C.
One Lincoln Centre
5400 LBJ Freeway, Suite 800
Dallas, Texas 75240
Telephone: (972) 960-3200
Fax: (972) 341-5201


By: _____

Debra Brewer Hayes
Dennis Reich
Reich & Binstock
4265 San Felipe, Suite 1000
Houston, Texas 77027
Telephone: (713) 622-7272
Fax: (713) 623-8724

By: _____

    Michael C. Dodge
    David W. Dodge
    Dodge, Anderson & Jones, P.C.
    One Lincoln Centre
    5400 LBJ Freeway, Suite 800
    Dallas, Texas 75240
    Telephone: (972) 960-3200
    Fax: (972) 341-5201

By: _____

    Debra Brewer Hayes
    Dennis Reich
    Reich & Binstock
    4265 San Felipe, Suite 1000
    Houston, Texas 77027
    Telephone: (713) 622-7272
    Fax: (713) 623-8724

Eugene Mangieri, M.D.

_____

Glenn Kelly, M.D.

_____

Leonard Klay, M.D.

_____

Charles B. Shane, M.D.

_____

Jeffrey Book, D.O.

_____

Andres Taleisnik, M.D.

_____

Julio Taleisnik, M.D.

_____

David Boxstein, M.D.

_____

Roger Wilson, M.D.

Eugene Mangieri, M.D.

Glenn Kelly, M.D.

Leonard Klay, M.D.

Charles B. Shane, M.D.

Jeffrey Book, D.O.

Andres Taleisnik, M.D.

Julio Taleisnik, M.D.

David Boxstein, M.D.

Roger Wilson, M.D.

Eugene Mangieri, M.D.

Glenn Kelly, M.D.

Leonard Klay, M.D.

Charles B. Shane, M.D.

Jeffrey Book, D.O.

Andres Taleisnik, M.D.

Julio Taleisnik, M.D.

David Boxstein, M.D.

Roger Wilson, M.D.

_____
Eugene Mangieri, M.D.


_____
Glenn Kelly, M.D.


_____
Leonard Klay, M.D.


_____
Charles B. Shane, M.D.


_____
Jeffrey Book, D.O.


_____
Andres Taleisnik, M.D.


_____
Julio Taleisnik, M.D.


_____
David Boxstein, M.D.


_____
Roger Wilson, M.D.

_____
Eugene Mangieri, M.D.


_____
Glenn Kelly, M.D.


_____
Leonard Klay, M.D.


_____
Charles B. Shane, M.D.


_____
Jeffrey Book, D.O.


_____
Andres Taleisnik, M.D.


_____
Julio Taleisnik, M.D.


_____
David Boxstein, M.D.


_____
Roger Wilson, M.D.

_____
Eugene Mangieri, M.D.


_____
Glenn Kelly, M.D.


_____
Leonard Klay, M.D.


_____
Charles B. Shane, M.D.


_____
Jeffrey Book, D.O.


_____
Andres Taleisnik, M.D.


_____
Julio Taleisnik, M.D.


_____
David Boxstein, M.D.


_____
Roger Wilson, M.D.

_____

Eugene Mangieri, M.D.


_____

Glenn Kelly, M.D.


_____

Leonard Klay, M.D.


_____

Charles B. Shane, M.D.


_____

Jeffrey Book, D.O.


_____

Andres Taleisnik, M.D.


_____

Julio Taleisnik, M.D.


_____

David Boxstein, M.D.


_____

Roger Wilson, M.D.

_____
Eugene Mangieri, M.D.


_____
Glenn Kelly, M.D.


_____
Leonard Klay, M.D.


_____
Charles B. Shane, M.D.


_____
Jeffrey Book, D.O.


_____
Andres Taleisnik, M.D.


_____
Julio Taleisnik, M.D.


_____
David Boxstein, M.D.


_____
Roger Wilson, M.D.

_Susan P. Hansen, M.D._
Susan Hansen, M.D.


_____
Edward Davis, M.D.


_____
Thomas Backer, M.D.


_____
Martin Moran, M.D.


_____
H. Robert Harrison, M.D.


_____
Lance R. Goodman, M.D.


_____
Manual Porth, M.D.


_____
Mike Burgess, M.D.


_____
Kevin Molk, M.D.

_____
Susan Hansen, M.D.


_____
Edward Davis, M.D.


_____
Thomas Becker, M.D.


_____
Martin Moran, M.D.


_____
H. Robert Harrison, M.D.


_____
Lance R. Goodman, M.D.


_____
Manual Porth, M.D.


_____
Mike Burgess, M.D.


_____
Kevin  Molk, M.D.

Susan Hansen, M.D.


Edward Davis, M.D.


Thomas Backer, M.D.


Martin Moran, M.D.


H. Robert Harrison, M.D.


Lance R. Goodman, M.D.


Manual Porth, M.D.


Mike Burgess, M.D.


Kevin Molk, M.D.

_____
Susan Hanson, M.D.


_____
Edward Davis, M.D.


_____
Thomas Backer, M.D.


_____
Martin Moran, M.D.

_____
H. Robert Harrison, M.D.


_____
Lance R. Goodman, M.D.


_____
Manual Porth, M.D.


_____
Mike Burgess, M.D.


_____
Kevin Molk, M.D.

Susan Hansen, M.D.

Edward Davis, M.D.

Thomas Backer, M.D.

Martin Moran, M.D.

H. Robert Harrison, M.D.

Lance R. Goodman, M.D.

Manual Porth, M.D.

Mike Burgess, M.D.

Kevin Molk, M.D.

Susan Hansen, M.D.

Edward Davis, M.D.

Thomas Backer, M.D.

Martin Moran, M.D.

H. Robert Harrison, M.D.

Lance R. Goodman, M.D.

Manual Porth, M.D.

Mike Burgess, M.D.

Kevin Molk, M.D.

_____
Susan Hansen, M.D.


_____
Edward Davis, M.D.


_____
Thomas Backer, M.D.


_____
Martin Moran, M.D.


_____
H. Robert Harrison, M.D.


_____
Lance R. Goodman, M.D.


_____
Manual Porth, M.D.


_____
Mike Burgess, M.D.


_____
Kevin Molk, M.D.

_____
Susan Hansen, M.D.


_____
Edward Davis, M.D.


_____
Thomas Backer, M.D.


_____
Martin Moran, M.D.


_____
H. Robert Harrison, M.D.


_____
Lance R. Goodman, M.D.


_____
Manual Porth, M.D.


_____
Mike Burgess, M.D.


_____
Kevin Molk, M.D.

Timothy N. Kaiser, M.D.

Suzanne LeBel Corrigan, M.D.

F. Scott Gray, M.D.

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

F. Scott Gray, M.D.

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

Michael Hellstrom, M.D.

Lawrence Weiner, M.D.

Zachary Rosenberg, M.D.

F. Scott Gray, M.D.

_Sue McIntosh_, MD

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

Michael Hellstrom, M.D.

Lawrence Weiner, M.D.

Zachary Rosenberg, M.D.

F. Scott Gray, M.D.

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

Michael Hellstrom, M.D.

Lawrence Weiner, M.D.

Zachary Rosenberg, M.D.

F. Scott Gray, M.D.

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

Michael Hellstrom, M.D.

Lawrence Weiner, M.D.

Zachary Rosenberg, M.D.

F. Scott Gray, M.D.

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

Michael Hellstrom, M.D.

Lawrence Weiner, M.D.

Zachary Rosenberg, M.D.

_____
F. Scott Gray, M.D.


_____
Sue McIntosh, M.D.


_____
J. Kevin Lynch, M.D.


_____
Karen Laugel, M.D.


_____
Stephen R. Levinson, M.D.


_____
Edgar Borrero, M.D.


_____
Malcolm Gottesman, M.D.


_____
Michael Hellstrom, M.D.


_____
Lawrence Weiner, M.D.


_____
Zachary Rosenberg, M.D.

F. Scott Gray, M.D.

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

Michael Hellstrom, M.D.

Lawrence Weiner, M.D.

Zachary Rosenberg, M.D.

F. Scott Gray, M.D.

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

Michael Hellstrom, M.D.

Lawrence Weiner, M.D.          (for L. Weiner ... signed by David Perrick, MD)

Zachary Rosenberg, M.D.

F. Scott Gray, M.D.

Sue McIntosh, M.D.

J. Kevin Lynch, M.D.

Karen Laugel, M.D.

Stephen R. Levinson, M.D.

Edgar Borrero, M.D.

Malcolm Gottesman, M.D.

Michael Hellstrom, M.D.

Lawrence Weiner, M.D.

Zachary Rosenberg, M.D.

SIGNATORY MEDICAL SOCIETIES:

ALASKA STATE MEDICAL ASSOCIATION

Name: Alex Malter, MD
Title:  President


Name: James J. Jordan
Title:  Executive Director

SIGNATORY MEDICAL SOCIETIES:

ALASKA STATE MEDICAL ASSOCIATION

Name: Alex Malter, MD
Title:  President

Name: James J. Jordan
Title:  Executive Director

CONNECTICUT STATE MEDICAL
  SOCIETY

Name:  Timothy B. Norbeck
Title:   Executive Director


Name:  Isaac Goodrich, MD
Title:   President

EL PASO COUNTY MEDICAL
  SOCIETY

Name: Ripley R. Hollister, M.D.
Title:   President

Name: Patricia A. Fodor, M.D.
Title:   President Elect

Name: Larry A. Moore, M.D.
Title:   EPCMS Board of Directors

EL PASO COUNTY MEDICAL SOCIETY

Patricia A. Fodor, M.D.
President-Elect

Ripley R. Hollister, M.D.
President

Larry A. Moore
EPCMS Board of Directors

HAWAII MEDICAL ASSOCIATION

Name: Calvin Wong
Title: President

NEBRASKA MEDICAL ASSOCIATION

Name: Sandra A. Johnson
Title:   Executive Vice President

.

NEW HAMPSHIRE MEDICAL SOCIETY

*Peter L. Forssell, MD   Pres N.H. Medical Soc.*

Name: Peter L. Forssell, M.D.
Title:   President

MEDICAL SOCIETY OF NEW JERSEY

Name: Mark T. Olesnicky, M.D.
Title:   President

MEDICAL SOCIETY OF THE STATE OF
   NEW YORK

Name: Charles N. Aswad, M.D.
Title:   EVP/CEO

MEDICAL SOCIETY OF THE STATE OF
NEW YORK

Name: Jeffrey A. Ribner, M.D.
Title:   President

NORTH CAROLINA MEDICAL SOCIETY

Name: Robert W. Seligson
Title:   Executive Vice President, CEO

SOUTH CAROLINA MEDICAL SOCIETY

Name: Todd K. Atwater
Title: Chief Exccutive Officer

TENNESSEE MEDICAL ASSOCIATION

Name:
Title:

Mary Schmidt, M.D.
President, Medical Society of
Northern Virginia (formerly Fairfax County
and Alexandria Medical Societies)


Nirmala Limaye, M.D.
President, Arlington County Medical Society


Kenneth Josovitz, M.D.
President, Prince William County Medical
Society

Randall Peyton, M.D.
President, Loudoun County
Medical Society


**Collectively known as, and on behalf of,
Northern Virginia Medical Societies**

Mary Schmidt, M.D.
President, Medical Society of
Northern Virginia (formerly Fairfax County
and Alexandria Medical Societies)

Nirmala Limaye, M.D.
President, Arlington County Medical Society

Kenneth Josovitz, M.D.
President, Prince William County Medical
Society

Randall Peyton, M.D.
President, Loudoun County
Medical Society

**Collectively known as, and on behalf of,
Northern Virginia Medical Societies**

WASHINGTON STATE MEDICAL
ASSOCIATION


_____

Name:
Title:

CALIFORNIA MEDICAL ASSOCIATION

Name: _____

Title:

MEDICAL ASSOCIATION OF GEORGIA

Name: _____

Title: President, MAG

FLORIDA MEDICAL ASSOCIATION


Carl Lentz, MD
President

LOUISIANA STATE MEDICAL SOCIETY

Name:
Title:

DENTON COUNTY MEDICAL ASSOCIATION

Name:

Title

TEXAS MEDICAL ASSOCIATION

Name: Donald P. Wilcox

Title: General Counsel

VERMONT MEDICAL SOCIETY

Name: Paul Harrington
Title:   Executive Vice President

# Category One Code List

| Dropped Code | Paid Code | Date of Service | Fee |
|---|---|---|---|
| 11100 | 11300 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 11301 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 11302 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 11303 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 11305 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 11306 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 11307 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 11308 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 11310 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 11311 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 11312 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 11313 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 11400 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17000 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 17003 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 17004 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17106 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17107 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17108 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17110 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 17111 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 17250 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 17260 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17261 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17262 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17263 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17264 | January 1, 1996 – September 30, 1999 | $40.94 |
| 11100 | 17266 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17270 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17271 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17272 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17273 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17274 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17276 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17280 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17281 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17282 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17283 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17284 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17286 | January 1, 1996 – September 30, 1999 | $40.94‡ |

‡ Multiple Procedure Logic applied.
* Additional documentation required.

**EXHIBIT 1**

| Dropped Code | Paid Code | Date of Service | Fee |
|---|---|---|---|
| 11100 | 17304 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17305 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17306 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17307 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17310 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17340 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 17360 | January 1, 1996 – September 30, 1999 | $40.94‡ |
| 11100 | 17380 | January 1, 1996 – September 30, 1999 | $81.87 |
| 11100 | 17399 | January 1, 1996 – September 30, 1999 | $81.87 |
| | | | |
| 17000 | 11300 | January 1, 1996 – September 30, 1999 | $58.53 |
| 17000 | 11301 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11302 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11303 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11305 | January 1, 1996 – September 30, 1999 | $58.53 |
| 17000 | 11306 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11307 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11308 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11310 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11311 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11312 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11313 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| 17000 | 11400 | January 1, 1996 – September 30, 1999 | $29.27‡ |
| | | | |
| 17003 | 11300 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11301 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11302 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11303 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11305 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11306 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11307 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11308 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11310 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11311 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11312 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11313 | January 1, 1996 – September 30, 1999 | $14.16 |
| 17003 | 11400 | January 1, 1996 – September 30, 1999 | $14.16 |
| | | | |
| 17004 | 11300 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11301 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11302 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11303 | January 1, 1996 – September 30, 1999 | $205.45 |

‡ Multiple Procedure Logic applied.
* Additional documentation required.

**EXHIBIT 1**

| Dropped Code | Paid Code | Date of Service | Fee |
|---|---|---|---|
| 17004 | 11305 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11306 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11307 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11308 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11310 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11311 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11312 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11313 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17004 | 11400 | January 1, 1996 – September 30, 1999 | $205.45 |
| 17250* | 36415 | January 1, 1996 to the present | $43.23 |
| 30140 | 31256 | January 1, 1996 to the present | $298.80 |
| 30140 | 31267 | January 1, 1996 to the present | $149.40‡ |
| 30140 | 31276 | January 1, 1996 to the present | $149.40‡ |
| 30140 | 31287 | January 1, 1996 to the present | $298.80 |
| 30140 | 31288 | January 1, 1996 to the present | $149.40‡ |
| 30520 | 31231 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31233 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31235 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31237 | January 1, 1996 – September 30, 2000 | $462.54 |
| 30520 | 31238 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31239 | January 1, 1996 – September 30, 1999 | $231.27‡ |
| 30520 | 31240 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31254 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31255 | January 1, 1996 – September 30, 1999 | $231.27‡ |
| 30520 | 31256 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31267 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31276 | January 1, 1996 – September 30, 1999 | $231.27‡ |
| 30520 | 31287 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31288 | January 1, 1996 – September 30, 1999 | $462.54 |
| 30520 | 31290 | January 1, 1996 – September 30, 1999 | $231.27‡ |
| 30520 | 31292 | January 1, 1996 – September 30, 1999 | $231.27‡ |
| 30520 | 31293 | January 1, 1996 – September 30, 1999 | $231.27‡ |
| 30520 | 31294 | January 1, 1996 – September 30, 1999 | $231.27‡ |
| 30901 | Evaluation and Management Code (99211-99499) | January 1, 1996 to the present | $114.39 |
| 31240 | 31254 | January 1, 1996 to the present | $90.87‡ |

‡ Multiple Procedure Logic applied.
\* Additional documentation required.

**EXHIBIT 1**

| Dropped Code | Paid Code | Date of Service | Fee |
|---|---|---|---|
| 31240 | 31255 | January 1, 1996 to the present | $90.87‡ |
| 31240 | 31256 | January 1, 1996 to the present | $90.87‡ |
| 31240 | 31267 | January 1, 1996 to the present | $90.87‡ |
| 31240 | 31276 | January 1, 1996 to the present | $90.87‡ |
| 31240 | 31287 | January 1, 1996 to the present | $90.87‡ |
| 31240 | 31288 | January 1, 1996 to the present | $90.87‡ |
| 35471 | 37205 | January 1, 1996 – March 30, 2001 | $656.51 |
| 35473 | 37205 | January 1, 1996 – March 30, 2001 | $200.67‡ |
| 36145* | 85018 | January 1, 1996 to the present | $125.10 |
| 36535 | 36535 | January 1, 1996 – September 30, 2000 | $98.52‡ |
| 42826 | 42145 | January 1, 1996 to the present | $140.22‡ |
| 43239 | 43248 | January 1, 1996 – November 30, 2001 | $286.17 |
| 43239 | 43249 | January 1, 1996 – November 30, 2001 | $286.17 |
| 45384 | 45385 | January 1, 1996 to the present | $227.06‡ |
| 57170 | Evaluation and Management Code (99211-99499) | January 1, 1996 to the present | $81.11 |
| 58300 | Evaluation and Management Code (99211-99499) | January 1, 1996 to the present | $90.29 |
| 58301 | Evaluation and Management Code (99211-99499) | January 1, 1996 to the present | $102.15 |
| 59025 | Evaluation and Management Code (99211-99499) | January 1, 1996 – September 30, 2000 | $43.61 |
| 69210 | Evaluation and Management Code (99211-99499) | January 1, 1996 – March 1, 2003 | $53.98 |

‡ Multiple Procedure Logic applied.
* Additional documentation required.

**EXHIBIT 1**

| Dropped Code | Paid Code | Date of Service | Fee |
|---|---|---|---|
| 72193* | 73000-73725 | January 1, 1996 to the present | $337.44 |
| 72193* | 74160 | January 1, 1996 to the present | $337.44 |
| 74160* | 72193 | January 1, 1996 to the present | $343.56 |
| 76946 | 76805 | January 1, 1996 – March 30, 2001 | $82.25 |
| 81002 | Evaluation and Management Code (99201-99499) | January 1, 1996 – March 1, 2003 | $3.37 |
| 81003 | Evaluation and Management Code (99201-99499) | January 1, 1996 – March 1, 2003 | $2.94 |
| 85018* | 36415 | January 1, 1996 to the present | $3.38 |
| 85095 | 85102 | January 1, 1996 – March 30, 2000 | $177.90 |
| 95900 | 95903 | January 1, 1996 – September 30, 2000 | $44.00 |
| 97001 | 97110 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97112 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97113 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97116 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97124 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97139 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97140 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97150 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97260 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97504 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97530 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97532 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97533 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97535 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97537 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97542 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97545 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97545 | March 1, 2000 – September 30, 2000 | $69.63 |
| 97001 | 97546 | March 1, 2000 – September 30, 2000 | $69.63 |

‡ Multiple Procedure Logic applied.
* Additional documentation required.

**EXHIBIT 1**

| Dropped Code | Paid Code | Date of Service | Fee |
|---|---|---|---|
| 99050 | Evaluation and Management Code (99201-99499) | November 1, 2001 – March 30, 2002 | $22.69 |
| 99211 | 29520 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 29520 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 29520 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 29520 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 29520 | January 1, 1996 – August 1, 2002 | $117.07 |
| 99211 | 29540 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 29540 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 29540 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 29540 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 29540 | January 1, 1996 – August 1, 2002 | $117.07 |
| 99211 | 29550 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 29550 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 29550 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 29550 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 29550 | January 1, 1996 – August 1, 2002 | $117.07 |
| 99211 | 29580 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 29580 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 29580 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 29580 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 29580 | January 1, 1996 – August 1, 2002 | $117.07 |
| 99211 | 30300 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 30300 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 30300 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 30300 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 30300 | January 1, 1996 – August 1, 2002 | $117.07 |
| 99211 | 54450 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 54450 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 54450 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 54450 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 54450 | January 1, 1996 – August 1, 2002 | $117.07 |
| 99211 | 90471 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 90471 | January 1, 1996 – August 1, 2002 | $35.96 |

‡ Multiple Procedure Logic applied.
* Additional documentation required.

**EXHIBIT 1**

| Dropped Code | Paid Code | Date of Service | Fee |
|---|---|---|---|
| 99213 | 90471 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 90471 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 90471 | January 1, 1996 – August 1, 2002 | $117.07 |
|  |  |  |  |
| 99211 | 90472 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 90472 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 90472 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 90472 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 90472 | January 1, 1996 – August 1, 2002 | $117.07 |
|  |  |  |  |
| 99211 | 90473 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 90473 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 90473 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 90473 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 90473 | January 1, 1996 – August 1, 2002 | $117.07 |
|  |  |  |  |
| 99211 | 98925 | January 1, 1996 – August 1, 2002 | $19.89 |
| 99212 | 98925 | January 1, 1996 – August 1, 2002 | $35.96 |
| 99213 | 98925 | January 1, 1996 – August 1, 2002 | $50.50 |
| 99214 | 98925 | January 1, 1996 – August 1, 2002 | $78.81 |
| 99215 | 98925 | January 1, 1996 – August 1, 2002 | $117.07 |

‡ Multiple Procedure Logic applied.
* Additional documentation required.

**EXHIBIT 1**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### MDL NO.: 1334

**IN RE: MANAGED CARE LITIGATION**

---

**THIS DOCUMENT RELATES ONLY TO**
**PROVIDER TRACK CASES**

---

**CHARLES B. SHANE, M.D., et al.**

**Plaintiffs,**

**v.**

**HUMANA, INC.; AETNA, INC.; AETNA –USHC, INC.;**
**CIGNA; COVENTRY HEALTH CARE, INC.;**
**HEALTH NET, INC.; HUMANA HEALTH PLAN, INC.;**
**PACIFICARE HEALTH SYSTEMS, INC.; PRUDENTIAL**
**INSURANCE COMPANY OF AMERICA; UNITED HEALTH**
**GROUP; UNITED HEALTH CARE; WELLPOINT HEALTH**
**NETWORKS, INC.; AND ANTHEM, INC.**

**Defendants.**

---

**TIMOTHY N. KAISER, M.D., and SUZANNE LeBEL**
**CORRIGAN, M.D., on behalf of a class of others similarly situated,**

**Plaintiffs,**

**v.**

**CIGNA CORPORATION; CIGNA HEALTHCARE OF**
**ST. LOUIS, INC.; and CIGNA HEALTHCARE OF**
**TEXAS, INC.,**

**Defendants.**

---

## ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT AMONG CIGNA HEALTHCARE AND PHYSICIANS

The Court having reviewed and considered the Joint Motion for

Preliminary Approval of Settlement Among *CIGNA HealthCare* and Physicians ("Joint

Motion") filed on September 4, 2003, and having reviewed and considered the terms and

**EXHIBIT 2**

conditions of the proposed Settlement as set forth in the Settlement Agreement Among

CIGNA HealthCare and Physicians dated September 4, 2003 (the "Agreement"), a copy

of which has been submitted with the Joint Motion, and on the basis of such submissions,

together with any other submissions by the parties in support of the Joint Motion, and all

prior proceedings had in this consolidated multi-district litigation, good cause for this

Order having been shown,

### NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The terms of the Agreement are hereby *preliminarily* approved,

subject to further consideration at the Fairness Hearing provided for below. The Court

concludes that the proposed Settlement is sufficiently within the range of reasonableness

to warrant the conditional certification of the settlement Class, the scheduling of the

Fairness Hearing and the circulation of Initial Notice to the Class, each as provided for in

this Order. Capitalized terms in this Order should have the meaning assigned to them in

the Agreement unless otherwise defined herein.

### Conditional Certification of the Class

2. For purposes of settlement only, pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2) and (b)(3), solely with respect to CIGNA HealthCare and the

other Released Persons, a settlement class is hereby conditionally certified as follows (the

"Class"):

> any and all Physicians, Physician Groups and Physician Organizations
> (and all Persons claiming by or through them, such as Physicians'
> Assistants and Advanced Practice Registered Nurses), who or which
> provided Covered Services to any CIGNA HealthCare member or any
> individual enrolled in or covered by a plan offered or administered by any
> Person named as a defendant in the *Shane* complaint or by any of their
> respective current or former Subsidiaries from August 4, 1990 through the
> date of the entry of the Preliminary Approval Order; provided, however,

that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services.

Class Representative Plaintiffs are hereby conditionally certified as representatives of the Class defined above. This conditional certification of the Class and Class representatives is solely for purposes of effectuating the proposed Settlement. If the Agreement is terminated or is not consummated for any reason, the foregoing conditional certification of the Class and appointment of Class representatives shall be void and of no further effect and the parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order without prejudice to any legal argument that any of the parties to the Agreement might have asserted but for the Agreement, and provided that in such circumstances any further ruling by this Court or an appellate court on the propriety of this Court's order dated September 26, 2002, certifying classes in *In re Managed Care Litigation*, MDL 1334, shall apply to the Released Persons as if the Released Persons had participated in further proceedings with respect to that Order.

Based on the Court's review of the Joint Motion and supporting materials, the Court conditionally finds that the proposed Class satisfies Rule 23(a) of the Federal Rules of Civil Procedure in that:

A.      The Class, which consists of hundreds of thousands of Physicians, Physician Groups and Physician Organizations, is so numerous that joinder of all Persons who fall within the class definition is impracticable;

B.      The commonality requirement is satisfied where members of the Class share at least one common legal or factual issue. Here, there are questions of law common to the Class, including allegations under RICO and other causes of action as set forth in the Plaintiffs' Third Amended Complaint in *Kaiser* and in the Second Amended Consolidated Class Action Complaint in *Shane*. There are also questions of fact common to the Class, including certain factual

3

issues related to whether computer systems were inadequate and whether computer programs were systematically used to improperly deny or delay payment for health care services furnished by members of the Class;

C.     The claims of the Class representatives are typical of the claims of the Class; and

D.     The Class representatives will fairly and adequately protect the interests of the Class and are represented by qualified counsel who are competent to represent the Class and prosecute this Litigation.

The Court further conditionally finds that the proposed Class satisfies Rule 23(b)(2) of the Federal Rules of Civil Procedure in that CIGNA HealthCare is alleged to have acted on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive relief with respect to the Class as a whole. The Court notes that the terms of the Agreement include substantial injunctive relief.

The Court further conditionally finds that the proposed Class satisfies Rule 23(b)(3) of the Federal Rules of Civil Procedure which requires that common issues predominate and that a class action is superior to other available methods for the fair and efficient resolution of this controversy. The Court notes that the terms of the Agreement include procedures for resolving claim disputes, including mechanisms for independent external review and other independent decision-makers, that absolve individual Class Members, for example, from having to prove, pursuant to RICO, that they relied to their detriment on alleged misrepresentations and nondisclosures, with the result that the Court need not resolve many individual factual and legal issues that might otherwise arise. The Court further notes that because the Litigation is being settled, rather than litigated, it need not consider the manageability issues that would be presented by a nationwide class litigation with respect to such individualized issues. *Amchem Prods., Inc. v. Windsor,*

4

117 S. Ct. 2231, 2240 (1997). Against this background, and in light of the Complaints'

allegations of systemic computer and claims processing issues, the Court conditionally

finds that common issues predominate and that a class action is superior to other

available methods for the fair and efficient resolution of this controversy.

<u>Fairness Hearing; Right to Appear and Object</u>

3.     A Fairness Hearing shall take place before the undersigned, United

States District Judge Federico A. Moreno, at the United States Courthouse, Courtroom

IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132,

on _____, at _____, to determine:

(a)     whether the Court should certify the Class and whether

Class representatives and Class Counsel have adequately represented the Class;

(b)     whether the proposed Settlement, on the terms and

conditions provided for in the Agreement, should be finally approved by the Court as fair,

reasonable and adequate;

(c)     whether the Released Claims of the Class Members in this

Litigation should be dismissed on the merits and with prejudice as to CIGNA

HealthCare;

(d)     whether the application for attorneys' fees, costs and

expenses to be submitted by Class Counsel and Kaiser Counsel in connection with the

Fairness Hearing should be approved;

(e)     whether the application for incentive awards to Class

representatives to be submitted in connection with the Fairness Hearing should be

approved;

(f)      whether each Tag-Along Action should be dismissed with prejudice as to Released Claims against CIGNA HealthCare with the exception of any Tag-Along Action with respect to any named plaintiff that has timely submitted an Opt Out request; and

(g)      such other matters as the Court may deem necessary or appropriate.

4.      The Court may finally approve the proposed Settlement at or after the Fairness Hearing with any modifications agreed to by the Settling Parties and without further notice to the members of the Class.

5.      Any putative Class Member who or which has not timely and properly provided notice of an election to Opt Out of the Class and the proposed settlement in the manner set forth below, and any other interested Person, may appear at the Fairness Hearing in person or by counsel and be heard, to the extent allowed by the Court, either in support of or in opposition to the matters to be considered at the hearing, provided, however, that no putative Class Member who or which has elected to Opt Out from the Class shall be entitled to object; and provided further that no Person shall be heard, and no papers, briefs or other submissions shall be considered by the Court in connection with its consideration of those matters, unless on or before _____, 2003 **[Objection Date – 60 days after original notice]**, such Person:

(a)      files with the Court a notice of such Person's intention to appear, together with a written statement of objection setting forth such Person's objections, if any, to the matters to be considered and the basis therefore, together with all

other support, papers or briefs that he, she or it wishes the Court to consider and intends to rely upon at the Fairness Hearing, and

(b)     serves copies of all such materials either by hand or overnight delivery, on Notice Counsel and Defendants' Counsel at the addresses specified in the Initial Notice.  All responses by the Settling Parties to objections shall also be served by hand or overnight delivery on the objecting Person or his, her or its attorney.  Objectors' papers may be supplemented ten (10) days prior to the Fairness Hearing following the filing of any responsive papers by the Settling Parties and served in the manner and on counsel described above.

6.     The Court may adjourn the Fairness Hearing, or any adjournment thereof, including the consideration of the application for attorneys' fees, costs and expenses, without further notice of any kind other than an announcement of such adjournment in open court at the Fairness Hearing or any adjournment thereof.

Form and Timing of Notice

7.     The Initial Notice substantially in the form attached as Exhibits 6 and 7 to the Agreement is hereby approved.

8.     The Plan of Notice attached as Exhibit 5 to the Agreement is approved.

9.     Costs of providing Notice shall be paid as set forth in the Agreement.

10.     Pursuant to the Plan of Notice, the Settling Parties, in cooperation with the Settlement Administrator, shall cause the Initial Notice, substantially in the form attached as Exhibit 6 to the Agreement, to be sent by first class mail to the addresses of

all Persons set forth on the Class List within thirty (30) days of entry of this Order or by

_____, 2003.  Notice to any individual Physician at his or her business address is

sufficient notice to that Physician's Physician Group or Physician Organization.  Notice

shall also be sent to any Person who requests it from the Settlement Administrator or

Class Counsel.

       11.     In addition to the mailing of the Initial Notice as called for in

paragraph 10 of this Order, the Settling Parties shall perform the other steps of

publication notice to the Class as detailed in the Plan of Notice, including but not limited

to the following:

         A.     By _____, 2003 **[no later than thirty (30) days prior to the Opt Out Deadline]**, the summary form of the Initial Notice, substantially in the form attached as Exhibit 7 to the Agreement, will have been published in the legal notices sections of the national editions of *The Wall Street Journal* and *USA Today* one day a week for two consecutive weeks.  In addition, to the extent reasonably practicable within the schedule fixed by the Court, the Settling Parties will seek to have the summary form of Initial Notice published at least once, no later than _____, 2003 **[30 days prior to the Opt Out Deadline]**, in a nationwide periodical addressing issues of concern to Physicians, such as *The Journal of the American Medical Association* or *The American Medical News*.

         B.     An internet website will be created and maintained by the Settlement Administrator that will be available for public access by ____ **[within thirty (30) days after the date of the entry of the Preliminary Approval Order]**.  The website will allow putative Class Members to download, view and print copies of the forms of Initial Notice and will contain an automated number and e-mail address maintained by the Settlement Administrator.  It will also contain a link to the website maintained by Class Counsel.

12.     Having considered the manner of giving Initial Notice to putative

Class Members as described in the Plan of Notice, the Court finds that the notice given in

the form and manner provided as set forth in paragraphs 7 through 11 of this Order and in

the Plan of Notice is the best means of notice to members of the Class that is practicable

under the circumstances and, when completed, shall constitute due and sufficient notice

of the proposed Settlement and the Fairness Hearing to all Persons affected by and/or

entitled to participate in the proposed Settlement or the Fairness Hearing, in full

compliance with the requirements of due process and the Federal Rules of Civil

Procedure.

<u>Ability of Putative Class Members to Opt Out of Settlement Class</u>

13.     All putative Class Members who wish to Opt Out of the Class must

do so by sending a written request for exclusion to the Settlement Administrator by first-

class mail to the address in the Initial Notice, signed by the putative Class Members and

providing all information called for in the Initial Notice.  To be considered timely, and

thereby effectively exclude a Person from the Class, the envelope delivering a completed

Opt Out request for such Person must be postmarked no later than _____, 2003 (the

"Opt Out Deadline" **[60 days after Notice Date]**).  At the Fairness Hearing, the

Settlement Administrator shall file an Affidavit or Declaration with the Clerk of the

Court (with a copy to Class Counsel and Defendants' Counsel) attaching a final list in

machine-readable form of those Opt Out requests filed by the Opt Out Deadline and not

then revoked.

14.     Any putative Class Member that does not properly and timely

request exclusion from the Class (or who requests exclusion but revokes that request as

permitted by the Agreement) shall be included in such Class and, if the proposed

Settlement is approved and becomes effective, shall be bound by all the terms and

provisions of the Agreement, including but not limited to the releases, waivers and

covenants not to sue described therein, whether or not such Person shall have objected to

the Settlement and whether or not such Person makes a claim upon, or participates in, the

Settlement Consideration to be provided under the Agreement.

Other Provisions

15.    The Court hereby vacates so much of the Order of Preliminary

Approval and Conditional Class Certification entered by Chief Judge G. Patrick Murphy

of the United States District Court for the Southern District of Illinois on November 26,

2002 in *Kaiser, et al. v. CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc., and

CIGNA HealthCare of Texas, Inc.* (Case No. 02-1179-GPM), as applies to Class

Members under the proposed Settlement.

16.    The Court hereby lifts its Order Granting Plaintiffs' Motion for

Preliminary Injunction, entered on December 12, 2002, that enjoined Defendants and its

attorneys "from proceeding in any manner with the proposed settlement that [w]as

'preliminarily' approved in the *Kaiser, et al. v. CIGNA Corp., et al.*, Civil Action No. 02-

1179-GPM, United States District Court for the Southern District of Illinois, without the

express approval of this Court, and from contacting in any way the members of the class

certified by this Court."

17.    The Court further appoints and designates as Class Counsel the

MDL Class Counsel in this Litigation.

18. Archie C. Lamb, Jr., Harley S. Tropin and Edith M. Kallas are hereby appointed as Notice Counsel for purposes of this proposed Settlement.

19. Notice Counsel and Defendants' Counsel are hereby authorized and ordered to retain Poorman-Douglas Corporation as the Settlement Administrator in accordance with the terms of Section 9.1 of the Agreement.

20. Notice Counsel and Defendants' Counsel are hereby authorized and ordered to retain an Independent Review Entity in accordance with the terms of Section 9.2 of the Agreement.

21. CIGNA HealthCare is hereby authorized and ordered to appoint an Internal Compliance Officer in accordance with the terms of Section 15.1 of the Agreement.

22. Notice Counsel are authorized and ordered to designate a Compliance Dispute Facilitator in accordance with the terms of Section 15.2 of the Agreement.

23. CIGNA HealthCare is authorized to communicate with putative Class Members regarding the provisions of the Agreement, so long as such communications are not inconsistent with the Initial Notice, the Notice of Commencement of the Class Period, or other agreed upon communications concerning the Agreement. CIGNA HealthCare shall not discourage the filing of any claims allowed under the Agreement or advise Class Members with respect to the category or categories of claims that the Class Members should or should not file under the Agreement. CIGNA HealthCare shall refer to the Settlement Administrator or Class Counsel any inquiries from Class Members about claims to be filed under the Agreement.

24. Any Class Member may enter an appearance in this Litigation, at his, her or its own expense, individually or through counsel of his, her or its own choice, in connection with paragraph 5 above or otherwise. Any Class Member who does not enter an appearance will be represented by Class Counsel.

25. All proceedings against or concerning CIGNA HealthCare in this Litigation, other than proceedings as may be necessary to carry out the terms and conditions of the proposed Settlement, are hereby stayed and suspended until further order of the Court. Pending final determination of whether the proposed Settlement and the Agreement should be approved and the Class permanently certified, all putative Class Members and all Signatory Medical Societies are hereby barred and enjoined from commencing or prosecuting any action asserting any Released Claims.

26. All proceedings against or concerning CIGNA HealthCare in Tag-Along Actions (as defined in Section 17.1 of the Agreement) to the extent of Released Claims, other than proceedings as may be necessary to carry out the terms and conditions of the proposed Settlement, are hereby stayed and suspended until further order of the Court.

27. No discovery with regard to the proposed Settlement or the Agreement shall be permitted as to any of the Settling Parties other than as may be directed by the Court upon a proper showing by the party seeking such discovery by motion properly noticed and served in accordance with this Court's Local Rule 7.1.

28. As to any action brought by or on behalf of putative Class Members that asserts any claim that as of Final Approval would constitute a Released Claim against CIGNA HealthCare (other than the *Kaiser* or *Shane* actions) that has been,

or will in the future, be consolidated with the Provider Track Actions under MDL Docket No. 1334, all proceedings as to CIGNA HealthCare in each such action are hereby stayed with respect to the claims that are Released Claims under the Agreement pending entry of the Final Order and Judgment.

        29.     Neither the Agreement, in whole or in part, whether effective, terminated, or otherwise, or any of its provisions or any negotiations, statements or proceedings relating to it shall be construed as, offered as, received as, used as or deemed to be evidence of any kind in *Kaiser* or *Shane* or in any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement. Without limiting the foregoing, neither the Agreement nor any related negotiations, statements or proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of CIGNA HealthCare, the Defendants or the Plaintiffs, or as a waiver by CIGNA HealthCare, the Defendants or the Plaintiffs of any applicable defense, including without limitation any applicable statute of limitations.

        30.     In the event that the Agreement is terminated or is not consummated for any reason, the proposed Settlement and all proceedings had in connection therewith shall be null and void, except to the extent expressly provided to the contrary in the Agreement, and without prejudice to the rights of the parties to the Agreement before it was executed.

DONE AND ORDERED after a hearing in open court at the United States District Courthouse in Miami, Florida, on _____, and signed this ___ day of _____, 2003.

_____
**FEDERICO A. MORENO**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL NO.: 1334

IN RE: MANAGED CARE LITIGATION

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

CHARLES B. SHANE, M.D., et al.

**Plaintiffs,**

v.

HUMANA, INC.; AETNA, INC.; AETNA –USHC, INC.;
CIGNA; COVENTRY HEALTH CARE, INC.;
HEALTH NET, INC.; HUMANA HEALTH PLAN, INC.;
PACIFICARE HEALTH SYSTEMS, INC.; PRUDENTIAL
INSURANCE COMPANY OF AMERICA; UNITED HEALTH
GROUP; UNITED HEALTH CARE; WELLPOINT HEALTH
NETWORKS, INC.; AND ANTHEM, INC.

**Defendants.**

TIMOTHY N. KAISER, M.D., and SUZANNE LeBEL
CORRIGAN, M.D., on behalf of a class of others similarly situated,

**Plaintiffs,**

v.

CIGNA CORPORATION; CIGNA HEALTHCARE OF
ST. LOUIS, INC.; and CIGNA HEALTHCARE OF
TEXAS, INC.,

**Defendants.**

ORDER APPROVING SETTLEMENT AMONG
CIGNA HEALTHCARE AND PHYSICIANS, CERTIFYING CLASS AND
DIRECTING ENTRY OF JUDGMENT

The Court reviewed and considered the terms and conditions of the

proposed Settlement as set forth in the Settlement Agreement Among CIGNA

HealthCare and Physicians dated September 4, 2003 (the "Agreement"), and having

**EXHIBIT 3**

reviewed and considered the applications of Class Counsel for an award of attorneys' fees, costs and expenses and for incentive awards to Class Representative Plaintiffs, and the Court having held a Fairness Hearing after being satisfied that notice to the Class has been provided in accordance with the Court's Order Preliminarily Approving Proposed Settlement Among CIGNA HealthCare and Physicians entered on _____, 2003 (the "Preliminary Approval Order"), and the Court having taken into account the objections submitted prior to the Fairness Hearing in accordance with the provisions of the Preliminary Approval Order and the presentations and other proceedings at the Fairness Hearing, and having considered the Settlement in the context of all prior proceedings had in this Litigation, the Court enters the following FINDINGS and CONCLUSIONS:

A.      Capitalized terms used in this Order that are not otherwise defined herein have the meaning assigned to them in the Agreement.

B.      The Court has jurisdiction over the subject matter of this Litigation pursuant to 28 U.S.C. §§ 1331 and 1367, and all acts within this Litigation, and over all the parties to this Litigation, including all members of the Class.

C.      The Class conditionally certified in the Preliminary Approval Order has been appropriately certified for settlement purposes.  Class Counsel and Class Representative Plaintiffs have fairly and adequately represented the Class for purposes of entering into and implementing the Settlement.

D.      The Court finds that the notice provided to putative Class Members, including individual mailed notice to all putative Class Members who could be located with reasonable effort, notice by publication and website notice:  (i) constituted the best notice practicable under the circumstances, (ii) constituted notice that was reasonably

calculated, under the circumstances, to apprise the putative Class Members of the pendency of the Litigation, their right to object and to appear at the Fairness Hearing or to exclude themselves from the Settlement, (iii) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice and (iv) fully complied with due process principles and Rule 23 of the Federal Rules of Civil Procedure.

E.      The Court has held a Fairness Hearing to consider the fairness, reasonableness and adequacy of the Settlement, has been advised of all objections to the Settlement and has given fair consideration to such objections.

F.      The Settlement is the product of good faith, arm's length negotiations between Class Representative Plaintiffs and the Signatory Medical Societies and their counsel, on the one hand, and CIGNA HealthCare and its counsel, on the other hand.

G.      The Settlement, as provided for in the Agreement, is in all respects fair, reasonable, adequate and proper and in the best interest of the Class.  In reaching this conclusion, the Court has considered a number of factors, including:  (i) an assessment of the likelihood that the Class Representative Plaintiffs and/or the Class would prevail at trial; (ii) the range of possible recovery available to such Plaintiffs as a result of such trial; (iii) the consideration provided to Class Members pursuant to the Settlement, as compared to the range of possible recovery discounted for the inherent risk of litigation, including the risk of maintaining a class through trial and the risk to individual recovery in litigation posed by arbitration agreements; (iv) the complexity, expense and possible duration of such litigation in the absence of a settlement; (v) the nature and extent of any objections to the Settlement; and (vi) the stage of proceedings at which the Settlement

was reached. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

      H.     All objections to the Settlement are overruled and denied in all respects.

      I.     A complete list in machine readable form of those putative Class Members who have timely elected to Opt Out of the Settlement and the Class (and have not revoked that election) and who therefore are not bound by the Settlement, the provisions of the Agreement, this Order and the Judgment to be entered by the Clerk of the Court hereon, has been submitted to the Court as an exhibit to the Affidavit or Declaration of _____, filed at the Fairness Hearing by the Settlement Administrator. A copy of such exhibit is attached to the Judgment and is also incorporated by reference herein. All Class Members (as permanently certified below) shall be subject to all of the provisions of the Settlement, the Agreement, this Order and the Judgment to be entered by the Clerk of the Court.

      J.     The dismissal with prejudice and entry of Judgment contemplated by the Settlement and this Order will dispose of fewer than all of the claims at issue, or parties to, this Litigation. The Court finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay in entering the Judgment in the form attached hereto.

      On the basis of the foregoing findings and conclusions and submissions and proceedings referred to above, NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

Certification of Class and Approval of Settlement

      1.     The Settlement and the Agreement are hereby approved as fair, reasonable, adequate and in the best interests of the Class, and the requirements of due

4

process and Rule 23 of the Federal Rules of Civil Procedure have been satisfied. The objections to the Settlement and the Agreement are overruled and denied in all respects.

        2.      The Court having found that each of the elements of Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure are satisfied, for purposes of settlement only, solely with respect to CIGNA HealthCare, as well as the other Released Persons, the Class is permanently certified as a class action, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), on behalf of the following persons (the "Class"):

> any and all Physicians, Physician Groups and Physician Organizations (and all Persons claiming by or through them, such as Physicians' Assistants and Advanced Practice Registered Nurses), who or which provided Covered Services to any CIGNA HealthCare member or any individual enrolled in or covered by a plan offered or administered by any Person named as a defendant in the *Shane* complaint or by any of their respective current or former Subsidiaries from August 4, 1990 through the date of the entry of the Preliminary Approval Order; provided, however, that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services.

The putative Class Members identified on the list submitted to the Court (attached to the Judgment as an exhibit and incorporated herein by reference) as having timely and properly elected to Opt Out from the Settlement and the Class are hereby excluded from the Class and shall not be entitled to any of the monetary or other benefits afforded to the Class Members under the Agreement. The Court readopts and incorporates herein by reference its preliminary conclusions as to the satisfaction of the requirements of Rule 23(a) and Rules 23(b)(2) and 23(b)(3) set forth in the Preliminary Approval Order and notes again that because this certification of the Class is in connection with the Settlement rather than litigation, the Court need not resolve the issues of manageability presented by certification of the nationwide class proposed in the Settlement.

3.      For purposes of the Settlement only, those identified in the Agreement as Class Representative Plaintiffs are certified as representatives of the Class and Class Counsel is appointed counsel to the Class.  The Court concludes that Class Counsel and Class Representative Plaintiffs have fairly and adequately represented the Class with respect to the Settlement and the Agreement.

4.      Notwithstanding the certification of the foregoing Class and appointment of Class representatives for purposes of effecting the Settlement, if this Order is reversed on appeal or the Agreement is terminated or is not consummated for any reason, the foregoing certification of the Class and appointment of Class representatives shall be void and of no further effect and the Settling Parties shall be returned to the status each occupied before entry of this Order, without prejudice to any legal argument that any of the Settling Parties might have asserted but for the Agreement, and provided that in such circumstances any further ruling by this Court or an appellate court on the propriety of this Court's order dated September 26, 2002 certifying classes in *Shane v. Humana, Inc., et al.*, Master File No. 00-1334-MD-MORENO, shall apply to the Released Persons as if the Released Persons had participated in further proceedings with respect to that Order.

<u>Release and Injunctions Against Released Claims</u>

5.      The "Released Persons," which shall include CIGNA HealthCare, and CIGNA HealthCare's insurers and counsel, including Defendants' Counsel, Persons who provided claim processing services, software, proprietary guidelines or technology to CIGNA HealthCare, and those contracted agents processing claims on CIGNA HealthCare's behalf, together with each such Person's predecessors or successors, but

only to the extent of such Person's services or work done pursuant to contract with CIGNA HealthCare, but excluding all Delegated Entities, shall be fully, finally, and forever, remised, released, relinquished, compromised, and forever discharged by all Class Members, and, in accordance with the procedures set forth in the Preliminary Approval Order and, to the extent they have claims against CIGNA HealthCare derived by contract or operation of law from the claims of Class Members, any and all Subsidiaries, affiliates, shareholders, parents, directors, officers, employees, professional corporations, agents, administrators, executors, legal representatives, partners and partnerships, heirs, predecessors, successors and assigns of Class Members (collectively, the "Releasing Parties") from any and all claims that have been or could have been asserted by or on behalf of any or all Class Members against the Released Persons, or any of them, and which arise prior to Final Approval by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation, except as otherwise provided for by the Agreement.  This includes, without limitation as to Released Persons only, any aspect of any Fee for Service Claim submitted by any Class Member to CIGNA HealthCare, and claims based upon a capitation agreement with CIGNA HealthCare, and any allegation that Defendants and/or CIGNA HealthCare have conspired with, aided and abetted, or otherwise acted in concert with other managed care organizations, other health insurance companies, and/or other third parties with regard to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation or with regard to CIGNA HealthCare's liability for any other demands for payment

7

submitted by any Class Member to such other managed care organizations, health insurance companies, and/or other third parties ("Released Claims"). Notwithstanding this definition, Released Claims do not include any and all claims of any kind whatever arising out of the alleged nonpayment or payment at inappropriate rates or amounts of fee for service claims submitted to CIGNA HealthCare for services or supplies not represented by CPT® Codes or HCPCS Level II Codes or codes specially created by CIGNA HealthCare (such as its "well woman" code, code 90769); and provided further that the Releasing Parties shall not be deemed to have released claims for payment (each a "Retained Claim" and, collectively, the "Retained Claims") for Covered Services provided to CIGNA HealthCare Members prior to or on the date of Final Approval as to which, as of Final Approval, (i) no claim with respect to such Covered Services has been filed with CIGNA HealthCare; provided that the contractual period for filing such claim has not elapsed; or (ii) a claim with respect to such Covered Services has been filed with CIGNA HealthCare but such claim has not been finally adjudicated by CIGNA HealthCare, as provided for in Section 13.4 of the Agreement.

6.     In addition to the Released Claims, the Releasing Parties are deemed to have covenanted and agreed not to sue with respect to, or assert, against any Released Person, in any forum (i) the Released Claims, (ii) any Retained Claim, (iii) any dispute subject to Section 7.12 of the Agreement, or (iv) any Compliance Dispute, which, as to the latter three, shall be asserted and pursued, respectively, only pursuant to the provisions of Section 7.10, Section 7.12 and Section 15.2 of the Agreement. The covenant not to sue shall not apply to any claims that arise within twenty (20) days before the Termination Date that could not reasonably be presented or resolved pursuant to the

procedures set forth in Section 15 of the Agreement; provided that any such claim shall be prosecuted on an individual basis only and not otherwise.

       7.     Nothing in the Agreement is intended to relieve any Person that is not a Released Person from responsibility for its own conduct or conduct of other Persons who are not Released Persons, or to preclude any Plaintiff from introducing any competent and admissible evidence to the extent consistent with the Agreement. Moreover, nothing in the Agreement prevents the Plaintiffs and the Class from pursuing claims to hold any person or party that is not a Released Person liable for damages caused by any Released Person.

       8.     With respect to the Released Claims, Releasing Parties are hereby deemed expressly to have waived and relinquished to the fullest extent permitted by law (a) the provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.

       9.     The Releasing Parties are permanently enjoined from: (a) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise) or receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction based on any or all Released Claims against one or more Released Persons, and (b) instituting, organizing class members in, joining with

9

class members in, amending a pleading in or soliciting the participation of class members in, any action, including but not limited to a purported class action, in any court against one or more Released Persons based on, involving, or incorporating, directly or indirectly, any or all Released Claims, and (c) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise) or receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction based on an allegation that CIGNA HealthCare's compliance with the provisions of the Agreement violates any legal right of any member of the Class.

10.     In contemplation of the Settlement as to Physicians and the dismissal with prejudice of Released Claims as to Defendants and CIGNA HealthCare, after this Order becomes final, all proceedings are stayed as to Defendants and CIGNA HealthCare or any other Released Person who is a defendant in any action brought by or on behalf of Class Members that assert any claim that as of the date of this Order would constitute a Released Claim that has been, or will in the future, be consolidated with the Provider Track Actions under MDL Docket No. 1334, *provided, however*, that this stay in contemplation of dismissal shall not apply to any such action to the extent that a named plaintiff has timely elected to Opt Out of the Settlement and the Class.

11.     In accordance with the terms of the Agreement, the Releasing Parties and Class Counsel are barred from pursuing discovery in this Litigation against CIGNA HealthCare or the other Released Persons, except for authentication of CIGNA HealthCare's claims databases and documents which Class Counsel shall first seek through stipulation. CIGNA HealthCare shall have the right to object to any discovery of third parties that relates solely to CIGNA HealthCare.

Applications for Attorneys' Fees, Costs and Expenses and
Representative Plaintiff Incentive Awards

12.     The Court has reviewed the application for and award of fees, costs and expenses submitted by Class Counsel and the exhibits, memoranda of law and other materials submitted in support of that application.  The Court recognizes that in the Agreement CIGNA HealthCare has agreed not to oppose an award of fees, costs and expenses to Class Counsel and Kaiser Counsel up to Fifty-Five Million Dollars ($55,000,000.00), to be paid by CIGNA HealthCare up to that amount.  This agreement is in addition to the monetary consideration and other benefits to be provided to Class Members under the Agreement.  On the basis of its review of the foregoing, the Court hereby awards fees and expenses to Class Counsel and Kaiser Counsel in the aggregate amount of $_____, to be paid by CIGNA HealthCare in accordance with the provisions of the Agreement.

13.     The Court has also reviewed the application for incentive awards to Representative Class Plaintiffs for their services as Class representatives.  The Court recognizes that in the Agreement CIGNA HealthCare has agreed not to oppose an incentive award up to Seven Thousand Five Hundred Dollars ($7,500.00) for each Class Representative Plaintiff, to be paid by CIGNA HealthCare up to that amount.  This agreement is in addition to the monetary consideration and other benefits to be provided to Class Members under the Agreement.  On the basis of its review of the foregoing, the Court hereby awards a fee of $ _____ to each Class Representative Plaintiff, to be paid by CIGNA HealthCare in accordance with the provisions of the Agreement.

11

<u>Other Provisions</u>

14.    Neither the Agreement nor any provision therein, nor any negotiations, statements or proceedings in connection therewith shall be construed as, or be deemed to be evidence of, an admission or concession on the part of the Class Representative Plaintiffs, the Signatory Medical Societies, Class Counsel, Kaiser Counsel, any Class Member, CIGNA HealthCare, or any other person of any liability or wrongdoing by them, or that the claims and defenses that have been, or could have been, asserted in the Litigation are or are not meritorious, and this Order, the Agreement or any such communications shall not be offered or received in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Class Representative Plaintiffs, the Signatory Medical Societies, any Class Member or any other Person has or has not suffered any damage; *provided, however,* that the Agreement, this Order and the Judgment to be entered thereon may be filed in any action by CIGNA HealthCare, Defendants or any Released Persons seeking to enforce the Agreement or the Judgment by injunctive or other relief, or to assert defenses including, but not limited to, *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The terms of the Agreement and of this Order and the Judgment shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions that are set forth in paragraphs 5, 6, 8 and 9 of this Order that are maintained by, or on behalf of, the Releasing Parties or any other Person subject to those provisions of this Order.

15.     In the event the Agreement does not become effective or is canceled or terminated in accordance with the terms and provisions of the Agreement, then this Order and the Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by this Court shall be rendered null and void.

<u>Entry of Judgment; Continuing Jurisdiction</u>

16.     The Clerk of the Court is directed to enter the Judgment in the form attached to this Order dismissing all Released Claims with prejudice as to CIGNA HealthCare pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

17.     Without in any way affecting the finality of this Order and the Judgment, this Court hereby retains jurisdiction as to all matters relating to (a) the interpretation, administration, and consummation of the Agreement and (b) the enforcement of the injunctions described in paragraph 9 of this Order.

SO ORDERED this _____ day of _____, ____.


**FEDERICO A. MORENO**
**UNITED STATES DISTRICT JUDGE**

13

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL NO.: 1334

IN RE: MANAGED CARE LITIGATION

_____

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

_____

CHARLES B. SHANE, M.D., et al.

Plaintiffs,

v.

HUMANA, INC.; AETNA, INC.; AETNA –USHC, INC.;
CIGNA; COVENTRY HEALTH CARE, INC.;
HEALTH NET, INC.; HUMANA HEALTH PLAN, INC.;
PACIFICARE HEALTH SYSTEMS, INC.; PRUDENTIAL
INSURANCE COMPANY OF AMERICA; UNITED HEALTH
GROUP; UNITED HEALTH CARE; WELLPOINT HEALTH
NETWORKS, INC.; AND ANTHEM, INC.

Defendants.

_____

TIMOTHY N. KAISER, M.D., and SUZANNE LeBEL
CORRIGAN, M.D., on behalf of a class of others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATION; CIGNA HEALTHCARE OF
ST. LOUIS, INC.; and CIGNA HEALTHCARE OF
TEXAS, INC.,

Defendants.

_____

## JUDGMENT

In accordance with, and for the reasons set forth in, the Order Approving

Settlement Among CIGNA HealthCare and Physicians, Certifying Class and Directing

Entry of Judgment entered on _____, ____:

(i)      all claims against defendant CIGNA Corporation in *Shane, et al. v.*

**EXHIBIT 4**

*CIGNA Corporation, et al.* are dismissed with prejudice as to the named plaintiffs and as to all Class Members, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure;

(ii)     all claims against defendants CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc. in *Timothy N. Kaiser, M.D. and Suzanne LeBel Corrigan, M.D., on behalf of a class of others similarly situated  v. CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc. and CIGNA HealthCare of Texas, Inc.*, are dismissed with prejudice as to the named plaintiffs and as to all Class Members, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure; and

(iii)    the claims of those putative Class Members set forth on the attached list who or which properly Opted Out of the Class are not dismissed.

Dated: Miami, Florida
       _____,____


                                        _____
                                        Clerk of the Court

2

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**MDL NO.: 1334**

**IN RE: MANAGED CARE LITIGATION**

---

**THIS DOCUMENT RELATES ONLY TO**
**PROVIDER TRACK CASES**

---

**PLAN OF NOTICE**
**FOR CIGNA HEALTHCARE SETTLEMENT WITH PHYSICIANS**

This Plan of Notice is submitted by the Settling Parties in connection with the Settlement

Agreement Among CIGNA HealthCare and Physicians ("Agreement") in the Litigation.

Capitalized terms used in this Plan of Notice that are not otherwise defined herein have the

meaning assigned to them in the Agreement.

**I.      PURPOSE OF THE PLAN OF NOTICE**

The Plan of Notice is designed to ensure that notice of the proposed Settlement and

Fairness Hearing reaches the putative members of the settlement class (the "Class") in

conformity with due process requirements and the Federal Rules of Civil Procedure.  An Initial

Notice, attached hereto as Exhibit A, will inform putative Class Members of the history of this

Litigation, the terms of the proposed Settlement, the date and location of the Fairness Hearing

and their right to object to the proposed Settlement or exclude themselves from the Class.  The

initial mailing will be made by the Settling Parties, in cooperation with the Settlement

Administrator, by a date fixed by the Court that is within thirty (30) days of the date of the entry

by the Court of the Preliminary Approval Order (the "Notice Date").

Within fourteen (14) days after Final Approval of the Settlement, a Notice of

Commencement of the Claims Period will be mailed to Class Members to inform them when

**EXHIBIT 5**

they may begin to submit Proofs of Claim under the terms of the Agreement and the method for submitting such Proofs of Claim. The proposed Preliminary Approval Order addresses only the Initial Notice. Prior to Final Approval, the Settling Parties will submit for the Court's approval a proposed Notice of Commencement of the Claims Period.

## II.  DESCRIPTION OF THE CLASS

The Class, for purposes of settlement only, consists of:

> any and all Physicians, Physician Groups and Physician Organizations (and all Persons claiming by or through them, such as Physicians' Assistants and Advanced Practice Registered Nurses), who or which provided Covered Services to any CIGNA HealthCare member or any individual enrolled in or covered by a plan offered or administered by any Person named as a defendant in the *Shane* complaint or by any of their respective current or former Subsidiaries from August 4, 1990 through the date of the entry of the Preliminary Approval Order; provided, however, that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services.

## III.  DIRECT MAIL NOTICE

The Initial Notice will be mailed by the Settlement Administrator by first class U.S. mail, postage pre-paid, on or before the Notice Date to all potential members of the Class identified on the Class List, to the extent such Persons can be identified with reasonable diligence. The Class List will include a list of active and retired Physicians obtained by the Settlement Administrator from the American Medical Association (the "AMA"). Notice to any individual Physician at his or her business address will be considered sufficient notice to that Physician's Physician Group or Physician Organization.

The Settlement Administrator will also mail an Initial Notice to Persons who, via e-mail or mail to the Settlement Administrator or Class Counsel, request such notice, or who request such notice by calling an automated number maintained by the Settlement Administrator.

For notices that are returned to the Settlement Administrator as undeliverable, the addresses of these Persons will be updated to the extent reasonably possible using one or more address tracking databases, including the database of Physicians' addresses available from CIGNA HealthCare and, for notices returned from a specific state, the database of Physicians' addresses (if any) available at the website (if any) maintained by that state's medical association. If a more recent address is located for any putative Class Member whose Initial Notice is returned as undeliverable, the Class List will be updated and the Initial Notice will be re-mailed to that Person. Re-mailings shall occur as soon as practicable after more recent addresses are located. Re-mailed notices that are returned as undeliverable will not receive further attention by the Settlement Administrator.

Because the names, tax identification numbers, and last known addresses for putative Class Members are accessible, direct mail notice, as described above, is the best notice practicable under the circumstances.

## IV.   PUBLICATION NOTICE

As soon as practicable after the mailing of the Initial Notice, and no later than 30 days prior to the Opt Out Deadline, the Settling Parties will have a summary form of Initial Notice, attached hereto as Exhibit B, published in the legal notices sections of the national editions of *The Wall Street Journal* and *USA Today*, one day a week for two consecutive weeks. In addition, to the extent reasonably practicable within the schedule to be fixed by the Court, the Settling Parties shall seek to have the summary form of Initial Notice published at least once, no later than 30 days prior to the Opt Out Deadline, in a nationwide periodical addressing issues of concern to Physicians, such as *The Journal of the American Medical Association* or *The American Medical News*.

3

The forms of Initial Notice will also be available from a website created and maintained by the Settlement Administrator within thirty (30) days after the date of the entry of the Preliminary Approval Order. The website maintained by the Settlement Administrator will allow putative Class Members to download, view and print the forms of Initial Notice from the internet. This website will also provide putative Class Members with a link to the website maintained by Class Counsel at www.hmocrisis.com, where the forms of Initial Notice will also be available to download, view and print. At least five of the law firms serving as Class Counsel will also post the forms of Initial Notice on their websites.

Finally, the Settlement Administrator will maintain an e-mail address and a toll-free automated telephone answering service to assist putative Class Members with any questions or requests for information. This will provide two ways for putative Class Members to request notices or to obtain additional information about the Initial Notice.

4

EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**MDL NO.: 1334**

**IN RE: MANAGED CARE LITIGATION**

---

**THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES**

---

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION AMONG CIGNA
HEALTHCARE AND PHYSICIANS, OF FAIRNESS HEARING TO CONSIDER THE
PROPOSED SETTLEMENT AND OF YOUR RIGHTS CONCERNING
THE PROPOSED SETTLEMENT**

> **IF YOU ARE A PHYSICIAN, PHYSICIAN GROUP OR PHYSICIAN ORGANIZATION
> (OR PERSON OR ENTITY CLAIMING BY OR THROUGH THEM), WHO OR
> WHICH PROVIDED COVERED SERVICES TO ANY INDIVIDUAL ENROLLED IN
> OR COVERED BY CIGNA HEALTHCARE OR HEALTH BENEFIT PLANS INSURED
> OR ADMINISTERED BY OTHER MANAGED CARE COMPANIES NAMED AS
> DEFENDANTS IN *SHANE, ET AL. V. HUMANA, INC., ET AL.* AT ANY TIME
> BETWEEN AUGUST 4, 1990 AND _____ [date of entry of Preliminary Approval
> Order], PLEASE READ THIS NOTICE CAREFULLY.  THIS CLASS ACTION AND
> THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS.**

## I.   WHY SHOULD YOU READ THIS NOTICE?

If you are or have been a physician, physician group, or physician organization (or a person or entity claiming by or through them) who practiced in the United States since August 4, 1990, your rights may be affected by a proposed settlement with CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc., (collectively, "CIGNA HealthCare Defendants") in the class action lawsuits known as *Shane, et al. v. Humana, Inc., et al.*, Master File No. 00-1334-MD-MORENO, which is part of a federal multi-district litigation that is pending in the U.S. District Court for the Southern District of Florida (the "Court") called *In re Managed Care Litigation*, MDL Docket No. 1334, and *Kaiser, et al. v. CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc. and CIGNA HealthCare of Texas, Inc.*, transferred to the Court to become part of the multi-district litigation, (referred to collectively as the "Litigation"). The Litigation also involves all of the direct and indirect subsidiaries of CIGNA Corporation involved in the health care business, for example, Connecticut General Life Insurance Company, CIGNA HealthCare of North Carolina, Inc., Arizona Health Plan, Inc., Healthsource New Hampshire, Inc., and many others (collectively "CIGNA HealthCare") and the settlement encompasses all of these entities. You may be a member of the CIGNA HealthCare settlement class in this Litigation if you have submitted

**EXHIBIT 6
[Exhibit A to Plan of Notice]**

claims to any of these CIGNA HealthCare entities or other managed care companies.  You can view and download a list of the CIGNA HealthCare entities involved in the Litigation at **[fill in]**.

The class representatives and certain medical societies have agreed to settle all claims against CIGNA HealthCare in the Litigation in exchange for CIGNA HealthCare's adoption of a number of commitments and initiatives regarding its business practices, the creation of a not-for-profit medical foundation and the establishment of alternate settlement funds against which individuals who are members of the Class (as defined below) can make claims for a settlement payment.  The Court has scheduled a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement with CIGNA HealthCare, together with certain other matters, to be held on _____, _____ at _____:00 A.M./P.M. at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132 (the "Fairness Hearing").

You may be a member of the Class who therefore would be entitled to receive the benefits of the proposed settlement.  As a member of the Class, however, you will also be bound by the release and other provisions of the settlement if it is approved by the Court.  You may elect to opt out of the Class and the settlement, as explained below.  You also have a right to object to the settlement or to the applications for attorneys' fees and representative plaintiffs' incentive awards that counsel for the settlement Class intend to make to the Court, but only if you have not elected to exclude yourself from the Class and only if you comply with the procedures described in this notice.  **BECAUSE YOUR RIGHT TO PURSUE CERTAIN TYPES OF CLAIMS AGAINST CIGNA HEALTHCARE AND CERTAIN OTHERS AFFILIATED WITH CIGNA HEALTHCARE BASED ON CIGNA HEALTHCARE'S CONDUCT MAY BE AFFECTED BY THE SETTLEMENT, YOU SHOULD READ THIS NOTICE CAREFULLY.**

## II.    WHAT IS THIS LITIGATION ABOUT?

The Litigation has been brought by the representative plaintiffs from around the United States, on behalf of a class of physicians who practiced at any time from and after August 4, 1990 through _____ **[date of entry of preliminary approval]** (and other non-physician health care providers in *Kaiser*) against a number of managed care companies, including Aetna, Inc., Aetna-USHC, Inc., Anthem, Inc., CIGNA HealthCare Defendants, Coventry Health Care, Inc., Health Net, Inc., Humana Health Plan, Inc., Humana, Inc., PacifiCare Health Systems, Inc., Prudential Insurance Company of America, United Health Care, United Health Group and Wellpoint Health Networks, Inc. (collectively, "defendants"). The complaints in the Litigation allege that in various time periods from 1990 to the present, these companies engaged in a conspiracy to improperly deny, delay and/or reduce payment to physicians (and other non-physician health care providers in *Kaiser*) by engaging in several types of allegedly improper conduct, including:

- Misrepresenting and/or failing to disclose the use of edits to unilaterally "bundle," "downcode" and/or reject claims for medically necessary covered services;

- Failing and/or refusing to recognize CPT® modifiers;

- Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;

- Misrepresenting and/or refusing to disclose applicable fee schedules;

- Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods; and

- Misrepresenting and/or failing to disclose the use of inappropriate or unsound criteria to calculate payments due to physicians compensated under a "capitation" system.

Plaintiffs in both the *Kaiser* and *Shane* lawsuits claim that the conduct generally described above violated various state and federal statutes. Plaintiffs also seek recovery on various common law theories, including breach of contract. If you would like further information about the claims asserted in the Litigation, you can review copies of the *Shane* complaint and the *Kaiser* complaint at **[fill in]**.

The *Shane* lawsuit is one significant component of litigation asserting these claims and certain others against managed care companies which began in early 2000 and ultimately was transferred to the federal court in Miami to become part of a multi-district litigation, as was the *Kaiser* lawsuit. Since the initial complaints were filed, substantial proceedings have occurred in the Litigation, including the production of a significant number of documents by defendants, as well as claims data, and the depositions of various of the representative plaintiffs, and witnesses employed by defendants, including CIGNA HealthCare, and third parties. In an order dated September 26, 2002, the Court certified a class and two subclasses of physicians in the *Shane* lawsuit. The defendants in the *Shane* lawsuit, including CIGNA Corporation, appealed that ruling to the federal court of appeals, and proceedings on the appeal are still ongoing. As part of the settlement, CIGNA Corporation would no longer actively participate in that appeal, but expects other defendants, who are <u>not</u> parties to this or any other proposed settlement, to continue to pursue that appeal and to defend the claims asserted in the Litigation on various grounds.

## III.   WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

In a settlement agreement dated September 4, 2003 (the "Agreement"), the representative plaintiffs and signatory medical societies have agreed to settle all Released Claims (as defined in the Agreement) that were or could have been asserted against CIGNA HealthCare in exchange for CIGNA HealthCare's agreement regarding its business practices and for certain monetary consideration. The terms of the Agreement are summarized in this notice, but a copy of the entire Agreement can be reviewed at **[the Settlement Administrator's website.]  It is also available at www.hmocrisis.com, www.WhatleyDrake.com, www.ArchieLamb.com, www.milberg.com, www.kttlaw.com, and www.wcqp.com**.

None of the defendants in the Litigation other than the CIGNA HealthCare Defendants are parties to the CIGNA HealthCare proposed settlement, and even if the settlement is approved by the Court, the representative plaintiffs and signatory medical societies intend to continue to prosecute

their claims against other defendants in the Litigation who are <u>not</u> parties to this or any other proposed settlement.

## A.     The Settlement Class

The proposed CIGNA HealthCare settlement will be on behalf of the following Class, which has been certified for settlement purposes:

> Any and all Physicians, Physician Groups and Physician Organizations (and all Persons claiming by or through them, such as Physicians' Assistants and Advanced Practice Registered Nurses), who or which provided Covered Services to any CIGNA HealthCare member or any individual enrolled in or covered by a plan offered or administered by any Person named as a defendant in the *Shane* complaint or by any of their respective current or former Subsidiaries from August 4, 1990 through the date of the entry of the Preliminary Approval Order; provided, however, that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services.

The CIGNA HealthCare settlement Class is different than the class and subclasses certified by the Court in *Shane*, which are the subject of an appeal by the defendants, and the class certified by Madison County Circuit Court in *Kaiser*. CIGNA HealthCare believes that there are significant aspects of the settlement Class that distinguish it from the classes that have been certified by the Court and the Madison County Circuit Court, including, for example, that if the proposed settlement is approved and becomes effective, CIGNA HealthCare will waive any right it has to require arbitration as a condition to any monetary recovery and all members of the settlement Class will be deemed to have waived their rights to arbitration under the applicable contracts. In addition, the settlement Class does not raise the problems of manageability that CIGNA HealthCare believes affect the classes as certified by the Court and the Madison County Circuit Court.

## B.     The Settlement Consideration

If the settlement is approved by the Court, the Agreement provides for both monetary and other benefits to be provided by CIGNA HealthCare to members of the settlement Class.

The parties have entered into a proposed settlement of the Litigation. The following section briefly describes the benefits you are eligible for as a member of the settlement Class if the settlement is approved. The complete terms of the proposed settlement are in the Agreement which can be viewed and downloaded at **[the Settlement Administrator's website]. It is also available at www.hmocrisis.com, www.WhatleyDrake.com, www.ArchieLamb.com, www.milberg.com, www.kttlaw.com, and www.wcqp.com**.

4

1.  **Prospective Relief:  Additional Disclosures; Changes in Business Practices**

As a part of the settlement, CIGNA HealthCare has agreed to certain commitments regarding its disclosures and business practices.  For example, CIGNA HealthCare has agreed to:  (a) include in its contracts with Physicians a definition of medical necessity which bases medical necessity determinations on generally accepted standards of medical practice; (b) use clinical guidelines that are based on credible scientific evidence published in peer-reviewed medical literature (taking into account Physician Specialty Society recommendations, the views of Physicians practicing in the relevant clinical areas, and other relevant factors); (c) provide members of the Class access to CIGNA HealthCare's medical necessity external review process; (d) establish an independent, external billing dispute review process for resolving disputes with members of the Class concerning many common billing disputes; (e) continue to pursue initiative designed to facilitate the automated adjudication of claims submitted by Physicians and thereby the average time taken by CIGNA HealthCare to pay valid claims;  (f) fund initiatives to reduce the percentage of resubmitted claims; (g) not automatically reduce the intensity coding of evaluation and management codes billed for certain covered services; (h) disclose payment rules and conform its bundling and other computerized editing rules as specified in the Agreement; (i) not include in its contracts with members of the Class  "all products clauses," "all affiliates clauses," or "gag clauses"; (j) devote resources to improve accuracy of information about eligibility of plan members; (k) where all necessary information is available to CIGNA HealthCare, ensure the payment of valid claims within 15 business days for electronically-submitted claims and 30 calendar days for paper claims; (l) provide members of the Class with the ability to view applicable fee schedule amounts for billing codes related to their practice; (m) establish a compliance dispute resolution mechanism to address disputes regarding CIGNA HealthCare's compliance with the Agreement.  In addition, CIGNA HealthCare will disclose additional information about its claim administration policies and procedures on its existing internet website.  These changes, as well as others, are more fully described in the Agreement.

2.  **Foundation**

CIGNA HealthCare has also agreed to provide Fifteen Million Dollars ($15,000,000.000) in initial funding to a medical foundation to be established if the settlement is approved.  The foundation will be dedicated to promoting high quality healthcare and will give particular emphasis to initiatives that assist Physicians to improve/enhance the quality of care received by patients and to enhance the delivery of care to the disadvantaged members of the public.

In addition to the initial funding to be provided by CIGNA HealthCare directly to the foundation, members of the Class may elect to have the amount of their settlement payment from the Category A Settlement Fund (discussed in the next section) contributed to the foundation, or to a foundation established by a signatory medical society, on their behalf.  Additional amounts may be contributed to the Foundation from the Category A Settlement Fund and the Claim Distribution Fund (also discussed in the next section) established by CIGNA HealthCare, pursuant to the terms of the Settlement Agreement.

### 3.    Monetary Compensation

Under the proposed settlement, CIGNA HealthCare will pay two separate types of compensation to members of the Class:  1) "Category A Settlement Fund"; and 2) "Claim Distribution Fund" which includes compensation related to claim coding and bundling edits and denials of claims on medical necessity grounds.  To be eligible for compensation, you must submit Proofs of Claim, as described in Section 8 of the Agreement.  Additional information regarding submission of Proofs of Claims will be provided to Class Members when the Settlement receives Final Approval.

**Category A Settlement Fund:**  A component of the consideration to be provided to members of the Class under the proposed settlement is the establishment of a settlement fund in the aggregate amount of Thirty Million Dollars ($30,000,000.00).  If the settlement is approved by the Court, each member of the Class will be entitled to payments from this settlement fund in accordance with the formula set forth in the Agreement.  Each member of the Class desiring to file a Category A Claim may elect to either receive the payment from the Category A Settlement Fund or to direct that such amount be contributed to the Foundation on his, her or its behalf, or to a foundation established by a state medical society.  Any member of the Class filing a Category A Claim shall not be eligible to seek Category One Compensation, Category Two Compensation or Medical Necessity Denial Compensation, described generally below.

**Claim Distribution Fund:** CIGNA HealthCare will establish a Claim Distribution Fund to pay three categories of compensation to members of the Class affected by claim coding and bundling edits or medical necessity denials.  CIGNA HealthCare will replenish this fund as often as necessary to pay all Valid Proofs of Claim.  For Category One Compensation, Valid Proofs of Claim will be paid at the amount stated in the Category One Code list.  All other Valid Proofs of Claim for Medical Necessity Denial Compensation and Category Two Compensation will be paid at 100% of the National Medicare Fee Schedule, as defined by the Agreement.

**Category One Compensation :** The parties have negotiated a list of specific code combinations which qualify for Category One Compensation.  This list can be viewed and downloaded at **[the Settlement Administrator's website].  It is also available at www.hmocrisis.com, www.WhatleyDrake.com, www.ArchieLamb.com, www.milberg.com, www.kttlaw.com, and www.wcqp.com**.  A copy of this list is also attached to the Agreement as Exhibit 1.  Upon submission of Valid Proofs of Claim, members of the Class will receive reimbursement for the denial of payment for Category One Codes in the specific circumstances and within the date of service limitations set forth in Exhibit 1 to the Agreement.  CIGNA HealthCare has agreed to pay all Valid Category One Proofs of Claim.

**Category Two Compensation:** Category Two Proofs of Claim are not limited to specific codes and/or code combinations.  You may resubmit claims to CIGNA HealthCare which you believe were improperly denied and/or reduced where the specific codes or time periods involved are outside of the Category One Code list.  If CIGNA HealthCare denies the Proof of Claim, it will be automatically sent to an external reviewer for a final decision.  You may, under Category Two, receive reimbursement for the code(s) which were originally denied or paid at

a reduced amount. In addition, to help you identify certain Fee for Service Claims that are eligible for Category Two Compensation, CIGNA HealthCare will use its best efforts to make available a Facilitation List to assist members of the Class in identifying some types of claims that may be eligible for Category Two Compensation. You can obtain your Facilitation List, in paper or electronic form, from the Settlement Administrator.

**Compensation for Erroneous Denials of Claims on Medical Necessity Grounds:** You may resubmit claims which you believe were improperly denied as not medically necessary or as experimental or investigational. If CIGNA HealthCare denies the Proof of Claim, it will automatically be sent to an external reviewer for a final decision. You may receive payment for the code(s) which were originally denied. CIGNA HealthCare has agreed to pay all Valid Proofs of Claim for Medical Necessity Denial Compensation.

### 4. Arbitration Waiver

With regard to this Litigation only, CIGNA HealthCare will waive its right to require those members of the Class with valid and enforceable arbitration provisions to arbitrate their Fee for Service Claims during the Class Period against CIGNA HealthCare. **This waiver will permit all members of the Class to participate in the settlement compensation funds, even if they have valid and enforceable arbitration provisions in their contracts with CIGNA HealthCare.**

### C. The Release and Dismissal with Prejudice

If the proposed settlement is approved by the Court and you do not exclude yourself from the settlement Class, certain legal claims you may have against CIGNA HealthCare and other Released Persons, regardless of legal theory, including without limitation any aspect of fee-for-service claims adjudicated by CIGNA HealthCare 30 days before Final Approval, will be dismissed on the merits and with prejudice. None of those claims may be asserted in any other lawsuit and your only remedies will be those set forth in the Agreement, unless you exclude yourself from the settlement Class. **Because the release is a critical element of the proposed settlement, it has been included here verbatim. The definitions of the terms "Released Claims," "Released Person," and "Releasing Parties" are also set forth below. Language defining what has been excluded from the release and defined as "Retained Claims" is set forth in full in Section 13.4 of the Agreement. You should read this section very carefully because it will affect your rights if you remain in the settlement Class.**

### 1. Release and Covenant Not To Sue

Upon Final Approval, the Releasing Parties and each of them shall hereby be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever, remised, released, relinquished, compromised and discharged all Released Claims against each Released Person, whether or not any such Releasing Party submits any Valid Proofs of Claim or otherwise seeks any payment under the terms of the Agreement.

The Releasing Parties and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit on the basis of any Released Claim against any Released Person.

With respect to all Released Claims, the Releasing Parties and each of them agree that they are expressly waiving and relinquishing to the fullest extent permitted by law (a) the provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor.**

and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.

## 2.    Definitions

**"Released Claims"** means and includes any and all claims that have been or could have been asserted by or on behalf of any or all Class Members against the Released Persons, or any of them, and which arise prior to Final Approval by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation, except as otherwise provided for by this Agreement. This includes, without limitation and as to Released Persons only, any aspect of any Fee for Service Claim submitted by any Class Member to CIGNA HealthCare, and claims based upon a capitation agreement with CIGNA HealthCare, and any allegation that Defendants and/or CIGNA HealthCare have conspired with, aided and abetted, or otherwise acted in concert with other managed care organizations, other health insurance companies, and/or other third parties with regard to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation or with regard to CIGNA HealthCare's liability for any other demands for payment submitted by any Class Member to such other managed care organizations, health insurance companies, and/or other third parties. Notwithstanding this definition, Released Claims do not include any and all claims of any kind whatever arising out of the alleged nonpayment or payment at inappropriate rates or amounts of fee for service claims submitted to CIGNA HealthCare for services or supplies not represented by CPT® Codes or HCPCS Level II Codes or codes specially created by CIGNA HealthCare (such as its "well woman" code, code 90769).

**"Releasing Parties"** (each a "Releasing Party") means Class Members and, to the extent they have claims against CIGNA HealthCare derived by contract or operation of law from the claims of Class Members, any and all Subsidiaries, affiliates, shareholders, parents, directors, officers, employees, professional corporations, agents, administrators, executors, legal representatives, partners and partnerships, heirs, predecessors, successors and assigns of Class Members.

**"Released Persons"** means:

a.     CIGNA HealthCare and CIGNA HealthCare's insurers and counsel, including Defendants' Counsel as defined herein.

b.     Persons who provided claim processing services, software, proprietary guidelines or technology to CIGNA HealthCare, those contracted agents processing claims on CIGNA HealthCare's behalf, together with each such Person's predecessors or successors, but only to the extent of such Person's services and work done pursuant to contract with CIGNA HealthCare. Such Persons are expressly not "Released Persons" as to services provided to any Person other than CIGNA HealthCare. Nothing herein is intended to release Delegated Entities.

c.     "Released Persons" shall not include any defendant in MDL No. 1334 other than CIGNA HealthCare or any Subsidiary of CIGNA Corporation.

## IV.     WHAT WILL HAPPEN AT THE FAIRNESS HEARING?

The Fairness Hearing will be held on _____, ___ at    :00 A.M./P.M. at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132. However, the order scheduling that hearing also provides that it may be adjourned by the Court and that no additional notice will be provided to potential members of the settlement Class other than an announcement in open court.

At the Fairness Hearing, the Court will consider several different issues.

First, the Court will consider whether the proposed settlement of the Litigation with CIGNA HealthCare that is reflected in the Agreement is fair, reasonable and adequate to the members of the settlement Class.

Second, the Court will consider whether it should certify the settlement Class pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Among other things, this will require the Court to determine (i) whether questions of law or fact common to the members of the settlement class predominate over questions affecting only individual members of the settlement class, and (ii) whether a class action is superior to other available methods for fair and efficient adjudication of the controversy. If the Court certifies the settlement Class, potential members of the Class who have timely elected to opt out from the settlement Class by following procedures described below will be excluded from it.

Third, the Court will consider the application for a payment of incentive awards to the representative plaintiffs by CIGNA HealthCare, which is discussed in more detail below.

Fourth, the Court will consider an application by Class Counsel and Kaiser Counsel for attorneys' fees, costs and expenses to be paid by CIGNA HealthCare, which is also discussed in more detail below.

9

## V.    CAN I PARTICIPATE IN THE SETTLEMENT HEARING?

Any member of the Class, or other interested person or entity, who or which objects to the proposed settlement with CIGNA HealthCare, the Agreement, the application for plaintiffs' attorneys' fees or the other matters to be considered at the Fairness Hearing may appear and present such objections, provided, however, that no member of the Class who or which has elected to opt out from the Class will be entitled to object. In order to be permitted to object to the proposed settlement, however, you must, on or before _____, 2003 **["Objection Date" – 60 days after Notice Date]** comply fully with the following requirements:

- File with the Court a personally signed notice of your intention to appear (or a notice of intention signed by an authorized representative of a Physicians' Group or Physicians' Organization), together with a statement setting forth your objections, if any, to the matters to be considered and the basis for those objections, together with any documentation that you intend to rely upon at the Fairness Hearing; and

- Serve copies of all such materials either by hand delivery or by first-class mail, postage prepaid, upon the following counsel:

| | |
|---|---|
| Archie C. Lamb, Jr.<br>Law Offices of Archie C. Lamb, LLC<br>2017 Second Avenue North<br>Birmingham, AL 35203 | John G. Harkins, Jr.<br>Eleanor Morris Illoway<br>Harkins Cunningham LLP<br>2800 One Commerce Square<br>2005 Market Street |
| Harley S. Tropin<br>Kozyak Tropin & Throckmorton, PA<br>200 S. Biscayne Boulevard, Suite 2800<br>Miami, FL 33131 | Philadelphia, PA 19103-7042<br><br>Marty L. Steinberg<br>Hunton & Williams<br>Mellon Financial Center |
| Edith M. Kallas<br>Milberg Weiss Bershad Hynes & Lerach<br>One Pennsylvania Plaza<br>New York, NY 10119 | 1111 Brickell Avenue<br>Suite 2500<br>Miami, FL 33131-3136 |

If you do not comply with the foregoing procedures and deadlines for submitting written objections and/or appearing at the Fairness Hearing, you may lose substantial legal rights, including but not limited to, the right to appear and be heard at the Fairness Hearing; the right to contest approval of the proposed settlement or the application for an award of attorneys' fees, costs and expenses to plaintiffs' counsel; the right to contest approval of the application for incentive awards to representative plaintiffs; or the right to contest any other orders or judgments of the Court entered in connection with the proposed settlement.

If the Court does not approve the proposed settlement, the Agreement will be null and void. If there are further actions taken in the Litigation that affect your rights, you will receive such notice, if any, as may be determined by the Court.

## VI.     HOW DO I MAKE A CLAIM FOR COMPENSATION?

If the Court approves the proposed settlement, you will receive another notice indicating when the period for submission of claims (the "Claims Period") will begin. This second notice will include detailed instructions on how to submit Proofs of Claim and on how to obtain copies of the Proofs of Claim Forms directly from the Settlement Administrator or from the Settlement Administrator's website.

The procedure for submitting Proofs of Claim will vary according to the type of compensation requested. To request Category A Compensation, you will be required to fill out a Category A Claim Form. To request Category One Compensation, you will be required to fill out a Proof of Claim Form and to submit certain records establishing that Category One Codes were billed to CIGNA HealthCare under certain circumstances, but not paid. To request Category Two Compensation, you will be required to fill out a similar Proof of Claim Form and submit documentation establishing that the codes at issue were billed to CIGNA HealthCare and were not paid, in whole or in part. In addition, for many Category Two Proofs, you will be required to submit your clinical/operative notes describing the services or supplies provided. To request Medical Necessity Denial Compensation, you will similarly be required to fill out a Proof of Claim Form and to submit documentation concerning the Proof of Claim, including the medical records relevant to the request for compensation.

The precise procedures for requesting compensation under the proposed settlement are contained in the Agreement which you can view and download at **[the Settlement Administrator's website.]  It is also available at www.hmocrisis.com, www.WhatleyDrake.com, www.ArchieLamb.com, www.milberg.com, www.kttlaw.com, and www.wcqp.com**. These procedures will also be explained in the second notice, if the Court approves the proposed settlement.

## VII.    DO I NEED TO DO ANYTHING NOW?

**TO REMAIN IN THE CLASS AND PARTICIPATE IN THE SETTLEMENT:** If you want to remain a member of the settlement Class and participate in the proposed settlement, **YOU DO NOT HAVE TO DO ANYTHING AT THIS TIME.** Notice of the pendency of the *Kaiser* lawsuit, originally filed in the Circuit Court of Madison County, Illinois, was previously provided to the members of the class certified by the Madison County Circuit Court in 2001. Members of the litigation class certified by that court had the opportunity to exclude themselves from that class. *You are a member of the settlement Class in this Litigation as defined by the settlement Class definition above even if you previously submitted a request for exclusion when the litigation class was certified in the Kaiser action by the Madison County Circuit Court.* You will be bound by all proceedings, orders, and judgments entered in connection with the proposed settlement, whether favorable or unfavorable, and will be represented by representative plaintiffs and Class Counsel for purposes of the proposed settlement. If you do not exclude yourself from the settlement Class, and the proposed settlement is granted final approval, entry of the Judgment will dismiss, release, and forever bar you from pursuing any of the Released Claims you may have against the Releasing

Parties, as set forth above, even if those claims are already pending in another forum.  If you are a member of the Class and do not exclude yourself, you may, if you wish, appear in this Litigation through your own attorney, at your own expense.  However, you need not do so to participate in the proposed settlement.

**PARTICIPATING IN THIS SETTLEMENT WILL <u>NOT</u> TERMINATE OR AFFECT ANY MANAGED CARE AGREEMENTS YOU HAVE WITH CIGNA HEALTHCARE.**

<u>**EXCLUDING YOURSELF FROM THE CLASS:**</u>  If you do not want to be a member of the settlement Class and participate in the proposed settlement, then **BY NO LATER THAN _____, 2003 ["Opt Out Deadline" – 60 days after Notice Date]**, you must send a signed statement to that effect that includes your name, business address, telephone number and Federal Tax Identification Number to the following:

> Poorman-Douglas Corporation
> [Address of Settlement Administrator]
> [Phone number of Settlement Administrator]

**TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT OUT OF THE SETTLEMENT, YOUR COMPLETED AND SIGNED OPT OUT NOTICE MUST BE POSTMARKED BY NO LATER THAN _____, 2003.  IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT.**

If you choose to opt out of the settlement, and the settlement Class, you will not be entitled to receive the benefits of the proposed settlement with CIGNA HealthCare, including any payment from the settlement fund.  Your claims against CIGNA HealthCare will not be released and you will be free to pursue any claims you believe you have by filing a separate action or request for arbitration if you are subject to an arbitration agreement.

Any member of the Class who or which timely submits a request to opt out of the settlement will have until the Fairness Hearing to deliver to the Settlement Administrator a written revocation of the request to opt out and shall thereby become a member of the Class.

## VIII.   <u>WHAT ABOUT ATTORNEYS' FEES, COSTS AND EXPENSES?</u>

Since the beginning of this Litigation, plaintiffs' counsel in the Litigation have not received any payment for their services in prosecuting the Litigation, nor have they been reimbursed for any out-of-pocket expenses.  If the Court approves the proposed settlement, counsel in *Shane* and *Kaiser* will apply to the Court for an award of attorneys' fees, including costs and expenses.  In the Agreement, CIGNA HealthCare agreed not to oppose such an application in the aggregate amount of up to Fifty-Five Million Dollars ($55,000,000.00).  If the Court awards plaintiffs' attorneys' fees, costs and expenses in an amount no greater than that amount, CIGNA HealthCare will pay the amount awarded by the Court to plaintiffs' counsel.  This payment is in addition to the consideration

to the members of the Class that is described above and will not reduce the amount available to members of the Class if the proposed settlement is approved.

## IX.   **WHAT ARE THE REPRESENTATIVE PLAINTIFFS' INCENTIVE AWARDS?**

In addition to the application for attorneys' fees, costs and expenses described in the preceding section, in connection with the Court's consideration of the proposed settlement, the representative plaintiffs intend to seek incentive awards from the Court in the amount of Seven Thousand Five Hundred Dollars ($7,500.00) for each representative plaintiff, which if awarded would be in addition to the settlement consideration that will be available to members of the Class generally.  In the Agreement, CIGNA HealthCare agreed not to oppose such an application of up to of Seven Thousand Five Hundred Dollars ($7,500.00) for each representative plaintiff.  If the Court awards representative plaintiffs a fee up to that amount, CIGNA HealthCare will pay such amount to the representative plaintiffs.

## X.   **WHO CAN I CONTACT WITH QUESTIONS?**

If you have questions regarding this Notice, the proposed settlement with CIGNA HealthCare or the Litigation generally, you can obtain additional information from the following sources:  On the Internet, at any of these sites:

[Settlement Administrator site]
www.WhatleyDrake.com                    www.kttlaw.com
www.ArchieLamb.com                      www.wcqp.com
www.milberg.com

By Telephone:
    **[fill in – Poorman-Douglas]**

By Mail:

Archie C. Lamb, Jr.
Law Offices of Archie C. Lamb, LLC
2017 Second Avenue North
Birmingham, AL  35203

Harley S. Tropin
Kozyak Tropin & Throckmorton, PA
200 S. Biscayne Boulevard, Suite 2800
Miami, FL  33131

Edith M. Kallas
Milberg Weiss Bershad Hynes & Lerach
One Pennsylvania Plaza
New York, NY  10119

Nicholas B. Roth
Eyster Key Tubb Weaver & Roth, LLC
402 East Moulton Street, SE
Eyster Building
Decatur, AL  35203

By E-Mail:

**[e-mail address of Poorman-Douglas]**

**PLEASE DO NOT CALL CIGNA HEALTHCARE, YOUR CIGNA HEALTHCARE PROVIDER RELATIONS REPRESENTATIVE, THE COURT OR THE CLERK'S OFFICE.**

## XI.   EXAMINATION OF PAPERS

This Notice is a summary and does not describe all details of the proposed settlement with CIGNA HealthCare, the Agreement or the proceedings in the Litigation generally.  Complete copies of the Agreement and certain pleadings and papers filed in the Litigation can be found for review on the following websites:

[Settlement Administrator site]
www.WhatleyDrake.com              www.kttlaw.com
www.ArchieLamb.com               www.wcqp.com
www.milberg.com

In addition, you may review the complete files of papers submitted in the Litigation in the office of the Clerk of the Court, United States Courthouse, U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida during regular business hours.

## XII.   REQUEST TO FORWARD THIS NOTICE

If you would be a member of the Class described above in this notice but you have assigned any claim that might be covered by the proposed settlement or the release described above, please forward this notice to the appropriate person as soon as possible.


Dated:          , 2003

BY ORDER OF THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF
FLORIDA

14

# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**MDL NO.: 1334**

IN RE: MANAGED CARE LITIGATION

_____

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

_____

**NOTICE OF PROPOSED SETTLEMENT
AMONG CIGNA HEALTHCARE AND PHYSICIANS**

**IF YOU ARE A PHYSICIAN, PHYSICIAN GROUP OR PHYSICIAN ORGANIZATION (OR PERSON OR ENTITY CLAIMING BY OR THROUGH THEM), WHO OR WHICH PROVIDED COVERED SERVICES TO ANY INDIVIDUAL ENROLLED IN OR COVERED BY CIGNA HEALTHCARE OR CERTAIN OTHER HEALTH CARE PLANS AT ANY TIME BETWEEN AUGUST 4, 1990 AND _____, 2003, PLEASE READ THIS NOTICE CARFULLY.  THIS CLASS ACTION AND THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS.**

If you are or have been a physician, physician group, or physician organization (or a person or entity claiming by or through them) who practiced in the United States since August 4, 1990, your rights may be affected by a proposed settlement with CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc., (collectively, "CIGNA HealthCare Defendants") in the class action lawsuits known as *Shane, et al. v. Humana, Inc., et al.,* Master File No. 00-1334-MD-MORENO, which is part of a federal multi-district litigation that is pending in the U.S. District Court for the Southern District of Florida (the "Court") called *In re Managed Care Litigation,* MDL Docket No. 1334, and *Kaiser, et al. v. CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc and CIGNA HealthCare of Texas, Inc.,* transferred to the Court to become part of the multi-district litigation, (referred to collectively as the "Litigation").  The class representatives and certain medical societies have agreed to settle all claims against CIGNA HealthCare in the Litigation in exchange for CIGNA HealthCare's adoption of a number of commitments and initiatives regarding its business practices, the creation of a foundation and the establishment of alternate settlement funds against which individuals who are members of the Class (as defined below) can make claims for a settlement payment.  The Court has scheduled a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement with CIGNA HealthCare, together with certain other matters, to be held on _____, at _____:00 A.M./P.M. at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132 (the "Fairness Hearing").  You

may be a member of the Class who therefore would be entitled to receive the benefits of the proposed settlement.  As a member of the Class, however, you will also be bound by the release and other provisions of the settlement if it is approved by the Court.  You may elect to opt out of the Class and the settlement, as explained below.  You also have a right to object to the settlement or to the applications for attorneys' fees and representative plaintiffs' incentive awards that counsel for the settlement Class intend to make to the Court, but only if you have not elected to exclude yourself from the Class and only if you comply with the procedures described in this notice or the other resources it refers to.

**WHAT IS THE LITIGATION ABOUT?**

The Litigation has been brought by the representative plaintiffs from around the United States, on behalf of a class of physicians who practiced at any time from and after August 4, 1990 through **[date of entry of preliminary approval order]** (and other non-physician health care providers in *Kaiser*) against a number of managed care companies, including Aetna, Inc., Aetna-USHC, Inc., Anthem, Inc., CIGNA HealthCare Defendants, Coventry Health Care, Inc., Health Net, Inc., Humana Health Plan, Inc., Humana, Inc., PacifiCare Health Systems, Inc., Prudential Insurance Company of America, United Health Care, United Health Group and Wellpoint Health Networks, Inc. (collectively, "defendants").  The complaints in the Litigation allege that in various time periods from 1990 to the present, these companies engaged in a conspiracy to improperly deny, delay and/or reduce payment to physicians (and other non-physician health care providers in *Kaiser*) by engaging in several types of allegedly improper conduct.  The complaints seek

**EXHIBIT 7
[Exhibit B to Plan of Notice]**

relief on behalf of purported nationwide classes under various theories arising under federal and state statutory and common law.

## WHO IS INVOLVED?

The proposed CIGNA HealthCare settlement, which is only with CIGNA HealthCare and not any of the other defendants in the Litigation, will be on behalf of a settlement class (the "Class") consisting of "any and all Physicians, Physician Groups and Physician Organizations (and all Persons claiming by or through them, such as Physicians' Assistants and Advanced Practice Registered Nurses), who or which provided Covered Services to any CIGNA HealthCare member or any individual enrolled in or covered by a plan offered or administered by any Person named as a defendant in the *Shane* complaint or by any of their respective current or former Subsidiaries from August 4, 1990 through the date of the entry of the Preliminary Approval Order; provided, however, that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services."

## THE PROPOSED SETTLEMENT

Under the proposed settlement, CIGNA HealthCare has agreed that it will make significant changes to certain business practices. In addition, CIGNA HealthCare will create and fund a foundation that will be dedicated to promoting high quality of healthcare and CIGNA HealthCare will pay two separate types of monetary compensation to members of the Class. This settlement consideration is described more fully in a longer notice that has been mailed directly to the members of the Class. If you have not received the mailed notice, you can access it and other information about the settlement at [fill in] or use the resources described below.

Only claims by members of the Class against CIGNA HealthCare will be resolved in the Litigation if the settlement is approved. The other defendants are not parties to the settlement and even if the settlement is approved by the Court, the representative plaintiffs and the signatory medical societies who are parties to the Litigation intend to continue to prosecute their claims against the other defendants, who are not parties to this or any other proposed settlement.

## YOUR RIGHTS

• If you want to remain a member of the settlement Class and participate in the proposed settlement, you do not have to do anything at this time. If the Court approves the proposed settlement, you will receive another notice indicating when the period for submission of claims begins. The second notice will include detailed instructions on how to submit Proofs of Claim and on how to obtain copies of the Proofs of Claim Forms directly from the Settlement Administrator or from the Settlement Administrator's website.

• If you want to be excluded from the proposed settlement, you must submit a request for exclusion. This must be signed by you and must include: your name, business address and telephone number and all federal tax identification numbers under which you have sought or received reimbursement from CIGNA HealthCare. The completed request must be POSTMARKED NO LATER THAN [      ], 2003, and mailed to:

[insert settlement administrator info.]

Notice of the pendency of the *Kaiser* lawsuit, originally filed in the Circuit Court of Madison County, Illinois, was previously provided to the members of the class certified by the Madison County Circuit Court in 2001. Members of the litigation class certified by that court had the opportunity to exclude themselves from that class. **You are a member of the settlement Class in this Litigation as defined by the settlement Class definition above even if you previously submitted a request for exclusion when the litigation class was certified in the Kaiser action by the Madison County Circuit Court. If you want to be excluded from this proposed settlement, you must submit a request for exclusion as set forth above.**

• The Court has scheduled a hearing to consider the proposed settlement and other matters, which will take place on _____ at ____ a.m./p.m. at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132 (the "Fairness Hearing"). At the hearing, the Court will determine, among other things, whether the proposed settlement with CIGNA HealthCare should be approved as fair, reasonable and adequate, whether the proposed settlement class should be certified, whether the Court should award attorneys' fees and expenses to Class Counsel or Kaiser Counsel or incentive awards to the representative plaintiffs in the Litigation, and certain other matters. You may attend this hearing if you wish, but you do not have to attend in order to participate in the proposed settlement.

• If you wish to appear at the settlement hearing or to object to the proposed settlement, you must submit a written objection and/or notice to appear in accordance with the procedures and deadlines that are described in the longer notice. If you have not received that notice, you should request it from one of the sources identified below. If these procedures and deadlines are not followed, you may lose significant legal rights, including, but not limited to, the right to have your objections considered by the Court.

**For Complete Information and a Copy of the Full Notice:**

Call:        [fill in]

Or Write to:

Archie C. Lamb, Jr.
Law Offices of Archie C. Lamb, LLC
2017 Second Avenue North
Birmingham, AL 35203

Harley S. Tropin

Kozyak Tropin & Throckmorton, PA
200 S. Biscayne Boulevard, Suite 2800
Miami, FL  33131

Edith M. Kallas
Milberg Weiss Bershad Hynes &
Lerach
One Pennsylvania Plaza
New York, NY  10119

Nicholas B. Roth
Eyster Key Tubb Weaver & Roth, LLC
402 East Moulton Street, SE
Eyster Building
Decatur, AL  35203

**Or Visit:**

www.WhatleyDrake.com
www.ArchieLamb.com
www.milberg.com
www.kttlaw.com
www.GordonSilberman.com

**Please do not contact the Court directly.**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**MDL NO.: 1334**

**IN RE: MANAGED CARE LITIGATION**

---

**THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES**

---

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION AMONG CIGNA
HEALTHCARE AND PHYSICIANS, OF FAIRNESS HEARING TO CONSIDER THE
PROPOSED SETTLEMENT AND OF YOUR RIGHTS CONCERNING
THE PROPOSED SETTLEMENT**

> **IF YOU ARE A PHYSICIAN, PHYSICIAN GROUP OR PHYSICIAN ORGANIZATION
> (OR PERSON OR ENTITY CLAIMING BY OR THROUGH THEM), WHO OR
> WHICH PROVIDED COVERED SERVICES TO ANY INDIVIDUAL ENROLLED IN
> OR COVERED BY CIGNA HEALTHCARE OR HEALTH BENEFIT PLANS INSURED
> OR ADMINISTERED BY OTHER MANAGED CARE COMPANIES NAMED AS
> DEFENDANTS IN *SHANE, ET AL. V. HUMANA, INC., ET AL.* AT ANY TIME
> BETWEEN AUGUST 4, 1990 AND _____ [date of entry of Preliminary Approval
> Order], PLEASE READ THIS NOTICE CAREFULLY.  THIS CLASS ACTION AND
> THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS.**

## I.   WHY SHOULD YOU READ THIS NOTICE?

If you are or have been a physician, physician group, or physician organization (or a person
or entity claiming by or through them) who practiced in the United States since August 4, 1990,
your rights may be affected by a proposed settlement with CIGNA Corporation, CIGNA HealthCare
of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc., (collectively, "CIGNA HealthCare
Defendants") in the class action lawsuits known as *Shane, et al. v. Humana, Inc., et al.*, Master File
No. 00-1334-MD-MORENO, which is part of a federal multi-district litigation that is pending in the
U.S. District Court for the Southern District of Florida (the "Court") called *In re Managed Care
Litigation*, MDL Docket No. 1334, and *Kaiser, et al. v. CIGNA Corporation, CIGNA HealthCare
of St. Louis, Inc. and CIGNA HealthCare of Texas, Inc.*, transferred to the Court to become part of
the multi-district litigation, (referred to collectively as the "Litigation").  The Litigation also
involves all of the direct and indirect subsidiaries of CIGNA Corporation involved in the health care
business, for example, Connecticut General Life Insurance Company, CIGNA HealthCare of North
Carolina, Inc., Arizona Health Plan, Inc., Healthsource New Hampshire, Inc., and many others
(collectively "CIGNA HealthCare") and the settlement encompasses all of these entities.  You may
be a member of the CIGNA HealthCare settlement class in this Litigation if you have submitted

**EXHIBIT 6
[Exhibit A to Plan of Notice]**

claims to any of these CIGNA HealthCare entities or other managed care companies. You can view and download a list of the CIGNA HealthCare entities involved in the Litigation at **[fill in]**.

The class representatives and certain medical societies have agreed to settle all claims against CIGNA HealthCare in the Litigation in exchange for CIGNA HealthCare's adoption of a number of commitments and initiatives regarding its business practices, the creation of a not-for-profit medical foundation and the establishment of alternate settlement funds against which individuals who are members of the Class (as defined below) can make claims for a settlement payment. The Court has scheduled a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement with CIGNA HealthCare, together with certain other matters, to be held on _____, _____ at _____ :00 A.M./P.M. at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132 (the "Fairness Hearing").

You may be a member of the Class who therefore would be entitled to receive the benefits of the proposed settlement. As a member of the Class, however, you will also be bound by the release and other provisions of the settlement if it is approved by the Court. You may elect to opt out of the Class and the settlement, as explained below. You also have a right to object to the settlement or to the applications for attorneys' fees and representative plaintiffs' incentive awards that counsel for the settlement Class intend to make to the Court, but only if you have not elected to exclude yourself from the Class and only if you comply with the procedures described in this notice. **BECAUSE YOUR RIGHT TO PURSUE CERTAIN TYPES OF CLAIMS AGAINST CIGNA HEALTHCARE AND CERTAIN OTHERS AFFILIATED WITH CIGNA HEALTHCARE BASED ON CIGNA HEALTHCARE'S CONDUCT MAY BE AFFECTED BY THE SETTLEMENT, YOU SHOULD READ THIS NOTICE CAREFULLY.**

## II.    WHAT IS THIS LITIGATION ABOUT?

The Litigation has been brought by the representative plaintiffs from around the United States, on behalf of a class of physicians who practiced at any time from and after August 4, 1990 through _____ **[date of entry of preliminary approval]** (and other non-physician health care providers in *Kaiser*) against a number of managed care companies, including Aetna, Inc., Aetna-USHC, Inc., Anthem, Inc., CIGNA HealthCare Defendants, Coventry Health Care, Inc., Health Net, Inc., Humana Health Plan, Inc., Humana, Inc., PacifiCare Health Systems, Inc., Prudential Insurance Company of America, United Health Care, United Health Group and Wellpoint Health Networks, Inc. (collectively, "defendants"). The complaints in the Litigation allege that in various time periods from 1990 to the present, these companies engaged in a conspiracy to improperly deny, delay and/or reduce payment to physicians (and other non-physician health care providers in *Kaiser*) by engaging in several types of allegedly improper conduct, including:

- Misrepresenting and/or failing to disclose the use of edits to unilaterally "bundle," "downcode" and/or reject claims for medically necessary covered services;

- Failing and/or refusing to recognize CPT® modifiers;

2

- Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;

- Misrepresenting and/or refusing to disclose applicable fee schedules;

- Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods; and

- Misrepresenting and/or failing to disclose the use of inappropriate or unsound criteria to calculate payments due to physicians compensated under a "capitation" system.

Plaintiffs in both the *Kaiser* and *Shane* lawsuits claim that the conduct generally described above violated various state and federal statutes.  Plaintiffs also seek recovery on various common law theories, including breach of contract.  If you would like further information about the claims asserted in the Litigation, you can review copies of the *Shane* complaint and the *Kaiser* complaint at **[fill in]**.

The *Shane* lawsuit is one significant component of litigation asserting these claims and certain others against managed care companies which began in early 2000 and ultimately was transferred to the federal court in Miami to become part of a multi-district litigation, as was the *Kaiser* lawsuit.  Since the initial complaints were filed, substantial proceedings have occurred in the Litigation, including the production of a significant number of documents by defendants, as well as claims data, and the depositions of various of the representative plaintiffs, and witnesses employed by defendants, including CIGNA HealthCare, and third parties.  In an order dated September 26, 2002, the Court certified a class and two subclasses of physicians in the *Shane* lawsuit.  The defendants in the *Shane* lawsuit, including CIGNA Corporation, appealed that ruling to the federal court of appeals, and proceedings on the appeal are still ongoing.  As part of the settlement, CIGNA Corporation would no longer actively participate in that appeal, but expects other defendants, who are <u>not</u> parties to this or any other proposed settlement, to continue to pursue that appeal and to defend the claims asserted in the Litigation on various grounds.

## III.  WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

In a settlement agreement dated September 4, 2003 (the "Agreement"), the representative plaintiffs and signatory medical societies have agreed to settle all Released Claims (as defined in the Agreement) that were or could have been asserted against CIGNA HealthCare in exchange for CIGNA HealthCare's agreement regarding its business practices and for certain monetary consideration.  The terms of the Agreement are summarized in this notice, but a copy of the entire Agreement can be reviewed at **[the Settlement Administrator's website.]  It is also available at www.hmocrisis.com, www.WhatleyDrake.com, www.ArchieLamb.com, www.milberg.com, www.kttlaw.com, and www.wcqp.com**.

None of the defendants in the Litigation other than the CIGNA HealthCare Defendants are parties to the CIGNA HealthCare proposed settlement, and even if the settlement is approved by the Court, the representative plaintiffs and signatory medical societies intend to continue to prosecute

their claims against other defendants in the Litigation who are <u>not</u> parties to this or any other proposed settlement.

### A.   The Settlement Class

The proposed CIGNA HealthCare settlement will be on behalf of the following Class, which has been certified for settlement purposes:

> Any and all Physicians, Physician Groups and Physician Organizations (and all Persons claiming by or through them, such as Physicians' Assistants and Advanced Practice Registered Nurses), who or which provided Covered Services to any CIGNA HealthCare member or any individual enrolled in or covered by a plan offered or administered by any Person named as a defendant in the *Shane* complaint or by any of their respective current or former Subsidiaries from August 4, 1990 through the date of the entry of the Preliminary Approval Order; provided, however, that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services.

The CIGNA HealthCare settlement Class is different than the class and subclasses certified by the Court in *Shane*, which are the subject of an appeal by the defendants, and the class certified by Madison County Circuit Court in *Kaiser*. CIGNA HealthCare believes that there are significant aspects of the settlement Class that distinguish it from the classes that have been certified by the Court and the Madison County Circuit Court, including, for example, that if the proposed settlement is approved and becomes effective, CIGNA HealthCare will waive any right it has to require arbitration as a condition to any monetary recovery and all members of the settlement Class will be deemed to have waived their rights to arbitration under the applicable contracts. In addition, the settlement Class does not raise the problems of manageability that CIGNA HealthCare believes affect the classes as certified by the Court and the Madison County Circuit Court.

### B.   The Settlement Consideration

If the settlement is approved by the Court, the Agreement provides for both monetary and other benefits to be provided by CIGNA HealthCare to members of the settlement Class.

The parties have entered into a proposed settlement of the Litigation. The following section briefly describes the benefits you are eligible for as a member of the settlement Class if the settlement is approved. The complete terms of the proposed settlement are in the Agreement which can be viewed and downloaded at **[the Settlement Administrator's website]. It is also available at www.hmocrisis.com, www.WhatleyDrake.com, www.ArchieLamb.com, www.milberg.com, www.kttlaw.com, and www.wcqp.com.**

4

## 1.      Prospective Relief:  Additional Disclosures; Changes in Business Practices

As a part of the settlement, CIGNA HealthCare has agreed to certain commitments regarding its disclosures and business practices.  For example, CIGNA HealthCare has agreed to:  (a) include in its contracts with Physicians a definition of medical necessity which bases medical necessity determinations on generally accepted standards of medical practice; (b) use clinical guidelines that are based on credible scientific evidence published in peer-reviewed medical literature (taking into account Physician Specialty Society recommendations, the views of Physicians practicing in the relevant clinical areas, and other relevant factors); (c) provide members of the Class access to CIGNA HealthCare's medical necessity external review process; (d) establish an independent, external billing dispute review process for resolving disputes with members of the Class concerning many common billing disputes; (e) continue to pursue initiative designed to facilitate the automated adjudication of claims submitted by Physicians and thereby the average time taken by CIGNA HealthCare to pay valid claims;  (f) fund initiatives to reduce the percentage of resubmitted claims; (g) not automatically reduce the intensity coding of evaluation and management codes billed for certain covered services; (h) disclose payment rules and conform its bundling and other computerized editing rules as specified in the Agreement; (i) not include in its contracts with members of the Class "all products clauses," "all affiliates clauses," or "gag clauses"; (j) devote resources to improve accuracy of information about eligibility of plan members; (k) where all necessary information is available to CIGNA HealthCare, ensure the payment of valid claims within 15 business days for electronically-submitted claims and 30 calendar days for paper claims; (l) provide members of the Class with the ability to view applicable fee schedule amounts for billing codes related to their practice; (m) establish a compliance dispute resolution mechanism to address disputes regarding CIGNA HealthCare's compliance with the Agreement.  In addition, CIGNA HealthCare will disclose additional information about its claim administration policies and procedures on its existing internet website.  These changes, as well as others, are more fully described in the Agreement.

## 2.      Foundation

CIGNA HealthCare has also agreed to provide Fifteen Million Dollars ($15,000,000.000) in initial funding to a medical foundation to be established if the settlement is approved.  The foundation will be dedicated to promoting high quality healthcare and will give particular emphasis to initiatives that assist Physicians to improve/enhance the quality of care received by patients and to enhance the delivery of care to the disadvantaged members of the public.

In addition to the initial funding to be provided by CIGNA HealthCare directly to the foundation, members of the Class may elect to have the amount of their settlement payment from the Category A Settlement Fund (discussed in the next section) contributed to the foundation, or to a foundation established by a signatory medical society, on their behalf.  Additional amounts may be contributed to the Foundation from the Category A Settlement Fund and the Claim Distribution Fund (also discussed in the next section) established by CIGNA HealthCare, pursuant to the terms of the Settlement Agreement.

5

### 3.     Monetary Compensation

Under the proposed settlement, CIGNA HealthCare will pay two separate types of compensation to members of the Class:  1) "Category A Settlement Fund"; and 2) "Claim Distribution Fund" which includes compensation related to claim coding and bundling edits and denials of claims on medical necessity grounds.  To be eligible for compensation, you must submit Proofs of Claim, as described in Section 8 of the Agreement.  Additional information regarding submission of Proofs of Claims will be provided to Class Members when the Settlement receives Final Approval.

**Category A Settlement Fund:**  A component of the consideration to be provided to members of the Class under the proposed settlement is the establishment of a settlement fund in the aggregate amount of Thirty Million Dollars ($30,000,000.00).  If the settlement is approved by the Court, each member of the Class will be entitled to payments from this settlement fund in accordance with the formula set forth in the Agreement.  Each member of the Class desiring to file a Category A Claim may elect to either receive the payment from the Category A Settlement Fund or to direct that such amount be contributed to the Foundation on his, her or its behalf, or to a foundation established by a state medical society.  Any member of the Class filing a Category A Claim shall not be eligible to seek Category One Compensation, Category Two Compensation or Medical Necessity Denial Compensation, described generally below.

**Claim Distribution Fund:** CIGNA HealthCare will establish a Claim Distribution Fund to pay three categories of compensation to members of the Class affected by claim coding and bundling edits or medical necessity denials.  CIGNA HealthCare will replenish this fund as often as necessary to pay all Valid Proofs of Claim.  For Category One Compensation, Valid Proofs of Claim will be paid at the amount stated in the Category One Code list.  All other Valid Proofs of Claim for Medical Necessity Denial Compensation and Category Two Compensation will be paid at 100% of the National Medicare Fee Schedule, as defined by the Agreement.

**Category One Compensation :**  The parties have negotiated a list of specific code combinations which qualify for Category One Compensation.  This list can be viewed and downloaded at **[the Settlement Administrator's website].  It is also available at www.hmocrisis.com, www.WhatleyDrake.com, www.ArchieLamb.com, www.milberg.com, www.kttlaw.com, and www.wcqp.com**.  A copy of this list is also attached to the Agreement as Exhibit 1.  Upon submission of Valid Proofs of Claim, members of the Class will receive reimbursement for the denial of payment for Category One Codes in the specific circumstances and within the date of service limitations set forth in Exhibit 1 to the Agreement.  CIGNA HealthCare has agreed to pay all Valid Category One Proofs of Claim.

**Category Two Compensation:**  Category Two Proofs of Claim are not limited to specific codes and/or code combinations.  You may resubmit claims to CIGNA HealthCare which you believe were improperly denied and/or reduced where the specific codes or time periods involved are outside of the Category One Code list.  If CIGNA HealthCare denies the Proof of Claim, it will be automatically sent to an external reviewer for a final decision.  You may, under Category Two, receive reimbursement for the code(s) which were originally denied or paid at

a reduced amount.  In addition, to help you identify certain Fee for Service Claims that are eligible for Category Two Compensation, CIGNA HealthCare will use its best efforts to make available a Facilitation List to assist members of the Class in identifying some types of claims that may be eligible for Category Two Compensation.  You can obtain your Facilitation List, in paper or electronic form, from the Settlement Administrator.

**Compensation for Erroneous Denials of Claims on Medical Necessity Grounds:** You may resubmit claims which you believe were improperly denied as not medically necessary or as experimental or investigational.  If CIGNA HealthCare denies the Proof of Claim, it will automatically be sent to an external reviewer for a final decision.  You may receive payment for the code(s) which were originally denied.  CIGNA HealthCare has agreed to pay all Valid Proofs of Claim for Medical Necessity Denial Compensation.

### 4.      Arbitration Waiver

With regard to this Litigation only, CIGNA HealthCare will waive its right to require those members of the Class with valid and enforceable arbitration provisions to arbitrate their Fee for Service Claims during the Class Period against CIGNA HealthCare. **This waiver will permit all members of the Class to participate in the settlement compensation funds, even if they have valid and enforceable arbitration provisions in their contracts with CIGNA HealthCare.**

### C.      The Release and Dismissal with Prejudice

If the proposed settlement is approved by the Court and you do not exclude yourself from the settlement Class, certain legal claims you may have against CIGNA HealthCare and other Released Persons, regardless of legal theory, including without limitation any aspect of fee-for-service claims adjudicated by CIGNA HealthCare 30 days before Final Approval, will be dismissed on the merits and with prejudice.  None of those claims may be asserted in any other lawsuit and your only remedies will be those set forth in the Agreement, unless you exclude yourself from the settlement Class.  **Because the release is a critical element of the proposed settlement, it has been included here verbatim.  The definitions of the terms "Released Claims," "Released Person," and "Releasing Parties" are also set forth below.  Language defining what has been excluded from the release and defined as "Retained Claims" is set forth in full in Section 13.4 of the Agreement.  You should read this section very carefully because it will affect your rights if you remain in the settlement Class.**

### 1.      Release and Covenant Not To Sue

Upon Final Approval, the Releasing Parties and each of them shall hereby be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever, remised, released, relinquished, compromised and discharged all Released Claims against each Released Person, whether or not any such Releasing Party submits any Valid Proofs of Claim or otherwise seeks any payment under the terms of the Agreement.

7

The Releasing Parties and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit on the basis of any Released Claim against any Released Person.

With respect to all Released Claims, the Releasing Parties and each of them agree that they are expressly waiving and relinquishing to the fullest extent permitted by law (a) the provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor.**

and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.

### 2.    Definitions

**"Released Claims"** means and includes any and all claims that have been or could have been asserted by or on behalf of any or all Class Members against the Released Persons, or any of them, and which arise prior to Final Approval by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation, except as otherwise provided for by this Agreement. This includes, without limitation and as to Released Persons only, any aspect of any Fee for Service Claim submitted by any Class Member to CIGNA HealthCare, and claims based upon a capitation agreement with CIGNA HealthCare, and any allegation that Defendants and/or CIGNA HealthCare have conspired with, aided and abetted, or otherwise acted in concert with other managed care organizations, other health insurance companies, and/or other third parties with regard to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation or with regard to CIGNA HealthCare's liability for any other demands for payment submitted by any Class Member to such other managed care organizations, health insurance companies, and/or other third parties. Notwithstanding this definition, Released Claims do not include any and all claims of any kind whatever arising out of the alleged nonpayment or payment at inappropriate rates or amounts of fee for service claims submitted to CIGNA HealthCare for services or supplies not represented by CPT® Codes or HCPCS Level II Codes or codes specially created by CIGNA HealthCare (such as its "well woman" code, code 90769).

**"Releasing Parties"** (each a "Releasing Party") means Class Members and, to the extent they have claims against CIGNA HealthCare derived by contract or operation of law from the claims of Class Members, any and all Subsidiaries, affiliates, shareholders, parents, directors, officers, employees, professional corporations, agents, administrators, executors, legal representatives, partners and partnerships, heirs, predecessors, successors and assigns of Class Members.

"**Released Persons**" means:

a.       CIGNA HealthCare and CIGNA HealthCare's insurers and counsel, including Defendants' Counsel as defined herein.

b.       Persons who provided claim processing services, software, proprietary guidelines or technology to CIGNA HealthCare, those contracted agents processing claims on CIGNA HealthCare's behalf, together with each such Person's predecessors or successors, but only to the extent of such Person's services and work done pursuant to contract with CIGNA HealthCare.  Such Persons are expressly not "Released Persons" as to services provided to any Person other than CIGNA HealthCare.  Nothing herein is intended to release Delegated Entities.

c.       "Released Persons" shall not include any defendant in MDL No. 1334 other than CIGNA HealthCare or any Subsidiary of CIGNA Corporation.

## IV.     WHAT WILL HAPPEN AT THE FAIRNESS HEARING?

The Fairness Hearing will be held on _____, ____ at ___:00 A.M./P.M. at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132.  However, the order scheduling that hearing also provides that it may be adjourned by the Court and that no additional notice will be provided to potential members of the settlement Class other than an announcement in open court.

At the Fairness Hearing, the Court will consider several different issues.

First, the Court will consider whether the proposed settlement of the Litigation with CIGNA HealthCare that is reflected in the Agreement is fair, reasonable and adequate to the members of the settlement Class.

Second, the Court will consider whether it should certify the settlement Class pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  Among other things, this will require the Court to determine (i) whether questions of law or fact common to the members of the settlement class predominate over questions affecting only individual members of the settlement class, and (ii) whether a class action is superior to other available methods for fair and efficient adjudication of the controversy.  If the Court certifies the settlement Class, potential members of the Class who have timely elected to opt out from the settlement Class by following procedures described below will be excluded from it.

Third, the Court will consider the application for a payment of incentive awards to the representative plaintiffs by CIGNA HealthCare, which is discussed in more detail below.

Fourth, the Court will consider an application by Class Counsel and Kaiser Counsel for attorneys' fees, costs and expenses to be paid by CIGNA HealthCare, which is also discussed in more detail below.

## V.   CAN I PARTICIPATE IN THE SETTLEMENT HEARING?

Any member of the Class, or other interested person or entity, who or which objects to the proposed settlement with CIGNA HealthCare, the Agreement, the application for plaintiffs' attorneys' fees or the other matters to be considered at the Fairness Hearing may appear and present such objections, provided, however, that no member of the Class who or which has elected to opt out from the Class will be entitled to object. In order to be permitted to object to the proposed settlement, however, you must, on or before _____, 2003 **["Objection Date" – 60 days after Notice Date]** comply fully with the following requirements:

- File with the Court a personally signed notice of your intention to appear (or a notice of intention signed by an authorized representative of a Physicians' Group or Physicians' Organization), together with a statement setting forth your objections, if any, to the matters to be considered and the basis for those objections, together with any documentation that you intend to rely upon at the Fairness Hearing; and

- Serve copies of all such materials either by hand delivery or by first-class mail, postage prepaid, upon the following counsel:

| | |
|---|---|
| Archie C. Lamb, Jr. | John G. Harkins, Jr. |
| Law Offices of Archie C. Lamb, LLC | Eleanor Morris Illoway |
| 2017 Second Avenue North | Harkins Cunningham LLP |
| Birmingham, AL  35203 | 2800 One Commerce Square |
| | 2005 Market Street |
| Harley S. Tropin | Philadelphia, PA  19103-7042 |
| Kozyak Tropin & Throckmorton, PA | |
| 200 S. Biscayne Boulevard, Suite 2800 | Marty L. Steinberg |
| Miami, FL  33131 | Hunton & Williams |
| | Mellon Financial Center |
| Edith M. Kallas | 1111 Brickell Avenue |
| Milberg Weiss Bershad Hynes & Lerach | Suite 2500 |
| One Pennsylvania Plaza | Miami, FL  33131-3136 |
| New York, NY  10119 | |

If you do not comply with the foregoing procedures and deadlines for submitting written objections and/or appearing at the Fairness Hearing, you may lose substantial legal rights, including but not limited to, the right to appear and be heard at the Fairness Hearing; the right to contest approval of the proposed settlement or the application for an award of attorneys' fees, costs and expenses to plaintiffs' counsel; the right to contest approval of the application for incentive awards to representative plaintiffs; or the right to contest any other orders or judgments of the Court entered in connection with the proposed settlement.

If the Court does not approve the proposed settlement, the Agreement will be null and void. If there are further actions taken in the Litigation that affect your rights, you will receive such notice, if any, as may be determined by the Court.

10

## VI.    HOW DO I MAKE A CLAIM FOR COMPENSATION?

If the Court approves the proposed settlement, you will receive another notice indicating when the period for submission of claims (the "Claims Period") will begin. This second notice will include detailed instructions on how to submit Proofs of Claim and on how to obtain copies of the Proofs of Claim Forms directly from the Settlement Administrator or from the Settlement Administrator's website.

The procedure for submitting Proofs of Claim will vary according to the type of compensation requested. To request Category A Compensation, you will be required to fill out a Category A Claim Form. To request Category One Compensation, you will be required to fill out a Proof of Claim Form and to submit certain records establishing that Category One Codes were billed to CIGNA HealthCare under certain circumstances, but not paid. To request Category Two Compensation, you will be required to fill out a similar Proof of Claim Form and submit documentation establishing that the codes at issue were billed to CIGNA HealthCare and were not paid, in whole or in part. In addition, for many Category Two Proofs, you will be required to submit your clinical/operative notes describing the services or supplies provided. To request Medical Necessity Denial Compensation, you will similarly be required to fill out a Proof of Claim Form and to submit documentation concerning the Proof of Claim, including the medical records relevant to the request for compensation.

The precise procedures for requesting compensation under the proposed settlement are contained in the Agreement which you can view and download at **[the Settlement Administrator's website.] It is also available at www.hmocrisis.com, www.WhatleyDrake.com, www.ArchieLamb.com, www.milberg.com, www.kttlaw.com, and www.wcqp.com**. These procedures will also be explained in the second notice, if the Court approves the proposed settlement.

## VII.    DO I NEED TO DO ANYTHING NOW?

**TO REMAIN IN THE CLASS AND PARTICIPATE IN THE SETTLEMENT:** If you want to remain a member of the settlement Class and participate in the proposed settlement, **YOU DO NOT HAVE TO DO ANYTHING AT THIS TIME.** Notice of the pendency of the *Kaiser* lawsuit, originally filed in the Circuit Court of Madison County, Illinois, was previously provided to the members of the class certified by the Madison County Circuit Court in 2001. Members of the litigation class certified by that court had the opportunity to exclude themselves from that class. *You are a member of the settlement Class in this Litigation as defined by the settlement Class definition above even if you previously submitted a request for exclusion when the litigation class was certified in the Kaiser action by the Madison County Circuit Court.* You will be bound by all proceedings, orders, and judgments entered in connection with the proposed settlement, whether favorable or unfavorable, and will be represented by representative plaintiffs and Class Counsel for purposes of the proposed settlement. If you do not exclude yourself from the settlement Class, and the proposed settlement is granted final approval, entry of the Judgment will dismiss, release, and forever bar you from pursuing any of the Released Claims you may have against the Releasing

Parties, as set forth above, even if those claims are already pending in another forum.  If you are a member of the Class and do not exclude yourself, you may, if you wish, appear in this Litigation through your own attorney, at your own expense.  However, you need not do so to participate in the proposed settlement.

**PARTICIPATING IN THIS SETTLEMENT WILL <u>NOT</u> TERMINATE OR AFFECT ANY MANAGED CARE AGREEMENTS YOU HAVE WITH CIGNA HEALTHCARE.**

**<u>EXCLUDING YOURSELF FROM THE CLASS:</u>** If you do not want to be a member of the settlement Class and participate in the proposed settlement, then **BY NO LATER THAN _____, 2003 ["Opt Out Deadline" – 60 days after Notice Date]**, you must send a signed statement to that effect that includes your name, business address, telephone number and Federal Tax Identification Number to the following:

> Poorman-Douglas Corporation
> [Address of Settlement Administrator]
> [Phone number of Settlement Administrator]

**TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT OUT OF THE SETTLEMENT, YOUR COMPLETED AND SIGNED OPT OUT NOTICE MUST BE POSTMARKED BY NO LATER THAN _____, 2003.  IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT.**

If you choose to opt out of the settlement, and the settlement Class, you will not be entitled to receive the benefits of the proposed settlement with CIGNA HealthCare, including any payment from the settlement fund.  Your claims against CIGNA HealthCare will not be released and you will be free to pursue any claims you believe you have by filing a separate action or request for arbitration if you are subject to an arbitration agreement.

Any member of the Class who or which timely submits a request to opt out of the settlement will have until the Fairness Hearing to deliver to the Settlement Administrator a written revocation of the request to opt out and shall thereby become a member of the Class.

## VIII.   WHAT ABOUT ATTORNEYS' FEES, COSTS AND EXPENSES?

Since the beginning of this Litigation, plaintiffs' counsel in the Litigation have not received any payment for their services in prosecuting the Litigation, nor have they been reimbursed for any out-of-pocket expenses.  If the Court approves the proposed settlement, counsel in *Shane* and *Kaiser* will apply to the Court for an award of attorneys' fees, including costs and expenses.  In the Agreement, CIGNA HealthCare agreed not to oppose such an application in the aggregate amount of up to Fifty-Five Million Dollars ($55,000,000.00).  If the Court awards plaintiffs' attorneys' fees, costs and expenses in an amount no greater than that amount, CIGNA HealthCare will pay the amount awarded by the Court to plaintiffs' counsel.  This payment is in addition to the consideration

to the members of the Class that is described above and will not reduce the amount available to members of the Class if the proposed settlement is approved.

## IX.   WHAT ARE THE REPRESENTATIVE PLAINTIFFS' INCENTIVE AWARDS?

In addition to the application for attorneys' fees, costs and expenses described in the preceding section, in connection with the Court's consideration of the proposed settlement, the representative plaintiffs intend to seek incentive awards from the Court in the amount of Seven Thousand Five Hundred Dollars ($7,500.00) for each representative plaintiff, which if awarded would be in addition to the settlement consideration that will be available to members of the Class generally.  In the Agreement, CIGNA HealthCare agreed not to oppose such an application of up to of Seven Thousand Five Hundred Dollars ($7,500.00) for each representative plaintiff.  If the Court awards representative plaintiffs a fee up to that amount, CIGNA HealthCare will pay such amount to the representative plaintiffs.

## X.   WHO CAN I CONTACT WITH QUESTIONS?

If you have questions regarding this Notice, the proposed settlement with CIGNA HealthCare or the Litigation generally, you can obtain additional information from the following sources:  On the Internet, at any of these sites:

[Settlement Administrator site]
www.WhatleyDrake.com                  www.kttlaw.com
www.ArchieLamb.com                    www.wcqp.com
www.milberg.com

By Telephone:
        [fill in – Poorman-Douglas]

By Mail:

Archie C. Lamb, Jr.
Law Offices of Archie C. Lamb, LLC
2017 Second Avenue North
Birmingham, AL  35203

Harley S. Tropin
Kozyak Tropin & Throckmorton, PA
200 S. Biscayne Boulevard, Suite 2800
Miami, FL  33131

Edith M. Kallas
Milberg Weiss Bershad Hynes & Lerach
One Pennsylvania Plaza
New York, NY  10119

13

Nicholas B. Roth
Eyster Key Tubb Weaver & Roth, LLC
402 East Moulton Street, SE
Eyster Building
Decatur, AL  35203

By E-Mail:

**[e-mail address of Poorman-Douglas]**

**PLEASE DO NOT CALL CIGNA HEALTHCARE, YOUR CIGNA HEALTHCARE PROVIDER RELATIONS REPRESENTATIVE, THE COURT OR THE CLERK'S OFFICE.**

## XI.   EXAMINATION OF PAPERS

This Notice is a summary and does not describe all details of the proposed settlement with CIGNA HealthCare, the Agreement or the proceedings in the Litigation generally.  Complete copies of the Agreement and certain pleadings and papers filed in the Litigation can be found for review on the following websites:

> [Settlement Administrator site]
> www.WhatleyDrake.com         www.kttlaw.com
> www.ArchieLamb.com           www.wcqp.com
> www.milberg.com

In addition, you may review the complete files of papers submitted in the Litigation in the office of the Clerk of the Court, United States Courthouse, U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida during regular business hours.

## XII.   REQUEST TO FORWARD THIS NOTICE

If you would be a member of the Class described above in this notice but you have assigned any claim that might be covered by the proposed settlement or the release described above, please forward this notice to the appropriate person as soon as possible.

Dated: _____, 2003

> BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL NO.: 1334

IN RE: MANAGED CARE LITIGATION

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

NOTICE OF PROPOSED SETTLEMENT
AMONG CIGNA HEALTHCARE AND PHYSICIANS

**IF YOU ARE A PHYSICIAN, PHYSICIAN GROUP OR PHYSICIAN ORGANIZATION (OR PERSON OR ENTITY CLAIMING BY OR THROUGH THEM), WHO OR WHICH PROVIDED COVERED SERVICES TO ANY INDIVIDUAL ENROLLED IN OR COVERED BY CIGNA HEALTHCARE OR CERTAIN OTHER HEALTH CARE PLANS AT ANY TIME BETWEEN AUGUST 4, 1990 AND _____, 2003, PLEASE READ THIS NOTICE CARFULLY. THIS CLASS ACTION AND THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS.**

If you are or have been a physician, physician group, or physician organization (or a person or entity claiming by or through them) who practiced in the United States since August 4, 1990, your rights may be affected by a proposed settlement with CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc., and CIGNA HealthCare of Texas, Inc., (collectively, "CIGNA HealthCare Defendants") in the class action lawsuits known as *Shane, et al. v. Humana, Inc., et al.*, Master File No. 00-1334-MD-MORENO, which is part of a federal multi-district litigation that is pending in the U.S. District Court for the Southern District of Florida (the "Court") called *In re Managed Care Litigation*, MDL Docket No. 1334, and *Kaiser, et al. v. CIGNA Corporation, CIGNA HealthCare of St. Louis, Inc. and CIGNA HealthCare of Texas, Inc.*, transferred to the Court to become part of the multi-district litigation, (referred to collectively as the "Litigation"). The class representatives and certain medical societies have agreed to settle all claims against CIGNA HealthCare in the Litigation in exchange for CIGNA HealthCare's adoption of a number of commitments and initiatives regarding its business practices, the creation of a foundation and the establishment of alternate settlement funds against which individuals who are members of the Class (as defined below) can make claims for a settlement payment. The Court has scheduled a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement with CIGNA HealthCare, together with certain other matters, to be held on _____, _____ at _____ :00 A.M./P.M. at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132 (the "Fairness Hearing"). You may be a member of the Class who therefore would be entitled to receive the benefits of the proposed settlement. As a member of the Class, however, you will also be bound by the release and other provisions of the settlement if it is approved by the Court. You may elect to opt out of the Class and the settlement, as explained below. You also have a right to object to the settlement or to the applications for attorneys' fees and representative plaintiffs' incentive awards that counsel for the settlement Class intend to make to the Court, but only if you have not elected to exclude yourself from the Class and only if you comply with the procedures described in this notice or the other resources it refers to.

**WHAT IS THE LITIGATION ABOUT?**
The Litigation has been brought by the representative plaintiffs from around the United States, on behalf of a class of physicians who practiced at any time from and after August 4, 1990 through _____ **[date of entry of preliminary approval order]** (and other non-physician health care providers in *Kaiser*) against a number of managed care companies, including Aetna, Inc., Aetna-USHC, Inc., Anthem, Inc., CIGNA HealthCare Defendants, Coventry Health Care, Inc., Health Net, Inc., Humana Health Plan, Inc., Humana, Inc., PacifiCare Health Systems, Inc., Prudential Insurance Company of America, United Health Care, United Health Group and Wellpoint Health Networks, Inc. (collectively, "defendants"). The complaints in the Litigation allege that in various time periods from 1990 to the present, these companies engaged in a conspiracy to improperly deny, delay and/or reduce payment to physicians (and other non-physician health care providers in *Kaiser*) by engaging in several types of allegedly improper conduct. The complaints seek

**EXHIBIT 7**
**[Exhibit B to Plan of Notice]**

relief on behalf of purported nationwide classes under various theories arising under federal and state statutory and common law.

## WHO IS INVOLVED?

The proposed CIGNA HealthCare settlement, which is only with CIGNA HealthCare and not any of the other defendants in the Litigation, will be on behalf of a settlement class (the "Class") consisting of "any and all Physicians, Physician Groups and Physician Organizations (and all Persons claiming by or through them, such as Physicians' Assistants and Advanced Practice Registered Nurses), who or which provided Covered Services to any CIGNA HealthCare member or any individual enrolled in or covered by a plan offered or administered by any Person named as a defendant in the *Shane* complaint or by any of their respective current or former Subsidiaries from August 4, 1990 through the date of the entry of the Preliminary Approval Order; provided, however, that the Class shall not include any Physician who is or was an employee of a CIGNA HealthCare staff-model HMO at the time of providing such Covered Services."

## THE PROPOSED SETTLEMENT

Under the proposed settlement, CIGNA HealthCare has agreed that it will make significant changes to certain business practices. In addition, CIGNA HealthCare will create and fund a foundation that will be dedicated to promoting high quality of healthcare and CIGNA HealthCare will pay two separate types of monetary compensation to members of the Class. This settlement consideration is described more fully in a longer notice that has been mailed directly to the members of the Class. If you have not received the mailed notice, you can access it and other information about the settlement at [fill in] or use the resources described below.

Only claims by members of the Class against CIGNA HealthCare will be resolved in the Litigation if the settlement is approved. The other defendants are not parties to the settlement and even if the settlement is approved by the Court, the representative plaintiffs and the signatory medical societies who are parties to the Litigation intend to continue to prosecute their claims against the other defendants, who are not parties to this or any other proposed settlement.

## YOUR RIGHTS

• If you want to remain a member of the settlement Class and participate in the proposed settlement, you do not have to do anything at this time. If the Court approves the proposed settlement, you will receive another notice indicating when the period for submission of claims begins. The second notice will include detailed instructions on how to submit Proofs of Claim and on how to obtain copies of the Proofs of Claim Forms directly from the Settlement Administrator or from the Settlement Administrator's website.

• If you want to be excluded from the proposed settlement, you must submit a request for exclusion. This must be signed by you and must include: your name, business address and telephone number and all federal tax identification numbers under which you have sought or received reimbursement from CIGNA HealthCare. The completed request must be **POSTMARKED NO LATER THAN [      ], 2003,** and mailed to:

[insert settlement administrator info.]

Notice of the pendency of the *Kaiser* lawsuit, originally filed in the Circuit Court of Madison County, Illinois, was previously provided to the members of the class certified by the Madison County Circuit Court in 2001. Members of the litigation class certified by that court had the opportunity to exclude themselves from that class. **You are a member of the settlement Class in this Litigation as defined by the settlement Class definition above even if you previously submitted a request for exclusion when the litigation class was certified in the Kaiser action by the Madison County Circuit Court. If you want to be excluded from this proposed settlement, you must submit a request for exclusion as set forth above.**

• The Court has scheduled a hearing to consider the proposed settlement and other matters, which will take place on _____ , ____ at _____ a.m./p.m. at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast 4th Street, Miami, Florida 33132 (the "Fairness Hearing"). At the hearing, the Court will determine, among other things, whether the proposed settlement with CIGNA HealthCare should be approved as fair, reasonable and adequate, whether the proposed settlement class should be certified, whether the Court should award attorneys' fees and expenses to Class Counsel or Kaiser Counsel or incentive awards to the representative plaintiffs in the Litigation, and certain other matters. You may attend this hearing if you wish, but you do not have to attend in order to participate in the proposed settlement.

• If you wish to appear at the settlement hearing or to object to the proposed settlement, you must submit a written objection and/or notice to appear in accordance with the procedures and deadlines that are described in the longer notice. If you have not received that notice, you should request it from one of the sources identified below. If these procedures and deadlines are not followed, you may lose significant legal rights, including, but not limited to, the right to have your objections considered by the Court.

**For Complete Information and a Copy of the Full Notice:**

Call:            [fill in]

Or Write to:

Archie C. Lamb, Jr.
Law Offices of Archie C. Lamb, LLC
2017 Second Avenue North
Birmingham, AL 35203

Harley S. Tropin

Kozyak Tropin & Throckmorton, PA
200 S. Biscayne Boulevard, Suite 2800
Miami, FL 33131

Edith M. Kallas
Milberg Weiss Bershad Hynes &
Lerach
One Pennsylvania Plaza
New York, NY 10119

Nicholas B. Roth
Eyster Key Tubb Weaver & Roth, LLC
402 East Moulton Street, SE
Eyster Building
Decatur, AL 35203

**Or Visit:**

www.WhatleyDrake.com
www.ArchieLamb.com
www.milberg.com
www.kttlaw.com
www.GordonSilberman.com

**Please do not contact the Court directly.**

## START DATES FOR SECTION 7 COMMITMENTS
## (BASED ON MID-JANUARY FAIRNESS HEARING)

| SECTION | DESCRIPTION | START DATE |
|---|---|---|
| 7.1 | Auto-adjudication | Preliminary Approval |
| 7.2 | Website Disclosures | |
| | Website – Development of Form and Content | Preliminary Approval |
| | Review by Notice Counsel and Plaintiffs | Forty-five days prior to Fairness Hearing |
| | Implementation of Website | Final Approval + 90 days |
| 7.3 | E-Mail Fee Schedule, Coding etc. | Final Approval + 90 days (or, if there are appeals of Final Order, 7/1/04) |
| 7.4 | Provider Relations Investments | Preliminary Approval |
| 7.5 | Reduced Precertification Requirements | Preliminary Approval |
| | Precertification by Electronic Means | Final Approval + 90 days |
| 7.6 | Material Adverse Change Notice | As soon as practical, but not later than Preliminary Approval + 60 days |
| 7.7 | Initiatives re:  Resubmissions | Preliminary Approval |
| | Resubmissions regarding Power MHS system | Final Approval + 90 days |
| 7.8.a | Consistency of Claim Payment Practices | As soon as practical, but not later than Preliminary Approval + 60 days |
| b | Web-based Pre-Adjudication Tool | To Be Determined |
| c | Submission of Clinical Information | Final Approval + 90 days |
| 7.9 | Establishment of Physician Advisory Committee | Final Approval |
| 7.10 | Implement Process for External Review of Billing Disputes | Final Approval |
| 7.11 | Medical Necessity / Experimental and Investigational | Final Approval |
| 7.12 | Implement Process for Clinical Information Disputes | Final Approval |
| 7.13 | Participation in CIGNA HealthCare Networks | |
| a | Advance Credentialing | Final Approval + 90 days |
| b | "All Products"/ "All Affiliates" Clauses | Preliminary Approval |
| c | Termination Without Cause | As soon as practical, but not later than Preliminary Approval + 60 days |
| d | Class Member Refusal to Accept New Patients | Final Approval |

**EXHIBIT 8**

| 7.14 | Fee Schedule Changes | |
|------|----------------------|----|
| a | Notice and Frequency | Final Approval |
| b | Payment Rules for Injectibles, DME, etc. | Final Approval |
| c | Appeals of R & C Determinations | Final Approval |
| 7.15 | Recognition of Assignments of Benefits | Preliminary Approval |
| 7.16 | Application of Clinical Judgment | |
| a(1) | Medical Necessity Definition | Preliminary Approval |
| a(2) | External Review Statistics | Final Approval |
| b | Policy Issues Involving Clinical Judgment | Preliminary Approval |
| c | Consideration of Administrative Exemption Program | Final Approval |
| 7.17 | Billing and Payment | |
| a | Timing of Claim Submissions (re: 180 day requirement) | Preliminary Approval |
| b | Claim Submissions (re: acceptance of certain forms and submissions of Clinical Information) | Preliminary Approval |
| 7.18.a | Logging of Receipt Date and Attempt to Require 24 Hour Transmission by Clearinghouses | Preliminary Approval |
| b | Payment of Simple Interest | Final Approval + 6 months |
| 7.19 | No Automatic Downcoding of Evaluation and Management Claims | Preliminary Approval |
| 7.20.a-j | Modifications to Payment Policies | Final Approval |
| 7.21.a | Modification of Language in Remittance Forms | Final Approval + 120 days |
| 7.22 | Overpayment Recovery Procedures | Final Approval + 90 days |
| 7.23 | Improve Accuracy of Eligibility Information | Preliminary Approval |
| 7.24 | Provider Service Centers | Preliminary Approval |
| 7.25 | Confirmation of Medical Necessity | As soon as practical, but not later than Preliminary Approval + 60 days |
| 7.26 | Electronic Connectivity | Final Approval + 90 days |
| 7.27 | Physician Information on Website | Final Approval + 90 days |
| 7.28 | Capitation and Physician Organization Issues | |
| a | Capitation Reporting | Final Approval |
| b | Assignment to PCP (assignment and commencement of making recommendations to plan sponsors) | Final Approval |
| 7.29.a | No "Gag Clauses" | Preliminary Approval |
| b | Ownership of Medical Records | Preliminary Approval |
| c | Arbitration Fee Limits | Final Approval |

| | | |
|---|---|---|
| d | Impact on Physician Agreements | Obligations and commitments to be incorporated into physician contracts as they commence pursuant to this Exhibit 8. |
| e | Impact on Covered Services | Preliminary Approval |
| f | Privacy of Records | Preliminary Approval |
| g | Pharmacy Risk Pools | Preliminary Approval |
| h | "Stop- Loss" | As soon as practical, but not later than Preliminary Approval + 60 days |
| i | Pharmacy Provisions:  Disclosures re: Formulary | Final Approval |
| i | Pharmacy Provisions:  Maintenance of Exception Process | Final Approval |
| i | Pharmacy Provisions:  Coverage for Off-label Uses | Preliminary Approval |
| j | Restrictive Endorsements | Subject to effective dates of remedies available pursuant to the terms of the Agreement and this Exhibit 8 |
| k | Physician Specialty Society Guidelines | Preliminary Approval |
| l | Scope of Responsibilities | Preliminary Approval |
| m | Provision of Contract Copies | Final Approval |
| n | State and Federal Laws | Preliminary Approval |
| o | Modification of Means of Disclosure | Preliminary Approval |
| p | Participating Physicians Status and Limits on Obligations of Non-Participating Physicians | Final Approval |
| q | Effect of Assignment of Benefits | Preliminary Approval |
| r | Non-Disparagement | Final Approval + 120 days |
| 7.30 | Compliance with Applicable Law and Government Contracts | Preliminary Approval |
| 7.33 a-e | Mental Health Provisions | Final Approval |

**START DATES FOR SECTION 7 COMMITMENTS
(BASED ON MID-DECEMBER FAIRNESS HEARING)**

| SECTION | DESCRIPTION | START DATE |
|---|---|---|
| 7.1 | Auto-adjudication | Preliminary Approval |
| 7.2 | Website Disclosures | |
| | Website – Development of Form and Content | Preliminary Approval |
| | Review by Notice Counsel and Plaintiffs | At least 15 days prior to Fairness Hearing |
| | Implementation of Website | Final Approval + 120 days |
| 7.3 | E-Mail Fee Schedule, Coding etc. | Final Approval + 120 days (or, if there are appeals of Final Order, 7/1/04) |
| 7.4 | Provider Relations Investments | Preliminary Approval |
| 7.5 | Reduced Precertification Requirements | Preliminary Approval |
| | Precertification by Electronic Means | Final Approval + 120 days |
| 7.6 | Material Adverse Change Notice | As soon as practical, but not later than Preliminary Approval + 60 days |
| 7.7 | Initiatives re: Resubmissions | Preliminary Approval |
| | Resubmissions regarding Power MHS system | Final Approval + 120 days |
| 7.8.a | Consistency of Claim Payment Practices | As soon as practical, but not later than Preliminary Approval + 60 days |
| b | Web-based Pre-Adjudication Tool | To Be Determined |
| c | Submission of Clinical Information | Final Approval + 120 days |
| 7.9 | Establishment of Physician Advisory Committee | Final Approval |
| 7.10 | Implement Process for External Review of Billing Disputes | Final Approval |
| 7.11 | Medical Necessity / Experimental and Investigational | Final Approval |
| 7.12 | Implement Process for Clinical Information Disputes | Final Approval |
| 7.13 | Participation in CIGNA HealthCare Networks | |
| a | Advance Credentialing | Final Approval + 90 days |
| b | "All Products"/ "All Affiliates" Clauses | Preliminary Approval |
| c | Termination Without Cause | As soon as practical, but not later than Preliminary Approval + 60 days |
| d | Class Member Refusal to Accept New Patients | Final Approval |

**EXHIBIT 8**

| 7.14 | Fee Schedule Changes | |
| a | Notice and Frequency | Final Approval |
| b | Payment Rules for Injectibles, DME, etc. | Final Approval |
| c | Appeals of R & C Determinations | Final Approval |
| 7.15 | Recognition of Assignments of Benefits | Preliminary Approval |
| 7.16 | Application of Clinical Judgment | |
| a(1) | Medical Necessity Definition | Preliminary Approval |
| a(2) | External Review Statistics | Final Approval |
| b | Policy Issues Involving Clinical Judgment | Preliminary Approval |
| c | Consideration of Administrative Exemption Program | Final Approval |
| 7.17 | Billing and Payment | |
| a | Timing of Claim Submissions (re: 180 day requirement) | Preliminary Approval |
| b | Claim Submissions (re: acceptance of certain forms and submissions of Clinical Information) | Preliminary Approval |
| 7.18.a | Logging of Receipt Date and Attempt to Require 24 Hour Transmission by Clearinghouses | Preliminary Approval |
| b | Payment of Simple Interest | Final Approval + 7 months |
| 7.19 | No Automatic Downcoding of Evaluation and Management Claims | Preliminary Approval |
| 7.20.a-j | Modifications to Payment Policies | Final Approval |
| 7.21.a | Modification of Language in Remittance Forms | Final Approval + 120 days or as soon thereafter as practical |
| 7.22 | Overpayment Recovery Procedures | Final Approval + 120 days |
| 7.23 | Improve Accuracy of Eligibility Information | Preliminary Approval |
| 7.24 | Provider Service Centers | Preliminary Approval |
| 7.25 | Confirmation of Medical Necessity | As soon as practical, but not later than Preliminary Approval + 60 days |
| 7.26 | Electronic Connectivity | Final Approval + 120 days |
| 7.27 | Physician Information on Website | Final Approval + 120 days |
| 7.28 | Capitation and Physician Organization Issues | |
| a | Capitation Reporting | Final Approval |
| b | Assignment to PCP (assignment and commencement of making recommendations to plan sponsors) | Final Approval |
| 7.29.a | No "Gag Clauses" | Preliminary Approval |
| b | Ownership of Medical Records | Preliminary Approval |
| c | Arbitration Fee Limits | Final Approval |

| d | Impact on Physician Agreements | Obligations and commitments to be incorporated into physician contracts as they commence pursuant to this Exhibit 8. |
|---|---|---|
| e | Impact on Covered Services | Preliminary Approval |
| f | Privacy of Records | Preliminary Approval |
| g | Pharmacy Risk Pools | Preliminary Approval |
| h | "Stop- Loss" | As soon as practical, but not later than Preliminary Approval + 60 days |
| i | Pharmacy Provisions:  Disclosures re: Formulary | Final Approval |
| i | Pharmacy Provisions:  Maintenance of Exception Process | Final Approval |
| i | Pharmacy Provisions:  Coverage for Off-label Uses | Preliminary Approval |
| j | Restrictive Endorsements | Subject to effective dates of remedies available pursuant to the terms of the Agreement and this Exhibit 8 |
| k | Physician Specialty Society Guidelines | Preliminary Approval |
| l | Scope of Responsibilities | Preliminary Approval |
| m | Provision of Contract Copies | Final Approval |
| n | State and Federal Laws | Preliminary Approval |
| o | Modification of Means of Disclosure | Preliminary Approval |
| p | Participating Physicians Status and Limits on Obligations of  Non-Participating Physicians | Final Approval |
| q | Effect of Assignment of Benefits | Preliminary Approval |
| r | Non-Disparagement | Final Approval + 120 days or as soon thereafter as practical |
| 7.30 | Compliance with Applicable Law and Government Contracts | Preliminary Approval |
| 7.33 a-e | Mental Health Provisions | Final Approval |

## Term Sheet for Not-For-Profit Medical Foundation

**Purpose:**

To use the sum of $15 million paid by CIGNA HealthCare, and any other proceeds contributed to the Foundation in connection with CIGNA HealthCare's settlement of claims by Physicians in *In re Managed Care Litigation*, MDL Docket No. 1334, in each case in accordance with the guidelines set forth herein. The stated objective is to use annually at least 25% of the $15 million initially funded by CIGNA HealthCare and 10% of the additional proceeds contributed to the Foundation to further the purposes of the Foundation.

**Form:**

Not-for-profit, private non-stock corporation incorporated in Florida, with no stockholders (the "Foundation"). The Foundation will be established as a tax-exempt foundation under Section 501(c)(3) of the Federal Internal Revenue Code.

**Governance:**  The original Executive Board of Directors ("Executive Board") to consist of ten voting members ("Voting Directors"). In addition, there will be an Advisory Board ("Advisory Board") consisting of all Signatory Medical Societies who are not on the Executive Board. The Signatory Medical Societies are the medical associations or societies of California, Texas, Florida, Louisiana, Georgia, Denton County (Texas), Alaska, Connecticut, Hawaii, Nebraska, New Hampshire, New Jersey, New York, North Carolina, South Carolina, Tennessee, Vermont, Washington, El Paso County (Texas) and Northern Virginia ("Signatory Medical Societies"). The Advisory Board will provide advice and assistance to the Executive Board but will not govern the Foundation. The Executive Board will govern the Foundation and generally will take action by majority vote at a meeting at which a quorum is present (to be decided by the proposed Executive Board).

**EXHIBIT 9**

**Appointment of Directors:**

10 original Voting Directors will be selected by Signatory Medical Societies. Any replacement or future Voting Directors shall be appointed by Signatory Medical Societies. The original Voting Directors will be named in the articles of incorporation.

**Election of Officers for the Executive Board:**

To be elected by the majority of the Executive Board.

**Actions Requiring Majority Executive Board (Voting Directors) Approval:**

1) All grant approval and funding;

2) Expenditure of Foundation funds exceeding an amount to be fixed by the Executive Board;

3) Hiring and firing of management of the Foundation, which management will be responsible for administering the day-to-day operations of the Foundation;

4) Retention of money managers to make appropriate investments of the proceeds held by the Foundation.

**Actions Requiring Consent of All Voting Directors:**

Any amendment to the stated Purposes or Mission of the Foundation, the Foundation's tax status, or the prohibited Foundation activities (specified below), will require approval of all Voting Directors or mutual approval by the Signatory Medical Societies.

**Removal of Voting Directors:**

No Voting Director may be removed once in office, except for cause by a two-thirds majority vote of such Directors.

2

**Investment Policy :**

The assets of the Fund shall be invested in accordance with the following sequential priorities:

> Protection of principal
>
> Balanced current income and capital appreciation

Either current income or capital appreciation may be emphasized at any time, dependent upon market conditions and any planned expenditures from the Fund.

The Fund is not to invest in stocks, bonds or other securities of the tobacco industry. All equity investments should be guided by the "prudent man" principles. All fixed income investments must be of investment grade quality or better.

Any security owned by the Fund shall be within the framework of prudent fiduciary standards as defined by the Employee Retirement Income Security Act of 1974 (ERISA).

**Investment Objectives:**

The investment performance for all funds under management shall be reviewed under both relative and nominal goals. Performance shall be calculated quarterly and reported relative to these investment objectives.

The nominal goals for the Fund are to preserve and protect Fund principal while earning 5% above the 90-Day Treasury Bill rate earned during the current year. The nominal goals for each asset class are as follows: 1) Equities - 7% above the 90-Day T-Bill rate and/or exceed the S&P 500 stock index, 2) Fixed income - 3% above the 90-Day T-Bill rate and/or exceed the LB Govt./Corporate Bond index, and 3) Cash - 0.5% above the 90-Day T-Bill rate. Each shall be measured over rolling annual periods with the exception of the U.S. T-Bill objective which shall be measured over time frames of five years or more.

3

The relative goals will compare investment performance relative to like portfolio returns of a universe of investment advisers.  Relative performance should locate in the top half of similar advisers' returns measured over rolling annual periods.

**Location of Foundation's Offices:**

[To be decided by the Executive Board]

**Termination/Liquidation of the Foundation:**

[To be decided by the Executive Board]

**Mission Statement:**

The Foundation shall be dedicated to promoting high quality health care and shall give particular emphasis to initiatives that assist physicians to improve/enhance the quality of care received by patients and to enhance the delivery of care to the disadvantaged members of the public.

**Foundation Initiatives:**

To be determined by the Executive Board.

**Prohibited Foundation Activities**

1)  Lobbying or political advocacy;

2)  Activities related to litigation, arbitration or other dispute resolution (other than any such activities that relate directly to the operation of the Foundation);

3)  Medical research or animal research;

4)  Research and or development of drugs or medical devices;

5)  Any activity inconsistent with its status as a 501(c)(3) foundation.

**Court Supervision:**

The Foundation's purposes and activities shall be subject to the supervision of the United States District Court for the Southern District of Florida.

4

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**MDL NO.: 1334**

IN RE: MANAGED CARE LITIGATION

_____

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

_____


**CIGNA HEALTHCARE PHYSICIAN SETTLEMENT**

**PROOF OF CLAIM FORM
FOR CATEGORY A SETTLEMENT FUND CLAIM
AND
ELECTION OF CONTRIBUTION TO FOUNDATION**


**Deadline for Submission:  Postmarked By [_____] [180 days after commencement
of the Claims Period]**

**EXHIBIT 10**

## THE CATEGORY A SETTLEMENT FUND

The Payment: CIGNA HealthCare has established the Category A Settlement Fund in the amount of Thirty Million Dollars ($30,000,000) as one part of the consideration provided to Class Members under the CIGNA Settlement. Each Class Member has the option of electing to receive a share of the Category A Settlement Fund by submitting this Proof of Claim Form. **If you elect to receive payment from the Category A Settlement Fund, you are not eligible to submit claims for Category One Compensation, Category Two Compensation or Medical Necessity Denial Compensation.**

The Formula: After the deadline for submission of Category A Settlement Fund Proofs of Claim, the Settlement Administrator will determine the total number of Class Members filing Valid Proofs of Claim. The Settlement Administrator will also determine the total number of Valid Proofs of Claim filed: 1) by or on behalf of retired and deceased Physicians and 2) by Physicians in active practice. The total number of valid claim submissions by or on behalf of retired and deceased Physicians will be doubled to reflect the fact that each such claimant will receive twice the share of the Category A Settlement Fund as will Physicians in active practice. Retired and deceased Physicians will receive this doubled amount because they will not receive the benefit of the prospective consideration provided by CIGNA Health Care under the terms of the Settlement. The Settlement Administrator will add the total number of Physicians in active practice submitting Valid Proofs of Claim to the doubled number of retired and deceased Physician submitting such claims. That total will be divided into Thirty Million Dollars ($30,000,000). The result is the base amount to be distributed to each Class Member submitting a Valid Category A Settlement Fund Proof of Claim, with twice the base amount to be distributed to an account of each retired or deceased Physician.

Election of Payment: If you decide to submit a claim for payment from the Category A Settlement Fund, you may elect:

    1)    to receive your share of the Fund; or

    2)    to direct that your share be contributed on your behalf to the Foundation described below or to a foundation established by any Signatory Medical Society on your behalf.

## **THE FOUNDATION**

As part of the Settlement Consideration, CIGNA HealthCare has established a non-profit charitable Foundation that will be dedicated to promoting high quality health care and shall give particular emphasis to initiatives that assist Physicians to improve/enhance the quality of care received by patients and to enhance the delivery of care to the disadvantaged members of the public.

CIGNA HealthCare has made a contribution of Fifteen Million Dollars ($15,000,000) in initial funding of the Foundation. Additional amounts may be contributed to the Foundation from the Category A Settlement Fund and the Claim Distribution Fund established by CIGNA HealthCare, pursuant to the terms of the Settlement Agreement.

Each Class Member who chooses to file a Proof of Claim for payment from the Category A Settlement Fund has the option to elect that his, her or its share of the Category A Settlement Fund be contributed to the Foundation or to a foundation established by any Signatory Medical Society on his, her or its behalf.

- *Payment from the Category A Settlement Fund is available to all Class Members, including (1) Physicians in active practice, (2) retired Physicians who were in practice on or after August 4, 1990 and (3) the heirs or legal representatives of deceased Physicians who were in practice on or after August 4, 1990.*

- *This Proof of Claim Form should be used by all Class Members who wish to submit a claim for payment from the Category A Settlement Fund.*

- *This Proof of Claim Form should also be used by Class Members who submit a claim for payment from the Category A Settlement Fund and elect to contribute their share of the Category A Settlement Fund to the Foundation or to a foundation established by any Signatory Medical Society on their behalf.*

- *Physician Groups and Physician Organizations may submit Proofs of Claim on behalf of Physicians employed by or otherwise working with them without the necessity of individual signatures from the individual Physician, if authorized to do so by such Physicians.*

- ***PLEASE NOTE:** If you submit a Category A Settlement Fund Proof of Claim Form, you are not eligible for Category One Compensation, Category Two Compensation or Medical Necessity Denial Compensation.*

- *Capitalized terms used in this Proof of Claim Form that are not otherwise defined herein have the meaning assigned to them in the Settlement Agreement.*

3

**COMPLETE ALL SECTIONS AND SIGN THE CERTIFICATION.**

## SECTION I:  PHYSICIAN INFORMATION

Name of Physician:  _____

Name of Physician Group, Physician Organization, Partnership,
      Hospital, or Corporation (if applicable): ____  _____          _____

CIGNA HealthCare Provider Number (if applicable): _____          _____

Tax Identification Number: _____          _____

Address: _____  _____  _____          _____  _____

E-mail Address (optional):          _____

## SECTION II:  ELECTION OF PAYMENT

Check one of the following boxes to make your election of payment.

☐      I direct the Settlement Administrator to pay directly to me my share of the Category A
      Settlement Fund.

☐      I direct the Settlement Administrator to contribute my share of the Category A Settlement
      Fund to the Foundation described above.

☐      I direct the Settlement Administrator to contribute my share of the Category A Settlement
      Fund to the foundation established by a Signatory Medical Society:

      Name: _____

      Address: _____

                _____

                _____

4

## SECTION III:  CERTIFICATION

***Failure to sign this Certification will result in denial of your Proof of Claim.***

I hereby certify the following:

1.    I am a Member (or the legal representative of a Member) of the CIGNA Settlement Class.  I did not Opt Out of the CIGNA Settlement Class.

2.    Check one of the following:

        ⌊_    I am a Physician in active practice.

        ⌊_    I am a retired Physician who was in active practice on or after August 4, 1990.

        ⌊_    I am the legal representative of a Physician who was in active practice on or after August 4, 1990.  I have attached documentation to confirm my status.

3.    I have not submitted a Proof of Claim Form for Category One Compensation, Category Two Compensation or Medical Necessity Denial Compensation.

_____    _____
Name (Last, First, M.I.)    Signature

_____    _____
Date    Title (if applicable)

### SECTION IV:  AGREEMENT TO SUBMIT TO THE JURISDICTION OF THE COURT

By submitting a Proof of Claim, you are agreeing to be subject to the jurisdiction of the United States District Court for the Southern District of Florida for any proceedings relating to that Proof of Claim.

### SECTION V:  SUBMISSION OF PROOF OF CLAIM TO SETTLEMENT ADMINISTRATOR

Mail your completed Proof of Claim Form, with any required documentation, to the Settlement Administrator at the following address:

**Poorman-Douglas Corporation**

**[Address]**

**[Address]**

***Any request for payment from the Category A Settlement Fund postmarked after [_____] is not a Valid Proof of Claim and will be denied by the Settlement Administrator.***

5

**IF YOU HAVE QUESTIONS ABOUT THE FOUNDATION, THE CATEGORY A SETTLEMENT FUND, CATEGORY ONE COMPENSATION, CATEGORY TWO COMPENSATION, MEDICAL NECESSITY DENIAL COMPENSATION, OR ABOUT THE PROCEDURE FOR FILING A PROOF OF CLAIM, CONTACT THE SETTLEMENT ADMINISTRATOR AT [          ] OR CLASS COUNSEL AT [      ].**

**DO NOT CONTACT THE COURT WITH QUESTIONS ABOUT THE SETTLEMENT.**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**MDL NO.: 1334**

**IN RE: MANAGED CARE LITIGATION**

---

**THIS DOCUMENT RELATES ONLY TO**
**PROVIDER TRACK CASES**

---

**CIGNA HEALTHCARE PHYSICIAN SETTLEMENT**
**PROOF OF CLAIM FORM**
**FOR CATEGORY ONE COMPENSATION**

**DEADLINE FOR SUBMISSION:  Postmarked by [_____] [180 days after commencement of the Claims Period].**

- *Category One Compensation is available only for denials of payment based on Claim Coding or Bundling Edits for Category One Codes in the specific circumstances and within the date of service limitations (if any) identified on the Category One Code List. The Category One Code List is available on the website maintained by the Settlement Administrator and is also available through Class Counsel. The Category One List is attached as Exhibit 1 to the Settlement Agreement.*

- *A single Proof of Claim Form can be used to submit multiple requests ("Proofs of Claim") for Category One Compensation. A separate Proof of Claim cover sheet, with attached documentation, must be used for each Proof of Claim. The Proof of Claim cover sheet is attached to this Proof of Claim Form.*

- *To the extent they are authorized to do so, Physician Groups and Physician Organizations may submit Proofs of Claim on behalf of Physicians employed by or otherwise working with them without the necessity of individual signatures from the individual Physicians; provided, however, that the Class Member who or which submits the Proof of Claim Form must be the Physician, Physician Group or Physician Organization who or which originally submitted the claim and must use the same tax identification number or numbers as were used on the original claim.*

- ***PLEASE NOTE:*** *If you file a Category A Settlement Fund Claim Form, you are not eligible for Category One Compensation and may not use this Proof of Claim Form.*

- *Capitalized terms used in this Proof of Claim Form that are not otherwise defined herein have the meaning assigned to them in the Settlement Agreement.*

**EXHIBIT 11**

## COMPLETE ALL SECTIONS AND SIGN THE CERTIFICATION.

### SECTION I: PHYSICIAN INFORMATION

Name of Physician:  _____

Name of Physician Group, Physician Organization, Partnership,
      Hospital, or Corporation (if applicable):  _____

CIGNA HealthCare Provider Number (if applicable):  _____

Tax Identification Number:  _____                    _____

Address:  _____                    _____

E-mail Address (optional):  _____           _____

### SECTION II: CERTIFICATION

*Failure to sign this Certification will result in denial of your Proof of Claim.*

I hereby certify the following:

1.    As to each Proof of Claim for Category One Compensation that accompanies this Proof of Claim Form:

    (a)    the Category One Code(s) for which payment (or additional payment) is requested describe services that were actually provided to a CIGNA HealthCare Member during the Class Period;

    (b)    the payment (or additional payment) requested has not already been made by CIGNA HealthCare on resubmission of the claim or on an appeal; and

    (c)    there has been no prior final judgment, arbitration ruling or settlement with respect to the additional payment that is being requested.

2.    If I have submitted internal accounting records in support of a Category One Proof of Claim, the CIGNA HealthCare Remittance Form and the HCFA 1500 (now CMS 1500) or other claim form originally submitted to CIGNA HealthCare cannot be located and are not available for submission.

3.    I understand that if I billed the CIGNA HealthCare Member to whom services or supplies were provided for the amount not originally paid by CIGNA HealthCare, and if the CIGNA HealthCare Member reimbursed me for such amount it is expected that I will reimburse the CIGNA HealthCare Member with any amount paid pursuant to the Settlement Agreement.

4.      I have not submitted a Category A Settlement Fund Claim Form.

| | |
|---|---|
| Name (Last, First, M.I.) | Signature |

| | |
|---|---|
| Date | Title (if applicable) |

## SECTION III: DOCUMENTATION NEEDED FOR EACH CATEGORY ONE PROOF OF CLAIM

For each separate Category One Proof of Claim that you are submitting, complete a cover sheet (attached to this Form) indicating the CPT® Code(s) for which compensation (or additional compensation) is sought. Attach the documentation that supports that Proof of Claim behind the cover sheet.

*Failure to include sufficient documentation with each Proof of Claim cover sheet will result in denial of your Proof of Claim.*

**Checklist for Category One Claims:**

- This Proof of Claim Form, with signed certification. You may use one Proof of Claim Form to submit multiple Category One Proofs of Claim.

- A cover sheet for each Proof of Claim indicating the CPT® Code(s) for which compensation (or additional compensation) is sought.

- Documentation for each Proof of Claim, attached to the cover sheet, showing that payment was denied by CIGNA HealthCare for one or more Category One Codes under the circumstances and within the date of service limitations (if any) set forth in the Category One Code List. Acceptable documents are true and correct copies of:

    - CIGNA HealthCare Remittance Form (*i.e.*, Explanation of Payments form) showing payment was denied; **or**

    - For those items not asterisked on the Category One Code List, the HCFA 1500 form (now CMS 1500) or other claim form showing that the Category One Codes were originally submitted to CIGNA HealthCare for payment and were denied; **or**

    - If the Remittance Form and HCFA 1500/CMS1500 or other claim form cannot be located, internal accounting records (*e.g.*, printouts of accounts receivable records or paid account records) showing, as to the claim at issue, that the Category One Codes were originally submitted to CIGNA HealthCare for payment under the specific combinations and within the date of service limitations set forth on the Category One Code List and that those remain unpaid.

3

## SECTION IV:  AGREEMENT TO SUBMIT TO THE JURISDICTION OF THE COURT

By submitting a Proof of Claim, you are agreeing to be subject to the jurisdiction of the United States District Court for the Southern District of Florida for any proceedings relating to that Proof of Claim.

## SECTION V:  SUBMISSION OF PROOF OF CLAIM TO SETTLEMENT ADMINISTRATOR

Mail your completed Proof of Claim Form, with all required documentation for each Proof of Claim, to the Settlement Administrator at the following address:

**Poorman-Douglas Corporation**
**[Address]**
**[Address]**

*Any request for Category One Compensation postmarked after [_____] is not a Valid Proof of Claim and will be denied by the Settlement Administrator.*

4

CONTAINS PATIENT-IDENTIFIABLE
MEDICAL PRIVACY INFORMATION

## CIGNA HEALTHCARE PHYSICIAN SETTLEMENT
## PROOF OF CLAIM

## COVER SHEET FOR REQUEST
## FOR CATEGORY ONE COMPENSATION

For each separate request for Category One Compensation that you are submitting, fill out this cover sheet indicating the CPT® Code(s) for which compensation (or additional compensation) is sought.  The Category One Code List  is available on the website maintained by the Settlement Administrator.

Attach the documentation that supports each separate request for compensation behind the completed cover sheet.

*Failure to include sufficient documentation with each Proof of Claim cover sheet will result in denial of your Proof of Claim.*

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**CPT® Code(s) for which compensation (or additional compensation) is sought in this Category One Proof of Claim:**

5

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**MDL NO.: 1334**

**IN RE: MANAGED CARE LITIGATION**

—————————————————————————

**THIS DOCUMENT RELATES ONLY TO**
**PROVIDER TRACK CASES**

—————————————————————————

# CIGNA HEALTHCARE PHYSICIAN SETTLEMENT
# PROOF OF CLAIM FORM
# FOR CATEGORY TWO COMPENSATION

**DEADLINE FOR SUBMISSION: Postmarked by [_____] [180 days after commencement of the Claims Period].**

- *Category Two Compensation is available only for denials or reductions of payment based on Claim Coding or Bundling Edits other than the Claim Coding or Bundling Edits on the Category One Code Lists. Category Two Compensation is **not** available for denials or reductions of payment based on Claim Coding or Bundling Edits for Category One Codes unless those claims were billed outside the circumstances and date of service limitations (if any) identified on the Category One Code List. The Category One Code List is available on the website maintained by the Settlement Administrator and is also available through Class Counsel. The Category One Code List is attached as Exhibit 1 to the Settlement Agreement.*

- *A single Proof of Claim Form can be used to submit multiple requests ("Proofs of Claim") for Category Two Compensation. A separate Proof of Claim cover sheet, with attached documentation, must be used for each Proof of Claim. The Proof of Claim cover sheet is attached to this Form.*

- *To the extent they are authorized to do so, Physician Groups and Physician Organizations may submit Proofs of Claim on behalf of Physicians employed by or otherwise working with them without the necessity of individual signatures from the individual Physicians; provided, however, that the Class Member who or which submits the Proof of Claim Form must be the Physician, Physician Group or Physician Organization who or which originally submitted the claim and must use the same tax identification number or numbers as were used on the original claim.*

- *If Category One Compensation is available for a Proof of Claim, you may not receive Category Two Compensation for that Proof of Claim.*

- ***PLEASE NOTE:*** *If you file a Category A Settlement Fund Claim Form, you are not eligible for Category Two Compensation and may not use this Proof of Claim Form.*

**EXHIBIT 12**

- *Capitalized terms used in this Proof of Claim Form that are not otherwise defined herein have the meaning assigned to them in the Settlement Agreement.*

## COMPLETE ALL SECTIONS AND SIGN THE CERTIFICATION.

### SECTION I: PHYSICIAN INFORMATION

Name of Physician: _____

Name of Physician Group, Physician Organization, Partnership,
     Hospital, or Corporation (if applicable): _____

CIGNA HealthCare Provider Number (if applicable): _____

Tax Identification Number: _____

Address: _____

E-mail Address (optional): _____

### SECTION II: CERTIFICATION

***Failure to sign this Certification will result in denial of your Proof of Claim.***

I hereby certify the following:

1.    As to each Proof of Claim for Category Two Compensation that accompanies this Proof of Claim Form:

    (a)    the CPT® Code(s) or HCPCS Level II Code(s) for which payment (or additional payment) is requested describe services or supplies that were actually provided to a CIGNA HealthCare Member during the Class Period;

    (b)    the payment (or additional payment) being requested has not already been made by CIGNA HealthCare on resubmission of the claim or on an appeal; and

    (c)    there has been no prior final judgment, arbitration ruling or settlement with respect to the payment or additional payment that is being requested.

2.    If I have submitted internal accounting records in support of a Category Two Proof of Claim, the CIGNA HealthCare Remittance Form and the HCFA 1500 (now CMS 1500) or other claim form originally submitted to CIGNA HealthCare cannot be located and are not available for submission.

3.    I understand that if I billed the CIGNA HealthCare Member to whom services or supplies were provided for the amount not originally paid by CIGNA HealthCare, and if the CIGNA HealthCare Member reimbursed me for such amount, it is expected that I will reimburse the CIGNA HealthCare Member with any amount paid pursuant to the Settlement Agreement.

2

4.      I have not submitted a Category A Settlement Fund Claim Form.


_____          _____
Name (Last, First, M.I.)                 Signature


_____          _____
Date                                     Title (if applicable)

## SECTION III:  DOCUMENTATION NEEDED FOR EACH CATEGORY TWO PROOF OF CLAIM

For each separate Category Two Proof of Claim that you are submitting, complete a cover sheet (attached to this Form) indicating the CPT® Code(s) or HCPCS Level II Code(s) for which compensation (or additional compensation) is sought.  Attach the documentation that supports that Proof of Claim behind the cover sheet.

***Failure to include sufficient documentation with each Proof of Claim cover sheet will result in denial of your Proof of Claim.***

**Checklist for Category Two Claims:**

- This Proof of Claim Form, with signed certification.  You may use one Proof of Claim Form to submit multiple Category Two Proofs of Claim.

- A cover sheet for each Proof of Claim indicating the CPT® Code(s) or HCPCS Level II Code(s) for which compensation (or additional compensation) is sought.

- Documentation for each Proof of Claim, attached to the cover sheet, showing that (i) you were denied payment, in whole or in part; or (ii) you received reduced payment, including payment for a different billing code than the one(s) billed, for one or more CPT® Code(s) or HCPCS Level II Code(s); or (iii) you received a reduced payment based upon the application of Multiple Procedure Logic.  Acceptable documents are true and correct copies of:

  - CIGNA HealthCare Remittance Form (*i.e.,* Explanation of Payments form) showing that payment was denied, in whole or in part, on the CPT® or HCPCS Level II Codes in question; **or**

  - If you cannot locate the Remittance Form, copies of internal accounting records (*e.g.,* printouts of accounts receivable records or paid account records), provided that those records show as to the claim at issue all CPT® Code(s) or HCPCS Level II Code(s) which were submitted for payment and those that remain unpaid, in whole or in part.

  - If your internal accounting records or CIGNA HealthCare Remittance Form do not show all CPT® Code(s) or HCPCS Level II Code(s) which were submitted for payment, you may supplement those records with additional documentation, such as the HCFA 1500 (now CMS 1500).

**and**

3

- A complete copy of the clinical, operative, or other medical records generated in connection with services you provided on the specific date of service concerned.

**NOTE: 1.** *You **DO NOT** have to include clinical, operative or other medical records for Category Two Compensation Proofs of Claim seeking compensation for denials of payment based on the contention that CIGNA HealthCare (i) failed to recognize **modifiers 50, RT, LT, FA-F9, or TA-T9**; and/or (ii) translated a **HCPCS Level II "J" Code** into an incorrect or overbroad CPT® Code. However, you must submit a copy of the HCFA 1500 or other claim form used to submit the original claim, showing exactly how all services or supplies included in the claim were originally billed to CIGNA HealthCare. You must also submit documentation showing that payment was denied in whole or in part for the codes at issue. Documentation may include a copy of the CIGNA Health Care Remittance Form or of your internal accounting records.*

**2.** *You **DO NOT** have to include clinical, operative or other medical records for Category Two Compensation Proofs of Claim seeking compensation for denials of payment based on the contention that CIGNA HealthCare incorrectly processed one or more **modifier 51 exempt CPT® Codes** and/or add-on **CPT® Codes** using Multiple Procedure Logic when those codes were exempt from multiple procedure reduction. However, you must submit documentation showing that payment was denied in whole or in part for the codes at issue. Documentation may include a copy of the CIGNA Health Care Remittance Form or of your internal accounting records.*

## SECTION IV:  AGREEMENT TO SUBMIT TO THE JURISDICTION OF THE COURT

By submitting a Proof of Claim, you are agreeing to be subject to the jurisdiction of the United States District Court for the Southern District of Florida for any proceedings relating to that Proof of Claim.

## SECTION V:  SUBMISSION OF PROOF OF CLAIM TO SETTLEMENT ADMINISTRATOR

Mail your completed Proof of Claim Form, with all required documentation for each Proof of Claim, to the Settlement Administrator at the following address:

**Poorman-Douglas Corporation**
**[Address]**
**[Address]**

*Any request for Category Two Compensation postmarked after [_____] is not a Valid Proof of Claim and will be denied by the Settlement Administrator.*

4

CONTAINS PATIENT-IDENTIFIABLE
MEDICAL PRIVACY INFORMATION

# CIGNA HEALTHCARE PHYSICIAN SETTLEMENT
## PROOF OF CLAIM

## COVER SHEET FOR REQUEST
## FOR CATEGORY TWO COMPENSATION

For each separate request for Category Two Compensation that you are submitting, fill out this cover sheet indicating the CPT® Code(s) or HCPCS Level II Code(s) for which compensation (or additional compensation) is sought.

Attach the documentation that supports each separate request for compensation behind the completed cover sheet.

***Failure to include sufficient documentation with each Proof of Claim cover sheet will result in denial of your Proof of Claim.***



**CPT® Code(s) or HCPCS Level II Code(s) for which compensation (or additional compensation) is sought in this Category Two Proof of Claim:**

5

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**MDL NO.: 1334**

**IN RE: MANAGED CARE LITIGATION**

---

**THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES**

---

**CIGNA HEALTHCARE PHYSICIAN SETTLEMENT
PROOF OF CLAIM FORM
FOR MEDICAL NECESSITY DENIAL COMPENSATION**

**DEADLINE FOR SUBMISSION:  Postmarked By [_____] [180 Days after
commencement of the Claims Period.]**

- *Medical Necessity Denial Compensation is available **only** for denials of payment for services or supplies represented by CPT®. Codes or HCPCS Level II Codes that were determined by CIGNA HealthCare to be either not experimental or investigational or not Medically Necessary.*

- *No Medical Necessity Denial Compensation is available where the services or supplies were excluded from coverage under the CIGNA HealthCare Member's Plan Documents.*

- *A single Proof of Claim Form can be used to submit multiple requests ("Proofs of Claim") for Medical Necessity Denial Compensation.  A separate Proof of Claim cover sheet, with attached documentation, must be used for each Proof of Claim.  The Proof of Claim cover sheet is attached to this Form.*

- *To the extent they are authorized to do so, Physician Groups and Physician Organizations may submit Proofs of Claim on behalf of Physicians employed by or otherwise working with them without the necessity of individual signatures from the individual Physicians; provided, however, that the Class Member who or which submits the Proof of Claim Form must be the Physician, Physician Group or Physician Organization who or which originally submitted the claim and must use the same tax identification number or numbers as were used on the original claim.*

- ***PLEASE NOTE****:  If you file a Category A Settlement Fund Claim Form, you are not eligible for Medical Necessity Denial Compensation and may not use this Proof of Claim Form.*

- *Capitalized terms used in this Proof of Claim Form that are not otherwise defined herein have the meaning assigned to them in the Settlement Agreement.*

**EXHIBIT 13**

**COMPLETE ALL SECTIONS AND SIGN THE CERTIFICATION.**

## SECTION I: PHYSICIAN INFORMATION

Name of Physician:

Name of Physician Group, Physician Organization, Partnership,
     Hospital, or Corporation (if applicable):

CIGNA HealthCare Provider Number (if applicable):

Tax Identification Number:

Address:

E-mail Address (optional):

## SECTION II: CERTIFICATION

*Failure to sign this Certification will result in denial of your Proof of Claim.*

I hereby certify the following:

1.    As to each Proof of Claim for Medical Necessity Denial Compensation that accompanies this Proof of Claim Form:

    (a)    the CPT® or HCPCS Level II Code(s) for which payment (or additional payment) is requested describe services or supplies that were actually provided to a CIGNA HealthCare Member during the Class Period;

    (b)    the payment (or additional payment) requested has not already been made by CIGNA HealthCare on resubmission of the claim or on an appeal; and

    (c)    there has been no prior final judgment, arbitration ruling or settlement with respect to the payment that is being requested.

2.    If I have submitted internal accounting records in support of a Medical Necessity Denial Proof of Claim, the CIGNA HealthCare Remittance Form and the HCFA 1500 (now CMS 1500) or other claim form originally submitted to CIGNA HealthCare cannot be located and are not available for submission

3.    I understand that if I billed the CIGNA HealthCare Member to whom services or supplies were provided for the amount not originally paid by CIGNA HealthCare, and if the CIGNA HealthCare Member reimbursed me for such amount, it is expected that I will reimburse the CIGNA HealthCare Member with any amount paid pursuant to the Settlement Agreement.

2

4.      I have not submitted a Category A Settlement Fund Claim Form.

_____     _____
Name (Last, First, M.I.)                       Signature

_____     _____
Date                                 Title (if applicable)

## SECTION III:  DOCUMENTATION NEEDED FOR EACH MEDICAL NECESSITY DENIAL PROOF OF CLAIM

For each separate Medical Necessity Denial Proof of Claim that you are submitting, complete a cover sheet (attached to this Form) indicating the CPT® Code(s) or HCPCS Level II Code(s) for which compensation (or additional compensation) is sought.  Attach the documentation that supports that Proof of Claim behind the cover sheet.

*Failure to include sufficient documentation with each Proof of Claim cover sheet will result in denial of your Proof of Claim.*

**Checklist for Medical Necessity Denial Claims:**

- This Proof of Claim Form, with signed certification.  You may use one Proof of Claim Form to submit multiple Medical Necessity Denial Proofs of Claim.

- A cover sheet for each Proof of Claim indicating the CPT® Code(s) or HCPCS Level II Code(s) for which compensation or additional compensation is sought.

- Documentation for each Proof of Claim, attached to the cover sheet, showing the claim for services or supplies was submitted to CIGNA HealthCare and payment was denied for one or more CPT® Codes or HCPCS Level II Codes due to CIGNA HealthCare's determination that the services, procedures or supplies corresponding to such codes were either not Medically Necessary or were experimental or investigational.  Acceptable documents are true and correct copies of:

  - CIGNA HealthCare Remittance Form (*i.e.,* Explanation of Payments form) showing that payment was denied for one or more CPT® or HCPCS Level II Codes; **or**

  - If you cannot locate the Remittance Form, internal accounting records (*e.g.,* printouts of accounts receivable records or paid account records) showing that the CPT® Codes or HCPCS Level II Codes at issue were submitted to CIGNA HealthCare for payment and remain unpaid.

**and**

  - A complete copy of the clinical, operative, or other medical records generated in connection with the services you provided.  Clinical, operative or other medical records that relate to dates of service occurring more than ninety (90) days before the date of service at issue in the Proof of Claim do not need to be submitted.

3

## SECTION IV:  AGREEMENT TO SUBMIT TO THE JURISDICTION OF THE COURT

By submitting a Proof of Claim, you are agreeing to be subject to the jurisdiction of the United States District Court for the Southern District of Florida for any proceedings relating to that Proof of Claim.

## SECTION V:  SUBMISSION OF PROOF OF CLAIM TO SETTLEMENT ADMINISTRATOR

Mail your completed Proof of Claim Form, with all required documentation for request for compensation, to:

**Poorman-Douglas Corporation**
**[Address]**
**[Address]**

*Any Proof of Claim postmarked after [_____] is not a Valid Proof of Claim and will be denied by the Settlement Administrator.*

CONTAINS PATIENT-IDENTIFIABLE
MEDICAL PRIVACY INFORMATION

# CIGNA HEALTHCARE PHYSICIAN SETTLEMENT
# PROOF OF CLAIM

## COVER SHEET FOR
## MEDICAL NECESSITY DENIAL
## COMPENSATION

For each separate request for Medical Necessity Denial Compensation that you are submitting, fill out this cover sheet indicating the CPT® Code(s) or HCPCS Level II Code(s) for which compensation (or additional compensation) is sought.

Attach the documentation that supports each separate request for compensation behind the cover sheet.

***Failure to include sufficient documentation with each Proof of Claim cover sheet will result in denial of your Proof of Claim.***



**CPT® Codes or HCPCS Level II Codes For Which Compensation (or additional compensation) is sought in this Medical Necessity Denial Proof of Claim:**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL NO.: 1334

IN RE: MANAGED CARE LITIGATION

_____

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

_____

# CIGNA HEALTHCARE PHYSICIAN SETTLEMENT
# COMPLIANCE DISPUTE CLAIM FORM

The undersigned hereby declares that he, she or it is a Class Member and did not Opt Out of the
CIGNA Healthcare Physician Settlement Agreement.

Name_____

Address_____

       _____

Tax Identification Number _____

CIGNA HealthCare Provider Number
(if applicable)_____

E-mail Address_____

Telephone Number_____

Signature_____

Date_____


Check one of the following:

___    I am bringing this Compliance Dispute on my own behalf.

___    I hereby authorize the following Signatory Medical Society to bring this Compliance
        Dispute on my behalf:_____.


**EXHIBIT 14**

Set forth in detail below, using particularized facts, the specific obligation(s) of CIGNA HealthCare to you under Section 7 of the Settlement Agreement which you allege CIGNA HealthCare has materially failed to perform. Describe how you have been adversely affected by CIGNA HealthCare's alleged failure to comply with those specific obligation(s). You may attach supporting documentation or affidavit testimony.

**You must complete and submit this petition no later than thirty (30) days after the Compliance Dispute first arose to:**

Compliance Dispute Facilitator

_____

_____

_____

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**MDL NO.: 1334**

**IN RE: MANAGED CARE LITIGATION**

---

**THIS DOCUMENT RELATES ONLY TO**
**PROVIDER TRACK CASES**

---

# CIGNA HEALTHCARE PHYSICIAN SETTLEMENT MEDICAL SOCIETY JOINDER AGREEMENT

WHEREAS, CIGNA HealthCare and certain other parties entered into a Settlement Agreement dated as of September 4, 2003 (the "Settlement Agreement"); and

WHEREAS, pursuant to Section 19.5 of the Settlement Agreement, the parties to the Settlement Agreement agreed upon the terms and conditions by which additional medical societies may become parties to the Settlement Agreement; and

WHEREAS, _____ ("Additional Medical Society") wishes to become a party to the Settlement Agreement.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the above named Additional Medical Society hereby agrees, pursuant to Section 19.5 of the Settlement Agreement, to become a party to the Settlement Agreement. The signature page of this Joinder Agreement shall serve as a counterpart to the signature pages of the Settlement Agreement.

**EXHIBIT 15**

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2003, a true and correct copy of the

Joint Motion for Preliminary Approval of Settlement Among CIGNA HealthCare and

Physicians and all exhibits thereto was served via hand delivery on the following individuals:

Provider Plaintiffs' Liaison and Lead Counsel
Harley S. Tropin, Esq.
Tropin & Throckmorton, PA
2800 South Biscayne Blvd.
Suite 2800
Miami FL 33131

Provider Plaintiffs' Lead Counsel
Archie C. Lamb, Jr., Esq.
Law Offices of Archie C. Lamb, LLC
2017 Second Avenue North
Birmingham, AL 35203

Liason Counsel for Plaintiffs
Aaron S. Podhurst, Esq.
Podhurst, Orsek, Josefsberg, Eaton,
Meadow, Olin & Perwin, PA
25 West Flagler Street, Suite 800
Miami, FL 33130-1780

Liason Counsel for Defendants
Edward Soto, Esq.
Weil Gotshall & Manages, LLP
701 Brickell Avenue, Suite 2100
Miami, FL 33131

Michael C. Dodge, Esq.
Dodge, Anderson & Jones
One Lincoln Centre
5400 LBJ Freeway, Suite 800
Dallas, TX 75240

and via e-mail to Judy L. Cates, Esquire, Debra Brewer Hayes, Esquire., and all Provider Track

Counsel of Record on the Court's most recent MDL Service List.

Barbara Brigham Denys