## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MDL No. 1334
Master File No. 00-1334-MD-MORENO

IN RE: MANAGED CARE LITIGATION

THIS DOCUMENT RELATES TO
**PROVIDER TRACK CASES**

NIGHT BOX
FILED

JAN ? ? 2004

CLARENCE MADDOX
CLERK USDC / SDFL / MIA

---

### AETNA INC. AND AETNA U.S. HEALTHCARE INC.'S MOTION FOR AN ORDER FURTHER ENJOINING JORDAN S. JOSEPHSON, M.D., JORDAN S. JOSEPHSON, M.D., P.C., AND THEIR ATTORNEYS FROM VIOLATING THIS COURT'S FINAL APPROVAL ORDERS AND JUDGMENT AND FOR AN ORDER TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT

Defendants, Aetna Inc. and Aetna U.S. Healthcare Inc. (collectively, "Aetna"), hereby move this Court for an order further enjoining Jordan S. Josephson, M.D., Jordan S. Josephson, M.D., P.C. (collectively "Dr. Josephson"), and their attorneys from violating this Court's Final Approval Order, Supplemental Final Approval Order, and Final Judgment and for an Order to Show Cause Dr. Josephson and their attorneys should not be held in contempt.

The grounds supporting this Motion are fully set forth in the accompanying Memorandum of Law and Declarations of Miguel A. Estrada (attached hereto as "Tab 1"), Stephen P. Fisher (attached hereto as "Tab 2") and Affidavit of Neil Manning (attached hereto as "Tab 3").

Master File No. 00-1334-MD-MORENO

## <u>Statement of Compliance with Pre-Filing Conference Requirement</u>

In compliance with Local Rule 7.1(A)(3), counsel for Aetna has conferred with counsel

for Dr. Josephson in a good faith effort to resolve by agreement the issues raised in the present

Motion and have been unable to do so.

DATED: January 22, 2004

John J. Swenson
E-mail: jswenson@gibsondunn.com
Richard J. Doren
E-mail: rdoren@gibsondunn.com
Mark Erich Weber
E-mail: mweber@gibsondunn.com
Kay E. Kochenderfer
E-mail: kkochenderfer@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229-7000
Fax: (213) 229-6038

Miguel A. Estrada
E-mail: mestrada@gibsondunn.com
Daniel W. Nelson
E-mail: dnelson@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 530-9616

Respectfully submitted,

Hilarie Bass
Florida Bar Number: 334243
E-mail: bassh@gtlaw.com
Mark P. Schnapp
Florida Bar Number: 501689
E-mail: schnappm@gtlaw.com
Christine Nanfeldt
Florida Bar Number: 114049
E-mail: nanfeldtc@gtlaw.com
**GREENBERG TRAURIG**
1221 Brickell Avenue
Miami, FL 33131
Tel: (305) 579-0500
Fax: (305) 579-0717

*Attorneys for Defendants Aetna U.S. Healthcare Inc., Aetna Inc., Aetna Health Inc.*

2

Master File No. 00-1334-MD-MORENO

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY the foregoing was served overnight mail to Aaron S. Podhurst, Esq. and Harley S. Tropin, Esq.; one copy by electronic mail to all other counsel listed on the October 1, 2003 Service List; one copy to Michael A. Coval, John J. Pentz, Esq., Randall Henley, Esq., Nicholas M. Fausto, Esq., Stanley M. Chesley, Esq., Richard S. Wayne, Michael R. Barrett, Randall A. Pullman, J. Benton Stewart, Brian D. Marcus, Esq., Norman A. Yatooma, Peter A. Shapiro, Esq., Jeffrey M. Liggio, Esq., Jene P. Williams, Esq., Edward H. Zebersky, Esq., Joseph A. Schwartz, III, Esq., Traci L. Cotton, Justin L. Williams, Esq., William D. Strinden, M.D., Katherine Benesch, Esq., and Harvey W. Gurland, Jr. Esq. by electronic mail; one copy by U.S. mail to Justin L. Williams, Esq.; and one copy by U.S. mail to  Joseph A. Schwartz, III, Esq., Walter J. Chlysta, M.D., 400 Wabash Avenue, Akron, Ohio 44307, Gary Eckenrode, M.D., P.O. Box 154, Richboro, PA 1895,  David Russell Jacobson, P.O. Box A3042, Chicago, Illinois 60690, Lawrence W. Schonbrun, Esq., 86 Eucalyptus Road, Berkeley, CA 94705, Charles D. Levit, M.D., 203 East 72 Street (27C), New York, NY 10021 and one copy by overnight mail to Lee Squitieri, Esq., Squitieri & Fearon, LLP, 420 Fifth Avenue, 18th Floor, New York, New York 10175 and Joel R. Bennett, Esq., Matthew Fairshter, Esq., 225 South Lake Avenue, 9th Floor Pasadena, CA 91101 on this 22nd day of January, 2004.

CHRISTINE NANFELDT

GREENBERG TRAURIG, P.A.

# TAB 1

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

MDL No.1334
Master File No. 00-1334-MD-Moreno

IN RE:
MANAGED CARE LITIGATION

------------------------------------------------------------

THIS DOCUMENT RELATES TO
PROVIDER TRACK CASES

# DECLARATION OF MIGUEL A. ESTRADA IN SUPPORT OF AETNA INC. AND AETNA U.S. HEALTHCARE INC.'S MOTION FOR ORDER FURTHER ENJOINING JORDAN S. JOSEPHSON, M.D., JORDAN S. JOSEPHSON, M.D., P.C., AND THEIR ATTORNEYS FROM VIOLATING THIS COURT'S APPROVAL ORDERS AND FINAL JUDGMENT AND FOR AN ORDER TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT

I, Miguel A. Estrada, declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.      I am an attorney duly admitted to practice law in the District of Columbia. I am a partner with the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Defendants Aetna Inc. and Aetna U.S. Healthcare Inc. ("Aetna"), and I make this declaration in support of Aetna's Motion for Order Further Enjoining Jordan S. Josephson, M.D., Jordan S. Josephson, M.D., P.C. (collectively with Jordan S. Josephson, M.D. "Dr. Josephson"), And Their Attorneys From Violating This Court's Approval Orders And Final Judgment And For An Order To Show Cause Why they Should Not Be Held in Contempt.

2.      Attached hereto as "Exhibit A" is a copy of a Complaint (the "Federal Antitrust Complaint") filed in September 2003 the United States District Court for the Southern District of New York entitled *Jordan S. Josephson, M.D., P.C. v. Chickering Claims Admins., Inc., et al.* (case no. 03CV6732). Upon its filing, the case was assigned to the Honorable Michael B. Mukasey.

3.      Following the filing of the Federal Antitrust Complaint, Judge Mukasey scheduled a status conference for October 3, 2003. As required by local rules, before that date I conferred by telephone with counsel for the plaintiff, Lee Squitieri, Esq. During that telephone conference, I advised Mr. Squitieri that the claims asserted against Aetna in the Federal Antitrust Complaint were in violation of the settlement between Aetna and class representatives in the above-captioned action, as well as this Court's May 30, 2003 Preliminary Approval Order. I also provided Mr. Squitieri (by email) copies of all relevant settlement documents, including this Court's May 30, 2003 Preliminary Approval Order.

2

4. On October 3, 2003, I attended the status conference convened by order of Judge Mukasey. I met with Mr. Squitieri, who confirmed receipt of the settlement documents, and again advised him that his client's claims against Aetna violated the settlement agreement and this Court's May 30, 2003 Preliminary Approval Order.

5. This Court held a final approval hearing on the Aetna settlement on October 14, 2003. On or about October 23, 2003, I received a copy of a letter from Mr. Squitieri to Judge Mukasey, which letter served notice of plaintiff's intent to voluntarily dismiss the Federal Antitrust Complaint. Attached hereto as "Exhibit B" is a copy of Mr. Squitieri's October 23, 2003 letter to Judge Mukasey.

6. Attached hereto as "Exhibit C" is a copy of a November 2, 2003 Order dismissing the Federal Antitrust Complaint.

7. On November 19, 2003, Dr. Josephson filed two new complaints against Aetna in New York state court. Attached hereto as "Exhibit D" is a copy of the Complaint filed in the Supreme Court of the State of New York entitled *Jordan S. Josephson, M.D., P.C. v. Chickering Claims Administrations, Inc., et al.* (case no. 03603661). Attached hereto as "Exhibit E" is a copy of the Complaint filed in the Supreme Court of the State of New York entitled *Jordan S. Josephson, M.D., P.C. v. Aetna Life Insurance Company, et al.* (case no. 03603662). To date, Aetna has not been served with service of process regarding these complaints.

8. On December 12, 2003, I sent a letter to Mr. Squitieri regarding the two actions filed by Dr. Josephson in New York state court. Enclosed with my December 12 letter were courtesy copies of this Court's Final Approval Order, Supplemental Final Approval Order, Final Judgment, and October 27, 2003 Order. A copy of my December 12, 2003 letter is attached hereto as "Exhibit F." To date, I have not received any response from Mr. Squiteri.

9.     On January 7, 2004 this Court issued an order directing counsel for another physician group, Westside EKG, to immediately dismiss the appeal of an action it had filed in Florida state court. At the hearing on that motion, this Court directed Aetna to "let other people know what I have done here", in an effort to avoid any further motions. A copy of the transcript of the January 7, 2004 hearing is attached hereto as "Exhibit G."

10.     On January 16, 2004, pursuant to this Court's direction, I sent a letter to Mr. Squitieri advising him of what occurred at the January 7, 2004 hearing. Enclosed with my January 16 letter was a copy of the January 7 transcript and the Court's Order Granting Aetna's Emergency Motion For An Order Enjoining Westside EKG Associates and Its Attorneys From Prosecuting Appeal Case No. 4D03-3533. A copy of my January 16, 2004 letter is attached as "Exhibit H." To date, I have not received any response from Mr. Squitieri.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 20th day of January 2004.

Miguel A. Estrada

4

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**03 CV 6732**

- - - - - - - - - - - - - - - - - - - - - - - -

JORDAN S. JOSEPHSON, M.D., P.C.,                    : Civil Action No.

                                 Plaintiff,          :    **JUDGE MUKASEY**

             -against-                              :

CHICKERING CLAIMS ADMINISTRATIONS,                 :    **COMPLAINT**
INC., AETNA LIFE INSURANCE COMPANY,
LIBERTY LIFE ASSURANCE COMPANY OF                  :
BOSTON; CHICKERING BENEFIT PLANNING
INSURANCE AGENCY, INC.; and COLUMBIA               :
UNIVERSITY,
                                                   :    **JURY TRIAL DEMANDED**
                                 Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff by his undersigned attorney, brings this action against

defendants, along with all defendants' predecessors and successors, and other

related affiliates or parties to whom the allegations of the Complaint pertain, and

allege upon personal knowledge as to himself and his own acts, and upon

information and belief as to all other matters, based on inter alia, the

investigation made by and through their attorneys, as follows:

### NATURE OF THE ACTION

1.    This is an action under the Sherman Act and the Donnelly Act for

monetary and injunctive relief.  Defendants have engaged in a combination and

conspiracy in restraint of trade to withhold treatment options from patients, and

to under-refer, boycott and/or exclude Dr. Josephson from providing fee for

service medical care to students of Columbia University insured under the University's mandatory health insurance program.

2.    Plaintiff brings this action under Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26, for treble damages and injunctive relief, as well as reasonable attorneys' fees and costs with respect to the injuries sustained by plaintiff arising from violations by defendants of the federal and state antitrust laws, including Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

## JURISDICTION AND VENUE

3.    The Court has jurisdiction over the claims relating to violations of Section 2 of the Sherman Act under 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 15.  The Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).  The federal and state law claims arise from the same events and transactions, involve substantially identical issues of fact and law, and are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

4.    Venue is proper in this judicial district under 15 U.S.C. § 22 and 28 U.S.C. § 1391.  Defendants transact business and many of the acts and events giving rise to this action occurred within this district.

## THE PARTIES

5.    Plaintiff is a board certified ear, nose and throat doctor who treats patients with various sinus diseases.  As a physician who is not in a network organized by or affiliated with or approved by defendants, plaintiff has no

2

contractual relationship with any of the defendants with respect to providing services to patients.

6.     Defendant Chickering Claims Administrators, Inc. ("Chickering Administrator") is a corporation providing health insurance administrative services to defendants Aetna Life Insurance Company and Liberty Life Assurance Company of Boston as "Third Party Administrator" and is a part of the Chickering Group.

7.     Defendant Aetna Life Insurance Company ("Aetna") is an insurance company which provides health insurance benefits to students of Columbia University at times relevant herein and is 100% owned by Aetna, Inc., located at 151 Farmington Avenue, Hartford, Connecticut 06156.

8.     Defendant Liberty Life Assurance Company of Boston ("Liberty") is an insurance company which provides health insurance benefits to students of Columbia University at times relevant herein and is a subsidiary of Liberty Mutual Insurance Company, 175 Berkeley Street, Boston, Massachusetts 02117.

9.     Defendant Chickering Benefit Planning Insurance Agency, Inc. ("Chickering Agency") is a corporation authorized to do business in the State of New York as an insurance broker/agent and was the broker/agent of record for the insurance coverage provided by Aetna and Liberty to the students of Columbia University at times relevant herein and is located at 1010 Commonwealth Avenue, Boston, Massachusetts 02215 and is part of the

3

Chickering Group. Chickering Agency and Chickering Administrator are sometimes collectively referred to herein as "Chickering".

10. Defendant Columbia University ("Columbia") is a non-profit institution of higher learning licensed by the State of New York and is located at 2960 Broadway, New York, New York 10027-6902.

11. The acts charged in this Complaint to have been done by each defendant were authorized, ordered and done by each defendants' officers, directors, agents, subsidiaries, employees or representatives while actively engaged in the management, direction, control or transaction of that defendants' business or affairs.

## SUBSTANTIVE ALLEGATIONS

**A.    Defendants Control And Have Controlled
        The Health Service Market For Columbia
        University Students By Automatically
        Enrolling Students In The Health Insurance
        Program Provided By Defendants And Maintaining
        Strict Control Over Insureds' Access To Medical Care**

12. Columbia University requires all of its full time and residential students (with few exceptions not relevant here) to enroll in the Columbia University Health Service ("CUHS"). In fact, Columbia automatically enrolls all full time and residential students in CUHS and adds a "Health Service Fee" to their term tuition bill. Even eligible students exempted from CUHS must complete a waiver form and submit it to the Health Service Enrollment Office within one month of the beginning of the semester in order to receive a credit. The CUHS Health Service Fee does not include the cost of mandatory health coverage billed to all eligible students on their term bill.

4

13.    Students who did not affirmatively exclude themselves from coverage are enrolled by Columbia in the Student Medical Insurance Plan ("SMIP").

14.    Full time students are automatically billed for, and enrolled in, the Health Service Plan ("Plan I") and the Basic Plan of SMIP.  In order to waive Basic Plan II coverage, the student must complete a waiver/enrollment form by September 30 of the new school year.  For a waiver to be valid, the waiving student must identify coverage from comparable medical insurance.  The waiver/enrollment forms must be sent by students to defendant Chickering Claims Administrators, Inc.

15.    Columbia's SMIP offered students two plans:

The Basic Plan ("Plan II")

16.    The Basic Plan provides:

Accident and Sickness coverage to $25,000 and is required unless a student can show proof of comparable coverage.  Catastrophic coverage to $250,000 is included.

Comprehensive ("Plain III") includes:

Students may elect enhanced Accident and Sickness coverage under this Plan. Coverage is available to $1,000,000. Additional benefits such as limited dental coverage are available under this Plan.

17.    Columbia students enrolled in Plan I and Plans II or III must present themselves to Columbia Health Services for evaluation, diagnosis, treatment and referral to outside providers before the student may utilize outside medical services such as those provided by plaintiff.

18.    Columbia Health Services is required by Chickering to issue "referrals" for student-insureds to see healthcare providers outside of Columbia Health Services. A health care provider outside of Columbia Health Services who administers treatment to a student-insured cannot be paid by Chickering unless Columbia issues a referral.

19.    Under Plans II and III, expenses incurred for non-emergency medical treatment received outside the CUHS system for which no referral has been "issued" are excluded from coverage.

20.    SMIP plans also offer "consultation benefits" which are available only if the insured student is referred to a specialist on the Health Service Referral List.

21.    Columbia issues a "Referral Manual" each year from which healthcare providers employed by Columbia were required to make any referrals for treatment. Coverage would only apply if a referral was "issued" by, _i.e._, had the approval, of the University Health Service.

**B.    The Defendants Have Acted (And Continue To Act)
In Concert To Suppress The Quality And Supply Of
Medical Services To The Columbia Student Market**

**1.    All Defendants Have An Economic Interest In
Suppressing The Quality And Supply Of Medical
Services To The Columbia Student Market**

22.    Columbia University has a financial interest in limiting referrals outside the network because co-defendants were threatening Columbia with penalties. The "Introduction" to the 1997-1998 Referral Manual states, in pertinent part, as follows:

6

1997-1998 Referral Manual
Introduction

This volume represents an up to date version of the
Health Service's referral network.
...
The student insurance administered by the Chickering
Group and backed by Liberty Mutual is similar to the
policy offered last year.
...
In step with the rest of the world we are more and more
being asked to serve as "gatekeepers" for care which
takes place outside the Health Service, and which is
eventually billed to the student insurance.
...
In general, you should make referrals to providers you
know or whose work you are familiar with.  The Student
Insurance would prefer that we use those providers in
our Manual (and especially those marked with an @
signifying a MULTIPLAN contract) but understands that
there will be referrals to particular specialists outside
our network.  There is not presently a penalty for out-
of-network referral, but I would not be surprised if one
is instituted next year.
...

23.    Co-defendants Chickering, Aetna and Liberty all have a direct

financial interest in suppressing the quality and supply of medical care to the

Columbia Student Market as evidenced by the information in the Referral

Manual which states:

> The contracts Multiplan makes with physicians,
> hospitals and vendors results in sizable discounts
> which save the insurance company ... money.

> **2.    Defendants Concerted Action,
>         Combination And Conspiracy**

24.    Defendants' conspiracy and combination is evident from a letter

from the Executive Director of the University Health Service to Dr. Josephson

dated July 19, 1999 wherein the Executive Director refers to Columbia and

7

Chickering: discussing referral issues; clarifying issues of coverage for sinus treatments and surgery; and development of guidelines for coverage of sinus/ septal surgery.

25. Numerous other examples of defendants concerted actions are set forth in ¶¶ 32, 35 and 40.

**C. Defendants' Actions Were Intended (And Have Operated) To Withhold Treatment Options From Insureds And Suppressed The Quality And Supply Of Medical Services To The Columbia Student Market By Allocating Markets, Boycotting Plaintiff And Refusing To Deal With Plaintiff**

26. Plaintiff was, for a period of time, listed in the Referral Manual and received numerous referrals from healthcare providers at the University Health Service.

27. Dr. Josephson was praised by University Health Service for outstanding skill and treatment and handling of patients in a letter dated July 14, 1998 to Dr. Josephson.

28. During Plan Years preceding the 1997/1998 Plan Year, Chickering on behalf of Aetna and Liberty began to deny payment to Dr. Josephson for services which plaintiff provided to insureds-patients who had been referred to Dr. Josephson for treatment by University Health Services.

29. Chickering engaged a purportedly independent "medical peer review service" ("CORE") to review Chickering's original denial of benefits. Faced with evidence that objective medical guidelines (such as those issued by the American Academy of Otorlaryngology) indicated that Chickering's denials were wrong, Chickering agreed to cover certain procedures prospectively but

8

otherwise refused to reverse its decision denying Dr. Josephson for treatment of insured patients referred to him for treatment by University Health Services.

30.   Plaintiff was told by a reviewing doctor at "CORE" that if he (the reviewing doctor from CORE to whom plaintiff was speaking) approved plaintiff's services for payment, Chickering would require the approval to be re-reviewed until it was disapproved in order to provide Chickering with a basis for denying payment to plaintiff.

31.   By October of 1998, Chickering had denied some or all health benefits for claims of at least 24 patients who had been referred to plaintiff by University Health Services and treated by plaintiff. The denials were summarized in a letter to Dr. Josephson dated October 22, 1998 from Chickering's Corporate Counsel.

32.   In or about late 1999, plaintiff was told by a high ranking executive in the Columbia Health Service that in lieu of performing costly, but necessary, sinus surgery on patients to treat their underlying conditions, he should only treat patients' symptoms. It was explained to plaintiff that he should defer costly treatment because the patients, usually graduate students, would soon be graduating and would no longer be insured under the Columbia health plan.

33.   Because Chickering knew that it could not continue to justify denial of coverage and benefits for procedures performed by Dr. Josephson, Chickering took steps to exclude Dr. Josephson from the University Health Services referral system.

9

34.    Defendants' actions were intended to, and did the effect of, depriving insured patients of the healthcare services provided by Dr. Josephson which defendants deemed too costly despite the fact that Dr. Josephson's average charges for these services were within the "usual and customary" range of fees for similar services.

35.    In late 1999, the defendants, through Columbia, imposed unique referral conditions on Dr. Josephson to prevent referral of patients to him by healthcare providers at University Health Services.

36.    The unique restrictions included a requirement that all referrals be approved by the executive director of University Health Services.

37.    The unique restrictions also included the exclusion of Dr. Josephson from the Referral Manual.

38.    Defendants conspired to and agreed that plaintiff would be omitted from the 2000-2001 edition of the Referral Manual and every subsequent edition because defendant Chickering objected to the fact that plaintiff's course of treatment of Chickering administered insureds included sinus surgery, a costly procedure for which Chickering was contractually obligated to pay Dr. Josephson.

39.    Plaintiff repeatedly sought to be reinstated in the Referral Manual continuing through the present but has been refused by Columbia as directed by Chickering.

40.   On various occasions, plaintiff has sought to be reinstated in the Referral Manual but has been told by various high ranking Columbia Health Service personnel:

(a)   The refusal to reinstate plaintiff in the Referral Manual was a "global decision" and that Chickering was not "happy with plaintiff being included" in the Referral Manual;

(b)   Plaintiff was deleted from the Referral Manual by Columbia because Chickering was upset;

(c)   Plaintiff could not be reinstated in the Referral Manual because of Chickering which objected that the sinus surgery performed by plaintiff was too expensive despite the fact that plaintiff's charges conformed to standard reported usual and customary fees for this service.

## INTERSTATE TRADE AND COMMERCE

41.   Chickering is a third party administrator based in Boston, Massachusetts which provides insurance administrative services to patients of Dr. Josephson in New York insured by insurers located in Massachusetts.

42.   Throughout the Class Period, there has been a continuous and uninterrupted flow in interstate commerce of services from defendants in Massachusetts to defendants in New York and patients insured in New York.

43.   The unlawful activities of defendants have been within the flow of, and have substantially affected, interstate commerce.

11

## CONSPIRACY IN RESTRAINT OF TRADE

44.    Beginning no later than late-1998 and continuing thereafter to the present, defendants have engaged in an unlawful conduct, combination and conspiracy, in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

45.    The combination and conspiracy consists of a continuing agreement, understanding and/or concert of action among defendants, the substantial terms of which were and are to (1) limit the supply of medical services to the Columbia student market; (2) boycott plaintiff; (3) refuse to deal with plaintiff; (4) allocate the market for healthcare services in such a way as to allocate patients away from plaintiff for the purpose of lowering medical costs to defendants, lowering the quality of medical care made available to SMIP insureds; and (5) and coerce healthcare providers to utilize treatment alternatives other than surgery regardless of whether surgery is in the best medical interests of the insured.  This conduct by defendants has resulted in lower quality medical services being made available to the Columbia student market.

46.    As a result of the conspiracy described above, plaintiff has been denied the ability to provide services to defendants insureds at competitive rates and caused monetary damage to the plaintiff.  In addition, the conduct of defendants in restricting the patient-insureds access to superior medical care has resulted in a material decline in the quality of medical services to the defendants insureds.

12

47.   Plaintiff has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law.

### FRAUDULENT CONCEALMENT

48.   Defendants acted in concert and conspired to fraudulently conceal their anticompetitive conduct.  Defendants agreed between themselves that they would not disclose the existence of their conspiracy, and they never did. Pursuant to the conspiracy of silence among them, no defendant has ever openly admitted or disclosed the true reason plaintiff has been denied referrals or a listing in the Referral Manual.

### COUNT I

### FOR PER SE VIOLATIONS OF
### SECTION 1 OF THE SHERMAN ACT [15 U.S.C. § 1]

49.   Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth here.

50.   Section 1 prohibits "... every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states..."

51.   Defendants herein constitute at least two legally distinct economic entities.

52.   Defendants activities and conduct constitute a per se restraint of trade in violation of Section 1 of the Sherman Act by allocating markets and patients and fixing prices and controlling the supply of medical services and by boycotting plaintiff.

13

53.    Defendants conduct has had an adverse effect on competition by lowering the quality and quantity of medical services available to insureds which also has the effect of raising insurance costs for insureds.

54.    As a proximate result of defendants' unlawful conduct, plaintiff has suffered injury to his business and his property and continues to suffer such injuries.

## COUNT II

### FOR PER SE VIOLATIONS OF
### NEW YORK'S GENERAL BUSINESS LAW § 340
### (N.Y. GEN. BUS. L. ART. 22, § 340 (THE "DONNELLY ACT"))

55.    Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth here.

56.    Section 340(1) of New York's General Business Law provides in pertinent part, to prohibit:

> Every contract, agreement, arrangement or combination whereby ... competition or the free exercise of any activity in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is or may be restrained ...

57.    Defendants' actions as alleged herein constitute a contract, agreement, arrangement and/or combination to restrain competition and lower the quality of service to consumers of health services.

58.    Plaintiff has suffered injury to his business as a result of defendants' concerted action to restrict the services he provides to patients.

39.    As a proximate result of the foregoing, plaintiff has been damaged and continues to suffer damage and injury to his business and property.

14

## COUNT III

### FOR PER SE VIOLATIONS OF
### NEW YORK'S PROMPT PAY LAW
### AGAINST DEFENDANTS AETNA AND LIBERTY

60.     Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth here.

61.     Section 3224-a of the Insurance Law is known as the "Prompt Pay Law" and provides that in the processing of all healthcare claims and bills from healthcare providers, any insurer certified pursuant to Article 43 of the Insurance Law or Article 44 of the Public Health Law shall pay the bill or claim within 45 days of receipt barring any recognized exceptions.

62.     Aetna and Liberty have repeatedly failed, without explanation, to timely pay Dr. Josephson his bills and claims for services provided to Columbia University students-insureds through Columbia University subscribers.

63.     Aetna and Liberty's conduct have caused loss and damage to Dr. Josephson.

64.     Aetna and Liberty's conduct is a violation of the Prompt Pay Law.

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.      Plaintiff demands judgment on Counts I and II against all defendants, jointly and severally, in the amount of $20,000,000.00 to be trebled under applicable law, together with costs and attorneys fees;

B.      Plaintiff demands injunctive relief against all defendants on Counts I and II requiring defendants to list plaintiff in the Referral Manual and

15

08/08/03  MON 13:11 FAX

utilize only legitimate medical criteria in determining whether to approve

referrals to plaintiff.

C.   Plaintiff demands judgment against defendants Aetna and

Liberty on Count III in an amount to be determined at trial, plus interest.

Dated:   September 4, 2003

SQUITIERI & FEARON, LLP

By: _____
        Lee Squitieri (LS-1684)
420 Fifth Avenue
18th Floor
New York, New York 10018
Tel: 212-575-2092

Attorneys for Plaintiff

16

# EXHIBIT B

# SQUITIERI & FEARON, LLP

420 FIFTH AVENUE
18ᵀᴴ FLOOR
NEW YORK, NEW YORK 10018
TELEPHONE: (212) 575-2092
FACSIMILE: (212) 575-2184
www.sfclasslaw.com

LEE SQUITIERI*
STEPHEN J. FEARON, JR.
DANIEL R. LAPINSKI*
MARIA J. CICCIA**
*ADMITTED TO N.Y. & N.J. BARS
**ADMITTED TO N.Y. & CT BARS

NEW JERSEY OFFICE
ONE GATEWAY CENTER
SUITE 2500
NEWARK, NEW JERSEY 07102
TEL (201) 445-8595

October 23, 2003

Via First Class Mail:

Honorable Michael B. Mukasey
United States District Court
Southern District of New York
2240 U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re:   Josephson v. Chickering Claims Administrations, et al.,
(S.D.N.Y.) Civil Action No. 03-CV-6732 (Mukasey)

Dear Judge Mukasey:

This firm represents plaintiff in this action. Enclosed is a courtesy copy of a Rule 41(a) Notice of Voluntary Dismissal we have filed this day and served upon all counsel for defendants.

Respectfully,

Lee Squitieri

LS:tm
Enclosure

cc:   All Defense Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JORDAN S. JOSEPHSON, M.D., P.C.,          :          C.A. No. 03-CV-6732
                                          :
                      Plaintiff,          :
                                          :
         -against-                        :
                                          :          **NOTICE OF**
CHICKERING CLAIMS ADMINISTRATIONS,        :          **VOLUNTARY DISMISSAL**
INC., AETNA LIFE INSURANCE COMPANY,       :
LIBERTY LIFE ASSURANCE COMPANY OF         :
BOSTON; CHICKERING BENEFIT PLANNING       :
INSURANCE AGENCY, INC.; and COLUMBIA      :
UNIVERSITY,                               :
                                          :
                      Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

     PLEASE TAKE NOTICE that the plaintiff, through his undersigned counsel,

hereby dismisses his action and all claims asserted therein as against the

defendants in this action pursuant to Rule 41(a) of the Federal Rules of Civil

Procedure, without prejudice.


Dated:   October 23, 2003


                         SQUITIERI & FEARON, LLP

                         By:_____
                              Lee Squitieri (LS-1684)
                         420 Fifth Avenue
                         18th Floor
                         New York, New York 10018
                         Tel: 212-575-2092

                         **Attorneys for Plaintiff**


TO:   Maureen McGuirl, Esq.
      Fensterstock & Partners, LLP
      30 Wall Street
      New York, New York 10005
      (Counsel for Defendant Liberty Life Assurance Co. of Boston)

Miguel Estrada, Esq.
Gibson Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Suite 900
Washington, D.C.  20036
(Counsel for Defendant Aetna Life Insurance Company)

Elizabeth A. Jaffe, Esq.
Golenbeck, Eiseman Assor Bell & Peskoe, LLP
437 Madison Avenue
New York, New York 10022
(Counsel for Defendants Chickering Claims Administrations, Inc. and
Chickering Benefit Planning Insurance Agency, Inc.)

Dara J. Dromande, Esq.
Hughes Hubbard & Reed, LLP
One Battery Park Plaza
New York, New York 10004
(Counsel for Defendant Columbia University)

## CERTIFICATE OF SERVICE

I, Lee Squitieri, hereby certify that on this 23rd day of October 2003, I caused true and correct copies of the foregoing Notice of Voluntary Dismissal to be served via First Class Mail, postage prepaid upon all counsel of record in this action as follows:

Maureen McGuirl, Esq.
Fensterstock & Partners, LLP
30 Wall Street
New York, New York 10005
(Counsel for Defendant Liberty Life Assurance Co. of Boston)

Miguel Estrada, Esq.
Gibson Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Suite 900
Washington, D.C.  20036
(Counsel for Defendant Aetna Life Insurance Company)

Elizabeth A. Jaffe, Esq.
Golenbeck, Eiseman Assor Bell & Peskoe, LLP
437 Madison Avenue
New York, New York 10022
(Counsel for Defendants Chickering Claims Administrations, Inc. and Chickering Benefit Planning Insurance Agency, Inc.)

Dara J. Dromande, Esq.
Hughes Hubbard & Reed, LLP
One Battery Park Plaza
New York, New York 10004
(Counsel for Defendant Columbia University)

Lee Squitieri (LS-1684)

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JORDAN S. JOSEPHSON, M.D., P.C.,      :
                                      :
                    Plaintiff,        :      03 Civ. 6732 (MBM)
                                      :
      -against-                       :           ORDER
                                      :
CHICKERING CLAIMS ADMINISTRATIONS,    :
INC., AETNA LIFE INSURANCE            :
COMPANY, LIBERTY LIFE ASSURANCE       :
COMPANY OF BOSTON;  CHICKERING        :
CHICKERING BENEFIT PLANNING           :
INSURANCE AGENCY, INC., and           :
COLUMBIA UNVERSITY,                   :
                                      :
                    Defendants.       :
------------------------------------X

MICHAEL B. MUKASEY, U.S.D.J.

          On application by plaintiff the above-captioned case is

dismissed pursuant to Fed. R. Civ. 41(a), without prejudice and

without costs.


                                      SO ORDERED.

                                      Michael B. Mukasey,
Dated:   New York, New York           U.S. District Judge
         November 2, 2003


RECEIVED NOV 1 1

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JORDAN S. JOSEPHSON, M.D., P.C.

                              Plaintiff,

        -against-

CHICKERING CLAIMS ADMINISTRATIONS, INC., AETNA
LIFE INSURANCE COMPANY, LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON, CHICKERING BENEFIT PLANNING
INSURANCE AGENCY, INC. and COLUMBIA UNIVERSITY,

                              Defendants.

Index No.
Date purchased  0 8 6 0 3 6 6 1

Plaintiff(s) designate(s)
New York
County as the place of trial.

The basis of the venue is
CPLR § 503a

**Summons**

Plaintiff(s) reside(s) at
111 East 77th Street
New York, New York 10021
County of    New York

To the above named Defendant(s)

        **You are hereby summoned** to answer the complaint in this action and to serve a copy of
your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's
Attorney(s) within    20    days after the service of this summons, exclusive of the day of service (or within 30
days after the service is complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated,    October 29, 2003

Squitieri & Fearon, LLP
Attorney(s) for Plaintiff

Office and Post Office Address
420 Fifth Avenue
18th Floor
New York, New York 10018
Tel: 212-575-2092

Defendant's address:
CHICKERING CLAIMS ADMINISTRATIONS, INC.
1010 Commonwealth Avenue
Boston, Massachusetts 02215

AETNA LIFE INSURANCE COMPANY
151 Farmington Avenue
Hartford, Connecticut 06156

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
175 Berkeley Street
Boston, Massachusetts 02117

CHICKERING BENEFIT PLANNING INSURANCE AGENCY, INC.
1010 Commonwealth Avenue
Boston, Massachusetts 02215

COLUMBIA UNIVERSITY
2960 Broadway
New York, New York 10027

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

JORDAN S. JOSEPHSON, M.D., P.C.,

                Plaintiff,

    -against-

CHICKERING CLAIMS ADMINISTRATIONS,
INC., AETNA LIFE INSURANCE COMPANY,
LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON; CHICKERING BENEFIT PLANNING
INSURANCE AGENCY, INC.; and COLUMBIA
UNIVERSITY,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No.

0 3 6 0 3 6 6 1



**COMPLAINT**

**JURY TRIAL DEMANDED**

    Plaintiff by his undersigned attorney, brings this action against defendants, along with all defendants' predecessors and successors, and other related affiliates or parties to whom the allegations of the Complaint pertain, and allege upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on *inter alia*, the investigation made by and through their attorneys, as follows:

### NATURE OF THE ACTION

    1.    This is an action under the Donnelly Act for monetary and injunctive relief.  Defendants have engaged in a combination and conspiracy in restraint of trade to withhold treatment options from patients, and to under-refer, boycott and/or exclude Dr. Josephson from providing fee for service medical care to students of Columbia University insured under the University's mandatory health insurance program.

## THE PARTIES

2.      Plaintiff is a board-certified ear, nose and throat doctor who treats patients with various sinus diseases.  As a physician who is not in a network organized by or affiliated with or approved by defendants, plaintiff has no contractual relationship with any of the defendants with respect to providing services to patients.

3.      Defendant Chickering Claims Administrators, Inc. ("Chickering Administrator") is a corporation providing health insurance administrative services to defendants Aetna Life Insurance Company and Liberty Life Assurance Company of Boston as "Third Party Administrator" and is a part of the Chickering Group.

4.      Defendant Aetna Life Insurance Company ("Aetna") is an insurance company which provides health insurance benefits to students of Columbia University at times relevant herein and is 100% owned by Aetna, Inc., located at 151 Farmington Avenue, Hartford, Connecticut 06156.

5.      Defendant Liberty Life Assurance Company of Boston ("Liberty") is an insurance company which provides health insurance benefits to students of Columbia University at times relevant herein and is a subsidiary of Liberty Mutual Insurance Company, 175 Berkeley Street, Boston, Massachusetts 02117.

6.      Defendant Chickering Benefit Planning Insurance Agency, Inc. ("Chickering Agency") is a corporation authorized to do business in the State of New York as an insurance broker/agent and was the broker/agent of record for

2

the insurance coverage provided by Aetna and Liberty to the students of Columbia University at times relevant herein and is located at 1010 Commonwealth Avenue, Boston, Massachusetts 02215 and is part of the Chickering Group. Chickering Agency and Chickering Administrator are sometimes collectively referred to herein as "Chickering".

7.      Defendant Columbia University ("Columbia") is a non-profit institution of higher learning licensed by the State of New York and is located at 2960 Broadway, New York, New York 10027-6902.

8.      The acts charged in this Complaint to have been done by each defendant were authorized, ordered and done by each defendants' officers, directors, agents, subsidiaries, employees or representatives while actively engaged in the management, direction, control or transaction of that defendants' business or affairs.

### SUBSTANTIVE ALLEGATIONS

**A.      Defendants Control And Have Controlled
The Health Services Market For Columbia
University Students By Automatically
Enrolling Students In The Health Insurance
Program Provided By Defendants And Maintaining
Strict Control Over Insureds' Access To Medical Care**

9.      Columbia University requires all of its full time and residential students (with few exceptions not relevant here) to enroll in the Columbia University Health Service ("CUHS"). In fact, Columbia automatically enrolls all full time and residential students in CUHS and adds a "Health Service Fee" to their term tuition bill. Even eligible students exempted from CUHS must complete a waiver form and submit it to the Health Service Enrollment Office

3

within one month of the beginning of the semester in order to receive a credit. The CUHS Health Service Fee does not include the cost of mandatory health coverage billed to all eligible students on their term bill.

10.     Students who did not affirmatively exclude themselves from coverage are enrolled by Columbia in the Student Medical Insurance Plan ("SMIP").

11.     Full time students are automatically billed for, and enrolled in, the Health Service Plan ("Plan I") and the Basic Plan of SMIP.  In order to waive Basic Plan II coverage, the student must complete a waiver/enrollment form by September 30 of the new school year.  For a waiver to be valid, the waiving student must identify coverage from comparable medical insurance.  The waiver/enrollment forms must be sent by students to defendant Chickering Claims Administrators, Inc.

12.     Columbia's SMIP offered students two plans:

The Basic Plan ("Plan II")

13.     The Basic Plan provides:

Accident and Sickness coverage to $25,000 and is required unless a student can show proof of comparable coverage.  Catastrophic coverage to $250,000 is included.

Comprehensive ("Plain III") includes:

Students may elect enhanced Accident and Sickness coverage under this Plan. Coverage is available to $1,000,000. Additional benefits such as limited dental coverage are available under this Plan.

4

14.     Columbia students enrolled in Plan I and Plans II or III must present themselves to Columbia Health Services for evaluation, diagnosis, treatment and referral to outside providers before the student may utilize outside medical services such as those provided by plaintiff.

15.     Columbia Health Services is required by Chickering to issue "referrals" for student-insureds to see healthcare providers outside of Columbia Health Services.  A health care provider outside of Columbia Health Services who administers treatment to a student-insured cannot be paid by Chickering unless Columbia issues a referral.

16.     Under Plans II and III, expenses incurred for non-emergency medical treatment received outside the CUHS system for which no referral has been "issued" are excluded from coverage.

17.     SMIP plans also offer "consultation benefits" which are available only if the insured student is referred to a specialist on the Health Service Referral List.

18.     Columbia issues a "Referral Manual" each year from which healthcare providers employed by Columbia were required to make any referrals for treatment.  Coverage would only apply if a referral was "issued" by, i.e., had the approval, of the University Health Service.

**B.      The Defendants Have Acted (And Continue To Act)
In Concert To Suppress The Quality And Supply Of
Medical Services To The Columbia Student Market**

      **1.      All Defendants Have An Economic Interest In
Suppressing The Quality And Supply Of Medical
Services To The Columbia Student Market**

19.     Columbia University has a financial interest in limiting referrals
outside the network because co-defendants were threatening Columbia with
penalties.  The "Introduction" to the 1997-1998 Referral Manual states, in
pertinent part, as follows:

> 1997-1998 Referral Manual
> Introduction
>
> This volume represents an up to date version of the
> Health Service's referral network.
>
> ...
>
> The student insurance administered by the Chickering
> Group and backed by Liberty Mutual is similar to the
> policy offered last year.
>
> ...
>
> In step with the rest of the world we are more and more
> being asked to serve as "gatekeepers" for care which
> takes place outside the Health Service, and which is
> eventually billed to the student insurance.
>
> ...
>
> In general, you should make referrals to providers you
> know or whose work you are familiar with.  The Student
> Insurance would prefer that we use those providers in
> our Manual (and especially those marked with an @
> signifying a MULTIPLAN contract) but understands that
> there will be referrals to particular specialists outside
> our network.  There is not presently a penalty for out-
> of-network referral, but I would not be surprised if one
> is instituted next year.
>
> ...

20.     Co-defendants Chickering, Aetna and Liberty all have a direct
financial interest in suppressing the quality and supply of medical care to the

6

Columbia Student Market as evidenced by the information in the Referral Manual which states:

> The contracts Multiplan makes with physicians, hospitals and vendors results in sizable discounts which save the insurance company ... money.

**2.   Defendants Concerted Action, Combination And Conspiracy**

21.   Defendants' conspiracy and combination is evident from a letter from the Executive Director of the University Health Service to Dr. Josephson dated July 19, 1999 wherein the Executive Director refers to Columbia and Chickering: discussing referral issues; clarifying issues of coverage for sinus treatments and surgery; and development of guidelines for coverage of sinus/septal surgery.

22.   Numerous other examples of defendants concerted actions are set forth herein.

**C.   Defendants' Actions Were Intended (And Have Operated) To Withhold Treatment Options From Insureds And Suppressed The Quality And Supply Of Medical Services To The Columbia Student Market By Allocating Markets, Boycotting Plaintiff And Refusing To Deal With Plaintiff**

23.   Plaintiff was, for a period of time, listed in the Referral Manual and received numerous referrals from healthcare providers at the University Health Service.

24.   Dr. Josephson was praised by University Health Service for outstanding skill and treatment and handling of patients in a letter dated July 14, 1998 to Dr. Josephson.

25.    During Plan Years preceeding the 1997/1998 Plan Year, Chickering on behalf of Aetna and Liberty began to deny payment to Dr. Josephson for services which plaintiff provided to insureds-patients who had been referred to Dr. Josephson for treatment by University Health Services.

26.    Chickering engaged a purportedly independent "medical peer review service" ("CORE") to review Chickering's original denial of benefits.  Faced with evidence that objective medical guidelines (such as those issued by the American Academy of Otorlaryngology) indicated that Chickering's denials were wrong, Chickering agreed to cover certain procedures prospectively but otherwise refused to reverse its decision denying Dr. Josephson for treatment of insured patients referred to him for treatment by University Health Services.

27.    Plaintiff was told by a reviewing doctor at "CORE" that if he (the reviewing doctor from CORE to whom plaintiff was speaking) approved plaintiff's services for payment, Chickering would require the approval to be re-reviewed until it was disapproved in order to provide Chickering with a basis for denying payment to plaintiff.

28.    By October of 1998, Chickering had denied some or all health benefits for claims of at least 24 patients who had been referred to plaintiff by University Health Services and treated by plaintiff.  The denials were summarized in a letter to Dr. Josephson dated October 22, 1998 from Chickering's Corporate Counsel.

29.    In or about late 1999, plaintiff was told by a high ranking executive in the Columbia Health Service that in lieu of performing costly, but necessary,

8

sinus surgery on patients to treat their underlying conditions, he should only treat patients' symptoms. It was explained to plaintiff that he should defer costly treatment because the patients, usually graduate students, would soon be graduating and would no longer be insured under the Columbia health plan.

30. Because Chickering knew that it could not continue to justify denial of coverage and benefits for procedures performed by Dr. Josephson, Chickering took steps to exclude Dr. Josephson from the University Health Services referral system.

31. Defendants' actions were intended to, and did the effect of, depriving insured patients of the healthcare services provided by Dr. Josephson which defendants deemed too costly despite the fact that Dr. Josephson's average charges for these services were within the "usual and customary" range of fees for similar services.

32. In late 1999, the defendants, through Columbia, imposed unique referral conditions on Dr. Josephson to prevent referral of patients to him by healthcare providers at University Health Services.

33. The unique restrictions included a requirement that all referrals be approved by the executive director of University Health Services.

34. The unique restrictions also included the exclusion of Dr. Josephson from the Referral Manual.

35. Defendants conspired to and agreed that plaintiff would be omitted from the 2000-2001 edition of the Referral Manual and every subsequent edition because defendant Chickering objected to the fact that plaintiff's course of

9

treatment of Chickering administered insureds included sinus surgery, a costly procedure for which Chickering was contractually obligated to pay Dr. Josephson.

36.   Plaintiff repeatedly sought to be reinstated in the Referral Manual continuing through the present but has been refused by Columbia as directed by Chickering.

37.   On various occasions, plaintiff has sought to be reinstated in the Referral Manual but has been told by various high ranking Columbia Health Service personnel:

(a)   The refusal to reinstate plaintiff in the Referral Manual was a "global decision" and that Chickering was not "happy with plaintiff being included" in the Referral Manual;

(b)   Plaintiff was deleted from the Referral Manual by Columbia because Chickering was upset;

(c)   Plaintiff could not be reinstated in the Referral Manual because of Chickering which objected that the sinus surgery performed by plaintiff was too expensive despite the fact that plaintiff's charges conformed to standard reported usual and customary fees for this service.

## CONSPIRACY IN RESTRAINT OF TRADE

38.   Beginning no later than late-1998 and continuing thereafter to the present, defendants have engaged in an unlawful conduct, combination and conspiracy, in unreasonable restraint of interstate trade and commerce.

10

39.    The combination and conspiracy consists of a continuing agreement, understanding and/or concert of action among defendants, the substantial terms of which were and are to (1) limit the supply of medical services to the Columbia student market; (2) boycott plaintiff; (3) refuse to deal with plaintiff; (4) allocate the market for healthcare services in such a way as to allocate patients away from plaintiff for the purpose of lowering medical costs to defendants, lowering the quality of medical care made available to SMIP insureds; and (5) and coerce healthcare providers to utilize treatment alternatives other than surgery regardless of whether surgery is in the best medical interests of the insured.  This conduct by defendants has resulted in lower quality medical services being made available to the Columbia student market.

40.    As a result of the conspiracy described above, plaintiff has been denied the ability to provide services to defendants insureds at competitive rates and caused monetary damage to the plaintiff.  In addition, the conduct of defendants in restricting the patient-insureds access to superior medical care has resulted in a material decline in the quality of medical services to the defendants insureds.

## FRAUDULENT CONCEALMENT

41.    Defendants acted in concert and conspired to fraudulently conceal their anticompetitive conduct.  Defendants agreed between themselves that they would not disclose the existence of their conspiracy, and they never did. Pursuant to the conspiracy of silence among them, no defendant has ever openly

11

admitted or disclosed the true reason plaintiff has been denied referrals or a listing in the Referral Manual.

## COUNT I

### FOR PER SE VIOLATIONS OF
### NEW YORK'S GENERAL BUSINESS LAW § 340
### (N.Y. GEN. BUS. L. ART. 22, § 340 (THE "DONNELLY ACT"))

42.    Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth here.

43.    Section 340(1) of New York's General Business Law provides in pertinent part, to prohibit:

> Every contract, agreement, arrangement or combination whereby ... competition or the free exercise of any activity in the conduct of any business, trade, or commerce or in the furbishing of any service in this state is or may be restrained ...

44.    Defendants' actions as alleged herein constitute a contract, agreement, arrangement and/or combination to restrain competition and lower the quality of service to consumers of health services.

45.    Plaintiff has suffered injury to his business as a result of defendants' concerted action to restrict the services he provides to patients.

46.    As a proximate result of the foregoing, plaintiff has been damaged and continues to suffer damage and injury to his business and property.

12

WHEREFORE, plaintiff prays for judgment and relief as follows:

      A.     Plaintiff demands judgment on Count I against all defendants, jointly and severally, in the amount of $20,000,000.00 to be trebled under applicable law, together with costs and attorneys fees;

      B.     For such other and further relief as this Court may deem just and proper.

Dated:   October 29, 2003

Yours, etc.

SQUITIERI & FEARON, LLP

By: _____

Lee Squitieri (LS-1684)
420 Fifth Avenue
18th Floor
New York, New York 10018
Tel: 212-575-2092

Attorneys for Plaintiff

13

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 0 3 6 0 3 6 6 2
Date purchased

JORDAN S. JOSEPHSON, M.D., P.C.,

Plaintiff,

-against-

AETNA LIFE INSURANCE COMPANY and LIBERTY LIFE
ASSURANCE COMPANY OF BOSTON,

Defendants.

Plaintiff(s) designate(s)
New York
County as the place of trial.

The basis of the venue is
CPLR § 503a

Summons

Plaintiff(s) reside(s) at
111 East 77th Street
New York, New York 10021
County of   New York

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within   20   days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated,   October 29, 2003

Defendant's address:

AETNA LIFE INSURANCE COMPANY
151 Farmington Avenue
Hartford, Connecticut  06156

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
175 Berkeley Street
Boston, Massachusetts 02117

Squitieri & Fearon, LLP
Attorney(s) for Plaintiff

Office and Post Office Address

420 Fifth Avenue
18th Floor
New York, New York 10018
Tel: 212-575-2092

0 3 6 0 3 6 6 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - X

JORDAN S. JOSEPHSON, M.D., P.C.,        :    Index No.

                 Plaintiff,       :

    -against-               :    **COMPLAINT**

AETNA LIFE INSURANCE COMPANY and     :
LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON,                                :    **JURY TRIAL DEMANDED**

                Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - X

*FILED NOV 19 2003 NEW YORK COUNTY CLERK'S OFFICE*

      Plaintiff by his undersigned attorney, brings this action against defendants, along with all defendants' predecessors and successors, and other related affiliates or parties to whom the allegations of the Complaint pertain, and allege upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on *inter alia*, the investigation made by and through their attorneys, as follows:

## THE PARTIES

    1.     Plaintiff is a board-certified ear, nose and throat doctor who treats patients with various sinus diseases. As a physician who is not in a network organized by or affiliated with or approved by defendants, plaintiff has no contractual relationship with any of the defendants with respect to providing services to patients.

    2.     Defendant Aetna Life Insurance Company ("Aetna") is an insurance company which has provided and/or provides health insurance benefits to

students of Columbia University at times relevant herein and is 100% owned by Aetna, Inc., located at 151 Farmington Avenue, Hartford, Connecticut 06156.

3.    Defendant Liberty Life Assurance Company of Boston ("Liberty") is an insurance company which has provided and/or provides health insurance benefits to students of Columbia University at times relevant herein and is a subsidiary of Liberty Mutual Insurance Company, 175 Berkeley Street, Boston, Massachusetts 02117.

### SUBSTANTIVE ALLEGATIONS

4.    Plaintiff was, for a period of time, listed in the Columbia University Referral Manual and received numerous referrals from healthcare providers at the Columbia University Health Service and provided service to insureds of defendants.

5.    Dr. Josephson was praised by University Health Service for outstanding skill and treatment and handling of patients.

6.    During Plan Years preceeding the 1997/1998 Plan Year, Chickering on behalf of Aetna and Liberty began to deny payment to Dr. Josephson for services which plaintiff provided to insureds-patients who had been referred to Dr. Josephson for treatment by University Health Services.

7.    Chickering engaged a purportedly independent "medical peer review service" ("CORE") to review Chickering's original denial of benefits.  Faced with evidence that objective medical guidelines (such as those issued by the American Academy of Otorlaryngology) indicated that Chickering's denials were wrong, Chickering agreed to cover certain procedures prospectively but

2

otherwise refused to reverse its decision denying Dr. Josephson for treatment of insured patients referred to him for treatment by University Health Services.

8.      Plaintiff was told by a reviewing doctor at "CORE" that if he (the reviewing doctor from CORE to whom plaintiff was speaking) approved plaintiff's services for payment, Chickering would require the approval to be re-reviewed until it was disapproved in order to provide Chickering with a basis for denying payment to plaintiff.

9.      By October of 1998, Chickering, on behalf of either or both defendants, had denied some or all health benefits for claims of at least 24 patients who had been referred to plaintiff by University Health Services and treated by plaintiff.

## COUNT I

### FOR PER SE VIOLATIONS OF NEW YORK'S PROMPT PAY LAW AGAINST DEFENDANTS AETNA AND LIBERTY

10.      Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth here.

11.      Section 3224-a of the Insurance Law is known as the "Prompt Pay Law" and provides that in the processing of all healthcare claims and bills from healthcare providers, any insurer certified pursuant to Article 43 of the Insurance Law or Article 44 of the Public Health Law shall pay the bill or claim within 45 days of receipt barring any recognized exceptions.

3

12.    Aetna and Liberty have repeatedly failed, without explanation, to timely pay Dr. Josephson his bills and claims for services provided to Columbia University students-insureds through Columbia University subscribers.

13.    Aetna and Liberty's conduct have caused loss and damage to Dr. Josephson.

14.    Aetna and Liberty's conduct is a violation of the Prompt Pay Law.

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.    Plaintiff demands judgment on Count I against defendants in an amount to be determined together with interest, costs and attorneys fees;

B.    For such other and further relief as this Court may deem just and proper.

Dated:   October 29, 2003

Yours, etc.

SQUITIERI & FEARON, LLP

By: _____
      Lee Squitieri (LS-1684)
420 Fifth Avenue
18th Floor
New York, New York 10018
Tel: 212-575-2092

Attorneys for Plaintiff

4

# EXHIBIT F

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

4 Park Plaza  Irvine, California 92614-8557

(949) 451-3800

www.gibsondunn.com

mestrada@gibsondunn.com

December 12, 2003

Direct Dial
(202) 955-8257
Fax No.
(202) 530-9616

Client No.
[03710-00170]

## VIA FACSIMILE AND OVERNIGHT DELIVERY

Lee Squitieri, Esq.
Squitieri & Fearon, LLP
420 Fifth Avenue, 18th Floor
New York, New York 10018

Re:   *Jordan S. Josephson, M.D., P.C. v. Aetna Life Insurance Company, et al*
        *Case No. 03603662 and*
        *Jordan S. Josephson, M.D., P.C. v. Chickering Claims Administrations,*
        *Inc., et al, Case No. 03603661; and*

Dear Mr. Squitieri:

We are advised that on November 19, 2003, Jordan S. Josephson, M.D., P.C. filed two actions in New York State Court entitled *Jordon S. Josephson, M.D., P.C. v. Aetna Life Insurance Company, et al*. (Case No. 03603662) and *Jordan S. Josephson, M.D., P.C. v. Chickering Claims Administrations, Inc., et al*. (Case No. 03603661) (collectively "New York Actions"). Aetna has not yet been served with the complaints in these actions. The purpose of this letter is to inform you that by commencing the New York Actions, Dr. Josephson is in violation of the injunction issued by the United States Southern District Court of Florida in *In Re Managed Care Litigation*, MDL No. 1334 (Master File No. 00-1334-MD-MORENO), and to demand that Dr. Josephson immediately dismiss Aetna from such actions.

As both you and Dr. Josephson are aware, Judge Moreno issued a Final Approval Order and Judgment on October 24, 2003, and a Supplemental Final Approval Order on November 6, 2003 (collectively "Approval Order") approving the Settlement Agreement between Aetna and Class Representatives in the Provider Track Cases. Final Judgment was entered on November 7, 2003. Under the Approval Order, Judge Moreno "permanently enjoined [Dr. Josephson] from:

LOS ANGELES  NEW YORK  WASHINGTON, D.C.  SAN FRANCISCO  PALO ALTO
LONDON  PARIS  MUNICH  ORANGE COUNTY  CENTURY CITY  DALLAS  DENVER

# GIBSON, DUNN & CRUTCHER LLP

Lee Squitieri, Esq.
December 12, 2003
Page 2

(a) filing, commencing, prosecuting, intervening in, participating in (as [a] class member[] or otherwise) or receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction based on any or all Released Claims against [Aetna]...." *See* Supplemental Final Approval Order ¶ 6.

The allegations contained in the New York Actions are within the scope of the Released Claims, as defined by the Settlement Agreement and Approval Order. As a class member who did not timely opt out of the Settlement Agreement, Dr. Josephson is bound by the terms of the Agreement, as well as the Approval Order and Final Judgment. In fact, Dr. Josephson has chosen to submit to the jurisdiction of the Florida court by filing an (untimely) objection to the Settlement Agreement in that court on October 13, 2003. The Court has found that the deadlines set by the Court must be strictly enforced. *See, e.g.* October 27, 2003 Order Denying Plaintiff, Richard P. Bartlett, M.D.'s Motion to Opt-Out of the Class Settlement ("October 27 Order"). Dr. Josephson has failed to comply with those deadlines. Dr. Josephson is not among the class members the Court identified as having submitted a timely opt-out request and is, therefore, bound by the Settlement. *See* Supplemental Approval Order ¶ 10.

By naming Aetna as a defendant in the New York Actions, Dr. Josephson violated the injunction contained in the Approval Order, and he will remain in violation as long as he seeks to prosecute those actions against Aetna. Accordingly, Aetna demands that Dr. Josephson immediately dismiss all claims against Aetna in the New York Actions, and refrain from bringing any such actions in the future.

Please advise us by no later than December 17, 2003 that Dr. Josephson will dismiss Aetna from the New York actions. If Dr. Josephson refuses to comply with this demand, Aetna will be forced to seek appropriate relief from Judge Moreno, including an Order to Show Cause why Dr. Josephson and his counsel should not be held in contempt of the Order.

Enclosed please find conformed copies of Judge Moreno's Final Approval Order, Supplemental Final Approval Order, Final Judgment and October 27, 2003 Order for your convenience.

Very truly yours,

Miguel A. Estrada /kv/

MAE/mel

**GIBSON, DUNN & CRUTCHER LLP**
A Registered Limited Liability Partnership
Including Professional Corporations
Jamboree Center
4 Park Plaza, Suite 1400
Irvine, California 92614-8557

TELEPHONE: (949) 451-3800
FACSIMILE: (949) 451-4220

## FACSIMILE TRANSMISSION INFORMATION

December 12, 2003

| | | |
|---|---|---|
| TO: | Mr./Ms.: | Lere Squitiere, Esq. |
| | Company: | Squitieri & Fearon, LLP |
| | City, State: | New York, New York |
| | Facsimile No.: | (212) ~~575-9164~~ 575-2144 |
| | Main Telephone: | (212) 575-2092 |

| | | | |
|---|---|---|---|
| FROM: Miguel A. Estrada | **Room:** DC-9133 | **Direct Dial:** (202) 955-8257 | |
| Our File Number: T 03710-00170 | **Fax:** (202) 530-9616 | **Email:** mestrada@gibsondunn.com | |

## TOTAL NUMBER OF PAGES, INCLUDING COVER LETTER:

☛ **If you do not receive all the pages transmitted, please contact the facsimile operator immediately at telephone number (949) 451-4219.**

Fax Operator: _____

The written message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information. If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, such recipient is prohibited from reading or using this message in any way. If you have received this message by mistake, please call us immediately and destroy the facsimile message.

## SPECIAL INSTRUCTIONS/MESSAGE:

x x x COMMUNICATION RESULT REPORT ( DEC. 15. 2003 10:20AM ) x x x

TTI  GDC OC 5

| E MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|--------|--------|-----------------|--------|------|
| 3923 MEMORY TX | | 15037100017091212 5752184 | OK | 26/26 |

FAXED

Squitiere

```
REASON FOR ERROR
  E-1) HANG UP OR LINE FAIL          E-2) BUSY
  E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION
```

**GIBSON, DUNN & CRUTCHER LLP**
A Registered Limited Liability Partnership
Including Professional Corporations
Jamboree Center
4 Park Plaza, Suite 1400
Irvine, California 92614-8557

TELEPHONE: (949) 451-3800
FACSIMILE: (949) 451-4220

**FACSIMILE TRANSMISSION INFORMATION**                    December 12, 2003

TO:      Mr /Ms.:        Lere Squitiere, Esq.

         Company:        Squitieri & Fearon, LLP

         City, State:    New York, New York

         Facsimile No.:  (212) 575-9164  575-2184

         Main Telephone: (212) 575-2092

| FROM: | Miguel A. Estrada | Room: | DC-9133 | Direct Dial: | (202) 955-8257 |
|-------|-------------------|-------|---------|--------------|----------------|
| Our File Number: T 03710-00170 | | Fax: | (202) 530-9616 | Email: | mestrada@gibsondunn.com |

TOTAL NUMBER OF PAGES, INCLUDING COVER LETTER:

☛ If you do not receive all the pages transmitted, please contact the facsimile operator immediately at telephone number
(949) 451-4219.

Fax Operator:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**MDL No. 1334**
**Master File No. 00-1334-MD-MORENO**

IN RE: MANAGED CARE LITIGATION

_____

CLASS PLAINTIFFS,

vs.

AETNA INC., AND AETNA - US
HEALTHCARE, INC.

       Defendants.

_____/

FILED by _____ D.C.

OCT 2 4 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## FINAL APPROVAL ORDER AND JUDGMENT

Class Plaintiffs and Defendants Aetna, Inc. and Aetna-US Healthcare (collectively, "AETNA") have submitted for final approval a proposed settlement of this class action. For the reasons set out in detail below, this Court has determined that the Settlement is fair, reasonable, and adequate and should therefore be approved. Accordingly, this Court issues this Final Approval Order and Judgment, approves the Settlement and dismisses the Second Amended Complaint in this action with prejudice as it relates to AETNA.

    1.    On October 14, 2003, this Court held a hearing, after proper notice, to consider the fairness, reasonableness and adequacy of the proposed Settlement.

    2.    In reaching its decision in this case, this Court considered the Settlement agreement, the extensive Court file in this case, and the presentations by Plaintiffs and Defendant AETNA in support of the fairness, reasonableness and adequacy of the Settlement. This Court also considered the objections of class members.

    3.    As recognized in the Order Preliminarily Approving Settlement on May 30, 2003, this Court previously certified a class, under Rules 23(a) and 23 (b)(2) and (3) of the Federal Rules

of Civil Procedure, of physicians in a case against Health Maintenance Organizations, including AETNA, alleging that they systematically reduced, denied and delayed payments owed to the doctors for medical care rendered to patients who subscribed to the defendant entity.

4.     The Court affirms its decision certifying the class and preliminarily approving the settlement.  The Court finds that the requirements of numerosity, commonality, typicality and adequacy pursuant to Fed.R.Civ.P. 23(a) have been met.

5.     In making the latter determination of adequacy, this Court has considered the following: a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the Class; c) the desirability of concentrating the litigation of the claims in this particular forum; and d) the difficulties likely to be encountered in the management of a class action.

6.     In its Order of Preliminary Settlement Approval, this Court preliminarily approved the notice, and found that the proposed form and content of the Notice to the Class members satisfied the requirements of due process.  The Court reaffirms that finding and holds that the best practicable notice was given to class members.  The Court overrules both the objections argued at the fairness hearing and raised before in the pleadings regarding the notice.

7.     The parties timely caused the notice to be mailed to each of the class members, as well as through such high volume publications, as *USA Today* (July 10 and 17, 2003); *Wall Street Journal* (July 10 and 17, 2003); as well as the *Journal of American Medical Association* (July 23 and 30, 2003).  Information was also posted  on counsels' websites as well as the websites of numerous medical associations.  The notice (attached as Court's exhibit #1) advised class members of, among other things, the allegations in the complaint, the terms of the proposed settlement, the requirements including deadlines, for objections to the Settlement, and the scheduled October 14, 2003 Final Approval Fairness Hearing.  The notice further identified class counsel and set forth the

2

bases for class counsel's motion for attorneys' fees and expenses. The notice also set forth in full the claims released by class members as part of the Settlement, and advised class members in bold face to read the notice carefully because it would affect their rights if they failed to timely object to the Settlement.

8.      This Court has again reviewed the notice and finds the "best practicable" notice was given to the class and that the notice was "reasonably calculated" a) to describe the action and the plaintiffs and class members' rights in it; and b) to apprise interested parties of the pendency of the action and of their right to have their objections to the Settlement heard. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985); *accord* FRCP 23(c)(2)("best notice practicable under the circumstances, including notice to all members who can be identified through reasonable effort," shall be given to class members). This Court further finds that class members were previously given an opportunity to opt out of the action and that they were adequately represented. The Court thus reaffirms its findings that the notice given to the class satisfies the requirements of the due process clause and holds that it has personal jurisdiction over all class members.

9.      The Court must determine whether the proposed settlement is "fair, adequate and reasonable and is not the product of collusion" between the parties. *Leverso v. Southtrust Bank of Ala.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981). In making this determination, the Court considers six factors: a) the likelihood that plaintiffs would prevail at trial; b) the range of possible recovery if plaintiffs prevailed at trial; c) the fairness of the settlement compared to the range of possible recovery, discounted for the risks associated with litigation; (d) the complexity, expense and duration of litigation; (e) the substance and amount of opposition to the settlement; and (f) the stage of the proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *Corrugated Container*, 643 F.2d at 212; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538-39 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

3

10.     In considering this Settlement, the Court need not re-address the merits of this case. This Court has considered the submissions of the parties, and the class action discovery conducted in this case, all of which show that, notwithstanding the plaintiffs' success on class certification, there remains substantial risk and uncertainty in plaintiffs ultimately prevailing on their claims on appeal.  This risk and uncertainty is increased by the Eleventh Circuit's decision to grant a Rule 23(f) petition, presently pending before that court.  Moreover, this Court has not yet ruled on the latest motion to dismiss attacking the last amended complaint.  Given these considerable open issues and the uncertainty of the inevitable plenary appeal, the benefits available directly to the Class represent an excellent result and can be summarized as follows:

### Benefits of the AETNA Settlement

A.     The Settlement requires changes and commitments in AETNA's business practices to eliminate the worst of the improper practices involved in managed care:

    1.     The Settlement eliminates downloading and improper bundling and computerized denial practices.

    2.     The Settlement eliminates gag clauses and all-product clauses.

    3.     The Settlement establishes the standard of a "Physician, exercising prudent clinical judgment" for "medically necessary" services, and allows cost considerations only when an alternative services is at least as likely to produce equivalent results.

    4.     The Settlement creates a revolutionary dispute resolution mechanism, using an independent, specialty matched external review of decisions regarding medical necessity and an efficient optional billing dispute procedure.

    5.     The Settlement provides for a facilitator to assist physicians in enforcing the Agreement.

    6.     The Settlement allows a physician to enforce any state or federal law or regulation, even when there is no private right of action.

B.     The Settlement creates a substantial fund - $100,000,000 - for physicians to recover some of their damages.

4

C.   The Settlement establishes a foundation "dedicated to promoting high quality health care and shall give particular emphasis to initiatives that assist to improve/enhance the quality of care received by patients."

D.   The Settlement includes a right to opt-out, so any physician or group may decline participation and proceed otherwise.

11.   If this case were to proceed without settlement, the resulting trial and the inevitable appeal would be complex, lengthy and very expensive. The Settlement eliminates a substantial risk that the class would walk away empty-handed after the conclusion of such appeals. *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992). Further, defendant AETNA has defended this action vigorously and, absent a settlement, has indicated that it would continue to do so upon appeal. Because of the resulting motion practice, trial and appeals, it could be years before class members would see any recovery, even if they were to prevail on the merits, which might not produce a better recovery than they have achieved in this settlement. *Behrens*, 118 F.R.D. at 543 (settlement "shortened what would have been a very hard-fought and exhausting period of time, which may have realistically ended with a decision similar to the terms of this settlement"). More importantly, the Settlement calls for the prospective elimination of billing and payment practices detrimental to physicians.

12.   A total of nineteen timely objections were received. Two of these were by co-defendants, who have since withdrawn those objections. Three other objections were by non-class members (subscribers, podiatrists and chiropractors) who release no claim which they may have. Another objector, the Florida Attorney General was represented by Keith Vanden Dooren, Senior Assistant Attorney General who appeared *amicus curiae* to express "concern about the medical necessity definition as a matter of public policy "but" insisted he was not there to derail the Settlement. Another objection by Dr. Robert M. Siegel and Advanced Cardiac Specialist was withdrawn on October 21, 2003.

Three objectors objected to the amount of attorneys' fees and two physicians, Drs. Lenet and

5

Jacobson, objected to the "managed care" system as a whole.

Putting these aside, there are six set of objectors addressing the substance of the Settlement, which represent a minuscule percentage of the 950,000 class members notified through 1.9 million notices, plus the extensive media coverage that this case has received.[1]

13. The remaining objections may be summarized as follows:

A. Drs. Arnold Komisar, David Jacobsen and Joseph Leonard:

    1. Inadequate Legal Counsel

        a. Conflict of Interest - the class lawyers are simultaneously representing physicians and medical societies. Medical societies have a variety of interests, and money was taken away from physicians to give to a charitable foundation run by the societies. *See* Section 8.4(f) of the Settlement agreement. Further, the medical societies are not members of the class.

    2. Settlement is not fair

        a. AETNA settlement favors certain class members over others - *e.g.* disparate treatment regarding non-participating physicians vs. participating doctors.

        b. External medical necessity review provisions are onerous and unfair. Basically, physicians must pay for this privilege. It is binding, bars legal recourse and states already give an entitlement to this review.

        c. Settlement "amount" for each physician is not fair and is completely unrelated to actual damages. The Settlement amount pales in comparison to actual injuries.

    3. Settlement has too many loopholes rendering AETNA's forward-going commitments ineffective. *See* Section 7.29(o), Section 12.8 (allows AETNA to modify agreements).

---

[1]The Settlement is supported by the medical societies and associations of numerous states, including Alabama, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Louisiana, Massachusetts, Nebraska, New Jersey, New York, Oklahoma, Rhode Island, South Carolina, Tennessee, Texas, Virginia and Washington as well as the American Medical Association's President Donald Palmisano, M.D.

6

4.  Settlement releases claims that should not be released

   a.  Limiting the liability of all Settlement participants is unfair. *See* Section 11 of the Settlement agreement.

   b.  The Settlement release future claims. *See* Section 13(b) of the Settlement agreement.

5.  Requirement to submit all disputes over this Settlement to arbitration is improper. *See* Section 12.2 of the Settlement agreement (awarding attorney's fees and costs to prevailing party in disputes)

B.  Dr. Harry Fry, on behalf of certain Ohio and Kentucky physicians:

1.  Overly broad releases provision - complains that this provision may extinguish antitrust claims dismissed but now pending in state appellate courts in Ohio and Kentucky. *See* Section 13 of Settlement agreement. Alleges that claims in those cases, including anti-competitive practices and violations of state laws, do not arise from the conduct in this litigation.

2.  Settlement fund inadequate - if those antitrust claims are covered, then the settlement fund is not adequately funded to compensate them for the damages. However, there are 1800 physicians in the Ohio/Kentucky action who have opted out.

3.  Settlement fails to comply with Fed. R. Civ. P. 23

   a.  Representation is inadequate because the Ohio and Kentucky doctor subclass was not represented properly.

   b.  Notice is inadequate as objector was not on notice of preliminary hearing or of the broad release language of the Settlement.

4.  Settlement agreement fails to address inadequate reimbursement rates paid to objector in greater Cincinnati/Northern Kentucky region - it forces them into the alternative dispute resolution process.

5.  Release of objector's claims is not supported by valid consideration.

C.  Dr. Lisa Reznick:

1.  Concerned with charitable foundation - the $20 million set aside should first be disbursed to physicians and then the remainder should go to the foundation.

7

       a.    The goals of the foundation should be to address improprieties in insurance claims handling not the broad goal of "promoting high quality health care".

       b.    No mechanism to notify class members regarding details of proposed foundation.

D.    Dr. Edward Mewborne from Texas:

1.    Settlement is not "fair, adequate or reasonable" -Mainly concerns with Sections 7 and 12 of the Agreement

       a.    The value of the entire settlement is uncertain because of illusory business practices.

       b.    No disclosure or range of recovery and therefore AETNA's possible liability.

2.    Argues that the business practice initiatives are illusory - Primary consideration for settlement is implementation of future changes in AETNA's business practices - and there is a false amount stated because many of these business practices are already required by state of federal law. *See, e.g.*, Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

3.    The Settlement fund of $100 million is inadequate. In light of the unique legal remedies available in Texas, there is inadequate damages to Texas class members.

4.    Notice of Proposed Settlement was infirm - no way to calculate the actual value of the settlement as to each class member since no estimate of size of class was provided.

14.    Many of these objections lack merit because the objectors can simply opt out if they ave concerns about releasing their claims. The objections to the notice are overruled because the court finds that notice was adequate.

    The Court is also satisfied that the amount to be received by the physicians, $100 million plus the changes in defendant AETNA's procedures to pay the doctors' claims as outlined by Richard Frank in his October 2, 2003 affidavit (attached as Exhibit #2) are of substantial value to the class.

8

The Court, at the fairness hearing, expressed reservations about the utility of a "Foundation". However the Court is convinced that the foundation is a material element of the agreement, obtained through more than two dozen arms' length negotiation sessions that mutually benefit both sides.

15.     In addition to finding the terms of the proposed settlement fair, reasonable and adequate, this Court must determine that there was no fraud or collusion between the parties or their counsel in negotiating the Settlement's terms. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428-29 (5th Cir. 1977). In this case, there is no evidence of fraud or collusion between the parties. Furthermore, the terms of the Settlement make it clear that the process by which the settlement was achieved was fair. Finally, there is no evidence of unethical behavior, want of skill or lack of zeal on the part of class counsel. The only objections related to this issue may be the different treatment received by participating physicians versus non-participant providers. However those doctors not having claims, or opting out, are not affected by the release provisions. Furthermore, plaintiffs' class counsel reiterated the agreement that physicians will continue to be represented in the processing of their claims and will not be left to fend for themselves as suggested by counsel for one of the objectors.

16.     The terms of the agreement are fully and finally approved as fair, reasonable and adequate and in the best interests of the class.

### ATTORNEYS' FEES

17.     The agreement also provides that class counsel would be paid a total amount of $50,000,000 in attorneys' fees, including $6.5 million in on expenses. Although a figure of $43.5 million may appear on its face as exorbitant, an analysis of the work done by 152 attorneys from 26 law firms nationwide renders the fee reasonable. (See Court Exhibit #3). Because the fee award is being paid by Defendant AETNA, when added to the total benefits being given

9

directly to the Class, the total settlement benefit appears to be between $400 and $450 million.

It is fair to note that under a common-fund analysis, by which a class action fee award is determined based on a percentage of the overall benefit achieved on behalf of the Class, the fee is a reasonable one. Pursuant to *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991), an attorneys' fee award in a class action must be "based on a reasonable percentage of the fund established for the benefit of the class." The total amount of fees requested (the fee and cost payment, less Class counsel's costs) falls within the "benchmark" range of 25-30% even if the settlement's value is at one objector's suggested low end of only $200 million. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999); *Camden I, 946 F.2d at 774*. Moreover, the fee is reasonable in view of the great risk associated with asserting these claims; the novelty and difficulty of the questions involved; the excellent results achieved for the class and the extensive time (three years) and effort it took to achieve that result as verified by the affidavits in support of the attorneys' fee filed by experienced litigators and a prominent professor; the experience, reputation and ability of the attorneys; and the preclusion of other employment by the attorneys due to acceptance of this case. Accordingly, the fee award set forth in the Settlement agreement is approved and shall be paid in accordance with the terms' of the agreement.

## CONCLUSION

18.    The complaint, including all individual claims and class claims against AETNA that were or could have been raised in this action are dismissed on the merits and with prejudice. The agreement is hereby approved. Without limiting any term of the agreement, this Final Approval Order and Judgment, including all exhibits, shall forever be binding upon all class members, as well as their heirs, executors and administrators, successors and assigns. Regardless of whether or the extent to which class members may make claims under the settlement, this Final Approval Order and Judgment releases Defendant AETNA from any and

10

all claims of plaintiff class members that arise from, or in any way relate, to this complaint. Of course those class members who elected to opt out, or interested objectors who were not even members of the class,  are completely unaffected by the settlement and this litigation.


DONE AND ORDERED in Chambers in the Southern District of Florida, at Miami, Florida this 24th day of October, 2003.


FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 1334
Master File No. 00-1334-MD-MORENO

IN RE: MANAGED CARE LITIGATION

THIS DOCUMENT RELATES TO
PROVIDER TRACK CASES

FILED by ____ D.C.

OCT 2 7 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## ORDER DENYING PLAINTIFF RICHARD P. BARTLETT, M.D.'S MOTION TO OPT-OUT OF CLASS ACTION SETTLEMENT

THIS MATTER came before the Court upon Plaintiff Richard P. Bartlett, M.D.'s Motion to Opt-Out of Class Action Settlement and Enlargement of Time to Opt-Out of Class Action Settlement (D.E. No. 2508), and Motion for Emergency Hearing (D.E. No. 2509), filed on October 14, 2003.

THE COURT has considered the motions and the pertinent portions of the record, and being otherwise fully advised in the premises and in open court, it is

ADJUDGED that the motion to opt-out and for enlargement of time to opt-out is DENIED. The Court finds that both parties will suffer prejudice if the deadlines set out in the beginning of the process are not strictly followed. The rules put into the notice plan were relied on by all parties, as well as members of the class and it is unfair to lift them to accommodate Dr. Bartlett's claim, which is dubious at best, of being unaware of the settlement. Moreover, the Court has already found the contents and method of the class notice to be sufficient. *See* Final Approval Order and Judgment. It is also

ADJUDGED that the motion for emergency hearing is GRANTED, as the hearing was held

on <u>October 14, 2003</u>.

DONE AND ORDERED in Chambers at Miami, Florida, this 27 day of October, 2003.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

COPIES PROVIDED TO COUNSEL ON
THE OCTOBER 1, 2003 SERVICE LIST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL NO.: 1334
MASTER FILE NO.: 00-1334-MD-MORENO

IN RE:
MANAGED CARE LITIGATION

THIS DOCUMENT RELATES TO
PROVIDER TRACK CASES ONLY

FILED by RM △ D.C.

NOV 0 6 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.

## SUPPLEMENTAL FINAL APPROVAL ORDER

Defendants Aetna Inc. and Aetna-U.S. Healthcare Inc. (together, "Aetna") and the plaintiffs (collectively, the "Parties") have jointly moved for clarification of this Court's October 24, 2003 Final Approval Order and Judgment ("October 24, 2003 Order"). Having reviewed the Parties' motion and being familiar with the arguments in support of and against approval of the settlement between Aetna and plaintiffs in this action, the Court has determined that the Parties' motion should be granted. Accordingly, the Court issues this Supplemental Final Approval Order.

1. This Order is not intended to disturb the Court's October 24, 2003 Order, with the sole exception that the penultimate sentence of paragraph 18 of the October 24, 2003 Order, stating "Regardless of whether or the extent to which class members may make claims under the settlement, this Final Approval Order and Judgment releases Defendant AETNA from any and all claims of plaintiff class members that arise from, or in any way relate, to this complaint," is hereby deleted and replaced by paragraphs 3 through 8 of this Order.

MASTER FILE NO.: 00-1334-MD-MORENO

2. The Court expressly adopts paragraphs G, 5-11 and 14-18 of the Proposed Final Order attached as Exhibit A to the Stipulation signed by the Parties and the non-settling co-defendants on October 10, 2003.  To ensure that there is no dispute over the scope of the Court's orders, the terms of those paragraphs are set forth below. Capitalized terms in this Order that are not otherwise defined herein are intended to have the meanings defined in the Settlement Agreement.

3. The "Released Parties," which shall include Aetna and each of its present and former parents, present and former wholly-owned subsidiaries, present and former divisions and affiliates (including without limitation Lion Connecticut Holdings, Inc. (formerly Old Aetna) and each of its subsidiaries as of December 14, 2000) and each of their respective current or former officers, directors, employees, and attorneys (and the predecessors, heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing), but excluding all Delegated Entities and the Prudential Insurance Company of America, shall be released and forever discharged by the Signatory Medical Societies and all members of the Class who have not validly and timely elected to opt-out of the Settlement and the Class in accordance with the procedures set forth in the Preliminary Approval Order, and by their respective heirs, executors, agents, legal representatives, professional corporations, partnerships, assigns, and successors, but only to the extent such claims are derived by contract or operation of law from the Claims of Class Members (collectively, the "Releasing Parties") from any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each a "Claim"), arising on or before the date of entry of

2

the Preliminary Approval Order, that are, were or could have been asserted against any of the Released Parties based on or arising from the factual allegations of the complaint in the Action, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons (the "Released Claims"). Notwithstanding the foregoing, the Releasing Parties shall not be deemed to have released claims for payment (the "Retained Claims") for Covered Services as to which, as of the date of entry of this Order, (i) no claim with respect to such Covered Services has been filed with Company, provided that the contractual period for filing such claim has not elapsed; or (ii) a claim with respect to such Covered Services has been filed with Company but such claim has not been finally adjudicated by Company, as provided for in section 13(d) of the Settlement Agreement.

4. In addition to the Released Claims, the Releasing Parties shall be deemed to have discharged any and all claims that exist now or that might arise in the future against any other persons or entities, which claims arise from, or are based on, conduct by any of the Released Parties that occurred on or before May 30, 2003 (the date of the Preliminary Approval Order) and are, or could have been, alleged in the complaint in the Action, whether any such claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other persons or entities. Nothing in this paragraph or in the Settlement Agreement is intended to relieve any person or entity that is not a Released Party from responsibility for its own conduct or the conduct of other persons or entities who are not Released Parties.

5. With respect to the Released Claims and the claims described in paragraph 4 of this Order, each member of the Class that has not timely elected to opt-out of the

3

Settlement and the Class is hereby deemed expressly to have waived and released any and all provisions, rights and benefits conferred either (a) by California Civil Code § 1542, which reads:

> Section 1542. General release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

or (b) by any law of any state or territory of the United States, or principle of common law, which is similar to § 1542 of the California Civil Code.

6. The Releasing Parties are permanently enjoined from: (a) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise) or receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction based on any or all Released Claims against one or more Released Parties; (b) instituting, organizing class members in, joining with class members in, amending a pleading in or soliciting the participation of class members in, any action, including but not limited to a purported class action, in any court against one or more Released Parties based on, involving, or incorporating, directly or indirectly, any or all Released Claims, and (c) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise) or receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction based on an allegation that Company's compliance with the provisions of the Settlement Agreement violates any legal right of any member of the Class.

7. All persons, including without limitation all defendants named in the complaint other than Aetna and Old Aetna, who are, have been, could be, or could have been alleged

4

to be joint tortfeasors, co-tortfeasors, co-conspirators, or co-obligors with the Released Parties or any of them respecting the Released Claims or any of them, are hereby, to the maximum extent permitted by law, barred and permanently enjoined from instituting, commencing, prosecuting, participating in or continuing any claim, claim-over, cross-claim, action, or proceeding, however denominated, regardless of the allegations, facts, law, theories or principles on which they are based, in this Court or in any other court or tribunal, against the Released Parties or any of them with respect to the Released Claims, including without limitation equitable, partial, comparative, or complete contribution, set-off, indemnity or otherwise, whether by contract, common law or statute, arising out of or relating in any way to the Released Claims. All such claims are hereby fully and finally barred, released, extinguished, discharged, satisfied, and made unenforceable to the maximum extent permitted by law, and no such claim may be commenced, maintained, or prosecuted against Aetna, Old Aetna or any Released Party. Nothing in this paragraph 7 shall be construed to bar any person who is alleged to be a joint tortfeasor, co-tortfeasor, co-conspirator, or co-obligor with any of the Released Parties from instituting, commencing, prosecuting, or participating in any claim, claim-over, cross-claim, action, or proceeding, however denominated, against a Released Party in any litigation in which claims against the Released Party are not released and discharged pursuant to this order ("Non-released Litigation"); provided however, that such persons may serve discovery on a Released Party in Non-released Litigation only to the extent such discovery is directed solely to the allegations in such litigation and is not otherwise used to obtain discovery in the lead provider track action Shane v. Humana et al.,

5

MDL No. 1334. Where the claims of a person who is, has been, could be, or could have been alleged to be a joint tortfeasor, co-tortfeasor, co-conspirator or co-obligor with a Released Party respecting the Released Claims have been barred and permanently enjoined by this Paragraph 7, the claims of Released Parties against that person respecting those Released Claims are similarly fully and finally barred, released, extinguished, discharged, satisfied and made unenforceable to the maximum extent permitted by law. As consideration for the foregoing relief, the Settlement Agreement and paragraph 4 of this Order relieve the parties who are so enjoined from any liability in the Action based on the conduct of the Released Parties.

8. In contemplation of the dismissal with prejudice of such actions after this Order becomes final, all proceedings are stayed as to Aetna, Old Aetna or any other Released Party who is a defendant in any action brought by or on behalf of members of the Class that asserts any claim that as of the date of this Order would constitute a Released Claim that has been, or will in the future be assigned to this Court under MDL Docket No. 1334, *provided*, *however*, that this stay in contemplation of dismissal shall not apply to any such action to the extent that a named plaintiff has timely elected to opt-out of the Settlement and the Class.

9. In accordance with the terms of the Settlement Agreement, the Releasing Parties and Class Counsel are barred from pursuing discovery in the Action against Aetna, Old Aetna or the other Released Parties. It is the intent of Aetna, Old Aetna, and the other Released Parties, to limit, to the maximum extent appropriate under law, further discovery burdens on Aetna, Old Aetna, and other Released Parties in the Action. Accordingly, persons not released by this order will be permitted to obtain discovery

MASTER FILE NO.: 00-1334-MD-MORENO

in the Action from Aetna, Old Aetna, or other Released Parties only upon first moving the Court for leave to obtain said discovery and demonstrating good cause for said discovery.

10. A list of those members of the Class who have timely elected to opt-out of the Settlement and the Class and who therefore are not bound by the Settlement, the provisions of the Settlement Agreement, the Court's October 24, 2003 Order, this Order and the Judgment to be entered by the Clerk of the Court hereon, has been submitted to the Court as Exhibits A & B to the Second Supplemental Affidavit of Jenny Teston sworn to on October ____ 2003, which is incorporated by reference herein. All other members of the Class shall be subject to all of the provisions of the Settlement, the Settlement Agreement, the Court's October 24, 2003 Order, this Order and the Judgment to be entered by the Clerk of the Court.

11. Aetna and Old Aetna are hereby permanently relieved from any and all obligations under the Agreed Order For Preservation of Records entered in this Action on January 12, 2001.

12. Neither the Settlement Agreement nor any provision therein, nor any negotiations, statements or proceedings in connection therewith shall be construed as, or be deemed to be evidence of, an admission or concession on the part of any of the Representative Plaintiffs, the Signatory Medical Societies, Class Counsel, any members of the Class, Aetna, Old Aetna or any other person of any liability or wrongdoing by them, or that the claims and defenses that have been, or could have been, asserted in the Action are or are not meritorious, and this Order, the Settlement Agreement or any such communications shall not be offered or received in evidence

7

in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Representative Plaintiffs, the Signatory Medical Societies, any member of the Class or any other person has or has not suffered any damage; *provided, however,* that the Settlement Agreement, this Order and the Judgment to be entered thereon may be filed in any action by Aetna, Old Aetna or any Released Party seeking to enforce the Settlement Agreement or the Judgment by injunctive or other relief, or to assert defenses including, but not limited to, *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.   The terms of the Settlement Agreement and of this Order and the Judgment shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings that are subject to the Release and other prohibitions that are set forth in paragraphs 3, 4, 6 and 7 of this Order that are maintained by, or on behalf of, the Releasing Parties or any other Person subject to those provisions of this Order.

13. In the event that the Settlement Agreement does not become effective or is canceled or terminated in accordance with the terms and provisions of the Settlement Agreement, then this Order and the Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by this Court shall be rendered null and void.

14. The Clerk of the Court is directed to enter the Judgment in the form attached to this Order dismissing the Action with prejudice as to Aetna and Old Aetna pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

8

MASTER FILE NO.: 00-1334-MD-MORENO

15. Without in any way affecting the finality of this Order or the Court's October 24, 2003 Order, this Court hereby retains jurisdiction as to all matters relating to (a) the interpretation, administration, and consummation of the Settlement Agreement and (b) the enforcement of the injunctions described in paragraphs 6 and 7 of this Order. In accordance with the terms of the Settlement Agreement, in any future dispute concerning the negotiation, approval, performance or alleged breach of the Settlement Agreement that may arise between or among the parties to the Settlement Agreement, the Court shall award attorneys' fees and costs to the prevailing party.

SO ORDERED this _____ day of _____, 2003.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

COPIES PROVIDED TO COUNSEL ON
THE OCTOBER 1, 2003 SERVICE LIST

9

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 1334
Master File No. 00-1334-MD-MORENO

IN RE: MANAGED CARE LITIGATION

THIS DOCUMENT RELATES TO
PROVIDER TRACK CASES

FILED by ___ D.C.

NOV 0 7 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## FINAL JUDGMENT

In accordance with, and for the reasons set forth in, the Final Approval Order and Judgment entered on October 24, 2003, and the Supplemental Final Approval Order entered on November 6, 2003, this Action is DISMISSED with prejudice as to defendants Aetna Inc., a Connecticut corporation and Aetna U.S. Healthcare, Inc., (now known as Aetna Inc.) a Pennsylvania corporation pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

DONE AND ORDERED in Chambers at Miami, Florida, this _6_ day of November, 2003.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

COPIES PROVIDED TO COUNSEL ON
THE OCTOBER 1, 2003 SERVICE LIST

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


IN RE:
HUMANA, INC., MANAGED CARE LITIGATION

Case MDL NO: 1334


MIAMI, FLORIDA
JANUARY 7, 2004

TRANSCRIPT OF AETNA'S EMERGENCY MOTION TO ENJOIN
BEFORE THE HONORABLE FEDERICO A. MORENO,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR WESTSIDE          JEFFREY M. LIGGIO, ESQ..
EKG:                  JENE P. WILLIAMS-RHOADS, ESQ.,
                      and EDWARD H. ZEBERSKY, ESQ.



FOR AETNA:            MIGUEL ESTRADA, ESQ.,.

                      STEPHEN R. SMEREK, ESQ.,

                      and CHRISTINE NANFELDT, ESQ.



REPORTED BY:


                      ANTON B. SCHWARTZ, RPR-CP

                      Official Federal Court Reporter

                      Federal Justice Building, Ste. 1061

                      99 Northeast 4th Street

                      Miami, FL  33132 - 305/523-5118

2

```
 1        THE COURT:  Let me call in Re: Humana Managed Care
 2 litigation and specifically Aetna's emergency motion filed for
 3 an order enjoining Westside EKG Associates and its attorneys
 4 from prosecuting a particular case, now appeal of the
 5 dismissal.
 6        On behalf of Aetna, who do we have?
 7        MR. ESTRADA:  Miguel Estrada from Gibson, Dunn &
 8 Crutcher.  Your Honor.  I have with me Stephen Smerek, who is
 9 not admitted to practice in Federal Court here, but who
10 practices in the State Court pro hac in the case that we are
11 seeking to get dismissed and whose declaration furnishes the
12 factual basis for our motion.
13        I got ahold of him last night in Atlanta.  I thought
14 he might be useful if he were here in case any issues came up.
15        MS. NANFELDT:  Christine Nanfeldt with Greenberg
16 Traurig.
17        THE COURT:  On behalf of Aetna, as well?
18        MR. ESTRADA:  Correct.
19        THE COURT:  On behalf of EKG?
20        MR. LIGGIO:  I am Jeffrey Liggio.  I am lead counsel,
21 and I am here with my co-counsel, Edward Zebersky, and my
22 partner and co-counsel, Jene Williams.
23        THE COURT:  Who is going to speak for EKG?
24        MR. LIGGIO:  I will, Your Honor.
25        THE COURT:  Grab the lectern.  The rest of you sit
```

3

```
 1 down.
 2        You probably didn't have a chance to file a response,
 3 and I know it is short notice, but let's get down to the issue.
 4        Is Westside EKG a member of the settlement class?
 5        MR. LIGGIO:  Yes, and, Judge --
 6        THE COURT:  Did Westside EKG opt out?
 7        MR. LIGGIO:  We objected.  We did not opt out and we
 8 are --.
 9        THE COURT:  There is a different, isn't there?
10        MR. LIGGIO:  Yes, there is, and although the
11 distinction as far as how it affects the state class action and
12 this class action was one we wrestled with.
13        THE COURT:  The problem I am having with this, it is
14 not just this one case -- what is the purpose of Aetna or, for
15 that matter, Cigna, because Cigna is also a defendant in the
16 state case that you all filed back in 2001, if things are going
17 to be prosecuted, then there is no settlement, and what is the
18 net effect of my order?
19        It was kind of a meaningless thing.
20        MR. LIGGIO:  The dilemma that we had, and let me say
21 first, if you are inclined to sanction us, I am the captain of
22 the ship.  I have two terrific young lawyers that work with me,
23 and if you are inclined to sanction anybody, I am here to take
24 the sanctions.
25        THE COURT:  I always put that at the end.
```

4

```
 1        MR. LIGGIO:  I am letting you know that, that I take
 2 full responsibility.
 3        THE COURT:  Don't be so quick at it because the Court
 4 Reporter will tell you I am more of a jailing Judge than a
 5 fining Judge.
 6        MR. LIGGIO:  I learned when I was a plebe at the Naval
 7 Academy that as the leader you take the heat.
 8        Let me tell you our dilemma.
 9        THE COURT:  Let's go through it in this way, and that
10 way, what I am going to do is that I will lead you into a
11 corner.
12        MR. LIGGIO:  I am ready.
13        THE COURT:  I am going to try.  You did not opt out.
14 Right?
15        MR. LIGGIO:  We did not.  We objected.
16        THE COURT:  You objected and you filed an appeal of
17 the settlement.
18        MR. LIGGIO:  We have.
19        THE COURT:  By my approving the settlement, your state
20 claims have been released.  True?
21        MR. LIGGIO:  Yes and no.
22        THE COURT:  The yes I understand.  Tell me the no
23 part.
24        MR. LIGGIO:  Counsel provided you attached to his
25 emergency motion, although it is not an emergency, our
```

5

```
 1 complaint in the state class action.
 2        THE COURT:  Whether it is an emergency or not, it was
 3 labeled as one.  There is a brief that you have to file by
 4 tomorrow before the Fourth District Court of Appeals, and
 5 unless there is another extension --
 6        MR. LIGGIO:  I think it is Friday.  It is the 9th.
 7 Today is the 7th.  We have until Friday and I was on the phone
 8 with appellate counsel today.
 9        THE COURT:  The 9th, I apologize.  You are right, but
10 that is pretty close.
11        MR. LIGGIO:  Yes, it is.
12        THE COURT:  They have to respond, unless they get
13 extensions, twenty days, but, more importantly, I have to take
14 care of this because of the impact it may have on hundreds of
15 other cases.
16        MR. LIGGIO:  Let me tell you why again.  They provided
17 the complaint, and the definition of the class that our clients
18 seek to represent, and there are some obligations as a
19 purported class representative, even if the class has not yet
20 been certified --
21        THE COURT:  What did the State Judge do in Broward
22 County, Judge Tobin?
23        MR. LIGGIO:  Judge Tobin dismissed the case, and so we
24 are on appeal in that dismissal.
25        THE COURT:  Based upon what?  Based upon this
```

6

1 approval?
2       MR. LIOGIO: No, no. What happened was, there was a
3 new Florida Supreme Court case named Villason, and there is
4 some language in there, but our class definition in the state
5 case is not just physicians. Our class definition in the state
6 case is all medical providers. We may have in the state
7 case --
8       THE COURT: So, what you have to do is, the physicians
9 can no longer prosecute that case. Agreed?
10      MR. LIOGIO: There will be a potential standing
11 problem as far as the other providers.
12      THE COURT: Tell me yes or no. The physicians in Case
13 No: 01--016184-02, Broward County, cannot prosecute the case,
14 can they?
15      MR. LIOGIO: As to the release claims, correct.
16      THE COURT: Well, what other claims are there by
17 physicians?
18      MR. LIOGIO: I have looked at the settlement
19 agreement, and I direct your attention, Your Honor, to Page No.
20 73, as to what has been released, and the time period for
21 claims that have been released.
22      Judge, any time a physician submits a bill for
23 services, that is a new claim. Any time a physician submits a
24 bill for service subject to the Florida procedural requirements
25 of the prompt pay laws, that is a new claim.

7

1       Page No. 74 or 73, I should say, in the settlement
2 agreement talks about that the claims that have been released
3 are the claims that have accrued up to the date of the approval
4 of the settlement, which in your Court was October 23rd of this
5 past year.
6       My client has ongoing claims as do -- if my client
7 submitted a bill October 30th --
8       THE COURT: But your case was filed in 2001.
9       MR. LIOGIO: That is correct.
10      THE COURT: So, 2001, what kind of claims are there in
11 2001 that are not included in this settlement?
12      MR. LIOGIO: None of those past claims, Judge. That
13 is correct.
14      THE COURT: So, what is the 2001 case all about?
15      MR. LIOGIO: The 2001 case was all about -- it is a
16 two count complaint, basically. A declaratory count asking the
17 Judge to declare that the conduct violated the contracts of
18 insurance. No. 2, there is a breach of contract cause of
19 action as third party beneficiaries, not as assignees and not
20 as participating providers.
21      THE COURT: Dealing with what period of time?
22      MR. LIOGIO: I think as far as the declaratory count
23 especially, it may go on to the present time.
24      If my client submitted a medical bill November 1st of
25 2003, and Aetna did not comply with the statutes which are

8

1 drafted in the contract, by operation under our position under
2 the common law of the State of Florida, that is a claim that
3 has not been released in this case, and that is a claim that
4 may be affected by a liability ruling and/or declaratory ruling
5 at some point in the future when we get it back from the
6 Florida Fourth District Court of Appeals.
7       So, we wrestled with, do we opt out and does that
8 affect --
9       THE COURT: Why didn't you opt out? If you opted out,
10 you wouldn't be before me right now. You would be writing your
11 briefs.
12      MR. LIOGIO: The problem we have is, even though the
13 class had not been certified, are we then -- do we then have a
14 problem with are we opting out other purported members of the
15 class. Is there a conflict there, and even though our
16 clients -- the class had not been certified, and the Judge had
17 not found that our client had been a proper class
18 representative, we thought that the prudent cause of action was
19 to object, respectfully, and, if necessary, appeal, which we
20 have. We didn't do it in bad faith.
21      THE COURT: A few days ago, someone said about that
22 old saying, you cannot eat your cake and have it, too, which is
23 the appropriate order, and that is what you are trying to do.
24      MR. LIOGIO: Well, we are on the horns of a dilemma.
25      THE COURT: You see what a mess this is. How do I

9

1 resolve -- I will hear from whoever, Mr. Estrada or whoever is
2 going to speak on those issues -- but see how this could --
3 just like there is someone like your client, there are hundreds
4 of others.
5       MR. LIOGIO: Here's what I suggest.
6       THE COURT: I am putting aside the non-physicians for
7 the time being.
8       MR. LIOGIO: Here is the suggestion. The
9 underlying -- I should not say that -- the state court appeal,
10 we have non-MDL defendants. That appeal is going to happen.
11      There is going to be a ruling on those private right
12 of action issues that were raised below. That is going to be
13 resolved by the Florida Appellate Courts.
14      If, in the event, the Eleventh Circuit reverses you,
15 we are going to be back there, anyway.
16      What I suggest, if there is a problem, since they
17 don't want to obviously do a brief, we will agree to stay our
18 case against Aetna, pending the outcome of the Eleventh Circuit
19 appeal.
20      THE COURT: I don't know whether you can actually have
21 a stay in a Court of Appeals. I don't think they are going to
22 be able to do that, because that Appellate Court is sitting
23 there and they have an appeal, they are not just going to stay
24 an appeal.
25      They are going to say, "File your brief. If you don't

10

1 file it, it is going to be dismissed."
2      MR. LIGGIO: The problem is under the Syngenta case
3 that the Supreme Court issued last year, we honestly filed our
4 class action --
5      THE COURT: You are the one who did not opt out. See.
6 That's the problem.
7      MR. LIGGIO: It is a dilemma.
8      THE COURT: You cannot do both because, if not, I am
9 going to have a bunch of other people doing the same thing.
10 There are bound to be disputes later on between other doctors.
11      So, what kind of a settlement did Aetna get when they
12 are going to be sued by all these class members who did not opt
13 out?
14      MR. LIGGIO: But if a class member did not object --
15      THE COURT: I don't know whether you have greater
16 standing as an objector. That is what you are telling me.
17      MR. LIGGIO: I think so.
18      THE COURT: In which case --
19      MR. LIGGIO: Are we plowing new grounds? I think we
20 are. It was not done in bad faith. It certainly was not done
21 to abuse your power in any way, and, again, if you feel
22 inclined to sanction any lawyers, I am standing right here.
23      THE COURT: All right.
24      MR. LIGGIO: Thank you, Judge.
25      THE COURT: Mr. Estrada, frankly, from a practical

11

1 standpoint, I have to think that it is easier just to do the
2 brief before the Fourth District Court of Appeals.
3      Mr. Estrada was here a couple of days ago, flew back,
4 flies back in here.
5      MR. ESTRADA: Thank you, Your Honor. Miguel Estrada
6 for Gilman and Aetna.
7      THE COURT: I assume the principle is more important
8 than the time it would take to do one brief.
9      MR. ESTRADA: For several reasons, Your Honor. Our
10 position in this case is pretty much set forth in our papers.
11 I won't belabor it at length.
12      Just let me restate a few of the salient facts. They
13 could have opted out. They had a case pending. They could
14 have opted out. They did not do so.
15      THE COURT: You are not asking me to do anything to
16 the non-physician plaintiffs.
17      MR. ESTRADA: If they have a potential plaintiff,
18 which they don't currently have in the pending case, who is not
19 a physician, everyone who is a named plaintiff in the pending
20 case is a physician, but if they can find a plaintiff who is
21 not a physician, I would not be in your courtroom telling you
22 to enjoin them anymore than if they brought a suit on behalf of
23 a bus driver.
24      I am here because the settlement has been approved.
25 There is a final judgment and there is, in addition, an

12

1 injunction that you entered keeping class members from further
2 prosecuting claims, and, in this case, we have somebody who had
3 plenty of actual knowledge of the settlement.
4      We gave them all the papers. They came into your
5 courtroom. Mr. Zebersky was here and objected ably. They
6 filed an appeal. They sought to intervene in the case here,
7 and by doing all of that, by failing to opt out, what they did
8 was cast their lot in Federal Court.
9      What that means is, if they should be successful in
10 the Eleventh Circuit, the answer is no, now they get to
11 litigate in Federal Court -- I mean in State Court. The answer
12 is, they will be back in front of you, and they will have a
13 claim in front of you, but they will still be class members in
14 front of you.
15      What that means is that their state case is gone.
16 There is an injunction that says they may not move forward with
17 it, and at the bottom of Page 9 --
18      THE COURT: What did you do with the injunction in the
19 State Court proceeding where the Judge entered a ruling on the
20 substantive issues? Do you have that have been stayed or
21 enjoined?
22      MR. ESTRADA: We asked for a stay. We filed a notice
23 of your settlement and asked for a stay. The Judge did not
24 rule on it because he ruled on the merits of the claim, finding
25 that there was no merit.

13

1      Now that we are no longer at the preliminary approval
2 stage, but we have moved to final approval and there is a final
3 judgment, and now that you have, in addition, entered an
4 injunction with an order that you retain jurisdiction, this is
5 the appropriate forum to bring those questions.
6      Our position is very simple. I don't have any
7 animosity for plaintiff's lawyers. I get along with them very
8 well. I am not here asking you to punish the captain or the
9 corporal on the ship. All I want is the benefit of our
10 settlement, and the law on this is very clear.
11      If you look at Page 9 of our brief, the bottom of Page
12 9, and Page 10, we have cited any number of cases from the
13 Supreme Court of the United States, with the relevant quotation
14 following the citation in a parenthetical, which all of them
15 say in words of one syllable a party who is ordered to do
16 something by a Court or is the subject of an injunction, even
17 if it is filed on appeal and even if he ultimately wins, must
18 comply in the interim, and all I want from this hearing -- I
19 don't relish looking for sanctions against counsel. All I
20 want --
21      THE COURT: You want the injunction.
22      MR. ESTRADA: We served them. We already have an
23 injunction. They are not obeying it, and we served them when
24 you entered your judgment with a stipulation of dismissal,
25 which we have given you. I have another copy.

14

```
1        THE COURT: I have seen it. I can't force them to
2  stipulate to dismissal, can I?
3        MR. ESTRADA: Well, if it is a proper contempt
4  hearing, yes, you may, because if the situation is, I have
5  enjoined you to dismiss the case, and you are refusing, then I
6  will go back to the statement that you made earlier, the
7  choices then become jail or fines until they comply.
8        That is the law of civil contempt, and either the
9  injunction means something or it does not, and you are
10 absolutely right; that we are here because this is an issue
11 that will come up again and again, and having the cases go away
12 is the essence of our settlement.
13        If you took the view that Mr. Liggio had, they would
14 stay the appeal only as to Aetna. It would go forward as to
15 anybody else, and what I would have to do, as counsel for
16 Aetna, is I would file an amicus brief or monitor or make sure
17 that the people that remain in the case are litigating it in a
18 way that does not harm any client's interests.
19        You mentioned that I was here a couple of days ago,
20 and you know that we have cases in this courtroom that we have
21 not settled, and whenever there are important legal issues that
22 you are considering that may effect my client's interests in
23 non-settled cases, I show up and I sit in the back, and if I
24 have to do that for one million dollars all over the country
25 who want to file a case in State Court, my client will go
```

15

```
1  bankrupt, and that is not the benefit of our settlement.
2        THE COURT: You would be probably take a lot of cases
3  for that to happen, but that is all right.
4        MR. ESTRADA: But --
5        THE COURT: I get the point.
6        MR. ESTRADA: Thank you, Your Honor, and, as I said,
7  it is a proper motion for contempt. I don't relish making it.
8  I don't want people to be punished, but I would like them, as
9  people who, with the advice of counsel, elected not to opt out,
10 to sign our stipulation of dismissal, as the law requires, so
11 we may get the benefit of our settlement.
12        THE COURT: All right. Mr. Liggio.
13        MR. LIGGIO: I have nothing more, but I will answer
14 any questions.
15        THE COURT: Well, once I issue the injunction, do I
16 really have any choice? What you are asking me to do is to
17 vacate the injunction, which, of course, would mean I would
18 have to vacate the settlement.
19        I don't even know if I have jurisdiction to do that.
20 You have put me in a very uncomfortable situation.
21        MR. LIGGIO: It seems that maybe -- I was thinking
22 about this on the way down -- and maybe we should have -- I am
23 learning as I am going, Judge. Maybe we should have come to
24 you when the injunction was entered and asked you to modify it
25 so that we could prosecute or continue to prosecute the state
```

16

```
1  appeal against all the defendants, including Aetna, and I
2  didn't do that.
3        THE COURT: But the chances are -- you were here for
4  or your client was here for the objections. So, the issue was
5  raised appropriately.
6        The question is whether you can actually prosecute a
7  claim on behalf of physicians against Aetna, and the answer is
8  you really cannot and the injunction stays.
9        Now, the question is, what are you going to do with
10 Aetna, and this is going to probably come up if I finally
11 approve Cigna. So, you might as well think about that.
12        MR. LIGGIO: The did not object to Cigna, and so I
13 think Cigna is going to go away, even in the state case, but we
14 have a standing issue there that we are wrestling with.
15        THE COURT: I don't see how you can prosecute this
16 appeal, because I have to think of this case the same way as if
17 you were before Judge Tobin and he had not ruled on the merits.
18        I would restrain you and enjoin you from pursuing that
19 claim, any claim, related to this settlement. I have done it.
20 I would have to do that.
21        Now, if it was a Trial judge, there would be an easy,
22 practical solution. The State Judge would simply say, "I will
23 stay it. See what happens before the Eleventh Circuit," if he
24 wanted to do that or he would dismiss it.
25        Courts of Appeals don't really stay cases. They
```

17

```
1  probably want to rule on the issue.
2        You have other defendants, do you not?
3        MR. LIGGIO: We do.
4        THE COURT: I have no power over them.
5        MR. LIGGIO: What is baffling to me is, if the moon
6  were green, but, if, in fact, the Eleventh Circuit decides to
7  reverse you in this case --
8        THE COURT: On the settlement.
9        MR. LIGGIO: So there is no settlement any more, and
10 they are litigating on the merits, we will, against the other
11 defendants, have a ruling on those substantive issues and maybe
12 back and they will not have had an opportunity to participate.
13        THE COURT: I think if they are not a party to that
14 case, because I have enjoined you, they will live with the fact
15 that someone else on behalf of another defendant will raise
16 those issues and maybe he will monitor, but right now he is
17 under the obligation of responding to your brief, and I think
18 it is unfair, and, more importantly, it goes against the order
19 that I issued.
20        It is not criminal contempt that he is seeking. It is
21 just civil contempt. In other words, coercive, to tell you you
22 have to cease and desist. You have to dismiss it, whatever it
23 takes.
24        I cannot force someone to enter into a stipulation,
25 but I can tell you that you cannot prosecute any case,
```

18

1 including an appeal, and, if you do so, you will be in
2 contempt.
3          MR. LIGGIO: Against Aetna.
4          THE COURT: That is the only one. I think it is going
5 to come up, if I finally approve Cigna, obviously. We know it
6 is going to come up, and the chances are if I approve it, the
7 same thing is going to happen.
8          MR. LIGGIO: We will look at that very carefully now
9 ourselves, I promise.
10         THE COURT: So, you have a brief due on the 9th.
11 Between now and then, are you going to dismiss against Aetna?
12         MR. LIGGIO: You are ordering me to do so, and we will
13 go back --
14         THE COURT: Go ahead and talk to him, if you want.
15         MR. LIGGIO: I don't think -- if I go ahead, because
16 we are talking to others -- we have other clients that just are
17 not as named plaintiffs.
18         THE COURT: Has the class been certified?
19         MR. LIGGIO: No.
20         THE COURT: So then they are not really parties.
21         MR. LIGGIO: They are clients. They are not parties.
22 But I may be able to, before Friday, bring in the hospital.
23         THE COURT: In an appeal?
24         MR. LIGGIO: Sure.
25         THE COURT: How can you do that on an appeal?

19

1          MR. LIGGIO: We can substitute a party and we have
2 checked --
3          THE COURT: While the case is up on appeal?
4          MR. LIGGIO: Sure.
5          THE COURT: Wouldn't they send it to the Trial Court
6 and say -- I know Appellate Courts are always accused --
7          MR. LIGGIO: This is a different world.
8          THE COURT: They don't like to do any of that. They
9 say, "Remand it to the Trial Court to do whatever you want."
10 They don't like to deal with factual issues that have not been
11 reviewed by a lower Court.
12         MR. LIGGIO: I am going to do exactly what you ordered
13 me to do. We will dismiss Aetna only.
14         THE COURT: That's all I am asking.
15         MR. LIGGIO: As a defendant in the appeal before
16 Friday by my clients. If the Fourth District lets us
17 substitute a party, then that is between the Fourth District --
18         THE COURT: I would never enjoin another Court to do
19 anything. We went through that here.
20         MR. LIGGIO: Again, I am sorry. It was so disrespect
21 to you at all.
22         THE COURT: I accept that and I think it is evident.
23         MR. ESTRADA: Just to clarify, there is an [illegible] in
24 the stipulation that we proffered. It was merely a vehicle for
25 accomplishing what the order already does in front of the State

20

1 Court.
2          I just want to make clear that given that you have
3 entered a judgment on the merits, the dismissal of my client
4 has to be with prejudice.
5          MR. LIGGIO: I would appreciate it being without
6 prejudice just in case we prevail in the Eleventh. We are
7 going to dismiss them.
8          THE COURT: But if you prevail on the Eleventh, you
9 get to come before me, not about the State Court.
10         MR. LIGGIO: It will with prejudice. It will be with
11 prejudice.
12         THE COURT: What is wrong with the stipulations that
13 they submitted?
14         MR. LIGGIO: The stipulation is certainly different
15 than the Court order. I have not looked at it, to tell you the
16 truth, Judge.
17         THE COURT: So, without the word stipulation --
18         MR. LIGGIO: What I would like to do -- yes, sir.
19 What I would like to do is just make sure I talk to appellate
20 counsel for the appropriate wording. I will follow your
21 ruling.
22         THE COURT: I can't help you with that because what I
23 should do is direct you to enter a particular order of
24 dismissal.
25         What language don't you like about that? Let's see.

21

1          MR. LIGGIO: Stipulation.
2          THE COURT: We will take stipulation out. Motion to
3 dismiss appeal.
4          MR. LIGGIO: Yes, sir.
5          THE COURT: Against --
6          MR. ESTRADA: The Aetna defendants.
7          THE COURT: I was thinking how many Aetna's are there.
8 There is only one here. Right?
9          MR. LIGGIO: I think so, Judge. We will make sure
10 they are all included.
11         THE COURT: I don't even see Aetna in the stipulation.
12 Where is that. Where is Aetna in the stipulation that I have?
13         I see Prudential, Cigna, Foundation. There it is.
14         So, to make it clear, against Aetna, U.S. Healthcare
15 Inc., first known as Prudential Healthcare Plan, Inc.
16         So, it would be a motion to dismiss the appeal against
17 that party, and it would say notifies the Court that all claims
18 against Aetna Health, Inc., have been extinguished by final
19 approval of the nationwide class action settlement in the
20 Federal multi-district litigation caption, and we have that.
21         Accordingly, pursuant to Rule 9.350(a) of the Federal
22 Rules of Appellate Procedure, Westside EKG Associates -- I
23 don't know. Would that rule be the one about moving to
24 dismiss?
25         MR. ESTRADA: Yes, Your Honor.

**22**

1    MR. LIGGIO:  It is a stipulation, Judge.
2    THE COURT:  No.  I am taking Aetna out.  It has
3  nothing to do with it.  This is between you and I.  We are
4  putting that aside.
5         I will direct you to dismiss Aetna Health, Inc., from
6  the present appeal with prejudice, and it is going to have to
7  be done today.
8    MR. LIGGIO:  Yes, Your Honor.
9    MR. ESTRADA:  Your Honor, just to clarify something
10  else.  I never heard of a Court of Appeals in which you can add
11  a new party with a new claim on appeal, and all I want to make
12  clear that if there is a subterfuge to litigate against Aetna
13  the very ruling that involves physicians only, that came from
14  Judge Tobis, we will be back in front of you.
15    THE COURT:  We will see.  Right now, everybody is
16  acting in good faith.  If you keep coming back, you know what
17  happens with that good faith account?  It gets depleted.
18    MR. LIGGIO:  I don't want to be back in an emergency
19  hearing looking at contempt again.  We will not be back in
20  front of you.
21    THE COURT:  I am directing the plaintiff, Westside EKG
22  & Associates, through their lawyers, who have been here in
23  Court, to dismiss the appeal in Case No: 4D03-3513, which is
24  the appeal before the Fourth District Court of Appeals in the
25  State of Florida.  It is the appeal of the lower case number

**23**

1  01-016184-02, a dismissal on the merits, and the reason for
2  that is because this case -- the members of the class did not
3  opt out and settled and I approved the settlement in this
4  nationwide class action in Shane versus Humana, 00-MDL-1334,
5  and I direct Mr. Liggio, Mr. Zebersky and Ms. Williams to file
6  the motion to dismiss the appeal no later than today at 4:00.
7    MR. LIGGIO:  Done.
8    THE COURT:  In view of the agreement by Westside EKG
9  to do that, there is no need to hold anyone in contempt.
10    MR. ESTRADA:  We agree, Your Honor.
11    THE COURT:  Anything else that I can help you with?
12    MR. LIGGIO:  Thank you, Judge.
13    THE COURT:  Have a safe trip on I-95 and to wherever
14  you are going, Atlanta, Los Angeles, Washington, and I have
15  never seen Mr. Tropin be so silent here.  He is an observer.
16  He is taking the Estrada mode.
17    MR. ESTRADA:  We may have another similar
18  non-emergency motion in a case that has been filed in New York.
19    THE COURT:  If you put emergency, the local counsel
20  will tell you, you put emergency in front of me, and I am going
21  to act on it in an emergency basis.
22    MR. ESTRADA:  I will never file in front of you an
23  emergency motion that I don't think is an emergency.
24         I am just letting you know I may have one or two more
25  in which there is still some time.  I will just file them in

**24**

1  the regular course.
2    THE COURT:  Based upon this order, what you should do
3  is let the other people know what I have done here.
4    MR. ESTRADA:  I will get an expedited copy of the
5  transcript.
6    THE COURT:  Have a safe trip.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**25**

1         C E R T I F I C A T E
2    I hereby certify that the foregoing is an accurate
3  transcription of proceedings in the above-entitled matter.
4
5    _____
DATE FILED      ANTON B. SCHWARTZ, RPR
6            Official Federal Court Reporter
         Federal Justice Building, Ste. 1061
7         99 Northeast 4th Street
         Miami, FL  33132 - 305/523-5118
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**A**

able 9:22 18:22
ably 12:5
above-entitled 25:3
absolutely 14:10
abuse 10:21
Academy 4:7
accept 19:22
accomplishing 19:25
account 22:17
accrued 7:3
accurate 25:2
accused 19:6
act 23:21
acting 22:16
action 3:11,12 5:1 7:19 8:18 9:12 10:4 21:19 23:4
actual 12:3
add 22:10
addition 11:25 13:3
admitted 2:9
advice 15:9
Aetna 1:14 2:6,17 3:14 7:25 9:18 10:11 11:6 14:14,16 16:1,7,10 18:3,11 19:13 21:6,11,12,14 21:18 22:2,5,12
Aetna's 1:7 2:2 21:7
affect 8:8 14:22
age 8:21 11:3 14:19
agree 9:17 23:10
Agreed 6:9
agreement 6:19 7:2 23:8
ahead 18:14,15
ahold 2:13
aimless 14:16
and/or 8:4
Angeles 23:14
animosity 13:7
answer 12:10,11 15:13 16:7
ANTON 1:21 25:5
anybody 3:23 14:15
anymore 11:22
anyway 9:15
apologize 5:9
appeal 2:4 4:16 5:24 8:19 9:9,10 9:19,23,24 12:6 13:17 14:14 16:1,16 18:1,23,25 19:3,15 21:3,16 22:6,11,23,24,25 23:6
Appeals 5:4 8:6 9:21 11:2 16:25 22:10,24
APPEARANCES 1:9
appellate 5:8 9:13,22 19:6 20:19 21:22
appreciate 20:5
appropriate 8:33 13:5 20:20
appropriately 16:5
approval 6:1 7:3 13:1,2 21:19
approve 10:11 18:5,6
approved 11:24 23:3
approving 4:19
aside 9:6 22:4
asked 12:22,23 15:24
asking 7:16 11:15 13:8 15:16 19:14
assignees 7:19
Associates 2:3 21:22 22:22
assume 11:7
Atlanta 2:13 23:14
attached 4:24
attention 6:19
attorneys 2:3

**B**

B 1 21 25:5
back 3:16 8:9 9:15 11:3,4 12:12 14:6,23 17:12 18:13 22 14,16 22:18,19
bad 8:20 10:20
baffling 17:5
bankrupt 15:1
Based 5:25,25 24:2
basically 7:16

**C**

basis 2:12 23:21
behalf 2:6,17,19 11:22 16:7 17:15
belabor 11:11
beneficiaries 7:19
benefit 13:9 15:1,11
bill 6:22,24 7:7,24
bottom 12:17 13:11
bound 10:10
branch 7:18
brief 5:3 9:17,25 11:2,8 13:11 14:16 17:17 18:10
briefs 8:11
bring 13:5 18:22
brought 11:22
Brevard 5:21 6:13
Building 1:23 25:6
bunch 10:9
bus 11:23

C 25:1,1
cake 8:22
call 2:1
can't 14:11 20:22
captain 3:21 13:8
caption 21:20
care 14:3 15:14
carefully 18:8
case 1:4 2:4,10,14 3:14,16 5:23 6:3,5,6,7,9 9:18 10:2,18 11:10,13,18,20 12:3,6,15 14:5,17,25 16:13 17:7,14,25 19:3 20:6 22:23,25 23:2,18
cases 3:16 13:12 14:11,20,23 15:2 16:25
cent 12:8
cents 7:18 8:18
cetera 17:22
certainly 10:20 20:14
certified 5:20 8:13,16 18:18
certify 25:2
chance 3:2
chances 16:3 18:6
checked 19:2
choice 15:16
choices 14:7
Christian 1:16 2:15
Cigna 3:15,15 16:11,12,13 18:5 21:13
Circuit 9:14,18 12:10 16:23 17:6
citation 10:10
cited 13:14
cite 13:13
civil 14:8 17:21
claim 4:20 6:15,16,21 7 2,3,6,10 16 7,19,19 22:11
claims 4:20 6:15,16,21 7 2,3,6,10 7:12,13,2 21:17
clarify 19:23 22:9
class 3:4,11,12 5:1,17,19,19 6 4,5 8:13,15,16,17 10:4,12,14 12:1 12:13 18:18 21:19 23:2,4
clear 13:10 20:2 21:14 22:12
client 7 6,6,24 8:17 9:3 14:25 16:4 20:3
clients 3:17 8:16 18:16,21 19:16
client's 14:18,22
close 3:10
coercive 17:21
come 14:11 15:23 16 10 18:5,6 20:4
coming 22:16
common 8:2
complaint 5:1,17 7:16
comply 7:25 15:18 14:7
confess 7:17
conflict 8:15
considering 14:22
construe 14:5,8 15 7 17 20,21 18:2 22:19 23:9
continue 15:25

**D**

contract 7:18 8:1
contracts 7:17
copy 13:25 24:4
corner 4:11
corporal 13:9
correct 2:18 6:15 7:9,13
counsel 2:20 4:24 5:8 13:19 14:15 15:9 20:20 23:19
count 7:16,16,22
country 14:24
couple 11:3 14:19
course 15:17 24:1
courtroom 11:21 12:5 14:20
Courts 9:13 16:25 19:6
co-counsel 2:21,22
criminal 17:20
Crutcher 2:8
currently 11:18

D

date 7:3 25:5
days 5:13 8:21 11:3 14:19
deal 19:10
Dealing 7:21
decided 17:6
declaration 2:11
declaratory 7:16,22 8:4
declare 7:17
defendant 5:17 15:19 19:15
defendants 9:10 14:1 17:2,11 21:6
definition 5:17 6:4,5
depleted 22:17
detail 17:22
didn't 3:2 8:9,20 16:2
different 3:9 19:7 20:14
dilemma 3:20 4:8 8:24 10:7
direct 6:19 20:23 22:5 23:5
directing 22:21
dismiss 14:5 16:24 17:22 18:11 19:13 20:7 21:3,16,24 22:5 23:6
dismissal 2:5 5:24 13:24 14:2 15:10 20:3,24 23:1
dismissed 2:11 5:23 10:1
disputes 10:10
disrespect 19:20
distinction 3:11
District 3:15,15 5:4 8:6 11:2 19:16,17 23:24
drafted 8:1
driver 11:23
due 18:10
Dunn 2:7

**E**

E 25:1,1
earlier 14:6
easier 11:1
easy 16:21
eat 6:22
Edward 1:11 2,21
effect 3:18
either 14:9
EKG 1:11 2:3,19,23 3:4,6 21:22 22:21 23:8
eleven 13:9
Eleventh 9:14,18 12:10 16:23 17:6 20:4,8
emergency 1:7 2:2 4:25,25 5:2 22:18 23:19,20,21,23,23
enjoin 1:7 11:22 16:18 19:18
enjoined 12:21 14:5 17:14

contrast 7:18 8:1
contrasts 7:17
copy 13:25 24:4
corner 4:11
corporal 13:9
correct 2:18 6:15 7:9,13
counsel 2:20 4:24 5:8 13:19 14:15 15:9 20:20 23:19

**F**

F 25:1
feet 17:6,14
facts 11:12
factual 2:12 19:10
faking 12:7
faith 8:20 10:20 22:16,17
far 3:11 6:11 7:22
Federal 1:22,23 2:9 12:8,11 21:20,21 25:6,6
FEDERICO 1:8
feel 10:21
file 1:3 5:3 9:25 10:1 14:16,25 23:3,22,25
filed 2:3 3:14 4:16 7:8 10:3 12:6 12:23 13:17 23:18 25:5
final 11:25 13:2,2 21:18
finally 16:10 18:5
find 11:20
finding 12:24
fine 14:7
fixing 4:5
first 3:21 21:15
flew 11:3
flies 11:4
Florida 1:1,6 6:3,24 8:2,6 9:13 22:25
follow 20:20
following 13:14
force 14:1 17:24
foregoing 25:2
forth 11:10
forum 13:5
forward 12:16 14:14
found 8:17
Foundation 21:13
Fourth 5:4 8:6 11:2 19:16,17 23:24
frankly 10:25
Friday 5:6,7 18:22 19:16
front 12:12,13,14 19:25 22:14,20 23:20,22
full 4:2
furnishes 2:11
further 12:1
future 8:5

**G**

Gibson 2 7 11:6
given 13:23 20:2
go 4:9 7:23 14 6,11,14,25 16:13 18:13,14,15
goes 17:18
going 2:23 3:16 4:10,13 9:2,10 9:11,12,15,21,23,25 10:1,9,12 15:23 16:9,10,13 18:4,6,7,11 19:12 20:7 22:6 23:14,20
good 22:16,17
Grab 2:25
greater 10:15
gross 17:6

Greenberg 2:15
grounds 10:19

**H**

M 1:11
has 2:10
happen 9:10 15:3 18:7
happened 6:2
happens 16:23 22:17
harm 3:14
Health 21:18 22:5
Healthcare 21:14,15
hear 9:1
heard 22:10
hearing 13:18 14:4 22:19
host 4:7
help 20:22 23:11
Here's 9:5
held 23:9
honestly 10:3
Honor 2:8,24 6:19 11:5,9 15:6
   21:25 22:8,9 23:10
HONORABLE 1:8
horns 8:24
hospital 18:22
Humana 1:4 21 23:4
hundreds 5:14 9:3

**I**

impact 5:14
important 11:7 14:21
importantly 5:13 17:18
inclined 3:21,23 10:22
included 7:11 21:10
including 16:1 18:1
injunction 12:1,16,18 13:4,16,21
   13:23 14:9 15:15,17,24 16:8
insurance 7:18
interests 14:18,22
interim 13:18
intervene 12:6
involves 22:13
isn't 3:9
issue 3:3 14:10 15:15 16:4,14
   17:1
issued 10:3 17:19
issues 2:14 9:2,12 12:20 14:21
   17:11,16 19:10
I-90 23:13

**J**

all 14:7
ailing 4:4
JANUARY 1:6
Jeffrey 1:10 2:20
Jene 1:1 2:22
judge 1:8 3:5 4:4,5 5:21,22,23
   6:22 7:12,17 8:10 10:24 12:19
   12:23 15:23 16:17,21,22 20:16
   21:9 22:1,14 23:12
judgment 11:23 13:3,24 20:3
jurisdiction 13:4 15:19
Justice 1:23 25:6

**K**

keep 22:16
keeping 12:1
kind 3:19 7:10 10:11
know 3,3 4:1 9:20 10:15 14:20
   15:19 18:5 19:6 21:23 22:16
   23:24 24:3
knowledge 12:3
knows 21:15

**L**

labeled 5:3
language 6:4 20:25
law 4:2 13:10 14:8 15:10
laws 6:25
lawyers 3:22 10:22 13:7 22:22

lead 2:20 4:10
leader 4:7
learned 4:6
learning 15:23
lecture 2:25
legal 14:21
length 11:11
letting 4:1 23:24
let's 3:3 4:9 20:25
liability 8:6
Liggio 1:10 2:20,20,24 3:5,7,10
   3:20 4:1,4,12,15,18,21,24 5:6
   5:11,16,23 6:2,10,15,18 7:9,12
   7:15,22 8:12,24 9:5,8 10:2,7
   10:14,17,19,24 14:13 15:12,13
   15:21 16:12 17:3,5,9 18:3,8,12
   18:15,19,21,24 19:1,4,7,12,15
   19:20 20:5,10,14,18 21:1,4,9
   22:1,8,18 23:5,7,12
litigant 12:11 22:12
litigating 14:17 17:10
litigation 1:4 2:2 21:20
live 17:14
local 23:19
longer 6:9 13:1
look 13:11 18:8
looked 6:18 20:15
looking 13:19 22:19
Los 23:14
lot 13:8 15:2
lower 19:11 22:25

**M**

M 1:10
made 19:23
making 15:7
Managed 1:4 2:1
manager 3:15 25:3
MDL 1:4
mean 12:11 15:17
meaningless 3:19
means 12:9,15 14:9
medical 6:4 7:24
member 3:4 10:14
members 8:14 10:12 12:1,13
   23:2
mentioned 14:19
merely 19:24
merit 12:25
merits 12:24 16:17 17:10 20:3
   23:1
met 8:25
Mineel 1:2,6,25 25:7
Miguel 1:14 2:7 11:5
million 14:24
mode 23:16
modify 15:24
monitor 14:16 17:16
more 17:5
MORENO 1:8
motion 1:7 2:3,12 4:25 15:7 21:2
   11:20 23:6,18,23
move 12:16
moved 13:2
moving 21:23
multi-district 21:20

**N**

named 6:5 11 19 18:17
Nonfeld 1:16 2:15,15
nationwide 21:19 23:4
Naval 4:6
necessary 8:19
need 23:9
net 3:18
never 19:18 22:10 23:15,22
new 4:3,23,25 10:19 22:11,11
   23:18
night 3:11
non-emergency 23:18
non-MDL 9:10
non-physicians 11:16

non-physicians 9:6
non-settled 14:23
Northeast 1:24 25:7
notice 3:3 12:22
notifies 21:17
November 7:24
number 13:12 22:25

**O**

obeying 13:25
object 1:19 10:14 16:12
objected 3:7 4:15,16 12:5
objections 16:4
objector 10:16
obligation 17:17
obligations 5:18
observer 23:15
obviously 9:17 18:5
October 7:4,7
Official 1:22 25:6
old 8:22
once 15:15
ongoing 7:6
operation 8:1
opportunity 17:12
opt 3:6,7 4:1,3 8:7,9 10:5,12 12:7
   15:9 23:3
opted 8:9 11:13,14
opting 8:14
order 2:3 3:18 8:23 13:4 17:18
   19:25 20:15,23 24:2
ordered 13:15 19:12
ordering 18:12
outcome 9:18

**P**

P 1:11
Page 6:19 7:1 12:17 13:11,11,12
papers 11:10 12:4
parenthetical 13:14
part 4:23
participate 17:12
participating 7:20
particular 2:4 20:23
parties 18:20,21
partner 2:22
party 7:19 13:15 17:13 19:1,17
   21:17 22:11
pay 6:25
pending 9:18 11:13,18,19
people 10:9 14:17 15:8,9 24:3
period 6:20 7:21
phase 5:7
physician 6:22,23 11:19,20,21
physicians 6:5,8,12,17 16:7
   22:13
plaintiff 11:17,19,20 22:21
plaintiff's 11:16 18:17
plaintiff's 13:7
Plan 21:15
plans 4:6
pleas 12:3
plowing 10:19
point 8:5 15:5
position 8:1 11:10 13:6
potential 6:10 11:17
power 10:21 17:4
practical 10:25 16:22
practice 2:9
practices 2:10
prejudice 20:4,6,10,11 22:6
preliminary 12:1
present 7:23 22:6
pretty 5:10 11:10
prevail 20 6,8
principle 11:7
private 9:11
pro 2:10
probably 3:2 15:2 16 10 17 1
problem 3:13 6:11 8:12,14 9.16
   10:2,6
procedural 6:24

Procedure 21:22
proceeding 12:19
proceedings 25:3
proffered 19:24
promise 18:9
prompt 6:25
proper 8:17 14:3 15:7
presents 6:9,13 15:25,25 16:6
   16:15 17:25
prosecuted 3:17
prosecuting 2:4 12:2
provided 4:24 5 16
providers 6:6,11 7 20
prudent 8:18
Prudential 21:13,15
punish 13:8
punished 15:8
purported 5:19 8:14
purpose 3:14
pursuant 21:21
pursuing 16:18
put 3:25 15:20 23:19,20
putting 9:6 22:4

**Q**

question 16:6,9
questions 13:5 15:14
quick 4:3
quotation 13:13

**R**

R 1:15 25:1
raise 17:15-
raised 9:12 16:5
ready 4:12
really 15:16 16:8,25 18:20
reason 23:1
reasons 11:9
refusing 14:5
regular 24:1
related 16:19
release 6:15
released 4:20 6:20,21 7 2 8 3
relevant 13:13
relief 13:19 15:7
remains 14:17
Remand 19:9
REPORTED 1:19
Reporter 1:22 4:4 25:6
represent 5:18
representative 5:19 8:18
requirements 6:24
requires 15:10
resolve 9:1
resolved 9:13
respectfully 8:19
respond 5:12
responding 17:17
response 5:2
responsibility 4:2
rest 2:25
restate 11:12
restraint 16:18
retain 13:6
reverse 17:7
reverses 9:14
reviewed 19:11
right 4:14 5:9 8:10 9:11 10:22,23
   14:10 15:3,12 17 16 21 8
   22:15
RFR 25:5
RFR-CP 1:21
rule 12:24 17:1 21:21,23
ruled 12:24 16:17
Rules 21:22
ruling 8:4,4 9:11 12 19 17 11
   20:21 22:13

**S**

safe 23:13 24:6
salient 11:12



sanction 3:21,23 10:22
sanctions 3:24 13:19
saying 8:22
says 12:16
SCHWARTZ 1:21 25:5
see 8:25 9:2 10:5 16:15,23 20:25
    21:11,13 22:15
seek 5:18
seeking 2:11 17:20
seen 14:1 23:15
send 19:5
served 13:22,23
service 6:24
services 6:23
set 11:10
settled 14:21 23:3
settlement 3:4,17 4:17,19 6:18
    7:1,4,11 10:11 11:24 12:3,23
    13:10 14:12 15:1,11,18 16:19
    17:8,9 21:19 23:5
Shane 23:4
ship 3:22 13:9
short 3:3
show 14:23
sign 15:10
silent 23:15
similar 23:17
simple 13:6
simply 16:22
sir 20:18 21:4
sit 2:23 14:23
sitting 9:22
situation 14:4 15:20
Smarck 1:15 2:8
solution 16:22
somebody 12:2
sorry 19:20
sought 12:6
SOUTHERN 1:1
speak 2:23 9:2
specifically 2:2
stage 13:2
standing 6:10 10:16,22 16:14
standpoint 11:1
state 2:10 3:11,16 4:19 5:1,21 6:4
    6:5,6 8:2 9:9 12:11,15,19
    14:25 15:25 16:13,22 19:25
    20:9 22:25
statement 14:6
States 1:1,8 13:13
statutes 7:25
stay 9:17,21,23 12:22,23 14:14
    16:23,25
stayed 12:20
stays 16:8
Ste 1:23 25:6
Stephen 1:13 2:8
stipulate 14:2
stipulation 13:24 15:10 17:24
    19:24 20:14,17 21:1,3,11,13
    22:1
stipulations 20:12
Street 1:24 25:7
subject 6:24 13:16
submits 6:22,23
submitted 7:7,24 20:13
substantive 12:20 17:11
substitute 19:1,17
subterfuge 22:12
successful 12:9
sued 10:12
suggest 9:5,16
suggestion 9:8
suit 11:22
Supreme 6:3 10:3 13:13
sure 14:16 18:24 19:4 20:19 21:9
syllable 13:15
Syngenta 10:2

T 25.1,1
take 3:23 4:1,7 5:13 11:8 15:2

21:2
taken 17:23
talk 18:14 20:19
talking 18:16
talks 7:2
tell 4:4,8,22 5:16 6:12 17:21,25
    20:15 23:20
telling 10:16 11:21
terrible 3:22
Thank 10:24 11:5 15:6 23:12
That's 19:14
thing 3:19 10:9 18:7
things 3:16
think 5:6 7:22 9:21 10:17,19 11:1
    16:11,13,16 17:13,17 18:4,15
    19:22 21:9 23:23
thinking 15:21 21:7
third 7:19
thought 2:13 8:18
time 8:20,22,23 7:21,23 9:7 11:8
    23:23
Tobin 5:22,23 16:17 22:14
today 5:7,8 22:7 23:6
tomorrow 5:4
transcript 17 24:5
transcription 25:3
Travers 2:16
Trial 18:21 19:5,9
trip 23:13 24:6
Tropin 23:15
True 4:20
truth 20:16
try 4:13
trying 8:23
twenty 5:13
two 3:22 7:16 23:24

U
ultimately 13:17
uncomfortable 15:20
underlying 9:9
understand 4:22
unfair 17:18
United 1:1,8 13:13
useful 2:14
U.S 21:14

V
vacate 15:17,18
vehicle 19:24
versus 23:4
view 14:13 23:8
Villaraos 6:3
violated 7:17

W
want 6:17 13:6,18,20,21 14:25
    15:8 17:1 18:14 19:9 20:2
    22:11,18
wanted 16:24
Washington 23:14
way 4:9,10 10:21 14:18 15:22
    16:16
went 19:19
Wennda 1:10 2:3 3:4,6 21:22
    22:21 23:8
Williams 2:22 3:5
WILLIAMS-RHOADS 1:11
wins 13:17
won't 11:11
word 20:17
wording 20:20
words 13:15 17:21
work 3:22
world 19:7
wouldn't 8:10 19:5
wrestled 3:12 8:7
wrestling 16:14
writing 8:10
wrong 20:12

year 7:5 10:3
York 23:18
young 3:22

Z
Zubersky 1:11 2:21 12:5 23:5

0
00-MDL-1334 23:4
01 6:13
01-016184-02 23:1
016184-02 6:13

1
1st 7:24
10 13:12
1061 1:23 25:6
1334 1:4

2
2 7:18
2001 3:16 7:8,10,11,14,15
2003 7:25
2004 1:6
23rd 7:4

3
30th 7:7
305/523-5118 1:25 25:7
33133 1:25 25:7

4
4343-3655 22:23
4th 1:24 25:7
4:00 23:6

7
7 1:6
7th 5:7
73 6:20 7:1
74 7:1

9
9 12:17 13:11,12
9th 5:6,9 18:10
9.300(a) 21:21
99 1:24 25:7

# EXHIBIT H

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

4 Park Plaza  Irvine, California 92614-8557
(949) 451-3800
www.gibsondunn.com

mestrada@gibsondunn.com

**January 16, 2004**

| | |
|---|---|
| Direct Dial | Client No. |
| (202) 955-8257 | T 03710-00170 |
| Fax No. | |
| (202) 530-9616 | |

## VIA FACSIMILE AND OVERNIGHT DELIVERY

Lee Squitieri, Esq.
Squitieri & Fearon, LLP
420 Fifth Avenue, 18th Floor
New York, New York 10018

      Re:   *Jordan S. Josephson, M.D., P.C. v. Aetna Life Insurance Company, et al*
           *Case No. 03603662 and*
           *Jordan S. Josephson, M.D., P.C. v. Chickering Claims Administrations,*
           *Inc., et al, Case No. 03603661*

Dear Mr. Squitieri:

On December 12, 2003 we wrote you a letter demanding that Dr. Josephson immediately dismiss Aetna from the above referenced actions currently pending in New York state court. To date Aetna has not yet been served with the complaints in these actions. However, you have not responded to my letter, nor have you dismissed Aetna from the actions. As explained in my December 12, 2003 letter, by commencing the New York actions, Dr. Josephson is in violation of the injunction issued by the United States District Court of Florida in *In Re Managed Care Litigation*, MDL 1334 (Master-File NO. 00-1334-MD-MORENO).

On January 7, 2004 Judge Moreno issued an order directing counsel for another physician group, Westside EKG, to immediately dismiss an action they had filed in Florida state court. Like Dr. Josephson, that physician group is a class member and was seeking to prosecute released claims. Aetna was forced to file a motion to enjoin Westside EKG from further violation of the court's injunction. At the hearing on that motion, Judge Moreno directed Aetna to "let other people know what I have done here", in an effort to avoid any further motions. Enclosed for your review is a copy of the transcript from that hearing and the Order. At the hearing Judge Moreno observed that to allow prosecution of other cases by class members would render the settlement and his orders "meaningless" Transcript at p. 3:16-19. Judge Moreno

GIBSON, DUNN & CRUTCHER LLP

Lee Squitieri, Esq.
January 16, 2004
Page 2

further instructed counsel for Westside EKG that "I can tell you that you cannot prosecute any case, including an appeal, and, if you do so, you will be in contempt." 17:25-18:2.

By naming Aetna as a defendant in the New York actions, Dr. Josephson (and his counsel) are in contempt of the court's injunction, and they will remain in violation as long as they seek to prosecute those actions against Aetna. In addition, we have determined that another defendant in one of those actions, Chickering Claims Administrator, Inc. ("CCA") is an affiliate of Aetna under the terms of the Settlement Agreement and is, therefore a Released Party. In September 1998, Aetna acquired an ownership interest in that entity and entered into a Managing General Agency and Delegated Claims Agreement. As a result, Aetna possessed substantial power, directly or indirectly, to direct or cause the direction of the management and policies of CCA. Accordingly, Aetna demands that Dr. Josephson immediately dismiss all claims against both Aetna and CCA in the New York actions, and refrain from bringing any such action in the future.

Finally, Dr. Josephson also names Chickering Benefit Planning Insurance Agency, Inc. (CBPIA") as a defendant. There is no basis for the including that entity in this action. CBPIA has no role in the administration of the health plans, claims processing or network management decisions or anything else alleged in this action. The complaint is devoid of any factual allegations against CBPIA. Therefore, Dr. Josephson should dismiss CBPIA from the action.

Please advise us by no later than 12:00 p.m. on January 20, 2003 that Dr. Josephson will dismiss Aetna and CCA from the New York actions. If Dr. Josephson refuses to comply with this demand, Aetna will be forced to seek the appropriate relief from Judge Moreno, including an order to show cause why Dr. Josephson and his counsel should not be held in contempt.

Very truly yours,

Miguel A. Estrada

Miguel A. Estrada

KRN/kkd

30334742_1.doc

**GIBSON, DUNN & CRUTCHER LLP**
A Registered Limited Liability Partnership
Including Professional Corporations
333 South Grand Avenue
Los Angeles, California 90071-3197

TELEPHONE: (213) 229-7000
FACSIMILE: (213) 229-7520

## FACSIMILE TRANSMISSION INFORMATION

January 16, 2004

| TO: | Mr./Ms.: | Lee Squitieri, Esq. |
| | Company: | Squitieri & Fearon, LLP |
| | City, State: | New York, New York |
| | Facsimile No.: | (212) 575-9164 |
| | Main Telephone: | (212) 575-2092 |

FROM: Kevin R. Nowicki    Room: OC-1762    Direct Dial: (949) 451-4288

Our File Number: T 03710-00170    Fax: (949) 475-4763    Email: knowicki@gibsondunn.com

TOTAL NUMBER OF PAGES, INCLUDING COVER LETTER:    13

☞ If you do not receive all the pages transmitted, please contact the facsimile operator immediately at telephone number (213) 229-7180.

Fax Operator: _____

The written message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information. If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, such recipient is prohibited from reading or using this message in any way. If you have received this message by mistake, please call us immediately and destroy the facsimile message.

**SPECIAL INSTRUCTIONS/MESSAGE:**

Document1

P. 1

× × × COMMUNICATION RESULT REPORT ( JAN. 16. 2004  3:23PM ) × × ×

FAX HEADER 1:   GD&C OC
FAX HEADER 2:

TRANSMITTED/STORED : JAN. 16. 2004  3:20PM

| E MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|
| 0574 MEMORY TX | | 15037100017091212575 | OK | 13/13 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL            E-2) BUSY
E-4) NO ANSWER                       E-3) NO FACSIMILE CONNECTION

**GIBSON, DUNN & CRUTCHER LLP**
A Registered Limited Liability Partnership
Including Professional Corporations
333 South Grand Avenue
Los Angeles, California 90071-3197

TELEPHONE: (213) 229-7000
FACSIMILE: (213) 229-7520

**FACSIMILE TRANSMISSION INFORMATION**                    January 16, 2004

TO:   Mr./Ms.:        Lee Squitieri, Esq.
      Company:        Squitieri & Fearon, LLP
      City, State:    New York, New York
      Facsimile No.:  (212) 575-9164
      Main Telephone: (212) 575-2092

FROM:  Kevin R. Nowicki        Room:  OC-1762      Direct Dial:  (949) 451-4288
       Our File Number:  T 03710-00170    Fax:  (949) 475-4763    Email:  knowicki@gibsondunn.com

TOTAL NUMBER OF PAGES, INCLUDING COVER LETTER:   13
☞ If you do not receive all the pages transmitted, please contact the facsimile operator immediately at telephone number (213) 229-7189.

                                Fax Operator:  _____

The written message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information. If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, such recipient is prohibited from reading or using this message in any way. If you have received this message by mistake, please call us immediately and destroy the facsimile message.

SPECIAL INSTRUCTIONS/MESSAGE:

Document1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


IN RE:
HUMANA, INC., MANAGED CARE LITIGATION

Case MDL NO: 1334


MIAMI, FLORIDA
JANUARY 7, 2004

TRANSCRIPT OF AETNA'S EMERGENCY MOTION TO ENJOIN
BEFORE THE HONORABLE FEDERICO A. MORENO,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR WESTSIDE        JEFFREY M. LIGGIO, ESQ..
EKG:                JENE P. WILLIAMS-RHOADS, ESQ.,
                    and EDWARD H. ZEBERSKY, ESQ.



FOR AETNA:          MIGUEL ESTRADA, ESQ.,.

                    STEPHEN R. SMEREK, ESQ.,

                    and CHRISTINE NANFELDT, ESQ.



REPORTED BY:

                    ANTON B. SCHWARTZ, RPR-CP

                    Official Federal Court Reporter

                    Federal Justice Building, Ste. 1061

                    99 Northeast 4th Street

                    Miami, FL  33132 - 305/523-5118

**2**

1   THE COURT: Let me call in Re: Humana Managed Care
2 litigation and specifically Aetna's emergency motion filed for
3 an order enjoining Westside EKG Associates and its attorneys
4 from prosecuting a particular case, now appeal of the
5 dismissal.
6      On behalf of Aetna, who do we have?
7      MR. ESTRADA: Miguel Estrada from Gibson, Dunn &
8 Crutcher. Your Honor. I have with me Stephen Smerek, who is
9 not admitted to practice in Federal Court here, but who
10 practices in the State Court pro hac in the case that we are
11 seeking to get dismissed and whose declaration furnishes the
12 factual basis for our motion.
13      I got ahold of him last night in Atlanta. I thought
14 he might be useful if he were here in case any issues came up.
15      MS. NANFELDT: Christine Nanfeldt with Greenberg
16 Traurig.
17      THE COURT: On behalf of Aetna, as well?
18      MR. ESTRADA: Correct.
19      THE COURT: On behalf of EKG?
20      MR. LIGGIO: I am Jeffrey Liggio. I am lead counsel,
21 and I am here with my co-counsel, Edward Zebersky, and my
22 partner and co-counsel, Jene Williams.
23      THE COURT: Who is going to speak for EKG?
24      MR. LIGGIO: I will, Your Honor.
25      THE COURT: Grab the lectern. The rest of you sit

**3**

1 down.
2      You probably didn't have a chance to file a response,
3 and I know it is short notice, but let's get down to the issue.
4      Is Westside EKG a member of the settlement class?
5      MR. LIGGIO: Yes, and, Judge --
6      THE COURT: Did Westside EKG opt out?
7      MR. LIGGIO: We objected. We did not opt out and we
8 are --.
9      THE COURT: There is a different, isn't there?
10      MR. LIGGIO: Yes, there is, and although the
11 distinction as far as how it affects the state class action and
12 this class action was one we wrestled with.
13      THE COURT: The problem I am having with this, it is
14 not just this one case -- what is the purpose of Aetna or, for
15 that matter, Cigna, because Cigna is also a defendant in the
16 state case that you all filed back in 2001, if things are going
17 to be prosecuted, then there is no settlement, and what is the
18 net effect of my order?
19      It was kind of a meaningless thing.
20      MR. LIGGIO: The dilemma that we had, and let me say
21 first, if you are inclined to sanction us, I am the captain of
22 the ship. I have two terrific young lawyers that work with me,
23 and if you are inclined to sanction anybody, I am here to take
24 the sanctions.
25      THE COURT: I always put that at the end.

**4**

1      MR. LIGGIO: I am letting you know that, that I take
2 full responsibility.
3      THE COURT: Don't be so quick at it because the Court
4 Reporter will tell you I am more of a jailing Judge than a
5 fining Judge.
6      MR. LIGGIO: I learned when I was a plebe at the Naval
7 Academy that as the leader you take the heat.
8      Let me tell you our dilemma.
9      THE COURT: Let's go through it in this way, and that
10 way, what I am going to do is that I will lead you into a
11 corner.
12      MR. LIGGIO: I am ready.
13      THE COURT: I am going to try. You did not opt out.
14 Right?
15      MR. LIGGIO: We did not. We objected.
16      THE COURT: You objected and you filed an appeal of
17 the settlement.
18      MR. LIGGIO: We have.
19      THE COURT: By my approving the settlement, your state
20 claims have been released. True?
21      MR. LIGGIO: Yes and no.
22      THE COURT: The yes I understand. Tell me the no
23 part.
24      MR. LIGGIO: Counsel provided you attached to his
25 emergency motion, although it is not an emergency, our

**5**

1 complaint in the state class action.
2      THE COURT: Whether it is an emergency or not, it was
3 labeled as one. There is a brief that you have to file by
4 tomorrow before the Fourth District Court of Appeals, and
5 unless there is another extension --
6      MR. LIGGIO: I think it is Friday. It is the 9th.
7 Today is the 7th. We have until Friday and I was on the phone
8 with appellate counsel today.
9      THE COURT: The 9th, I apologize. You are right, but
10 that is groundrules.
11      MR. LIGGIO: Yes, it is.
12      THE COURT: They have to respond, unless they get
13 extensions, seventy days, but, more importantly, I have to take
14 care of this because of the impact it may have on hundreds of
15 other cases.
16      MR. LIGGIO: Let me tell you why again. They provided
17 the complaint, and the definition of the class that our clients
18 seek to represent, and there are some obligations as a
19 purported class representative, even if the class has not yet
20 been certified --
21      THE COURT: What did the State Judge do in Broward
22 County, Judge Tobin?
23      MR. LIGGIO: Judge Tobin dismissed the case, and so we
24 are on appeal in that dismissal.
25      THE COURT: Based upon what? Based upon this

**6**

1 approval?
2     MR. LIOGIO:  No, no.  What happened was, there was a
3 new Florida Supreme Court case named Villazon, and there is
4 some language in there, but our class definition in the state
5 case is not just physicians.  Our class definition in the state
6 case is all medical providers.  We may have in the state
7 case --
8     THE COURT:  So, what you have to do is, the physicians
9 can no longer prosecute that case.  Agreed?
10     MR. LIOGIO:  There will be a potential standing
11 problem as far as the other providers.
12     THE COURT:  Tell me yes or no.  The physicians in Case
13 No: 01--016184-02, Broward County, cannot prosecute the case,
14 can they?
15     MR. LIOGIO:  As to the release claims, correct.
16     THE COURT:  Well, what other claims are there by
17 physicians?
18     MR. LIOGIO:  I have looked at the settlement
19 agreement, and I direct your attention, Your Honor, to Page No.
20 73, as to what has been released, and the time period for
21 claims that have been released.
22     Judge, any time a physician submits a bill for
23 services, that is a new claim.  Any time a physician submits a
24 bill for service subject to the Florida procedural requirements
25 of the prompt pay laws, that is a new claim.

**8**

1 drafted in the contract, by operation under our position under
2 the common law of the State of Florida, that is a claim that
3 has not been released in this case, and that is a claim that
4 may be affected by a liability ruling and/or declaratory ruling
5 at some point in the future when we get it back from the
6 Florida Fourth District Court of Appeals.
7     So, we wrestled with, do we opt out and does that
8 affect --
9     THE COURT:  Why didn't you opt out?  If you opted out,
10 you wouldn't be before me right now.  You would be writing your
11 briefs.
12     MR. LIOGIO:  The problem we have is, even though the
13 class had not been certified, are we then -- do we then have a
14 problem with are we opting out other purported members of the
15 class.  Is there a conflict there, and even though our
16 clients -- the class had not been certified, and the Judge had
17 not found that our client had been a proper class
18 representative, we thought that the prudent cause of action was
19 to object, respectfully, and, if necessary, appeal, which we
20 have.  We didn't do it in bad faith.
21     THE COURT:  A few days ago, someone said about that
22 old saying, you cannot eat your cake and have it, too, which is
23 the appropriate order, and that is what you are trying to do.
24     MR. LIOGIO:  Well, we are on the horns of a dilemma.
25     THE COURT:  You see what a mess this is.  How do I

**7**

1     Page No. 74 or 73, I should say, in the settlement
2 agreement talks about that the claims that have been released
3 are the claims that have accrued up to the date of the approval
4 of the settlement, which in your Court was October 23rd of this
5 past year.
6     My client has ongoing claims as do -- if my client
7 submitted a bill October 30th --
8     THE COURT:  But your case was filed in 2001.
9     MR. LIOGIO:  That is correct.
10     THE COURT:  So, 2001, what kind of claims are there in
11 2001 that are not included in this settlement?
12     MR. LIOGIO:  None of those past claims, Judge.  That
13 is correct.
14     THE COURT:  So, what is the 2001 case all about?
15     MR. LIOGIO:  The 2001 case was all about -- it is a
16 two count complaint, basically.  A declaratory count asking the
17 Judge to declare that the conduct violated the contract of
18 insurance.  No. 2, there is a breach of contract cause of
19 action as third party beneficiaries, not as assignees and not
20 as participating providers.
21     THE COURT:  Dealing with what period of time?
22     MR. LIOGIO:  I think as far as the declaratory count
23 especially, it may go on to the present time.
24     If my client submitted a medical bill November 1st of
25 2003, and Aetna did not comply with the statutes which are

**9**

1 resolve -- I will hear from whoever, Mr. Estrada or whoever is
2 going to speak on those issues -- but see how this could --
3 just like there is someone like your client, there are hundreds
4 of others.
5     MR. LIOGIO:  Here's what I suggest.
6     THE COURT:  I am putting aside the non-physicians for
7 the time being.
8     MR. LIOGIO:  Here is the suggestion.  The
9 underlying -- I should not say that -- the state court appeal,
10 we have non-MDL defendants.  That appeal is going to happen.
11     There is going to be a ruling on those private right
12 of action issues that were raised below.  That is going to be
13 resolved by the Florida Appellate Courts.
14     If, in the event, the Eleventh Circuit reverses you,
15 we are going to be back there, anyway.
16     What I suggest, if there is a problem, since they
17 don't want to obviously do a brief, we will agree to stay our
18 case against Aetna, pending the outcome of the Eleventh Circuit
19 appeal.
20     THE COURT:  I don't know whether you can actually have
21 a stay is a Court of Appeals.  I don't think they are going to
22 be able to do that, because that Appellate Court is sitting
23 there and they have an appeal, they are not just going to stay
24 an appeal.
25     They are going to say, "File your brief.  If you don't

10

1 file it, it is going to be dismissed."
2        MR. LIGGIO: The problem is under the Syngenta case
3 that the Supreme Court issued last year, we honestly filed our
4 class action --
5        THE COURT: You are the one who did not opt out. See.
6 That's the problem.
7        MR. LIGGIO: It is a dilemma.
8        THE COURT: You cannot do both because, if not, I am
9 going to have a bunch of other people doing the same thing.
10 There are bound to be disputes later on between other doctors.
11        So, what kind of a settlement did Aetna get when they
12 are going to be sued by all these class members who did not opt
13 out?
14        MR. LIGGIO: But if a class member did not object --
15        THE COURT: I don't know whether you have greater
16 standing as an objector. That is what you are telling me.
17        MR. LIGGIO: I think so.
18        THE COURT: In which case --
19        MR. LIGGIO: Are we plowing new grounds? I think we
20 are. It was not done in bad faith. It certainly was not done
21 to abuse your power in any way, and, again, if you feel
22 inclined to sanction any lawyers, I am standing right here.
23        THE COURT: All right.
24        MR. LIGGIO: Thank you, Judge.
25        THE COURT: Mr. Estrada, frankly, from a practical

11

1 standpoint, I have to think that it is easier just to do the
2 brief before the Fourth District Court of Appeals.
3        Mr. Estrada was here a couple of days ago, flew back,
4 flies back in here.
5        MR. ESTRADA: Thank you, Your Honor. Miguel Estrada
6 for Gitano and Aetna.
7        THE COURT: I assume the principle is more important
8 than the time it would take to do one brief.
9        MR. ESTRADA: For several reasons, Your Honor. Our
10 position in this case is pretty much set forth in our papers.
11 I won't belabor it at length.
12        Just let me restate a few of the salient facts. They
13 could have opted out. They had a case pending. They could
14 have opted out. They did not do so.
15        THE COURT: You are not asking me to do anything to
16 the non-physician plaintiffs.
17        MR. ESTRADA: If they have a potential plaintiff,
18 which they don't currently have in the pending case, who is not
19 a physician, everyone who is a named plaintiff in the pending
20 case is a physician, but if they can find a plaintiff who is
21 not a physician, I would not be in your courtroom telling you
22 to enjoin them anymore than if they brought a suit on behalf of
23 a bus driver.
24        I am here because the settlement has been approved.
25 There is a final judgment and there is, in addition, an

12

1 injunction that you entered keeping class members from further
2 prosecuting claims, and, in this case, we have somebody who had
3 plenty of actual knowledge of the settlement.
4        We gave them all the papers. They came into your
5 courtroom. Mr. Zebersky was here and objected ably. They
6 filed an appeal. They sought to intervene in the case here,
7 and by doing all of that, by failing to opt out, what they did
8 was cast their lot in Federal Court.
9        What that means is, if they should be successful in
10 the Eleventh Circuit, the answer is no, now they get to
11 litigate in Federal Court -- I mean in State Court. The answer
12 is, they will be back in front of you, and they will have a
13 claim in front of you, but they will still be class members in
14 front of you.
15        What that means is that their state case is gone.
16 There is an injunction that says they may not move forward with
17 it, and at the bottom of Page 9 --
18        THE COURT: What did you do with the injunction in the
19 State Court proceeding where the Judge entered a ruling on the
20 substantive issues? Why don't you have that be stayed or
21 enjoined?
22        MR. ESTRADA: We asked for a stay. We filed a notice
23 of your settlement and asked for a stay. The Judge did not
24 rule on it because he ruled on the merits of the claim, finding
25 that there was no merit.

13

1        Now that we are no longer at the preliminary approval
2 stage, but we have moved to final approval and there is a final
3 judgment, and now that you have, in addition, entered an
4 injunction with an order that you retain jurisdiction, this is
5 the appropriate forum to bring these questions.
6        Our position is very simple. I don't have any
7 animosity for plaintiffs' lawyers. I get along with them very
8 well. I am not here asking you to punish the captain or the
9 corporal on the ship. All I want is the benefit of our
10 settlement, and the law on this is very clear.
11        If you look at Page 9 of our brief, the bottom of Page
12 9, and Page 10, we have cited any number of cases from the
13 Supreme Court of the United States, with the relevant quotation
14 following the citation in a parenthetical, which all of them
15 say in words of one syllable a party who is ordered to do
16 something by a Court or is the subject of an injunction, even
17 if it is filed on appeal and even if he ultimately wins, must
18 comply in the interim, and all I want from this hearing -- I
19 don't relish looking for sanctions against counsel. All I
20 want --
21        THE COURT: You want the injunction.
22        MR. ESTRADA: We served them. We already have an
23 injunction. They are not obeying it, and we served them when
24 you entered your judgment with a stipulation of dismissal,
25 which we have given you. I have another copy.

**14**

1    THE COURT: I have seen it. I can't force them to
2 stipulate to dismissal, can I?
3    MR. ESTRADA: Well, if it is a proper contempt
4 hearing, yes, you may, because if the situation is, I have
5 enjoined you to dismiss the case, and you are refusing, then I
6 will go back to the statement that you made earlier, the
7 choices then become jail or fines until they comply.
8    That is the law of civil contempt, and either the
9 injunction means something or it does not, and you are
10 absolutely right; that we are here because this is, and you are
11 that will come up again and again, and having the cases go away
12 is the essence of our settlement.
13    If you took the view that Mr. Liggio had, they would
14 stay the appeal only as to Aetna. It would go forward as to
15 anybody else, and what I would have to do, as counsel for
16 Aetna, is I would file an amicus brief or monitor or make sure
17 that the people that remain in the case are litigating it in a
18 way that does not harm my client's interests.
19    You mentioned that I was here a couple of days ago,
20 and you know that we have cases in this courtroom that we have
21 not settled, and whenever there are important legal issues that
22 you are considering that may affect my client's interests in
23 non-settled cases, I show up and I sit in the back, and if I
24 have to do that for one million dollars all over the country
25 who want to file a case in State Court, my client will go

**15**

1 bankrupt, and that is not the benefit of our settlement.
2    THE COURT: You would be probably take a lot of cases
3 for that to happen, but that is all right.
4    MR. ESTRADA: But --
5    THE COURT: I get the point.
6    MR. ESTRADA: Thank you, Your Honor, and, as I said,
7 it is a proper motion for contempt. I don't relish making it.
8 I don't want people to be punished, but I would like them, as
9 people who, with the advice of counsel, elected not to opt out,
10 to sign our stipulation of dismissal, as the law requires, so
11 we may get the benefit of our settlement.
12    THE COURT: All right. Mr. Liggio.
13    MR. LIGGIO: I have nothing more, but I will answer
14 any questions.
15    THE COURT: Well, once I issue the injunction, do I
16 really have any choice? What you are asking me to do is to
17 vacate the injunction, which, of course, would mean I would
18 have to vacate the settlement.
19    I don't even know if I have jurisdiction to do that.
20 You have put me in a very uncomfortable situation.
21    MR. LIGGIO: It seems that maybe -- I was thinking
22 about this on the way down -- and maybe we should have -- I am
23 learning as I am going, Judge. Maybe we should have come to
24 you when the injunction was entered and asked you to modify it
25 so that we could prosecute or continue to prosecute the state

**16**

1 appeal against all the defendants, including Aetna, and I
2 didn't do that.
3    THE COURT: But the chances are -- you were here for
4 or your client was here for the objections. So, the issue was
5 raised appropriately.
6    The question is whether you can actually prosecute a
7 claim on behalf of physicians against Aetna, and the answer is
8 you really cannot and the injunction stays.
9    Now, the question is, what are you going to do with
10 Aetna, and this is going to probably come up if I finally
11 approve Cigna. So, you might as well think about that.
12    MR. LIGGIO: We did not object to Cigna, and so I
13 think Cigna is going to go away, even in the state case, but we
14 have a standing issue there that we are wrestling with.
15    THE COURT: I don't see how you can prosecute this
16 appeal, because I have to think of this case the same way as if
17 you were before Judge Tobin and he had not ruled on the merits.
18    I would restrain you and enjoin you from pursuing that
19 claim, any claim, related to this settlement. I have done it.
20 I would have to do that.
21    Now, if it was a Trial judge, there would be an easy,
22 practical solution. The State Judge would simply say, "I will
23 stay it. See what happens before the Eleventh Circuit," if he
24 wanted to do that or he would dismiss it.
25    Courts of Appeals don't really stay cases. They

**17**

1 probably want to rule on the issue.
2    You have other defendants, do you not?
3    MR. LIGGIO: We do.
4    THE COURT: I have no power over them.
5    MR. LIGGIO: What is baffling to me is, if the moon
6 were green, but, if, in fact, the Eleventh Circuit decides to
7 reverse you in this case --
8    THE COURT: On the settlement.
9    MR. LIGGIO: So there is no settlement any more, and
10 they are litigating on the merits, we will, against the other
11 defendants, have a ruling on those substantive issues and maybe
12 back and they will not have had an opportunity to participate.
13    THE COURT: I think if they are not a party to that
14 case, because I have enjoined you, they will live with the fact
15 that someone else on behalf of another defendant will raise
16 those issues and maybe he will monitor, but right now he is
17 under the obligation of responding to your brief, and I think
18 it is unfair, and, more importantly, it goes against the order
19 that I issued.
20    It is not criminal contempt that he is seeking. It is
21 just civil contempt. In other words, coercive, to tell you you
22 have to cease and desist. You have to dismiss it, whatever it
23 takes.
24    I cannot force someone to enter into a stipulation,
25 but I can tell you that you cannot prosecute any case,

18

1 including an appeal, and, if you do so, you will be in
2 contempt.
3    MR. LIGGIO: Against Aetna.
4    THE COURT: That is the only one. I think it is going
5 to come up, if I finally approve Cigna, obviously. We know it
6 is going to come up, and the chances are if I approve it, the
7 same thing is going to happen.
8    MR. LIGGIO: We will look at that very carefully now
9 ourselves, I promise.
10    THE COURT: So, you have a brief due on the 9th.
11 Between now and then, are you going to dismiss against Aetna?
12    MR. LIGGIO: You are ordering me to do so, and we will
13 go back --
14    THE COURT: Go ahead and talk to him, if you want.
15    MR. LIGGIO: I don't think -- if I go ahead, because
16 we are talking to others -- we have other clients that just are
17 not as named plaintiffs.
18    THE COURT: Has the class been certified?
19    MR. LIGGIO: No.
20    THE COURT: So then they are not really parties.
21    MR. LIGGIO: They are clients. They are not parties.
22 But I may be able to, before Friday, bring in the hospital.
23    THE COURT: In an appeal?
24    MR. LIGGIO: Sure.
25    THE COURT: How can you do that on an appeal?

19

1    MR. LIGGIO: We can substitute a party and we have
2 checked --
3    THE COURT: While the case is up on appeal?
4    MR. LIGGIO: Sure.
5    THE COURT: Wouldn't they send it to the Trial Court
6 and say -- I know Appellate Courts are always accused --
7    MR. LIGGIO: This is a different world.
8    THE COURT: They don't like to do any of that. They
9 say, "Remand it to the Trial Court to do whatever you want."
10 They don't like to deal with factual issues that have not been
11 reviewed by a lower Court.
12    MR. LIGGIO: I am going to do exactly what you ordered
13 me to do. We will dismiss Aetna only.
14    THE COURT: That's all I am asking.
15    MR. LIGGIO: As a defendant in the appeal before
16 Friday by my clients. If the Fourth District lets us
17 substitute a party, then that is between the Fourth District --
18    THE COURT: I would never enjoin another Court to do
19 anything. We went through that here.
20    MR. LIGGIO: Again, I am sorry. It was no disrespect
21 to you at all.
22    THE COURT: I accept that and I think it is evident.
23    MR. ESTRADA: Just to clarify, there is no magic in
24 the stipulation that we proffered. It was merely a vehicle for
25 accomplishing what the order already does in front of the State

20

1 Court.
2    I just want to make clear that given that you have
3 entered a judgment on the merits, the dismissal of my client
4 has to be with prejudice.
5    MR. LIGGIO: I would appreciate it being without
6 prejudice just in case we prevail in the Eleventh. We are
7 going to dismiss them.
8    THE COURT: But if you prevail on the Eleventh, you
9 get to come before me, not about the State Court.
10    MR. LIGGIO: It will with prejudice. It will be with
11 prejudice.
12    THE COURT: What is wrong with the stipulations that
13 they submitted?
14    MR. LIGGIO: The stipulation is certainly different
15 than the Court order. I have not looked at it, to tell you the
16 truth, Judge.
17    THE COURT: So, without the word stipulation --
18    MR. LIGGIO: What I would like to do -- yes, sir.
19 What I would like to do is just make sure I talk to appellate
20 counsel for the appropriate wording. I will follow your
21 ruling.
22    THE COURT: I can't help you with that because what I
23 should do is direct you to enter a particular order of
24 dismissal.
25    What language don't you like about that? Let's see.

21

1    MR. LIGGIO: Stipulation.
2    THE COURT: We will take stipulation out. Motion to
3 dismiss against --
4    MR. LIGGIO: Yes, sir.
5    THE COURT: Against --
6    MR. ESTRADA: The Aetna defendants.
7    THE COURT: I was thinking how many Aetna's are there.
8 There is only one here. Right?
9    MR. LIGGIO: I think so, Judge. We will make sure
10 they are all included.
11    THE COURT: I don't even see Aetna in the stipulation
12 Where is that. Where is Aetna in the stipulation that I have?
13 I see Prudential, Cigna, Foundation. There it is.
14    So, to make it clear, against Aetna, U.S. Healthcare
15 Inc., first known as Prudential Healthcare Plan, Inc.
16    So, it would be a motion to dismiss the appeal against
17 that party, and it would say notifies the Court that all claims
18 against Aetna Health, Inc., have been extinguished by final
19 approval of the nationwide class action settlement in the
20 Federal multi-district litigation caption, and we have that
21    Accordingly, pursuant to Rule 9.350(a) of the Federal
22 Rules of Appellate Procedure, Westside EKG Associates -- I
23 don't know. Would that rule be the one about moving to
24 dismiss?
25    MR. ESTRADA: Yes, Your Honor.

22

1       MR. LIGGIO:  It is a stipulation, Judge.
2       THE COURT:  No.  I am taking Aetna out.  It has
3   nothing to do with it.  This is between you and I.  We are
4   putting that aside.
5       I will direct you to dismiss Aetna Health, Inc., from
6   the present appeal with prejudice, and it is going to have to
7   be done today.
8       MR. LIGGIO:  Yes, Your Honor.
9       MR. ESTRADA:  Your Honor, just to clarify something.
10   I never heard of a Court of Appeals in which you can add
11   a new party with a new claim on appeal, and all I want to make
12   clear that if there is a subterfuge to litigate against Aetna
13   the very ruling that involves physicians only, that came from
14   Judge Tobin, we will be back in front of you.
15      THE COURT:  We will see.  Right now, everybody is
16   acting in good faith.  If you keep coming back, you know what
17   happens with that good faith account?  It gets depleted.
18      MR. LIGGIO:  I don't want to be back in an emergency
19   hearing looking at contempt again.  We will not be back in
20   front of you.
21      THE COURT:  I am directing the plaintiff, Westside EKG
22   & Associates, through their lawyers, who have been here in
23   Court, to dismiss the appeal in Case No: 4D03-3533, which is
24   the appeal before the Fourth District Court of Appeals in the
25   State of Florida.  It is the appeal of the lower case number

23

1   01-016184-02, a dismissal on the merits, and the reason for
2   that is because this case -- the members of the class did not
3   opt out and settled and I approved the settlement in this
4   nationwide class action in Shane versus Humana, 00-MDL-1334,
5   and I direct Mr. Liggio, Mr. Zebersky and Ms. Williams to file
6   the motion to dismiss the appeal no later than today at 4:00.
7       MR. LIGGIO:  Done.
8       THE COURT:  In view of the agreement by Westside EKG
9   to do that, there is no need to hold anyone in contempt.
10      MR. ESTRADA:  We agree, Your Honor.
11      THE COURT:  Anything else that I can help you with?
12      MR. LIGGIO:  Thank you, Judge.
13      THE COURT:  Have a safe trip on I-95 and to wherever
14   you are going, Atlanta, Los Angeles, Washington, and I have
15   never seen Mr. Tropin be so silent here.  He is an observer.
16   He is taking the Estrada mode.
17      MR. ESTRADA:  We may have another similar
18   non-emergency motion in a case that has been filed in New York.
19      THE COURT:  If you put emergency, the local counsel
20   will tell you, you put emergency in front of me, and I am going
21   to act on it in an emergency basis.
22      MR. ESTRADA:  I will never file in front of you an
23   emergency motion that I don't think is an emergency.
24      I am just letting you know I may have one or two more
25   in which there is still some time.  I will just file them in

24

1   the regular course.
2       THE COURT:  Based upon this order, what you should do
3   is let the other people know what I have done here.
4       MR. ESTRADA:  I will get an expedited copy of the
5   transcript.
6       THE COURT:  Have a safe trip.

25

1       C E R T I F I C A T E
2       I hereby certify that the foregoing is an accurate
3   transcription of proceedings in the above-entitled matter.
4
5   _____
                DATE FILED          ANTON B. SCHWARTZ, RPR
6                                   Official Federal Court Reporter
                                    Federal Justice Building, Ste. 1061
7                                   99 Northeast 4th Street
                                    Miami, FL  33132 - 305/523-5118
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## A

able 9:22 18:22
ably 12:5
above-entitled 25:3
absolutely 14:10
abuse 10:21
Academy 4:7
accept 19:22
accomplishing 19:25
account 22:17
accrued 7:3
accurate 25:2
accused 19:6
act 23:21
acting 22:16
action 3:11,12 5:1 7:19 8:18 9:12 10:4 21:19 23:4
actual 12:3
add 22:10
addition 11:25 13:3
admitted 3:9
advice 15:9
Aetna 1:14 2:6,17 3:14 7:25 9:18 10:11 11:6 14:14,16 16:1,7,10 18:3,11 19:13 21:6,11,12,14 21:18 22:23,12
Aetna's 1:7 2:2 21:7
afloat 8:8 14:22
age 8:21 11:3 14:19
agree 9:17 23:10
Agreed 6:9
agreement 6:19 7:2 23:8
ahead 18:14,15
ahold 2:1
anteon 14:16
and/or 6:4
Angeles 23:14
animosity 13:7
answer 12:10,11 15:13 16:7
ANTON 1:21 25:5
anybody 3:23 14:15
anymore 11:22
anyway 9:15
apologize 3:9
appeal 2:4 4:16 5:24 8:19 9:9,10 9:19,23,24 12:6 13:17 14:14 16:1,16 18:1,23,25 19:3,15 21:3,16 22:6,11,23,24,25 23:6
Appeals 3:4 8:9 9:21 11:2 16:25 22:10,24
APPEARANCES 1:9
appellate 5:8 9:13,22 19:6 20:19 21:22
appreciate 20:5
appropriate 8:23 13:5 20:20
appropriately 16:3
approval 6:1 7:3 13:1,2 21:19
approve 14:11 18:5,6
approved 11:24 23:3
approving 4:19
aside 9:6 22:4
asked 12:22,23 15:24
asking 7:16 11:15 13:8 15:16 19:14
assignee 7:19
Associates 2:3 21:22 22:22
assume 11:7
Atlanta 3:13 23:14
attached 4:24
attention 6:19
attorneys 2:3

## B

B 1:21 25:5
back 3:16 8:5 9:15 11:3,4 12:12 14:6,22 17:12 18 13 22:14,16 22:18,19
bad 8:20 10:20
baffling 17:5
bankrupt 13:1
Based 5:25,25 24:2
basically 7:16

## B

beals 2:12 23:21
behalf 2:6,17,19 11:22 16:7 17:15
belabor 11:11
beneficiaries 7:19
benefit 13:9 15:1,11
bill 6:22,24 7:7,24
bottom 12:17 13:11
bound 10:10
branch 7:18
brief 5:3 9:17,25 11:2,8 13:11 14:16 17:17 18:10
briefs 8:11
bring 13:5 18:22
brought 11:22
Broward 5:21 6:13
Building 1:23 25:6
bunch 10:9
bus 11:23

## C

C 25:1,1
cake 8:22
call 2:10
can't 14:1 20:22
captain 3:21 13:8
caption 21:20
care 14:21 5:14
carefully 18:5
case 1:4 2:4,10,14 3:14,16 5:23 6:3,5,6,7,9,12,13 7:8,14,15 8:3 9:18 10:2,18 11:10,13,18,20 12:2,6,15 14:5,17,25 16:13,16 17:7,14,25 19:3 20:6 22:23,25 23:2,18
cases 5:15 13:12 14:11,20,23 15:2 16:25
cent 12:6
cause 7:18 8:18
cease 17:22
certainly 10:20 20:14
certified 5:20 8:13,16 18:18
certify 2:12
chapter 3:2
chances 16:3 18:6
checked 19:2
chooses 15:16
chosen 14:7
Christian 3:16 2:15
Class 3:15,15 16:11,12,13 18:5 21:13
Circuit 9:14,18 12:10 16:23 17:6
citation 13:14
cited 13:12
civil 14:8 17:21
claim 6:22,25 8:2,3 12 13,24 16:7,8,19 23:11
claims 6:20 8:15,16,21 7:2,3,6,10 7:12 13:2 23:17
clarity 19:23 22:9
class 3:4,11,12 5:1,17,19,19 6:4,5 8,13,14,16,17 10:4,12,14 12:1 15:3,18 18:1 21:19 23:3,4
clear 13:10 20:2 21:14 22:12
client 7:6,4,14 8:17 9:1 14:25 16:4 20:5
clients 5:17 8:16 18:16,21 19:16
client's 14:18,22
close 5:10
coercive 17:21
come 14:11 15:21 16:10 18:5,6 20:9
coming 22:16
comment 22:16
complaint 3:1,17 7:16
comply 7:25 13:18 14:7
conduct 7:17
conflict 8:15
confidentiality 14:22
contempt 14:3,18 15:7 17 20,21 18:2 22:19 23:9
continue 15:25

## D

date 7:3 23:5
days 5:13 8:21 11:3 14:19
deal 19:10
Dealing 7:21
decider 17:6
declaration 2:11
declaratory 7:16,22 8:4
declare 7:17
defendant 3:15 17:15 19:15
defendants 9:10 16:1 17:2,11 21:6
definition 5:17 6:4,5
depicted 22:17
did 17:22
didn't 3:2 8:9,20 16:2
different 19:9 16:7 20:14
dilemma 3:20 4:8 8:24 10:7
direct 6:19 19:22,23 22:5 23:5
directing 22:21
dismiss 14:5 16:24 17:22 18:11 19:13 20:7 21:3,16,24 22:5,23 23:6
dismissed 2:5 5:24 13:24 14:2 15:10 20:3,24 23:1
dismissed 2:11 5:23 10:1
dispute 10:10
disrespect 19:20
distinction 3:11
District 1:1,1,8 5:4 8:6 11:2 19:16,17 22:24
DIVISION 1:2
doctrine 10:10
doing 10:9 12:7
dollars 14:24
don't 4:3 9:17,20,21,25 10:15 11:18 12:20 13:6,19 15:7,8,19 16:15,23 18:13 19:8,10 20:25 21:11,23 22:18 23:23
drafted 8:1
driver 11:23
due 18:10
Dunn 2:7

## E

E 25:1,1
earlier 14:6
earlier 11:1
easy 16:21
eat 8:22
Edward 1,11 2:21
effort 3:18
either 14:8
EKG 1:11 2:3,19,23 3:4,6 21:23 23:21 23:8
elected 13:9
Eleventh 9:14,18 12:10 16:23 17:6 20:6,4,8
emergency 1:7 2:3 4:25,25 5:2 22:18 23:19,20,21,23,23
enjoin 1:7 11:22 16:18 19:18
explained 12:21 14:5 17:14

## C

Gibson 2:7 11:6
given 13:25 20:2
go 4:9 7:23 14:6,11,14,25 16:13 18:13,14,15
going 2:23 3:16 4:10,13 9:2,10 9:11,12,15,21,23,25 10:1,9,12 15:23 16:9,10,13 18:4,6,7,11 19:12 20:7 22:6 23:14,20
good 22:16,17
Grab 2:25
greater 10:15
green 17:6

Greenberg 2:15
grounds 10:19

**H**

H 1:11
has 2:10
happen 9:10 15:3 18:7
happened 6:2
happens 16:23 22:17
harm 14:18
Health 21:18 22:5
Healthcare 21:14,15
hear 9:1
heard 22:10
hearing 13:18 14:4 22:19
heat 4:9
help 20:22 23:11
Here's 9:5
held 23:9
honestly 10:3
Honor 2:8,24 6:19 11:5,9 15:6
    21:25 22:8,9 23:10
HONORABLE 1:8
horns 8:24
hospital 18:22
Humane 1:4 2:1 23:4
hundreds 5:14 9:3

impact 5:14
important 11:7 14:21
importantly 5:13 17:18
inclined 3:21,23 10:22
included 7:11 21:10
indicating 16:1 18:1
injunction 12:1,16,18 13:4,16,21
    13:23 14:9 15:13,17,24 16:8
insurance 7:18
interests 14:18,22
interim 13:16
intervene 12:6
involves 23:13
isn't 3:9
issue 3:3 14:10 15:15 16:4,14
    17:1
issued 10:3 17:19
issues 2:14 9:2,12 12:20 14:21
    17:11,16 19:10
I-98 23:13

**J**

jail 14:7
jalisy 4:4
JANUARY 1:6
Jeffrey 1:10 2:30
Jose 1:11 2:22
judge 1:8 3:5 4:4,5 5:21,22,23
    6:22 7:12,17 8:16 10:24 12:19
    12:23 15:23 16:7,21,22 20:16
    21:9 22:1,14 23:12
judgment 11:25 13:3,24 20:3
jurisdiction 13:4 15:19
Justice 1:23 25:6

keep 22:16
keeping 12:1
kind 3:19 7:10 10:11
knew 3:3 4:1 9:20 10:15 14:20
    15:19 18:3 19:6 21:23 22:16
    23:24 24:3
knowledge 12:3
knows 21:15

**L**

labeled 3:3
language 6:4 20:25
law 8:2 13:10 14:8 15:10
laws 6:25
lawyers 3:22 10:22 13:7 22:22

lead 2:20 4:10
leader 4:7
learned 4:6
learning 15:23
lectern 2:25
legal 14:21
length 11:11
letting 4:1 23:24
let's 3:3 4:9 20:25
liability 8:4
Liggio 1:10 2:20,20,24 3:5,7,10
    3:20 4:1,6,12,15,18,21,24 5:6
    5:11,16,23 6:2,10,15,18 7:9,12
    7:15,22 8:12,24 9:5,8 10:2,7
    10:14,17,19,24 14:13 15:12,13
    15:21 16:12 17:5,5,9 18:3,8,12
    18:15,19,21,24 19:1,4,7,12,15
    19:20 20:3,10,14,18 21:1,4,9
    22:1,8,18 23:5,7,12
litigate 12:11 22:12
litigating 14:17 17:10
litigation 12:4 22:2 21:20
live 17:14
local 23:19
longer 6:9 13:1
look 13:11 18:8
looked 6:18 20:15
looking 19:19 22:19
Los 23:14
lot 12:8 15:2
lower 19:11 23:25

**M**

M 1:10
magic 19:23
making 15:7
Managed 1:4 2:1
manner 3:15 23:3
manufacturer 3:19
MDL 1:4
mean 12:11 15:17
meaningless 14:9
medical 6:6 7:24
member 3:4 10:14
members 8:14 10:12 12:1,13
    23:2
mentioned 14:19
merely 19:34
merit 12:25
merits 12:34 16:17 17:10 20:5 3
    21:17 22:11
met 16:3
met 25:5
Miami 1:24,25 25:7
Miguel 1:16 2:7 11:5
million 14:24
minds 23:16
modify 15:24
monitor 14:16 17:16
more 17:5
MORGAN 1:8
motion 1:7 2:3,12 4:25 15:7 21:2
    21:16 23:4,18,23
move 12:16
moved 13:2
moving 21:23
multi-district 21:20

**N**

named 6:5 11:19 18:17
Neefish 1:16 2:15,15
nationwide 21:19 23:4
Naval 4:6
necessary 8:19
need 23:16
net 23:10
never 19:18 22:10 23:15,22
new 6:3,23,25 10:19 22:11,11
    23:18
night 3:11
non-emergency 23:18
non-MDL 9:10
non-physician 11:16

non-physicians 9:6
non-unified 14:23
Northeast 1:24 25:7
notice 3:3 12:22
notifies 21:17
November 7:24
number 13:12 22:25

**O**

obeying 13:23
object 1:19 10:14 16:12
objected 3:7 4:15,16 12:5
objections 16:4
objector 10:16
obligation 17:17
obligations 5:18
observer 23:15
obviously 9:17 18:5
October 7:4,7
Official 1:22 25:6
old 8:22
once 15:15
ongoing 7:6
operation 8:1
opportunity 17:12
opt 3:6,7 4:13 8:7,9 10:5,12 12:7
    15:9 23:3
opted 8:9 11:13,14
opting 8:14
order 2:3 3:18 8:23 13:4 17:18
    19:25 20:15,23 24:2
ordered 13:15 19:12
ordering 18:12
outcome 9:18

**P**

P 1:11
Page 6:19 7:1 12:17 13:11,11,12
paragraph 11:10 12:4
parenthetical 13:14
part 4:23
participate 17:12
participating 7:20
particular 2:6 20:23
parties 18:20,21
partner 2:22
party 7:19 13:15 17:13 19:1,17
    21:17 22:11
pay 6:25
pending 9:18 11:13,18,19
people 10:9 14:17 15:8,9 24:3
period 6:20 7:21
phase 5:7
physician 6:22,23 11:19,20,21
physicians 6:5,8,12,17 16:7
    22:13
plaintiff 11:17,19,20 22:21
plaintiffs 11:16 18:17
plaintiff's 13:7
Plan 21:15
plate 4:6
plenary 12:3
plowing 10:19
point 8:3 15:5
position 8:1 11:10 13:6
potential 6:10 11:17
power 10:21 17:4
practical 10:25 16:22
practice 2:9
practices 2:10
prejudice 20:4,6,10,11 22:6
preliminary 13:1
present 7:25 22:6
proxy 5:10 11:10
prevail 20 6,8
principle 11:7
private 9:11
pro 2:10
probably 3:2 15:2 16:10 17:1
problem 3:13 6:11 8:12,14 9:16
    10:2,6
procedural 6:24

Procedure 21:22
proceeding 12:19
proceedings 25:3
proffered 19:24
promise 18:9
prompt 6:25
proper 8:17 14:3 15:7
prosecute 6:9,13 15:25,25 16:6
    16:15 17:25
prosecuted 3:17
prosecuting 2:4 12:2
prosecution 4:24 5 16
providers 6:6,11 7:20
prudent 8:18
Prudential 21:13,15
punish 13:8
punished 15:8
purported 5:19 8:14
purpose 3:14
pursuant 21:21
pursuing 16:18
put 3:25 15:20 23:19,20
putting 9:6 22:4

question 16:8,9
questions 13:5 15:14
quick 4:3
quotation 13:13

**R**

R 1:15 25:1
raise 17:15
raised 9:12 16:5
ready 15:16 16:8,25 18:20
reason 23:1
reasons 11:6
reducing 14:3
regular 24:1
related 16:19
release 6:15
released 4:20 6:20,21 7 2 8 3
relevant 13:13
relish 13:19 15:7
remain 14:17
Remand 19:9
REPORTED 1:19
Reporter 1:22 4:4 25:6
request 5:18
representative 5:19 8:18
requirements 6:24
requires 15:10
resolve 9:1
resolved 9:13
respectfully 8:19
respond 5:12
responding 17:17
response 3:2
responsibility 4:2
rest 1:25
restore 11:12
restrain 16:18
retain 13:4
reverse 17:7
reverses 9:14
reviewed 19:11
right 4:14 5:9 8:10 9:11 10:22,23
    14:10 15:3,12 17 16 21 8
    22:15
RPR 25:5
RPR-CP 1:21
rule 12:24 17:1 21:21,23
ruled 12:24 16:17
Rules 21:22
ruling 6,4,4 9:11 12 19 17:11
    20:21 22:13

**S**

safe 23:13 24:6
salient 11:12



sanction 3:21,23 10:22
sanctions 3:24 13:19
saying 8:22
says 12:16
SCHWARTZ 1:21 25:5
see 8:25 9:2 10:5 16:15,23 20:25
   21:11,13 22:15
seek 5:18
seeking 2:11 17:20
seen 14:1 23:15
send 19:5
served 13:22,23
service 6:24
services 6:23
set 11:10
settled 14:21 23:3
settlement 3:4,17 4:17,19 6:18
   7:1,4,11 10:11 11:24 12:3,23
   13:10 14:12 15:1,11,18 16:19
   17:8,9 21:19 23:1
Shane 23:4
ship 3:22 13:9
short 3:3
show 14:23
sign 15:10
silent 23:15
similar 23:17
simple 13:6
simply 16:22
sir 20:18 21:4
sit 2:15 14:21
sitting 9:21
situation 14:4 15:20
Smorek 1:15 2:8
solution 16:22
somebody 12:2
sorry 19:20
sought 12:4
SOUTHERN 1:1
speak 2:23 9:2
specifically 2:2
steps 13:2
standing 6:10 10:16,22 16:14
standpoint 11:1
state 2:10 3:11,16 4:19 5:1,21 6:4
   6:5,8 8:2 9:9 12:11,15,19
   14:25 15:25 16:13,22 19:25
   20:9 23:25
statement 14:6
States 1:1,8 13:13
statutes 7:25
stay 9:17,21,23 12:22,23 14:14
   16:13,15
stayed 12:20
steps 16:2
Ste 1:23 25:6
Stephen 1:15 2:8
stipulate 14:2
stipulation 13:24 15:10 17:24
   19:24 20:14,17 21:1,2,11,13
   22:1
stipulations 20:13
Street 1:24 25:7
subject 6:24 13:16
submits 6:22,23
submitted 7:7,24 20:13
substantive 12:20 17:11
substitute 19:1,17
subterfuge 22:12
successful 12:9
sued 10:12
suggest 9:5,16
suggestion 9:8
suit 11:22
Supreme 6:3 10:3 13:13
sure 14:16 18:24 19:4 20:19 21:9
syllable 13:15
Syngenta 10:2

T 25:1,1
take 3:23 4:1,7 5:13 11:8 15:2

21:2
takes 17:23
talk 18:14 20:19
talking 18:16
talks 7:2
tell 4:4,8,22 5:16 6:12 17:21,25
   20:15 23:20
telling 10:16 11:21
terrible 3:22
Thank 10:24 11:5 15:6 23:12
That's 10:6 19:14
thing 3:19 10:9 18:7
things 3:16
think 5:6 7:22 9:21 10:17,19 11:1
   16:11,13,16 17:13,17 18:4,15
   19:22 21:9 23:23
thinking 13:21 21:7
third 7:19
thought 2:13 8:18
time 6:20,22,23 7:21,23 9:7 11:8
   23:25
Toble 5:22,23 16:17 22:14
today 5:7,8 22:7 23:6
tomorrow 9:4
transcript 1:7 24:5
transcription 25:3
Travers 2:16
Tried 18:21 19:5,9
trip 23:15 24:6
Tropin 23:15
True 4:20
truth 20:16
try 4:13
trying 8:23
twenty 5:13
two 9:22 7:16 23:24

U
ultimately 13:17
uncomfortable 15:20
underlying 9:9
understand 4:22
unfair 17:18
United 1:1,8 13:13
unski 2:14
U.S 21:14

V
wants 15:17,18
vehicle 19:24
versus 23:4
view 14:13 23:8
Villasen 6:3
violated 7:17

W
want 6:17 13:8,18,20,21 14:25
   15:8 17:1 18:14 19:9 20:2
   22:11,18
wanted 10:24
Washington 23:14
way 4:9,10 10:21 14:18 15:22
   16:16
went 19:19
Westside 1:10 2:3 3:4,6 21:22
   23:21 23:8
Williams 2:22 23:5
WILLIAMS-RHOADS 1:11
wine 13:17
won't 11:11
word 20:17
wording 20:20
words 13:15 17:21
work 3:22
world 19:7
wouldn't 8:10 19:5
wrapped 3:12 8:7
wrestling 16:14
writing 1:10
wrong 20:12

Y
year 7:3 10:3
York 23:18
young 3:22

Z
Zabarsky 1:11 2:21 12:5 23:5

0
00-MDL-1334 23:4
01 6:13
01-016184-02 23:1
016184-02 6:13

1
1st 7:24
10 13:12
1061 1:23 25:6
1334 1:4

2
2 7:18
2001 3:16 7:8,10,11,14,15
2003 7:25
2004 1:4
23rd 7:4

3
30th 7:7
305/523-6116 1:25 25:7
33133 1:25 25:7

4
4343-3433 22:23
4th 1:24 25:7
400 23:6

7
7 1:6
7th 5:7
73 6:20 7:1
74 7:1

9
9 12:17 13:11,12
9th 5:6,9 18:10
9.300(a) 21:21
99 1:24 25:7

# TAB 2

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

MDL No. 1334
Master File No. 00-1334-MD-Moreno

IN RE:
MANAGED CARE LITIGATION

-----------------------------------------------------------

THIS DOCUMENT RELATES TO
PROVIDER TRACK CASES

**DECLARATION OF STEPHEN P. FISHER IN SUPPORT OF AETNA INC. AND AETNA U.S. HEALTHCARE INC.'S MOTION FOR AN ORDER FURTHER ENJOINING JORDAN S. JOSEPHSON, M.D., JORDAN S. JOSEPHSON, M.D., P.C., AND THEIR ATTORNEYS FROM VIOLATING THIS COURT'S FINAL APPROVAL ORDERS AND JUDGMENT AND FOR AN ORDER TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT**

I, Stephen P. Fisher declare as follows, under penalty of perjury, pursuant to 28 U.S.C. 1746.

1.     I am currently employed by Aetna Inc.  I am currently a member of Aetna Inc.'s Strategic Systems and Processes organization.  Prior to January 1, 2004, I was a Counsel within Aetna Inc.'s Law Department.  As Counsel, I was actively engaged in matters relating to Aetna Inc.'s (and its subsidiaries and affiliates' (collectively "Aetna")) relationship with the Chickering Group, and was very familiar with the relationship.  Statements in this declaration are based on my personal knowledge and/or review of business records.  I am generally familiar with the transactions described below.  If called as a witness, I could and would competently testify to the statements in this declaration.

2.     The Chickering Group is a trade name for a group comprised of two companies that provide brokerage and third party administrative services for health insurance benefits to students enrolled in colleges and universities nationwide.

3.     Chickering Claims Administrators, Inc. ("CCA") is a corporation providing health insurance administrative services to Aetna Life Insurance Company ("ALIC") and its affiliates as a third party administrator and is part of the Chickering Group.  ALIC is a wholly owned subsidiary of Aetna Inc.

4.     On or about September 4, 1998 ALIC (and its affiliate) entered into a Managing General Agency and Delegated Claims Agreement with CCA and Chickering Benefit Planning Insurance Agency, Inc. (the "Agreement").

5.     Pursuant to the Agreement, ALIC exercised control over the administration and claims management policies and services provided by CCA, on behalf of Aetna, for health plans issued or underwritten by Aetna.

6.     On or about September 4, 1998, Primary Investments Inc., an indirect wholly owned subsidiary of Aetna Inc., acquired 425 shares of the convertible preferred stock of CCA (approximately 47% of such stock) and an option to purchase 100% of the common stock of CCA at a nominal price in relation to the value of CCA.

7.     Aetna maintained that ownership interest through October 24, 2003 and until December 12, 2003 when it acquired, through a wholly owned subsidiary, all of the remaining capital stock of CCA.

8.     As of October 24, 2003, CCA was an affiliate of Aetna, Inc.  As a result of the Agreement and Aetna's ownership interest in CCA, Aetna possessed substantial power, directly or indirectly, to direct or cause the direction of the management and the policies of CCA.  Aetna had guaranteed seats on the board of directors of CCA, equal representation on CCA's Operations Committee, and veto power over certain major decision making of CCA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 16th day of January 2004 at Middletown, Connecticut.

Stephen P. Fisher

40333857 1 DOC

# TAB 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL NO.: 1334
MASTERFILE NO.: 00-1334-MD-MORENO

**IN RE MANAGED CARE LITIGATION**

**THIS DOCUMENT RELATES TO
PROVIDER TRACK CASES**

CHARLES B. SHANE, et al.,

       Plaintiffs,

v.

HUMANA, INC., et al.,

       Defendants.

**AFFIDAVIT OF SERVICE RE JORDAN S. JOSEPHSON**

NEIL MANNING, being duly sworn, deposes and says:

1.  I am an Account Executive, working in the Legal Services Division of Poorman-Douglas Corporation ("PDC"), the settlement administrator in the above-captioned case. I am fully familiar with the actions taken by PDC as described below.

2.  I submit this affidavit of service provide proof of the mailing of the Notice of Class Action and Proposed Settlement ("Notice") and Proof of Claim Form ("Claim Form") to Dr. Jordan S. Josephson.

3.   As described in the Settlement Administrator's Report and Affidavit of Jenny Teston previously filed with this court, one of PDC's responsibilities was to mail the Notice and Claim Form to all class members as defined in the Settlement Agreement.  On July 2, 2003 a Notice and Claim Form was sent to Jordan S. Josephson at two addresses:

> 571 Gracie Station, New York, NY 10021, and
>
> 425 Madison Ave., Fl. 9, New York, NY 10017.

4.   The Notice and Claim Form mailed to the Madison Avenue address was returned undeliverable on August 5, 2003.  Using the National Change of Address Database, PDC researched, but was unable to locate any newer addresses for Jordan S. Josephson.  To date, there has been no communications received by PDC from Jordan S. Josephson.

STATE OF OREGON              )

                               ) ss:

COUNTY OF WASHINGTON )

_____
NEIL MANNING

Sworn to before me this
_13_ day of October, 2003

_Tonya M Hart_
Notary Public

> OFFICIAL SEAL
> **TONYA M. HART**
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 346965
> MY COMMISSION EXPIRES JUNE 18, 2005