UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 1334
Master File No. 00-1334-MD-MORENO

IN RE: MANAGED CARE LITIGATION

_____

THIS DOCUMENT RELATES TO
**PROVIDER TRACK CASES**

_____

AMERICAN DENTAL ASSOCIATION, JAMES B.
SWANSON, D.D.S., MICHAEL B. DAYOUB,
D.D.S., and JOHN W. MILGRAM, D.D.S.,

        Plaintiffs,

v.

AETNA, INC.

        Defendant.
_____/

## ORDER GRANTING IN PART APPLICATION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES

Before the Court is an application for attorneys' fees and expenses brought by counsel for Plaintiffs' American Dental Association, James Swanson, D.D.S., Michael Dayoub, D.D.S., and John W. Milgram, D.D.S. Defendant Aetna, Inc. does not object to class counsel's application. Nevertheless, for the reasons set forth below, the application is granted in part.

### I. BACKGROUND

Class counsel's application for attorneys' fees and expenses arises out of a class action settlement achieved between Class Plaintiffs ("dentists") and Aetna, Inc ("Aetna"). The class action

1

involving dentists was part of a larger multi-district matter consolidated for pretrial purposes before the Court in early 2000. The instant action was originally filed in the Northern District of Illinois on August 15, 2001. Less than three months later, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the action to this Court for pretrial purposes. Upon receipt of the transferred action, this Court designated the action a "tag-along" action and placed it in a civil suspense file.

### A. Physicians' Settlement

In the main litigation, settlement discussions opened between Plaintiffs physicians and Defendant Aetna in September, 2001. Negotiations included 39 meetings and conference calls. Finally, after nearly two years of negotiation, a settlement was reached on May 21, 2003. The Court preliminarily approved the agreement on May 30, 2003 and scheduled a final fairness hearing. On October 14, 2003, the Court held a fairness hearing on the agreement and on October 24, 2003, the Court entered final approval and judgment, determining that the settlement agreement should be approved because it is fair, reasonable, and adequate.

The settlement agreement between physicians and Aetna includes the following provisions. First, the agreement establishes a $100 million fund for payment to class members. Second, the agreement requires that Aetna provide $20 million in funding for a charitable foundation to be administered by class members and various medical associations and aimed at promoting quality healthcare by emphasizing initiatives to enhance the quality of care received by patients. Third, the agreement requires that Aetna make significant investments in claims processes in order to rationalize the payment of claims and streamline the resolution of disputes. Fourth, the agreement requires Aetna to undertake a range of business practice initiatives aimed at facilitating efficient medical practices, efficient and accurate billing submissions and the removal of various

2

administrative requirements. The benefit of the business practices initiatives is estimated at $300 million. Finally, the agreement calls for the payment of attorneys' fees and costs up to the capped amount of $50 million.

### B. Dentists' Settlement

In the instant matter between dentists and Aetna, the parties submitted a settlement agreement for the Court's approval on September 4, 2003. The Court scheduled a hearing for the agreement's preliminary approval for April 21, 2004 and subsequently issued preliminary approval, authorized class notice, and scheduled a final fairness hearing for July 20, 2004. At the final fairness hearing, the Court approved the settlement agreement but deferred ruling on class counsel's application for attorneys' fees and expenses.

The settlement agreement between dentists and Aetna includes the following provisions. First, the dentists' settlement establishes a $5 million fund for payment to class members. Out of the $5 million fund, the agreement requires that Aetna pay $1 million to the American Dental Association Foundation for the specific purpose of benefitting dentists throughout the country. Third, the agreement requires Aetna to undertake a number of business practice initiatives aimed at rationalizing the billing and payment processes for its affiliated dentists. Fourth, the agreement calls for the payment of $1.25 million in attorneys' fees and expenses from a separate fund.

## II. ANALYSIS

As a starting proposition, the Court notes that the American Rule with regard to fee awards is that parties bear their own costs both in the prosecution and defense of their cases. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 (1975). However, a noted exception to the general rule of each party bearing its own costs are "common fund" cases where, as here, attorneys

in a class action create a common fund for the benefit of all class members. The rationale for such an exception springs from principles of quantum meruit, unjust enrichment, and the substantial benefit doctrine. *See Camden I Condominium Association v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) *(citing Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Trustees v. Greenough,* 105 U.S. (15 Otto) 527 (1881); and H.Newberg, *Attorney Fee Awards* § 2.01 at 28-29.

The appropriate method of calculating a common fund fee award is for the Court to award a reasonable percentage of the fund established for the benefit of the class. *Camden I*, 946 F.2d at 774. In determining reasonableness, the Eleventh Circuit has adopted a twelve factor test for courts to consider when selecting a percentage. *Camden I*, 946 F.2d at 772 (adopting standard developed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The Court outlined the following relevant factors: (1) time and labor required; (2) novelty and difficulty of the questions involved; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment; (5) customary fee; (6) whether fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

Further, the Eleventh Circuit noted that the majority of common fund awards should most probably fall between 20% and 30% of the total fund. However, the Court also noted that "[t]here is no hard and fast rule mandating a certain percentage of a common fund". *Id.* at 774. Moreover, the Court in *Camden I* noted that "[i]ndividualization in the exercise of a discretionary power [for fee awards] will alone retain equity as a living system and save it from sterility." *Id.* (quoting *Sprage v. Ticonic National Bank*, 307 U.S. 161, 167 (1939). In addition, the Advisory Committee

Notes to Rule 23(h) caution that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." Fed. R. Civ. P. 23(h), Advisory Committee Notes, 2003 Amendments.

### A. Factor Analysis

Class counsel here petitions the Court for an order approving its application for attorneys' fees in the amount of $1.25 million. In support of its motion, Class counsel has identified seven factors to underline the merits of its application: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill requisite to perform service properly; (4) customary fee; (5) whether fee is fixed or contingent; (6) amount involved and results obtained; (7) reputation, experience and ability of attorneys.

#### 1. Time and Labor Expended

Class counsel contends it has devoted 1,211 hours to the prosecution of this matter, evidencing ample time and labor to justify its fee application. The total lodestar of the fee application is $459,000. The Court notes the hourly rates indicated in the application range from $160 to over $500 per hour. Moreover, the application also includes a petition for 40 hours expended by local counsel at an hourly rate of $500 per hour. However, the Court does not here reach the issues of the reasonableness of the number of hours or the hourly rates charged.

#### 2. Tag-Along Nature of Settlement Agreement

Class counsel's primary argument in support of its application is that the instant action between dentists and Aetna involved factual as well as legal inquiries that were sufficiently novel as to justify its fee application. Further, class counsel contends the factual and legal inquiries were independent of the main litigation between doctors and Aetna. As for the independent factual

inquiries, class counsel claims that the billing and payment processes for dentists is very different than those established by Aetna for physicians. In addition, class counsel points to trade libel and tortious interference claims as examples of independent legal inquiries. Nevertheless, on the issue of the novelty of the factual and legal issues, the Court is unconvinced by class counsel's contentions.

First, the JPML noted in its Conditional Transfer Order that the instant action involved questions of fact which are common to those in the main litigation between physicians and health maintenance organizations. Indeed, had the actions involved independent questions of fact, it is difficult to imagine why the JPML would have transferred the suit from the Northern District of Illinois, where it originated, across the country to the Southern District of Florida. Moreover, as soon as the case was received by this Court, it was designated as a "tag-along" action and placed in a civil suspense file. As a result, the action did not proceed to the discovery phase like the main litigation and the Court never entertained motions to dismiss or to compel arbitration.

Next, the settlement achieved by the settling parties in this action closely mirrors the settlement achieved in the main litigation between physicians and Aetna. First, both settlements include the creation of very similar settlement funds with a portion of the fund earmarked for provider associations. In addition, both agreements include similar initiatives for the reform of Aetna's business practices. Class counsel contends that the business practice initiatives with included in the dentists' settlement are different from the business practice initiatives agreed to in the physicians' settlement. Although technically accurate, the differences appear to result from the general differences between dental and medical practices and do not appear to reflect a fundamental difference in the settlement agreements.

Further illustrating the tag-along nature of the instant settlement agreement, negotiations between dentists and Aetna did not commence until March, 2003, a full year and a half after the initiation of settlement negotiations between physicians and Aetna in September, 2001. Indeed, class counsel notes it commenced settlement negotiations only after learning in early 2003 that Aetna was nearing the conclusion of a settlement with physicians.

Particularly illuminating on the tag-along nature of dentists' settlement are the words of class counsel, D. Brian Hufford, Esq. in his supplemental affidavit in support of the fee application. In speaking of the similarity of the settlement funds created in both the dentists' and physicians' settlement agreements, Mr. Hufford concedes that the settlement fund in the dentists' settlement agreement was "calculated based primarily on a proportionate basis to the physician settlement." Supplemental Affidavit of D. Brian Hufford, ¶ 15.

### B. Percentage Determination

In light of the tag-along nature of the instant settlement agreement, the Court must decline class counsel's request of a fee award in the amount of $1.25 million. Rather, the Court approves an award of $400,000 to class counsel for the payment of attorneys' fees and expenses.

Unlike most common funds, the instant settlement includes two separate funds. First, a fund of $5 million was created solely for the benefit of class members. Separately, a fund of $1.25 million was created for the payment of attorneys' fees and expenses. The complication arises in determining the fee award percentage because technically, the award is not drawn from the common fund, but from a separate fund created for the payment of attorneys' fees and expenses.

Indeed, class counsel's own pleadings reflect the confusing nature of the settlement in that they describe the request of $1.25 million alternatively as a request for an award of 25% and 20%

7

of the common fund. If the $400,000 fee is drawn from the $5 million fund, the award would be 8% of the common fund. However, because the settlement agreement creates two separate funds, the fee award of $400,000 must first be added to the $5 million fund and a percentage must be derived. As a result, the Court finds that class counsel is entitled to a fee award consisting of the reasonable percentage of 7.4% of the consolidated funds.

### III. CONCLUSION

To date, the Court has awarded over $100 million in attorneys' fees and expenses in two separate settlements arising out of this multi-district matter. Nevertheless, the Court takes seriously the Eleventh Circuit's call for individualization and the Advisory Committee's caution that active judicial scrutiny is fundamental to the health of the class action process. Consequently, the tag-along nature of the instant settlement agreement precludes the Court from approving class counsel's application for an award of $1.25 million. Moreover, the Court finds that class counsel is entitled to a fee award of 7.4% of the consolidated settlement funds. Therefore, class counsel is entitled to a fee award of $400,000. Accordingly, it is

**ADJUDGED** that the parties joint motion for approval of class counsel's fee award is hereby GRANTED in part. Hence, class counsel is entitled to attorneys' fees and expenses in the amount of $400,000.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of November, 2004.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

COPIES PROVIDED TO COUNSEL ON
**THE SEPTEMBER 10, 2004 SERVICE LIST**