UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Master File No. 00-1334-MD-MORENO**

IN RE:  MANAGED CARE LITIGATION

_____

THIS DOCUMENT RELATES TO:
**ALL PROVIDER TRACK CASES**

_____/

### ORDER GRANTING IN PART AND DENYING IN PART WELLPOINT'S MOTION TO ENFORCE INJUNCTION AGAINST PLAINTIFFS IN *KANSAS CITY UROLOGY CARE, P.A. v. BLUE CROSS BLUE SHIELD OF KANSAS CITY*

THIS CAUSE came before the Court upon the Motion to Enforce Final Order Approving Settlement and for an Injunction Against the Named Plaintiffs And Their Attorneys in *Kansas City Urology Care, PA v. Blue Cross Blue Shield of Kansas City* **(D.E. No. 5831-1)**, re-filed on March 13, 2008.  The Court has considered the motion, the response, the reply, and the pertinent portions of the record.  It is ADJUDGED that the Motion is GRANTED in part and DENIED in part.

WellPoint asks this Court for an injunction preventing eight physician groups (the "Physician Groups") and one physician organization from participating as plaintiffs in a Missouri lawsuit against WellPoint and other managed health care companies.  That lawsuit is *Kansas City Urology Care, PA v. Blue Cross Blue Shield of Kansas City* (Case No. 0516-CV-04219) filed in the Circuit Court of Jackson County, Missouri.  WellPoint contends that the class settlement between WellPoint and physicians approved by this Court on December 22, 2005 (the "WellPoint Settlement") precludes the Physician Groups and the physician organization from participating in the Missouri *Kansas City Urology Care* lawsuit.

WellPoint also asks this Court for an injunction preventing all of the named plaintiffs in the Missouri lawsuit (the "Respondents") from certifying a class that includes doctors and doctors groups that are bound by the WellPoint Settlement.  The complaint in the Missouri Lawsuit contains a class definition that includes putative plaintiffs that both parties agree opted out of the WellPoint Settlement.  WellPoint is concerned that

the Missouri court will certify a class in that lawsuit that includes putative plaintiffs that released their claims in the WellPoint Settlement.

## ANALYSIS

This Order addresses three issues in turn. The first issue is whether the opt-out notices submitted by each physician in the Physician Groups serve to opt out the Physician Groups as entities or only the individual physicians comprising the Physician Groups. The Court decides that the eight Physician Groups opted out of the WellPoint Settlement. However, the physician organization called Specialty Physicians Alliance, LLC did not opt out of the WellPoint Settlement.

The second issue is whether the WellPoint Settlement releases the claims by Specialty Physicians Alliance. The Court decides that the WellPoint Settlement releases the claims made by Specialty Physicians Alliance in the Missouri Lawsuit.

The third issue is whether the Court should issue an injunction preventing the Respondents from certifying a class in the Missouri Lawsuit that includes putative plaintiffs whose claims against WellPoint were released by the Settlement Agreement. The Court decides that this issue is not ripe until the Missouri court certifies a class.

A.  **ISSUE #1: The Opt-Out Notices Opt Out the Physician Groups.**

The first issue is whether the eight Physician Groups opted out of the WellPoint settlement. Every physician in the eight Physician Groups submitted opt-out notices. The Respondents attached the opt-out notices to their opposition to the motion for injunction. Each opt-out notice contains the following text:

> Pursuant to the procedures set forth in the "Notice of Proposed Settlement of Class Actions with Wellpoint, Inc., of Settlement Hearing to Consider the Proposed Settlement and of your Rights Concerning the Proposed Settlement," the undersigned hereby gives you formal notice, effective immediately, that they choose to opt out of the proposed settlement and do not wish to be a member of the settlement class.

The bottom of the opt-out notices contain (1) the name of the person signing the notice, (2) the name of the

Physicians Group, (3) the address of the Physicians Group, (4) a telephone number, (5) and the Federal Tax ID Number of the Physician Group.

The eight Physician Groups include:

| No. | Group Name | Address | Federal Tax Id No. |
|---|---|---|---|
| 1. | Kansas City OB-Gyn Physicians, PC | 930 Carandelet Drive, Suite 304<br>Kansas City, MO 64114 | 43-0921628 |
| 2. | Head and Neck Surgery of Kansas City, PA | 12200 W. 106th, Suite 310<br>Overland Park, KS 66215 | 48-1141776 |
| 3. | Rockhill Orthopaedics, PC | 6675 Holmes, Suite 360<br>Kansas City, MO 64131 | 43-0924473 |
| 4. | Dickson-Dively Midwest Orthopaedic Clinic, Inc. | 4320 Wornall Road, Suite 610<br>Kansas City, MO 64111 | 43-1424154 |
| 5. | Northland General Surgery, PC | 2750 Clay Edwards Drive<br>Suite 312<br>North Kansas City, MO 64116 | 43-1110795 |
| 6. | Blue Springs Internal Medicine, PC | 220 N.W. R.D. Mize Rd.<br>Blue Spring, MO 64014 | 43-1796449 |
| 7. | Cockerell & McIntosh Pediatrics, PC | 205 West R.D. Mize Road<br>Suite 304<br>Blue Springs, MO 64014 | 43-1467025 |
| 8. | Drisk Fee & Parkins, PC | 2790 Clay Edwards Dr.<br>Suite 600<br>North Kansas City, MO 64116 | 43-0948214 |

This Court holds that the opt-out notices opt out the Physician Groups as entities for the following reasons. The use of the word "they" in the phrase "they choose to opt out of the proposed settlement" indicates that the notices were intended to opt out the Physician Groups. Every doctor in each Physician Group submitted an opt-out notice indicating unanimity among the physicians in their intent to opt out. The opt-out notices contain the Federal Tax ID Number of the Physician Groups. Therefore, the eight Physician Groups listed above are not bound by the WellPoint Settlement. This Order does not decide whether those same opt-out notices opt out the individual doctors in addition to the Physician Groups.

The Respondents also assert that the name plaintiff organization Specialty Physicians Alliance represents the interests of several physician groups that opted out of the WellPoint Settlement. *See* Memorandum in Opposition to WellPoint's Motion to Enforce Final Order **(D.E. No. 4986)** (the "Opposition") at page 2. The Opposition does not contain any opt-out notices for Specialty Physicians Alliance. Respondent's Opposition does not identify which physician groups the Specialty Physicians Alliance represents.[1] Respondent's Opposition also does not identify the legal relationship between Specialty Physicians Alliance and the physician organizations.[2] This Court therefore holds that Specialty Physicians Alliance did not opt out of the WellPoint settlement. This Court does not decide whether those physician organizations represented by Specialty Physicians Alliance opted out of the WellPoint settlement.

**B.    ISSUE #2: The WellPoint Settlement Releases the Claims Brought by Specialty Physicians Alliance.**

The second issue is whether the claims by Specialty Physicians Alliance are released by the WellPoint Settlement. This Court reviewed the Respondent's Fifth Amended Complaint filed in the Missouri Lawsuit. The Missouri Lawsuit asserts two antitrust claims under a Missouri state statute. The complaint alleges that "Defendants, who control a significant portion of the medical insurance market in the Region, and approximately 90% [sic] of the individuals that have HMO/PPO medical insurance coverage in the Region, acted in concert to control the rate of reimbursement for medical care in the Region." *See* Fifth Amended Complaint ¶ 46. The Fifth Amended Complaint further alleges that "[t]he Region is particularly susceptible to price fixing because it is controlled by a few dominant companies who have conspired to

---

[1] The Court, however, noticed that Petitioners attached opt-out notices from four physician groups not mentioned in the Opposition. These physician groups include (1) Orthopaedic & Sports Medicine Consultants, (2) Kansas City Bone & Joint Clinic, Inc., (3) Orthopaedic Professional Association, and (4) Carondelet Orthopaedic Surgeons, P.C.

[2] Footnote 2 on page 2 of Respondent's Opposition states, "[e]xcept for Plaintiff Specialty Physicians Alliance, LLC, which is a physicians organization which represents the interests of multiple practices which have opted out. This distinction is discussed below." The Opposition, however, does not discuss Specialty Physicians Alliance elsewhere in that brief.

cultivate and use their market power to force unconscionable reimbursement rates from doctors with the intent to manipulate prices." *See* Fifth Amended Complaint ¶ 47. The antitrust counts for price fixing (Count 1) and Conspiracy or Combination For Purpose of Monopolizing (Count 2) depend on proof of these factual allegations.

This Court's Order Approving Settlement Among WellPoint, Inc. and Physicians, Physician Groups and Physician Organizations **(D.E. No. 4671)** defines those claims released by the settlement. The first sentence of Paragraph 5 provides in pertinent part:

> The "Released Parties," . . . shall be released and forever discharged by . . . all Class Members . . . (collectively, the "Releasing Parties") from any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands . . . arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in this Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or behalf of other Persons, or to the business practices that are the subject of § 7.

The second sentence of Paragraph 5 begins: "This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim submitted by any Class Member to a Blue Plan[.]"

The use of the word "includes" in the second sentence of Paragraph 5 indicates that the second sentence expands, rather than limits, the scope of the release. The second sentence prevents any Class Member from suing a Released Party over "any aspect of a fee for service claim." The Missouri Lawsuit involves the rate of reimbursement for fee for service claims. The Missouri Lawsuit therefore violates sentence two of Paragraph 5 in the Order Approving Settlement **(D.E. No. 4671)**.

Notwithstanding sentence two of Paragraph 5, this Court further holds that sentence one releases the claims in the Missouri Lawsuit. The first sentence of Paragraph 5 releases all those claims that "are in any way related" to "any of the facts, acts, events . . . [or] representations . . . referenced in the Action." The Missouri Lawsuit involves claims that the defendant insurance companies conspired with other insurance

providers to diminish the rate of reimbursement for insurance claims made by doctors. The *Managed Care Litigation* involves claims that the health insurance companies conspired to improperly deny and diminish insurance claims made by doctors in violation of the federal RICO statute. The claims made in the *Managed Care Litigation* and the Missouri Lawsuit involve related factual allegations. That the *Managed Care Litigation* involves a RICO cause of action is of no moment. The Missouri Lawsuit therefore violates sentence one of Paragraph 5 in the Order Approving Settlement **(D.E. No. 4671)**.

Specialty Physicians Alliance therefore asserts claims released by the WellPoint Settlement. The briefs in this case asks for an injunction preventing the Respondents from prosecuting the Missouri Lawsuit. The Court notices that the complaint in the Missouri Lawsuit includes many insurance companies as defendants. The briefs do not specify if all of these defendant insurance companies are parties to the WellPoint Settlement. It is ORDERED that Specialty Physicians Alliance is enjoined from prosecuting any of the claims in the Missouri Lawsuit against any of the defendants in the Missouri Lawsuit that were party to the WellPoint Settlement. Respondents shall dismiss any such claims within ten days from the date of this Order.

**C.     ISSUE #3: The Issue of Enjoining Those Opt-Out Plaintiffs From Prosecuting Claims on Behalf of Opt-Out Defendants is Not Ripe.**

The third issue is whether this Court should issue an injunction requiring the Respondents (1) to cease representing those putative plaintiffs whose claims were released by the WellPoint Settlement and (2) to amend their class definition in the Missouri Lawsuit to exclude those putative plaintiffs whose claims were released by the WellPoint Settlement. Respondents contend that the issue is not ripe because the Missouri Court has not yet certified a class. This Court agrees with Respondents. This Court will not issue an injunction against Respondents until the Missouri Court has certified a class that includes putative plaintiffs whose claims were released by the WellPoint Settlement. Respondents are advised, however, to pay attention to this Court's ruling in the previous section that the claims in the Missouri Lawsuit are released claims under the WellPoint Settlement.

## CONCLUSION

The Court rules as follows:

1.  The eight Physician Groups listed on page three opted out of the WellPoint Settlement. The motion to enjoin the eight Physician Groups from prosecuting the Missouri Lawsuit is therefore DENIED.

2.  The Specialty Physicians Alliance did not opt out of the WellPoint Settlement. Specialty Physicians Alliance is asserting claims in the Missouri Lawsuit that were released by the WellPoint Settlement. The motion to enter an injunction against Specialty Physicians Alliance is GRANTED. It is ORDERED that Specialty Physicians Alliance is enjoined from prosecuting any of the claims in the Missouri Lawsuit against any of the defendants in the Missouri Lawsuit that were party to the WellPoint Settlement. Respondents shall dismiss any such claims within ten days from the date of this Order.

3.  The motion to enjoin Respondents from prosecuting released claims on behalf of putative plaintiffs who did not opt out of the WellPoint Settlement is DENIED because that issue is not ripe until the Missouri Court certifies a class.

DONE AND ORDERED in Chambers at Miami, Florida, this 4th day of June, 2008.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record