**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Master File No. 00-1334-MD-MORENO**

**MDL NO: 1334**

**IN RE: MANAGED CARE LITIGATION**

_____/

**MANAGED CARE ADVISORY GROUP, LLC'S MOTION TO ENFORCE**
**ARBITRATION SUMMONSES**

Managed Care Advisory Group, LLC ("MCAG"), by and through its undersigned counsel,
files this motion respectfully asking the Court to enforce four Arbitration Summonses.[1]

## I.     INTRODUCTION

In 1999, several class actions were filed on behalf of a class of physicians against CIGNA
and other managed care companies alleging that the companies had engaged in a conspiracy to
deny, delay, and reduce payments to physicians who had submitted claims.  Those cases were later
consolidated into MDL 1334 before this Court.  In 2003, the parties agreed to settle all claims.

During the post-settlement submission of claims, MCAG, the exclusive claims provider
for physicians affiliated with the American Medical Association and approximately twenty state
and local medical societies, learned that CIGNA had breached the settlement agreement through
the improper processing of claims.   In response to MCAG's allegations, the parties negotiated and
entered into a Binding Arbitration Agreement and Confidential Supplemental Agreement and
commenced an arbitration (the "Arbitration") in this District in 2005, first before the Honorable
Edward Davis and, following Judge Davis's passing, now before Thomas G. Schultz (the

---

[1] For the purposes of this Motion, MCAG refers to all Summonses and Subpoenas to
Testify and Present Documentary Evidence at Arbitration Hearing collectively as "Summonses."

"Arbitrator").  The Arbitration is, at long last, approaching a final hearing, hopefully before the end of this calendar year.

With the end in sight, MCAG seeks a court order compelling compliance with four summonses issued by the Arbitrator.  The Summonses were served on third-parties who were responsible and/or involved in processing the claims that form the basis for the claims in the Arbitration.

The parties have met and conferred with the recipients of the Summonses extensively and the witnesses either refuse to provide documents or refuse to attend the hearing pursuant to the Summonses.  (A fifth witness has agreed to comply with his summons and participate in the hearing.)  As set forth below, all of the summoned parties' hearing testimony and the documents requested are material and relevant to the full and fair determination of the issues in the Arbitration. Unless the highly material testimony and documents are obtained at this time, there is a substantial and imminent risk that MCAG and the Arbitrator will be deprived of this material evidence.

MCAG therefore seeks a court order: (a) compelling all summoned parties to comply with the Summonses, and (b) directing them to testify and produce documents at the final hearing before the Arbitrator in the manner specified in the Summonses.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Parties And The Settlement Agreement

In 2003, the plaintiffs in the Multi-District Litigation agreed to settle all claims against CIGNA and memorialized the terms of their agreement in the Settlement Agreement Among CIGNA HealthCare and Physicians (the "Settlement Agreement").  The Settlement Agreement called for, *inter alia*, the establishment of settlement funds, with no cap, against which physician class members could resubmit their claims to be re-adjudicated and paid by CIGNA.  Section

8.3(c)(2) of the Settlement Agreement established a multi-step claims review process.  Functioning properly, the process was supposed to work as follows:

- First, the Settlement Administrator – a company initially known as Poorman-Douglas Corp., now known as Epiq Systems, Inc. (collectively "Epiq") – determined whether a submitted claim was supported by adequate documentation and, if so, sent all documentation to CIGNA.

- Next, CIGNA performed a substantive review of the claim.  If the claim was approved, it was paid.  If the claim was denied, CIGNA assembled and forwarded to the Settlement Administrator a Review File containing all documentation supporting its decision to deny the claim, including, at a minimum, "copies of all records documenting prior CIGNA HealthCare payments" on the claim as well as "all other documents prepared or obtained by CIGNA HealthCare in its initial review of the Proof of Claim Form."

- The Settlement Administrator then examined the Review File.  If it determined that CIGNA failed to meet its burden of proof and provide the documents necessary to compose an adequate Review File under the terms of the Settlement Agreement, then the Settlement Administrator overturned the denial and had to deem the claim approved for payment.  If CIGNA provided an adequate Review File and the basis for its denial was "administrative," then the Settlement Administrator reviewed the denial and decided whether to sustain or overturn the denial.  If CIGNA provided an adequate Review File and the basis for its denial was "clinical," then the Settlement Administrator sent all documentation to the Independent Review Entity ("IRE") – a company called Imedecs/Millennium Healthcare Consulting, Inc.

- Upon receiving from the Settlement Administrator the file for a clinical denial, the IRE was to conduct its own analysis of the validity of CIGNA's clinical basis for denial and decide whether that denial should have been sustained or overturned.

In sum, under the terms of the Settlement Agreement, CIGNA was to pay any claim that (1) was approved by CIGNA; (2) lacked an adequate Review File to support a denial by CIGNA; (3) was initially denied by CIGNA for administrative reasons but later deemed payable by the Settlement Administrator; or (4) was initially denied by CIGNA for clinical reasons by later deemed payable by the IRE.

MCAG was selected as the exclusive claims provider for physicians affiliated with the American Medical Association and approximately twenty state and local medical societies. Following adoption of the Settlement Agreement, MCAG commenced a careful, thorough analysis of over $7 billion in potential claims, ultimately determining that just a small fraction, or approximately 800,000 claims from more than 40,000 physicians, were eligible for compensation under the Settlement Agreement.  MCAG's claims were however, worth more than $94 million and comprised the vast majority of a specific category of claims submitted by the entire Class.

At the time of submission, the Settlement Administrator praised MCAG's submissions as "great," noting that they were the "cleanest" of any claims submitted and observing that they were "flying through the system."  However, as the volume and quality of the claims became clear and CIGNA realized the magnitude of its resulting exposure, CIGNA began to involve itself intimately and improperly in the review process.  Among other things, CIGNA improperly coached Epiq to do substantive reviews and established an automated system for Epiq to use only for MCAG's claims that contained 42 different ways that Epiq could deny MCAG claims.   As a result of these actions, Epiq changed course and abruptly began to reject MCAG's claims.  By mid-2005, only

months after praising their quality, Epiq was rejecting approximately 98 percent of MCAG's claims with no reasonable explanation whatsoever.

When CIGNA and the Settlement Administrator failed to explain their actions, correct their rejections, or return to the fair processing of claims, MCAG sought to pursue its remedies under the Settlement Agreement. Eventually, this resulted in the negotiation of a Binding Arbitration Agreement and Confidential Supplemental Agreement. The arbitration in connection with the subpoenas at issue thus began in 2005.

**B.    The Arbitration**

The Arbitration commenced with each party filing an Arbitration Brief setting forth initial issues (not a formal Arbitration Demand), and it then proceeded to the briefing and consideration of a variety of motions regarding payment and process, as well as requests to obtain documents and testimony from both the parties and third parties. All parties and third parties, including Epiq, cooperated in this initial discovery process.

In 2007, MCAG filed a brief asserting that CIGNA had improperly influenced the Settlement Administrator and that the procedures set forth in the Settlement Agreement had not been followed. The Arbitrator, Judge Davis, agreed with MCAG and ordered in May 2007 that MCAG's claims be resubmitted and reprocessed for a second time consistent with the terms of the Settlement Agreement. However, CIGNA continued to delay processing and payment; tried to avoid external reviews by characterizing claims in ways not approved by the Settlement Agreement, including improperly "defecting" and "rejecting" claims; and failed to provide adequate Review Files for a large number of MCAG's claims.

After the Settlement Administrator stopped all processing of claims as a result of CIGNA's actions, MCAG had to file an Emergency Motion to Enforce the Settlement Agreement in January

of 2008.  Judge Davis granted the Emergency Motion and, in June 2008, ordered CIGNA to (1) return the improperly-defected claims to MCAG with an opportunity to cure, (2) reclassify rejected claims, and (3) forward Review Files for the external review called for by the Settlement Agreement.  When CIGNA still failed to comply, MCAG was forced to seek relief numerous more times, causing Judge Davis to note that CIGNA's conduct was "becoming increasingly suspect" and to order that "the processing of these denied claims shall not be unreasonably delayed."

Even when the second claims processing finally began in 2008, it was plagued by ongoing problems and an alarming number of denials by CIGNA, Epiq, and for the first time, the IRE.  As MCAG investigated the procedures, it became aware of ongoing interference by CIGNA with the review process that was supposed to be independent under the Settlement Agreement.  Finally, when MCAG noticed that the IRE was receiving a huge number of claims, far more than it ever had before, it asked the IRE to provide its workflow process so that it could understand what was happening in the review process.  The IRE resisted, refusing to provide anything unless CIGNA or the Arbitrator approved, despite the fact that the IRE had just had extensive unilateral discussions with CIGNA about its work on the matter.  Eventually, after extensive back-and-forth, the IRE provided its purported "workflow."  While extremely vague, the workflow appeared to deviate from the process mandated by both the Settlement Agreement and the Arbitrator by, inter alia, altering CIGNA's burden, misapprehending the nature of the IRE's inquiry, and inventing an entirely new review result called a "partial overturn."  After MCAG challenged the IRE on this "workflow" as flawed, the IRE went to the Arbitrator and asked that MCAG be forbidden to contact it.  Later, however, after the Arbitrator ordered discovery to the IRE, it admitted that the "workflow" was a manufactured document that was only created during this Arbitration and was not in fact a genuine "workflow" plan.

*Master File No. 00-1334-MD-MORENO*

Whatever process the IRE did actually use, it resulted in or otherwise accompanied the incorrect adjudication of numerous claims. Taken together, the interferences, mistakes, and violations by CIGNA and the reviewing entities resulted in significant processing errors and improper adjudications that deprived Class Members of millions of dollars. In an effort to rectify these problems, MCAG was forced to file a Motion for Order on Proper Processing of Certain Claims in 2009 to bring CIGNA's conduct to light and have the claims processed appropriately. Shortly after that motion was filed, and while MCAG's requests for information from the reviewing entities were pending, Judge Davis became ill and eventually passed away before any hearing on the motion could be set. After years of motions and hearings relating to interim processing and payment issues, as well as extensive litigation over the issues set forth herein, the parties are now preparing for a final hearing on MCAG's Motion for Proper Processing and other related issues.

### C.      The Summonses

On December 10, 2010, Thomas G. Shultz was appointed as the new Arbitrator. The subpoenas to the reviewing entities became the subject of extensive motion practice between the parties spanning over the ensuing years. At the Arbitrator's direction, MCAG narrowed the categories of documents sought in the requests numerous times, until the categories of documents and the nature of the testimony sought were finally approved. The parties also extensively briefed proper procedures for service of the subpoenas on the third parties in arbitrations, as well as the proper location and format of a hearing pursuant to Section 7 of the United States Federal Arbitration Act ("FAA").

After carefully considering the extensive written submissions and arguments of both sides, the Arbitrator decided that summonses would be issued, and that the hearings would be conducted

remotely, with the Arbitrator sitting in Florida (the venue of the Arbitration) while the third-parties and the attorneys participate via video from the place of residence of each third-party. The process resulted in the issuance of five Summonses and accompanying Subpoenas to Testify and Present Documentary Evidence at an Arbitration Hearing on May 13, 2016.  Four of the five summonses served are presently at issue.[2]

        Once the Summonses were issued, MCAG prepared subpoenas to accompany them from the three relevant federal district courts, following procedures set forth by each specific clerk's office.

        1.   The Epiq and Garcia Summonses

        The first summons and accompanying subpoena from the District of Oregon directed Epiq to provide testimony and documents at a hearing initially set for June 2016,[3] with Epiq participating via video from Portland, Oregon—Epiq's primary place of business – and the Arbitrator sitting in Miami. *See* Ex. A ("Epiq Summons"). The Epiq Summons called for the witness to bring documents in five discrete categories related to Epiq's policies, procedures, standards, or criteria used in determining whether to approve or deny claims at issue in this Arbitration for payment. The Epiq Summons also requested documents sufficient to identify individuals responsible for establishing the aforementioned policies, procedures, standards and criteria, and it requested documents in connection with two sample Claimettes processed and subsequently denied by Epiq.

---

        [2] The fifth Subpoena to an ex-employee of Epiq, Neil Manning, received no objection.  The summons and accompanying subpoena from the District of Oregon call for his video testimony from Portland.

        [3] The hearing set for June 13, 14 and 15, 2016 did not proceed by agreement of all parties, and will be reset at a future date upon resolution of the instant motion.

A second summons related to Epiq was issued to David Garcia, a project director at Epiq who had primary responsibility for processing a portion of the claims that are subject to this Arbitration. *See* Ex. B ("Garcia Summons"). The Garcia Summons, accompanied by in a subpoena from the Central District of California, called for Mr. Garcia to participate via video from Los Angeles, California (approximately 80 miles from his residence in Lake Elsinore, California), and did not seek any documents.

2.   The IRE and Falbo Summonses

The summons and accompanying subpoena to the IRE sought testimony and documents in five categories similar to those in the Epiq Summons.  This subpoena was issued in the Eastern District of Pennsylvania and called for the IRE to participate via video from Philadelphia, its primary place of business. *See* Ex. C ("IRE Summons").  The documents requested, like those for Epiq, are similarly material to the claims at issue in the Arbitration.

A second Summons related to the IRE was served on Mary Falbo, the CEO and founder of the IRE who had primary responsibility for processing the subject claims.  *See* Ex. D ("Falbo Summons").  The Falbo Summons and accompanying Eastern District of Pennsylvania subpoena directed Ms. Falbo to participate from Philadelphia (approximately 30 miles from her residence in Lansdale, Pennsylvania), and did not seek any documents.

D.      **The Third-Parties' Objections and Meet and Confer Efforts**

Shortly after the Summonses were served with subpoenas, MCAG received objections from the third-parties and from CIGNA, and the parties met and conferred.  On June 6, 2016, counsel for Epiq emailed counsel for MCAG, and, copying counsel for CIGNA, expressed: "Epiq is not subject to the arbitrator's jurisdiction.  You have not (and cannot) served valid subpoenas. We will not engage in discussion and will not respond to the so-called subpoenas."  Ex. E at 2

("Epiq e-mail").  Counsel for Epiq and David /Garcia sent counsel for MCAG a follow-up letter on June 8, 2016, indicating that "[e]ven if the summonses are valid in the first instance, our clients will not comply without an order compelling them to do so."  Ex. F at 3 ("Epiq letter 1").

On June 7, 2016, counsel for the IRE and Mary Falbo contacted counsel for MCAG, and expressed that "Ms. Falbo is not required to comply with the summons and subpoena because they are facially invalid and legally unenforceable."  Ex. G at 2 ("Falbo letter").  Finally, on June 7, 2016, counsel for CIGNA contacted counsel for MCAG, indicating that "CIGNA also joins in the objections asserted by counsel for the third parties."  Ex. H at 2 ("CIGNA letter").

After a telephonic hearing with the Arbitrator on June 13, 2016—during which, *inter alia*, the issues of requiring a bond and the cost of complying with the summonses and subpoenas were discussed, on June 14, 2016, MCAG contacted counsel for Epiq/Garcia and the IRE/Falbo, stating MCAG's position and offering to have "a conversation in an effort to narrow issues as much as possible."  Ex. I at 3, 5 ("MCAG letters").  Counsel for MCAG, CIGNA and the third-parties attended a telephone conference call on June 24, 2016.

During that conference call, counsel for MCAG, CIGNA, and the third-parties were unable to agree about whether the summonses and subpoenas were valid, the cost of compliance with the subpoena, and whether the scope of MCAG's request was appropriate.  A July 11, 2016 letter from counsel for Epiq/Garcia followed, *see* Ex. J ("Epiq letter 2"), and on July 28, 2016, MCAG made another effort to continue the conversation by requesting the amount of data at issue based on a search of e-mails of five custodians, so MCAG could attempt to narrow the scope of the subpoena as much as possible.  *See* Ex. K at 3.  To date, counsel for Epiq/Garcia has not responded to that letter.  Similarly, no resolution has yet been reached with counsel for the IRE/Falbo, although it should be noted that counsel has stated that the IRE is in possession of no responsive documents.

If the lack of any documents can be confirmed, the only issue relating to the IRE will involve the providing of oral testimony at the hearing.

On August 29, 2016, the Arbitrator advised the parties of his intention to conduct the final hearing very soon, ideally in November 2016. MCAG immediately proceeded to submit this motion in order to resolve the pending objections and obtain compliance with the Summonses as soon as possible.

## III.    ARGUMENT

This Court has the authority to compel Epiq, the IRE, and the individuals associated with each entity, to comply with the Summonses pursuant to Section 7 of the FAA.  By enforcing the Summonses, the Court will enable Claimants and the Arbitrator to obtain highly material evidence in the Arbitration regarding the processing of MCAG's claims under the parties' settlement agreement.

### A.   Under the Plain Language of Section 7 of the FAA, This Motion Is Properly Before This Court Because the Arbitrator and the Arbitration are Located in Miami.

As a threshold matter, the instant motion is properly before this Court.  Section 7 of the FAA expressly provides that arbitrators may "summon in writing *any person* to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7 (emphasis added).  It provides that "[s]uch summons shall issue in the name of the arbitrator or arbitrators" and "shall be served in the same manner as subpoenas to appear and testify before the court." *Id.* The statute further provides that:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such *arbitrators,* or a majority of them, are sitting may compel the attendance of such person or persons before said *arbitrator or arbitrators,* or punish said person or persons for contempt in the same manner provided by law for securing the

attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

*Id.* (emphasis added).

Under the plain meaning of this language, it is indisputable that MCAG can petition this Court to enforce the Summonses issued by the Arbitrator on Epiq, the IRE, and the individuals associated with each entity because this Court is the United States District Court where the Arbitrator and the Arbitration are located.

Courts squarely addressing this issue have so ruled.  For example, in *Amgen Inc. v. Kidney Center of Delaware County, Ltd.*, No. 94-MC-0202, 1994 WL 594372 (E.D. Pa. Oct. 20, 1994), Amgen Inc., filed a motion in the United States District Court for the Eastern District of Pennsylvania to compel a third party to comply with a subpoena issued by an arbitrator for an arbitration in Chicago.  The court ruled that in filing the motion to compel where the subpoena was issued (Philadelphia), Amgen, pursuant to the plain language of the FAA, had filed the motion in the wrong district.  *See id.* at *1 (citing 9 U.S.C. § 7; *Thompson v. Zavin*, 607 F. Supp. 780, 783 n.5 (C.D. Cal. 1984); *Wilkes-Barre Publ'g Co. v. Newspaper Guild of Wilkes-Barre*, 559 F. Supp. 875, 877-78 (M.D. Pa. 1982)). The court instead transferred the motion to the United States District Court for the Northern District of Illinois, where both the arbitrator and the arbitration were located.  *See also Gresham v. Norris*, 304 F. Supp. 2d 795, 796 (E.D. Va. 2004) ("a district court maintains jurisdiction over such a petition [under 9 U.S.C. § 7] if the situs of the pending arbitration is within its jurisdiction"); *Ferry Holding Corp. v. GIS Marine, LLC*, No. 4:11-MC-687(CEJ), 2012 WL 88196, at *1 (E.D. Mo. Jan. 11, 2012) (same); *Hunter Eng'g Co. v. Hennessy Indus., Inc.*, No. 4:08CV465, 2009 WL 3806377, at *2 (E.D. Mo. 2009) ("Under the plain language of the statute, [plaintiff] must file its motion to enforce the arbitrator-issued subpoena in the district where the arbitrator is sitting.").

Thus, under the plain language of Section 7 of the FAA, as other courts have accordingly held, this Motion is properly before this Court.

### B. This Court Should Grant MCAG's Motion to Compel Because the Summonses Were Properly Issued and Served.

This Court should grant MCAG's Motion to Compel because the FAA gives the Arbitrator the authority to compel Epiq and the IRE to appear before him in order to provide testimony and produce material documents and information, and, as explained below, because the Summonses were properly issued and served.

Arbitrators may "summon in writing *any person* to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7 (emphasis added). *See also Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008) ("arbitrators may, consistent with section 7, order 'any person' to produce documents so long as that person is called as a witness at a hearing"). In this way, a summons compelling attendance and the bringing of documents at a hearing is plainly different from a summons compelling any pre-hearing production of documents from non-parties—a subject of dispute among circuit courts that is not at issue in the present motion. *Compare Life Receivables Tr.*, 549 F.3d at 218 (must be at a hearing before arbitrators); *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406-07 (3d Cir. 2004) (same); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275-76 (4th Cir. 1999) ("special need" required for *pre-hearing* discovery involving non-party), *with In re Sec. Life Ins. Co. of Am.*, 229 F.3d 865, 870-71 (8th Cir. 2000) (permissible power by implication of FAA's text); *Am. Fed. of Television & Radio Artists, AFL-CIO v. WJBK-TV (New World Comm. of Detroit, Inc.)*, 164 F.3d 1004, 1009 (6th Cir. 1999) (same). This circuit split is inapplicable here

because the Arbitrator summoned the third-parties to attend *a hearing* and bring documents with them.

Summonses such as the Arbitrator's here "shall issue in the name of the arbitrator or arbitrators" and "shall be served in the same manner as subpoenas to appear and testify before the court." 9 U.S.C. § 7. "A subpoena may be served at any place within the United States." Fed. R. Civ. P. 45(b)(2). "A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).

Here, the Summonses were served within the United States, and each summons compelled attendance at and the bringing of documents to a hearing before the Arbitrator within one hundred miles of each third party witness's place of business or residence. Moreover, to adhere to the commands of Section 7 and Rule 45, each Summons attached a subpoena obtained in accordance with clerk's office procedures for each of the federal districts in which the witnesses were located and were to provide their testimony via video. Thus, the Summonses were issued correctly under both the FAA and Fed. R. Civ. P. 45 and deserve to be enforced.[4]

It also bears noting that the third parties who received the Summonses have been intimately involved with the case and are fully part of this dispute. As noted above, Epiq and the IRE have played an integral part in this arbitration and have submitted themselves to the Arbitrator's jurisdiction on several occasions. They have administered the settlement pursuant to the direction of the Arbitrator, they have passed judgment on claims, they have provided

---

[4] Although, as discussed above, any motion by MCAG to enforce the Summonses has to be brought in the Southern District of Florida, the witnesses could have filed a challenge to the subpoenas themselves in the districts in which they were issued. None of the witnesses did so, however. They merely told MCAG that they would not comply, forcing MCAG to take the affirmative step of filing this motion in this Court.

information in connection with the Arbitration, and they have benefited financially—to the tune

of millions of dollars—from their work in connection with this Arbitration.   It is entirely

appropriate to make such parties subject to an arbitration summons.  *Accord In re Sec. Life Ins.*

*Co. of Am.*, 228 F.3d 865, 871 (8th Cir. 2000) ("Transamerica is not a mere bystander pulled into

this matter arbitrarily, but is a party to the contract that is the root of the dispute, and is therefore

integrally related to the underlying arbitration, if not an actual party.") (citing *Meadows Indemn.*

*Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42, 45 (M.D. Tenn. 1994) (holding arbitration panel may order

non-party's production of documents prior to hearing where non-party was nevertheless

"intricately related to the parties involved in the arbitration and are not mere third-parties who have

been pulled into this matter arbitrarily")).

### C. This Court Should Defer to the Arbitrator's Determination of Relevance and Materiality and Grant MCAG's Motion to Compel.

Finally, deference should be given to the Arbitrator's decision to issue the Summonses on

all witnesses at issue because the Arbitrator was acting within the authority granted by Section 7

of the FAA.  After multiple hearings and extensive written submissions, the Arbitrator determined

that the testimony and documents sought are both relevant and material to the Arbitration, and in

particular, to the Arbitrator's final hearing on MCAG's Motion for Proper Processing.   This

determination should not be disturbed.  *See In re Sec. Life Ins. Co. of Am.*, 228 F.3d at 872

(imposing "requirement that the district court second-guess the panel's judgment" . . .  "is

antithetical to the well-recognized federal policy favoring arbitration, and compromises the panel's

presumed expertise in the matter at hand").  *Accord Stanton v. Paine Webber Jackson & Curtis,*

*Inc.*, 685 F. Supp. 1241, 1242-43 (S.D. Fla. 1988) (denying motion seeking to enjoin defendants

from requesting the arbitrators to issue subpoenas *duces tecum* and *ad testificandum* to non-parties,

holding that nothing in the FAA contemplates interference by the court with an ongoing arbitration

and that arbitrators may order and conduct such discovery as they find necessary); *Meadows Indemnity Co., Ltd.*, 157 F.R.D. at 44 ("arbitration panel has already determined that the documents to be provided are relevant" and "given this Court's minimal contact with the issues involved in the litigation [,] and the arbitration panel's expertise in this matter, there is no reason to second guess the panel's determination as to relevance"); *In re Arbitration Between Douglas Brazell v. American Color Graphics, Inc.*, No. M-82, 2000 WL 364997 at *3 (S.D.N.Y. April 7, 2000) ("given [the district court's] limited contact with the issues involved in the [arbitration] proceeding, the Court should not disturb the arbitrator's determination that the documents were relevant"); *Amgen*, 879 F. Supp. 878 at 880 (upholding subpoena compelling third party to produce documents and testify at deposition as valid and enforceable and noting that the arbitrator had "determined that certain documents and information in possession of third persons not parties to the arbitration proceedings were relevant" and had "determined that he did have authority to issue the subpoena").

In short, because the Arbitrator was authorized under Section 7 of the FAA to issue the subpoena to Epiq and the IRE, the Summonses are valid and enforceable, and this Court – pursuant to the FAA and Rule 45 of the Federal Rules of Civil Procedure – should enforce the Summonses and issue an order compelling Epiq and the IRE to comply fully with them.

## CONCLUSION

Based upon the foregoing, this Court should grant Claimants' motion and issue an order: (a) compelling all summoned parties to comply with the Summonses, and (b) directing them to testify and produce documents at the final hearing before the Arbitrator in the manner specified in the Summonses.

*Master File No. 00-1334-MD-MORENO*

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(3)**

MCAG's counsel has conferred with counsel for CIGNA, EPIQ, and the IRE in a good

faith effort to resolve the issue raised in the motion, but the issue could not be resolved.

**REQUEST FOR HEARING**

MCAG respectfully requests oral argument to the extent the Court believes it will aid in

resolving the instant motion.

Dated: September 2, 2016                          Respectfully Submitted,

                                                  */s/Gerald E. Greenberg*
                                                  GERALD E. GREENBERG
                                                  Florida Bar No. 440094
                                                  ggreenberg@gsgpa.com
                                                  DAN S. GELBER
                                                  Florida Bar No. 512877
                                                  dgelber@gsgpa.com
                                                  JARRED L. REILING
                                                  Florida Bar No. 93930
                                                  jreiling@gsgpa.com
                                                  GELBER SCHACHTER & GREENBERG, P.A.
                                                  1221 Brickell Avenue, Suite 2010
                                                  Miami, Florida 33131
                                                  Telephone: (305) 728-0950
                                                  Facsimile:  (305) 728-0951
                                                  E-service: efilings@gsgpa.com

                                                  and

                                                  ANDREW H. SELESNICK, (*pro hac vice*)
                                                  aselesnick@mrllp.com
                                                  DAMARIS L. MEDINA (*pro hac vice pending*)
                                                  dmedina@mrllp.com
                                                  MICHELMAN & ROBINSON, LLP
                                                  10880 Wilshire Blvd., 19th Floor
                                                  Los Angeles, CA 90024
                                                  Telephone: (310) 564-2670
                                                  Facsimile:  (310) 564-2671

                                                  *Counsel for Managed Care Advisory Group, LLC*

17

*Master File No. 00-1334-MD-MORENO*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 2, 2016 I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.  Further, I certify that the foregoing document was served via e-mail to the following:

Robert D. Newell, Esq.
Davis Wright Tremaine LLP
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
Tel: (503) 778-5234
Fax: (503) 778-5299
E-mail: bobnewell@dwt.com

*Counsel for Epiq Systems, Inc. and David Garcia*

Jacqueline M. Carolan, Esq.
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Tel: (215) 299-2863
Fax: (215) 299-2150
E-mail: JCarolan@FoxRothschild.com

*Counsel for Imedecs/Millennium Healthcare
Consulting, Inc. and Mary Falbo*

*/s/Gerald E. Greenberg*
GERALD E. GREENBERG