# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**Master File No.: 00-1334-MD-MORENO-O'SULLIVAN**

**MDL NO.: 1334**

**IN RE: MANAGED CARE LITIGATION**

_____

## CIGNA'S REPLY BRIEF IN SUPPORT OF
## MOTION TO ENFORCE SETTLEMENT AGREEMENT
## AND TO COMPEL AN ACCOUNTING

"Sunlight is said to be the best of disinfectants…" Justice Louis Brandeis, <u>Other People's</u> <u>Money and How the Bankers Use It</u>, 89 (1914).  It is time to shed sunlight on what MCAG did with $25 million in class settlement funds from a class action settlement approved by this Court.  MCAG admits that at least $14 million has not been distributed to class members; that only $4 million is left; and that MCAG commingled the settlement funds into MCAG's own operating accounts.  What happened to millions of dollars in class settlement funds that were not distributed to the class members, even though MCAG has had this money for over a decade?  As MCAG would say, "That is a sign that something is amiss."  (Opp. Br., [D.E. 6548], p. 10).

When a stranger to a class action uses this Court as a vehicle to usurp millions of dollars in class settlement funds, the Court must act.  *See* Sect. II, *infra*.   MCAG provides no legitimate basis — and there is no legitimate basis — for the Court to allow MCAG's misconduct to go unexamined.  Further, MCAG's recent admissions on the record in Arbitration (*see* Sect. VIII, *infra*), give additional grounds to call MCAG to account for the class settlement funds.

**I.**      **MCAG's Opposition Ignores The Uncontested Facts And What They Mean**

MCAG's opposition attempts to distract the Court from the following uncontested facts:[1] (1) this Court approved a class action settlement between CIGNA and a class comprised of physicians and medical providers; (2) MCAG purports to be an agent of some of those class members; (3) MCAG has not disclosed how it solicited these class members, but MCAG has admitted using improper "opt-out" methods in this MDL and elsewhere; (4) CIGNA paid MCAG $25,505,196.96 in class action settlement funds for distribution to class members that MCAG purports to represent (*see* MCAG 1099s, attached as **Exhibit 1**); (5) MCAG admits not distributing any of these settlement funds to class members since the Arbitration began; (6) MCAG commingled the class settlement funds into MCAG's operating accounts; (7) MCAG took at least $1.8 million for itself and its "partner" Misys; (8) MCAG never accounted for the settlement funds; (9) MCAG never notified the class members that MCAG was retaining their settlement funds; (10) MCAG has refused to provide evidence that any distributions occurred;

---

[1] MCAG offers blatant misrepresentations about the history of the Arbitration, without providing any citation or factual basis.  MCAG even says that CIGNA has refused to pay claims, (Opp. Br., p. 1), when it is undisputed that CIGNA has paid over $25 million to MCAG for class members' claims. Because it is irrelevant to this motion, CIGNA will not address each of MCAG's misrepresentations.  CIGNA disputes MCAG's mischaracterizations, and is happy to provide a factual history of the Arbitration, with citations, if the Court requests.

(11) Even under MCAG's claim that it distributed $11 million (which CIGNA does not assume occurred and neither should the Court), $14 million should remain; and (12) MCAG admitted in open court on February 22, 2017, that only $4 million in settlement funds remains.  These facts point to one conclusion:  an accounting is required.

MCAG responds with the ludicrous argument that the $25 million CIGNA paid for the benefit of class members pursuant to the Settlement Agreement were not actually settlement funds, but merely were "paid from settlement funds."  (Opp. Br., p. 13).  CIGNA paid these $25 million in class settlement funds solely pursuant to the Settlement Agreement that this Court approved.  MCAG now concocts a theory that the settlement funds "left" the class action and went into an Arbitration that is separate from the Settlement Agreement.   However, the Arbitration was commenced to resolve "all issues relating to whether the claims for Category Two Compensation under the Settlement Agreement Among CIGNA HealthCare and Physicians submitted by MCAG on behalf of Class Members are **payable pursuant to that agreement**." (Binding Arbitration Agreement, attached as **Exhibit 2**, p. 1) (emphasis added).  The Arbitration Agreement repeatedly refers to the Settlement Agreement and specifically refers to MCAG's submission of "claims seeking compensation under the Settlement Agreement . . .." (*Id.*).

## II.   Courts Regularly Scrutinize Class Action "Claims Processors" Like MCAG

MCAG argues that CIGNA cites no "no caselaw, opinion, rule, or statute" in support of the Court's fiduciary duty to protect absent class members.  (Opp. Br., p. 8).  MCAG is wrong; CIGNA cited numerous such cases in its motion papers.  (CIGNA Br., pp. 11-12).  In addition, CIGNA cites here additional cases and authority.

### A.   *The Manual on Complex Litigation and the* Jack Faucett *case*

The Manual on Complex Litigation, Fourth, § 21.662 instructs that:

> The court and counsel should be alert to the possibility of persons soliciting class members after the settlement and offering to provide 'collection services' for a percentage of the claims.  **Such activities might fraudulently deprive class members of benefits provided by the settlement and impinge on the court's responsibility to control fees in class actions**.

(emphasis added).  The Manual on Complex Litigation then cites to the seminal case dealing with class settlement "claims processors", *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 1985-2 Trade Cases P 66,830, 1985 WL 25746 (D.D.C. Oct. 18, 1985).

Given its importance, the *Jack Faucett* case is attached as **Exhibit 3**.  In summary, *Jack Faucett* involved two "claims processors" like MCAG, called ICS and CSD, which solicited class members to prepare claims and collect class settlement payments, in exchange for a 50% contingency fee.  *Id.* at *1.  The court found that the claims processors' actions "would have the effect of depriving Class members of 50% of the amounts they would receive under the proposed Settlement Agreement."  *Id.*  Similarly, MCAG's actions deprived class members of at least $14 million that the class would have received under the Settlement Agreement.

The *Jack Faucett* court further found that ICS "seeks to divert settlement payments from class members, by having payments made to it," but that ICS "has not given Class members any consideration for these assignments."  *Id.*  The court found there was no consideration because "[t]he fifty percent contingent fee agreements that ICS and CSD are seeking to enter into with Class members are not based on any contingency, because a settlement has already been negotiated in this case.  Accordingly, these contingent fee agreements are unenforceable."  *Id.* at *6.  Similarly, MCAG's purported contingent fee arrangements with class members were based on no real "contingency", because the settlement already had been reached.

The *Jack Faucett* case also expresses severe concerns regarding the manner in which claims processors like MCAG solicit class members as their purported clients.  *Id.* at *1. Likewise here, MCAG steadfastly refuses to provide its solicitation materials or otherwise disclose how it solicited class members to pay for MCAG's services.  Although MCAG claims that there was no "opt-out" program used on the CIGNA settlement class members, MCAG's counsel admitted on March 7, 2017 that he had "no idea" what the communications were to class members.  (Mar. 7, 2017 Hrg. Tr., attached as **Exhibit 4**, at 258:01-259:04).

*Jack Faucett* also held that CSD sought to obtain "Letters of Agency" from the class members, just like MCAG purports to have obtained contracts appointing it as an agent.  *Id.* at *3.  The court concluded these "agency" letters improperly enabled CSD to receive payment for the class claims as if CSD were the actual claimant.  *Id.*  The court found that the class members dealing "effectively give up all control over their claims to CSD."  *Id.*

The *Jack Facuett* court then looked to its own obligations and duties.  First, the court recognized that Rule 23 imbues the court with "the duty and authority to restrict communications that interfere with the proper administration of a class action and **to restrict conduct that abuses the rights of members of the class**."  *Id.* at *5 (emphasis added).  The court then

confirmed that "under Rule 23(e), the Court is a fiduciary who must protect the rights of absent class members." *Id.* The court recognized its obligations to ensure that the class members receive the benefits of the class settlement and to control fees in a class action. *Id.* The court stated that "there is a distinct possibility that ICS and CSD's unauthorized communications with class members may usurp the authority of this Court over this litigation and the administration of the settlement fund." *Id.* at *6. That is what MCAG is arguing it should be permitted to do here.

The court then acted to protect the class members. The court found that ICS and CSD "were improperly soliciting for their own accounts half of the settlement proceeds to be paid to members of the Class, all to the prejudice of the members of the class." *Id.* The court also ordered ICS and CSD to disclose all of its solicitation materials and contracts with class members, as CIGNA seeks here. *Id.* at *8. Ultimately, *Jack Faucett* declared that the contingent fee contracts with class members "are declared null and void and, thus, will not be enforced by this Court." *Id.* CIGNA reserves the right to seek similar relief.[2]

B. *Courts continue to scrutinize claims processors to protect class members*

In *Burford v. Cargill Inc.*, 2013 WL 45062242, *5-6 (W.D. La. Aug. 21, 2013), the court reaffirmed *Jack Faucett*. *Burford* dealt with three "claims processors" who sought to submit claims for class members and take a fee of between 20% and 33%. Like MCAG, these claims processors asked the settlement administrator to make the payments directly to them. *Id.* The Court rejected the intermediaries' requests, and directed the settlement administrator to pay the class members. *Id.* at *1. Similarly, MCAG should not be paid any of the class settlement funds. *See id.*

In *In re Synthroid Marketing Litig.*, 197 F.R.D. 607, 608 (N.D. Ill. 2000), **defendants** and some class members sought to enjoin a claims processor who sent notices to class members in an attempt to solicit them via an "opt out" or "automatic enrollment" system, similar to what MCAG admits using in at least five cases in this MDL. (CIGNA Mot. at 10-11). The court analyzed the claims processor's solicitations and determined that they "can be read as an attempt to skim off, by false pretenses, 22 percent of the amount due to some of the Third Party Payor class members. That might well constitute mail fraud or attempted mail fraud as well as violations of various state fraud statutes." *Id.* at 609. The court compelled the claims processor

---

[2] *Jack Faucett* also finds that the claims processors were engaged in the unlicensed practice of law. 1985 WL 25746 at *7. MCAG admits to similar conduct and more. (Opp. Br., p. 4).

to produce the contracts with class members.  *Id.*  The court also ordered that the claims processor could not deduct any fees without prior approval of the court.  *Id.* at 610

In *In re: Ready-Mixed Concrete Antitrust Litig.*, Case No.: 1:05-cv-979-SEB-JMS (S.D. Ind. Dec. 9, 2009) (unpublished, attached as **Exhibit 5**), the court found that the claims processor voluntarily submitted itself to the court's jurisdiction.  So, the court invoked the All Writs Act, 28 U.S.C. § 1651(a), to stop the claims processor from abusing class members.  The court ruled: (1) that the claims processors were not entitled to any payment from class members; (2) that any contracts between the claims processor and any class member were void *ab initio*; and (3) that all settlement awards were to be paid directly to class members.  *Id.*

Recently, the District of Colorado exercised its authority under Rule 23 to declare void and unenforceable a claims processor's contracts with class members and to prohibit any class payments to be paid directly to that claims processor.  *Cook v. Rockwell Int'l Corp.*, Case No.: 1:90-cv-181-JLK (D. Col. Feb. 14, 2017) (unpublished, attached as **Exhibit 6**).

In all of these cases, the courts exercised their fiduciary duty to the class.  The underlying principle in these cases is that the courts are acting to protect the class members from an unregulated, unsupervised interloper and to prevent the use of the class action as the vehicle to abuse the rights of absent class members.  The courts exercised their authority to address misconduct that occurred even before a "claims processor" or "settlement recovery service" like MCAG gets their hands on class settlement funds, and certainly before settlement funds were missing.  But here, the abuse already has occurred.  As these cases repeatedly demonstrate, the Court has the inherent power as the class action court, the authority under the All Writs Act, and the duty under Rule 23 to prevent injuries caused by MCAG improperly soliciting class members and getting its hands on the class members' settlement funds.

### III.    Of Course The Court Has Jurisdiction Over Its Own Class Settlement

MCAG argues that the Court lacks jurisdiction.  (Opp. Br., p. 10).  MCAG cites no authority for this proposition, because there is none.  MCAG is wrong for several reasons.

First, the Court expressly retained jurisdiction over the administration of the settlement.  (Order approving settlement, [D.E. 2900]. p. 14).  MCAG submitted itself to the Court's jurisdiction and admitted in October that, "The arbitration between MCAG and Cigna arises from a settlement agreement executed in this case, and this Court—in an order—explicitly retained jurisdiction over the settlement agreement's administration.  Because of this, **the Court**

**retains ongoing jurisdiction to supervise compliance, to enforce the terms of the consent decrees, and to protect its jurisdiction over the decrees**."   (MCAG Brief, [D.E. 6519], p. 1) (citations omitted) (emphasis added).

Second, the Court's retention of jurisdiction over a class settlement includes jurisdiction to supervise disbursements to class members.  As the Seventh Circuit Court of Appeals held:

> [T]he supplemental settlement agreement signed by the court specifically provided for jurisdiction to remain in the district court: 'The court retains jurisdiction of this matter to assure compliance by all parties with the obligations which accrue upon final judicial approval of the Settlement Agreement."  **The question of whether [class counsel] properly disbursed settlement funds to class members falls squarely within this clause, and jurisdiction was therefore retained in the district court** to consider class members' complaints about [class counsel's] proposed distribution.  **The district court's explicit retention of jurisdiction is consistent with its responsibility, pursuant to Fed. R. Civ. P. 23, to protect the interests of class members**.

*Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1022-23 (7th Cir. 1991) (emphasis added).

Third, "district courts who enter judgment pursuant to a settlement agreement necessarily have the power to mandate compliance with it."  *Id.*  The Seventh Circuit aptly summarized that, "In a class action, the district court has a duty to class members to see that any settlement it approves is completed, and not merely to approve a promise to pay the relief to which it has decided class members are entitled."  *Id.*

Fourth, the Court has the jurisdiction under the All Writs Act to issue those orders necessary to protect its prior orders.  *See In re Synthroid Marketing Litig.*, 197 F.R.D. at 610.

### IV.   **MCAG Is Telling The Arbitrator A Different Story Than It Tells The Court**

One of MCAG's constant refrains is that the Court should defer to the Arbitrator to order an accounting.[3]  (Opp. Br., pp. 2, 8, 9, 16).  However, as recently as March 7, 2017, MCAG

---

[3] The Court and the Arbitrator have separate and distinct reasons and authority to order an accounting.  (CIGNA Mot., p. 17).  The Arbitrator recognized that he has a separate reason to compel an accounting due to CIGNA's defenses and counterclaims asserted in the Arbitration, and that the Court has its own obligation to do so.  (*See* Ex. 4, Mar. 7th Hrg. Tr., at 228:22-230:09).  But, that does not mean two separate accountings must be done.  That only means that two judicial bodies have the separate right and responsibility to order an accounting.  If both judicial bodies order an accounting, MCAG will only have to do the work once, but each forum can ensure that it is appropriate to the needs of that forum.  Regardless, the Court's duty to class members is nondelegable.  *See Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002).

argued to the Arbitrator that he lacks jurisdiction to consider the issue of an accounting. By telling the Court that it should defer to the Arbitrator on this issue, without informing the Court that MCAG's position is that the Arbitrator cannot decide this issue, MCAG flirts with the line between zealous advocacy and implicating its duty of candor to the tribunal.

When the parties were last before the Court on February 22, 2017, the Court asked MCAG if it would be consistent in Arbitration as before you:

> THE COURT: Well, what do you want to say about the money not being paid? Do you want to say anything about that?
>
> MR. GREENBERG [MCAG's counsel]: Your Honor, the client, and obviously this will be – if Mr. Schultz accepts jurisdiction, this would be a subject of the hearing before him.
>
> THE COURT: Okay. **You're going to be consistent there as much as here?**
>
> MR. GREENBERG: **Yes, Your Honor.**

(Feb. 22nd Corr. Hrg. Tr., attached as **Exhibit 7**, 43:07-14) (emphasis added). This was a reference to the Court's interest in MCAG not arguing that the Court should defer to the Arbitrator and then later argue to the Arbitrator that he had no jurisdiction.

But, MCAG was not consistent. On March 7th, MCAG argued seven times that the Arbitrator lacked jurisdiction to consider an accounting. (*Id.* at 7:02-04, 12:01-04, 13:09-15, 16:16-17, 22:06-12, 23:12-19, and 24:12-15).

The Arbitrator took MCAG's jurisdictional challenge under advisement, and deferred ruling. (*Id.* at 91:13-14). MCAG buries in a footnote an anticipatory attempt to explain away its contradictory positions, but MCAG still does not reveal that MCAG is challenging the Arbitrator's jurisdiction. (Opp. Br., p. 9). It is inappropriate for MCAG to continue to argue that this Court should defer to the Arbitrator.

**V.      CIGNA Has The Right To Have The Settlement Agreement Enforced**

CIGNA is a party to the Settlement Agreement and has the right to enforce it. *See*, *e.g.*, *Bluewater Network v. Salazar*, 721 F. Supp. 2d 7, 19 (D.D.C. 2010). This right is separate from the Court's duty and authority to protect class members. *See* Sects. II and III, *supra*.

MCAG mischaracterizes CIGNA's motion as an attempt to enforce the class members' contracts with MCAG, but CIGNA is enforcing its own rights under the Settlement Agreement. As explained in CIGNA's Motion, the class members are CIGNA's customers, and CIGNA settled with them in order to ameliorate relationships with them. (CIGNA Mot., pp. 4-5). But,

even though CIGNA paid over $25 million in claims, MCAG has refused to distribute that money to the class members.  So the class members do not even know CIGNA paid their claims; the unpaid class members likely think that CIGNA simply has failed to pay their claims.

MCAG argues falsely that CIGNA did not identify the "specific provision" of the Settlement Agreement that CIGNA seeks to enforce.  (Opp Br., pp. 10-12).  But CIGNA's motion plainly cited several provisions of the Settlement Agreement.  First, CIGNA cited page 84 of the Settlement agreement as calling "for payment of claims to class members" (CIGNA Mot., p. 2); Section 8 of the Settlement Agreement, which explains the process for making payments to class members (Settlement Agreement, [D.E. 6545-4], pp. 84-123);  pages 110-111 of the Settlement Agreement as calling for prompt distribution to the class members, (CIGNA Br., p. 4); and page 125 of the Settlement Agreement, which calls for an accounting by the settlement administrator at the conclusion of the settlement process (*Id.* at 13).  MCAG stepped into the shoes of the settlement administrator by taking settlement proceeds to distribute to class members.  MCAG's misleading argument that CIGNA did not cite any provision and that "there is no provision for this Court to enforce" (*id.* at 12), is without any factual basis.

CIGNA's Motion also attached this Court's notice to class members, in which the Court advised the class members that they would be paid.  ([D.E. 6545-5], p. 6).  Apparently, neither CIGNA nor the Court anticipated that an interloper such as MCAG would get its hands on the class members' settlement funds and refuse to distribute them.

### VI.   MCAG Ignores Florida Law On Accountings

CIGNA does not need a fiduciary relationship with MCAG in order for the Court to order an accounting.  MCAG's argument to the contrary (1) ignores that the Court itself has the right and duty to have MCAG account for the class settlement funds, and (2) cites incorrect law that is controverted by controlling Eleventh Circuit authority.

The Court has a right to investigate what MCAG did with the class settlement funds, separate and apart from CIGNA's right to an accounting.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  MCAG's argument relies on cases that are irrelevant to the Court's duty to protect absent class members.  *See Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 730 (11th Cir. 1988).  *See also* Sects. II and III, *supra*.

Florida law relating to claims for an accounting is set forth in *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301 (11th Cir. 2014).  After analyzing the evolving Florida

8

law on accountings, *Zaki* held that: "To obtain an accounting under Florida law, then, a party must show **either** (1) a sufficiently complicated transaction and an inadequate remedy at law **or** (2) the existence of a fiduciary relationship." *Id.* at 1311 (emphasis added). Instead of citing *Zaki*, MCAG cites to *Nayee v. Nayee*, 705 So. 2d 961 (Fla. 5th DCA 1998), which predates *Zaki* by 16 years, and 1 AM. JUR. 2d Accounts and Accounting § 52, which does not cite Florida law.

CIGNA would fall within the first *Zaki* prong. It cannot legitimately be disputed that the 149-page Settlement Agreement and the class distribution payments to non-party MCAG for distribution to the class members is a "sufficiently complicated transaction". 771 F.3d at 1311. CIGNA does not have an adequate remedy at law for the injuries it suffered. *See* Sect. V, *supra*.[4]

Additionally, CIGNA can enforce the Settlement Agreement it is party to. *See id.* An accounting is one appropriate remedy that CIGNA has in these circumstances caused by MCAG's interference and mishandling of the class settlement funds. Under the Settlement Agreement, the parties agreed and the Court ordered that the claims administrator "shall provide a final accounting to Defendants' Counsel and Notice Counsel [*i.e.*, Class Counsel]." (Settlement Agreement, § 9.9 [D.E. 6545-4], p. 125). The parties and the Court never anticipated that an interloper like MCAG would insert itself into the shoes of the settlement administrator, let alone that MCAG would never distribute the funds at all. The parties' intent under the Settlement Agreement is that they would have an accounting of all settlement funds. (*Id.*). Yet, 12 years and millions in missing dollars later, MCAG has refused to provide an accounting.

## VII.    MCAG Had Fiduciary Duties To The Class Members

MCAG also makes the false argument that "CIGNA does not even argue that MCAG is a fiduciary of its clients." (Opp. Br., p. 12). But, CIGNA has argued that MCAG was a fiduciary and that MCAG breached its fiduciary duties through its mishandling of class settlement funds. (CIGNA. Br., pp. 14-16; *see also generally* CIGNA Appeal [D.E. 6530]).

MCAG also argues that it has no fiduciary duties to its purported clients under *Fla. Bar v. Adorno*, 60 So. 3d 1016 (Fla. 2011), because "MCAG is not class counsel, a class representative, or settlement administrator."[5]  (Opp. Br., p. 13-14). But *Adorno* does not say that duties to class

---

[4] MCAG is holding CIGNA's settlement funds to distribute to class members. As such it has a duty to CIGNA to deliver those funds as intended. No one would dispute that CIGNA could file for an accounting against the Claims Administrator under similar circumstances.

[5] MCAG proudly claims it is not a party, class counsel, or a settlement administrator and therefore, being unregulated and unsupervised, it can do whatever it wants with the class funds.

members come from being class counsel.  Instead, the Florida Supreme Court went out of its way in *Adorno* to hold that "the crucial issue is whether Adorno had a **fiduciary** duty to the putative class, not whether he had an attorney-client relationship with those members."  60 So. 3d at 1025 (emphasis in original).  As an agent of the class members MCAG purports to represent and as a holder of those class members' funds, MCAG has fiduciary duties akin to those of a trustee.  *See*, *e.g.*, *Burton Enterprises, Inc. v. Wheeler*, 643 F. Supp. 588, 590 (D. Kan. 1986).  An agent holding settlement funds is a fiduciary of the intended recipients of those settlement funds, and breaches those fiduciary duties by retaining and wrongfully diverting those funds.  *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 289 (D.C. Cir. 1993).

Incredibly, MCAG also argues that it had no fiduciary duties because, "Nor does [MCAG] hold funds on behalf of absent class members."  (Opp. Br., p. 14).  MCAG claimed that MCAG holds $4 million in class settlement funds.  (Ex. 7, Feb. 22nd Hrg. Tr. at 43:24-45:05).

## VIII.   MCAG's New Admissions Demand Redress

Since CIGNA filed this Motion, MCAG has made further admissions that demand the Court's attention.  At the March 7th hearing before the Arbitrator, MCAG stunningly admitted that class settlement funds were used "[t]o pay Mysis and all the rest of it.  And to pay MCAG and legal expenses and all sorts of other things that have happened."  (Ex. 4, Mar. 7th Hrg. Tr., at 213:25-214:03).  For MCAG to admit that it took class settlement funds to pay itself, to pay Misys, to pay MCAG's (unexplained) expenses, and pay MCAG's legal fees confirms what CIGNA feared:  MCAG misappropriated class settlement funds, and that is why only $4 million of the $25 million remains.

It is important to remember that the Court awarded $55 million in attorneys' fees to class counsel when approving this settlement.  ([D.E. 2900], pp. 11-12).  The Court based this award in part on the fact that the fee was not coming out of the class members' settlement funds, but would be paid separately by CIGNA.  (*Id.*).  If there was a need for any action to be taken on behalf of class members, class counsel was already well paid to take that action.  MCAG had no right to take any attorneys' fees beyond that which the Court approved.  *See Alexander*, 927 F.2d at 1025 (sanctioning a class attorney who kept a costs award greater than approved); *see also Jack Faucett*, 1985 WL 25746 at *6-7 (no fees can be obtained except as approved by the court).

---

(Opp. Br., pp. 3, 10-12).  That is why it is crucial that the Court exercise its nondelegable fiduciary duty to protect the class members.  *See Culver*, 277 F.3d at 915.

## **REQUEST FOR HEARING**

Pursuant to S.D.Fla. Local Rule 7.1(b)(2), Cigna requests a hearing of this Motion. The issues raised in this Motion are significant and affect the absent class members of a settlement class approved by this Court. A hearing also would allow the Court the opportunity to ask about the disposition of settlement funds that MCAG has taken for the class members but refused to distribute or account for. Cigna estimates that the total time required for argument of this Motion is 1-2 hours.

Dated: March 20, 2017

Respectfully submitted

**HOGAN LOVELLS US LLP**

By */s/  Marty Steinberg*
Marty Steinberg, Esq.
Florida Bar No. 187293
marty.steinberg@hoganlovells.com
Justin Brenner, Esq.
Florida Bar No. 94216
justin.brenner@hoganlovells.com
600 Brickell Avenue, Suite 2700
Miami, Florida 33131
305-459-6500 Telephone

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on March 20, 2017, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


*/s/   Marty Steinberg*
Marty Steinberg