## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**FILED BY** _____ **AP** _____ **D.C**

**Oct 17, 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 17, 2019

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  17-13761-JJ
Case Style: Managed Care Advisory Group, L v. CIGNA
District Court Docket No: 1:00-md-01334-FAM

Enclosed is the Bill of Costs.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion
was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 17-13761

_____

District Court Docket No.
1:00-md-01334-FAM

MANAGED CARE ADVISORY GROUP, LLC,

                                        Plaintiff - Appellee,

versus

CIGNA HEALTHCARE, INC.,

                                        Defendant - Appellant,

EPIQ SYSTEMS, INC.,
DAVID GARCIA,
NEIL MANNING,
IMEDECS,
MILLENNIUM HEALTHCARE CONSULTING, INC.,
MARY FALBO,

                                        Interested Parties - Appellants.

_____

Appeals from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: September 18, 2019
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13761

_____

D.C. Docket No. 1:00-md-01334-FAM

MANAGED CARE ADVISORY GROUP, LLC,

                                        Plaintiff - Appellee,

versus

CIGNA HEALTHCARE, INC.,

                                        Defendant - Appellant,

EPIQ SYSTEMS, INC.,
DAVID GARCIA,
NEIL MANNING,
IMEDECS,
MILLENNIUM HEALTHCARE CONSULTING, INC.,
MARY FALBO,

                                        Interested Parties - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(September 18, 2019)

Before JILL PRYOR and BRANCH, Circuit Judges, and REEVES,[*] District Judge.

PER CURIAM:

Medical providers filed several class action lawsuits against managed care insurance companies, including CIGNA Healthcare, Inc. ("CIGNA"). These actions alleged that the insurers improperly processed and rejected certain physicians' claims for payment. The actions were consolidated into Multidistrict Litigation ("MDL") before the United States District Court for the Southern District of Florida. The class and CIGNA reached a settlement after extensive litigation and the district court subsequently approved the parties' Settlement Agreement.

Following the settlement, Managed Care Advisory Group, LLC ("MCAG"), acting on behalf of class members, entered into an arbitration agreement with CIGNA in an attempt to resolve a dispute over a portion of the settlement funds.

---

[*] The Honorable Danny C. Reeves, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

2

The Settlement Agreement did not provide for arbitration and MCAG was not a party to it. Instead, MCAG claimed to represent class members who were parties to the Settlement Agreement. The arbitrator summonsed the settlement claims administrator and independent review entities ("IREs")[1] to appear for a live hearing and video conference and to bring with them certain documents. MCAG filed a motion to enforce the arbitral summonses in the district court approximately three years after it had closed all proceedings involving the MDL. CIGNA responded to MCAG's motion to enforce the arbitral summonses with a motion to strike the summonses. The district court referred the matter to a magistrate judge who denied CIGNA's motion and granted MCAG's request to enforce the summonses. CIGNA and the summonsed parties appealed the magistrate judge's decision to the district court and, at the district court's suggestion, CIGNA filed a motion to enforce the settlement and compel an accounting.

The district court affirmed the magistrate judge's decision, enforcing the arbitral summonses, but denied CIGNA's motion to enforce the Settlement Agreement and compel an accounting stating, "[t]he Arbitrator shall be allowed to arbitrate the claims in the manner he sees fit." After careful review of the record

---

[1] The IREs are organizations selected by mutual agreement of counsel for the parties to the Settlement Agreement. Their role is to review CIGNA's disposition of insurance claims submitted pursuant to the Settlement Agreement.

and with the benefit of oral argument, we reverse enforcement of the arbitral summonses.  Additionally, we reverse and remand the denial of the motion to enforce the Settlement Agreement and compel an accounting to the extent that it relates to a portion of settlement funds previously paid.

## I.      BACKGROUND

Medical providers filed several class actions against managed care insurance companies, including CIGNA, starting in 1999.  The matters were consolidated into an MDL proceeding in the United States District Court for the Southern District of Florida in April 2000.  MCAG was not a party, class member, or class counsel in any of the lawsuits consolidated into the MDL, nor was it a party to the MDL itself.  The parties later moved for preliminary approval of a settlement, and the district court granted their request.

The district court approved the settlement on January 30, 2004, following a class action fairness hearing.  The court noted, however, that it retained jurisdiction for "all matters relating to [] the interpretation, administration, and consummation of the Agreement . . . ."  The settlement included monetary relief to the class members as well as the ability to either (1) participate in a $30,000,000 fund that would be distributed to class members or (2) seek recovery from an uncapped fund for claims that were previously denied or reduced.  As relevant to this appeal, "Category Two" claims sought recovery from the uncapped fund.  To seek

4

compensation for Category Two claims, the class members would submit their claims to the settlement administrator, who would forward them to CIGNA upon verification that the claim was accompanied by sufficient supporting documents. If CIGNA determined that a claim was not payable, it would be reviewed by the independent settlement administrator or the IRE (collectively, "the Reviewers"), depending on the reason for the denial.  After evaluating these claims, the Reviewers would make a final, independent decision regarding whether the claims should be paid.

Class member Texas Children's Pediatric Associates ("TCPA") moved for enforcement of the settlement on July 14, 2005, asserting that CIGNA obstructed the process for Category Two claims, causing the Reviewers to improperly process claims.  TCPA requested in the motion for enforcement of the settlement that the district court direct CIGNA to pay its claims.  However, TCPA subsequently withdrew its motion on November 16, 2005, noting that MCAG and CIGNA agreed to binding arbitration of the matter.

The notice of withdrawal indicated that the parties agreed that the district court "should, consistent with the Settlement Agreement, Final Judgment and the Arbitration Agreement, retain jurisdiction over the parties and this matter for purposes of confirming, modifying and/or vacating that Arbitration Award (as well as any pre-Award decisions) in accordance with the FAA [Federal Arbitration

5

Act].''  However, the Settlement Agreement did not require arbitration and did not

have an arbitration provision.  Instead, the arbitration agreement between CIGNA

and MCAG was separate and apart from the Settlement Agreement, to which

MCAG was not a party.  The Reviewers were not parties to the binding arbitration

and the arbitration agreement was solely between MCAG and CIGNA.[2]

   During the arbitration, the arbitrator required CIGNA to allow reprocessing

of certain claims; however, problems supposedly arose.  The arbitrator issued non-

party summonses to the following third parties requiring them to participate in the

arbitration hearing: (1) Epiq, the settlement administrator; (2) David Garcia, a

project director at Epiq; (3) Neil Manning, an ex-employee of Epiq; (4)

IMEDECS/Millennium Healthcare Consulting, Inc., the IRE; and (5) Mary Falbo,

the IRE's founder and CEO (collectively, "the summonsed parties").

   The summonses directed the summonsed parties to appear by video.  Some

also required the summonsed parties to produce documents.  Federal district courts

where the summonsed parties were located issued corresponding subpoenas.  Upon

receipt, however, the summonsed parties objected to the summonses and indicated

they would not comply without an order compelling them to do so.  On September

2, 2016, MCAG moved the district court to enforce the arbitration summonses

---

[2] The district court, *sua sponte*, closed the MDL on September 9, 2013, because it concluded all the associated cases had been closed.

pursuant to 9 U.S.C § 7.  CIGNA then moved to strike MCAG's motion to enforce the summonses.  IMEDECS, Millennium Healthcare Consulting, Inc., and Falbo (collectively, "IMEDECS") filed a response in opposition to the motion to enforce. Epiq, Garcia, and Manning (collectively, "Epiq") also filed a separate response in opposition.

A magistrate judge held a hearing and concluded the court had jurisdiction to enforce the arbitration summonses because the district court judge "appointed the arbitrator and he reserved jurisdiction to enforce the settlement agreement and the parties agreed, in the arbitration agreement, . . . to the jurisdiction of the Court."  The magistrate judge ruled directly on the pending motions by granting MCAG's motion to enforce, while denying CIGNA's motion to strike.  CIGNA, Epiq, and IMEDECS challenged the magistrate judge's rulings.

The district court held a status conference, and CIGNA subsequently moved to enforce the Settlement Agreement and compel an accounting as suggested by the district court.  CIGNA alleged MCAG mismanaged settlement funds totaling over $25 million, which CIGNA had paid to MCAG for the benefit of the class members.  CIGNA made two types of payments to MCAG.  First, prior to arbitration, CIGNA paid a total of approximately $11 million to MCAG for class members' claims that were not the subject of arbitration.  Second, during arbitration, CIGNA paid an additional $14 million for class members' Category

7

Two claims.  CIGNA paid these funds to MCAG solely for distribution to class members as required by the Settlement Agreement.

The district court affirmed the magistrate judge's order granting MCAG's motion to enforce the arbitral summonses and denied CIGNA's motion to enforce the Settlement Agreement and compel an accounting.  It noted that "[t]he Arbitrator shall be allowed to arbitrate the claims in the manner he sees fit."

CIGNA, Epiq, and IMEDECS appeal the district court order.  Epiq and IMEDECS challenge the district court's order enforcing the arbitral summonses.  CIGNA appeals the district court's denial of its motion to enforce the Settlement Agreement and compel an accounting.

MCAG conceded during oral argument that: (1) it had not distributed all of the funds CIGNA paid before the arbitration for claims that were not the subject of the arbitration (despite MCAG's previous assertion that it had distributed all of these funds); (2) it had not distributed any of the settlement money paid by CIGNA for Category Two claims since the arbitration commenced; and (3) only approximately $4.5 million remains of the settlement proceeds CIGNA paid to MCAG for class members' Category Two claims.  Additionally, MCAG conceded that it was obligated to pay the class members shortly after receiving payment from CIGNA.

Before oral arguments, this Court issued a jurisdictional question asking the parties to respond to two inquiries: (1) whether the district court order enforcing the arbitration summonses was a final order, particularly in light of the fact that the order enforced summonses against third parties and is apparently a post-judgment order; and (2) whether the district court's order denying CIGNA's motion to enforce the Settlement Agreement and to compel an accounting was final in light of the district court's reasoning that CIGNA's claims would instead be handled by the arbitrator.  CIGNA, Epiq, and IMEDECS responded that the orders were final and appealable, while MCAG contended the orders were not final and appealable.

## II.    STANDARDS OF REVIEW

A district court's decision regarding personal jurisdiction is reviewed *de novo*.  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).  Additionally, a district court's decision that it has subject matter jurisdiction to hear a motion to enforce arbitral summonses is also reviewed *de novo*.  *Doe v. Fed. Aviation Admin.*, 432 F.3d 1259, 1261 (11th Cir. 2005).  This Court has not explicitly established a standard of review for a district court's enforcement of arbitral summonses.  However, whether an agency had authority to issue an administrative subpoena and a district court's interpretation and application of a statute are reviewed *de novo*.  *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 622 (11th Cir. 1994); *Alexander v. Hawk*, 159 F.3d 1321,

9

1323 (11th Cir. 1998).  Further, a district court's decision to enforce or quash a

subpoena is reviewed for abuse of discretion.  *In re Hubbard*, 803 F.3d 1298, 1307

(11th Cir. 2015).  A district court's decision to deny the equitable remedy of

accounting is also reviewed for abuse of discretion.  *Zaki Kulaibee Establishment*

*v. McFliker*, 771 F.3d 1301, 1310 (11th Cir. 2014).

Finally, this Court reviews a district court's interpretation of a settlement

agreement *de novo*, and decisions regarding motions to enforce settlements for

abuse of discretion.  *In re Managed Care*, 756 F.3d 1222, 1232 (11th Cir. 2014);

*Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000).

"An error of law is an abuse of discretion *per se*."  *Resnick*, 227 F.3d at 1350

(citing *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000)).

## III.   ANALYSIS

### A.   Finality of the Order Enforcing Arbitral Summonses

The district court's order enforcing the arbitral summonses is a final and

appealable order.  The FAA allows an appeal from "a final decision with respect to

an arbitration that is subject to this title."  9 U.S.C. § 16(a)(3).  The Supreme Court

has interpreted this section according to the "well-developed and longstanding

meaning" of a "final decision."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S.

79, 86, 121 S. Ct. 513, 519, 148 L. Ed. 2d 373 (2000).  A final decision "ends the

litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Id.* (internal quotation marks omitted).

An arbitrator may summons an individual to attend the arbitration as a witness.  9 U.S.C. § 7.  But if the individual who was summonsed to testify refuses to attend, the aggrieved party may petition the United States district court to compel the attendance of the individual refusing to attend.  *Id.*  The district court must be in the district where the arbitrator sits and may compel attendance "in the same manner provided by law for securing the attendance of witnesses . . . in the courts of the United States."  *Id.*  Rule 45(b) of the Federal Rules of Civil Procedure provides the manner of serving subpoenas before the court and states that "[a] subpoena may be served at any place within the United States."  Fed. R. Civ. P. 45(b)(2).

The district court's order enforcing the arbitration summonses is a post-judgment order.  Generally, a post-judgment order is final if it disposes of all the issues raised in the motion that initiated the post-judgment proceedings.  *Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012).  However, there is authority holding that interlocutory orders denying motions to quash third-party subpoenas and post-judgment orders compelling discovery are not appealable.  *Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1322, 1325-27 (11th Cir. 2016); *Rouse Constr. Int'l. Inc. v. Rouse Constr.*

11

*Corp.*, 680 F.2d 743, 745-46 (11th Cir. 1982).  This case is distinguishable, however.

*Drummond* and *Rouse* did not consider orders under § 7.[3]  Instead, *Drummond* states the general rule that a final order "is one by which a district court disassociates itself from the case."  816 F.3d at 1322.  In other words, "[i]t ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."  *Id*. (internal quotation marks omitted).  The Court noted, in the context of a civil litigation subpoena, "[d]iscovery orders are ordinarily not final orders that are immediately appealable."  *Id*. (internal quotation marks omitted).  *Rouse* states, "As a general proposition most orders granting or denying discovery are not final orders . . . and therefore are not immediately appealable."  680 F.2d at 745.

Also, in *Drummond* and *Rouse*, the district courts were overseeing discovery.  After discovery concluded, the cases were almost certainly going to return to the district court for litigation on the merits (*Drummond*) or for verification that Rouse Construction Corp. was complying with the arbitration award (*Rouse*).  In contrast, the district court's order in the present case enforcing the arbitral summonses sends the litigants back to the standalone arbitration

---

[3] *Drummond* concerned an order denying a motion to quash a subpoena pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure.  816 F.3d at 1322.  *Rouse* addressed a district court order granting a post-judgment motion to compel discovery pursuant to Rules 37(a) and 69(a) of the Federal Rules of Civil Procedure.  680 F.2d at 744 & n.2, 745 & n.4.

proceeding, and the district court has disposed of everything pending before it.  If MCAG or CIGNA wants the district court to review the arbitration award later on, they will have to submit a separate application to the district court.  9 U.S.C. §§ 9-11.

The Second and Seventh Circuits have determined that they possess jurisdiction under 9 U.S.C. § 16(a)(3) regarding orders compelling compliance under 9 U.S.C. § 7.  *See Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 92-94 (2d Cir. 2006); *Amgen, Inc. v. Kidney Ctr. of Del. Cty., Ltd.*, 95 F.3d 562, 565-67 (7th Cir. 1996).  The Second Circuit concluded it had jurisdiction in *Dynegy* because the "litigation to enforce the subpoena [was] an entirely self-contained court proceeding, and the court's order compelling compliance completely disposed of the case, leaving nothing more for the court to do but enforce the judgment."  451 F.3d at 93.  And in *Amgen*, the Seventh Circuit noted that, "[w]hen the district court confirmed the arbitrator's authority to issue the summons and when it identified a mechanism to compel compliance with that summons, it disposed of all the issues before it."  95 F.3d at 567.

Here, the district court confirmed the arbitrator's authority to issue the summonses and identified a way to compel compliance with them.  Accordingly, this Court has jurisdiction because the district court order enforcing the summonses disposed of all the issues before it.  *See Mayer*, 672 F.3d at 1224.

13

Notwithstanding the district court's disposition of the motion, it retained

jurisdiction to review the arbitrator's decision.  The FAA permits "parties to

arbitration agreements to bring a separate proceeding in a district court to enter

judgment on an arbitration award once it is made (or to vacate or modify it), but

the existence of that remedy does not vitiate the finality of the [d]istrict [c]ourt's

resolution of the claims in the instant proceeding."  *Green Tree*, 531 U.S. at 86,

121 S. Ct. at 520 (citing 9 U.S.C. §§ 9, 10, 11).  Thus, the district court order was

final and its retention of jurisdiction to review the arbitrator's decision does not

destroy the finality of the district court's ruling pertaining to the enforcement of the

arbitral summonses.  *See id*.

### B.     Order Allowing Nationwide Arbitral Summons

#### i.     Subject Matter Jurisdiction

"[T]his court has the obligation to inquire into subject matter jurisdiction

whenever it may be lacking."  *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466,

1468 (11th Cir. 1997).  When a federal court otherwise lacks jurisdiction, it may

possess ancillary jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 379, 114 S. Ct. 1673, 1676, 128 L. Ed. 2d 391 (1994).

The district court properly determined that it had ancillary jurisdiction over

the motion to enforce the summonses.  However, the magistrate judge improperly

found jurisdiction on two additional grounds: (1) the district court appointed the

14

arbitrator; and (2) the parties agreed to jurisdiction of the district court in their arbitration agreement.  The first additional ground is an error of law because appointing an arbitrator pursuant to the FAA does not provide jurisdiction.  *Cf. Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 578, 581-82, 128 S. Ct. 1396, 1400, 1402, 170 L. Ed. 2d 254 (2008).  The second additional ground also constitutes an error of law because jurisdiction cannot be created by an agreement between parties.  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000).

While the FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitration, [] it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 [] or otherwise." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 942 n.32, 74 L. Ed. 2d 765 (1983); *see also Hall*, 552 U.S. at 581-82, 128 S. Ct. at 1402.  However, the magistrate judge did not hold that the district court had federal question jurisdiction.  He instead held that the district court had ancillary jurisdiction because it retained jurisdiction over the settlement agreement.

Ancillary jurisdiction applies when necessary "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380, 114 S. Ct. at 1676.  If a court retains jurisdiction over a settlement agreement, it retains ancillary jurisdiction to enforce the agreement.  *Id*. at 381.

The district court retained jurisdiction "as to all matters relating to [] the interpretation, administration, and consummation of the Agreement."  Because the district court retained jurisdiction concerning matters related to the administration of the Settlement Agreement, it retained jurisdiction over the distribution of Category Two claims.  The arbitration involves disputes regarding distribution of Category Two claims, so the district court has ancillary jurisdiction over the arbitration.

While MCAG was not a party to the Settlement Agreement, the Settlement Agreement contained no provision for arbitration, and the summonsed parties were not parties to the arbitration agreement, the purpose of the arbitration was to resolve disputes involving Category Two claims *that arose out of the Settlement Agreement*, and the subpoenas issued to the summonsed parties were for the purpose of determining whether Category Two claims as provided in the Settlement Agreement were payable.

Accordingly, the district court's determination that it had ancillary jurisdiction is appropriate because the arbitration and arbitral summonses "relat[ed] to" the Settlement Agreement in which the district court retained jurisdiction.[4]

---

[4] CIGNA protests that MCAG lacks standing because it has breached its fiduciary duties to class members it purports to represent.  Though CIGNA invokes the language of standing, its standing argument is a recharacterization of its arguments for why the district court should have granted its motion to enforce the Settlement Agreement and compel an accounting.  We address that motion below in Part III.D.

16

## ii.   Personal Jurisdiction

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987). Section 7 of the FAA allows nationwide service of arbitral summonses. In the present case, the magistrate judge stated, "I find that as far as personal jurisdiction because it [referring to the service of arbitral summonses] is allowed throughout the United States that that meets the personal jurisdiction needs."

"[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others . . . . [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Id*. (internal quotation marks omitted).

The words of 9 U.S.C. § 7 are unambiguous, so the plain meaning must be used. Two concepts are addressed in 9 U.S.C. § 7. First, it addresses service of arbitral summonses. Next, it addresses compelling enforcement of arbitral summonses. These concepts are addressed in turn.

### a.   Service of Arbitral Summonses

Title 9 of the United States Code, Section 7, states that arbitral summonses "shall be served in the same manner as subpoenas to appear and testify before the court . . . ." Without specifically citing the rule by name, this provision references Rule 45 of the Federal Rules of Civil Procedure. Rule 45 governs the service of subpoenas and states that "[a] subpoena may be served at any place within the United States." Fed. R. Civ. P. 45(b)(2). Thus, under 9 U.S.C. § 7, the FAA permits nationwide service of arbitral summonses.

The appellants contend that the Second Circuit has held that Section 7 of the FAA does not authorize nationwide service of process. *Dynegy*, 451 F.3d at 94-96. However, the Second Circuit issued its opinion in *Dynegy* in 2006, well before Rule 45 was amended in 2013 to provide for nationwide service of subpoenas. Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. "When a statute adopts the general law on a given subject, the reference is construed to mean that the law is as it reads thereafter at any given time including amendments subsequent to the time of adoption." *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1352 (5th Cir. 1980) (quoting *Dir., Office of Workers' Comp. Programs v. Peabody Coal Co.*, 554 F.2d 310, 322 (7th Cir. 1977)); *see also Jam v. Int'l Fin. Corp.*, __ U.S. __, 139 S. Ct. 759, 769, 203 L. Ed. 2d 53 (2019) ("[W]hen a statute refers to a general subject, the statute adopts the law on that subject as it exists whenever a question under the statute arises."). Conversely, when a statute references

18

"limited and particular provisions of another statute," it does not include subsequent amendments.  *Longmire*, 610 F.2d at 1352; *see also Jam*, __ U.S. __, 139 S. Ct. at 769 ("[A] statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, without any subsequent amendments.").

Further, *Jam* states that "a general reference to federal discovery rules incorporates those rules 'as they are found on any given day, today included.'"  *Id.* (quoting *El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161, 1164 (10th Cir. 2016) (specifying that the reference to Rule 45 in 35 U.S.C. § 24 is a general reference and refers to Rule 45 as it is today)).  Because Section 7 of the FAA contains a general reference to Rule 45 by requiring subpoenas to be "served in the same manner as subpoenas to appear and testify before the court," it incorporates subsequent changes to Rule 45, including the 2013 amendment permitting nationwide service.  The incorporation of the 2013 amendment to Rule 45 permitting nationwide service therefore distinguishes the present case from the Second Circuit's holding in *Dynegy*.  Accordingly, we conclude that nationwide service of arbitral summonses is appropriate.

> b.   Compelling Enforcement of Arbitral Summonses

Section 7 of the FAA also addresses compelling the enforcement of arbitral summonses when a summonsed party fails to comply.  The section states that if a

person refuses to comply with an arbitral summons, a court "may compel the attendance of such person . . . in the same manner provided by law for securing the attendance of witnesses . . . in the courts of the United States."  9 U.S.C. § 7. Again, without specifically citing the rule by name, this provision references Rule 45 of the Federal Rules of Civil Procedure.  Rule 45 governs securing the attendance of witnesses and states that "the serving party may move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  However, 9 U.S.C. § 7 provides that the district court for the district in which the arbitrators are sitting may compel the attendance of a person refusing to obey an arbitral summons.

Initially, it appears that 9 U.S.C. § 7 and Rule 45 are inconsistent because Rule 45 requires the motion to be filed in the district where compliance is required, while 9 U.S.C. § 7 requires the motion to be filed in the district where the arbitrators sit.  Ultimately however, this inconsistency is avoided because 9 U.S.C. § 7 simply states that compelling attendance must be done in the same manner provided by law (i.e., filing a motion) and does not incorporate Rule 45 regarding *where* motions to compel must be filed.  As a result, we conclude that the plain meaning of 9 U.S.C. § 7 requires that a motion to compel must be filed in the district in which the arbitrators are sitting.

iii.    Fifth Amendment

20

Even if a statute authorizes nationwide service of process, due process requires that the district court evaluate traditional notions of fairness and reasonableness, by weighing the burdens imposed on the summonsed parties against the federal interest, before exercising personal jurisdiction. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946, 948 (11th Cir. 1997). However, when nationwide service is involved, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* at 938-39, 947. Further, we need to balance the federal interest against the burdens imposed on the summonsed parties only if they have "established that [their] liberty interests actually have been infringed" and that "jurisdiction in the forum will make litigation so gravely difficult and inconvenient that [they] unfairly [are] at a severe disadvantage in comparison to [their] opponent." *Id.* at 946, 948 (internal quotation marks omitted).

The summonsed parties in this case assert that requiring non-parties to travel to distant jurisdictions to defend against arbitral summonses serves no federal purpose and that exercising jurisdiction is neither fair nor reasonable. However, "[t]here is nothing inherently burdensome about crossing a state line." *Id.* at 946. Further, the summonsed parties have not shown that the inconvenience of traveling in the present case to litigate their objections to the arbitral summonses rises to the level of constitutional concern. Accordingly, the Court need not consider whether

21

the "federal interest in litigating the dispute in the chosen forum outweighs the

burden imposed" on the summonsed parties.  *Id*. at 948.

### iv.   Pre-Hearing Discovery from Non-Parties

As previously explained, the summonsed parties are non-parties to the

arbitration agreement.  Arbitration is a creature of contract and "an arbitrator's

authority over the parties to an arbitration is limited by the contours of the parties'

agreement and those enumerated in the [FAA]."  *Kennedy v. Am. Express Travel

Related Servs. Co.*, 646 F. Supp. 2d 1342, 1343 (S.D. Fla. 2009).  Non-parties to an

arbitration agreement have not subjected themselves to the authority of an

arbitrator and, therefore, have not limited their rights beyond the FAA.

Accordingly, the authority for an arbitrator to summons non-parties to produce pre-

hearing discovery must be found within the FAA.

Section 7 of the FAA allows an arbitrator to "summon in writing any person

to attend before them . . . as a witness and in a proper case to bring with him . . .

any book, record, document, or paper which may be deemed material as evidence

in the case."  9 U.S.C. § 7.  In *Hay Group, Inc. v. E.B.S. Acquisition Corp.*,

360 F.3d 404, 407 (3d Cir. 2004), then-Judge Alito found that the plain language

of Section 7 "unambiguously restricts an arbitrator's subpoena power to situations

in which the non-party has been called to appear in the physical presence of the

arbitrator and to hand over the documents at that time."  The Second, Fourth, and

Ninth Circuits have reached similar conclusions that Section 7 is unambiguous and does not provide arbitrators with the authority to order non-parties to provide documents outside of the presence of the arbitrator. *Life Receivables Tr. v. Syndicate 102 at Lloyds of London*, 549 F.3d 210, 216 (2d Cir. 2008) ("The language of section 7 is straightforward and unambiguous.  Documents are only discoverable in arbitration when brought before arbitrators by a testifying witness."); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275-76 (4th Cir. 1999) (arbitral summons powers are "limited to those created by the express provisions of the FAA," which do not include "the authority to order non-parties to . . . provide the litigating parties with documents during prehearing discovery," but a party may petition the court for pre-hearing discovery upon a showing of necessity); *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 708 (9th Cir. 2017) ("[S]ection 7 of the FAA does not grant arbitrators the power to order third parties to produce documents prior to an arbitration hearing.").  However, the Eighth Circuit has held that while Section 7 does not "explicitly authorize the arbitration panel to require the production of documents for inspection by a party[,] . . . implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents

for review by a party prior to the hearing."[5]  *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870-71 (8th Cir. 2000).

After analyzing these cases, we agree with the Second, Third, Fourth, and Ninth Circuits and hold that the plain language of the statute is unambiguous in requiring witnesses to appear before an arbitrator and bring any documents with them, thus prohibiting pre-hearing discovery from non-parties.  The FAA confers the power to compel a non-party to attend an arbitration hearing and bring documents, but it is silent regarding the power to compel documents from non-parties without summoning the non-party to testify.  *See* 9 U.S.C. § 7.  Thus, the FAA implicitly withholds the power to compel documents from non-parties without summoning the non-party to testify.  And if Congress intended the arbitrators to have the broader power to compel documents from non-parties without summoning the non-party to testify, it could have said so.  Accordingly, we conclude that 9 U.S.C. § 7 does not permit pre-hearing depositions and discovery from non-parties.

We respectfully decline to follow the Eighth Circuit's reasoning that the "interest in efficiency is furthered by permitting a party to review and digest

---

[5] The Sixth Circuit has also authorized a subpoena to a non-party for pre-hearing documents, but while the court looked to the FAA for guidance in the labor arbitration case, its holding was limited to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.  *Am. Fed'n of Tel. & Radio Artists, AFL-CIO v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999).

relevant documentary evidence prior to the arbitration hearing." *In re Sec. Life Ins. Co. of Am.*, 228 F.3d at 870-71. Simply put, because the plain meaning of the statute does not permit pre-hearing discovery from non-parties, the policy argument does not supersede the text of the statute.

The summonses issued in the present case indicate that the non-parties shall attend a hearing before the arbitrator. The hearing will be held in Miami, Florida, but the testimony of the non-parties will be taken in their respective locations across the country and transmitted via video conference. Additionally, the summonses directed the non-parties to bring certain documents to the video conference.

The first issue with the summonses is that the non-parties will not be in the physical presence of the arbitrator. Instead, the arbitrator will be located in Miami while the non-parties are in their respective states, and the hearing will take place via video conference. We hold that the district court abused its discretion in affirming the magistrate judge's order granting Managed Care's motion to compel the non-parties to comply with the summonses because the district court lacked authority under Section 7 to do so.

"It's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute." *New Prime v. Oliveira*, __ U.S. __, 139 S. Ct. 532, 539-40,

202 L. Ed. 2d 536 (2019) (alterations adopted) (internal quotation marks omitted). Congress passed Section 7 in 1925, so we must ascertain the meaning of "attendance" and "before" in Section 7's grant of authority to district courts to "compel the *attendance* of such person or persons *before* said arbitrator . . . in the same manner provided by law for securing the *attendance* of witnesses . . . in the courts of the United States" as of 1925.[6]  9 U.S.C. § 7 (emphasis added); *see also Oliveira*, __ U.S. at __, 139 S. Ct. at 539-40 & 540 n.1 (looking to dictionaries published in the decades surrounding 1925 to determine the meaning of "contracts of employment" in Section 1 of the FAA).

Looking to dictionaries from the time of Section 7's enactment makes clear that a court order compelling the "attendance" of a witness "before" the arbitrator meant compelling the witness to be in the physical presence of the arbitrator.  In 1925, "attendance" meant the "[a]ct of attending," and "attend" meant "be present at."  *See, e.g.*, H.W. Fowler & F.G. Fowler, *The Concise Oxford Dictionary of Current English* 52 (1926).  Similarly, "before" meant "in [the] presence of."  *Id.* at 74.  And "presence" meant "place where person is," while "present" meant "[b]eing in the place in question."  *Id.* at 650.  Thus, Section 7 does not authorize district courts to compel witnesses to appear in locations outside the physical

---

[6] United States Arbitration Act, Pub. L. No. 68-401, § 7, 43 Stat. 883, 884 (1925).

presence of the arbitrator, so the court may not enforce an arbitral summons for a witness to appear via video conference.

The second issue with the video conference concerns the production of documents. The summonses do not indicate how the arbitrator will view and consider the documents brought by the non-parties to the video conference. The district court and magistrate judge went beyond the directive of the summonses to indicate that a video conference is possible and permissible because documents can be provided in advance to the attorneys and arbitrator, allowing the arbitrator to make decisions as the evidence is presented. The fundamental problem with the district court's attempt at resolving the presentation of the documents is that providing the necessary documents to the arbitrator and attorneys prior to the hearing constitutes pre-hearing discovery that is not authorized by the FAA. *CVS Health Corp.*, 878 F.3d at 708. Accordingly, the provision of documents prior to the hearing is not the same as appearing in the physical presence of an arbitrator and bringing documents at the time of the hearing. As a result, this requirement is not enforceable.

"The [arbitrator's] power to require a non-party to bring items with him clearly applies only to situations in which the non-party accompanies the items to the arbitration proceeding, not to situations in which the items are simply sent or brought by a courier." *Hay Grp.*, 360 F.3d at 407. We look beyond the plain

language of a statute only if applying the statute in accordance with the plain

language would lead to an absurd result. *Consol. Bank, N.A. v. U.S. Dep't of*

*Treasury*, 118 F.3d 1461, 1463-64 (11th Cir. 1997).  Enforcing Section 7's

prohibition on pre-hearing discovery does not lead to an absurd result because it

will force the parties "to consider whether the documents are important enough to

justify the time, money, and effort that the subpoenaing parties will be required to

expend if an actual appearance before an arbitrator is needed." *Hay Grp., Inc*., 360

F.3d at 409.  This leads to a redistribution of bargaining power where "the party

seeking the documents cannot simply obtain a subpoena requiring the documents

to be shipped from one warehouse to another; instead, the party [seeking the

documents] will be forced to appear at a proceeding during which the documents

are produced." *Id*. at 411.  Additionally, enforcing the bar on pre-hearing

discovery is beneficial because it will impose some inconvenience on the arbitrator

that will induce the arbitrator to weigh whether the production of the documents is

necessary. *See id.* at 414 (Chertoff, J., concurring).

Accordingly, we interpret the plain meaning of Section 7 as (1) requiring

summonsed non-parties to appear in the physical presence of the arbitrator as

opposed to a video conference or teleconference; and (2) prohibiting pre-hearing

discovery.  The district court abused its discretion in enforcing the arbitral

summonses because the court lacked power under Section 7 to order the witnesses to appear at the video conference and provide pre-hearing discovery.

## C.   The Finality of the Order Denying Enforcement of the Settlement Agreement

The district court's order denying CIGNA's motion to enforce the Settlement Agreement and compel an accounting constitutes a post-judgment order that is final and appealable.  An order is final when it disposes of all the issues raised in the motion that initiated the post-judgment proceedings.  *Mayer*, 672 F.3d at 1224.  While CIGNA's motion to enforce the Settlement Agreement and compel an accounting was not the motion that triggered the post-judgment proceeding, CIGNA could have filed this motion to start a post-judgment proceeding even if MCAG had not already filed its petition to enforce the arbitral summonses. Further, the order denying CIGNA's motion disposed of the entire post-judgment action, leaving nothing more for the district court to do.  Accordingly, it is properly characterized as a final and appealable order.

## D.   The District Court's Failure to Enforce the Settlement Agreement and Compel an Accounting

The claims pending in the arbitration address Category Two claims that have not yet been paid, whereas CIGNA's motion seeks an accounting of what MCAG has done with the proceeds of the claims that CIGNA has already paid.  The district court denied CIGNA's motion to enforce the Settlement Agreement and

compel an accounting on the ground that "[t]he Arbitrator shall be allowed to
arbitrate the claims in the manner he sees fit."  However, the district court abused
its discretion by allowing the arbitrator to review the claims that have already been
paid, because the district court has a duty to class members to ensure that they
receive what they are entitled to under the Settlement Agreement and may not
defer to the arbitrator to compel an accounting of the claims that fall outside the
ambit of the arbitration agreement.

The district court retained jurisdiction "as to all matters relating to [] the
interpretation, administration, and consummation of the [Settlement] Agreement."
Because the district court retained jurisdiction over the administration of the
Settlement Agreement, which set the terms for how CIGNA would compensate
class members, it has a responsibility to ensure the class members receive that to
which they are entitled under the Settlement Agreement.

> The district court's explicit retention of jurisdiction is consistent with
> its responsibility, pursuant to Fed. R. Civ. P. 23, to protect the interests
> of class members . . . .  Retention of jurisdiction is enhanced when the
> court is attempting to protect members of a class action: In a class
> action, the district court has a duty to class members to see that any
> settlement it approves is completed, and not merely to approve a
> promise . . . to pay the relief to which it has decided class members are
> entitled.

*Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1023 (7th Cir. 1991) (citing *In re
Corrugated Container Antitrust Litig.*, 752 F.2d 137, 141 (5th Cir. 1985)) (internal

block quotation omitted); *see also United States v. City. of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980) (explaining that courts, in their "role as a fiduciary" and "guardian for the unrepresented class members," must apply "careful scrutiny . . . to guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members").

In the present case, the district court retained jurisdiction "as to all matters relating to [] the interpretation, administration, and consummation of the Agreement." The motion to enforce the Settlement Agreement and compel an accounting was initiated because CIGNA paid approximately $25 million to MCAG for class members' claims submitted pursuant to the Settlement Agreement and, based on the record before the Court, it does not appear that class members received a significant portion of the funds to which they are entitled. CIGNA paid MCAG approximately $11 million *prior to* arbitration to distribute to class members for claims that were not the subject of the arbitration agreement and $14 million *during* arbitration for Category Two claims.[7] CIGNA paid these funds to MCAG *solely* for distribution to class members for their approved claims as required by the Settlement Agreement.

---

[7] MCAG and CIGNA agreed to arbitrate "final resolution of all issues relating to whether the claims for Category Two Compensation under the Settlement Agreement . . . submitted by MCAG on behalf of Class Members are payable pursuant to that agreement . . . ." Because CIGNA already has paid $14 million in Category Two claims, these claims are no longer "payable," and so they fall outside the ambit of the arbitration agreement.

MCAG's Chief Financial Officer, Douglas Perry, filed a sworn declaration stating that, "CIGNA paid approximately $11 million to MCAG prior to the Arbitration in connection with other types of claims.  Those moneys were disbursed to class members."  However, MCAG subsequently admitted during oral argument that it distributed to class members only $7.5 million of the $11 million CIGNA paid for claims that were not the subject of arbitration.  At a minimum, this discrepancy indicates that class members have not received approximately $3.5 million of the funds to which they are entitled under the Settlement Agreement.  Therefore, the district court should require an accounting regarding funds CIGNA paid to MCAG for claims that were not the subject of the arbitration. *Alexander*, 927 F.2d at 1023.

MCAG also admitted during oral argument that it has not distributed any of the $14 million CIGNA paid to MCAG for Category Two claims since the arbitration began.  MCAG further admitted that only approximately $4.5 million remains of the $14 million CIGNA paid to MCAG for class members' Category Two claims.  The physician agreements between MCAG and class members indicate that MCAG would retain at most 30 percent of the recovery amount. Therefore, even if MCAG distributes the remaining $4.5 million to claimants, a total of approximately $12 million would be distributed to class members and

MCAG would retain over 50 percent of the total amount paid by CIGNA. This is significantly more than the 30 percent agreed to in the physician agreements.

An accounting will provide information regarding how settlement proceeds have been distributed because there is no formal record of what MCAG did with approximately $3.5 million in paid claims that were not the subject of the arbitration and $9.5 million in paid Category Two claims that should have gone to class members under the Settlement Agreement. *See Alexander*, 927 F.2d at 1023. Additionally, MCAG is in possession of $4.5 million of the Category Two funds and has not indicated how those funds will be paid to the class members who are entitled to receive them.

## IV.   CONCLUSION

This litigation has been ongoing for almost twenty years, but it appears that most of the money CIGNA paid to MCAG for the class members has not been distributed. The district court should require an expeditious accounting of all funds CIGNA previously paid to MCAG for the benefit of the class members. The accounting should include any interest earned on the funds paid to MCAG.[8]

---

[8] We deny as moot CIGNA's first motion to supplement the record. On remand, CIGNA may move the district court for permission to refile these documents on the district court's docket. We also deny as moot CIGNA's motion for clarification regarding oral argument.

The judgment of the district court is **REVERSED**, and this case is

**REMANDED** for further proceedings consistent with this opinion.

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 18, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-13761-JJ
Case Style: Managed Care Advisory Group, L v. CIGNA
District Court Docket No: 1:00-md-01334-FAM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
### Bill of Costs

Court of Appeals Docket No. 17-13761

Managed Care Advisory Group, LLC _____ vs. Epiq Systems, Inc., et al.

A Bill of Costs should only be filed when the Clerk's Office has advised a party that the party is entitled to costs. FRAP 39 and 11th Cir. R. 39-1 govern costs taxable in this court and the time for filing the Bill of Costs. A motion for leave to file out of time is required for a Bill of Costs not timely received.

### INSTRUCTIONS

The appellate docketing fee is set in the fee schedule issued pursuant to 28 U.S.C. § 1913. However, the $5 fee for filing a notice of appeal is recoverable as a cost in the district court. In the grid below, multiply the number of original pages of each document by the total number of documents reproduced to calculate the total number of copies reproduced. Multiply this number by the cost per copy ($.15 per copy for "In-House", up to $.25 per copy for commercial reproduction, supported by receipts) showing the product as costs requested.

| | Repro. Method (Mark One) In-House | Comm* | No. of Original Pages | Total No. Documents Reproduced | Total No. of Copies | COSTS REQUESTED | CT. USE ONLY COSTS ALLOWED |
|---|---|---|---|---|---|---|---|
| Appellate Docketing Fee | — | — | — | — | — | 505.00 | 500 |
| Appellant's Brief | x | | 71 | 7 ✓ | 497 | 74.55 | 74.55 |
| Appendix | x | | 72 | 5 ✓ | 360 | 54.00 | 54.00 |
| Appellee's Brief | | | | | | | |
| Reply Brief | x | | 43 | 7 ✓ | 301 | 45.15 | 45.15 |
| | | | | | | | |
| | | | | | | | |
| *Note: If reproduction was done commercially, receipt(s) must be attached. | | | | TOTAL | | $678.70 REQUESTED | $ 678.70 ALLOWED |

I hereby swear or affirm that the costs claimed were actually and necessarily incurred in this appeal and that I have served this Bill of Costs on counsel/parties of record.

Signature: Kevin H. Kono   *Digitally signed by Kevin H. Kono DN: CN = Kevin H. Kono email = kevinkono@dwt.com C = US O = Davis Wright Tremaine LLP Date: 2019.09.24 10:05:26 -07'00'*

Date Signed: 9/24/2019

Attorney Name: Kevin H. Kono
(Type or print your name)

Attorney for: Epiq Systems, Inc.
(Type or print name of client)

E-mail: kevinkono@dwt.com

Phone: (503) 241-2300

Street Address/City/State/Zip: 1300 S.W. Fifth Ave, Ste 2400, Portland, OR 97201

### FOR COURT USE ONLY

Costs are hereby taxed in the amount of $ 678.70 against Appellant

and are payable directly to Appellee

David J. Smith, Clerk of Court

By: _Tina Portin_   DATE: 9/26/2019
Deputy Clerk

Issued on: _____

BOC Rev.: 6/17

ISSUED AS MANDATE 10/17/2019