**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Master File No.: 00-1334-MD-MORENO-O'SULLIVAN

MDL NO.: 1334

IN RE: MANAGED CARE LITIGATION

_____

**MOTION TO REMOVE MCAG AND FOR SANCTIONS FOR LITIGATION ABUSE AND FOR EQUITABLE AND OTHER RELIEF[1]**

Cigna Healthcare ("CIGNA"), by and through undersigned counsel, files this Motion for Sanctions for Litigation Abuse and for Equitable and Other Relief (the "Motion"),[2] and in support thereof states as follows:

**I.     INTRODUCTION**

This Motion addresses the remedies that should be granted in connection with MCAG's misappropriation of Class Settlement Funds and other malfeasance. How can a third party, such as MCAG, intervene in a Class Action, use the auspices of this Court and the arbitrator appointed by this Court to misappropriate the vast majority of Class Settlement Funds, engage in perjury, present fabricated evidence, engage in spoliation, violate this Court's orders, and still be permitted to continue to collect and misuse Class Settlement Funds as an "agent" of unsuspecting Class Members? This outrageous behavior and abuse of the tribunals should not be permitted. Below, CIGNA details the misconduct of MCAG, all under the guise as serving as an agent of Class Members, who, to this day, have not been advised of these egregious events.

---

[1] This brief contains or attaches Confidential Materials, which are being filed under seal pursuant to this Court's standing order governing confidentiality. *See* ECF No. 6648 (attached hereto as **Ex. 1**).

[2] CIGNA adopts and incorporates by reference, its Renewed Motion to Enforce Settlement and Motion for Sanctions for Spoliation and Discovery Abuse.

1

## II.     ARGUMENT

### A. Disgorgement, Restitution and Other Equitable Remedies Are Warranted

It is well-settled that federal courts have the inherent authority to grant equitable remedies to address abuses or malfeasance by a party or by the agent of class members. In *Scheck Invs. LP v. Kensington Mgmt. Inc.*, No. 04-21160, 2009 WL 1916501 (S.D. Fla. July 2, 2009), Mutual Benefits Corporation ("MBC") sold interests in life insurance policies to investors. Following the deposits of funds into an escrow, MBC promised to pay premiums, etc. MBC's activities however turned out to be a multi-faceted fraud. The case recognizes that in order for the court to come to a conclusion, an independent party had to conduct an accounting (as here). The court followed other cases which held that the equitable remedy of disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the law. *See also SEC v. Kirkland*, 521 F. Supp. 2d 1281 (M.D. Fla. 2007); *Bailey v. St. Louis,* 268 So.3d 197 (Fla. 2d DCA 2018) (finding that disgorgement and restitution are designed not to permit a wrongdoer to profit and to deter others from similar conduct); *Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241 (11th Cir. 2003) (same).

Although in the context of class objectors raising objections to foster legal fees for the objectors' lawyers, *Pearson v. Target Corp.,* 968 F.3d 827 (7th Cir. 2020), demonstrates the fiduciary obligations owed by anyone who intervenes in the class settlement process to benefit themselves, and the district court's broad authority to remedy any malfeasance that arises in such a situation. In reversing, and holding that the District Court should have considered disgorgement and a constructive trust as a result of the objectors and their counsel raising objections to benefit themselves at the expense of the Class, the Seventh Circuit described the fiduciary duties of anyone who seeks to advantage themselves with class settlement funds. *Id*. at *3-5. The court also supported the district court's broad authority to exercise its equitable powers to return funds to class members, and where it could not return the funds to class members, to take those funds out of the hands of those who abused their fiduciary duties to the class. Further, in the context of taking class funds, the court held that no deductions could be made for the offender's "costs", but the entire amount taken must be disgorged or placed in a constructive trust or a *Cy Pres* distribution.

In the context of holding and misappropriating class funds, it has been often held that fees or expenses taken from class funds without prior approval of the class court are impermissible

and must be returned. *Alexander v. Chi. Park Dist.*, No. 79 C 2242, 1989 WL 121288 (N.D. Ill. Oct. 4, 1989); *aff'd Alexander v. Chi. Park Dist.*, 927 F.2d 1014 (7th Cir. 1991) (cited with approval in *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1162 (11th Cir. 2019) (the "Eleventh Circuit Opinion")).

Here, of course, MCAG was not party to the Class Settlement or counsel to the Class, and this Court already awarded $55 million in fees to Class Counsel. No additional fees or costs were contemplated by the Settlement Order. MCAG purposefully did not present any disclosure to the Court requesting that additional fees or funds be taken from Class Settlement Funds. Here, we have a third party interloper (MCAG), soliciting Class Members for contingent fee agreements that were not presented to or approved by the Court, whose effect was to eviscerate the settlement fund intended for the Class Members. Restitution and disgorgement are called for. *See Bailey v James St. Louis,* 196 So. 3d 375 (Fla. 2d DCA 2016); *Bailey,* 268 So.3d 197.

Similarly, *Warnell v. Ford Motor Co.*, 205 F. Supp. 2d 956 (N.D. Ill. 2002) dealt with a class settlement where the court provided a $12 million fund, $9 million of which was to be used for the class and $3 million of which was to be used for attorney fees. It later came to the attention of the court that class counsel had additional contingent fee agreements for additional fees with class members, although those contingency agreements had never been approved by the court. The court held that the $3 million to class counsel was for "all" services, expenses and costs incurred in the settlement and for "all" expenses, administration and costs reasonably necessary in implementing the settlement agreement. The court further held that the failure to disclose the contingency agreements was not innocent but it was intentionally deceptive. *Id*. at 959. The court also held that disgorgement of the contingent fees as a sanction was reasonable. *Id*. at 961.

The court also noted that the improper collection of additional contingent fees increased the total award of fees and costs to approximately 29% of the $12 million fund. The impact on the awards to the class members was severe because the contingent fees came directly from their awards. *Id.* at 962. The court also stated that it was impossible to speculate what the defendant would have agreed to pay, had it known that the plaintiffs would have to bear additional fees and costs out of the fund that the defendant created. The same holds true for CIGNA. Here, of course, the numbers are staggering. Class Counsel was awarded $55 million, separate and apart

3

from the monies to be provided to Class Members. Yet, MCAG took at least an additional $17.5 million of approximately $25 million in Class Settlement funds, and the interest thereon.

Finally, the court in *Warnell* stated that it would have never approved a settlement that required the class plaintiffs to bear the burden of additional fees not contemplated in the class settlement agreement. The court found that the failure to disclose the intent to enforce fee agreements entered into after the settlement agreement, was deceptive, and that the persons trying to take additional fees and costs after the settlement was approved, may not profit from this behavior. *Id*. at 962. As a result, the court ordered counsel to disgorge all contingent fees collected from the plaintiffs and required proof of repayment with interest, and determined the fee agreement to be unenforceable. *Id*. at 963.

Likewise, in *Brand vs. Old Republic Nat'l Title Ins. Co.*, 797 So. 2d 643 (Fla. 3d DCA 2001), a third party took money from an escrow fund established by Transamerica. The court found that when those having a fiduciary duty over escrow funds, misappropriate those funds, it has inherent authority to sanction the persons who misappropriated the funds in order to preserve its authority and grant effective relief. Equitable remedies, include granting restitution and requiring the fiduciary to disgorge ill-gotten gains, are available against those who hold funds for others. *SEC v. Commw. Chem. Sec. Inc.*, 574 F.2d 90 (2d Cir. 1978).

In *Pidcock v. Sunnyland Am. Inc*., 854 F.2d 443 (11th Cir. 1998), the Eleventh Circuit held that the wrongdoer's profits must be disgorged. Equity does not look with favor on unjust enrichment of one person at the expense of another. The court also held in footnote 7 that although the disgorgement principle has been applied primarily in defrauded seller situations, it is not necessarily so limited. *See also Janin v. Taylor*, 344 F.2d 781 (1st Cir. 1965).

The Eleventh Circuit has also held that the district court's equitable powers are extensive and include the power to grant restitution and disgorgement. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996). District Courts have the power to do equity and mold each decree to the necessities of the particular case. The Court even has the power to bind persons not originally connected with the litigation to be brought before the Court so that their rights and obligations may be determined. The Court may also take whatever actions are necessary under the circumstances so that equity can do complete justice. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). One of those equitable remedies is disgorgement. *Id.* at 398-99. Another similar remedy is restitution. The court held that nothing is more clearly the subject matter of an

equitable resolution than the recovery of that which has been illegally acquired. *Id*. at 399. The equitable jurisdiction of the district court authorizes a court to decree restitution and disgorgement.

### B. Fabricated Evidence, Perjury and Misrepresentations to the Tribunals Require Sanctions

In addition to taking Class Members' settlement funds, MCAG presented fabricated evidence in the form of summaries and charts to influence the Tribunals. (*See* Renewed Motion to Enforce Settlement Agreement and exhibits thereto [ECF No. 6685]; Pollack Declaration [ECF No. 6685-6]; and SAM Report [ECF No. 6618-3]). In addition, MCAG's CEO perjured himself numerous times. *Id*. MCAG's CFO filed a false affidavit in this Court. *Id*; *see* the Eleventh Circuit Opinion (*Id* at 1162). MCAG invented numerous "defenses' and excuses for its misappropriation of Class Settlement Funds that turned out to be false, in attempts to mislead the Tribunals. *Id*. MCAG's attempts to mislead the Tribunals with false evidence is a separate basis to grant the remedies sought. *Id*.; *see also e.g.*, *Long v. Swofford*, 805 So. 2d 882, 884 (Fla. 3d DCA 2001). In fact, when the falsity of sworn testimony is apparent, it is an abuse of discretion not to dismiss the fraudulent plaintiff's claims. *See e.g.*, *Metro. Dade Cnty. v. Martinsen*, 736 So. 2d 794, 795-96 (Fla. 3d DCA 1999).

Federal district courts possess the inherent power to sanction litigants for abusive practices during the course of litigation. *See e.g., Cerruti 1881 S.A. v. Cerruti, Inc.,* 169 F.R.D. 573, 582-83 (S.D.N.Y. 1996); *Vargas v. Peltz,* 901 F. Supp. 1572, 1579 (S.D. Fla. 1995); *Sun World, Inc. v. Lizarazu Olivarria,* 144 F.R.D. 384, 390 (E.D. Cal. 1992). These inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Quela v. Payco-Gen. Am. Credits, Inc.,* No. 99 C 1904, 2000 WL 656681, at *6 (N.D. Ill. May 18, 2000) (quoting *Chambers v. NASCO,* 501 U.S. 32, 43 (1991).) This power to impose sanctions on the parties to litigation is deeply rooted in the common law tradition. *Malautea v. Suzuki Motor Co.., Ltd.,* 987 F.2d 1536, 1545-46 (11th Cir. 1993), *cert. denied,* 114 S. Ct. 181 (1993). Where "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense," dismissal is appropriate. *Aoude v. Mobile Oil Corp.,*

5

892 F.2d 1115, 1118 (1st Cir. 1989). Such a fraud has been perpetrated here, justifying imposition of the most severe sanctions.

The circumstances in the present case are more egregious than those presented in various cases in which courts have imposed sanctions. For example, in *Pope v. Federal Express Corp.,* 138 F.R.D. 675 (W.D. Mo. 1990), *aff'd in relevant part,* 974 F.2d 982 (8th Cir. 1992), a former employee sued her former supervisor and Federal Express alleging sexual harassment by the supervisor. During discovery the plaintiff produced a photocopy of an alleged handwritten note from her former supervisor which read, "Carol, *you* 'feel' good! Danny." *Pope,* 138 F.R.D. at 677 (emphasis in original). The district court determined the document was fabricated. *Id.* at 677-78. The *Pope* court also concluded that the plaintiff lied in her deposition about the note, and knowingly made false references to the note in various discovery responses and pleadings. *Id.* at 678-80. The district court found:

> Clear and convincing evidence has been presented that *plaintiff knowingly advanced a document which she knew was not what she represented it to be,* and that she relied upon it in her pleadings. She repeatedly attempted to promote the use of the document on her behalf in this litigation, even though she knew it was manufactured. She acted in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system. Accordingly, sanctions pursuant to Rules 11, 26(g), and 41(b). may be awarded to defendants at plaintiff's expense.

*Id.* at 683 (emphasis added). Accordingly, the court held that plaintiff and her attorney should be sanctioned because of her repeated false statements and references to the manufactured document in the litigation. The court entered dismissal with prejudice of the action under Rule 41(b) and its own inherent powers to impose sanctions upon a party which "has engaged in bad faith or abusive practices in conducting litigation." *Id.* at 682-83. On appeal, the Eighth Circuit Court of Appeals affirmed the decision of the district court to dismiss the action with prejudice. *Pope,* 974 F.2d 982. In doing so, the court stated: "The dismissal of Pope's suit was based on the district court's finding that *manufactured evidence and perjured testimony had been introduced in an effort to enhance the case through fraudulent conduct.* When a litigant's conduct abuses the judicial process, the Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court." *Id.* at 984 (emphasis added).

Presenting fabricated evidence requires the imposition of the most severe of sanctions. *GFN Corp. v. KPMG Peat Marwick,* 820 So. 2d 944 (Fla. 3d DCA 2002); *Tramel v. Bass,* 672

So. 2d 78 (Fla. 1st DCA 1996); *Empire World Tower LLC v. CDR Creances, S.A.S.*, 89 So. 3d 1034 (Fla. 3d DCA 2012); *Babe Elias Builders Inc. v. Pernick,* 765 So. 2d 119 (Fla. 3d DCA 2000); *Bertrand v. Belhomme*, 892 So. 2d 1150, 1152 (Fla. 3d DCA 2005). The rationale underlying the sanction is that "a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends." *Id.* (quoting *Metro. Dade Cnty.*, 736 So. 2d at 795)); s*ee also Vargas*, 901 F. Supp. at 1582 (finding that plaintiff's persistent pattern of misconduct, which included a "fraud on the court," fabrication of evidence, and obstruction of the discovery process, covered the "full range of litigation abuses" and warranted dismissal of the entire action.)

In *Cerruti 1881 SA.,* 169 F.R.D. 573, the court found that because fabrications were pervasive and involved issues going to the "heart of the case," the non-offending party was entitled to judgment, including fees and costs. In issuing these sanctions, the *Cerruti* court relied on its inherent powers to sanction a party for bad faith litigation conduct. *Id.* at 582-83 (citing *Chambers,* 501 U.S. at 46); *see also Sun World,* 144 F.R.D. 384 (entering default when defendant relied on fraudulent document created to escape liability and perpetuated the fraud through perjured testimony). Likewise, in *Eppes v. Snowden,* 656 F. Supp. 1267 (E.D. Ky. 1986), the court held:

> The remedy must serve as a deterrent to the defendant and all others that might be similarly tempted to manufacture documentary evidence and attempt to cover it up with perjured testimony. The remedy must be sufficient to serve universal notice that this conduct will not be tolerated. The remedy therefore must go further than a dismissal of the counterclaim.

*Id.* at 1281. What is crystal clear is that a court must prevent and punish misconduct and cannot let the party that perpetrated the misconduct continue to use that forum.

In *Drummond v. Collingsworth,* No. 2:11-CV-3695-RDP, 2015 WL 13768169, **8-15 (N.D. Ala. Dec. 7, 2015), the court held that misrepresentations and/or material omissions constituted a fraud on the court. The court explained that those acts necessarily strike at the very foundation of the adversary system and the judicial process. *Id.* at 18; *see also Drummond Co. v. Conrad & Scherer*, *LLP*, 885 F.3d 1324, 1332 (11th Cir. 2018) (stating that the lawyers made false statements to the court by failing to disclose certain information and that "fraud on the Court" is a crime). As the Court in *Vargas* quoted:

> Dismissal of a lawsuit, to be sure, is among the harshest of sanctions. However, the severity of the misdeed here compels such harshness. Permitting this lawsuit to proceed would be an open invitiation to abuse the judicial process. Litigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Vargas,* 901 F.Supp. at 1582 (quoting *Pope*, 138 F.R.D. at 683). The inherent powers of tribunals to sanction "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Quela,* 2000 WL 656681, *6 (quoting *Chambers, ,* 501 U.S. at 43); *Aoude,* 892 F.2d at 1118. MCAG's reliance on fabricated evidence and perjured testimony to aid it in substantiating its claims or defending its actions justifies the sanctions requested.

"It is well-settled law 'that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends.'" *Metro. Dade Cnty.*, 736 So. 2d at 795. "[W]here a party lies about matters pertinent to his own claim, or a portion of it, and perpetrates a fraud that permeates the entire proceeding, dismissal of the whole case is proper." *Cox v. Burke*, 706 So. 2d 43, 47 (Fla. 5th DCA 1998). Claims are regularly dismissed when the claimant provides false sworn testimony and evidence. *See, e.g.*, *Leo's Gulf Liquors v. Lakhani*, 802 So. 2d 337, 342-33 (Fla. 3d DCA 2001); *Ramey v. Haverty Furniture Cos., Inc.*, 993 So. 2d 1014, 1019 (Fla. 2d DCA 2008); *DiStefano v. State Farm Mut. Auto. Ins. Co.*, 846 So. 2d 572, 576 (Fla. 1st DCA 2003); *Morgan v. Campbell*, 816 So. 2d 251 (Fla. 2d. DCA 2002); *Long*, 805 So. 2d at 884; *Desimone v. Old Dominion Ins. Co.*, 740 So. 2d 1233, 1234 (Fla. 4th DCA 1999) (same); *Metro. Dade Cty.*, 736 So. 2d at 795-96 (same); *Cox*, 706 So. 2d at 47 (same); *Savino v. Fla. Drive-In Theatre Mgmt., Inc.*, 697 So. 2d 1011, 1012 (Fla. 4th DCA 1997) (same); *Vargas*, 901 F. Supp. 1572.

MCAG's consistent perjury, misleading information, obstruction of discovery, spoliation and recently fabricated charts cannot be countenanced. A party's repeated misrepresentations, uncovered only by the assiduous efforts of opposing counsel, constitute such serious misconduct that dismissal of the claims is required. *O'Vahey v. Miller*, 644 So. 2d 550, 551 (Fla. 3d DCA 1994); *see also* Blackwell, Donald, THE FLORIDA BAR JOURNAL, "THE 'BIG LIE': CONTRARY TO

8

What You May Have Heard on the Evening News, False and Misleading Testimony by a Civil Litigant Can and Does Have Serious Consequences," 73 Fla. B. J. 20 1999.

The perjury, fabrication of evidence, and misleading statements are to the detriment of this Court, the Arbitration, the Class Members, and CIGNA – which paid the Class Settlement Funds to MCAG. This Court must protect the Class, CIGNA, and the process, and enforce the Settlement Agreement by removing MCAG's as an agent of the Class Members, voiding MCAG's agreements with the Class Members, ordering restitution and disgorgement and awarding CIGNA attorney's fees and costs, including expert costs.

Yet, CIGNA is not seeking a remedy that denies the Class Members payments on any remaining legitimate claims, but one that merely removes the perpetrator of fabricated evidence, fraud and perjury from the proceedings, forces those responsible to repay the funds taken, and pay CIGNA's fees and costs.

### C. MCAG'S PHYSICIANS AGREEMENTS MUST BE DECLARED VOID

MCAG misappropriated approximately 75% of Class funds relying on its phony "indemnity" claims against its own clients – the Class Members. (*See* SAM Accounting Report [ECF No. 6618, at EX. 3 at 31-32]; Declaration of Richard Pollack [ECF No. 6685-6]). The remaining approximately 25% was taken via MCAG's "retention" (or contingent fee), in agreements not presented to, or approved by, this Court. (See Renewed Motion to Enforce Settlement Agreement) As a sanction for MCAG's egregious actions, and based on clear legal precedent, MCAG's so-called Physicians Agreements must be declared void *ab initio*.

First, the "retention amount"[3] MCAG took from the Class Settlement Funds cannot be tied to any particular Physicians Agreement with any particular Class Member (*See* SAM Accounting Report [ECF No. 6618, at EX. 3 at 31-32]; Declaration of Richard Pollack [ECF No. 6685-6]). Therefore, since MCAG cannot provide contemporaneous documentary support for the retention amounts due from each of its separate clients, MCAG has no right to such funds. The remainder of Class Settlement Funds taken by MCAG were misappropriated pursuant to MCAG's phony "indemnity" defense, discussed in the Renewed Motion to Enforce Settlement and below. Therefore, since no funds are legitimately due to MCAG, and MCAG breached its

---

[3] The "retention" is the contingency fee MCAG claims it is due, based on its Physicians Agreements, It is the only amount that MCAG does not claim was disbursed based on its "indemnity" defense.

9

fiduciary duty to the Class Members by misappropriating the Class Settlement Funds, the Physicians Agreements should be voided.

Second, and more importantly, The Manual on Complex Litigation, Fourth, § 21.662, forewarned of the misconduct by MCAG:

> The court and counsel should be alert to the possibility of persons soliciting class members after the settlement and offering to provide 'collection services' for a percentage of the claims. ***Such activities might fraudulently deprive class members of benefits provided by the settlement and impinge on the court's responsibility to control fees in class actions***.

*Id*. (emphasis added). The Manual on Complex Litigation then cites to the seminal case dealing with class settlement "claims processors", *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, et al., 1985 WL 25746 (D.D.C. Oct. 18, 1985)

*Jack Faucett* involved two "claims processors" like MCAG, called ICS and CSD, which solicited class members to prepare claims and collect class settlement payments in exchange for a contingency fee. *Id.* at *1. Even though the "claims processors" in that case never got their hands on the class funds and certainly never misappropriated any of it (as MCAG has done here), the court found that the claims processors' actions would have the effect of depriving class members of amounts they would receive under the proposed settlement agreement. *Id.* Here, there is no doubt that MCAG deprived Class Members of millions of dollars in Class Settlement Funds that MCAG failed to distribute, misappropriated, and took as improper compensation.

The *Jack Faucett* court further found that there was no consideration provided by the claims processors because the contingent fee agreements that ICS and CSD sought to enter into with class members were not based on any real contingency, because a settlement had already been negotiated. Similarly, MCAG's purported contingent fee arrangements with Class Members were based on no real "contingency" because the class settlement already had been reached without MCAG's participation.

The *Jack Faucett* case also expressed severe concerns regarding the manner in which claims processors like MCAG solicit Class Members as their purported clients. *Id.* at *1. Although MCAG has claimed that there was no "automatic enrollment" program used on the CIGNA settlement Class Members, MCAG's counsel admitted on March 7, 2017, that he had "no idea" what the communications were to Class Members. (Mar. 7, 2017 Hrg. Tr., at 258:01-

10

259:04) (attached hereto as **Ex. 2**). However, there is evidence MCAG did use automatic enrollment, at least in part. *See* MCAGPROD-002706 (attached hereto as **Ex. 3**).

And regardless of the method used to solicit class members, *Jack Faucett* also held that CSD sought to obtain "Letters of Agency" from the class members, just like MCAG purports to have obtained "Physician Agreements" appointing it as the agent of certain Class Members. *Id.* at *3. The *Jack Faucett* court concluded these "agency" letters would have improperly enabled CSD to assert the class members' claims and receive payment for those claims as if CSD were the actual claimant. *Id.* Ultimately, *Jack Faucett* declared that the ICS and CSD contingent fee contracts with class members "are declared null and void and, thus, will not be enforced by this Court." *Id.* at *6.

Courts consistently scrutinize "claims processors" and declare their purported contracts void *ab initio*. For example in, *In re: Ready-Mixed Concrete Antitrust Litig.*, No.: 1:05-cv-979-SEB-JMS (S.D. Ind. Dec. 9, 2009) (attached as **Ex. 4**), the court ruled: (1) that the claims processors were not entitled to any payment from class members; (2) that any contracts between the claims processor and any class member were void *ab initio*; (3) that all settlement awards were to be paid directly to class members, and not to the claims processor; and (4) that the class members had no obligation to honor the claims processor's forms. *Id.*

Other federal courts declare void and unenforceable a claims processor's contracts with class members, and prohibit any class payments to be paid directly to that claims processor. *Cook v. Rockwell Int'l Corp.*, No.: 1:90-cv-181-JLK (D. Col. Feb. 14, 2017) (attached as **Ex. 5**); *see also Burford v. Cargill Inc.*, No. 05–0283, 2013 WL 4506224, at **5-6 (W.D. La. Aug. 21, 2013); *In re Synthroid Mktg. Litig.*, 197 F.R.D. 607, 609-610 (N.D. Ill. 2000) (stating that claims processors communications "can be read as an attempt to skim off, by false pretenses, 22 percent of the amount due to some of the Third Party Payor Class Members. That might well constitute mail fraud or attempted mail fraud as well as violations of various state fraud statutes" and as a result, ordering that the claims processor could not deduct any fees from the class members' settlement funds without prior approval of the court).

The underlying principle in these cases is that interlopers to class settlements must be prevented from improperly obtaining class settlement funds. In MCAG's contracts, we have all of the infirmities that the courts have found in other cases, plus the added misconduct of collecting and failing to distribute class funds and, worse yet, actually misappropriating those

class settlement funds. Here, the abuse is not hypothetical, as it was in these cases where the courts held the claims processors' contracts to be void; it already has occurred by MCAG's misappropriation and failure to distribute class funds. Such contracts should be voided by the Court consistent with substantial precedent.

Courts also consistently hold that agreements with class members that were not presented to, and approved by, the class court are void and not enforceable. In *Alexander v. Chi. Park Dist.*, 927 F.2d 1014 (7th Cir. 1991) (cited with approval in the Eleventh Circuit Opinion at 1162, as here, the parties entered into a settlement agreement and created a settlement fund. The fund was to be used for the payment of class members and attorneys' fees and costs. The court on its own initiative became concerned when certain disbursements from the settlement fund appeared to be questionable. The court found that the plaintiff's lawyer had not met its burden of proving that the expenditures (assuming they were all made) were reasonable expenditures for the case. *Alexander,* 927 F.2d at 1017-18. The court noted that the proposed award (as here) directly cut into the amount available to the class members. The court stated that "it is questionable whether any compensation at all should inure to one who has acted other than in the most scrupulous fashion regarding the financial interests of the class." *Id*. at 1018. The settlement was approved in May of 1988 and in January of 1990 the court found that the lawyers had not distributed the settlement funds to the class. *Id.* at 1022. That was a delay of only one and half years. Here the delay is 15 years.

The court held the attorney who had taken money out of the settlement fund in civil contempt. The court cited the often cited *In re Corrugated Container Antitrust Litig.* 752 F.2d 137 (5th Cir. 1985) case, holding that in any class action the district court has a duty to class members to see that any settlement it provides is completed. Counsel in that case also argued that he was entitled to enforce contingent fee arrangements he reached with various class members after the settlement agreement was approved by the class court.

The appellate court held that counsel's reliance on contingency agreements that the district court knew nothing about was "preposterous." The appellate court held that the district court was required under Rule 23 to scrutinize any fee agreements that would be entered into related to a class settlement, which necessarily put counsel and clients in an adversary relationship. *Alexander,* 927 F.2d at at 1024. The appellate court relied in part on the decision of Third Circuit in *Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1109 (3d Cir. 1979) to the effect that

"when a contingent fee contract is to be satisfied from a settlement fund approved by the trial judge pursuant to Federal Rule of Civil Procedure 23(c), the court has an even greater necessity to review the fee arrangement, for this rule imposes upon it a responsibility to protect the interests of class members from abuse.

In such circumstances, "the role of the attorneys is drastically altered; they stand in essentially an adversarial relationship to their clients who face a reduced reward to the extent that counsel fees are maximized." *Alexander,* 927 F.2d at 1024. The appellate court was highly concerned that the federal judge who set up the settlement fund never had a chance to examine the contingency arrangements entered into by counsel. The court held that, had the district court judge reviewed those agreements she "never would have approved such a circumvention of her original decision on expenses." *Id.* at 1024. The appellate court held that the parties taking money, based upon a contingent fee contract the court never approved "hid his intent to enforce a contingent fee agreement from the court." *Id.* As a result, the Seventh Circuit held that the fact that the court had never approved such contingency agreements, the agreements were unenforceable and void. Similarly, MCAG never presented their post Class Settlement Agreement contingent agreements with Class Members to this Court for review or approval – and those agreements must be determined to be void. The Eleventh Circuit Opinion in this matter cited *Alexander* with approval.

Likewise, in *Warnell.*, 205 F. Supp. 2d 956, a class action settlement created a fund for the benefit of the class members. The court held that no reasonable analysis could lead to a conclusion that counsel could enforce separate contingent fee agreements that were not approved by the court. Although counsel argued that their contingent fee agreements covered services which were necessary to implement the settlement agreement and payment of claims thereunder, the court held that "this distinction is disingenuous" since the settlement agreement set aside a fund for the class from which the class members should receive their awards, as well as a separate amount for all attorney fees and costs (which is the same situation here). The *Warnell* court cited with approval the *Alexander* case. The court further held that under the settlement agreement, the class members' award was not to be reduced by any other fees and costs, other than those awarded in the settlement. The court further held that the failure to disclose these additional contingent fee agreements and have them approved circumvented the court's role as a fiduciary for the class, and that failure to disclose those contingent agreements rendered the

agreements unenforceable. *Id*. at 960. The court also found it inappropriate that the contingent fee agreements had been solicited without court approval after the entry of the judgment for the class members (which is the same situation here). As a result, the court held that all fees collected from the fund intended for class members must be returned.

In *Dunn*, 602 F.2d 1105, the Third Circuit ruled that a district court had the power to set aside contingent fee agreements entered into with class members. In that case there was no indication that any class member had objected to the contingent fee contracts and the trial court took its action *sua sponte*. The appellants argued that the trial court could only set the contingent agreements aside if they were unreasonable on their face. The Third Circuit held that this assertion misconceived the scope of the trial court's power and duty to supervise those who practice before it, as well as its obligations imposed under Federal Civil Procedure 23(e). *Id*. at 1108. A court has jurisdiction to disapprove contingent fees. *Id*. at 1108-1109. The court held that when a contingent fee contract is to be satisfied from a settlement fund approved by a trial judge pursuant to the federal rules, the court has an even greater need to review the fee agreements because it has a responsibility to protect the interests of the class members from abuse. *Id*. at 1109. The Third Circuit held that the district court had the authority to set aside contingent fee agreements *Id.* at 1110, 1114. Here, of course, MCAG deprived the Court of the opportunity to review and approve the so-called Physicians Agreements, let alone its misappropriation of Class Settlement Funds. For all of these reasons, the Physician Agreements should be held to be *void ab initio.*

## **CONCLUSION**

For all these reasons, CIGNA respectfully requests that this Court (1) remove MCAG and its counsel from representing Class Members; (2) declare MCAG's Physicians Agreements *void ab initio*; (3) order restitution and disgorgement by MCAG to CIGNA of all Class Settlement Funds it has received from CIGNA; and (4) order payment of CIGNA's attorneys' fees and costs (including expert costs).

## LOCAL RULE 7.1 CERTIFICATION AND COMPLIANCE WITH REQUIREMENTS FOR EXPEDITED MOTIONS

On October 29, 2020, counsel for Cigna conferred with counsel for Managed Care Advisory Group, LLC's, and the parties were unable to agree on any resolution.

Dated: October 29, 2020

                                                  Respectfully submitted

                                                **HOGAN LOVELLS US LLP**

                                                By */s/ Marty Steinberg*
                                                Marty Steinberg, Esq.
                                                Florida Bar No. 187293
                                                marty.steinberg@hoganlovells.com
                                                David Massey
                                                Florida Bar No. 86129
                                                david.massey@hoganlovells.com
                                                600 Brickell Avenue, Suite 2700
                                                Miami, Florida 33131
                                                305-459-6500 Telephone

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 29, 2020, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.