**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 2000-MD-01334-MORENO/GOODMAN

*In Re Managed Care Litigation*,

MANAGED CARE ADVISORY GROUP

v.

CIGNA HEALTHCARE

_____

### **CIGNA'S MOTION FOR VACATUR OF FINAL AWARD[1]**

Now comes CIGNA and moves for vacatur of the portions of the Final Award adverse to CIGNA and states as follows:

### **INTRODUCTION**

CIGNA's primary objective is to end all proceedings against CIGNA for any purported liability to the MDL Class Members after 20 years of litigation.  Now that the Final Hearing has concluded, and a Final Award covered by the Federal Arbitration Act has issued, CIGNA has, pursuant to the District Court's Order, created an escrow account and will timely deposit the full amount set forth in the Final Award, namely $16,281,051.19.  All that is remaining, is an appeal pending before the Eleventh Circuit arguing that the Final Hearing should have never gone forward because MCAG claims are barred by the Settlement Agreement's releases and waivers, and MCAG's lack of standing.  The Eleventh Circuit's ruling in that appeal may impact the validity and/or enforceability of the Final Award.  In addition, this Court must address MCAG's  and CIGNA's challenges to the Final Award.

_____

[1] This brief contains or attaches Confidential Materials, which are being filed under seal pursuant to this Court's standing order governing confidentiality. *See* ECF No. 6648, attached hereto as **Exhibit A**.

1

The crux of CIGNA's vacatur motion is to achieve finality for CIGNA by either (i) vacating the Final Award, with prejudice, and to the exclusion of any further proceedings concerning CIGNA's liability to the Class Members, or (ii) to determine that the Final Award's determination that CIGNA's liability to the Class Members is limited to, and does not exceed, $16,281,051.19, is final, and resolves all of CIGNA's liability to the Class Members.  CIGNA's objective is finality.

## **BACKGROUND**

The Final Award stems from a class-action MDL lawsuit filed by physicians against numerous healthcare payors, including CIGNA.  DE 1607.[2]  On September 4, 2003, the parties entered into a Settlement Agreement to settle all claims.[3]  DE 2308, Ex. 2.  Pursuant to the Settlement Agreement Class Members could pursue compensation for medical claims that were alleged not to have been decided correctly in only one of two ways: the Class could (1) seek recovery from a fixed fund, or (2) re-submit claims with a proof-of-claim and supporting documentation to obtain what the Settlement Agreement termed "Category Two" benefits.

Category Two claims were the subject of the Arbitration and the Final Award.  If Class Members chose to file a Category Two claim, they had to follow detailed procedures for processing the claim. *see* DE 2308, Ex. 2 ¶ 1.15  The procedures are set forth in Section 8.3(c)(2) of the Settlement Agreement and required providers to re-submit their claims to a Settlement

---

[2] This brief assumes the Court's familiarity with the matter. See *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1141–52 (11th Cir. 2019); and CIGNA's Renewed Motion to Enforce the Settlement Agreement, DE 6685.

[3] CIGNA made no admission of liability.  *See* Final Hrg. Tr. Vol. 16 (DE 6787 at 3473:1–4) (acknowledgement by MCAG's counsel that "[t]here are claim coding and bundling edits that are perfectly acceptable in the community, this is, not every edit is illegal.  In fact, there are many edits that are appropriate.").

Administrator (Poorman Douglas aka EPIQ), who would then process the claims for re-determination by CIGNA. *Id*. ¶ 8.3(c)(2).  If CIGNA denied the claim, it would then go to the Settlement Administrator or an Independent Review Entity ("IRE")[4] for a final determination.[5]

The Settlement Agreement provided no other remedy for compensation for claims of Class Members.  The Settlement Agreement "represents the agreement of the parties to submit the Category Two Compensation Claims to an elaborate claims processing procedure . . . constituting the most comprehensive and efficient procedure for assessing the validity of" claims.  DE 6787, Ex. 20 at 5, 13; See also Special Magistrate's Final Award ("Final Award") ¶ 36, attached hereto as **Exhibit B**. Indeed, the first Arbitrator, the Honorable Edward B. Davis, left no confusion as to whether there could be any other kind of recovery under the Settlement Agreement, noting that "the Settlement Agreement represents not only 'the most comprehensive and efficient procedure for assessing the validity of [] claims,' but also the means by which '[] claims are [to be] processed as the parties intended.'"  DE 6732, Ex. 20 at 6.

In or about 2003 through 2005, MCAG began to act as a fiduciary and agent for certain Class Members, purportedly to facilitate the processing and payment of Category Two claims.  *See* MCAG Arbitration Exhibit CLTx-000599[6].  MCAG submitted over 600,000 Category Two claims to the Settlement Administrator.  MCAG waited until end of the claims application process to submit its Proofs of Claim, in hopes that the Settlement Administrator and CIGNA would be unable to timely process the claims and thus be required to pay them regardless of whether they

---

[4] Under the Settlement Agreement the Settlement Administrator had discretion as to whether or not to send a claim to the IRE.
[5] The Settlement Administrator and the IRE are referred to collectively herein as the "Reviewers."
[6]  MCAG Arbitration Exhibit CLTx-000599 is over 6200 pages and will be made available upon request.

were valid.  CIGNA Arbitration Ex. 26, Depo. Tr. of James Reeder ("Reeder Dep. Tr.") at 29:15-32:11, 35:10-36:2, 100:1-24, attached hereto as **Exhibit C**.  This strategy was not successful. MCAG subsequently agreed to withdraw 75,806 claims and failed to cure another 113,309 at claims.  DE 6732, Ex. 20 12 n.6.

One of the Class Members, Texas Children's, at MCAG's request, filed a motion seeking to enforce the Settlement Agreement, arguing that CIGNA was not complying with the Settlement Agreement because CIGNA was treating MCAG differently from another claims aggregator named Redstone.  DE 4330.  While Texas Children's motion was pending, in November of 2005, MCAG and CIGNA agreed to arbitration (the "Arbitration Agreement").  DE 6695, Ex. 3.  The Arbitration dealt solely with "whether the claims for Category Two Compensation under the Settlement Agreement Among CIGNA HealthCare and Physicians submitted by MCAG on behalf of Class Members" are payable pursuant to the Settlement Agreement.  *Id*.  A Supplemental Arbitration Agreement was executed simultaneously.  DE 6787, Ex. 20.

Over the course of the following 15 to 16 years, the arbitration proceeded, first before Judge Davis, and then before Thomas G. Schultz, Esq., who replaced Judge Davis in 2010.  The claims were processed based on Judge Davis's May 23, 2007 and June 18, 2008 Orders, and the processing ended in approximately April 2010.  *See* DE 6787, Ex. 20; DE 6732, Ex. 20; DE 6995, Ex. 3.

Judge Davis' May 23, 2007 Order, addressed the issue raised in Texas Children's Motion and found that "CIGNA has not waived the terms of the Settlement Agreement" and that CIGNA had no liability for its individualized treatment of MCAG and Redstone.  DE 6787, Ex. 20 at 3.  In his June 18, 2008 Order, Judge Davis addressed a number of issues, including determining under what circumstances CIGNA was required to provide for a Review File and what a Review File

should include.  DE 6732, Ex. 20 at 2, 12 n.6.  The Order also addressed MCAG's withdrawal and

failure to cure almost 200,000 claims, and ruled on MCAG's and CIGNA's respective burdens

under the Settlement Agreement.  *Id.*  Judge Davis also emphasized that the Settlement Agreement

eliminated his ability to reverse any decision by EPIQ or the IRE, stating:

> The Settlement Administrator or the Independent Review Entity
> **shall determine** whether CIGNA's denial is supported by a
> preponderance of the evidence based on MCAG's documentation
> **and** CIGNA's Review File . . . .
>
> I decline CIGNA's invitation to make any substantive
> determinations as to the validity of any claims, either individually
> or categorically.  I would otherwise contravene the express terms of
> the Settlement Agreement . . . .
>
> I remind the parties that the Settlement Administrator and
> Independent Review Entity, as external reviewer, is to decide the
> ultimate validity of the claims.  Therefore, I will not rule on the
> substantive validity of any claim, individually or categorically.

*Id.* at 2,  and 15  n.8 (emphasis added).

Except for two narrow exemptions in the Settlement Agreement that have been referred to

as d(iii) and d(iv), Category Two claims required significant documentation and clinical

information.  DE 2308, Ex. 2 ¶ 8.3(c)(2)); Final Award ¶ 42 (Ex. B) (majority of MCAG claims

filed under two exceptions).  To apply for a Category Two claim, a Claimant must submit: "(1) a

Proof of Claim Form; (2) documentation evidencing a denial or reduction in payment; (3) a

complete copy of Clinical Information as defined and specified in the Settlement Agreement; and

(4) a certification that the services were actually rendered, that no reimbursement on the claim has

been previously sought, and that the claim is not a 'Resolved Claim' as defined in the Settlement

Agreement."  DE 2308, Ex. 2 ¶ 8.3.c(2)(f)); DE 6787, Ex. 20 at 8.

MCAG's CEO, Mr. Schmidt, told Redstone's CEO, Mr. Reeder, that MCAG would file most claims without clinical data, and right before the end of the claim period, dump them on the Settlement Administrator hoping they could not process them.  Reeder Dep. Tr. at 29, 31, 35-36, 92-93, 100-101, 119-120 (Ex. C). MCAG did not attempt to meet the criteria for the Settlement Agreement (DE 6787, Ex. 4 at 630-634) or the exemptions. *Id.* 683-687; 687-90; 694-96; 704; DE 6787, Ex. 13 at 2584-85; DE 6787, Ex. 6 at 1077-1079; DE 6787, Ex. 4 at 685-698; DE 6787, Ex. 3 at 370; DE 6787, Ex. 5 at 767-778; DE 6787, Ex. 10 at 2018);  DE 6787, Ex. 4 at 688-689; DE 6787, Ex. 4 at 766-768; DE 6787, Ex. 3 at 445; DE 6787, Ex. 10 at 2050; DE 6787, Ex. 13 at 2590-2596; DE 6787, Ex. 10 at 2052; DE 6787, Ex. 3 at 371-372.[7]  MCAG often did not provide adequate identifying data.  DE 6732, Ex. 20 at 8 ("Cigna's attempt to locate records has also been exacerbated by MCAG not providing sufficient documentation for Cigna to reasonably access its documents for certain class members."); *see also* DE 6787, Ex. 10 at 2003-2007, 2034; DE 6787, Ex. 11 at 2096-97.

MCAG was incapable of correcting errors or omissions. DE 6787, Ex. 6 at 1037).  MCAG's clients (the Class Members) testified that MCAG did not collect the documentation they possessed (DE 6787, Ex. 3 at 325-332, 337-339) and were never told that MCAG was filing under the d(iii) and d(iv) exemptions. *Id.* at 336-337.  Other MCAG clients became dissatisfied and took over the

---

[7] MCAG submitted the vast majority of its claims under two narrow exemptions in the Settlement Agreement that have been referred to as d(iii) and d(iv).  DE 2308, Ex. 2 ¶ 8.3(c)(2)(d)(ii)(iii); DE 6787, Ex. 4 at 647-649; DE 6787, Ex. 13 at 2583; DE 6787, Ex. 3 at 405, 426; Reeder Dep. Tr. at 6, 29, 31, 32-33, 35-36, 92, 100-101, 115-116, 119-120 (Ex. C); Final Award ¶ 42 (Ex. B). Redstone, another claims aggregator like MCAG, filed only about 10% of its Category Two claims under the two exemptions, while MCAG filed over 80% of its Category Two claims under the two exemptions. Reeder Dep. Tr. at 32-34, 91 (Ex. C).

claims application process. CIGNA Arbitration Ex. 28, Depo. Tr. of Shaunna Kennedy ("Kennedy Dep. Tr.") at 35-40, 45-46, 48-58, 64, 71-82, attached hereto as **Exhibit D**. MCAG's IT officer confirmed that the program never achieved its goal and was rather messy. (DE 6787, Ex. 3 at 422-25, 465; DE 6787, Ex. 6 at 1037.

After Judge Davis's 2008 Order (DE 6732, Ex. 20), CIGNA and EPIQ agreed on the most efficient manner in which to process claims pursuant to Judge Davis' order and CIGNA searched its database for the original source claims data to provide to Settlement Administrator.  DE 6787, Ex. 11 at 2039; DE 6787, Ex. 12 at 2402-2404, 2498-2501; April 9, 2009 Letter from EPIQ to Cigna and MCAG ("2009 Letter") attached hereto as **Exhibit E**. CIGNA provided the original source data that it was able to locate, to the Claims Administrator for inclusion in spread sheets used by the Reviewers to assess claims. DE 6787, Ex. 10 at  2011-2013, 2026-27, 2073-74; DE 6787, Ex. 11 at 2089-2093; 2152-53; 2217, 2285.  The Reviewers followed the dictates of Judge Davis's Order and the Settlement Agreement in assessing the claims. DE 6787, Ex. 12 at 2498-2501; 2009 Letter (Ex. E).  The Settlement Administrator determined the adequacy of the claims data supplied by CIGNA.  DE 6787, Ex. 12  at 2404. During the processing, from 2007–2011, MCAG obtained numerous electronic spreadsheets from EPIQ that contained claims data in "real time".  DE 6787, Ex. 6 at 1002-1004, 1014-09; 1080, 1084, 1101-1106; DE 6787, Ex. 11 at 2115-16. *See also* DE 2308, Ex. 2 § 8.4.

On April 13, 2009, EPIQ sent a letter to MCAG and CIGNA.  2009 Letter (Ex. E). stating:

> As far as the adequacy or completeness of Review Files are concerned, ECA's underlying concern is that there must be enough information present for either ECA or the IRE to make a decision as to whether or not the codes that are claimed are eligible for payment/supplemental payment and if the claims are valid.  If enough documentation is present for ECA or the IRE to confidently make a decision as to whether or not a claim is valid, then the claims

will be processed/reviewed accordingly. If CIGNA does not provide enough information for ECA or the IRE to determine whether or not the claim is valid, then the denial will be overturned. The adequacy of the information presented in the Review File will be determined by ECA and the IRE on a claim by claim basis, as each Review File for each denial will be reviewed.

*Id*. at 2–3 (relying on Judge Davis's June 18, 2008 Order (DE 6732, Ex. 20)).

MCAG previously contended that the Settlement Administrator could not make substantive determinations as to claims. In his May 23, 2007 Order, Judge Davis ruled that the Settlement Administrator could only make administrative determinations. DE 6787, Ex. 20 at 5-6. The Settlement Agreement, and Judge Davis, required the IRE to make determinations as to whether Claims Coding and Bundling Edits were applied, a key determination required for any valid Proofs of Claim. DE 6787, Ex. 20 at 12 "The Independent Review Entity (to be selected by MCAG and CIGNA shall review CIGNA's decision if the claim was denied based on Claim Coding and Bundling Edits."; *see also* DE 2308, Ex. 2 § 9.3(c)(2)(h). The Final Award ignores the requirement of the Settlement Agreement that claims must be provided to the IRE for determination, and bases its ruling against CIGNA on EPIQ's transfer of claims to the IRE for determination. Final Award ¶¶146, 152, 240 (Ex. B).

In its letter, EPIQ went on to state: "A]ny Administrative Denial provided in response to a Proof of Claim contending that any CPT Codes should have been reported and paid separately will be automatically be forwarded to the Independent Review Entity for External Review." 2009 Letter at 3 (Ex. E). This is consistent with the Settlement Agreement's requirement that all Claims Coding and Bundling claims got to the IRE. DE 2308, Ex. 2 § 9.3(c)(2)(h). Thus, the Final Award's very basis for a ruling against CIGNA as to the "Records Found No" issue, holding that

claims purportedly should not have been sent to the IRE, is violative of the Settlement Agreement, contrary to Judge Davis' Order, and baseless.

The parties agreed, by Stipulated Order (DE 6676), to appoint Mr. Matthews as a replacement arbitrator.[8]  Over CIGNA's objections, Mr. Matthews set a Final Hearing that began on January 25, 2021, and closing arguments concluded on April 2, 2021.  Mr. Matthews issued the Final Award on August 4, 2021, ordering CIGNA to deposit over $16 million (inclusive of interest) into a Claim Distribution Fund for distribution to MCAG Class Members.

## STANDARDS FOR VACATING AN ARBITRATION AWARD

The Federal Arbitration Act sets out the standards under which a party may seek an order vacating a final arbitration award.  *See* 9 U.S.C § 10(a).  The FAA provides that a court in the district where the award was issued, may vacate the award if, as relevant here, (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to Section 15, so as to prejudice substantially the rights of a party to the arbitration proceeding; or (4) an arbitrator exceeded the arbitrator's powers.  *Id.* § 10(a)(1)–(4).

In a recent pronouncement on vacating an arbitrator's award, *Verizon Pennsylvania LLC v. Communications Workers of America*, 13 F.4th 300, 303–04 (3d Cir. 2021), the court found that the arbitral Tribunal created a remedy that did not exist in the underlying agreements.  *Id.*  The appellate court held that it is appropriate to vacate an award where an arbitrator exceeds his authority and provides a remedy not provided for in the underlying document that bind the arbitrator.  *Id* at

---

[8] MCAG represented that it was not seeking another reprocessing of claims and sought a lump sum monetary award for what it alleges to be the wrongful denial of claims by CIGNA, EPIQ, and the IRE.  DE 6727, Ex. 19 at 19, 27.

308–10.  Finding that the remedy employed by the Arbitral panel was either not contemplated by the underlying agreement or irrational, that remedy was vacated.  *Id* at 309–11.  An arbitral award may be vacated if it is obvious from the award that the arbitrator exceeded his authority.  *Id* at 309–10.

Here, the Final Award should be vacated because the Arbitrator (1) Violated the Arbitration agreements and the Settlement Agreement; (2) refused to postpone the hearing upon a showing of sufficient cause; (3) refused to consider evidence material to the controversy when he determined that he had no authority to hear CIGNA's counterclaims and defenses and they would have to be decided by the District Court – establishing that the Arbitrator should not have proceeded before these matters were resolved; (4) conducted the hearing so as to prejudice CIGNA's rights by ignoring and failing to abide by the underlying agreements; and (5) exceeded his limited authority.

## ARGUMENT

### I.   The Final Award Violates the Arbitration Agreements and the Settlement Agreement

#### a.   The Arbitration Agreements Rely on, are Bound by, and Incorporate the Settlement Agreement

The Final Award reflects that the jurisdiction and authority of the Tribunal was circumscribed by the terms of the party's agreements including the Settlement Agreement, the Arbitration Agreement, the Supplemental Arbitration Agreement, and the Stipulated Order.  Final Award ¶ 113 (Ex. B).  As MCAG admits, the Settlement Agreement governs the Arbitration:  "This entire arbitration stems from the settlement and MDL."  *See* DE 6529 at 16.  The Arbitration Agreements rely solely on, and are bound by, the Settlement Agreement.  As the Arbitration Agreement recognizes, the Settlement Agreement is the basis for the arbitration:

> CIGNA and MCAG "shall submit the dispute[concerning the compensability of certain claims submitted by MCAG pursuant to the Settlement Agreement] to a single arbitrator for final resolution of all issues relating to whether the claims for

Category Two Compensation **under the Settlement Agreement** Among CIGNA HealthCare and Physicians submitted by MCAG on behalf of Class Members are payable pursuant to **that agreement**." Arbitration Agreement p.1 (emphasis added).

Neither the Arbitration Agreement (DE 6695, Ex. 3) nor the Supplemental Arbitration Agreement (DE 6787, Ex. 19) contain any means of compensating Class Members—only the Settlement Agreement does. Section 8.3(2) of the Settlement Agreement (DE 2308, Ex. 2) was the sole method to obtain approval for the payment of a Category Two claim by CIGNA, but the Final Award did not utilize that sole procedure. Moreover, Judge Davis (whose Orders the Arbitrator represented he would honor (Final Award ¶ 165 (Ex. B)) clearly ruled that the Settlement Agreement calls for a claim-by-claim analysis as the only methodology that can be utilized. *See* DE 6732, Ex. 20. "The Settlement Agreement represents not only 'the most comprehensive and efficient procedure for assessing the validity of MCAG's claims,' but also the means by which 'MCAG's claims are [to be] processed as the parties intended.'" DE 6787, Ex. 20 at 3, 13.

### b. The Final Award Violated the Settlement Agreement and the Arbitration Agreements by Failure to Enforce the Protections of Those Agreements.

The Arbitrator failed to uphold contractual protections for CIGNA in the Settlement Agreement and Arbitration Agreements that go to the heart of the settlement. In particular, the Arbitrator did not comply with the terms of the Settlement Agreement's broad release and covenant not to sue, as well as protection from claims-processing issues. DE 2308, Ex. 2 §§ 9.6 and 13. These provisions go to the very heart of the settlement and the rationale for CIGNA (or any other Class Defendant) to settle claims against it. CIGNA's liability cannot be assessed by any tribunal (including arbitration) without applying the protections that the Settlement Agreement affords CIGNA. But, that is what the Arbitrator did here, denying CIGNA the benefit of critical

11

terms of the Settlement Agreement and violating the Settlement Agreement and Arbitration agreements.

The Release and Covenant Not to Sue

The Settlement Agreement bars the remedy the Arbitrator ordered in the Final Award because it contains a binding release and covenant not to sue, which is enforceable in CIGNA's favor and against the claims MCAG sought to recover on in the arbitration.[9]  The MDL court previously dismissed all claims against CIGNA with prejudice because the parties reached a settlement.  DE 2308, Ex. 2 § 1.67; Actual Dismissal with Prejudice, DE 2901.  The Settlement Agreement contains a Release and Covenant Not to Sue, which provides that the "***Releasing Parties*** . . . shall hereby be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever, remised, released, relinquished, compromised and discharged all ***Released Claims*** against each ***Released Person***." *See* DE 2308, Ex. 2 § 13.1 (emphasis added).  MCAG's clients (the Class Members) are Releasing Parties, and CIGNA is a Released Person under the Settlement Agreement.  Yet MCAG sought a judgment exceeding $100 million in "damages" for the exact same claims that were dismissed with prejudice—the Released Claims.[10]

---

[9] See CIGNA Trial Brief from Arbitration ("Trial Brief") , attached hereto as **Exhibit F** and CIGNA Appeal of District Court's (appeal No. 21-10247-GG) denial of injunction for a more extensive analysis of this issue ("Cigna's Initial Brief"), attached hereto as **Exhibit G.**

[10] Moreover, the only "judgment" contemplated by the Settlement Agreement is a dismissal of all claims with prejudice. DE 2308, Ex. 2 § 1.67; DE 2901. That dismissal with prejudice, dismissed all of the claims that are the subject of the Final Award.  A dismissal with prejudice is a dismissal on the merits. *See Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1505 (11th Cir. 1990) ("A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action."); *Plumberman, Inc. v. Urban Sys. Dev. Corp.*, 605 F.2d 161, 162 (5th Cir. 1979) ("[A] dismissal with prejudice … bars a later suit on the same cause of action.").

The Settlement Agreement defined "Releasing Parties" to mean "Class Members" and "…agents, … and legal representatives of Class Members." *See* DE 2308, Ex. 2 § 1.109. *See* appeal briefs pending before the Eleventh Circuit between CIGNA and MCAG (appeal No. 21-10247-GG). MCAG is not a party to the MDL.  MCAG has represented that it "**is not – it was not and never was – a class member, putative class member, objector, or a member who opted out.**" DE 6548 at 3 (emphasis added).  The Settlement Agreement defined "Released Persons" to include "CIGNA HealthCare." DE 2308, Ex. 2 § 1.110. Accordingly, CIGNA HealthCare is a Released Person. *See* appeal briefs pending before the Eleventh Circuit between CIGNA and MCAG (appeal No. 21-10247-GG).

The Settlement Agreement defined "Released Claims" as any and all claims that have been or could have been asserted by or on behalf of any or all Class Members against the Released Persons, or any of them, and which arise prior to Final Approval (April 22, 2004) by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referred to in the Litigation.  *See* DE 2308, Ex. 2 § 1.108.

MCAG's requested remedy of a damages judgment in excess of $100 million relates to the exact claims filed on behalf of Class Members under the Class Settlement Agreement.  MCAG brought all claims in arbitration based on CIGNA's alleged under-compensation of providers. *See* DE 6726, Ex. 14.    In its Arbitration Demand, MCAG sought in excess of $100 million for: (1) Denial of claims without a Review File; (2) Denial of claims with a Review File; (3) Incorrect payment of "Combo Claims"; (4) Claims denied because of no PT Code-Level Payments; (5) Approved Codes not on MFS Remain Unpaid; (6) 150% to 200% MFS Payment Error; (7) Payment Logic Error (8) Interest on Approved Claims; and (9) Improper deduction of prior Cigna

13

payments. *See* DE 6726, Ex. 14.  These are the same underlying claims that were at issue in the MDL Litigation and addressed in the Settlement Agreement.  Simply put, CIGNA has been released from any remedy (such as a damages award) for these claims.   DE 2308, Ex. 2 § 13. This Court and the Eleventh Circuit have repeatedly enforced the terms of settlements arising from the MDL Litigation against providers seeking to recover on alleged claims of under-reimbursement, like MCAG is doing here. See appeal briefs pending before the Eleventh Circuit between CIGNA and MCAG (appeal No. 21-10247-GG) for a recitation of such precedent and the effect of Settlement bars on the Final Hearing and Award.

By proceeding with the arbitration, the subject matter of which is the Released Claims, the Arbitrator has prejudiced CIGNA's rights and violated the FAA.  The Final Award does not address the undisputed fact that all of the claims in the Final Award were claims initially filed under the Settlement Agreement and thus released.  Critically, no section of the Settlement Agreement permits the remedy established in the Final Award: a "damages" award for a group of class members in a category of claims now referred to as "Records Found NO", and the Final Award cites to no such authority.  Moreover, the Settlement Agreement only permits a claim-by-claim submission by claimants and then determinations by CIGNA and/or the Reviewers.  There is no provision for a damages "award" based on a category of claims for a group of class members. Nor is there any provision for a "damages" award.  Nor did the Final Award refer to any basis in the Settlement Agreement for either. *See* appeal briefs pending before the Eleventh Circuit between CIGNA and MCAG (appeal No. 21-10247-GG); *See* Trial Brief (Ex. F); Cigna's Proposed Findings of Fact and Conclusions of law in Arbitration ("Proposed Findings of Fact"), attached hereto as **Exhibit H**; Arbitration closing argument transcripts volume 18 ("Vol. 18 Tr."), attached hereto as **Exhibit I** and volume 19 ("Vol. 19 Tr."), attached hereto as **Exhibit J**.

14

<u>The Claims-Processing Protections</u>

Moreover, CIGNA cannot be held liable for alleged errors of the Reviewers or for claims-processing errors.  *See* DE 2308, Ex. 2 § 9.6.[11]  Under the Settlement Agreement:

> **No Person shall have any cause of action against** the Plaintiffs, Class Counsel, Kaiser Counsel, **the Settlement Administrator, the Independent Review Entity, CIGNA HealthCare, the Released Persons**, or Defendants' Counsel, … **based on the administration or implementation of the Agreement or orders of the Court or based on the distribution of monies under the Agreement**. In such circumstances, the sole remedy (other than those provided pursuant to the terms of the [Settlement] Agreement) is application to this Court for enforcement of the [Settlement] Agreement or order.

*See* DE 2308, Ex. 2 §§ 9.6 and 13 (emphasis added).  The Arbitrator recognized this language, even quoted it, *see* Final Award ¶ 106 (Ex. B), but ignored the protection this language affords CIGNA and violated Section 9.6 in arriving at his conclusion. The only claims MCAG advanced in the arbitration were claims of alleged improper processing—exactly the types of claims that Section 9.6 bars MCAG from relitigating.

The Final Award states: "This permits the Tribunal to correct specific deficiencies in the procedure and to quantify their impact without requiring a review of substantive decision made by EPIQ and IMEDIC."  Final Award ¶ 135 (Ex. B).  But Sec. 9.6 of the Settlement Agreement does not permit a monetary ruling against CIGNA for such a "correction" or "deficiencies in the procedure."  In addition, any alleged correction to the deficiencies in the procedure to review claims by EPIQ and/or IMEDIC's (the IRE) is not the responsibility of CIGNA.  Furthermore, the basis for the Arbitrator's ruling in the Final Award was a purported error in claims processing,

---

[11] The category of "Records Found No" claims in the Final Award had already been processed and determined by the Reviewers and were no longer within the jurisdiction of the Arbitration. *Managed Care Advisory Grp., LLC*, 939 F.3d at 1162–63, DE 6601; Vol. 19 Tr. at 4041-4042 (Ex. J).

where EPIQ purportedly erroneously sent claims to the IRE for determination, and, according to the Final Award, EPIQ should not have sent the claims to the IRE for determination. *See* Final Award ¶¶ 146, 152, 240 (Ex. B).  Thus, the basis for holding CIGNA liable, is a purported claims-processing error by EPIQ.

The Supplemental Arbitration Agreement ¶ 5 (DE 6787, Ex. 19) has similar protections for CIGNA: "The Parties agree that they will not mention before the Arbitrator the fact that the Settlement Administrator reached any substantive determinations as to the validity of any MCAG claim, **including the process by which the Settlement Administrator reached its decision to pay, defect or reject MCAG claims**. (emphasis added) In addition, no argument shall be made that reasonably requires a Party to rely on the Settlement Administrator's determinations in response to such argument.".

The Final Award, based on purported processing errors, thus violates the Settlement Agreement and the Supplemental Arbitration Agreement.  *See* Final Award ¶¶ 146, 152, 240 (Ex. B), reflecting the basis for the finding against CIGNA as EPIQ's processing error in sending certain claims to the IRE for processing.  As such, the basis for the Final Award against CIGNA violates the underlying agreements, and is inconsistent with the prior Arbitrator's holding, that any error in claims processing is not CIGNA's responsibility, and, thus, not within the confines of the Arbitration.  *See* DE 6726, Ex. 16 at 52-96 (*see* particularly 67:17-68:08); *see also Legg v. Voice Media Group Inc*. 20 F. Supp. 3d 1370, 1377 (S.D. Fla 2014).


**The Only Holding Against CIGNA Violates the Settlement Agreement and Arbitration Agreements**

16

In paragraph 152, the Final Award (Ex. B) claims that, because EPIQ (purportedly) incorrectly sent claims to IMEDIC (the IRE) which it was not authorized to do under the Settlement Agreement, this somehow created liability for CIGNA. The Final Award ¶ 153 (Ex. B) states that "EPIQ's obligation under the Settlement Agreement was to reverse CIGNA's denial of those claims that it concluded were to be reviewed by IMEDIC, where there was no data in CIGNA's review files".  This Final Award holding against CIGNA violates both the Settlement Agreement and the Arbitration Agreements.  Section 9.6 of the Settlement Agreement (DE 2308, Ex. 2) and Section 5 of the Supplemental Arbitration Agreement (DE 6787, Ex. 19) protect both EPIQ and CIGNA from any such conclusion, as does the release and convent not to sue.

The Final Award is also completely contrary to page 106 of the Settlement Agreement, which states undisputedly that all Claim Coding and Bundling claims **must be forwarded to the IRE**. (emphasis added). DE 2308, Ex. 2 § 9.3(c)(2)(h).  In fact, in Paragraph 69 of the Final Award (Ex. B), the Arbitrator recognizes this: "MCAG urges the Tribunal to infer from evidence it presented that CIGNA pressured EPIQ to refer hundreds of thousands of claims to IMEDIC (the IRE) for review rather than overturn them itself. But the settlement agreement specifically required that EPIQ "Automatically forward the Proof of Claim and Review File to the Independent Review Entity for all denials based upon Claim Coding and Bunding Edits." DE 2308, Ex. 2 § 8.3.c(2)(h)(iv).  Moreover, in paragraph 70, the Award states "The Tribunal therefore makes no finding of fact as to why EPIQ decided to refer hundreds of thousands of the claims for review by IMEDIC during this re-processing after having referred only a few hundred during the earlier processing."  This recognition that claims must be forwarded to the IRE and purported refusal to make a finding as to why claims were forwarded to the IRE, is directly contrary to the ultimate

finding in the Award against CIGNA, which holds that it was improper for EPIQ to send hundreds of thousands of claims to the IRE.  The Final Award also makes no determination that any decision of the Reviewers with respect to any claim that had already been processed in the Record Found NO category was incorrect.

In addition, on May 23, 2007, based on MCAG's objections, Judge Davis issued an Order (DE 6787, Ex. 20) finding that the Settlement Administrator's duties were ministerial, indicating that substantive claims determinations should be made by the IRE.  Thereafter, EPIQ sent the vast majority of resubmitted claims to the IRE.  *See* Arbitration Exhibit 1033, attached hereto as **Exhibit K**.  The Settlement Administrator also had an obligation under the Settlement Agreement to forward claims to the IRE: "The Settlement Administrator shall automatically forward the Proof of Claim and Review File to the Independent Review Entity for all denials based upon Claim Coding and Bundling Edits." DE 2308, Ex. 2 § 8.3(c)(2)(h)(iv).  To the extent that discretion may have been required to determine which claims should be forwarded, the Settlement Agreement is clear that doing so was within the Settlement Administrator's discretion. *Id*. Moreover, the Final Award makes no determination that the submission of claims to the IRE caused any claim to be decided wrongly, much less in a manner that is attributable to CIGNA.  This is a clear violation of the Settlement Agreement and Arbitration agreements.

CIGNA did not control whether EPIQ decided to review a claim or transferred it to the IRE, and there was no finding to that effect.  When EPIQ advised MCAG and CIGNA that it intended to send certain claims to the IRE in its April 13, 2009 letter (2009 Letter, Ex. E), MCAG took no action and sought no relief and the Arbitrator took no action – and none is reflected in the Final Award.  Moreover, the Settlement Agreement requires **all claims** involving Claim Coding and Bundling Edits to be reviewed by the IRE, and it was up to EPIQ to determine what to send to

18

the IRE for review.  DE 2308, Ex. 2  § 8.3(c)(2)(h)(iv).   And, even if EPIQ did not properly

exercise its discretion in sending claims to the IRE, what is the basis for liability against CIGNA?

Review File

The Final Award's determination also refers to the claimed necessity for a Review File.

*See* Final Award ¶¶ 23, 34, 37, 39, 52, 58, 64-64, 69, 71, 101, 104, 131, 136-138, 143-148, 151-

154, 159-162.  This "Review File" reference, relates to the same dated allegation MCAG presented

to Judge Davis in 2007-2008. After substantial discovery, multiple hearings, many briefs, and oral

arguments with respect to MCAG's contention that a lack of a Review File meant that CIGNA

defaulted and must pay, Judge Davis rejected this theory (see below).  MCAG's position on the

Review File was then reconsidered by another arbitrator, Mr. Schultz, and he concurred with Judge

Davis.  Despite representing in the Final Award, that he would abide by the Reviewers' decisions

(Final Award ¶¶ 52, 54 (Ex. B)), and the prior Arbitrators' Orders (Final Award ¶ 165 (Ex. B)),

the current Final Award "reversed" both the Reviewers and the prior Arbitrators in the Final

Award.

As to Records Found – No, Ms. Mattingly testified as follows:

> Q. Okay. And it's your understanding that every time it says "Record
> found, no," that means an analyst couldn't find it, right? Didn't exist
> in data – in CIGNA's data system, right?
>
> A. That means that all of our searches through our eligibility files
> and our claim engines did not identify a claim that was processed
> for this member number, for this date of service, from this servicing
> provider's tax ID number that was provided.  De 6787, Ex. 12 at
> 2376.

Her testimony is unrebutted, meaning that CIGNA did not have identifying data from

MCAG to locate the claims.  As Judge Davis held, MCAG had documentary and informational

burdens—one of which was to provide enough data to identify the claims in CIGNA's historic and

19

inactive databases.  His orders also referred to MCAG failing to meet that burden and MCAG withdrawing and failing to cure almost 200,000 claims. *See* De 6732, Ex. 20 at n 6.

Judge Davis found:  "CIGNA's attempt to locate records has also been exacerbated by MCAG not providing sufficient documentation for CIGNA to reasonably access its own documents." De 6732, Ex. 20 at 8.  Judge Davis further concluded that "CIGNA cannot even feasibly compile a Review File without  certain documents having first been provided by MCAG. Both the Settlement Agreement and logic require that MCAG provide such information." *Id*. at 11-12.  Moreover, the Settlement Administrator never notified CIGNA that any Review File was deficient, as required by the Settlement Agreement. DE 2308, Ex. 2 at 106.

Yet, the basis for the Final Award is clear:  "the claims should have been approved for payment pursuant to the Settlement Agreement, but were denied due to a procedural flaw in the claim processing by EPIQ that violated Section 8.3(2)(h)(ii) regarding the effect of CIGNA's failure to compile a review file, and for (2) the past-due unpaid approved claims pursuant to EPIQ's final accounting." Final Award ¶ 240 (Ex. B).

Both Section 9.6 of the Settlement Agreement (DE 2308, Ex. 2) and Section 5 of the Supplemental Arbitration Agreement (DE 6787, Ex. 19) prohibit any consideration of liability for processing issues.  Just as  important, the liability for CIGNA is based on an alleged contract breach by EPIQ, by purportedly violating the Settlement Agreement's processing procedures. First, the Arbitrator had no authority to decide any purported contract breaches of the Settlement Agreement (as the Eleventh Circuit held).  Second, CIGNA cannot be liable for a purported breach of the Settlement Agreement by EPIQ.   Third, CIGNA is protected from liability for any processing issues by both the Settlement Agreement and the Supplemental Arbitration Agreement, as well as the release and covenant not to sue.

Paragraph 146 of the Final Award (Ex. B) states, "The Tribunal concludes that for those claims with no data from CIGNA's claims engine, CIGNA failed to meet its contractual obligations under the Settlement Agreement to compile and provide a Review File and there should have been no review of CIGNA's denials by IMEDIC.  EPIQ was obligated to address those that were its responsibility to review and to reverse and deem valid those that were the responsibility of IMEDIC to review and not forward them to IMEDIC for a claim by claim assessment of the adequacy of the Review File.  The Settlement Agreement is clear on this point."  Of course, the Final Award fails to reflect Judge Davis's interpretation of the Settlement Agreement which the Final Award claims to have adopted, that clearly states there would be no default.  Judge Davis's Order also states that MCAG had many obligations before CIGNA's responsibility for a Review File was even triggered, which were not even mentioned, let alone considered in the Final Award. Moreover, on page 106 of the Settlement Agreement (DE 2308, Ex. 2), EPIQ was required to forward all claims to IMEDIC (the IRE).  Finally, there is no basis for a cause of action, causation, or liability for CIGNA simply because EPIQ purportedly wrongly forwarded claims to the IRE for review. Clearly, the Final Award's recitation above, violates the Settlement Agreement and the Arbitration agreements.

In fact, in paragraph 170, the Final Award (Ex. B) inconsistently finds that CIGNA did not commit a material breach of the Settlement Agreement. Yet, CIGNA is somehow found liable for $16 million in damages and interest for what the Arbitrator describes as a contract breach by EPIQ.

### The Arbitrator Could Not Consider Any Contract Breach Without Violating the Eleventh Circuit Opinion, Which Is The Law of the Case

Notably, the Arbitrator acknowledged that he did not have "the authority to grant -- to enter an award that says claimant proved that CIGNA breached the settlement agreement.  I don't think

that that is within my bailiwick." "And so I want -- I'm telling you, you don't have to argue about how I can't enter an award on a breach of contract. You can do it, of course, but I don't think that's what -even though that's the way it's framed. That's not what I see my role as being." Vol. 19 Tr. at 4083-4084 (Ex. J).  This is based on the Eleventh Circuit opinion clearly holding that only the District Court could enforce the Settlement Agreement. *Managed Care Advisory Group v CIGNA Healthcare Inc.*, 939 F3d 1145 ( 11th Cir. 2019).  Yet, that is the exact claim brought by MCAG against CIGNA. In response to interrogatories asking MCAG to "identify any and all claims, causes of action, rights of action, grounds for relief, or legal theories" upon which MCAG sought relief from CIGNA, MCAG answered that "the nature of MCAG's breach of contract claim is simple: CIGNA has breached the Settlement Agreement and is therefore liable to MCAG."  DE 6745, Ex. 2 at 1.  MCAG further responded that "[t]he question in this arbitration is whether CIGNA breached the Settlement Agreement by not issuing payment on the subject claims. If CIGNA breached the Agreement, it is liable for contractual damages." *Id.* at 8.

When CIGNA cited the statements to the Arbitrator where he acknowledged that he could not make any contract breach determination, the Arbitrator simply removed the analysis that the Award was based on a contract breach in the Draft Award and purported to base the Final Award on no cause of action. Vol. 19 Tr. at 4066, 4077-79, 4082 (Ex. J).

The Reviewers received and reviewed all claims with Records Found No and overturned approximately 16% of CIGNA's determinations for those claims – around the same rate as the remaining population of claims.  *See* MCAG Arbitration Exhibits CLTx 285-314[12].

---

[12]  Due to the large volume of MCAG Arbitration Exhibits CLTx-285-314, copies will be made available upon request.

No MCAG expert opined that any specific "Records Found No" claims were wrongly decided by the Reviewers, and the Final Award makes no such determination. Thus, there is no expert opinion as to any claim decided by the Reviewers being wrong. The Arbitrator was not an expert in managed care claims processing. Under the rationale of the Final Award, MCAG could file bogus claims, and CIGNA is stuck paying the claims, even if CIGNA properly denied it and EPIQ or the IRE properly upheld the denial.

### Judge Davis' Interpretation of the Settlement Agreement

As reflected in the Final Award, the Arbitrator committed to abiding by Judge Davis' prior rulings. The Final Award offered no interpretation in conflict with Judge Davis and, indeed, accepted his interpretations. Judge Davis held, to apply for a Category Two claim, a Claimant must do the following:

> "Under this procedure, the Settlement Agreement provides that class members shall submit claims to the Settlement Administrator for *initial processing*. Specifically, **class members must submit**: (1) a Proof of Claim Form; (2) documentation evidencing a denial or reduction in payment; (3) **a complete copy of Clinical Information as defined and specified in the Settlement Agreement;** and (4) a certification that the services were actually rendered, that no reimbursement on the claim has been previously sought, and that the claim is not a 'Resolved Claim' as defined in the Settlement Agreement (¶ 8.3.c(2)(f))." De 6787, Ex. 20 at 8.

Judge Davis found that the process was flawed from the start due to the manner in which MCAG submitted its claims:

> "**Specifically, it appears that MCAG simply dumped hundreds of thousands of claims on the Settlement Administrator** without specifying under which subsection of ¶ 8.3.c(2)(d) (thereby determining which documentation was required) it was submitting each claim. As such, the Settlement Administrator could not effectively assess the adequacy of the documentation without knowing under which subsection the claim was being submitted."

23

"To avoid this pitfall again, the Arbitrator orders that MCAG, as part of its resubmission of the claims to the Settlement Administrator, designate under which subsection of ¶ 8.3.c(2)(d) of the Settlement Agreement it is submitting each claim." *Id*. at 11.

"As stated above, **MCAG shall specify** under which subsection of ¶ 8.3.c(2)(d) of the Settlement Agreement it is submitting each claim in order to expedite and clarify the review of the claim at all stages of the procedure." *Id*. at 14.

The Final Award's conclusion that EPIQ should not have forwarded claims to the IRE is

also belied by Judge Davis' Order:

"**The Independent Review Entity (to be selected by MCAG and CIGNA) shall review CIGNA's decision if the claim was denied based on Claim Coding and Bundling Edits**. The Settlement Administrator shall review CIGNA's decision if the claim was denied for other reasons." *Id*. at 12.

And, the analysis of claims was left in the hands of the Reviewers:

"The external reviews shall be performed under the standards set forth in ¶ 8.3(c)(2)(h)(iv). Specifically, **the Independent Review Entity shall decide the validity of the claim on its "judgment"** based on "the Fee for Service Claim and/or Review File." (¶ 8.3(c)(2)(h)( )(AHD)). If based on a Resolved Claim (as defined in the Settlement Agreement), **the "Settlement Administrator shall determine whether the Proof of Claim and Review File establish this ground for denial**." (¶ 8.3(c)(2)(h)(iv)(E)). *Id*. at 12-13.

In a June 18, 2008 Order (DE 6732, Ex. 20), Judge Davis ruled on Review File issue, the

subject of the Final Award, and denied the exact basis adopted by the Final Award:

As to the Review File requirement: "MCAG suggests that these terms mean all records or documents that have ever been in Cigna's possession, regardless of when they were generated or produced. In turn, MCAG argues that any claim for which Cigna did not retrieve and compile all such records and documents should be deemed valid." "I disagree." *Id*. at 7-8.

"It is entirely reasonable for some of the records and documents of Cigna to have been destroyed, even inadvertently or by customary

24

practice pursuant to a document retention policy. Indeed the Agreed Preservation Order only requires retention after 1994." *Id*. at 8.

"Cigna's attempt to locate records has also been exacerbated by MCAG not providing sufficient documentation for Cigna to reasonably access its documents for certain class members." *Id*.

"It is held that the terms "all records" and "all other documents" mean all existing, reasonably accessible records in Cigna's possession at the time of its review of MCAG's claim." *Id*. at 9.

"Cigna can't reject claims for inadequate information - it can only approve or deny a claim." *Id*. at 10-11.

"MCAG contends that, in the absence of express provisions in the Settlement Agreement, all claims not approved by Cigna should be deemed "denials," should require the compilation and submission of a Review File for external review and should be deemed approved where a Review File has not been submitted. In essence, MCAG argues that once the Settlement Administrator forwards its claims to Cigna, MCAG has satisfied its evidentiary burdens with respect to those claims and Cigna bears the burden of proving the invalidity of every claim it has not approved, based solely on its Review File. The Arbitrator disagrees." *Id*. at 11.

"Before Cigna decides to deny a claim and bears the burden of supporting such denial (i.e., compile and submit the Review File), MCAG must first meet its documentary burden. In other words, it appears in some instances that Cigna cannot even feasibly compile a Review File without certain documents (or at least information) having first been provided by MCAG. Both the Settlement Agreement and logic require that MCAG provide such information."

"The Settlement Administrator's ministerial review to pass the MCAG claim along to Cigna does not mean MCAG has met its documentary or evidentiary burden." *Id*. at 11-12.

Judge Davis's order is entierly consistent with the actual wording of the Settlement Agreement.  Nevertheless, the Final Award did not even assess the validity of MCAG's claims or whether MCAG met its documentary and informational burdens, to even trigger a Review File.

Moreover, whether the data provided to the Reviewers was adequate - was a determination for the Reviewers to make at the time they assessed each claim – and reviewed both the information and data MCAG provided, and the information and data CIGNA provided, applying the terms of the Settlement Agreement.

"The **Settlement Administrator or the Independent Review Entity SHALL DETERMINE** whether CIGNA's denial is supported by a preponderance of the evidence based on MCAG's documentation **and** CIGNA's Review File." (emphasis added) DE 6732, Ex. 20 at 3.

Whether the data CIGNA provided to the Reviewers was adequate, was for the Reviewers to decide under Settlement Agreement and cannot be second-guessed some 13 years later. The Reviewers, obviously, processed the claims in the category "Records found NO" with Judge Davis's orders guiding them, and had no idea that some 13 years later a substitute arbitrator would create a sub-category of claims for a sub-group of class members called "Record Found NO" and determine that the Reviewers did not have enough information to process the claims they already processed some 13 (or more) years earlier.  Moreover, CIGNA provided all of the data it had – there was no  more to provide – and CIGNA was not required to provide more than it had. DE 6787, Ex. 11 at 2217; 2152-2153.  In fact, there is no finding that a lack of data from CIGNA affected any decision on any claim by the Reviewers. The "Records Found NO" category has not been tied to any wrongfully decided claim or to any act of CIGNA – nor does the Final Award make such a determination.

Nor did the Final Award make any finding that CIGNA was provided the requitsite notice under the Settlement Agreemnt that its efforts with respect to a Review File were wanting. DE 2308, Ex. 2 at 106.

Mr. Buchakjian (MCAG's only not disqualified expert) testified that he has no opinion on whether any Proof of Claim submitted under the d(iii) exception meets the exception's requirements.  DE 6787, Ex. 8 at 1542:4-8; 1536:25-1537:6; DE 6787, Ex. 15 at 2955:9-25  ("Q: You're not providing any opinion about whether a claim submitted under the d(iii) provision actually qualifies for the requirements of that provision; is that right?  A: That's correct.").[13] Neither of MCAG's experts opined on whether MCAG's claims or exceptions were valid.

### No Interest Is Warranted

For all of the same reasons that prohibit a "damages" award against CIGNA, "interest" is also barred.  Moreover, when a claimant settles a claim, the claimant trades its right to prejudgment interest for the certainty of the settlement, absent an express settlement provision permitting prejudgment interest. *Escadote I Corp. v. Ocean Three Ltd. P'ship*, 211 So. 3d 1059 (Fla. 3d DCA 2016). In addition, the Settlement Agreement and the Arbitration and Supplemental Arbitration Agreements do not support any interest Award. *See* DE 6787, Ex. 19 ¶ 4; DE 2308, Ex. 2 ¶¶ 14.3-14.4;  Vol. 19 Tr. at 4055-4122 (Ex. J). Because there can be no award for the "Records Found NO" category, for reasons already argued, there can be no award of interest.

### II.   The Final Award Violates the Settlement Agreement by Providing for A Remedy Not Included in the Settlement Agreement

The Arbitrator violated the Settlement Agreement and exceeded his authority by fashioning a remedy that the Settlement Agreement never contemplated, while ignoring the primary protections of the Settlement Agreement.  The Final Award states that the Arbitration is bound by the Settlement Agreement, the Arbitration Agreement, the Supplemental Arbitration Agreement,

---

[13] He also expressed no expert opinion on any substantive matter in the Final Hearing. See CIGNA's draft Findings of Facts and Conclusions of law.

and the 11th Circuit Opinion.  Final Award ¶ 1 (Ex. B).  However, the Final Award is contrary to all of those documents.

The Settlement Agreement, Arbitration Agreement, and Supplemental Arbitration Agreement must be enforced according to their terms, and the Arbitrator cannot engage in selective enforcement. *Recovery Database Network, Inc. v. Balogh*, No. 1:16-cv-01923, 2017 WL 3117015, at *4 (S.D. Ind. July 20, 2017); *see also Garrison v. Bally Total Fitness Holding Corp.*, No. 04-1331, 2005 WL 8177022, at *10 (D. Ore. Aug. 17, 2005); *R.A.M., LLC v. Hill*, 393 F. App'x 684, 686 (11th Cir. 2010); *J&J Sports Prods., Inc. v. Mega Taco, Inc.*, No. 1:17-cv-1863, 2018 WL 2760318, at *3 (N.D. Ga. Apr. 5, 2018); *Faez v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014).  Indeed, an Arbitrator cannot ignore the plain wording of an agreement (or Order). *In re M.D. Moody & Sons, Inc.*, No. 309-BK-6247, 2011 WL 2750951 (Bank. M.D. Fla. Feb. 24, 2011) ( "In interpreting the words of a clearly-worded contract, the Court may not add or subtract language from the face of the instrument and may not make a new contract for the parties where their intent can be easily inferred from the contract itself."); *see also Quesada v. Dir., Fed. Emergency Mgmt. Agency*, 577 F. Supp. 695, 697 (S.D. Fla. 1983), *aff'd*, 753 F.2d 1011 (11th Cir. 1985); *Equitable Life Assurance Society of the United States v. Pinon*, 344 So.2d 880 (Fla. 3d DCA 1977); *Emmco Ins. Co. v. Southern Terminal and Transport Co.*, 333 So.2d 80 (Fla. 1st DCA 1976); *Jefferson Ins. Co. v. Fischer*, 166 So.2d 129 (Fla. 1964).

This is especially true in the context of settlements and releases.  "When construing the effect of a general release: First, a court must look to the language of the release." *Victor v. Lawler*, No. 3:08-cv-1374, 2011 WL 6937537, at *3 (M.D. Pa. Nov. 28, 2011).  "In addition, the language of the release must be viewed in the context of the entire document," and "[e]ach part of the release must be given effect."  *Id*.  As the court in *Victor* specifically held: "a party may not pick and

28

choose only those portions of a settlement that are convenient and seek selective enforcement of a settlement and release." *Id.*   Numerous courts have reiterated this same conclusion.  *See, e.g.*, *Thomas v. Harrisburg Area Human Soc.*, No. 1:09-cv-1557, 2010 WL 2891517, at *5 (M.D. Pa. May 7, 2010) (same); *Ginaldi v. O'Brien*, No. 12-956, 2015 WL 5316439, at *5 (E.D. Pa. Sept. 11, 2015) (same); *McFadden v. United States*, No. 3:14-cv-1166, 2014 WL 6633251, at *7 (M.D. Pa. Nov. 21, 2014) (same).   Yet, the Final Award ignored the actual terms of the agreements binding it.

The Settlement Agreement did not provide the authority for, or permit imposition of the remedy that the Arbitrator awarded.  As the Arbitration Agreement recognizes, the Settlement Agreement is the basis for the arbitration:

> CIGNA and MCAG "shall submit the dispute[concerning the compensability of certain claims submitted by MCAG pursuant to the Settlement Agreement] to a single arbitrator for final resolution of all issues relating to whether the claims for Category Two Compensation **under the Settlement Agreement** Among CIGNA HealthCare and Physicians submitted by MCAG on behalf of Class Members are payable pursuant to **that agreement**."  DE 6695, Ex. 3 at 1 (emphasis added).

Neither the Arbitration Agreement DE 6695, Ex. 3 nor the Supplemental Arbitration Agreement (DE 6787, Ex. 19) contain any means of  compensating Class Members—only the Settlement Agreement does.  Section 8.3(2) (DE 2308, Ex. 2) was the sole method to obtain approval for the payment of a claim by CIGNA, but the Final Award did not utilize that sole procedure.  Moreover, Judge Davis whose Orders the Arbitrator represented he would honor (Final Order ¶ 134 (Ex. B)) clearly ruled that the Settlement Agreement calls for a claim-by-claim analysis as the only methodology that can be utilized.  *See* DE 6732, Ex. 20 at 3, 13 "[T]he Settlement Agreement represents not only 'the most comprehensive and efficient procedure for

assessing the validity of MCAG's claims,' but also the means by which 'MCAG's claims are [to be] processed as the parties intended'".

The Final Award (Ex. B) reflects that all claimants had to follow detailed procedures for the processing Category Two claims, as set forth in Section 8.3 of the Settlement Agreement (DE 2308, Ex. 2). Final Award ¶ 36 (Ex. B). In fact, in Paragraph 36, Mr. Matthews reflects that, under the Settlement Agreement for Category Two Compensation, all claimants had to follow detailed procedures for the processing of such claims that were set forth in Section 8.3. DE 2308, Ex. 2. Yet, the Final Award does not follow the procedure set out in the Settlement Agreement and merely selects a category of claims it refers to as "Records Found No," and then essentially defaults CIGNA to pay this entire category of claims regardless of the fact that the Reviewers had already decided each of those claims, and the Reviewers cannot be overturned by the Arbitrator. Furthermore, the Supplemental Arbitration Agreement did not create a damages remedy or state that the Reviewers' decisions could be ignored. Such reading of the Supplemental Arbitration Agreement violates of the Settlement Agreement—which explicitly prohibited that.

The Arbitrator also violated the Settlement Agreement and Arbitration Agreements and exceeded the scope of his authority by purporting to conduct a "de novo" review of the claims pursuant to the Supplemental Arbitration Agreement. The Final Award improperly characterized the term "de novo" in the Supplemental Arbitration Agreement (Final Award ¶¶ 4, 108, Ex. B) as granting the Arbitrator the power to create a remedy not contained in the Settlement Agreement. *See* DE 6787, Ex. 19 ¶ 5 ("The Parties agree that the purpose of the Arbitration is for the Arbitrator to conduct a de novo review of the compensability of MCAG's claims under the Settlement Agreement...."). But the Supplemental Arbitration Agreement further instructs that:

The Parties therefore agree that the arguments during the Arbitration will be limited to (a) whether the claims submitted by MCAG on behalf of Class Members **qualify for payment under the terms of the Settlement**, and (b) whether MCAG's claims should be paid, in whole or in part, as a result of CIGNA HealthCare's agreement with Redstone.

The Final Award cannot purport to interpret one of the terms in a paragraph of the Supplemental Arbitration Agreement ("de novo") and ignore the other terms in that same document (limitation as to the purpose of the arbitration and requirement that only claims that qualified for payment under the Settlement Agreement, would be considered) - as well as ignoring the terms of the Settlement Agreement.  To characterize the term "de novo" as granting powers not contained in any of the underlying agreements and ignoring the plain language of the agreements, barring certain types of claims, as the Arbitrator did here, violates the agreements and exceeds the scope of his authority under the Arbitration Agreement. Finally, it is impossible to reconcile the Final Award's view on the "de novo" language of the Supplemental Arbitration Agreement with the fact that it makes no sense that CIGNA and MCAG could have given the arbitrator limited review authority in the Arbitration Agreement, and extremely expansive authority in the contemporaneous Supplemental Arbitration Agreement, which was intended (by its terms) to be concealed from the arbitrator.  The Supplemental Agreement was not supposed to be disclosed to the Arbitrator until all proceedings were over, to effectuate the High-Low arrangement within the Supplemental Arbitration Agreement, only if necessary.  Moreover, the Arbitrator was not permitted to consider any "processing" issues.  *See* DE 6787, Ex. 19 ¶ 5 ("The Parties agree that they will not mention before the Arbitrator the fact that the Settlement Administrator reached any substantive determinations as to the validity of any MCAG claim, **including the process by which the Settlement Administrator reached its decision to pay, defect or reject MCAG claims**." (emphasis added). In addition, no argument shall be made that

reasonably requires a Party to rely on the Settlement Administrator's determinations in response to such argument.". Under the Final Award's characterization, suddenly—when the entire matter was over and the Supplemental Agreement was disclosed—the Arbitrator (or his replacement) could now overturn all of those decisions to grant a "damages" award. This characterization is non-sensical and violates the underlying agreements.  Moreover, no such characterization could amend the Settlement Agreement to add remedies that are not in the Settlement Agreement.  The Supplemental Arbitration Agreement does not now, after 20 years, give the Arbitrator authority that conflicts with both the Settlement Agreement's actual terms and the former Arbitrator's interpretation of them. Vacatur is appropriate here for that reason, and all further proceedings against CIGNA must be barred.

Finally, in conducting his "de novo" review the Arbitrator violated the Settlement Agreement and exceeded his authority by reversing or overturning the Reviewers' decisions as to the substantive validity of any claim.  The Settlement Agreement provides that external review by the Reviewers is final and cannot be overturned by the District Court or Arbitrator:

> Decisions of the Settlement Administrator [Epiq] or Independent Review Entity [Millenium], as appropriate, shall be final and not subject to review by the Court or any other tribunal.  Neither the Settlement Administrator nor the Independent Review Entity shall entertain any requests for reconsideration of their decisions regarding Proofs of Claim for Category Two Compensation.

DE 2308, Ex. 2 § 8.3(c)(2)(h)(iv)(G).[14]  The Eleventh Circuit confirmed this reading of the Settlement Agreement, stating that "[a]fter evaluating these claims, the Reviewers would make a

---

[14] The Arbitrator also requested a Final Accounting by EPIQ as per the Settlement Agreement. Vol. 19 Tr. at 4122 (Ex. J). EPIQ provided a final accounting under the terms of the Settlement Agreement. EPIQ's final accounting ("EPIQ Accounting"), attached hereto as **Exhibit L.**  The Arbitrator rejected it, without any basis. Paragraph 194, of the Final Award (Ex. B) states, "Nonetheless, consistent with the Tribunal's conclusion that it will not review substantive decisions by EPIQ, even where it appears that such decisions are demonstrably incorrect, the

final, independent decision regarding whether the claims should be paid." *Managed Care Advisory*

*Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1151 (11th Cir. 2019). The Settlement

---

Tribunal declines to act on the observations that are critical of EPIQ's final accounting as set forth in Mr. Buckakjian's affidavit dated July 26, 2021. Yet, the Final Award did in fact take into consideration the incorrect and baseless opinion of Mr. Buckakjian as to EPIQ's accounting. Moreover, the Tribunal did review the substantive decisions of EPIQ in its Final Accounting and refuse to follow them. Paragraph 195, of the Final Award (Ex. B) incorrectly mischaracterizes what occurred with respect to EPIQ. At a hearing on the Final Accounting provided by EPIQ, it was clear by the Arbitrator's statements that he misunderstood EPIQ's final accounting. CIGNA sent an e-mail to the Arbitrator, advising him of his erroneous characterization of the EPIQ Final Accounting and requested the Arbitrator seek clarification from EPIQ. CIGNA understood that such clarification would not support the erroneous characterization by the Arbitrator and stated, that if the Arbitrator failed to request clarification, CIGNA would. The Arbitrator refused to request clarification and CIGNA requested such clarification. EPIQ responded and the Tribunal decided to ignore EPIQ's response. Paragraph 195, of the Final Award (Ex. B) attempts to explain why the Arbitrator refused to ask for a clarification from EPIQ when his own statements clearly indicated confusion concerning EPIQ's Final Accounting. Paragraphs 196 and 197, of the Final Award attempt to defuse the misunderstanding about EPIQ's accounting. However, CIGNA presented evidence in the form of MCAG's accounting sheets, presented to EPIQ for payment, where the total of the itemized claims far exceeded the addition of all itemized claims, to demonstrate that the disparity in the accounting that EPIQ was now offsetting, was a disparity created by MCAG's misstatement of the amounts due by CIGNA, and not prior payments by CIGNA. *See* Interest References, Vol. 19 Tr. at 4122-4134 (Ex. J). The Final Award never mentions this. Despite agreeing that he would not overrule EPIQ in any regard, paragraph 200 of the Final Award states "the Tribunal finds these three methods and the erratic values they produced to be unreliable and rejects them." What that means, is that the Arbitrator acted as its own expert in determining what the Final Accounting should have resulted in, by the only entity authorized to perform such an Accounting under the Settlement Agreement. The Arbitrator apparently did not understand EPIQ's determination and EPIQ filed a clarification, explaining that, when MCAG filed its accounting summaries, EPIQ had relied on the "total" column amount in MCAG's records, for CIGNA's liability, but when EPIQ performed the final accounting, it determined that the "totals" on MCAG's accounting summaries far exceeded the sum of the line items and that resulted in a significant overcharge to CIGNA. *Id*. at 4122-4134 (Ex. J). The Final Accounting determined that mistake should be reconciled against whatever amount CIGNA owed on the unprocessed claims. The Arbitrator arbitrarily ignored this determination by the Reviewer in violation of the Settlement Agreement. Final Award Para. 199-202. As the Settlement Agreement clearly states, the determinations of the Reviewers are final and cannot be overturned by the Arbitrator. *See* § 8.3(c)(2)(h)(iv)(G), DE 2308, Ex. 2. Moreover, the section of the Settlement Agreement providing for EPIQ to perform a Final Accounting provided no review or adverse determination by the arbitrator or court.

Agreement's finality provision confirms that the role of the District Court or Arbitrator was not to re-review claims that have already been reviewed by the Settlement Administrator or IRE.

In the Final Award (Ex. B), the Arbitrator recognized that Judge Davis had previously concluded that "the Settlement Administrator or Independent Review Entity as External Reviewer is to decide the ultimate validity of the claims. Therefore, I [as the arbitrator] will not rule on the substantive validity of any claim, individually or categorically. Rather, I will provide interpretation or guidance for the decisions to be made in external review."   Final Award ¶ 53 (Ex. B). The Arbitrator specifically reaffirmed this commitment in the Final Award:

> The Tribunal accepts the prior decisions of Judge Davis and Arbitrator Schultz regarding the role of this Tribunal with respect substantive decisions made by EPIQ, … To do otherwise would substitute one flawed process with another flawed process and have this Tribunal, perhaps the least knowledgeable of every human being now involved in the claims process, make a final decision on the substantive validity of hundreds of thousands of claims made 20 years ago, based on the adequacy or inadequacy of Review Files and the Tribunal states it will not do that.

Final Award ¶ 177 (Ex. B).  Yet, despite his commitment not to overrule the decisions of the Reviewers and prior determinations of any arbitrator, which were based on the plain language of the Settlement Agreement, the Arbitrator repeatedly did so.  *Id.* ¶ 165 (Ex. B).  The Reviewers made substantive decisions on the claims in the category 'Records Found No' and the categorical decision of this Final Award, without reviewing any individual claim, **reverses** those decisions. "Following are more detailed explanations of the Tribunal's reasoning for **reversing** some, but not all of the denied claims for which MCAG alleges there was either no Review File or an insufficient Review File".  *Id.*  The Final Award itself uses the term **"reversing".**  (emphasis added) This was a clear violation of the explicit terms of the Settlement Agreement. All of the claims in the category "Record Found No" had already been processed and final decisions had been made by the

Reviewers a decade or more before the Final Award was issued.  *See* MCAG Arbitration Exhibits CLTx 285-314.

In addition, no remedy can be fashioned that is not identified in the Settlement Agreement. *Soler v. Secondary Holdings, Inc.*, 832 So.2d 893, 896 (Fla. 3d DCA 2002), (arbitration could not provide a remedy that was not agreed to in the Arbitration Agreement). *See also Charbonneau v. Morse Operations, Inc.*, 727 So.2d 1017 (Fla. 2d DCA 1999).  Numerous cases across the country hold that arbitration cannot provide a remedy where the agreement does not specifically provide for such a remedy.  *See, e.g., Moore v. Omnicare, Inc.*, 118 P.3d 141 (Id. Sup. Ct. 2005); *Bingham Cnty. Com'n. v. Interstate Elec. Co.*, 665 P.2d 1046, 1052 (Id. Sup. Ct. 1983).   Federal courts agree. In *Vemco, Inc. v. Flakt, Inc.*, 96 F.3d 1449 (6th Cir. 1996), the Sixth Circuit reversed the decision of the district court and vacated an arbitration award because the arbitrator awarded remedies that the parties did not agree to.  Specifically, the court held: "Unfortunately, the record indicates that the arbitrators likely resolved issues the parties did not agree to arbitrate, and that this resulted in an award for plaintiff that consisted of significant damages the arbitrators were without authority to assess against defendant."   Similarly, in *Swift Industries Inc. v. Botany Industries Inc.*, 466 F.2d 1125, 1133 (3d Cir. 1972), the court affirmed the lower court's order vacating an arbitration award where the arbitrator's issuance of a monetary award exceeded his authority. *See also Matter of Pacre Corp.*, 21 B.R. 759, 762 (Bankr. S.D. Fla. 1982) (vacating award where arbitral agreement authorized as a remedy either specific performance or return of deposit money and arbitrator exceeded his authority by awarding damages in excess of amount of deposit money plus option of specific performance and monetary credits or substantial monetary damages, as well as additional non-monetary awards that were not provided for in the agreement).

Ultimately, Section 10 of the Federal Arbitration Act does not permit an arbitration award where the "arbitrators exceeded their powers." *See* 9 U.S.C. § 10(a)(4); *see also Szuts v. Dean Witter Reynolds, Inc*., 931 F.2d 830 (11th Cir. 1991). Here, the Final Award violates the Settlement Agreement and exceeds the scope of the arbitration. *Monongahela Valley Hospital Inc. v. United Steel Paper and Forestry*, No. 19-2182, 2019 WL 7286693, at *2 (3d Cir. Nov. 13, 2019) (an arbitration is limited only to interpreting, applying or determining compliance with the arbitration agreement). Neither a party, nor the arbitrator can ignore the plain wording of the Arbitration Agreement. *Id*. at *3; *see also Sutherland Global Services v. Adam Technologies*, No. 15-1063-CV, 2016 WL 494155 (2d Cir. Feb. 9, 2016). This Court should vacate the Final Award because the Arbitrator violated the Settlement Agreement and the Arbitration Agreements and exceeded his authority in issuing the Final Award.

### III. The Final Award Should Be Vacated and the Arbitration Barred Because the Arbitrator Refused to Postpone the Hearing Upon Showing of Sufficient Cause; and the Matters the Arbitrator did Not Consider Protected CIGNA from any Liability.

On February 27, 2017, CIGNA filed a Motion to Enforce the Settlement Agreement and to Compel an Accounting, after having discovered serious misconduct and misuse of class settlement funds by MCAG. *See* DE 6545; *see also* DE 6548 (MCAG's opposition brief), DE 6552 (CIGNA's reply brief). This motion was denied at the district court level, but was reversed by the Eleventh Circuit, which required an expeditious accounting to examine the alleged misuse of funds. *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145 (11th Cir. 2019). The District Court then ordered an accounting, which uncovered egregious misuse and misappropriation of millions of dollars of class settlement funds by MCAG. *See* DE 6773.

Subsequent to the Accounting, CIGNA filed its Renewed Motion to Enforce the Settlement Agreement, and other motions, arguing in part that MCAG's misappropriation of class funds breached MCAG's fiduciary duties to the Class Members for whom it acts as an agent, which terminates the agency relationship as a matter of law and thereby deprives MCAG of Article III standing to further pursue claims against CIGNA.  DE 6685.  CIGNA also argued that the terms of the Settlement Agreement bar the arbitration because MCAG's claims are "Released Claims" under the Release provision of the Settlement Agreement, and thus those claims were fully and finally discharged by the Settlement itself.  *See generally* Settlement Agreement § 13.1, DE 2308, Ex. 2.  CIGNA appealed the denial of those motions to the Eleventh Circuit, and the Arbitrator refused to postpone the hearing pending a ruling by the Eleventh Circuit on those critical motions—challenging MCAG's standing to even proceed as the claimant in the arbitration and barring claims against CIGNA pursuant to the Settlement Agreement.

In fact, contrary to the evidence uncovered in the Accounting—demonstrating breaches of fiduciary duty by MCAG that stripped it of authority to proceed on behalf of the class—the Arbitrator concluded in his previous Report and Recommendation that MCAG was a "party" to the class action—a Plaintiff, in fact—suing CIGNA in a federal proceeding. ["… MCAG is a party to the MDL case."  DE 6719 p. 3. ["…MCAG became a party to the MDL Case." "… MCAG is a party to the MDL case."  DE 6719  p. 5.   Of course, MCAG was not and is not a party to the class action MDL.  The Eleventh Circuit held exactly that: "MCAG was not a party, class member, or class counsel in any of the lawsuits consolidated into the MDL, nor was it a party to the MDL itself."  *MCAG v. Cigna*, 939 F3d 1145, 1151–52 (11th Cir. 2019).   Nor could MCAG be transformed into a party to the MDL class action because it cannot meet the definition of being a

class member.  *See* Fed. R. Civ. P. 23.  *See also* CIGNA's Motion to Set Terms (DE 6808) and Reply (DE 6811)for a more fulsome analysis as to MCAG not being a Party.

In the face of a pending appeal challenging MCAG's standing, as well as the protections of the Settlement Agreement barring any claims against CIGNA, and the clear instruction by the Eleventh Circuit that the Arbitrator's position on MCAG's status as a party was incorrect, the Arbitrator refused to postpone the hearing and allow for final resolution of these threshold questions.  In fact, the Final Award answers "no" to the following question: by virtue of MCAG's conduct subsequent to the execution of the Arbitration Agreements should MCAG have been denied the agency to continue pursuing these claims on behalf of MCAG members? Final Award ¶ 116 (Ex. B).

Remarkably, this is the exact issue the Arbitrator stated he had no authority to decide, and is within the jurisdiction of the federal courts. In paragraph 110, the Final Award states that the District Court retained jurisdiction over the parties to enforce the Settlement Agreement, as required by the Eleventh Circuit opinion.  Moreover, the Arbitrator would have to ignore the undisputed evidence of MCAG's outright theft of class funds, in evidence at the Final Hearing, to come to any such conclusion.  *See* DE 6787, Ex. 14 at 2729, 2735, 2745-46, 2753-54; DE 6680, Ex. 3.

Furthermore, the Final Award even acknowledges that the jurisdiction and authority of the Tribunal was circumscribed by the terms of the party's agreements including the Settlement Agreement, the Arbitration Agreement, the Supplemental Arbitration Agreement, and the Stipulated Order.  Final Award ¶ 113 (Ex. B).  Nevertheless, despite the acknowledgement that the Arbitration was circumscribed by the terms of the underlying agreements governing the arbitration, the Arbitrator unnecessarily set a final hearing before those key terms—including

whether MCAG's claims were Released Claims that had been discharged by the Settlement Agreement—were adjudicated, despite CIGNA's request to postpone the hearing.

A district court should vacate an arbitral award under Section 10(a)(3) when an arbitrator refuses to postpone a hearing if there was "no reasonable basis for the arbitrator's refusal to postpone the hearing." *CM South East Texas Houston, LLC v. CareMinders Home Care, Inc.*, 662 Fed. App'x 701, 704 (11th Cir. 2016) (citing *Johnson v. Directory Assistants, Inc.*, 797 F.3d 1294, 1301 (11th Cir. 2015)). Here, the Final Award provides no basis for the need to proceed before the threshold issues were determined. Vacatur is appropriate if "the arbitrator's choice 'prejudice[d] the rights of the parties and denie[d] them a fair hearing.'" *Id.* (quoting *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992), *disapproved on other grounds by First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)). Such is the case here. The Arbitrator refused to postpone the hearing while a an appeal was pending before the Eleventh Circuit and before the protections in the Settlement Agreement and Arbitration agreements can be determined by the District Court or the Appellate Court. The pending appeal challenged MCAG's standing to even proceed with the arbitration and whether MCAG's claims were barred by the Settlement Agreement.[15] Because of the Arbitrator's refusal, CIGNA was required to proceed to defend itself in an arbitration that should not have even occurred, without its primary defenses and counterclaims. That certainly amounts to prejudice and the denial of a fair hearing that warrants vacatur of the Final Award. The Final Hearing should not have proceeded before these issues which, admittedly, the arbitrator could not and did not opine on, could be determined.

---

[15] This is especially so when no statute of limitations was running and there was no basis identified for moving ahead with the Final Hearing before CIGNA's rights and protections could be determined.

**IV.**     **The Final Award Should Be Vacated and the Arbitration Should be Barred Because the Arbitrator Refused to Consider Evidence Material to the Controversy**.

The Court also should vacate the Final Award because the Arbitrator refused to consider material evidence in the form of CIGNA's defenses and counterclaims.   The Final Award states "whether CIGNA's counterclaims will survive the entry of this final award and what relief, if any, CIGNA is entitled to under those counterclaims will be a matter for the District Court to determine."  Final Award ¶ 237 (Ex. B).

Arbitrators "must give the parties a fundamentally fair hearing." *Rosensweig v. Morgan Stanley & Co., Inc.*, 494 F.3d 1328, 1333 (11th Cir. 2007).  To do so, an arbitrator must "give each party the opportunity to present its arguments and evidence."  *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992), *overruled on other grounds*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995); *see also Hoteles Condado Beach, La Concho & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (11th Cir. 1985) (holding that an arbitrator "must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments").  Here, the arbitrator acknowledged that he would not consider evidence supporting a party's counterclaim that, in effect, prevented CIGNA from presenting its counterclaim, "amount[ed] to fundamental unfairness and misconduct sufficient to vacate the award pursuant to section 10(a)(3) of the FAA."  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997).

The Final Award failed to consider CIGNA's defenses and counterclaims which were required elements of the underlying Settlement Agreement.  For example, the Arbitrator failed to consider: (1) the effect of the release, covenant not to sue and protection from processing issues in

Sections 13 and 9.6 of the Settlement Agreement (DE 2308, Ex. 2). The Arbitrator also considered arguments and purported evidence he was not permitted to consider under Section 5 of the Supplemental Arbitration Agreement (DE 6787, Ex. 19).  Likewise, the Arbitrator failed to consider evidence that CIGNA actually presented that MCAG misappropriated CIGNA Class Settlement Funds for its own benefit, rather than distribute to Class Members to determine MCAG's standing to proceed even in Arbitration.  In doing so, the Final Award breached both the Settlement Agreement and the Arbitration Agreement.  *See* DE 6787, Ex. 14 at 2729, 2735, 2745-46, 2753-54; DE 6680, Ex. 3; DE 6685, Ex. 6.  Moreover, the sole and only basis MCAG provided for its misappropriation and self-dealing with respect to the CIGNA Class Settlement Funds is that it looted the majority of Class Settlement Funds based on fictional unfiled, unidentified indemnity claims against its own clients, the Class Members, which the Arbitrator ignored.  *See* DE 6787, Ex. 14 at 2754-2758.

Moreover, the rule is quite clear that a material breach eliminates the obligations of the other party, and the contract cannot be enforced by the breaching party.  *See Miami Beach v. Carner*, 579 So.2d 248 (Fla. 3d DCA 1991); *Hamilton v. Sun Trust Mortgage, Inc.*, 6 F. Supp. 3d 1300 (S.D. Fla. 2014); *Focus Mgmt. Group USA, Inc. v. King*, 171 F. Supp. 3d 1291 (11th Cir. 2016); *see also Cheezem Development Corp. v. Intracoastal Sales and Service*, 336 So.2d 1210 (Fla. 2d DCA 1976); *Ryan v. Landsource Holding Co., LLC*, 127 So.3d 764 (Fla. 2d DCA 2013).  MCAG's performance of contractual obligations is a condition precedent to its action for breach against CIGNA.  *Nancy-Ferguson Inc. v. Santa Rosa Tractor Co.*, 366 So.2d 90 (Fla. 1st DCA 1979); *Sebsa v. Sunbeam Corp.*, 148 Fed. App'x 774 (11th Cir. 2005).

As just one example of CIGNA's defenses which were ignored, the Arbitrator never considered this defense because he acknowledged that he had no jurisdiction to consider it. The

Arbitrator's refusal to consider CIGNA's defenses, such as prior breach, violated the Settlement

Agreement and constitute grounds for vacatur of the Final Award.

**V.     The Final Award Should Be Vacated And Further Proceedings Against CIGNA Barred, Because the Arbitrator Conducted the Hearing in a Manner that Prejudiced CIGNA's Rights.**

The Final Hearing was not governed by a cause of action, burden of proof on MCAG, or a

requirement that MCAG prove causation as to CIGNA.  As the Arbitrator admits in the Final

Award: "Rather than treating MCAG's claim as a cause of action subject to the pleading

requirements and burden of proof urged by CIGNA, the issues of this proceeding for determination

are: 1) whether MCAG lost its agency to continue pursuing the claims, 2) whether CIGNA has

fully complied with its obligation to provide settlement consideration under the Settlement

Agreement."  Final Award ¶ 115 (Ex. B).  Of course, this is a stark admission that CIGNA was

prejudiced and not provided with a fundamentally fair hearing.  No cause of action was identified

against CIGNA.  The claimant, MCAG, was not required to meet any burden of proof.  MCAG

was not required to even prove the validity of the claims or exemptions that were part of the

"Records Found No" category.  And, the Arbitrator did not require MCAG to demonstrate

causation—to tie any claimed infirmity to CIGNA's conduct.

As to the first issue, whether MCAG had "lost its agency," this was a determination for the

District Court, as the Final Award makes clear.  The arbitration should not have proceeded until

that question was resolved.  The second issue, "whether CIGNA has fully complied with its

obligation or provided settlement consideration under the Settlement Agreement," is not a "cause

of action."  The Settlement Agreement is very clear: claims can only be submitted through a highly

defined process to be reconsidered by CIGNA and then if CIGNA still denies the claims, by the

independent Reviewers. There was never any concept in the Settlement Agreement that would

allow the Arbitrator issue a damages award based on: "whether CIGNA has fully complied with its obligation or provide settlement consideration under the Settlement Agreement."

Throughout this entire process, MCAG has never offered any basis for CIGNA's liability. Arbitrator Schultz aptly noted that MCAG had to "articulate a claim" based on tort or contract law, some "articulation [] of a legal theory upon which [MCAG is] proceeding" against CIGNA. DE 6659, Ex. 5 at 34, 39. He specifically noted that "improper processing" of claims "is not a cause of action … not a theory of recovery from a legal perspective" and that MCAG could not proceed based on "some amorphous thing that [MCAG] didn't agree with the results." *Id.* p. 65. CIGNA was entitled to know under what theory MCAG was seeking to impose liability, *id.* p. 66, but it had no notice from MCAG.

As for the burden of proof, federal and state courts universally recognize that a plaintiff bears the burden of establishing every fact supporting its affirmative claims by a preponderance of the evidence. *See, e.g.*, *Herman & Maclean v. Huddleston*, 459 U.S. 375, 387 (1983) ("In a typical suit for money damages, plaintiffs must prove their case by a preponderance of the evidence."); *see also Keith Fulton & Sons, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 762 F.2d 1124, 1133 (1st Cir. 1984); ("… the burden is on the plaintiff… to prove his entitlement to it in every way by a preponderance of the evidence."); See also, *Rivera v. Minnich*, 483 U.S. 574, 577 (1987); *Escamilla v. Nuyen*, 227 F. Supp. 3d 37, 47 (D.D.C. 2017).

Federal courts also routinely hold that parties claiming entitlement to benefits under managed care plans bear the burden of establishing that they are, in fact, entitled to coverage. For example, in *Sacred Heart Health System, Inc. v. Humana Military Healthcare Servs., Inc.*, No. 3:07-cv-62-MCR-EMT, 2011 WL 13193287 (N.D. Fla. Oct. 21, 2011), the plaintiffs sued a managed care company for underpaying certain claims. *Id.* at *2. The court confirmed that

"**Plaintiffs have the burden of proof in this case** of establishing an entitlement to payment."  *Id.* at \*12 (emphasis added); *see also Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351-Pas-Seitz/O'Sullivan, 2010 WL 11506057, at \*9 (S.D. Fla. Aug. 31, 2010) (applying Florida law and holding, in a managed care case that "a plaintiff must plead and has the burden of proving" the elements of its breach of contract claim).  The Southern District of Florida, in particular, has repeatedly held that when a plaintiff claims entitlement to benefits under insurance contracts—including managed care benefits plans—the plaintiff bears the burden of establishing its entitlement.  *See, e.g.*, *Service Corp. Int'l v. Continental Cas. Co.*, No. 04-CIV-61156-Gold/Turnoff, 2006 WL 8446047, at \*7 (S.D. Fla. Nov. 22, 2006) ("under Florida law, the insured bears the burden of proving that the loss occurred, and that the loss was within the coverage of the policy").

The Class Plaintiffs pled this case as an ERISA case.  And, in actions alleging improper denial of coverage under the ERISA, the "Plaintiff has the burden of showing that he is entitled to the benefits under the terms of the Plan."  *Fox v. Blue Cross & Blue Shield of Fla., Inc.*, No. 11-81351-CIV-DMM, 2012 WL 12892765, at \*4 (S.D. Fla. Aug. 8, 2012); *see also id.* at \*5 ("[I]t is Plaintiff's burden, not Defendant's, to show that he is entitled to certain benefits under the Plan and Plaintiff has not presented any evidence supporting this contention.").  The undeniable conclusion from the overwhelming authority is that MCAG bears the burden of establishing a viable claims and CIGNA's responsibility for it.  Yet, the Final Award requires no burden of proof.[16]  Final Award ¶ 115 (Ex. B) (concluding that Arbitrator would not "treat[] MCAG's claim as a cause of action subject to the pleading requirements and burden of proof urged by CIGNA.").

---

[16] The rule is especially well-developed in breach of contract cases.  Federal courts routinely apply the hornbook principle that the plaintiff in a breach of contract action bears the burden of

44

Finally, one of the fundamental prerequisites of standing that a plaintiff must establish in order to seeking relief, is causation. *Steel Co. v Citizens for a Better Environment*, 523 U. S. 83, 104 (1998). MCAG has established no "causation" tying CIGNA's conduct to any harm that Plaintiffs suffered. All of the so-called acts MCAG complains of are not tied to any particular claim that was wrongfully denied as a result of any act of CIGNA. And as Arbitrator Schultz repeatedly pointed out to MCAG, a mistake by the Reviewers does not somehow impose liability on CIGNA. *See* DE 6659, Ex. 5 at 52-66. MCAG's counsel admitted that the Reviewers cannot be sued for any issue related to claims processing under the Settlement Agreement, stating: "I don't believe that we can bring a claim against EPIQ because I think under the settlement agreement you cannot bring a claim against EPIQ." *Id.* at 66. Under the Settlement Agreement the Reviewers are protected from suit by the very same provision of the Settlement Agreement that protects CIGNA. *See* DE 2308, Ex. 2 § 9.6. In fact, CIGNA has even greater protection than the Reviewers, because it was a Released Party. MCAG cannot point to conduct by the Reviewers (EPIQ's purported transfer of claims to be decided by the IRE) in an attempt to establish causation against CIGNA. The Arbitrator's failure to require MCAG to establish the causation element of the standing requirement is grounds for vacatur of the Final Award.

## CONCLUSION

For the foregoing reasons, CIGNA respectfully requests that the Court vacate the Final Award against CIGNA, pursuant to 9 U.S.C. § 10(a)(3) and (4) and  bar any further

---

establishing the elements of its claim. *See Dictiomatic, Inc. v. U.S. Fidelity & Guar. Co.*, 958 F. Supp. 594, 606 (S.D. Fla. 1997); *see also Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011).

proceedings against CIGNA.  CIGNA's vacatur motion is to achieve finality for CIGNA by either (i) vacating the Final Award, with prejudice, and to the exclusion of any further proceedings concerning CIGNA's liability to the Class Members, or (ii) to determine that the Final Award's determination that CIGNA's liability to the Class Members is limited to, and does not exceed, $16,281,051.19, is final, and resolves all of CIGNA's liability to the Class Members.

Dated:  November 2, 2021

Respectfully submitted

/s/ Marty L. Steinberg
**HOGAN LOVELLS US LLP**
Marty L. Steinberg
600 Brickell Avenue
Suite 2700
Miami, Florida 33131
Tel:  (305) 459 6500
Fax:  (305) 459 6550
marty.steinberg@hoganlovells.com

*Attorneys for Cigna Healthcare*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2021, a true and correct copy of the foregoing was served by electronic mail on:

jeff@axslawgroup.com
**AXS Law Group,PLLC**
2121 NW 2nd Ave
Miami, FL 33127

**BUCHALTER NEMER**
Andrew H. Selesnick, Esq.
aselesnick@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
(213) 891-0700
(213) 896-0400 (Fax)

Gerald E. Greenberg
GELBER SCHACHTER & GREENBERG, P.A.
SunTrust International Center
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
Facsimile: (305) 728-0951
Email: ggreenberg@gsgpa.com


/s/ Marty L. Steinberg
MARTY L. STEINBERG