UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number: 00-01334-MD-MORENO

IN RE: MANAGED CARE LITIGATION,

_____/

## ORDER GRANTING MOTION TO VACATE ARBITRATION AWARD FINDING THE SETTLEMENT AGREEMENT'S RELEASE BARS MCAG'S CLAIMS

The dispute over class members' compensation under the Settlement Agreement has been ongoing for over fifteen years. Even in 2008, then arbitrator, former Chief Judge Edward Davis, noted "Managed Care Advisory Group (MCAG) and Cigna's status as two ships passing in the night." Not much has changed in the intervening 15 years as discord has continued without final resolution. In 2021, this Court sent the matter to the new Arbitrator Joseph Matthews for review. The Court, however, had not resolved the threshold issue of whether the Settlement Agreement bars MCAG from recovering on a group of Category 2 claims – those designated by Cigna as "Records Found, No." Arbitrator Matthews noted Cigna's defense to the arbitration under the Settlement Agreement, but did not decide the issue. Cigna now seeks to vacate the Final Award (ECF 6820-2) arguing that the claims are barred by the Settlement Agreement and the arbitrator exceeded his authority by overturning certain decisions of the External Reviewers by finding certain claims compensable. MCAG filed a cross-motion to modify the arbitration award, claiming that the arbitrator did not go far enough in awarding compensation under the Settlement Agreement. Because the Court finds that the Settlement Agreement's release bars the claims, the Court vacates the Final Award and denies MCAG's motion to modify the award.

THIS CAUSE came before the Court upon Cigna Healthcare's Motion to Vacate the Arbitral Award (D.E. 6820) and Managed Care Advisory Group, LLC's (MCAG) Motion to

Confirm Arbitral Award in part and Modify the Arbitral Award (D.E. 6821).

THE COURT has considered the motions, the responses, oral argument, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that Cigna Healthcare's Motion to Vacate the Arbitral Award is GRANTED as set forth in this Order. The Court finds the settlement agreement bars Managed Care Advisory Group's (MCAG) resubmitted claims, labeled "Records Found, No," which were the subject of the most recent arbitration in this case. (ECF 6820-2). Accordingly, the Court orders the $16,281,051.19 currently in escrow to be returned to Cigna.[1] It is also

**ADJUDGED** that MCAG's Motion to Confirm the Arbitral Award in part and Modify It in part is DENIED as moot.

## I. Background

On September 4, 2003, the parties entered into a Settlement Agreement to settle all claims in this multidistrict case. Class members could pursue compensation in two ways – recovery from a fixed fund or they could resubmit claims with a proof-of-claim and supporting documentation to obtain what the Settlement Agreement termed "Category Two" benefits. These Category Two claims are the subject of the dispute between Cigna and Managed Care Advisory Group (MCAG). The American Medical Association recruited MCAG to serve as an agent for physicians making claims under the Settlement Agreement.

The Settlement Agreement § 8.3(c)(2) sets forth procedures for Category 2 Claimants. (ECF 2308, Exh. 2 at 124). From 2003 to 2005, MCAG began to act as a fiduciary and agent for certain Class Members, to facilitate the payment of Category Two claims. The last day to file

---

[1] This Order does not affect any pre-existing obligation that Cigna Healthcare has to pay past due unpaid Approved Claims.

proofs of claims under Category 2 under the Settlement Agreement was February 18, 2005. On July 18, 2005, while the Settlement Administrator EPIQ Global was processing the initial claims filed by MCAG, one of the MCAG class members, Texas Children's Hospital, filed a motion to enforce the Settlement Agreement in this Court. While the motion was pending, MCAG and Cigna agreed to submit their dispute concerning Category 2 claims to arbitration and the motion was withdrawn. *See* Binding Arbitration Agreement (ECF 6110-1).

The Arbitration Agreement states that "[t]he parties shall submit the dispute to a single arbitrator for final resolution of all issues relating to whether the claims for Category Two Compensation under the Settlement Agreement among Cigna HealthCare and Physicians submitted by MCAG on behalf of Class Members are payable pursuant to that Agreement." *Id.* It adds "[t]here shall be no right of appeal from the arbitrator's decision, except that either party may challenge the arbitrator's decision on grounds permissible under section 10(a)(1) and (2) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*" *Id.* The parties also agreed to appoint the former Chief Judge of the United States District Court for the Southern District of Florida, Edward Davis, as the arbitrator. Judge Davis presided over the initial arbitration of the parties' disputed claims. On May 23, 2007, Judge Davis entered an order allowing MCAG's claims to be re-processed in accordance with his interpretations of the obligations of the parties and the Settlement Administrator EPIQ Global under the Settlement Agreement.

MCAG re-submitted hundreds of thousands of claims between August and October 2007. (ECF 6820-2 at ¶ 46). EPIQ entered the information from these Claim Forms into Excel spreadsheets and sent them to Cigna. *Id.* Cigna entered its responses to the claims into cells on Excel or provided notes for EPIQ. The re-submission process was completed in January 2008. *Id.* at ¶ 48. As a result, EPIQ overturned a significant percentage of Cigna's denials. For

example, the enforcement of the Review File requirement resulted in 53% of Cigna's denials being overturned. *Id.* EPIQ forwarded other claims for review to the External Reviewers. The parties again filed motions before the arbitrator. Judge Davis entered an order on June 18, 2008, detailing the rights and obligations under the Settlement Agreement and ordering the re-submission of MCAG's remaining claims in June 2008. *Id.* at ¶ 51. EPIQ reprocessed the claims and sent many claims to the Independent Review Entity. *Id.* at ¶ 67. Objecting to EPIQ's process, MCAG filed another motion before Judge Davis regarding the processing of claims. On December 22, 2009, Judge Davis entered an order stating that while he agreed that the Settlement Administrator and the Independent Review Entity make the final decisions on the claims, he was tasked with ensuring that EPIQ and the Independent Review Entity made decisions in accordance with the terms and conditions of the claims procedure.

Almost fifteen years later, the viability of MCAG's Category 2 claims remain at issue. Cigna contends these claims are barred by the Settlement Agreement's release for two reasons. MCAG never submitted them in accordance with the procedures of the Settlement Agreement and EPIQ and the Independent Review Entity already decided the merits of these claims, which decisions are unreviewable. The question is whether there remains an issue as to whether EPIQ properly handled those claims in accordance with the terms and procedures of the claims process or whether EPIQ complied with the claims process and those decisions are now final.

In January 2021, the Court referred this matter back to arbitration, and the new Arbitrator Joseph Matthews entered a Final Award after reviewing MCAG's Category 2 claims. (ECF 6820-2). Although Arbitrator Matthews noted the release argument, he did not decide the merits of the threshold issue that these claims should not be subject to arbitration because they are

barred by the Settlement Agreement. This Court must now decide whether to vacate the arbitral award on these grounds.

## II.     Legal Standard

The Federal Arbitration Act sets out the standards under which a party may seek an order vacating a final arbitral award. *See* 9 U.S.C. § 10(a). The Act provides that a court in the district where the award was issued, may vacate the award if the arbitrator exceeded the arbitrator's powers. 9 U.S.C. § 10(a)(4). Where an arbitrator exceeds his authority and provides a remedy not provided for in the underlying document, the arbitrator exceeds his authority and courts may vacate arbitral awards. *Verizon Penn. LLC v. Comms. Workers of Am.*, 13 F.4th 300, 310 (3d Cir. 2021). Finding that the remedy employed by the arbitral panel was not contemplated by the underlying agreement is grounds for vacating an arbitral award. *Id.*

In this case, the arbitration stems from the Settlement Agreement. As the Arbitration Agreement recognizes: "The Parties shall submit the dispute to a single arbitrator for final resolution of all issues relating to whether the claims for Category Two Compensation under the Settlement Agreement . . .are payable pursuant to that agreement." (ECF 6110-1). The issue is whether the Arbitrator's Final Award exceeds his authority under the Settlement Agreement and the Arbitration Agreement.

## III.     Analysis

*A.  Does the Settlement Agreement's Release Bar MCAG's Current Category II Claims?*

The Settlement Agreement defined "Released Claims" as any and all claims that have been or could have been asserted by or on behalf of any and or all Class Members against the Released Persons, and which arose prior to Final Approval, which was on February 2, 2004. *See* Settlement Agreement (ECF 2308 at 55; Ex. B § 1.108); Final Approval Order (ECF 2900). A

claim is released if it meets two criteria: (1) the subject matter of the claim falls within the scope of the Release; and (2) the claim arose prior to Final Approval in 2004.

The Court has for two decades repeatedly barred parties from pursuing claims covered by the Settlement Agreement. *See, e.g.*, *In re: Managed Care*, 756 F.3d 1222, 1225 (11th Cir. 2014) (affirming in part district court's order to the extent it held appellants in contempt and imposed sanctions for failure to withdraw claims that were released by the Settlement Agreement); *Thomas v. Blue Cross & Blue Shield Ass'n*, 333 F. App'x 414, 422 (11th Cir. 2009) (affirming district court's permanent injunction barring claims against insurer because those claims were released by the Settlement Agreement); *Klay v. All Defendants*, 309 F. App'x 294, 295 (11th Cir. 2009) (affirming district court decision concluding that the claims of a plaintiffs' group comprised of physicians were barred by the Settlement Agreement): *In re: Managed Care Litig.*, 00-1334, (S.D. Fla. March 27, 2006) (ECF 4888) (Order Adopting Report and Recommendations to enforce injunction against health care provider asserting released claims against Cigna alleging under-compensation); *In re: Managed Care Litig.*, 00-1334, (S.D. Fla. Feb. 14, 2006) (ECF 4778) (enforcing settlement against provider who alleged that Cigna had reduced or denied payments and noting that "class members are expressly prohibited from initiating lawsuits against released persons for any claims released by the Settlement Agreement."); *In re Managed Care Litig.*, 00-1334, (S.D. Fla. Nov. 15, 2004) (D.E. 3558) (denying provider plaintiff's attempt to avoid settlement release); *In re Managed Care Litig.*, 00-1334, (S.D. Fla. June 7, 2004) (ECF 2774) (enjoining provider from pursuing an appeal against a released party).

At issue is whether the Court should once again enforce the release and bar MCAG's Category 2 claims. In his Final Award, the Arbitrator Joseph Matthews noted the issue, but did not decide the merits of the legal argument that the claims are barred by the terms of the

Settlement Agreement. The parties raise a few issues for the Court's consideration. First, whether the claims are presumptively payable under the Settlement Agreement due to a failure of Cigna to provide a Review File. Second, whether MCAG properly resubmitted these claims in accordance with the Settlement Agreement's procedure, and if so, whether EPIQ complied with the claims procedure. Third, the parties raise the issue of whether these claims arose before the Settlement Agreement or whether they are "future" claims. Finally, the Court must decide whether the external reviewers properly and conclusively adjudicated the claims such that they are barred by the release.

### A. *Review File*

Under the framework of the Settlement Agreement and the arbitration orders, the Settlement Administrator EPIQ Global would serve as a gatekeeper and first determine if a class member had provided the proper documentation to submit a Category 2 claim. *See* Judge Davis May 23, 2007 Order (ECF 6787-20 at 9).[2] If so, then Cigna would receive the claim and decide to grant or deny it. If Cigna denied the claim, it would compile its "Review File," with the decision on the claim then subject to External Review. *Id.* at 10. In his Final Award, Arbitrator Matthews considered whether the Settlement Administrator Epiq deviated from the Settlement Agreement by excusing Cigna from its obligation to provide a Review File, and whether the Arbitrator should find MCAG's claims *per se* valid and payable under the Settlement Agreement. (ECF 6820-2). MCAG argues that because Cigna failed to compile a sufficient "Review File" for each unapproved claim, then every such claim should be deemed valid and immediately payable. To make this argument, MCAG relies on the Settlement Agreement, itself,

---

[2] Judge Davis also entered an order of clarification on August 6, 2007, which reiterated that the Settlement Administrator in its gatekeeping function should review the proof of claim to determine whether the class member submitted documentation specified in the Settlement Agreement. (ECF 6732-20 at 5).

which provides that "[i]f Cigna fails to assemble and forward to the Settlement Administrator the Review File for a denied proof of claim within the time limits specified in this Agreement, the denied proof of claim shall be deemed approved and shall constitute a Valid Proof of Claim." Settlement Agreement at § 8.3(c)(2)(h)(ii) (ECF 2308 at 139, Ex. B). This is relevant here because MCAG's claims at issue are for those where Cigna designated "Records Found, No." Ms. Mattingly testified that Cigna would designate a claim as "Records Found No" when all of Cigna's "searches through our eligibility files and our claim engines did not identify a claim that was processed for this member number, for this date of service, from this servicing provider's tax ID number that was provided." (ECF 6787 at 44; Ex. 12 at 2376). In essence, Cigna claimed it was unable to produce a Review File from the information provided.

While Judge Davis agreed that Cigna had an obligation under the Settlement Agreement to provide a Review File for the claim, he disagreed with MCAG as to the remedy for Cigna's failure to do so. *See* Judge Davis June 18, 2008 Order (ECF 6732-20 at 15). MCAG argued then, as it does now, "stick[ing] to its all or nothing argument that because Cigna failed to compile a sufficient "Review File" for each unapproved claim," then the Settlement Administrator Epiq should find those claims presumptively valid and payable. *Id.* at 7. Judge Davis disagreed stating: "I find some merit in MCAG's overarching position, but numerous problems on a more specific level. I agree with MCAG that Cigna must comply with this express requirement in the Settlement Agreement. However, I find that there are limitations on its scope, and that the requirement has not yet been triggered on all claims reviewed by Cigna." *Id.* at 8. He found that the "[a] literal construction of the terms 'all records' and 'all other documents' would unfairly penalize Cigna for not having all records reasonably regardless of when those records were in existence." *Id.* at 9. The order recognizes that "[i]t is entirely reasonable for some of 'all records' and 'all other documents'

of Cigna to have been destroyed, even inadvertently or by customary practice pursuant to a document retention policy." *Id.* He aptly added that there might also be instances where MCAG did not in the first instance provide enough information for Cigna to identify the class member. This could happen in cases, where on the surface, the Settlement Administrator Epiq found sufficient cause to allow the claim to proceed, but due to some error in the identifying information, Cigna could not identify the class member, and therefore, have no Review File. *Id.* at 10. Consistent with Judge Davis's statement, the Court does not find that categorically the failure to provide a review file requires a remedy that the claim be paid.

In the June 18, 2008 Order, Judge Davis agreed with MCAG in part finding that where information was missing, those "defected claims" should be returned to MCAG for additional information. *Id.* at 12-13. For claims that Cigna denied, Cigna should compile the Review File and it should go to an external reviewer for a decision on the merits -- which external reviewer would depend on the type of claim. *Id.* at 14. Either the Settlement Administrator or an Independent Review Entity would perform the external review to determine the validity of the claim. *Id.* The Arbitrator added that "Cigna may complain that it should not be required to compile a "Review File" for each and every claim submitted by MCAG. . . .Cigna's denial must be supported only by a preponderance of the evidence, such that any patent deficiencies in MCAG's submissions should be evident on external review." *Id.* at 16.

Finally, the June 18, 2008 order noted that Judge Davis "decline[d] Cigna's invitation to make any substantive determinations as to the validity of any claims, either individually or categorically." *Id.* at 16; *see also* Settlement Agreement § 8.3(c)(2)(h)(iv)(G) (ECF 2308 at 144) ("Decisions of the Settlement Administrator or Independent Review Entity, as appropriate, shall be final and not subject to review by the Court or any other court or tribunal."); *see also*

*Managed Care Advisory Grp., LLC v. Cigna Healthcare*, 939 F.3d 1145, 1151 (11th Cir. 2019)

("After evaluating these claims, the Reviewers would make a final, independent decision

regarding whether the claims should be paid."). The External Reviewers are responsible for

making the final determination as to whether Cigna met its burden in denying a claim. Because

the external reviewers denied the claims at issue, MCAG lacks additional recourse. *See* MCAG's

Arbitration Demand (ECF 6726 at 12-13) (explaining that claims at issue in the arbitration are

for claims reviewed by the External Reviewers). The Settlement Agreement does not allow the

Court to review the substantive decisions of the External Reviewers, even if they were wrong.

In so holding, it is important to note when the Settlement Agreement triggered the

Review File requirement. MCAG argues that every claim submitted to EPIQ required a Review

File, but the Settlement Agreement created a rigorous process for resubmission of Category 2

claims.[3] Before Cigna had any obligation to provide a Review File, MCAG had to file valid

proofs of claim and had to provide adequate identifying information to permit Cigna to locate the

claim. MCAG does not cite to any record evidence to establish that it filed valid proofs of claim

or that it provided adequate identifying information to permit Cigna to locate the claims.[4] The

Court ordered MCAG to file a separate response on this issue of the release, and in that filing,

MCAG does not establish that its resubmitted claims complied with the Category 2 process in

the face of Cigna's repeated assertions to the contrary. MCAG's Response (ECF 6937).

Therefore, even if the Court found that a failure to provide a Review File meant that a claim was

---

[3] "Under this procedure, the Settlement Agreement provides that class members shall submit claims to the
Settlement Administrator for initial processing. Specifically, class members must submit: (1) a Proof of Claim Form;
(2) documentation evidencing a denial or reduction in payment; (3) a complete copy of Clinical Information as
defined and specified in the Settlement Agreement; and (4) a certification that the services were actually rendered,
that no reimbursement on the claim has been previously sought, and that the claim is not a 'Resolved Claim' as
defined in the Settlement Agreement. § 8.3c(2)(f), Settlement Agreement (ECF 6787, Ex. 20 at 8).
[4] MCAG's briefs to the Court on this issue acknowledge the complex process, but do not provide proof that it
followed the process even though Cigna repeatedly argues that MCAG failed to comply with the Settlement
Agreement's requirements. *See, e.g.* MCAG's Response (ECF 6935 at 2).

*per se* valid, MCAG would still need to show that the claim was submitted in accordance with the Settlement Agreement in the first place.[5] *See* May 23, 2007 Order of Arbitrator Judge Edward B. Davis (ECF 6787-20 at 129) ("To avoid this pitfall again, the Arbitrator orders that MCAG, as part of its resubmission of the claims to the Settlement Administrator, designate under which subsection of § 8.3c(2)(d) of the Settlement Agreement it is submitting each claim.").

The Court must give all the provisions of the Settlement Agreement meaning. Undeniably, the Settlement Agreement requires Cigna to produce a Review File upon the denial of the claim. But the Settlement Agreement also creates a rigorous process for filing of Category 2 claims in the first instance. And the Settlement Agreement also states that the External Reviewers have the final say on the merits of the claims. Reading these provisions together, the Court finds, as Judge Davis did, that the final decisionmakers could weigh whether the Review File requirement was triggered or whether the circumstances of each claim rendered the requirement void *ab initio* due to a failure by MCAG to provide sufficient documentation upon the resubmission of the claim or whether the claim was meritorious and payable. Indeed, the External Reviewers' enforcement of the Review File requirement resulted in 53% of Cigna's denials being overturned. (ECF 6820-2 at ¶ 48). That shows that the External Reviewers analyzed each claim to determine its viability. Therefore, the Court cannot find MCAG's claims *per se* valid based on the lack of a Review File, when the External Reviewers conducted an analysis and rendered final decisions. To rule otherwise would prioritize certain provisions of the Settlement Agreement over others. *See Golden v. Univ. of Miami*, 484 F. Supp. 3d 1255, 1263 (S.D. Fla. 2020) ("[C]ourts do not interpret contractual terms in isolation – "[i]n reviewing a

---

[5] Mr. Buchakjian (MCAG's expert) testified that he has no opinion on whether any Proof of Claim submitted had adequate documentation. (ECF 6787, Ex. 8 at 1536).

contract. . .the entire contract must be reviewed as a whole without fragmenting any segment or portion.").

The Final Award at issue in this case found that EPIQ did not comply with the Settlement Agreement when it sent 81,450 Records Found, No claims to the Independent Review Entity. (ECF 6820-2 at 54). He found that EPIQ's obligation was to reverse Cigna's denial where there was no data in Cigna's files. *Id.* at 55. He added that Cigna bore the responsibility under the Settlement Agreement for those claims where its data engines produced no data. This is at odds with the law of the case, where Judge Davis explicitly recognized that there were instances where the Review File requirement would not yet be triggered if there was misidentifying information. Moreover, as the Court previously noted, it must view the Settlement Agreement as a whole and the decisions[6] on these claims by the External Reviewers must not be overturned. The Arbitrator also had the obligation to review the entirety of the Settlement Agreement, and by honing in on this one requirement of the Review File, and awarding damages based on that, he exceeded his authority.

B. *Compliance with Claims Procedures*

MCAG argues that the Settlement Administrator EPIQ erred in sending certain claims to the Independent Review Entity for processing because the Independent Review Entity was charged with reviewing denials of claims only based on claim coding and bundling edits. EPIQ was charged with reviewing Cigna's decision if the claim was denied for other reasons. Even if EPIQ erred in sending the claims to the Independent Review Entity instead of analyzing the

---

[6] The Settlement Agreement § 8.3(C)(2)(h)(iv)(G) is very broad. It encompasses all decisions by the external reviewers. It reads: "When proofs of claim are denied on External Review, the Settlement Administrator shall notify the Class Members submitting such Proof of Claim by mail of the denials and of the reasons therefor. *Decisions of the Settlement Administrator* or Independent Review Entity, as appropriate, shall be final and not subject to review by the Court or any other court or tribunal." (ECF 2308 at 144).

claims itself or finding the claims presumptively valid under the Agreement, the Court cannot overturn the decision of the external review per the plain and unequivocal language of the settlement. Settlement Agreement § 8.3(C)(2)(h)(iv)(G) (ECF 2308 at 142); (ECF 6732-20 at 3) ("The Settlement Administrator or the Independent Review Entity shall determine whether Cigna's denial is supported by a preponderance of the evidence based on MCAG's documentation and Cigna's review file). In addition, Judge Davis's orders in this case are unequivocal that the Arbitrator should not decide the merits of the claims, and had no authority to overturn those decisions.

Moreover, MCAG did not submit this "Records Found, No" category of claims through the detailed process required by the Settlement Agreement, as noted *supra*. The "Records Found, No" claims were adjudicated by the External Reviewers from 2007-2010. Because MCAG did not properly submit these "Records Found, No" claims, they are barred by the terms of the release. The Settlement Agreement does not provide a different process for adjudicating the "Records Found, No" claims. Indeed, the Settlement Agreement does not even mention this classification of claims.

The next question is whether EPIQ's purported mistake in sending claims to the Independent Review Entity somehow nullifies the effect of the release. It is true that on December 22, 2009, Judge Davis entered an order stating that while he agreed that the Settlement Administrator and the Independent Review Entity make the final decisions on the claims, he was tasked with ensuring that EPIQ and the Independent Review Entity made decisions in accordance with the terms and conditions of the claims procedure. He allowed discovery in this regard. (ECF 6820-2 at 31-32). The Court, however, declines to find EPIQ's handling of the claims is grounds for overturning the decisions of the external reviewers now –

nearly 15 years later, especially where MCAG has not established that the claims were properly resubmitted in accordance with the Settlement Agreement's procedures in the first instance. Moreover, the Settlement Agreement specifically required that EPIQ "automatically forward the Proof of Claim and Review File to the Independent Review Entity for all denials based upon Claim Coding and Bundling Edits." (ECF 2308, Ex. 2 § 8.3c(2)(h)(iv)). EPIQ had the discretion under the Agreement to do that and the Court will not overturn EPIQ's decision, which is consistent with the Settlement Agreement's unequivocal language that the decisions of the Settlement Administrator or the Independent Review Entity are final.

The Court also agrees with Cigna that the Final Award exceeds the Arbitrator's authority under the Settlement Agreement § 9.6. (ECF 2308 at 157). Section 9.6 provides that the sole remedy for a claim based on the administration and implementation of the Agreement is application to this Court for enforcement of the Settlement Agreement. *See also Managed Care Advisory Grp.*, 939 F.3d at 1145 (stating that the district court has the power to enforce the Settlement Agreement). Rather than merely finding the claims were improperly processed and sending the claims back to EPIQ, the Arbitrator quantified the impact of that and allowed a monetary ruling against Cigna for the deficiencies in the procedure. As such, the basis for finding Cigna liable also exceeds the contours of the Settlement Agreement.[7]

*C. Future Claims*

The parties dispute whether the claims at issue here were "future claims" that could not have been released by the Settlement Agreement. Notably, MCAG does not refute that the claims

---

[7] The Supplemental Arbitration Agreement § 5 has similar protections for Cigna: "The Parties agree that they will not mention before the Arbitrator the fact that the Settlement Administrator reached any substantive determinations as to the validity of any MCAG claim, including the process by which the Settlement Administrator reached its decision to pay, defect, or reject MCAG claims. In addition, no argument shall be made that reasonably requires a Party to rely on the Settlement Administrator's determinations in response to such argument." (ECF 6787-19 at 3). This is precisely what the Arbitrator considered in the Final Award, which found that the basis of the award was EPIQ's claims processing error. *See* Final Award at ¶¶ 146, 152, 240 (ECF 6820-2).

arose from 1990-2004, but rather bases its argument on the fact that MCAG *resubmitted* those claims. The External Reviewers adjudicated those claims and then, MCAG sought to have the Arbitrator substantively reconsider them. In reality, these resubmitted claims arose during the period covered by the Settlement Agreement from 1990-2004 and were reviewed by the External Reviewers. That is what the Settlement Agreement provides is the final decision on the merits. The Eleventh Circuit confirmed this reading of the Settlement Agreement stating that "[a]fter evaluating these claims, the Reviewers would make a final, independent decision regarding whether the claims should be paid." *Managed Care Advisory Grp.*, 939 F.3d at 1151. Although the Arbitrator Matthews recognized that "the Settlement Administrator or Independent Review Entity as External Reviewer is to decide the ultimate validity of the claims," he reversed the decision for 81,450 claims that he thought should have been approved but were denied due to a procedural flaw in the claim processing by EPIQ given Cigna's failure to compile a Review File. Final Award ¶ 240 (ECF 6820-2 at 84). Therefore, the Court agrees the Arbitrator exceeded his authority under the Settlement Agreement. *See* 9 U.S.C. § 10(a)(4); *see also Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991) (holding a federal court can vacate an arbitration award in a case where the arbitrators exceeded their authority).

   *D. Reasons for the Arbitration*

   At oral argument, MCAG argued that Cigna could not contend that the very claims it agreed to arbitrate had been released by the Settlement Agreement. This argument, however, does not pass muster. The claims submitted to the original arbitration over fifteen years ago, resulted in Cigna paying over $14 million to MCAG. MCAG *resubmitted* the claims in the most recent arbitration, which had been either denied or approved by the External Reviewers. In short, they were claims that had already been submitted, reviewed, and determined by the External

15

Reviewers pursuant to the only process permitted by the Settlement Agreement. As such, the Court agrees with Cigna that the Arbitrator Matthews should not have decided the compensability of those claims in arbitration.

### E.   Waiver

Finally, MCAG argues that Cigna waived the argument that the Settlement Agreement barred these claims. Cigna objected throughout the arbitration proceedings that the claims were barred. The Court does not find sufficient record evidence that Cigna waived the argument.

DONE AND ORDERED in Chambers at Miami, Florida, this ___14th___ of November 2023.

_____

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record